**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| **Hunter Mountain Investment Trust** | | |
| Appellant | § | |
| vs. | § | |
| **Highland Capital Management, L.P, et al** | § | **3:23-CV-2071-E** |
| Appellee | § | |

   **[3904] Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders" Denying Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding. Entered on 8/25/2023.**

# Volume 16

# APPELLANT RECORD

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Reorganized Debtor. | § | |

*INDEX*

### APPELLANT HUNTER MOUNTAIN INVESTMENT TRUST'S
### SECOND SUPPLEMENTAL STATEMENT OF THE ISSUES AND
### DESIGNATION OF ITEMS FOR INCLUSION IN THE APPELLATE RECORD

COMES NOW Appellant/Movant Hunter Mountain Investment Trust, both in its individual capacity and derivatively on behalf of the Reorganized Debtor, Highland Capital Management, L.P., and the Highland Claimant Trust,[1] (collectively, "Appellant" or "HMIT"), and files this Second Supplemental[2] Statement of the Issues and Designation of Items for Inclusion in the Appellate Record pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1):

### I.
### STATEMENT OF THE ISSUES

A.   Did the bankruptcy court err in determining that the "colorable" claim analysis allowed the court to consider evidence and other non-pleading materials including, but not limited to, the court's reasoning that:

  1.  the colorability analysis is stricter than a non-evidentiary, Rule 12(b)(6)-type analysis;

  2.  the colorability analysis is "akin to the standards applied under the … *Barton* doctrine";

  3.  the colorability analysis requires a "hybrid" of the *Barton* doctrine and "what courts have applied when considering motions to file suit when a vexatious litigant bar order is in place"; and/or,

---

[1] And in all capacities and alternative derivative capacities asserted in HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding [Dkt. Nos. 3699, 3815, and 3816] ("Emergency Motion"), the supplement to the Emergency Motion [Dkt. No. 3760], and the draft Complaint attached to the same [Dkt. No. 3760-1].

[2] Appellant files this Second Supplement pursuant to the Clerk's request at Docket #3949 and correspondence on 10/23/2023.

      4.  "[t]here may be mixed questions of fact and law implicated by the Motion for Leave"?

[*See* Dkt. Nos. 3781, 3790, 3903-04].

B.    Did the bankruptcy court err in determining that Appellant lacked constitutional or prudential standing to bring its claims in its individual and derivative capacities?

[*See* Dkt. Nos. 3903-04].

C.    Did the bankruptcy court err in alternatively determining that, even under a non-evidentiary, Rule 12(b)(6)-type analysis, Appellant did not assert colorable claims including, but not limited to, determining that:

      1.  Appellant's allegations are conclusory, speculative, or constitute "legal conclusions";

      2.  Appellant's claims or allegations are not "plausible";

      3.  Appellant's allegations pertaining to a *quid pro quo* are "pure speculation";

      4.  Proposed Defendant James P. Seery ("Seery") owed no duty to Appellant in any capacity as a matter of law;

      5.  Appellant failed "to allege facts in the Proposed Complaint that would support a reasonable inference that Seery breached his fiduciary duty to HMIT and the estate as a result of bad faith, self-interest, or other intentional misconduct rising to the level of a breach of the duty of loyalty";

      6.  Appellant's allegations pertaining to its aiding and abetting and conspiracy claims are speculative and not plausible;

      7.  The remedies of equitable disallowance and equitable subordination are not remedies "available" to Appellant as a matter of law;

      8.  Appellant's unjust enrichment claim is invalid as a matter of law because "Seery's compensation is governed by express agreements";

      9.  Appellant is not entitled to declaratory relief because it has no colorable claims; and/or

     10.  Appellant cannot recover punitive damages for its breach of fiduciary duty claim?

[*See* Dkt. Nos. 3903-04].

D.    Alternatively, even if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the court violate Appellant's due process rights by denying Appellant its requested discovery?

[*See* Dkt. Nos. 3800, 3853, 3903-04, June 8, 2023 Hearing].

E.    Alternatively, did the bankruptcy court err by denying Appellant's requested discovery including, but not limited to:

1.    ordering that Appellant could not request or obtain any discovery other than a deposition of Seery and James D. Dondero; and/or

2.    determining that state court "Rule 202" proceedings supported the denial of discovery?

[*See* Dkt. Nos. 3800 & June 8, 2023 Hearing; *see also* Dkt. Nos. 3903-04].

F.    Alternatively, did the bankruptcy court err by denying Appellant's alternative request for a continuance to obtain the requested discovery?

G.    Alternatively, did the bankruptcy court err by excluding Appellant's evidence, or admitting the same for only limited purposes, offered at the June 8, 2023 Hearing?

H.    Alternatively, did the bankruptcy court err by overruling Appellant's objections to Appellees' evidence offered at the June 8, 2023 Hearing?

I.    Alternatively, did the bankruptcy court err by excluding Appellant's experts' testimony?

[*See* Dkt. No. 3853; *see also* Dkt. Nos. 3903-04].

J.    Alternatively, did the bankruptcy court err by striking Appellant's proffer of its excluded experts' testimony from the record?

[*See* Dkt. No. 3869].

K.    Alternatively, if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the bankruptcy court err in determining that Appellant had not asserted colorable claims under that "hybrid" analysis including, but not limited to, its findings that:

1.    there is no evidence to support that Seery shared material non-public information with the Claims Purchasers;

2.    there is no evidence to support the alleged quid pro quo;

3.    the material shared was *public* information; and/or

4.    the Claims Purchasers had sufficient and lawful reasons to pay the amounts paid

---

for the purchased claims.

[*See* Dkt. Nos. 3903-04].

L. Did the bankruptcy court err in finding that Appellant is controlled by Dondero, and, as such, Appellant "cannot show that it is pursuing the Proposed Claims for a proper purpose"?

M. Alternatively, does sufficient evidence support the bankruptcy court's evidentiary findings made pursuant to its "hybrid" *Barton* analysis?

N. Did the bankruptcy court err in denying an expedited hearing on Appellant's Motion for Leave? [*See* Dkt. 3713].

O. Does the bankruptcy court's use of a new "colorability" standard to determine if claims by non-debtors against other non-debtors may proceed violate *Stern v. Marshall* and its progeny?

P. Did the bankruptcy court err in denying Appellant's Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or Alternatively, for New Trial under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 including, but not limited to by:

   1. declining to consider disclosures that demonstrated that Appellant is "in the money"—an issue pertinent to the court's erroneous standing decisions; and

   2. concluding that the disclosures failed to reinforce Appellant's standing to pursue the claims presented?

[Dkt. 3936].

## II.
## DESIGNATION OF ITEMS FOR INCLUSION
## IN THE APPELLATE RECORD

*VOl. 1*

1. **Notice of Appeal**

*000001*       a. Notice of Appeal **[Dkt. 3906]**;

*000276*       b. Amended Notice of Appeal **[Dkt. 3908]**; and

*000551*       c. Second Amended Notice of Appeal **[Dkt. 3945]**

2. **The judgment, order, or decree appealed from:**

   a. Memorandum Opinion and Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders": Denying Hunter Mountain Investment

*000835*
*000940*

Trust's Emergency Motion for Leave to File Adversary Proceedings **[Dkts. 3903 & 3904]**; and

*001045*

    **b.** Order Denying Motion of Hunter Mountain Investment Trust Seeking Relief Pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 **[Dkt. 3936]**.

   **3.** Docket sheet.

*001049*

    a. Bankruptcy Case No. 19-34054

   **4.** Other Items to be included:

    **a.** HMIT hereby designates the following items in the record on appeal from Cause No. 19-34054-sgj11:

*Vol. 2*

| FILE DATE | DOCKET NO. (INCLUDING ALL ATTACHMENTS AND APPENDICES) | DESCRIPTION |
|---|---|---|
| 01/22/2021 | 1808 | Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) |
| 02/22/2021 | 1943 | Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief |
| 09/09/2022 | 3503 | Motion to Conform Plan filed by Highland Capital Management, L.P. |
| 02/27/203 | 3671 | Memorandum Opinion and Order on Reorganized Debtor's Motion to Conform Plan |
| 03/28/2023 | 3699 (3699-1 — 3699-5) | HMIT Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| 03/28/2023 | 3700 (3700-1) | HMIT Motion for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/30/2023 | 3704 | Farallon, Stonehill, Jessup and Muck Objection to Motion for Expedited Hearing |
| 03/30/2023 | 3705 | HMIT Amended Certificate of Conference |

*001594*
*001660*
*001821*
*001830*
*Vol. 3*
*001849*
*Thru Vol. 4*
*Vol 4*
*002236*
*002243*
*002248*

---

| | | | |
|---|---|---|---|
| | 03/30/2023 | 3706 | HMIT Amended Certificate of Conference |
| | 03/30/2023 | 3707 | Highland's Response in Opposition to Emergency Motion for Leave |
| | 03/30/2023 | 3708 (3708-1 — 3708-8) | Declaration of John Morris in Support of the Highland Parties' Objection to Hunter Mountain Investment Trust's Opposed Application for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| | 03/31/2023 | 3712 | HMIT Reply in Support of Application for Expedited Hearing |
| | 03/31/2023 | 3713 | Order Denying Motion for Expedited Hearing |
| | 04/04/2023 | 3718 (3718-1 — 3718-4) | HMIT Motion for Leave to File Appeal |
| | 04/04/2023 | 3719 (3719-1) | HMIT Motion for Expedited Hearing on Motion for Leave to File Appeal |
| | 04/05/2023 | 3720 | Order Denying HMIT's Opposed Motion for Expedited Hearing |
| | 04/05/2023 | 3721 (3721-1 — 3721-2) | HMIT Notice of Appeal |
| | 04/06/2023 | 3726 (3726-1) | Certificate of Mailing regarding HMIT Notice of Appeal |
| | 04/07/2023 | 3731 | Notice of Docketing Transmittal of Notice of Appeal |
| | 04/13/2023 | 3738 (3738-1) | Highland's Opposed Emergency Motion to Modify and Fix a Briefing Schedule and Set a Hearing Date with Respect to HMIT's Emergency Motion for Leave |
| | 04/13/2023 | 3739 | Highland's Motion for Expedited Hearing |
| | 04/13/2023 | 3740 | Joinder to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date With Respect to Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon |

*Handwritten annotations in left margin:*
- Vol. 5
- 002251
- 002254
- 002262
- 002346
- 002355
- 002358
- 002391
- 002398
- 002400
- Vol. 6
- 002826  Thru Vol. 7
- Vol. 9  Thru Vol. 9
- 003257
- 003260
- 003270
- 003278

| | | | |
|---|---|---|---|
| | | | Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
| | 04/13/2023 | 3741 | Notice of Hearing for 04/24/2023 at 1:30 PM |
| | 04/13/2023 | 3742 | Amended Notice of Hearing for 04/24/2023 at 1:30 PM |
| | 04/13/2023 | 3745 | Notice of Appearance and Request for Notice by Omar Jesus Alaniz filed by James P. Seery Jr. |
| | 04/15/2023 | 3747 | Joinder by James P. Seery Jr. to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date with Respect to Hunter Mountain Investment Trusts Emergency Motion for Leave to File Verified Adversary Proceeding |
| | 04/17/2023 | 3748 | HMIT's Response and Reservation of Rights |
| | 04/19/2023 | 3751 | Notice of Status Conference |
| | 04/21/2023 | 3758 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability" |
| | 04/21/2023 | 3759 | HMIT's Notice of Rescheduling Hearing |
| | 04/21/2023 | 3761 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability"[3] |
| | 04/23/2023 | 3760 (3760-1) | HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| | 04/25/2023 | 3765 | Transcript of Hearing held on 04/24/2023 |
| | 05/11/2023 | 3780 | Objection to Hunter Mountain Investment Trust's (i) Emergency Motion for Leave to File Verified Adversary Proceeding; and (ii) Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck |

*Handwritten annotations in left margin:* Vol. 10, 003281, 003286, 003291, 003294, 003296, 003299, 003302, 003311, 003314, 003323, 003368, 003430

---

[3] A duplicate of Doc 3758.

| | | | |
|---|---|---|---|
| *Vol. 10* | | | Holdings LLC, Stonehill Capital Management LLC |
| *003458* | 05/11/2023 | 3781 | Order Fixing Briefing Scheduling and Hearing Date with Respect to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding as Supplemented |
| *003463* | 05/11/2023 | 3783 | Highland and Seery's Joint Response to HMIT's Emergency Motion for Leave |
| *Vol. 11* *003537* | 05/11/2023 | 3784 (3784-1 — 3784-46) | Declaration of John Morris in Support of Highland Parties' Joint Response |
| *Thru Vol. 16* *Vol. 17* *004465* | 05/18/2023 | 3785 | HMIT's Reply in Support of Emergency Motion for Leave to File Adversary Proceeding |
| *004712* | 05/22/2023 | 3787 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004714* | 05/24/2023 | 3788 (3788-1 — 3788-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *004808* | 05/24/2023 | 3789 | HMIT's Application for Expedited Hearing |
| *004813* | 05/24/2023 | 3790 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004836* | 05/25/2023 | 3791 (3791-1 — 3791-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *Vol. 18* *004930* | 05/25/2023 | 3792 | Order Setting Expedited Hearing |
| *004931* | 05/25/2023 | 3795 | Objection to Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

*Vol. 18*
*004939.*

| | 05/25/2023 | 3798<br>(3798-1) | Highland Parties' Joint Response in Opposition to HMIT's Emergency Motion for Expedited Discovery |
|---|---|---|---|
| *004959* | 05/26/2023 | 3800 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| *004961* | 05/28/2023 | 3801 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| *004984* | 06/05/2023 | 3815<br>(3815-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| *005049* | 06/05/2023 | 3816<br>(3816-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| *005114* | 06/05/2023 | 3817<br>(3817-1 — 3817-5)<br>*Thru Vol. 25* | Highland Parties' Witness and Exhibit List with Respect to Evidentiary Hearing on June 8, 2023 |
| *Vol. 26*<br>*006608* | 06/05/2023 | 3818<br>(3818-1 — 3818-9)<br>*Thru Vol. 39* | HMIT's Witness and Exhibit List in Connection with its Emergency Motion for Leave to File Verified Adversary Proceeding, and Supplement |
| *Vol. 39*<br>*009273* | 06/07/2023 | 3820 | Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| *009290* | 06/07/2023 | 3821<br>(3821-1 — 3821-3) | Declaration in Support of Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| *009416* | 06/07/2023 | 3822<br>(3822-1) | HMIT's Unopposed Motion to File Exhibit Under Seal [WITHDRAWN] |
| *009424* | 06/07/2023 | 3823 | Joinder to Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

| | | | |
|---|---|---|---|
| 06/07/2023 | 3824 | | HMIT's Objections to the Highland Parties' Exhibit and Witness List |
| 06/08/2023 | 3828 | | HMIT's Response to Highland Claimant Trust and James P. Seery, Jr.'s Joint Motion to Exclude Testimony and Documents of Experts Scott Van Meter and Steve Pully |
| 06/09/2023 | 3837 | | Request for transcript regarding hearing held on 06/08/2023 |
| 06/12/2023 | 3838 | | Court admitted exhibits on hearing June 8, 2023 (*See* Docket Entry Nos. 3817 & 3818) |
| 06/12/2023 | 3841 | | Highland Parties' Reply in Further Support of their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/12/2023 | 3842 (3842-1) | | Claim Purchasers' Joinder to Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery Jr.'s Reply in Further Support of Their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
| 06/13/2023 | 3843 | | Transcript regarding Hearing Held 06/08/2023 |
| 06/13/2023 | 3844 | | Transcript regarding Hearing Held 05/26/2023 |
| 06/13/2023 | 3845 | | HMIT's Request for Oral Hearing or, Alternatively, a Schedule for Evidentiary Proffer |
| 06/13/2023 | 3846 | | Response in Opposition to Hunter Mountain Investment Trust's Request for Oral Argument or, Alternatively, a Schedule for Evidentiary Proffer filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Creditor James P. Seery Jr. |
| 06/13/2023 | 3847 | | HMIT's Reply to the Highland Parties' Response to Request for Oral Hearing |
| 06/16/2023 | 3853 | | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |

Handwritten annotations in left margin:
Vol. 40
009426
009436
009444
009445
009446
009456
009458
Vol. 42  Thru Vol. 41
009841
009901
009905
009908
009912

*Vol. 42*

*009928*

*009944*

*010013*

*010023*

*010025*

*010029*

*010035*

*010047*

*010059*

*Vol. 43*

*010062*

| | 06/16/2023 | 3854 | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |
|---|---|---|---|
| | 06/19/2023 | 3858 (3858-1 — 3858-2) | Hunter Mountain Investment Trust's Evidentiary Proffer Pursuant to Rule 103(a)(2)[4] |
| | 06/23/2023 | 3860 | The Highland Parties' Objections to and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| | 06/23/2023 | 3861 | Claim Purchasers' Joinder to the Highland Parties' Objections and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| | 07/05/2023 | 3869 | Order Striking HMIT's Evidentiary Proffer Pursuant to Rule 103(a)(2) and Limiting Briefing |
| | 07/06/2023 | 3872 | Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust filed by Debtor Highland Capital Management, L.P. and the Highland Claimant Trust |
| | 07/21/2023 | 3888 | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by Highland Capital Management, L.P. |
| | 07/21/2023 | 3889 | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by the Highland Claimant Trust |
| | 08/17/2023 | 3901 | Withdrawal of HMIT's Unopposed Motion to File Exhibit Under Seal filed by Creditor Hunter Mountain Investment Trust |
| | 09/08/2023 | 3905 (3905-1 — 3905-6) | Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or, Alternatively, for New Trial Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 and Incorporated Relief Filed by Creditor Hunter Mountain Investment Trust |

---

[4] HMIT understands that the Court struck this proffer in docket entry 3869. Because the proffer appears to remain on the record and to avoid any argument that HMIT has failed its burden to designate the record, HMIT designates this docket entry out of an abundance of caution.

*Vol. 43*

*010135*

*010136*

| 09/11/2023 | 3907 | Clerk's Correspondence regarding HMIT's Notice of Appeal |
|---|---|---|
| 09/22/2023 | 3928 | Notice Regarding Appeal and Pending Post-Judgment Motion filed by HMIT |

**B. Exhibits.**

Further, the Parties submitted hearing exhibits. HMIT designates for inclusion in the record for appeal all the hearing exhibits submitted to the Court, which were all electronically filed and are in the Court's record and are a part of this Appellate Record. (Docs. 3817 and 3818). The following exhibits are submitted and included in the Court's record:

| **HMIT Exhibits**<br>**(Dkts. 3818, 3818-1, 3818-2, 3818-3, 3818-4, 3818-5. 3818-6, 3818-7, 3818-8, and 3818-9)** |
|---|
| HMIT Exhibits 1-4, 6-80 |
| **HCM Exhibits**<br>**(Dkts. 3817, 3817-1, 3817-2, 3817-3, 3817-4, 3817-5)** |
| HCM Exhibits 2-15, 25-34, 36, 38-42, 45-46, 51, 59-60, 100 |

Dated: October 23, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By: */s/ Sawnie. A. McEntire*
    Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served via ECF notification on October 23, 2023, on all parties receiving electronic notification.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

(vi)    reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

(vii)    borrow as may be necessary to fund activities of the Claimant Trust;

(viii)    determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

(ix)    invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

(x)    change the compensation of the Claimant Trustee;

(xi)    subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

(xii)    retain counsel, experts, advisors, or any other professionals; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and (ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

(c)    [Reserved.]

3.4    Investment of Cash.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; provided, however that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

004537

3.5    <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

3.6    <u>Term of Service</u>.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

3.7    <u>Resignation</u>.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

3.8    <u>Removal</u>.

(a)    The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice.  Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

(b)    To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9    <u>Appointment of Successor</u>.

(a)    <u>Appointment of Successor</u>.  In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust.  The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the

DOCS_NY:43843.3 36027/002

004538

vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b)    <u>Vesting or Rights in Successor Claimant Trustee</u>.    Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.    The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee.    In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c)    <u>Interim Claimant Trustee</u>.    During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "<u>Interim Trustee</u>") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a).    The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder.    Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

3.10    <u>Continuance of Claimant Trust</u>.    The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.    In the event of the resignation or removal of the Claimant Trustee, the Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, <u>provided</u> the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust.    The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11    <u>Claimant Trustee as "Estate Representative"</u>.    The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "<u>Estate Representative</u>") with respect to the Claimant

004539

Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; <u>provided</u> that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims and the Employee Claims. The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order. All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

    3.12   <u>Books and Records</u>.

    (a)   The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

    (b)   The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; <u>provided</u>, <u>however</u>, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

    (c)   The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; <u>provided</u>, <u>however</u>, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13    <u>Compensation and Reimbursement; Engagement of Professionals</u>.

(a)    <u>Compensation and Expenses</u>.

(i)    <u>Compensation</u>.  As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation of $150,000 per month (the "<u>Base Salary</u>").  Within the first forty-five days following the Confirmation Date, the Claimant Trustee, on the one hand, and the Committee, if prior to the Effective Date, or the Oversight Board, if on or after the Effective Date, on the other, will negotiate go-forward compensation for the Claimant Trustee which will include (a) the Base Salary, (b) a success fee, and (c) severance.

(ii)    <u>Expense Reimbursements</u>.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

(b)    <u>Professionals</u>.

(i)    <u>Engagement of Professionals</u>.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)    <u>Fees and Expenses of Professionals</u>.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

3.14    <u>Reliance by Claimant Trustee</u>.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    <u>Commingling of Claimant Trust Assets</u>.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

DOCS_NY:43843.3 36027/002

004541

3.16    Delaware Trustee.

(a)    The Delaware Trustee shall have the limited power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Delaware Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement, in either case as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee and upon which the Delaware Trustee shall be entitled to conclusively and exclusively rely; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.  Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.  The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Claimant Trustee set forth herein.  The Delaware Trustee shall be one of the trustees of the Claimant Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Delaware Statutory Trust Act and for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Statutory Trust Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to those expressly set forth in this Section 3.16 and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Claimant Trust, the other parties hereto or any beneficiary of the Claimant Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement.

(b)    The Delaware Trustee shall serve until such time as the Claimant Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Claimant Trustee in accordance with the terms hereof.  The Delaware Trustee may resign at any time upon the giving of at least thirty (30) days' advance written notice to the Claimant Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Claimant Trustee in accordance with the terms hereof. If the Claimant Trustee does not act within such thirty (30) day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(c)    Upon the resignation or removal of the Delaware Trustee, the Claimant Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the

DOCS_NY:43843.3 36027/002

004542

outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Delaware Statutory Trust Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Claimant Trustee and any undisputed fees, expenses and indemnity due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

(d)    The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.  The Claimant Trust shall promptly advance and reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Delaware Trustee in connection with the performance of its duties hereunder.

(e)    WTNA shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(f)    Any corporation or association into which WTNA may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Delaware Trustee is a party, will be and become the successor Delaware Trustee under this Agreement and will have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

## ARTICLE IV.
## THE OVERSIGHT BOARD

4.1    <u>Oversight Board Members</u>.  The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "<u>Disinterested Members</u>")  The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; <u>provided</u>, <u>however</u>, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-

DOCS_NY:43843.3 36027/002

004543

E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

    4.2    <u>Authority and Responsibilities</u>.

    (a)    The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein.  As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.8 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; <u>provided</u>, <u>however</u>, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

    (b)    The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

    (c)    The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

    (d)    Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action  by the Oversight Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

    (e)    Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate

in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds.  It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3    Fiduciary Duties.  The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; provided, however, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; provided, further, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action.  In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust.  Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4    Meetings of the Oversight Board.  Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly.  Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; provided, however, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board).  Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

4.5    Unanimous Written Consent.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded.  If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent, the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone.  Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

004545

4.6    <u>Manner of Acting</u>.

(a)    A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); <u>provided</u> that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum.  Except as set otherwise forth herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition of the place) for the holding hereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

(b)    Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

(c)    Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be deemed a "<u>Conflicted Member</u>" who shall not be entitled to vote or take part in any action with respect to such matter or issue.  In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

(d)    Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "<u>Committee Member Claim Matter</u>").  A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any

004546

Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7    Tenure of the Members of the Oversight Board.  The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article IX hereof.  The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.8 below, or removal pursuant to Section 4.9 below.

4.8    Resignation.  A Member of the Oversight Board may resign by giving prior written notice thereof to the Claimant Trustee and other Members.  Such resignation shall become effective on the earlier to occur of (i) the day that is 90 days following the delivery of such notice, (ii) the appointment of a successor in accordance with Section 4.10 below, and (iii) such other date as may be agreed to by the Claimant Trustee and the non-resigning Members of the Oversight Board.

4.9    Removal.  A majority of the Oversight Board may remove any Member for Cause or Disability.  If any Committee Member has its Claim disallowed in its entirety the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein.  Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10    Appointment of a Successor Member.

(a)    In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; provided, however, that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if an individual serving as the representative of a Committee Member resigns from its role as representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board.  The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)    Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c)    Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment

DOCS_NY:43843.3 36027/002

004547

under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11    <u>Compensation and Reimbursement of Expenses</u>.    Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member. Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12    <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law.  For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.12.

## ARTICLE V.
## TRUST INTERESTS

5.1    <u>Claimant Trust Interests</u>.

(a)    <u>General Unsecured Claim Trust Interests</u>. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "<u>GUC Beneficiaries</u>").  The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims. The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)    <u>Subordinated Claim Trust Interests</u>.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "<u>Subordinated Beneficiaries</u>").  The

Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9. The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests. The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

   (c) <u>Contingent Trust Interests</u>.  On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "<u>Equity Holders</u>"). The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan. Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "<u>GUC Payment Certification</u>").  Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "<u>Equity Trust Interests</u>." The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

   5.2 <u>Interests Beneficial Only</u>.  The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting.  No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

   5.3 <u>Transferability of Trust Interests</u>.  No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or

DOCS_NY:43843.3 36027/002

reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made.  In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4    Registry of Trust Interests.

(a)    Registrar.  The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein.  The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board.  For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)    Trust Register.  The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)    Access to Register by Beneficiaries.  The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

5.5    Exemption from Registration.  The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

004550

5.6    <u>Absolute Owners</u>.  The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7    <u>Effect of Death, Incapacity, or Bankruptcy</u>.  The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8    <u>Change of Address</u>.  Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Claimant Trustee.  Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9    <u>Standing</u>.  No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.  No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10    <u>Limitations on Rights of Claimant Trust Beneficiaries</u>.

(a)    The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b)    In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; <u>provided</u>, <u>however</u>, that any fees and costs shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

(c)    A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed.  A request for such bond can be made by the Claimant Trust or by Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d)    Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas.  Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

(e)    The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.

DOCS_NY:43843.3 36027/002

004551

## ARTICLE VI.
## DISTRIBUTIONS

6.1    Distributions.

(a)    Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses in such amounts and for such period of time as the Claimant Trustee determines, in good faith, may be necessary and appropriate, which determination shall not be subject to consent of the Oversight Board, may not be modified without the express written consent of the Claimant Trustee, and shall survive termination of the Claimant Trustee), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7.  Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within six months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)    At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c)    All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

6.2    Manner of Payment or Distribution.  All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3    Delivery of Distributions.  All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records

DOCS_NY:43843.3 36027/002

of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4    <u>Disputed Claims Reserves</u>.  There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.  The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5    <u>Undeliverable Distributions and Unclaimed Property</u>.    All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6    <u>*De Minimis* Distributions</u>.  Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7    <u>United States Claimant Trustee Fees and Reports</u>.  **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6)'s by reason of the Claimant Trustee's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

**ARTICLE VII.
TAX MATTERS**

7.1    <u>Tax Treatment and Tax Returns</u>.

(a)    It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable).  The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(b)    The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c)    The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the

31

**004553**

Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2     Withholding.  The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary.  As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws.  If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

## ARTICLE VIII.
## STANDARD OF CARE AND INDEMNIFICATION

8.1     Standard of Care.  None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence.  The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee,  Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence.  None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

8.2     Indemnification.  The Claimant Trustee (including each former Claimant Trustee), WTNA in its individual capacity and as Delaware Trustee, the Oversight Board, and all past and present Members (collectively, in their capacities as such, the "Indemnified Parties") shall be

indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm.  The Claimant Trust shall pay, advance or otherwise reimburse on demand of an Indemnified Party the Indemnified Party's reasonable legal and other defense expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith or in connection with enforcing his or her rights under this Section 8.2 as a Claimant Trust Expense, and the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; provided that the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, willful misconduct, or gross negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid; provided, further, that any such repayment obligation shall be unsecured and interest free.  The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.  For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, WTNA in its individual capacity and as Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member, solely in their capacities as such.  The indemnification provided hereby shall be a Claimant Trust Expense and shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy.  The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.  The terms of this Section 8.2 shall survive the termination of this Agreement and the resignation or removal of any Indemnified Party.

8.3    No Personal Liability.  Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or

004555

otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4    <u>Other Protections</u>.  To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

**ARTICLE IX.**
**TERMINATION**

9.1    <u>Duration</u>.  The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets.

9.2    <u>Distributions in Kind</u>.  Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3    <u>Continuance of the Claimant Trustee for Winding Up</u>.  After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed.  Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant to the Delaware Statutory Trust Act, the Claimant Trustee shall prepare, execute and file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>").  If the Delaware Trustee's signature is required for purposes of filing such certificate of cancellation, the Claimant Trustee shall provide the Delaware

DOCS_NY:43843.3 36027/002

Trustee with written direction to execute such certificate of cancellation, and the Delaware Trustee shall be entitled to conclusively and exclusively rely upon such written direction without further inquiry. Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee. At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4    <u>Termination of Duties</u>.  Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5    <u>No Survival</u>.  The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, <u>provided</u> that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

**ARTICLE X.**
**AMENDMENTS AND WAIVER**

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions. This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; <u>provided</u> that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement. No amendment or waiver of this Agreement that adversely affects the Delaware Trustee shall be effective unless the Delaware Trustee has consented thereto in writing in its sole and absolute discretion.

**ARTICLE XI.**
**MISCELLANEOUS**

11.1    <u>Trust Irrevocable</u>.  Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2    <u>Bankruptcy of Claimant Trust Beneficiaries</u>.  The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3    <u>Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets</u>.  No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

11.4    <u>Agreement for Benefit of Parties Only</u>.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in

DOCS_NY:43843.3 36027/002

respect of this Agreement.  The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

    11.5    <u>Notices</u>.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

        (a)    If to the Claimant Trustee:

> Claimant Trustee
> c/o Highland Capital Management, L.P.
> 100 Crescent Court, Suite 1850
> Dallas, Texas 75201

With a copy to:

> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Blvd, 13th Floor
> Los Angeles, CA 90067
> Attn:  Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
>        Ira Kharasch (ikharasch@pszjlaw.com)
>        Gregory Demo (gdemo@pszjlaw.com)

        (b)    If to the Delaware Trustee:

> Wilmington Trust, National Association
> 1100 North Market Street
> Wilmington, DE 19890
> Attn:  Corporate Trust Administration/David Young
> Email:  nmarlett@wilmingtontrust.com
> Phone:  (302) 636-6728
> Fax:  (302) 636-4145

Notice mailed shall be effective on the date mailed or sent.  Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

    11.6    <u>Severability</u>.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

    11.7    <u>Counterparts</u>.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

DOCS_NY:43843.3 36027/002

004558

11.8    Binding Effect, etc.    All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns.  Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

11.9    Headings; References.    The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.10    Governing Law.    This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11    Consent to Jurisdiction.    Each of the parties hereto, each Member (solely in their capacity as Members of the Oversight Board), and each Claimant Trust Beneficiary consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement, the Plan or any act or omission of the Claimant Trustee (acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan), Litigation Trustee (acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan), the Oversight Board. or any individual Member (solely in their capacity as Members of the Oversight Board); *provided, however*, that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

11.12    Transferee Liabilities.    The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims.  If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

DOCS_NY:43843.3 36027/002

004559

        IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

                                Highland Capital Management, L.P.


                                By: _____
                                    James P. Seery, Jr.
                                    Chief Executive Officer and
                                    Chief Restructuring Officer

                                Claimant Trustee

                                By: _____
                                    James P. Seery, Jr., not individually but
                                solely in his capacity as the Claimant Trustee

DOCS_NY:43843.3 36027/002

004560

Wilmington Trust, National Association,
as Delaware Trustee


By: _____

Name:  Neumann Marlett

Title:  Bank Officer

DOCS_NY:43843.3 36027/002

004561

# EXHIBIT 39

**Minutes of the Meeting of the
Claimant Trust Oversight Board of the Highland Claimant Trust**

**August 26, 2021**



Mr. Seery also presented the Board with an overview of his Incentive Compensation Program proposal which would include not only Mr. Seery but the current HCMLP team.  (The

004563

terms and structure of the proposal had been previewed with the Board in prior operating models presented by Mr. Seery.) Mr. Serry reviewed the proposal and stated his view that the proposal was market based and was designed to align incentives between himself and the HCMLP team on the one hand and the Claimant Trust beneficiaries on the other. The Board asked questions regarding proposal and determined that is would consider the proposal and revert to Mr. Seery with a counter proposal.

_____
Richard Katz

_____
Michael Linn

_____
Christopher Provost

004564

# EXHIBIT 40

**Minutes of the Meeting of the**
**Claimant Trust Oversight Board of the Highland Claimant Trust**

**August 30, 2021**



In the notice of the meeting, HCMLP provided the Oversight Board with notice that the meeting would address (i) incentive based compensation for the Claimant Trustee and the HCMLP Team and ▮

Mr. Katz began the meeting by walking the Oversight Board and Mr. Seery through the Oversight Board's counter-proposal to the HCMLP incentive compensation proposal, including the review of a spreadsheet and summary of the counter-proposal. Discussion was joined by Mr. Linn and Mr. Stern. Mr. Seery asked numerous questions and received detailed responses from the Oversight Board. Mr. Seery and the Oversight Board agreed to continue the discussion and negotiations regarding the proposed incentive compensation plan for the Claimant Trustee and the HCMLP.



Richard Katz

Michael Linn

Christopher Provost

# EXHIBIT 41

## MEMORANDUM OF AGREEMENT

In accordance with the provisions of the Highland Claimant Trust Agreement and the Highland Capital Management, L.P. ("HCMLP") Plan of Reorganization, the Oversight Board of the Highland Claimant Trust and the Claimant Trustee/Chief Executive Officer of HCMLP engaged in robust, arm's-length and good faith negotiations regarding the incentive compensation program for the Claimant Trustee/CEO and the HCMLP post-effective date operating team ("HCMLP Team"). After considering various structures and incentives to motivate performance on behalf of the Claimant Trust, the parties reached the binding agreement reflected in the attached HCMLP and Claimant Trust Management Incentive Compensation Program (the "ICP") pdf document. A model entitled "ICP Nov 17 2021 Adjusted Dec 2 2021" summarizing potential ICP payments is also attached hereto.

The ICP is a detailed outline of the agreed program with Claimant Trust Expense compensation payments designed to assure the efficient and successful operation of the Claimant Trust and HCMLP for the benefit of the Claimant Trust and the Claimant Trust Beneficiaries. To the extent that there remain additional details regarding allocations (or other issues) to be determined in the future, the Oversight Board and the Claimant Trustee/CEO will negotiate in good faith the resolve those issues.

This Memorandum of Agreement is executed in accordance with the Claimant Trust Agreement (i) by Claimant Trustee executes this agreement on behalf of himself, the Claimant Trust and HCMLP and (ii) by the Oversight Board Members in their respective capacities as members of the Oversight Board

**ACCEPTED AND AGREED** this 6th day of December 2021.

_____
James P. Seery, Jr., Claimant Trustee and HCMLP CEO

**Oversight Board Members**

_____
Richard Katz. Independent Member

**Jessup Holdings LLC**

_____
By:   Christopher Provost
      Authorized Signatory

**Muck Holdings LLC**

_____
By:   Michael Linn
      Authorized Signatory

FINAL

## MANAGEMENT INCENTIVE COMPENSATION AGREED TERMS
## REORGANIZED HIGHLAND CAPITAL MANAGEMENT, L.P. and
## HIGHLAND CLAIMANT TRUST, (the "Trust")
## DECEMBER 2, 2021

In accordance with the terms of the Claimant Trust Agreement in respect of compensation and severance for the Claimant Trustee, and consistent with the Claimant Trustee's management of the Reorganized Highland Capital Management, L.P. ("HCMLP") and its employees, the following term sheet contains the terms of the Incentive Compensation Program ("ICP") agreed to by the Oversight Board, the Claimant Trustee and HCMLP. Payments made under this ICP are Claimant Trust Expenses and compensation and reasonable expenses of administering the confirmed HCMLP Plan of Reorganization ("Plan").

1. Structure
   a. The ICP will have 5 Tiers based upon distribution to allowed Class 8 and Class 9 Claims. Incentive Payments will be based on actual cash reserved or distributed to holders of Allowed Class 8 and Class 9 Claims.
   b. The (i) Claimant Trustee/CEO and (ii) the HCMLP Team will each be indefeasibly allocated a percentage of the distributions reserved or made to Allowed Class 8 (principal and interest) and Class 9 Claims effective as of the date hereof.



   c. Timing of payments to the Claimant Trustee/CEO and the HCMLP Team TBD. However, the purpose of the program is to incentivize performance and promote retention. Accordingly, allocations and distributions are not expected to occur until significant progress is made on the monetizations contemplated by the Plan.
   d. Assumed Allowed Claim Amounts
      1. Class 8 Principal      $295,326,201
      2. Class 8 Interest (thru 12/22)      $9,676,000
      3. Class 9 (assumes Daugherty settlement)      $98,750,000
   e. Incentive Payment Tiers
      i. Tier 1   $200,000,000 to $210,000,000 (approx. 68% to 71% Class 8)
      ii. Tier 2   $210,000,001 to $266,000,000 (approx. 71.1% to 90% Class 8)
      iii. Tier 3   $266,000,001 to $305,000,000 (approx. 90.1% to 103% Class 8)
      iv. Tier 4   $305,000,001 to $354,000,000 (approx. 50% Class 9)
      v. Tier 5   $354,000,001 to 100% Class 9 Payout (> 50% Class 9)

FINAL

    f.   Tier Payment Percentages

|  | Claimant Trustee/CEO | |
|---|---|---|
| Tier 1 | .72% | |
| Tier 2 | 1.17% | |
| Tier 3 | 2.75% | |
| Tier 4 | 4.25% | |
| Tier 5 | 6.000% | |

    g.



    h.  Base Salary

        i.  As set for the in the Claimant Trust Agreement, Claimant Trustee/CEO will continue to receive his current base salary of $150,000 per month (the "Base Salary"), less the actual cost of health insurance benefits provided to the Claimant Trustee/CEO.

        ii.  Claimant Trustee/CEO and Oversight Board agree that the Base Salary will reset to $75,000.00 per month starting 12/31/22, it being understood that Claimant Trustee/CEO and Oversight Board will negotiate in good faith to the extent a different Base Salary makes sense based on the scope of remaining assets and ongoing litigation for the Trust as needed for the periods from 12/31/22 to the end of the Trust.  To that end, Claimant Trustee/CEO and Oversight Board agree to re-evaluate the Base Salary at least every 6m starting 12/31/22.

        iii.  Claimant Trustee/CEO to receive a cash payment of $1,000,000.00 and the Claimant Trustee/CEO ICP in the event of severance without cause, it being understood that if severance occurs during the period of 7/1/22 to 12/31/22, the cash payment portion will be the continuation of Base Salary until 12/31/22.

        iv.

FINAL



2. <u>General Terms</u>

a.

b.

c.

d. Claimant Trustee/CEO is permitted to shift a portion of his ICP payments to HCMLP Team members at his sole discretion.

e. It is the intent of the parties to make distributions from the Claimant Trust on a net basis, including the calculation of ICP so that payments under the ICP are treated as Claimant Trust Expenses and other reasonable costs of compensation and expenses. The ICP payments are not Claimant Trust distributions. For example, if a 1% share is owed on a $100mm distribution, the Trust would need have $101mm of cash for distribution so that $1mm would go to the ICP and the balance to the Claimant Trust beneficiaries (holders of Class 8 and Class 9 Claims).

f. The amounts of ICP entitlement, based on the tiers above in 1e and 1f, are anchored to 12/31/22 claim distributions; an 8% discount rate (annual rate, quarterly compounding) will apply to any distribution based on deviation from 12/31/22. For example, if a $1mm distribution is made on 12/31/23, such distribution will be treated for ICP calculation purposes as the equivalent of $924k on 12/31/22; analogously, if a $1mm distribution is made 6/30/22, such amount will be treated as the equivalent of $1.04mm on 12/31/22. Such time value adjustments will be done on a distribution-by-distribution basis.

g. 20% of the Claimant Trustee/CEO ICP will be based on the successful achievement of the following goals, as determined by the Oversight Board :
    i. Claimant Trustee/CEO to monitor and manage costs appropriately
    ii. Claimant Trustee/CEO to manage and retain HCMLP Team appropriately
    iii. Claimant Trustee/CEO to report to the Oversight Board on a timely basis all relevant information regarding the Claimant Trust.

-END-

004571



# EXHIBIT 42

004573

## ASSIGNMENT AGREEMENT

This Assignment Agreement, effective as of August 11, 2021 (this "Agreement"), is being entered by and among the Highland Claimant Trust (the "Claimant Trust") and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust") for the transfer and assignment of certain claims and causes of action.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on February 22, 2021, pursuant to the *Findings of Fact and Order Confirming Plan of Reorganization for the Debtor* [Docket No. 1943] (the "Confirmation Order");

WHEREAS, on August 11, 2021, the Effective Date of the Plan occurred [Docket No. 2700] and, pursuant to the Plan, the Claimant Trust and the Litigation Sub-Trust subsequently came into existence;

WHEREAS, pursuant to the Plan, the Causes of Action were vested in the Claimant Trust and the Estate Claims that were Causes of Action were transferred from the Claimant Trust to the Litigation Sub-Trust;

WHEREAS, the purpose of the Litigation Sub-Trust is to investigate, prosecute, settle, or otherwise resolve claims and causes of action for the benefit of the Claimant Trust Beneficiaries;

WHEREAS, pursuant to Section 2.6 of the Litigation Sub-Trust Agreement, the Claimant Trustee shall, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed by the Litigation Sub-Trust Agreement and in the Plan;

WHEREAS, the Litigation Trustee, at the direction of the Claimant Trust Oversight Committee, has requested that the Claimant Trustee assign to the Litigation Sub-Trust all Causes of Action not otherwise held by the Litigation Sub-Trust to the Litigation Sub-Trust, other than those Causes of Action that (1) the Claimant Trustee is currently pursuing, and (2) the Claimant Trustee intends to pursue on behalf of entities managed by the Reorganized Debtor (together, the "

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

004574

<u>Claimant Trust Causes of Action</u>").

## AGREEMENT

In furtherance of the Plan and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Claimant Trust hereby irrevocably transfers and assigns to the Litigation Sub-Trust any and all Causes of Action not previously transferred or assigned by operation of the Plan, the Litigation Sub-Trust Agreement, or otherwise, except for the Claimant Trust Causes of Action, effective as of the date below. For the avoidance of doubt, to the extent not already held by the Litigation Sub-Trust, all Causes of Action that will be included in the Litigation Trustee's complaint filed on or before October 15, 2021 are assigned to the Litigation Sub-Trust.

Executed as of _October 8, 2021_

**Claimant Trust**

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

**Litigation Sub-Trust**

By: _____

Marc Kirschner, not individually but solely in his capacity as the Litigation Trustee

004575

# EXHIBIT 43

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
                              DALLAS DIVISION

                                   )    Case No. 19-34054-sgj-11
   In Re:                          )    Chapter 11
                                   )
   HIGHLAND CAPITAL                )    Dallas, Texas
   MANAGEMENT, L.P.,               )    April 24, 2023
                                   )    1:30 p.m. Docket
          Reorganized Debtor.      )
                                   )    - DUGABOY INVESTMENT TRUST AND
                                   )      HUNTER MOUNTAIN INVESTMENT
                                   )      TRUST'S MOTION FOR LEAVE TO
                                   )      FILE PROCEEDING (3662)
                                   )    - STATUS CONFERENCE RE: MOTION
                                   )      FOR LEAVE TO FILE VERIFIED
                                   )      ADVERSARY PROCEEDING FILED
                                   )      BY CREDITOR HUNTER MOUNTAIN
                                   )      INVESTMENT TRUST (3699)
   _____)

                        TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                      UNITED STATES BANKRUPTCY JUDGE.

   WEBEX APPEARANCES:

   For the Reorganized        John A. Morris
   Debtor:                    PACHULSKI STANG ZIEHL & JONES, LLP
                              780 Third Avenue, 34th Floor
                              New York, NY  10017-2024
                              (212) 561-7700

   For The Dugaboy            Deborah Rose Deitsch-Perez
   Investment Trust, et al.:  STINSON, LLP
                              2200 Ross Avenue, Suite 2900
                              Dallas, TX  75201
                              (214) 560-2201

   For Hunter Mountain        Sawnie A. McEntire
   Investment Trust:          PARSONS MCENTIRE MCCLEARY, PLLC
                              1700 Pacific Avenue, Suite 4400
                              Dallas, TX  75201

   For Hunter Mountain        Roger L. McCleary
   Investment Trust:          PARSONS MCENTIRE MCCLEARY, PLLC
                              One Riverway, Suite 1800
                              Houston, TX  77056
                              (713) 960-7305
```

004577

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 28-143   Filed 09/07/23   Page 56 of 142   PageID 3945
Exhibit 143   Page 207/763

2

```
 1   WEBEX APPEARANCES, cont'd.:

 2   For Muck Holdings, et al.:   Brent Ryan McIlwain
                                  HOLLAND & KNIGHT, LLP
 3                                300 Crescent Court, Suite 1100
                                  Dallas, TX  75201
 4                                (214) 964-9481

 5   For James P. Seery, Jr.:     Mark Stancil
                                  Joshua Seth Levy
 6                                WILLKIE FARR & GALLAGHER, LLP
                                  1875 K Street, NW
 7                                Washington, DC  20006
                                  (202) 303-1133
 8
     For James P. Seery, Jr.:     Omar Jesus Alaniz
 9                                REED SMITH
                                  2850 N. Harwood Street, Suite 1500
10                                Dallas, TX  75201
                                  (469) 680-4292
11
     Recorded by:                 Michael F. Edmond, Sr.
12                                UNITED STATES BANKRUPTCY COURT
                                  1100 Commerce Street, 12th Floor
13                                Dallas, TX  75242
                                  (214) 753-2062
14
     Transcribed by:              Kathy Rehling
15                                311 Paradise Cove
                                  Shady Shores, TX  76208
16                                (972) 786-3063

17

18

19

20

21

22

23

24
            Proceedings recorded by electronic sound recording;
25              transcript produced by transcription service.
```

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 28-143   Filed 24/07/23   Page 57 of 142   PageID 3946

3

<u>DALLAS, TEXAS - APRIL 24, 2023 - 1:39 P.M.</u>

1

2          THE COURT:  I will now turn to our Highland matters.

3   We have two of them.  The first one we had scheduled I think

4   may have been worked out, but it is the Dugaboy and Hunter

5   Mountain adversary proceeding -- or, well, not adversary

6   proceeding, a motion for leave to file an adversary proceeding

7   regarding valuation.  This is Case No. 19-34054.

8       Who do we have appearing for the Movant this afternoon?

9          MS. DEITSCH-PEREZ:  Good morning, Your Honor.  This

10  is Deborah Deitsch-Perez from Stinson for the Movants.

11         THE COURT: All right.  Thank you.  Do we have you

12  representing both Movants, Ms. Deitsch-Perez?

13         MS. DEITSCH-PEREZ:  That's correct.

14         THE COURT: All right.  Mr. Morris, I see you have

15  your video turned on.  You're representing the Debtor today,

16  or Reorganized Debtor; is that correct?

17         MR. MORRIS:  Yes, Your Honor.  Good afternoon.

18         THE COURT:  Good afternoon.

19      Do we have any other appearances on this matter?

20      All right.  Well, am I correct you've worked out something

21  procedurally on this?

22         MS. DEITSCH-PEREZ:  Yeah, let me report.  We have

23  been negotiating over several weeks about information to be

24  provided to the Movants, and additional information was indeed

25  provided on Friday.  I don't know if you've noticed, but the

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 118-143    Filed 250763    Page 58 of 142    PageID 3947

4

1    reports have an additional section with some additional

2    information.

3        We're going through it.  We think there are probably still

4    some -- some additional information that we need, and so we

5    will first reach out to Mr. Morris and attempt to negotiate

6    over that information.  And if we are successful, wonderful.

7    If we are unsuccessful, because the Debtor has agreed that a

8    gatekeeper motion is not necessary since the adversary would

9    just be seeking a valuation and not monetary or other relief,

10   we will then proceed to -- if we cannot work things out with

11   the Debtor, we'll proceed to file an adversary, which will be

12   slightly different than the one that was attached to the

13   gatekeeper motion because we will explain what additional

14   information is needed and why the information we have is not

15   sufficient.  So it should narrow the scope of the adversary.

16        THE COURT:  All right.  Thank you.  Mr. Morris,

17   anything you want to add??

18        MR. MORRIS:  Yes, just briefly, Your Honor.  The

19   Reorganized Debtor does not believe Hunter Mountain or Dugaboy

20   is entitled to any information whatsoever.  They certainly

21   have no legal right to the information.  It's why they have to

22   pursue equitable -- an equitable claim.  Not an equitable

23   right, but an equitable claim.

24        Counsel is certainly correct that we negotiated in good

25   faith to try to provide the information that the Reorganized

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-143    Filed 2607/23    Page 59 of 142    PageID 3948

5

1    Debtors believed was -- might be useful to the extent that

2    someone was really interested in settling the case.  We were

3    unable to come to an agreement.  So, under Mr. Seery's

4    leadership, we acted unilaterally.  We produced a wealth of

5    information on Friday night, including claims data, cash, cash

6    in reserve, cash in the Claimant Trust, assets, general

7    descriptions of assets that remain.

8        If they want to pursue a lawsuit, we'll accept service,

9    with the proviso that we set forth in our opposition to the

10   original motion, and that is everybody will be held

11   accountable for unsupported and unsubstantiated allegations.

12       But the ball is in their court.  We have produced what

13   we're prepared to produce.  If they want to continue with

14   litigation, I guess that's what we'll do.

15           MS. DEITSCH-PEREZ:  Well, we hope that the Debtor

16   will continue to negotiate and will hear why we explain --

17   when we explain why the information isn't enough.  So, ever

18   the optimist, I hold out some hope that we will be able to do

19   this, if not through this proceeding, through the motion for a

20   greater stay and for mediation that's also before Your Honor.

21       So, one way or the other, we do hope to resolve this.  If

22   we can't, we will bring the adversary.  And I thank you, Mr.

23   Morris, for agreeing to accept service.

24           THE COURT:  All right.  Just a procedural question.

25   Ms. Deitsch-Perez, will you be actually withdrawing this

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 28-143   Filed 07/13/23   Page 60 of 142   PageID 3949
Exhibit 143   Page 2707/763

6

1  motion for leave, or are you all doing some sort of order

2  setting forth what you've all agreed to and announced?  Just

3  let me know, so I know what to be expecting.

4          MS. DEITSCH-PEREZ:  I think we will try to have an

5  agreed order to enforce what we're doing.  If we fail in that,

6  I don't suppose it matters very much.  We can withdraw the

7  application and just proceed to file the adversary.  I'd

8  rather get an agreed order up, though, setting forth that the

9  Debtor has agreed that a gatekeeper is not necessary and that,

10 as a result, we'll be filing the adversary.  So, that's what I

11 hope, Your Honor, we'll get.

12         THE COURT:  All right.  Well, just for the record, it

13 doesn't really matter to me whether you withdraw it or I have

14 an agreed order.  I'm just trying to simplify life.  I know

15 sometimes the Clerk's Office personnel will reach out -- we

16 need an order, we need an order, we need an order -- if

17 there's a motion pending that doesn't have an order to match

18 to it, and I'm just trying to avoid headaches in that regard.

19         MS. DEITSCH-PEREZ:  That's why we'll make it clear

20 what we do one way or the other.

21         THE COURT:  Very good.

22         MR. MORRIS:  Your Honor, just for the Court's

23 convenience, I apologize that I don't have the docket numbers,

24 but the information that we posted and we intended to and did

25 post it on the docket so that it was available to everybody

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-143    Filed 12/07/23    Page 61 of 142    PageID 3950

7

1    equally, it's at the back of the two quarterly operating

2    reports.  There's one filed on behalf of the Reorganized

3    Debtor and then there's one filed on behalf of the Claimant

4    Trust.  But I believe the information in the back of each of

5    those reports is the same.

6        So, just in case the Court has any curiosity about what

7    we've disclosed, I just wanted to make sure Your Honor knew

8    where to find it.

9            THE COURT:  Okay.  I've got the docket right in front

10   of me, and I see on Friday Docket No. 3756 was filed by the

11   Reorganized Debtor, Post-Confirmation Report, and then Docket

12   3757 was filed by the Claimant Trust.  So, thank you.  I've

13   noted those if we want to go back and look.

14       All right.  Well, that concludes this Dugaboy/Hunter Trust

15   motion for leave.

16       Let's now turn to the other Hunter Mountain motion for

17   leave.  We have a status conference -- I think it's a hearing

18   on what kind of hearing we're going to have -- on Docket Entry

19   No. 3699.  So we probably have a larger appearance list on

20   this one, so I'll do roll call.

21       Appearing for Hunter Mountain, who do we have?

22           MR. MCENTIRE:  Good afternoon, Your Honor.  This is

23   Sawnie McEntire and my partner Roger McCleary with Parsons

24   McEntire McCleary representing Hunter Mountain.

25           THE COURT:  Okay.  Now I'm going to just do a roll

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 18-143   Filed 09/07/23   Page 62 of 142   PageID 3951

8

1  call.  For the Reorganized Debtor, Mr. Morris, will you be

2  taking the lead on that?

3          MR. MORRIS:  Yes, I will, Your Honor.  Good

4  afternoon.

5          THE COURT:  Good afternoon.

6      All right.  We have four, potentially, named Claims

7  Purchasers.  So I'll ask, who do we have representing Muck

8  Holdings?

9          MR. MCILWAIN:  Your Honor, Brent McIlwain here from

10  Holland & Knight.  I represent Farallon Capital Management,

11  Stonehill Capital Management, Muck Holdings, and Jessup

12  Holdings, LLC.

13          THE COURT:  Okay.  So you represent all four of the

14  Claims Purchasers?

15          MR. MCILWAIN:  That's correct, Your Honor.

16          THE COURT:  All right.  James Seery is a potential

17  Defendant identified.  Who do we have representing Mr. Seery?

18          MR. STANCIL:  Good afternoon, Your Honor.  This is

19  Mark Stancil from Willkie Farr & Gallagher.  I'm joined by my

20  colleague Josh Levy and our co-counsel from Reed Smith, Omar

21  Alaniz.

22          THE COURT:  All right.  Thank you.

23      Do we have any other lawyers appearing in this?

24          MR. STANCIL:  I think that's it, Your Honor.

25          THE COURT:  All right.  Well, so, again, I think

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 201-43   Filed 12/07/23   Page 63 of 142   PageID 3952

9

1    we're having a hearing on what kind of hearing we're going to

2    have on your motion for leave, Mr. McEntire.  What did you

3    want to say?

4            MR. MCENTIRE:  Well, that's correct, Your Honor.

5    Good afternoon again.

6        I think there are several issues before the Court during

7    this status conference.  One is the date of the hearing.  I

8    think we certainly preliminarily had agreed over the last 10

9    days that May 18 was the logical date in light of the motion

10   practice.

11       The length of the hearing, Mr. Morris has suggested over

12   four hours or approximately four hours.  I've suggested one

13   and a half hours.

14       And then there is an issue about whether or not evidence

15   should be allowed.

16       There is a fourth issue that I just want to make sure that

17   the Court is aware.  I don't want to be accused of waiting

18   this issue as the proceedings progress.  And that is we have

19   raised an issue about Mr. Morris's representation and whether

20   he has a conflict of interest.  We did this in writing in our

21   reply brief several weeks ago.  As a consequence, Mr. Seery

22   now has new counsel, Mr. Morris of course to represent the

23   Highland parties, the Reorganized Debtor and the Claimant --

24   the Highland Claimant Trust.  We are concerned that he has a

25   conflict of interest.  It is unclear from whom he is taking

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 20-43   Filed 12/07/23   Page 64 of 142   PageID 3953

10

1   his direction or from whom he is deriving his authority.

2       And equally important if not more important, he is taking

3   positions that are inconsistent with the best interests of the

4   Reorganized Debtor and the Claimant Trust.

5       I don't think this is the type of issue that could be

6   resolved today.  However, I want to make sure it's on the

7   record so I'm not accused of waiting as we proceed.  But

8   otherwise, it's the date of the hearing, the length of the

9   hearing, and whether or not evidence is allowed.

10      I'm prepared to address the merits of our thoughts on each

11  of those last three -- the date, the length, and the evidence

12  issues -- if the Court wishes, or I could wait until after

13  other counsel have made their comments.  But I'm prepared to

14  move forward as the Court wishes.

15          THE COURT:  All right.  Well, I am not going to

16  address a conflicts of interest issue today.  I think I heard

17  you saying you don't anticipate the Court would.  But I don't

18  have any sort of pleading in front of me on that, so we'll

19  just make that clear from the get-go.

20      One of the reasons I'm making that clear from the get-go

21  is I have not read the brief you filed I don't know what time

22  on Friday, Docket No. 3758, Mr. McEntire.  And then I see an

23  objection you filed Friday, Docket No. 3761.  And then last

24  night at 9:30 a supplemental support document.  I take it none

25  of --

004586

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 201-43    Filed 12/07/23    Page 65 of 142    PageID 3954
Exhibit 143    Page 12 of 263

11

1        MR. MCENTIRE:  Right.

2        THE COURT:  -- these issues raised the conflict of

3    interest issue.

4        MR. MCENTIRE:  We addressed the conflicts of issues

5    in -- certainly in our filing last night.  But the brief on

6    Friday and the objection on Friday is addressing the Court's

7    email and Mr. Morris's request to hold an evidentiary hearing.

8    And we oppose that.  We object to the conduct of an

9    evidentiary hearing.  And the brief that we filed -- the

10   objection we filed was supported by case law.  I've seen

11   nothing from Mr. Morris or any of the other counsel in the

12   case responding to our objection or the cases we've cited.

13       But Your Honor, if you wish, I could just move forward

14   right now and address the evidentiary issue, if you wish.

15       THE COURT:  All right.  Well, I'm backing up.  This

16   shows 9:10 a.m. this morning, the 3761.  Am I on the wrong

17   thing?

18       MR. MCENTIRE:  I think you're -- what we did this

19   morning at Mr. Morris's request is we sent in a redline

20   version of the revised complaint to the Court's attention.

21   The actual revised complaint was filed last night, and all

22   that was done this morning was, at Mr. Morris's request, to

23   facilitate his review of the new complaint, was to redline it.

24       THE COURT:  All right.  Well, and then, okay, the

25   brief you filed was at 4:55 p.m. Friday.

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 20-143   Filed 12/07/23   Page 66 of 142   PageID 3955

12

1        MR. MCENTIRE:  Yes, ma'am.

2        THE COURT:  I can assure you, we were still all

3   working then, but unless you notify my courtroom deputy that

4   you have filed something sort of on the eve of a hearing,

5   we're not necessarily in chambers going to go back and scroll

6   the docket.  We had court on other matters this morning, so we

7   were focused on that.  I've not seen your brief.  But anyway,

8   you can argue obviously what you want to argue.

9      Okay.  So let's talk about -- I think you wanted to talk

10  about evidence first.

11       MR. MCENTIRE:  Yes, ma'am.

12       THE COURT:  So I'm happy to hear about that topic

13  first.  Because, obviously, the other issues -- length of

14  hearing, date of hearing -- hinge on that.  So what do you --

15       MR. MCENTIRE:  I agree.

16       THE COURT:  What do you say about this?

17       MR. MCENTIRE:  All right.  Well, earlier, I think,

18  last week, or perhaps it was the end of the previous week, Mr.

19  Morris had issued an email requesting a four-hour hearing

20  because he wanted to cross-examine Mr. Dondero and otherwise

21  have a full-blown evidentiary hearing.  Opening statements,

22  final argument, and witness examinations.

23      We responded immediately by email objecting to the

24  evidentiary format.  There was a series of exchanges between

25  my office, Mr. Morris's office, and your chambers, Your Honor,

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-45   Filed 12/07/23   Page 67 of 142   PageID 3956

13

1  where Ms. Ellison indicated that you were initially inclined

2  to grant an evidentiary hearing.

3       That was followed by an email on April 19th of last week

4  where you suggested in your email that the issue of

5  colorability, which is really the gatekeeper function that the

6  Court's serving, as the Court is aware, that the standard for

7  colorability was somehow greater than the standard for

8  plausibility under a 12(b)(6) motion.

9       In the email, Ms. Ellison suggested that it was perhaps

10  the Court's initial thinking that there was a higher hurdle

11  associated with the gatekeeping function than a traditional

12  12(b)(6) inquiry.

13       We have done substantial research following that email

14  exchange, and I will also point out to the Court we actually

15  briefed the 12(b)(6) standard in our original emergency motion

16  for leave.  So this is not new to us.  We had actually briefed

17  it originally in our original motion that was filed back in

18  late March.  March 28th, I believe.

19       But in light of the Court's communication, we did further

20  research.  We have found no cases that suggest that the

21  inquiry for colorability is greater than the plausibility

22  standard under *Twombly*.  In fact, we found cases that suggest

23  just the opposite.  The *Gonzalez* case which was cited is a

24  Northern District of Texas case.  It was a gatekeeper case.

25  Not a bankruptcy case.  But it was a gatekeeper case on an

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 21-43    Filed 11/07/23    Page 68 of 142    PageID 3957

14

1    ERISA claim that simply said that the plaintiff simply had to

2    be able to establish an arguable claim.

3        The *Deepwater Horizon* case, which is a Fifth Circuit case,

4    also states that the case -- the claim must only have some

5    possible validity.

6        So the threshold inquiry is very, very low.  Evidence is

7    not allowed.

8        The *Gonzalez* case also suggested that the Court, similar

9    to a 12(b)(6) inquiry, is limited to the four corners of the

10    principal pleading -- in this case, the complaint, or now the

11    revised complaint.

12        So we don't believe that --

13            THE COURT:  So, Mr. McEntire, --

14            MR. MCENTIRE:  Yes, Your Honor.

15            THE COURT:  -- let me -- help me with this.  I'm

16    walking through -- because obviously the question we're

17    drilling down on is what is the appropriate legal standard for

18    the Court to apply --

19            MR. MCENTIRE:  Yes.

20            THE COURT:  -- in performing the gatekeeping

21    function.  So I started the same place I guess you and

22    everyone else started, and that is with the plan, the

23    gatekeeping provision in the plan.  And it starts on the

24    bottom of Page 50 and goes over to 51.

25        And you probably discovered, the same as I discovered,

004590

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 201-43   Filed 12/07/23   Page 69 of 142   PageID 3958

15

1  that it doesn't give the appropriate legal standard.  It just

2  says that the Bankruptcy Court -- that no enjoined party may

3  commence or pursue a claim or cause of action of any kind

4  against any protected party without the Bankruptcy Court --

5  turn over to Page 51 -- first determining, after notice and a

6  hearing, that such claim or cause of action represents a

7  colorable claim of any kind.  And then the last sentence of

8  that paragraph:  "The Bankruptcy Court will have sole and

9  exclusive jurisdiction to determine whether a claim or cause

10  of action is colorable."

11      Okay?  So all that really tells us is that there has to be

12  notice and a hearing.  That doesn't say what kind of hearing,

13  evidentiary or otherwise, and doesn't elaborate on colorable.

14      So, beyond that, here was my legal thinking.  And maybe

15  this is all fully explored in your brief.  I just don't know.

16  I thought, well, what legal standard do Bankruptcy Courts

17  apply in the *Barton Doctrine* context when someone is seeking

18  leave to sue a bankruptcy trustee?  And then I thought, what

19  legal standard do Bankruptcy Courts apply in a *Louisiana World

20  Exposition*-type context if an unsecured creditors' committee

21  or other party brings a *Louisiana World Exposition* motion,

22  saying, we'd like leave to sue a party because the debtor-in-

23  possession is conflicted or whatever reason.

24      And so before we get to *Deepwater Horizon* and the other

25  cases, did you find any legal authority in the *Barton Doctrine*

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 21-143   Filed 12/07/23   Page 70 of 142   PageID 3959

16

1  context that you think sheds light?  Because that seems to me

2  the most analogous context, right?

3          MR. MCENTIRE:  Specifically to answer -- to respond

4  to your question directly, the answer is no.  What we did find

5  specifically, though, was the case, as I'd indicated, the

6  Fifth Circuit directs that a 12(b)(6) standard be applied to

7  the issue of colorability.  And that's the *Trippodo* case.

8          THE COURT:  The what case?

9          MR. MCENTIRE:  And that's also cited -- the *Trippodo*.

10 T-R-I-P-P-E-D-O [sic].  That is a Southern District of Texas

11 case that cites a Fifth Circuit precedent that directs that a

12 12(b)(6) standard be used as a template, if you will, for

13 determining colorability.  And we've also cited that in our

14 brief.

15         THE COURT:  And that, was that the one that was in an

16 ERISA context?

17         MR. MCENTIRE:  No, ma'am.  That was *Gonzalez*.  And

18 that's cited on Page 7 of our brief.

19         THE COURT:  And so --

20         MR. MCENTIRE:  That was a gatekeeper -- a gatekeeper

21 issue.  Before you -- you have to satisfy certain criteria

22 before the Court will allow the ERISA to even be filed, the

23 ERISA claim to even be filed.  And so it was akin to a

24 gatekeeper function.  And they applied specifically a

25 colorability or 12(b)(6) standard.

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 20-143   Filed 12/07/23   Page 71 of 142   PageID 3960

17

1          THE COURT:  I'm sorry.  What was the context?  What

2   was -- who was seeking to sue whom over what in the *Trippodo*

3   case?

4          MR. MCENTIRE:  The -- it was an ERISA claim.  It was

5   in the -- I believe it's the Northern --

6          THE COURT:  Oh, I thought you said is not an ERISA

7   claim.

8          MR. MCENTIRE:  Well, no, I apologize.  I may have

9   sorted my words.  It was an ERISA claim.  It was in the

10  Northern District of Texas, I believe.  I have it right here.

11  One second.  Yes, it's Northern District of Texas.  It's a

12  2002 case.  It was dealing with the amendment of pleadings to

13  bring forth an ERISA claim.  And the issue there is whether or

14  not there's a colorable claim or whether it was frivolous or

15  futile.  And the court determined that a -- that before you

16  even get to the 12(b)(6) level -- this case can actually stand

17  for the proposition that it's -- that it's even less than a

18  12(b)(6) standard.  But before you even get there, you have to

19  address it from a futility or frivolity or is there any

20  evidence.  The actual words that are used are, one second,

21  "any arguable claim."

22          THE COURT:  Okay.

23          MR. MCENTIRE:  Not plausibility.  Not on the merits.

24  But any arguable claim.  It's the lowest of possible

25  thresholds.

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 21-43    Filed 12/07/23    Page 72 of 142    PageID 3961

18

```
1              THE COURT:  All right.  Well, --

2              MR. MCENTIRE:  And that's --

3              THE COURT:  -- so, but just to be clear, you didn't

4    find anything in the Barton Doctrine context out there?

5              MR. MCENTIRE:  I did not.

6              THE COURT:  And what about --

7              MR. MCENTIRE:  Now, to be honest --

8              THE COURT:  Say again?

9              MR. MCENTIRE:  To be clear, I did not -- I did not --

10   I apologize.  We did not specifically look at Barton.  I'll be

11   glad to do that and supplement as necessary.

12             THE COURT:  Okay.  And Louisiana World, you didn't

13   find anything that would shed light in that line of cases?

14             MR. MCENTIRE:  I think we did.  I believe Louisiana

15   World supports our position here.

16             THE COURT:  It says what legal standard applies?

17             MR. MCENTIRE:  One second.  One second, Your Honor,

18   please.

19        (Counsel confer.)

20             MR. MCENTIRE:  One moment, please, Your Honor.

21        (Counsel confer.)

22             MR. MCENTIRE:  Can I -- I might have to supplement

23   that.  I have someone looking for it right this second.

24        (Counsel confer.)

25             MR. MCENTIRE:  It was a conflict issue.
```

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 20-143   Filed 12/07/23   Page 73 of 142   PageID 3962

19

1      (Counsel confer.)

2           MR. MCENTIRE:  The *Louisiana World* case, it was a

3   little bit off topic.  It had to do with a conflict of

4   interest where the creditors' committee had a conflict on

5   (inaudible) and the Court determined that the case should go

6   forward.  And --

7           THE COURT:  I know it was a different context.  I'm

8   just trying to find something analogous to this gatekeeper

9   motion.  And the most analogous things I could think of was

10  motions for leave that have been filed in a Bankruptcy Court

11  pursuant to the *Barton Doctrine*, wanting to sue a bankruptcy

12  trustee, where the Bankruptcy Court acts as a gatekeeper, and

13  then a *Louisiana World*-type situation where a creditors'

14  committee files a motion seeking leave to sue somebody,

15  arguing the debtor is not doing it, for either conflicts or

16  some other reason.

17      All right.  So, assuming your case authority is the

18  guiding authority here and it's a Rule 12(b)(6)-type context,

19  you're saying I should look at the four corners of the

20  documents, or anything else the Fifth Circuit has said I can

21  look at, take judicial notice of, in a 12(b)(6) context and

22  not hear evidence?

23      But part of the reason we're having this dispute, right,

24  is because you've put forward some evidence?  Do I understand

25  that correctly?  And I have not dove into weeds on this yet,

Case 19-34054-sgj11 Doc 3784-45 Filed 05/11/23 Entered 05/11/23 22:26:49 Desc
Case 3:23-cv-02071-E Document 23-143 Filed 12/07/23 Page 74 of 142 PageID 3963

20

1    but I understand there were affidavits submitted by you.

2    Correct?

3              MR. MCENTIRE:  In order to make this determination,

4    you do not need to consider the Dondero affidavits that Mr.

5    Morris has raised.  You do not need to consider any of the

6    documents that are actually associated with our motion.

7         We recognize that the application under the 12(b)(6)

8    standard, you'd be relegated to the four corners of the actual

9    complaint itself -- in this case, the revised complaint.

10        The 12(b)(6) standard is a guide.  We take that to mean

11   that it's a low standard.  It's, at most, a plausibility

12   standard, but we believe actually less.

13        We've provided the Dondero declaration -- declarations,

14   plural; there were two -- together with some documents to give

15   -- provide additional background for the Court.  But Mr.

16   Morris has raised an objection.  And under the circumstances,

17   assuming the Court follows the guideline of the *Trippodo* case,

18   then we would understand the Court would not consider the

19   actual Dondero declarations.

20             THE COURT:  Does that mean you're withdrawing the

21   affidavits?

22             MR. MORRIS:  I object to that, Your Honor.  I really

23   -- I'll let counsel finish.  This is just not right.

24             THE COURT:  Okay.

25             MR. MCENTIRE:  Well, I'm not sure what --

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-45   Filed 12/27/23   Page 75 of 142   PageID 3964

21

```
 1              THE COURT:  Your response to that?

 2              MR. MCENTIRE:  I think what we're doing is the

 3    correct legal statement and articulation of what the law is.

 4    Whether Mr. Morris likes it or not, I suppose, you know, with

 5    all due deference to Mr. Morris, it's not a question of

 6    whether I'm doing something that he likes.  It's what I think

 7    is legally correct.  And I think that I've presented that as

 8    best as I can to the Court.

 9              THE COURT:  Okay.  Well, you never --

10              MR. MCENTIRE:  By the way, --

11              THE COURT:  Assuming I would allow withdrawal of the

12    affidavits, is that what you're seeking to do?

13              MR. MCENTIRE:  Yes.  If the Court is suggesting that

14    if I leave the affidavits attached to the motion that the

15    Court is going to allow this to become, effectively, a trial

16    on the merits -- when it shouldn't be, because that's not what

17    this is about, this is not a test of witness credibility, this

18    is not a test of the ultimate merits of the claim -- if that

19    is the situation that I'm being placed, then the answer is we

20    would not want to withdraw them but we will.

21              THE COURT:  Okay.  Well, you don't want to but you

22    will?  I mean, I --

23              MR. MCENTIRE:  Yes, correct.  We do.

24              THE COURT:  I feel like that means I need to explore

25    this a little, because I don't want -- well, any time
```

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 21-43   Filed 12/07/23   Page 76 of 142   PageID 3965

22

1   affidavits are put forward in this Court, or I think any other

2   court I know of, parties are always given the chance to cross-

3   examine an affiant or a declarant.  Okay?  We always allow

4   that if there's an objection to the underlying motion.  So, --

5          MR. MCENTIRE:  Well, here, --

6          THE COURT:  -- I just want to make sure you're clear,

7   you put it in and then the other side said, well, we want a

8   chance to cross-examine the affiant.  I allow that --

9          MR. MCENTIRE:  Then --

10          THE COURT:  -- always, a hundred percent, as does

11   every other judge I know.  If there's an affidavit, if someone

12   wants to cross-examine them, obviously, there might be two

13   sides of the story.  So I just want to be clear on what your

14   desired outcome is --

15          MR. MCENTIRE:  Fair enough.  I understand.

16          THE COURT:  -- and request is.

17          MR. MCENTIRE:  I understand the Court's statement.

18   We withdraw the Dondero affidavits for purposes of this

19   exercise and your consideration.

20          THE COURT:  Okay.

21          MR. MORRIS:  Can I be heard, Your Honor?

22          THE COURT:  Yes.  I'm going to let you be heard on

23   that.  But any other argument you want to make, Mr. McEntire?

24          MR. MCENTIRE:  Yes.  One last thing.  We did find the

25   reference to *Louisiana World*, and it was determined that no

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 21-43   Filed 2/07/23   Page 77 of 142   PageID 3966

23

1    evidence was appropriate and that the court should limit its

2    inquiry based upon the allegations in the pleading, and in

3    that case, to determine whether it was a colorable claim,

4    which would, if pursued successfully, could have increased the

5    value of the estate.  So, the *Louisiana World* case does

6    suggest that there's not an evidentiary component to this

7    inquiry.

8             THE COURT:  Okay.  Let me be clear.  You first said

9    it held no evidence was appropriate, and then you said

10   suggest.  So, did the court actually tackle what is the legal

11   standard and is evidence appropriate?  Did it actually tackle

12   those specific issues?  That's all I really care about.

13   Because I've read the case.

14            MR. MCENTIRE:  Yes.  The citation in our brief is

15   that the Court need not be satisfied that there's an

16   evidentiary basis on the merits of the claim to be asserted.

17   And we have cited the *Louisiana World* case at Pages 252 and

18   253.  Allegations were sufficient and no evidentiary hearing

19   was necessary to determine -- in this case it was a breach of

20   fiduciary duty claim -- whether it had -- whether it was

21   appropriately colorable to move forward.

22            THE COURT:  Okay.  Courtney, you can be drilling down

23   on that.

24       All right.  Anything else?

25            MR. MCENTIRE:  On the evidence issue, no, Your Honor.

004599

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 201-43    Filed 05/07/23    Page 78 of 142    PageID 3967
Exhibit 43    Page 257 of 263

24

1    We would, again, if the Court has time, we would encourage the

2    Court to read our brief.  We believe we've laid out the law

3    fairly succinctly and clearly, and we stand by our brief --

4              THE COURT:  All right.

5              MR. MCENTIRE:  -- and our objection.

6              THE COURT:  Well, of course I have time and I will

7    read it, but I just, given when it was filed and that I wasn't

8    alerted to it being there, I'm just explaining why I have not

9    read it yet.

10     All right.  Mr. Morris, your argument?

11             MR. MORRIS:  Good afternoon, Your Honor.  John Morris

12    for the Claimant Trust and for the Reorganized Debtor.

13     Your Honor, we understood this to be a status conference.

14    We didn't understand this to be a day for rulings by the

15    Court.  We didn't understand there was an issue for the Court

16    to determine today.  Hunter Mountain has now filed two briefs

17    on the topic of the standard of colorability, and they've made

18    an exhaustive argument, doing all of this before we -- before

19    any of the objecting parties have had an opportunity to be

20    heard.

21     Our brief is due on May 4th, and we respectfully request

22    that the Court, subject to other comments that I have this

23    afternoon, withhold judgment on anything that's happened here

24    today.

25     Mr. McEntire has completely misstated the law.  He has no

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 12/07/23   Page 79 of 142   PageID 3968

25

1   understanding, apparently, of what a gatekeeper is and how it

2   functions under *Barton*.  And there's been no reference at all

3   to the purpose of the gatekeeper, which is set forth

4   explicitly, clearly, and in great detail in the Court's

5   confirmation order.  Okay?

6       12(b)(6), I don't want to -- I don't want to get too far

7   ahead of myself, but 12(b)(6) has nothing to do with this

8   case.  Of course this has turned into a bit of a circus, Your

9   Honor, as it always does in Highland.  This was a very simple

10  matter.  Hunter Mountain filed a motion for leave to file a

11  complaint under the gatekeeper provision of Highland's plan.

12  They attached a copy of their proposed complaint.  And

13  Paragraph 1 of their motion says, The motion is separately

14  supported by the declarations of James Dondero dated May 22nd

15  -- May 2022 and February 2023.

16      And these aren't just two declarations, Your Honor.

17  There's almost 400 pages of attachments to these declarations.

18  And now, 10 days before our opposition is due, because Mr.

19  Dondero fears being cross-examined, Hunter Mountain just

20  willy-nilly thinks they can withdraw those affidavit and

21  declarations?  That is greatly prejudicial, and I just can't

22  believe what I just heard.

23      They don't want to do it, they don't want to subject their

24  client to some cross-examination, when they put their

25  declarations into evidence, when they said that their motion

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 20-43    Filed 12/07/23    Page 80 of 142    PageID 3969

26

1   was based on these declarations.

2         We should have that opportunity, Your Honor.  Forget about

3   the standard.  As Your Honor rightly pointed, the rule is very

4   clear.  You offer declarations; we get to cross-examine.

5         On Friday night, we got Hunter Mountain's objection.

6   Their, really, their second attempt to deal with colorability.

7   Last night, they filed what they characterize as support or a

8   supplemental document, which Hunter Mountain insists is not an

9   amendment of their pleading.

10        Your Honor, I've had Hunter Mountain provide the Court

11  with a blackline.  I would respectfully request that the Court

12  instruct Hunter Mountain to file it on the docket so that it

13  becomes part of the official record in this case.  If Your

14  Honor reviews the blackline version, which is not on the

15  docket but was emailed earlier today at my request, the Court

16  will see just how extensive the changes are to this pleading.

17  So here they are, without leave of Court, without filing a

18  motion to amend, without anything, they simply dump a brand

19  new complaint on us 10 days before our opposition is due, and

20  today tell us they're not going to include the Dondero

21  declarations.

22        This is all terribly wrong, Your Honor.  This is not the

23  way the process is supposed to work.  I've seen a lot in this

24  case, but this is a new standard for chaos.

25        The changes are extensive.  And I just want to point out a

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 201-43    Filed 12/07/23    Page 81 of 142    PageID 3970

27

1    couple of them.  They now claim that Mr. Seery exercised

2    "despotic control" over the Debtor.  I believe I have the

3    right to inquire as to the factual basis for that ridiculous

4    allegation.

5         They allege in Paragraph 2 of the newly-amended complaint

6    that Seery "failed to cause the Debtor to make financial

7    disclosures, as required."

8         Your Honor has been in this case since December of 2019.

9    As this Court is aware, the single only financial disclosure

10   that was not filed with the Court was pursuant to Rule 2015.3.

11   Mr. Dondero commissioned his investigation.  As his

12   declarations say, he caused Mr. Rukavina and Mr. Draper to

13   complain to the U.S. Trustee's Office.  Nothing.

14        They objected to confirmation.  They made a motion.  They

15   went to the District Court.  They went to the Fifth Circuit.

16   That one single document is not a basis to say that Mr. Seery

17   failed to cause the Debtor to make financial disclosures.

18        We have the right, Your Honor, under the -- under the

19   gatekeeper, under this Court's confirmed plan -- which, by the

20   way, is worth nothing that in their newly-amended proposed

21   complaint they specifically say they do not challenge the

22   confirmation order.  And I would encourage the Court to look

23   at Paragraphs 77 through 80.  They don't challenge that order.

24   And that order tells us that we have the ability to inquire as

25   to the good faith nature of these allegations.  It has nothing

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 20-43    Filed 12/07/23    Page 82 of 142    PageID 3971
Exhibit 43    Page 297 of 263

28

1    to do with 12(b)(6).

2        Because these changes are so extensive, Your Honor, we

3    think we need a further change to the schedule.  We believe

4    the law says that this is an amendment that requires a

5    resetting of the clock.  But we don't need that much time,

6    Your Honor.  We need just a brief adjustment to the schedule.

7    And we specifically propose that the objection deadline be

8    extended by one week, from May 4th to May 11th.  The reply

9    deadline should be extended by one week, from May 11th to May

10   18th.  And the hearing date should be extended by one week,

11   from May 18th to May 25th, or any day the following week after

12   Memorial Day.

13       The objecting parties should not be prejudiced by Hunter

14   Mountain's continued evolution of their claims.  This is --

15   and this approach is completely fair and reasonable.

16       And we want to touch just for a moment on this concept of

17   derivative standing.  Again, Your Honor, we plan on addressing

18   this in detail in our submission.  We shouldn't be required to

19   set forth all of our arguments before they're fully

20   formulated, pursuant to the Court's scheduling order.  But I

21   do want to make a couple of points.

22       Another attorney representing Hunter Mountain filed what

23   it called the valuation motion.  The first iteration, Your

24   Honor will recall, was actually filed by Doug Draper on behalf

25   of Dugaboy last summer.  Then Louis Phillips represented

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 21-13   Filed 12/07/23   Page 83 of 142   PageID 3972

29

1   Hunter Mountain.  When that motion was denied, the Stinson

2   firm came in and represented Hunter Mountain.  They filed a

3   new valuation motion.

4       Here's the irony, Your Honor.  Mr. Dondero and Hunter

5   Mountain and Dugaboy keep telling the Court assets exceed

6   liabilities.  Assets exceed liabilities.  And you know our

7   position on that, Your Honor.  They may; they may not.  It's

8   also irrelevant at the end of the day because of the

9   indemnification claims.  And we'll talk about that more in a

10  moment.

11      But the important thing is that, if assets exceed

12  liabilities, how could anybody other than, according to Hunter

13  Mountain, Hunter Mountain have been harmed by anything?

14  Creditors, according to Mr. Dondero, are getting paid in full.

15  How could any of these allegations have harmed any beneficial

16  holder of an interest in the Claimant Trust today?  According

17  to Mr. Dondero, they're going to get paid a hundred cents on

18  the dollar.  Where's the damages?

19      There's no derivative claim here.  This is a -- this is an

20  action by and for Hunter Mountain and nobody else.  And it's

21  frivolous.  And we will prove that.

22      Make no mistake.  The Trust and the Reorganized Debtor has

23  a substantial outcome in this motion, and that's why I'm here.

24  I'm here because the Trust has substantial indemnification

25  obligations.  Mr. Dondero seems to forget that.  But those

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 201-43    Filed 2/07/23    Page 84 of 142    PageID 3973

30

1    indemnification obligations are real, and the Trust and the

2    Reorganized Debtor have an affirmative duty on behalf of the

3    Claimant Trust beneficiaries to make sure that baseless

4    litigation is nipped in the bud.  And that's why I'm here.

5        There is no rule of law that says you let the fox into the

6    henhouse simply because the fox fabricates a story that the

7    henhouse is on fire.  The henhouse is not on fire, and an

8    evidentiary hearing will prove that.

9        As for the subject at hand, it's important to remember

10   that the underlying motion is not a defendant's motion to

11   dismiss, but rather it's Hunter Mountain's motion for leave to

12   file a complaint under the gatekeeper.  The burden has

13   shifted.  They have the burden, not the putative defendants,

14   but Hunter Mountain.

15       The gatekeeper provision was contained in Highland's plan,

16   it was confirmed by this Court, and it was confirmed -- it was

17   affirmed by the Fifth Circuit Court of Appeals.

18       We appreciate the Court's preliminary view that an

19   evidentiary hearing is appropriate here, and we understand why

20   there's two reasons for that:  Because they put declarations

21   into the record; and more importantly, because the gatekeeper

22   provision requires it.

23       Hunter Mountain's objection to an evidentiary hearing is

24   disingenuous.  Mr. Patrick, Mr. Dondero, Hunter Mountain, they

25   all know the gatekeeper analysis is not a 12(b)(6) analysis,

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 20-145    Filed 12/07/23    Page 85 of 142    PageID 3974

31

1    for at least the following reasons.  Mr. Dondero and his

2    affiliates have been fighting the gatekeeper provision since

3    the moment it was proposed.  They fought it at confirmation,

4    they appealed it to the Fifth Circuit, they objected when this

5    Court entered an order approving the gatekeeper without

6    modification, in conformity with the Fifth Circuit's decision,

7    and then going back to the Fifth Circuit to challenge the

8    gatekeeper.

9         Why would you do all of that?  Why would you spend that

10   money?  Why would you exhaust every potential avenue?  If you

11   thought it meant nothing, if you thought it was a less

12   standard than 12(b)(6), who would do that?  I think their

13   conduct proves that they know the standard is substantially

14   higher.  And if they only read the Court's confirmation order,

15   they would know that for certain.

16        Hunter Mountain's own pleadings prove that they know this

17   is not a 12(b)(6) standard.  If they thought it was a 12(b)(6)

18   standard, they wouldn't have specifically and expressly asked

19   the Court to look beyond the four corners of the complaint.

20   Right?  That's what they did in Paragraph 1 of their motion,

21   the very first document filed here, Docket No. 3699, Paragraph

22   1:  The motion is supported by the declarations of Jim

23   Dondero.

24        Why would you do that if you thought all the Court had to

25   do was look at the four corners?  They'll never be able to

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-143   Filed 12/07/23   Page 86 of 142   PageID 3975

32

1    rationally explain that.  They're attempting to, and I hope

2    the Court won't let them, they're attempting to withdraw the

3    declarations today because they found out afterwards that when

4    you put declarations into the record people are allowed to

5    cross-examine.

6         The Court should not allow Hunter Mountain to play these

7    games.

8         There's more.  They know they don't have the goods here.

9    How do you know they don't have the goods here?  Because the

10   facts are based on Mr. Dondero and Mr. Dondero alone.  This

11   email that he sent to Mr. Seery in December 2017, as well as

12   this phone call or phone calls that he allegedly had with one

13   or two representatives of Farallon.  This is all Mr. Dondero.

14   He had all of this information in the spring of 2021.  Did he

15   bring anything to this Court's attention?  No.  You know what

16   he did?  He sought discovery.  And he filed a 202 petition in

17   Texas state court.

18        If you have the goods, if you have the evidence, bring

19   your claim.  He didn't do that because he knew he didn't have

20   the evidence.  He knew he didn't have the goods.  So they went

21   fishing.  They went fishing to state -- Texas state court, and

22   they came up with nothing.  Right?  It was removed to this

23   Court.

24        Your Honor will recall that in early 2022 Your Honor had a

25   hearing and remanded it back to state court.  Mr. Dondero

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-43   Filed 24/07/23   Page 87 of 142   PageID 3976

33

1   filed another declaration with another version of his phone

2   call with Farallon.  And Texas state court dismissed the

3   petition.

4        Hunter Mountain waits seven months.  I don't know why they

5   wait seven months, but they wait seven months.  They have the

6   same evidence.  They don't file a complaint.  Instead, Hunter

7   Mountain files another 202 petition, searching for evidence.

8   They went fishing again, and again went home empty, with Mr.

9   Dondero's third recitation of his conversation with Farallon,

10  but a second and different Texas state court said, no dice, no

11  discovery.

12       That's why they're here now, because they swung and they

13  missed twice.  They have no better evidence today than they

14  did in the spring of 2001 [sic] when a decision was made that

15  they didn't have enough to bring an action.  They know

16  12(b)(6) is not the standard here, Your Honor.

17       Mr. Stancil is here today on behalf of Mr. Seery.  I

18  understand Mr. Stancil wants to introduce himself to the Court

19  and provide some very preliminary views on the gatekeeper

20  standard and related matters.  Highland -- Holland & Knight is

21  here on behalf of the Claim Purchasers, and I'm sure they'll

22  want to weigh in.

23       In the end, Your Honor, this was supposed to be a status

24  conference.  There's nothing for the Court to decide.  A

25  scheduling order was in place, and we'd respectfully request

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 201-43   Filed 12/07/23   Page 88 of 142   PageID 3977
Exhibit 43   Page 257 of 263

34

1   that it be adjusted in light of, you know, these amended

2   pleadings.  I don't know why they -- you know, their amended

3   pleadings.  Just look at the blackline.

4       We should have the allotted time to respond to these

5   issues, and we will do so.  And I'm very confident that at the

6   completion of briefing the Court will find it not only

7   appropriate but necessary to hear evidence on this motion.

8       That's all I have, Your Honor.

9           THE COURT:  All right.  Let me be clear.  The

10   redline, should I have it somehow?  It was not filed on the

11   docket.  You're wanting --

12          MR. MORRIS:  It was not, Your Honor, --

13          THE COURT:  Okay.

14          MR. MORRIS:  -- just to be clear.  I think -- I

15   brought to Mr. McEntire's attention this morning that the

16   Court's prior instruction in this case was that when you were

17   going to file amended documents, when you were going to use

18   amended documents, that blacklines should be filed with the

19   Court.  And a blackline was sent I believe to Ms. Ellison and

20   to all counsel of record, but it wasn't filed on the docket.

21   And I respectfully request that it be put on the docket,

22   because I think that needs to be part of the record of this

23   case.

24          THE COURT:  Okay.  I just -- I got from Traci the

25   redline.

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-143   Filed 2/07/23   Page 89 of 142   PageID 3978

35

```
1          MR. MORRIS:  Yeah.  Just open it up.  You'll see.
2          THE COURT:  It was not sent to her until 12:00 noon,
3   and then she sent it to me at 1:00-something.  So I've got it
4   now.  All right.  There it is.  It's 43 pages.
5          MR. MCENTIRE:  Your Honor?  May I respond very
6   quickly to the --
7          MR. MORRIS:  No.  Your Honor?  Your Honor?
8          THE COURT:  I'll let you have rebuttal argument at
9   the end, --
10          MR. MCENTIRE:  Fair enough.
11          THE COURT:  -- after I've heard from all of the other
12   parties in interest.
13      So, who wants to go next?  Mr. McIlwain or counsel for Mr.
14   Seery, Mr. Stancil?  Who wants to go next?
15          MR. STANCIL:  Your Honor, I think it's -- well, this
16   is Mark Stancil for Mr. Seery.  I think it's my turn.
17          THE COURT:  Okay.
18          MR. STANCIL:  And I'll try to be brief, Your Honor.
19   I think it'd be helpful mostly to explain just in a little bit
20   of detail why we agree completely with Mr. Morris's statement
21   that Your Honor should await full briefing on this issue.
22   Just in response to certain of the comments made earlier by
23   the Plaintiffs, I'd like to just sort of maybe level-set a
24   little bit.
25      For starters, I was confused that Mr. McEntire said he did
```

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 21-43    Filed 2/07/23    Page 90 of 142    PageID 3979

36

1    not look for cases under *Barton*, because Your Honor

2    specifically cited *Barton* in the confirmation order in

3    approving the gatekeeper provision, which I believe it's in

4    Paragraph 80 in the confirmation order on Page 58.  That's

5    Docket No. 1943.  And Your Honor specifically cites the

6    Supreme Court's *Barton Doctrine*.

7        Moreover, that followed recitation of the extensive

8    factual findings that supported the requirement of a rigorous

9    gatekeeping requirement, including Paragraph 77, which the

10   Court found as fact that Mr. Dondero and the Dondero-related

11   entities have harassed the Debtor, which has resulted in

12   further substantial, costly, and time-consuming litigation for

13   the Debtor.

14       And as particularly relevant here, the Court further found

15   that this harassment had been specifically directed at Mr.

16   Seery, among others.

17       The Court further found in Paragraph 78 that Mr. Dondero's

18   abuse of litigation "was consistent with his comments as set

19   forth in Mr. Seery's credible testimony that if Mr. Dondero's

20   plan proposal was not accepted he would 'burn down the

21   place.'"

22       So, accordingly, Your Honor, the reference to *Barton* is

23   very much a robust gatekeeping entity -- requirement.  And

24   we're exactly today where the Court had predicted in entering

25   this order, that the costs and distraction of this litigation

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 12/07/23   Page 91 of 142   PageID 3980

37

1    are substantial.  And if all we're doing is replicating a

2    12(b)(6) hearing on a motion for leave, we're actually not

3    doing anything to reduce, as the Court made clear, the

4    burdens, distractions, of litigation.

5        The Fifth Circuit likewise cited *Barton* in its order

6    affirming the confirmation order.  Specifically, it also

7    explained that the provisions, these gatekeeper provisions

8    requiring advance approval were meant to "screen and prevent

9    bad-faith litigation."  Well, that -- if that means only what

10   the Plaintiffs say it does, then it really doesn't do anything

11   at all to screen.  There's no gatekeeping because their

12   version of what that means is always policed under 12(b)(6)

13   standards.

14       Moreover, the essence of bad faith is saying things in a

15   complaint that are not true and are easily proved to be false.

16   You know, the irony of their position is if you lard a

17   complaint up with absolute falsehoods and lies, well, those

18   have to be taken as true, and so, you know, they'll survive

19   the motion to dismiss, and so therefore we can file it.  That

20   would turn the bad faith essence of the gatekeeping provisions

21   here on their head.

22       So we think this is all about *Barton* and its progeny.  But

23   I would also provide Your Honor with maybe a 30-second preview

24   of why we think *Barton* does have clear support for evidentiary

25   hearings.

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-43    Filed 12/07/23    Page 92 of 142    PageID 3981

38

1       We -- I will refer Your Honor to a recent decision of the

2   Fifth Circuit in a case *In re Foster*, 2023 WL 20872.  And that

3   was from January of this year, in which the Fifth Circuit

4   affirmed a determination that a post-effective-date litigation

5   could not be brought against the trustee.  It's got a little

6   bit of a complicated history, but I would -- I'll summarize to

7   say the suit was filed in the state court, removed to federal

8   court, and then there was a bankruptcy hearing, evidentiary

9   hearing, and ultimately the Bankruptcy Court's decision was

10  affirmed.

11      And we know there's an evidentiary hearing because if we

12  look at the District Court's appeal opinion in that case, 2022

13  WL 160240 at *3, it specifically notes an evidentiary hearing

14  because they had put a factual question before the Court.

15      But as a further preview to a brief that you'll be

16  receiving from us, I think our count is up to nine circuits

17  that apply an abuse of discretion standard to reviews of

18  determinations under *Barton*.  And of course, an abuse of

19  discretion standard on appeal makes no sense if one is

20  applying a mere 12(b)(6) standard, which, of course, is *de*

21  *novo*.

22      One brief word on *Louisiana World*, Your Honor, because I

23  believe the analogy they were drawing there is akin to a

24  creditors' committee standing analysis.  We're not at all

25  agreeing that that level of analysis is appropriate here, but

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 31-13   Filed 12/07/23   Page 93 of 142   PageID 3982

39

1    I would add just a couple of things about that case.

2         First of all, that's a pre-effective-date question of a

3    committee's standing to bring a cause of action.  This, we're

4    talking about repeated findings of abuse of process, giving

5    rise to a gatekeeper action that applies beyond the effective

6    date.

7         But that aside for the moment, even in the creditors'

8    committee context, those creditors also have to show that the

9    underlying action is both colorable and also that the party

10   that didn't bring it was unjustified.  So the Court looks

11   beyond the mere 12(b)(6) standard in that context.

12        And I would just flatly disagree with Mr. McEntire's

13   characterization of that decision as saying that evidence is

14   not required.  If Your Honor looks at Footnote 15 in that

15   decision, which is at Page 248, so we're at 858 F.2d 233 at

16   248, the court explained why "an evidentiary hearing was

17   unnecessary under the circumstances."  And the circumstances

18   the court goes on to note are that the officers and directors

19   "did not object at any time to the committee's application"

20   and further found that the committee had demonstrated the

21   existence of a potential cause of action, and the officers and

22   directors neither refuted any of the committee's claims nor

23   objected to them.  "Under the circumstances, we are at a loss

24   to understand just what could have been gained from an

25   evidentiary hearing on an application which drew no

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 20-143   Filed 10/07/23   Page 94 of 142   PageID 3983

40

1    objections."

2        So, respectfully, Your Honor, I don't think that case

3    could possibly stand for a blanket rule that evidence is not

4    appropriate in support of this, this -- even that analysis.

5        I think, Your Honor, the most important thing I'd like to

6    ask for is the opportunity, as Mr. Morris mentioned, to write

7    all this down for you instead of reading case snippets for

8    you.  We're in the middle of writing our brief.  And it has

9    changed quite a bit.  We think the brief will be very helpful.

10       I would add, moreover, that there's no harm to be had by

11   having an evidentiary hearing.  If after full briefing Your

12   Honor were to decide, you know what, this is a 12(b)(6)

13   standard -- we don't think you will; we think it's actually a

14   slam dunk to the contrary -- but the Court can, like in many

15   bench trials, decline to rely on evidence and just say, hey,

16   I'm not going to look at that, and here's -- here's where we

17   go.  But at least then the hearing will be -- we'll have it,

18   and we'll have the record.

19       More importantly, we actually think there's enormous value

20   in getting this right, as the Court of Appeals has told us

21   getting it right under *Barton* and applying the correct

22   scrutiny is required.

23       So, unless the Court has questions, I can turn it back to

24   Mr. Morris or to Mr. McIlwain.

25           THE COURT:  All right.  I don't think I have

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 23-13    Filed 12/07/23    Page 95 of 142    PageID 3984

41

1    questions at the moment of you, but I'll turn to Mr. McIlwain

2    and see if I have any questions for the collective group at

3    that point.  And of course, I'll go back to Mr. McEntire as

4    well.

5        All right.  Mr. McIlwain, go ahead.

6            MR. MCILWAIN:  Thank you, Your Honor.  Brent McIlwain

7    here, again, from Holland & Knight for the Claim Purchasers.

8    Your Honor, I'll be brief and just echo what Mr. Stancil and

9    Mr. Morris said.

10        I guess, from a practical standpoint, though, what I'm

11    most concerned about here is the procedure by which we've

12    gotten to where we've gotten.  It started with a motion for

13    leave to file this complaint on what was supposed to be three

14    days' notice.  The Court denied that, rightly.  That was

15    appealed, and then there was a *mandamus* to the Fifth Circuit,

16    all -- all of which were denied.

17        Here we are on the eve of this status conference,

18    objections are filed, new pleadings are filed.  I think what's

19    being demonstrated is precisely why this Court has a

20    gatekeeper order in place.  Mr. Dondero and his counsel are

21    vexatious litigators, and they're looking for any opportunity

22    to get a leg up on us.  On anybody in their path, frankly.

23    And the Court should give us a reasonable opportunity to brief

24    this, should give us a reasonable opportunity to present our

25    case, and we should know what we're fighting against.  Are we

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 20-143   Filed 12/07/23   Page 96 of 142   PageID 3985

42

1   fighting against a motion for leave that's supported by

2   affidavit or not?  And if we're not, they need to file a new

3   motion or strike the affidavits on the record.

4       We can't have this ever-evolving pushing against a rope to

5   determine what exactly we're fighting against.  And the Court,

6   the Court and the parties who are the subject, frankly, of

7   what are fantastical make-believe theories from Mr. Dondero

8   are entitled to know what the story is.  And we're entitled to

9   know what the pleading is.  And if the pleading is -- as soon

10   as the pleading is set, then we can respond.

11       So we're here to ask the Court, if we want to set a

12   hearing, let's close the pleadings as it relates to Hunter

13   Mountain.  They shouldn't be even filing any further.  Because

14   if they're going to file something further, we need more time.

15   And I'm okay with the schedule that Mr. Morris has outlined,

16   but, frankly, it's generous to Hunter Mountain.

17       Anyway, Your Honor, I don't have anything substantively to

18   add, but we will include a comprehensive response in our

19   responsive brief whenever that filing, whenever we can

20   determine exactly what we're responding to.

21       Thank you, ma'am.

22          THE COURT:  All right.  Mr. McEntire, you're the

23   Movant, you have the last word.

24          MR. MCENTIRE:  Yes, ma'am.  Thank you.  I'll try to

25   be brief here.

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 23-143   Filed 11/07/23   Page 97 of 142   PageID 3986

43

 1        Mr. Morris says -- I wrote down his words -- if you have

 2   the evidence, bring the claim.  The revised --

 3              THE COURT:  I'm sorry, I did not -- I didn't hear

 4   what you said.  Could you repeat what you just said?

 5              MR. MCENTIRE:  Yes, ma'am.  Mr. Morris just told the

 6   Court that if they have the evidence, bring the claim.  We

 7   have the evidence.  And all you need to do is to look at the

 8   four corners of the revised claim that is before you.  And you

 9   do not need to look at the Dondero declarations.

10              THE COURT:  Let me --

11              MR. MCENTIRE:  And we withdraw the Dondero --

12              THE COURT:  Let me -- can I stop you right there?  I

13   mean, --

14              MR. MCENTIRE:  Yes.

15              THE COURT:  -- the point was made by I forget which

16   lawyer now that your original motion for leave attached

17   something like 387 pages of not just Dondero affidavits, but

18   other evidentiary support.  So I'd just like you to respond to

19   that.

20              MR. MCENTIRE:  Sure.

21              THE COURT:  Why did you initially out of the gate

22   think the Court needed to consider 387 pages of attachments?

23   And --

24              MR. MCENTIRE:  We never saw this, Your Honor, we

25   never saw this as an evidentiary inquiry.

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 20-143    Filed 11/07/23    Page 98 of 142    PageID 3987
Exhibit 143    Page 97 of 263

44

1          THE COURT:  But --

2          MR. MCENTIRE:  That was simply background for the

3    Court.  The allegations themselves can --

4          THE COURT:  But stop.  Why would you -- call it

5    background, evidence, whatever you want to call it -- why

6    would you submit all of that if you think I just need to look

7    at the four corners and apply a 12(b)(6) standard?

8          MR. MCENTIRE:  I would suggest -- fair enough.  I

9    would suggest that probably 80 to 90 percent if not more of

10   those documents are from the Court's docket.  They are simply

11   docket references in the Court's docket.  Very little is

12   outside the four corners of the proceedings that you've been

13   administering, Your Honor.

14       They're also referenced in the four corners of our

15   pleading.  The allegations are set forth in the four corners

16   of our pleading.  You don't need to go to the docket -- you

17   may, if you wish -- but you don't need to go to the docket to

18   look at those documents, because the allegations speak for

19   themselves.

20       And the revised complaint that is before you or that was

21   with our motion -- and by the way, responding to one of other

22   counsel's statements, I don't have to seek leave to amend a

23   complaint that has not been filed yet.  What we're seeking to

24   do is we're seeking to bring forth to the Court a complaint

25   for your consideration as to whether we state a colorable

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 20-143   Filed 2/07/23   Page 99 of 142   PageID 3988

45

1    claim.  And we don't need Mr. Dondero's declarations, and we

2    don't -- you don't need to go look at all those documents.

3    You can look at the four corners of our complaint and make

4    that decision.

5         And to -- so we -- Mr. Morris's invitation is we have the

6    evidence, bring the claim.  That's exactly what we're doing.

7    Because if you review the claim, much of which is financial in

8    nature -- and by the way, the -- with all due deference to Mr.

9    Morris, I've heard the name Mr. Dondero probably 50 times

10   during this hearing.  And we don't need Mr. Dondero to support

11   the four corners of this complaint.  And if you look at the

12   complaint itself, there's no reference to Mr. Dondero -- or if

13   there is, it's very few -- in the complaint itself.  And this

14   is -- Mr. Dondero is not bringing this particular motion.

15   This is a motion by Hunter Mountain.  Mr. Dondero is not

16   directing the filing of this motion.  This is a motion filed

17   on behalf of Dondero and -- excuse me, on behalf of Hunter

18   Mountain, and hopefully on behalf of the Reorganized Debtor

19   and the Claimant Trust.

20        And so when we hear Mr. Dondero, it's an attempt to

21   distract the Court.  And what we need to do is just take a

22   step back, not have distractions, look at the complaint, and

23   under a 12(b)(6) standard, which is the appropriate standard

24   at most, I think the Court will find that we have stated far

25   more than a colorable claim.

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-143    Filed 24/07/23    Page 100 of 142    PageID 3989

46

1     I will also point out that Mr. Morris has not identified

2  one single case suggesting or supporting his position.  Not

3  one single case.  And counsel for Mr. Seery has really not

4  addressed the *Louisiana* case that we've identified in an

5  effective way.

6          THE COURT:  He said -- he said --

7          MR. MCENTIRE:  If he wants additional --

8          THE COURT:  He said that was in a pre-confirmation

9  context, and he pointed out the recent *Foster* case.  What is

10  your response to the recent *Foster* case?

11         MR. MCENTIRE:  The issue here is colorability.  And I

12  don't have the recent *Foster* case before me.  The issue is

13  colorability.  There's nothing in the Court's gatekeeping

14  protocols in the plan that changes the standard.  The standard

15  is the same as the Fifth Circuit has articulated, and that is

16  to -- that it's not a fruitless claim, --

17         THE COURT:  But the question is, --

18         MR. MCENTIRE:  -- that there's some evidence.

19         THE COURT:  The question is whether the hearing that

20  is required by the plan -- which said the Bankruptcy Court,

21  after notice and a hearing, will determine whether an action

22  should go forward -- whether the hearing contemplates

23  evidence.  Does the Court need to hear evidence?  And to me,

24  that partly turns on what my legal standard is.

25     In *Foster Mortgage*, --

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 28-143   Filed 07/03/23   Page 101 of 142   PageID 3990
Exhibit 43   Page 248 of 263

47

1            MR. MCENTIRE:  Yes.

2            THE COURT:  -- the court heard evidence.  And it was

3 a *Barton* motion, which, as I identified, I think is a pretty

4 darn analogous situation.

5      And I'll just let you know, my law clerk found a case from

6 the Third Circuit, *Barton Creek*, where they considered

7 evidence.  *Vistacare Group*, ==678 F.3d 218== (3rd Cir. 2012).

8      So, again, I am just here to figure out what kind of

9 hearing we set.  And maybe --

10            MR. MCENTIRE:  That --

11            THE COURT:  Maybe it's just -- maybe it's premature.

12 Maybe I can't make that decision today because I have

13 apparently very different views on whether evidence is

14 appropriate and what my legal standard is.  Maybe we need to

15 just hear the briefing --

16            MR. MCENTIRE:  We will take a look at the *Foster*

17 case, Your Honor.  And, as appropriate, I will -- we'll

18 provide counsel our views on that.  He's raised the issue, and

19 we would like to be able to respond.

20      With regard to the schedule, I would suggest to the Court

21 that the schedule as it exists is appropriate and sufficient

22 because there's more than 24 or 25 days to respond to this

23 pleading.  And -- number one.  Number two, regardless of how

24 Mr. Morris liked to characterize the redline or the blackline

25 or whatever-line, the bottom line is the pleading has actually

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-143    Filed 12/07/23    Page 102 of 142    PageID 3991
Exhibit 143    Page 49 of 63

48

1    been streamlined.  We've actually dropped a claim.  We dropped

2    one of the causes of action.  And what has been included --

3              THE COURT:  Which one was dropped?

4              MR. MCENTIRE:  -- is the fraud that --

5              THE COURT:  Which one was dropped?

6              MR. MCENTIRE:  Fraud.  We dropped fraud.  We

7    reorganized the pleading with a very large introductory

8    section.  And so what appears to be a lot of redline is a lot

9    of just procedural reorientation of the pleading.

10        And the other thing I would point out, we have asserted a

11   fraudulent concealment discovery rule allegation, and we have

12   enhanced our conflict allegations against Mr. Seery.

13        We have also taken advantage of the financial data that

14   just came out last week and incorporated some of that.

15        So a lot of this has occurred and a lot of our changes to

16   the pleading have occurred or additions have occurred since

17   the filing of the original motion.  And so we don't believe

18   there's -- the substantive nature of our allegations have not

19   changed.  We have added one or two additional declaratory

20   judgment actions, and that's it.

21        And so setting aside attempts to mischaracterize

22   expediently what may or may not be, I simply ask the Court to

23   look at what's before it and to try to kind of pierce through

24   the argument and perhaps a misdirection.  Because, very

25   clearly, the case has actually been lessened and is more

Case 19-34054-sgj11 Doc 3784-45 Filed 05/11/23 Entered 05/11/23 22:26:49 Desc
Case 3:23-cv-02071-E Document 28-43 Filed 07/07/23 Page 103 of 142 PageID 3992
Exhibit 43 Page 5070/233

49

1   streamlined than anything.

2       With that, Your Honor, I would simply go back and say

3   this.  I don't believe we need to extend the briefing deadline

4   any further.  Mr. Dondero is not necessary for this Court's

5   inquiry to determine what the appropriate standard is and

6   whether evidence is required.  We believe we are correct.  We

7   will brief the *Foster* case and take a look at it since counsel

8   has raised it.

9       And I would, again, underscore the fact that Mr. Morris

10  came in here today, talked for 30 minutes, and didn't offer

11  the Court one single case citation.

12      Thank you.

13          THE COURT:  All right.  Well, he did start out by

14  saying he didn't think we were going to discuss legal

15  authority today.

16          MR. STANCIL:  Your Honor, I don't want to reopen the

17  wound, but if Your Honor wants cases, I've got -- I think I'm

18  -- I have nine I could cite at the moment for the standard of

19  review under *Barton*.  It is not a 12(b)(6) standard.  I assume

20  Your Honor will ask if she wants those today or just wants to

21  get those in our brief.

22          THE COURT:  I want to --

23          MR. STANCIL:  But I would hate for the record --

24          THE COURT:  I want to get briefs.  And in thinking

25  through what kind of mini-scheduling order we're going to

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 28-143   Filed 09/06/23   Page 104 of 142   PageID 3993

50

1    have, I'm going to think out loud a bit.  I will just tell

2    you, I feel like this is -- deciding what is a colorable

3    claim, I just strongly am inclined to think it's a mixed

4    question of fact and law.  Okay?  And I am strongly inclined

5    to think the Court's best guidance is from the *Barton Doctrine*

6    cases.

7         And, again, I remember that *Foster* case from January.

8    It's been three months since I've read it and I can't remember

9    if they talked about legal standard or what kind of hearing

10   you have to any great extent.  But I do know the Court in Fort

11   Worth heard evidence on that.

12        And, again, this Third Circuit case, *Vistacare* -- hang on.

13   The court, just in Footnote 12, the Third Circuit points out

14   evidence was presented and considered.

15        So I tend to think those are the most analogous cases, the

16   *Barton Doctrine* cases.  So I am going to allow briefing on (a)

17   is it appropriate for the Court to hear evidence, and (b) any

18   authority you can find regarding what is the appropriate legal

19   standard.  Colorable.  I mean, those are actually closely

20   overlapping issues, right?  I guess they're one and the same,

21   right?  Because plausible, Rule 12(b)(6), you usually stick

22   within the four corners of the documents, although you can

23   take judicial notice of pleadings and the record in the case.

24   But it looks like most of these *Barton Doctrine* cases have

25   allowed evidence, suggesting it's at least a different

1   standard than 12(b)(6).

2       So I'm going to allow briefing on that, and we're going to

3   talk about dates.  But I'm just, I'm trying to decide -- and

4   maybe I should get your comments on this, actually -- should

5   we have legal briefing on other issues besides just what does

6   the colorability standard entail.

7       Because here are a couple of things that just kind of make

8   me wonder, do we need an evidentiary hearing or not?  Do we

9   have a legal question here about is all of this -- is this

10  complaint, the claims in the complaint, would these be

11  administrative expense claims that should have been asserted a

12  long time ago?  Does anyone want to talk about that?  I mean,

13  maybe I'm getting way ahead of myself.  But the whole idea of

14  Hunter Mountain is bringing these derivatively on behalf of

15  the Reorganized Debtor.  Well, maybe that negates my theory.

16  I don't know.  But I just think is this something -- maybe I'm

17  all off.  Maybe you all have thought about this a little more.

18          MR. MORRIS:  Your Honor, yeah, if I may.

19          THE COURT:  Okay.

20          MR. MORRIS:  Number one, I hope whatever schedule the

21  Court decides upon, that we stick to the schedule and that we

22  don't have random briefs getting filed.

23      At this point, Your Honor, whether it's May 4th or May

24  11th, I think the objecting parties are going to address the

25  two issues that you've identified, whether or not this should

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-43    Filed 05/07/23    Page 106 of 142    PageID 3995

52

1    be an evidentiary hearing and the standard of colorability.

2    I'm also quite confident that other legal issues will be

3    addressed, including whether or not Hunter Mountain has a

4    legal right to even assert a derivative claim, whether or not

5    duties are owed that would support some of these causes of

6    action.

7        So there are other legal issues that we plan to address.

8    But I would respectfully request that, whether it's May 4th or

9    May 11th, you allow the objecting parties to file their

10   papers, and then whether it's May 11th or May 18th, Hunter

11   Mountain gets one and only one chance to respond in their

12   reply.  That's what the scheduling order is intended to do.

13       And I heard Mr. McEntire refer to yet another so-called

14   supplement, and I don't want to chase a new brief every two

15   days.  That's not the way the process --

16               THE COURT:  Well, --

17               MR. MORRIS:  -- is intended to work.

18               THE COURT:  -- absolutely.  We're going to have --

19               MR. MORRIS:  And -- and --

20               THE COURT:  -- a firm scheduling order.  But what I

21   was thinking out loud about was would I hear or consider,

22   entertain briefing on any subject besides the legal standard

23   and do we have evidence.  Because there are a couple legal

24   issues out there swirling around.  I don't know if my

25   administrative expense argument/concern even makes sense,

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 28-143   Filed 05/04/23   Page 107 of 142   PageID 3996
Exhibit 43   Page 254 of 263

53

1  because I'm not sure who's saying who was harmed here.  But

2  maybe it just doesn't make sense.

3       But another thing swirling around is do we have

4  essentially complaints about claims trading?  Claims trading?

5  And I don't know if we want to get into that or not, but

6  claims trading in bankruptcy is a pretty unregulated -- it's

7  just kind of between the claims trader and the transferee.

8  And so as far as do we have a colorable claims here, I'm

9  wondering if there's some legal briefing with regard to the

10  nature of the claims.

11       Thoughts?

12            MR. MORRIS:  Well, --

13            THE COURT:  Do we want to keep this solely legal

14  standard and evidence, or allow briefing of a broader nature?

15  I'm trying to be clear up front because I don't want one party

16  giving me a huge brief going into 14 issues if that's not what

17  --

18            MR. MORRIS:  Yeah.  And I would only say, Your Honor,

19  that this motion is, in certain respects, no different than

20  any other motion.  A party files a motion, people are allowed

21  to object, there's a reply, and there's a hearing.  And we

22  don't want that process to change one bit.

23       We think that there's a legal issue.  If any objecting

24  party believes that there's a legal issue that they feel like

25  bringing to the Court's attention, it'll be contained in the

54

opposition brief. If Hunter Mountain wants to reply to that,

they may. If they don't, they don't.

We have a schedule. You know, we'll just ask you for a

one-week adjustment to take into account the latest pleadings

that have been filed. But otherwise, this is a motion,

there's an opposition, there's a reply, and there's a hearing.

And we really would prefer to just keep it that way.

MR. MCENTIRE: Well, I agree with Mr. Morris, Judge,

at least on the issue of the sequencing of the objection and

the reply.

We still believe that May 4th is an appropriate date and

we ought to keep the original schedule as they requested

because of the nature of the pleadings that are before the

Court, as I mentioned.

THE COURT: All right. Well, I've been scrolling

through the redline. I see a lot of red. I know you say some

of it's just rearranged, but I see a lot of red. So I think

their request for a little more time is appropriate.

So, May 11th for objections and any briefs in support of

objections. May 18th for a reply of Hunter Mountain and any

briefing in support of the reply. And then a hearing May 25th

or thereafter. Speak up, anyone who disagrees with this

scheduling.

MR. MCENTIRE: Our statement, I just note it for the

record, Your Honor.

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-14    Filed 09/07/23    Page 109 of 142    PageID 3998
Exhibit 43    Page 2567 of 33

55

1      So, with regard to the evidentiary issue, obviously, if

2  the Court determines that it's going to be an evidentiary

3  hearing, which we object to and oppose, I would reserve the

4  opportunity to revisit the issue of withdrawing Mr. Dondero's

5  declarations.

6      I will tell the Court, we're prepared to do so if this is

7  not an evidentiary hearing, and we do not believe it should be

8  an evidentiary hearing.

9          THE COURT:  All right.

10          MR. MCENTIRE:  I believe -- I think my position --

11          THE COURT:  Wait.  I'm hearing argument again.  Right

12  now, I'm just talking about dates.

13          MR. MCENTIRE:  Understood.

14          THE COURT:  And May 25th or as soon thereafter as you

15  can be heard.  Any opposition to that?  I mean, basically, I'm

16  just asking you to speak up, Mr. Morris's suggestion of these

17  new dates:  Anything you want to say about that?

18          MR. MCENTIRE:  I do believe that my corporate

19  representative is going to be unavailable on May 25th, and so

20  we would ask that we keep the original schedule.

21          MR. MORRIS:  Your Honor, I would propose, as an

22  alternative to the 25th, since the 26th is the Friday before

23  Memorial Day weekend, either the 30th, the 31st, or June 1st,

24  with the 31st and the 1st being ideal, so we don't have to

25  travel on the holiday weekend.  I don't know what other folks'

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-143    Filed 05/07/23    Page 110 of 142    PageID 3999

56

1  schedules look like, but --

2          THE COURT:  Okay.

3          MR. MORRIS:  -- that seems to make sense to me.

4          THE COURT:  What about May 31st or June 1st?  And

5  Traci, please let me know if I'm offering something I can't.

6          THE CLERK:  Judge Jernigan, will you be giving a full

7  day for the hearing?  If so, neither one of those dates work.

8  You could do the day after Memorial Day, May 30th.  Or Friday

9  of that week, May 2nd.  I'm sorry, June 2nd.

10         MR. MORRIS:  I'd prefer May 30th.

11         THE COURT:  All right.

12         MR. MCENTIRE:  My corporate representative -- my

13 corporate representative is not available on May 30th.  He's

14 returning on the 31st from a vacation.  And so, under the

15 circumstances, we would request June 2nd.

16         THE COURT:  Anyone have a problem with June 2nd?

17         MR. MORRIS:  Can we go -- can we go with May 24th?

18         MR. MCENTIRE:  My corporate representative is out the

19 week from May 21st to May 31st.

20         THE COURT:  Okay.  Say again.

21         MR. MCENTIRE:  I just received an --

22         MR. MORRIS:  June 2nd.

23         THE COURT:  Wait.  Wait, wait, wait, wait.  May 21st

24 through May 31st?

25         MR. MCENTIRE:  Yes, ma'am.

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 28-14   Filed 08/07/23   Page 111 of 142   PageID 4000
Exhibit 43   Page 258 of 263

57

1          THE COURT:  Okay.  I'm just --

2          MR. MCENTIRE:  So, under the circumstances, we would

3    request --

4          THE COURT:  I'm just letting you know, I am going to

5    set aside a whole day.  Okay?  I don't know positively is it

6    going to be evidentiary.  What I'll do is, after the reply

7    briefs, shortly after May 18th, I'll notify people you're

8    going to be allowed to put on evidence or not.

9       But for your planning purposes, based on what I've looked

10   at right now, again, the *Barton Doctrine* cases by analogy, it

11   looks like the Court has discretion to hear evidence.  Okay?

12   So if people want to put on evidence, they're entitled to put

13   on evidence.  Okay?  You don't have to.  Nobody has to.  But I

14   think the Court in its discretion is going to hear it.

15      So I may read the briefs and do research, and if I change

16   my mind, I'll let you all know May 19th or 20th.

17      All right.  So, that being the case, it's difficult,

18   because we're trying to find a whole day just in case we need

19   the whole day.  You just said your client representative,

20   which is -- who is your client representative?

21          MR. MCENTIRE:  Mr. Patrick.

22          THE COURT:  He's gone May 21st through 31st?

23          MR. MCENTIRE:  Yes, Your Honor.

24          THE COURT:  All right.  Did I hear June 2nd did not

25   work for somebody else?

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 163    Filed 09/07/23    Page 112 of 142    PageID 4001
Exhibit 43    Page 297 of 363

58

1          MR. MORRIS:  Correct.  Yeah, Your Honor.  I'll be --

2   I'll be out of the country beginning the evening of the 2nd,

3   returning the following Tuesday, so whatever date that is.  I

4   think the 6th.  So I'd be prepared to go on the 8th or the 9th

5   of June.

6          THE COURT:  Okay.  So, I'm sorry, you're out the 2nd

7   through 9th?  Is that what I heard?

8          MR. MORRIS:  The 2nd -- the 2nd through the 6th, but

9   I wouldn't want to do it on the 7th.

10          THE COURT:  Okay.  Well, --

11          MR. MORRIS:  Or Thursday or Friday, June 8 or 9.

12          THE COURT:  Okay.  Anyone have a problem with June 8

13   or 9?

14          MR. MCENTIRE:  Your Honor, the 8th is vastly

15   superior, but I will confess the 9th is a college friend who

16   will be staying at my house with my wife and kids, and my wife

17   shouldn't be subjected to having to host him, but -- so if the

18   8th is available, I will beg for the Court's indulgence.  But

19   I'll be here on the 9th if that's requested.

20          THE COURT:  Okay.  Everyone good, --

21          MR. MCENTIRE:  I might need a note.

22          THE COURT:  -- June 8th?  Everybody good with that?

23     Okay.  I'm hearing no objection.  Traci, am I available?

24          THE CLERK:  Yes.  You have a Chapter 13 docket that

25   afternoon, but I am sure we can work something out with Mr.

Case 19-34054-sgj11    Doc 3784-45    Filed 05/11/23    Entered 05/11/23 22:26:49    Desc
Case 3:23-cv-02071-E    Document 28-143    Filed 06/07/23    Page 113 of 142    PageID 4002
Exhibit 143    Page 2070 of 33

59

1    Powers.

2              THE COURT:  Okay.  So --

3              MR. MCENTIRE:  Your Honor?  Your Honor, this is

4    Sawnie McEntire.  For the record, I do need to lodge my

5    objection, but I understand the conflicts.  And so, subject to

6    my objection, we agree to that date.

7              THE COURT:  All right.  So we'll start 9:30 in the

8    morning, June 8th.  And so I'm going to look for a scheduling

9    order that uses these revised dates that I think I've heard

10   you all will live with.  May 11th for objections to the motion

11   for leave, and that will include any briefs in support of the

12   objections.  And then May 18th for Hunter Mountain's reply and

13   any briefing in the reply that responds to the objections.

14   And shortly after that my courtroom deputy will let lawyers

15   know, yes, she's going to hear evidence, or no, she's not

16   going to have evidence.  And the hearing will be June 8th at

17   9:30 in the morning.

18        Any other housekeeping matters while we are here?  I mean,

19   these are the only pleadings that are going to be allowed.

20   How about that, among other things, as a housekeeping matter?

21   Just these pleadings, except, obviously, if we have live

22   witnesses and evidence on the 8th, you'll be bound by the

23   Local Rule that says witness and exhibit lists are due three

24   days before.  Anything else that you all can think of?

25             MR. MORRIS:  Your Honor, if I may, I greatly

Case 19-34054-sgj11   Doc 3784-45   Filed 05/11/23   Entered 05/11/23 22:26:49   Desc
Case 3:23-cv-02071-E   Document 18-13   Filed 06/16/23   Page 114 of 142   PageID 4003

60

1    appreciate your patience today.  But I did want to just

2    inquire as to the status of the decisions on the SE

3    Multifamily HCRE matter as well as the motion to dismiss that

4    was argued back in January.  Not because I intentionally or

5    unintentionally seek to pressure the Court, but I do think

6    that those decisions will be helpful one way or the other

7    resolving, you know, or getting some clarity in this case.

8         THE COURT:  All right.  Well, the next of those two

9    items that comes out will be the SE Multihousing matter.  My

10   law clerk that's working on that is right over here to my

11   right.  And we think before the end of the week, but we are

12   juggling lots of things, as you might imagine.  So that one is

13   next, and I'm hesitating to give you a time estimate on the

14   other one, but it'll be next in the queue.  We've had lots of

15   different adversary proceedings in other cases that we've had

16   to --

17        MR. MORRIS:  Yeah.

18        THE COURT:  -- work on.  But I think, again, SE is

19   probably towards the end of this week.

20        MR. MORRIS:  All right.  We appreciate the guidance,

21   Your Honor.

22        THE COURT:  Okay.  She's giving me a thumbs up like

23   I'm not overpromising.  You can't see her from the video.

24       All right.  So, everyone clear?  I want to say in the

25   strongest terms that I don't want an avalanche of pleadings.

1   Is everyone a hundred percent clear that we get the objections

2   with supportive briefing May 11th, reply with supportive

3   briefing on the 18th, and that's it?  That's it.  Other than

4   witness and exhibit lists, --

5            MR. MORRIS:  Yes, Your Honor.

6            THE COURT:  -- if we have evidence.  Everybody clear?

7   Any questions?

8            MR. MCENTIRE:  No, ma'am.  Thank you.  Thank you for

9   your time.

10           THE COURT:  Okay.  Thank you.  We are adjourned.

11           THE CLERK:  All rise.

12       (Proceedings concluded at 3:12 p.m.)

13                        --oOo--

14

15

16

17

18

19

20                    CERTIFICATE

21       I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    **/s/ Kathy Rehling**                        **04/25/2023**

24   _____     _____
     Kathy Rehling, CETD-444                      Date
25   Certified Electronic Court Transcriber

62

INDEX

PROCEEDINGS                                                              3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS

Dugaboy Investment Trust and Hunter Mountain Investment                 7
Trust's Motion for Leave to File Proceeding (3662)

Status Conference re: Motion for Leave to File Verified                49
Adversary Proceeding filed by Creditor Hunter Mountain
Investment Trust (3699)

END OF PROCEEDINGS                                                      61

INDEX                                                                   62

# EXHIBIT 44

**EXECUTION VERSION**

## LITIGATION SUB-TRUST AGREEMENT

        This Litigation Sub-Trust Agreement, effective as of August 16, 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), Wilmington Trust, National Association, a national banking association ("WTNA"), as Delaware Trustee (in such capacity hereunder, and not in its individual capacity, the "Delaware Trustee"), and Marc S. Kirschner as trustee (the "Litigation Trustee," and together with the Claimant Trustee and Delaware Trustee, the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

        WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

        WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on February 22, 2021, pursuant to the *Findings of Fact and Order Confirming Plan of Reorganization for the Debtor* [Docket No. 1943] (the "Confirmation Order");

        WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

        WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the Employee Claims; and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The confirmed Plan included certain amendments filed on February 1, 2021.  *See Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Docket No. 1875, Exh. B.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1    Certain Definitions.    Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan. For all purposes of this Agreement, the following terms shall have the following meanings:

(a)    "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b)    "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c)    "Claimant Trust Agreement" means the Claimant Trust Agreement dated August 11, 2021, by and between the Debtor, Claimant Trustee, and Wilmington Trust, National Association, as Delaware trustee thereunder.

(d)    "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

DOCS_NY:43848.5 36027/002

004641

(e)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(g)     "Delaware Trustee" has the meaning set forth in the introduction hereof.

(h)     "Disability" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(i)     "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(j)     "Employee" means the employees of the Debtor set forth in the Plan Supplement.

(k)     "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(l)     "Litigation Sub-Trust" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

(m)     "Litigation Sub-Trust Agreement" means this Agreement.

(n)     "Litigation Sub-Trust Assets" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

(o)     "Litigation Sub-Trust Beneficiary" means the Claimant Trust.

(p)     "Litigation Sub-Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without any limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

(q)     "Litigation Sub-Trust Expense Cash Reserve" means $1.5 million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the Litigation Sub-

Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

(r)    "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

(s)    "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t)    "Plan" has the meaning set forth in the Recitals hereof.

(u)    "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(v)    "Securities Act" means the Securities Act of 1933, as amended.

(w)    "TIA" means the Trust Indenture Act of 1939, as amended.

(x)    "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y)    "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2    General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.   "Includes" and "including" are not limiting and "or" is not exclusive.   References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement. Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.   References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3    Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

DOCS_NY:43848.5 36027/002

004643

## ARTICLE II.
## ESTABLISHMENT OF THE LITIGATION SUB-TRUST

2.1    Establishment of Sub-Trust.

(a)    The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)    The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2    Nature and Purposes of the Litigation Sub-Trust.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement.  The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date. Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims, and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Employee Claims.  For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3    Transfer of Assets and Rights to the Litigation Sub-Trust.

(a)    On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Employee Claims, and Privileges.  For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Employee Claims and shall be treated as such in any review of confidentiality restrictions in requested documents.  For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

004644

(b)     Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee.  For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

(c)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date.  No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them.  Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4     <u>Principal Office</u>.  The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5     <u>Acceptance</u>.  The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6     <u>Further Assurances</u>.  The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7     <u>Incidents of Ownership</u>.  The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## <u>ARTICLE III.</u>
## <u>THE LITIGATION TRUSTEE AND THE DELAWARE TRUSTEE</u>

3.1     <u>Role</u>.  In furtherance of and consistent with the purpose of the Litigation Sub-Trust, the Plan, and this Agreement, the Litigation Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Litigation Trustee with respect to the Litigation Sub-Trust Assets for the benefit of the Litigation Sub-Trust Beneficiary and maintain, manage, and take action on behalf of the Litigation Sub-Trust.

3.2    <u>Authority</u>.

(a)    In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims.  The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b)    The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims or Employee Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c)    Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i)    hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii)    perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii)    subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv)    determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v)    subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all Estate

004646

Claims, Employee Claims, or any other Causes of Action in favor of or against the Litigation Sub-Trust;

(vi)     with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

(vii)     subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

(viii)     make all payments relating to the Litigation Sub-Trust Assets;

(ix)     assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;

(x)     prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

(xi)     if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise.  The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

(xii)     without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

(xiii)     to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xiv)     take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

DOCS_NY:43848.5 36027/002

004647

(xv)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "<u>Authorized Acts</u>").

(d)    The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)    Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3    <u>Limitation of Authority</u>.

(a)    Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.6 of the Claimant Trust Agreement, in order to:

(i)    terminate or extend the term of the Litigation Sub-Trust;

(ii)    commence litigation with respect to any Estate Claims and, if applicable under the terms of the Claimant Trust Agreement, the Employee Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

(iii)    settle, dispose of, or abandon any Estate Claims (including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim);

(iv)    borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

(v)    reserve or retain any cash or cash equivalents in the Litigation Sub-Trust Cash Reserve in an amount reasonably necessary to meet claims and contingent liabilities;

(vi)    change the compensation of the Litigation Trustee; and

004648

(vii)    retain counsel, experts, advisors, or any other professionals.

(c)    [Reserved]

3.4    <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of this Agreement shall be final and binding upon the Litigation Sub-Trust Beneficiary.

3.5    <u>Term of Service</u>.  The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Litigation Sub-Trust, subject to death, resignation or removal.

3.6    <u>Resignation</u>.  The Litigation Trustee may resign as trustee of the Litigation Sub-Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Litigation Trustee shall continue to serve as Litigation Trustee after delivery of the Litigation Trustee's resignation until the proposed effective date of such resignation, unless the Litigation Trustee and a [simple majority] of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Litigation Trustee in accordance with Section 3.8 hereof becomes effective.

3.7    <u>Removal</u>.

(a)    The Litigation Trustee may be removed by a simple majority vote of the Oversight Board for Cause, immediately upon notice thereof, or without Cause, upon 60 days' prior written notice.

(b)    To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when a successor Litigation Trustee will become effective in accordance with Section 3.8 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.8    <u>Appointment of Successor</u>.

(a)    <u>Appointment of Successor</u>.  In the event of a vacancy by reason of the death, Disability, or removal of the Litigation Trustee, or prospective vacancy by reason of resignation, a successor Litigation Trustee shall be selected by a [simple majority] vote of the Oversight Board. If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Litigation Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Litigation Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Litigation Sub-Trust, or the Claimant Trust on behalf of the Litigation Sub-Trust.  The successor Litigation Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Litigation Trustee.

DOCS_NY:43848.5 36027/002

(b)    Vesting or Rights in Successor Litigation Trustee.    Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Sub-Trust, the Claimant Trustee, the exiting Litigation Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Litigation Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Litigation Trustee except that the successor Litigation Trustee shall not be liable for the acts or omissions of the retiring Litigation Trustee.  In no event shall the retiring Litigation Trustee be liable for the acts or omissions of the successor Litigation Trustee.

(c)    Interim Litigation Trustee.    During any period in which there is a vacancy in the position of Litigation Trustee, the Oversight Board shall appoint one of its Members or the Claimant Trustee to serve as the interim Litigation Trustee (the "Interim Trustee") until a successor Litigation Trustee is appointed pursuant to Section 3.8(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board or Claimant Trustee, as applicable, merely by such Person's appointment as Interim Trustee.

3.9    Continuance of Litigation Sub-Trust.    The death, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Sub-Trust created by this Agreement or to revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Litigation Trustee.  In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Litigation Trustee's capacity under this Agreement and the conveyance of the Estate Claims then held by the exiting Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all non-privileged documents, instruments, records, and other writings relating to the Litigation Sub-Trust as may be in the possession or under the control of the exiting Litigation Trustee, provided, the exiting Litigation Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Litigation Trustee and the cost of making such copies shall be a Litigation Sub-Trust Expense to be paid by the Litigation Sub-Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Litigation Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Litigation Trustee by the Litigation Sub-Trust.  The exiting Litigation Trustee shall irrevocably appoint the successor Litigation Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Litigation Trustee is obligated to perform under this Section 3.9.

3.10    Litigation Trustee as "Estate Representative".    The Litigation Trustee will be the exclusive trustee of the Litigation Sub-Trust Assets, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Estate Claims, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement.  The Litigation Trustee will be the successor-in-interest to the

11

004650

Debtor with respect to any action pertaining to the Estate Claims, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order. All actions, claims, rights or interests constituting or relating to Estate Claims are preserved and retained and may be enforced by the Litigation Trustee as an Estate Representative.

3.11    Books and Records.

(a)    The Litigation Trustee shall maintain, in respect of the Litigation Sub-Trust and the Claimant Trust, books and records pertinent to Estate Claims in its possession and the income of the Litigation Sub-Trust and payment of expenses, liabilities, and claims against or assumed by the Litigation Sub-Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Sub-Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Sub-Trust, or as a condition for managing any payment or distribution out of the Litigation Sub-Trust. Notwithstanding the foregoing, the Litigation Trustee shall to retain such books and records, and for such periods, with respect to any Reorganized Debtor Assets as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

(b)    The Litigation Trustee may dispose some or all of the books and records maintained by the Litigation Trustee at the later of (i) such time as the Litigation Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Sub-Trust, including with respect to the Estate Claims, or (ii) upon the termination and winding up of the Litigation Sub-Trust under Article IX of this Agreement.

3.12    Reports.

(a)    Financial and Status Reports. The fiscal year of the Litigation Sub-Trust shall be the calendar year. Within 90 days after the end of each calendar year during the term of the Litigation Sub-Trust, and within 45 days after the end of each calendar quarter during (other than the fourth quarter) the term of the Litigation Sub-Trust and as soon as practicable upon termination of the Litigation Sub-Trust, the Litigation Trustee shall make available upon request to the Oversight Board or Litigation Sub-Trust Beneficiary appearing on its records as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Sub-Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Sub-Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Sub-Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Sub-Trust and of which notice has not previously been given to the Oversight Board or Litigation Sub-Trust Beneficiary, provided, that any such description shall not include any privileged or confidential information of

the Litigation Trustee; and (iii) a description of the progress of liquidating the Litigation Sub-Trust Assets and making distributions to the Litigation Sub-Trust Beneficiary and any other material information relating to the Litigation Sub-Trust Assets and the administration of the Litigation Sub-Trust deemed appropriate to be disclosed by the Litigation Trustee, which description shall include a written report detailing, among other things, the litigation status of the Estate Claims transferred to the Litigation Sub-Trust, any settlements entered into by the Litigation Sub-Trust with respect to the Estate Claims, the proceeds recovered to date from Estate Claims, and the distributions made by the Litigation Sub-Trust.

(b)    Annual Plan and Budget.    If instructed by the Oversight Board, the Litigation Trustee shall prepare and submit to the Oversight Board for approval an annual plan and budget in such detail as reasonably requested.

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)    Compensation and Expenses.

(i)    Compensation.    As compensation for any services rendered by the Litigation Trustee in connection with this Agreement, the Litigation Trustee shall receive initial compensation in a manner and amount as agreed upon by the Committee. Any additional compensation or compensation of a Successor Litigation Trustee shall be determined by the Oversight Board.

(ii)    Expense Reimbursements.    All reasonable out-of-pocket expenses of the Litigation Trustee in the performance of his or her duties hereunder, shall be reimbursed as Litigation Sub-Trust Expenses paid by the Litigation Sub-Trust.

(b)    Professionals.

(i)    Engagement of Professionals.    The Litigation Trustee shall engage professionals from time to time in conjunction with the services provided hereunder. The Litigation Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)    Fees and Expenses of Professionals.    The Litigation Trustee shall pay the reasonable fees and expenses of any retained professionals as Litigation Sub-Trust Expenses.

3.14    Reliance by Litigation Trustee.    Except as otherwise provided herein, the Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Litigation Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein. The Litigation Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The

Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning Estate Claims, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Sub-Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    Commingling of Litigation Sub-Trust Assets. The Litigation Trustee shall not commingle any of the Litigation Sub-Trust Assets with his or her own property or the property of any other Person.

3.16    Delaware Trustee.

(a)    The Delaware Trustee shall have the limited power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Litigation Sub-Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Delaware Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement, in either case as may be directed in a writing delivered to the Delaware Trustee by the Litigation Trustee and upon which the Delaware Trustee shall be entitled to conclusively and exclusively rely; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Litigation Sub-Trust. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Claimant Trustee or the Litigation Trustee set forth herein. The Delaware Trustee shall be one of the trustees of the Litigation Sub-Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Delaware Statutory Trust Act and for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Statutory Trust Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to those expressly set forth in this Section 3.16 and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Litigation Sub-Trust, the other parties hereto or any beneficiary of the Litigation Sub-Trust, it is hereby understood and agreed by the other parties hereto that such duties and

004653

liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement.

(b)     The Delaware Trustee shall serve until such time as the Litigation Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Litigation Trustee in accordance with the terms hereof.  The Delaware Trustee may resign at any time upon the giving of at least thirty (30) days' advance written notice to the Litigation Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Litigation Trustee in accordance with the terms hereof. If the Litigation Trustee does not act within such thirty (30) day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(c)     Upon the resignation or removal of the Delaware Trustee, the Litigation Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Delaware Statutory Trust Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Litigation Trustee and any undisputed fees, expenses and indemnity due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

(d)     The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.  The Litigation Sub-Trust shall promptly advance and reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Delaware Trustee in connection with the performance of its duties hereunder.

(e)     WTNA shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(f)     Any corporation or association into which WTNA may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Delaware Trustee is a party, will be and become the successor Delaware Trustee under this Agreement and will have and succeed to the rights, powers, duties, immunities

15

004654

and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

## ARTICLE IV.
## THE OVERSIGHT BOARD

The Oversight Board shall be governed by Article IV of the Claimant Trust Agreement.

## ARTICLE V.
## TRUST INTERESTS

5.1     Litigation Sub-Trust Interests.  On the date hereof, the Litigation Sub-Trust shall issue Trust Interests to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.  The Litigation Sub-Trust Beneficiary shall be entitled to distributions from the Litigation Sub-Trust Assets in accordance with the terms of the Plan and this Agreement.

5.2     Transferability of Trust Interests.  No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected.

5.3     Exemption from Registration.  The Parties hereto intend that the rights of the Litigation Sub-Trust Beneficiary arising under this Litigation Sub-Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Litigation Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Litigation Sub-Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Sub-Trust Beneficiary any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Litigation Trustee under this Agreement.

## ARTICLE VI.
## DISTRIBUTIONS

6.1     Distributions.  The Litigation Trustee shall distribute Cash proceeds of the Estate Claims to the Claimant Trust within 30 days of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Sub-Trust Assets pending their monetization or other disposition during the term of the Litigation Sub-Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Sub-Trust Expenses and any other expenses incurred by the Litigation Sub-Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Sub-Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses).

6.2     Manner of Payment or Distribution.  All distributions made by the Litigation Trustee on behalf of the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary shall be

DOCS_NY:43848.5 36027/002

004655

payable by the Litigation Trustee directly to the Claimant Trust, as sole Litigation Sub-Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3    Delivery of Distributions.  All distributions under this Agreement to the Claimant Trust shall be made pursuant to wire instructions provided by the Claimant Trustee to the Litigation Trustee.

## ARTICLE VII.
## TAX MATTERS

7.1    Tax Treatment and Tax Returns.  It is intended that the Litigation Sub-Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) the sole beneficiary of which is the Claimant Trust.  Consistent with such treatment, it is intended that the transfer of the Litigation Sub Trust Assets from the Claimant Trust to the Litigation Sub Trust will be treated as a non-event for federal income tax purposes (and foreign, state, and local income tax purposes where applicable).  Further, because the Claimant Trust is itself intended to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable),it is intended that the beneficiaries of the Claimant Trust will be treated as the grantor of the Litigation Sub-Trust and owner of the Litigation Sub-Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable).  The Litigation Trustee shall cooperate with the Claimant Trustee in connection with the preparation and filing of any federal income tax returns (and foreign, state, and local income tax returns where applicable) or information statements relating to the Litigation Sub Trust Assets.

7.2    Withholding.  The Litigation Trustee may withhold from any amount distributed from the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Sub-Trust Beneficiary.  As a condition to receiving any distribution from the Litigation Sub-Trust, the Litigation Trustee may require that the Litigation Sub-Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.

## ARTICLE VIII.
## STANDARD OF CARE AND INDEMNIFICATION

8.1    Standard of Care.  None of the Litigation Trustee, acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Litigation Sub-Trust or to any Person (including the Litigation Sub-Trust Beneficiary and Claimant Trust Beneficiaries) in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either

declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the acts or omissions of any such Litigation Trustee, the Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Litigation Sub-Trust, the Litigation Trustee, the Delaware Trustee or Oversight Board shall not be personally liable to the Litigation Sub-Trust or any other Person in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Litigation Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Litigation Sub-Trust or to any Person for the acts or omissions of any employee, agent or professional of the Litigation Sub-Trust or Litigation Trustee, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the Litigation Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Litigation Sub-Trust.

8.2    Indemnification.    The Litigation Trustee (including each former Litigation Trustee), WTNA in its individual capacity and as Delaware Trustee, the Oversight Board, and all past and present Members (collectively, the "Indemnified Parties") shall be indemnified by the Litigation Sub-Trust against and held harmless by the Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Litigation Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Litigation Sub-Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Litigation Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Litigation Trustee and/or Oversight Board of an indemnification obligation will not excuse the Litigation Sub-Trust from indemnifying the Indemnified Party unless such delay has caused the Litigation Sub-Trust material harm. The Litigation Sub-Trust shall periodically advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith as a Litigation Sub-Trust Expense, but the Indemnified Party shall be required to repay promptly to the Litigation Sub-Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, willful misconduct, or gross negligence in connection with the affairs of the Litigation Sub-Trust with respect to which such expenses were paid. The Litigation Sub-Trust shall indemnify and hold harmless the

18

004657

employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Litigation Trustee, WTNA in its individual capacity and as Delaware Trustee, or Member or the estate of any decedent Litigation Trustee or Member. The indemnification provided hereby shall be a Litigation Sub-Trust Expense. The terms of this Section 8.2 shall survive the termination of this Agreement and the resignation or removal of any Indemnified Party.

8.3     To the extent applicable, the provisions and protections set forth in Article IX of the Plan will apply to the Litigation Sub-Trust, the Litigation Trustee, Oversight Board, and the Members.

## ARTICLE IX.
## TERMINATION

9.1     <u>Duration</u>. The Litigation Trustee, the Litigation Sub-Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines that the Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Sub-Trust Beneficiary under the Plan and this Agreement have been made, but in no event shall the Litigation Sub-Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Sub-Trust Assets.

9.2     <u>Continuance of the Litigation Trustee for Winding Up</u>. After dissolution of the Litigation Sub-Trust and for purpose of liquidating and winding up the affairs of the Litigation Sub-Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed. Prior to the final distribution of all remaining Litigation Sub-Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Sub-Trust, until such time as the winding up of the Litigation Sub-Trust is completed. Upon the dissolution of the Litigation Sub-Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Sub-Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall prepare, execute and file a certificate of cancellation with the State of Delaware to terminate the Litigation Sub-Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>"). If the Delaware Trustee's and the Claimant Trustee's signature is required for purposes of filing such certificate of cancellation, the Litigation Trustee shall provide the Delaware Trustee and the Claimant Trustee with written direction to execute such certificate of cancellation, and the Delaware Trustee and the Claimant Trustee shall be entitled to conclusively and exclusively rely upon such written direction without further inquiry. Subject in all respects to Section 3.11, upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as a Litigation Sub-Trust Expense, the books, records, and certificated and other documents and files that have

19

been delivered to or created by the Litigation Trustee. Subject in all respects to Section 3.11, at the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.3     Termination of Duties. Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Sub-Trust, the Litigation Trustee, the Oversight Board, and its Members shall have no further duties or obligations hereunder.

# ARTICLE X.
## AMENDMENTS AND WAIVER

The Litigation Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions. This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Litigation Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Litigation Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement. No amendment or waiver of this Agreement that adversely affects the Delaware Trustee shall be effective unless the Delaware Trustee has consented thereto in writing in its sole and absolute discretion.

# ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable. Except as set forth in this Agreement, establishment of the Litigation Sub-Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Litigation Sub-Trust Beneficiary.

11.2     Litigation Sub-Trust Beneficiary has No Legal Title to Litigation Sub-Trust Assets. The Litigation Sub-Trust Beneficiary shall have no legal title to any part of the Litigation Sub-Trust Assets.

11.3     Agreement for Benefit of Parties Only. Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Litigation Trustee, Oversight Board, and the Litigation Sub-Trust Beneficiary any legal or equitable right, remedy or claim under or in respect of this Agreement. The Litigation Sub-Trust Assets shall be held for the sole and exclusive benefit of the Litigation Sub-Trust Beneficiary.

11.4     Notices. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

(a)     If to the Litigation Trustee:

Marc S. Kirschner
c/o Goldin Associates LLC, a Teneo Company

004659

350 Fifth Avenue
New York, New York 10118

With a copy to:

Quinn Emanuel LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Attn:   Deborah J. Newman
(deborahnewman@quinnemanuel.com)

(b)      If to the Claimant Trustee:

Claimant Trustee
c/o Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas  75201
Attention:  James P. Seery, Jr.

With a copy to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
         Ira Kharasch (ikharasch@pszjlaw.com)
         Gregory Demo (gdemo@pszjlaw.com)

(c)      If to the Delaware Trustee:

Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE 19890
Attn:  Corporate Trust Administration/David Young
Email:  nmarlett@wilmingtontrust.com
Phone:  (302) 636-6728
Fax:  (302) 636-4145

Notice mailed shall be effective on the date mailed or sent.  Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.4 to the entity to be charged with knowledge of such change.

11.5   Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.6 <u>Counterparts</u>.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.7 <u>Binding Effect, etc.</u>  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Litigation Sub-Trust, the Litigation Trustee, and the Litigation Sub-Trust Beneficiary, and their respective successors and assigns.  Any notice, direction, consent, waiver or other instrument or action by any Litigation Sub-Trust Beneficiary shall bind its successors and assigns.

11.8 <u>Headings; References</u>.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.9 <u>Governing Law</u>.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.10 <u>Consent to Jurisdiction</u>.  Each of the parties hereto, each Member (solely in their capacity as Members of the Oversight Board), and each Claimant Trust Beneficiary consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement, the Plan or any act or omission of the Claimant Trustee (acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan), Litigation Trustee (acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan), the Oversight Board. or any individual Member (solely in their capacity as Members of the Oversight Board); *provided, however*, that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

11.11 <u>Transferee Liabilities</u>.  The Litigation Sub-Trust shall have no liability for, and the Litigation Sub-Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Litigation Trustee or the Litigation Sub-Trust Beneficiary have any personal liability for such claims.  If any liability shall be asserted against the Litigation Sub-Trust or the Litigation Trustee as the transferee of the Litigation Sub-Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Litigation Trustee may use such part of the Litigation Sub-Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Litigation Trustee as a Litigation Sub-Trust Expense.

[Remainder of Page Intentionally Blank]

DOCS_NY:43848.5 36027/002

004661

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

**CLAIMANT TRUSTEE**

By: _____
James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

**LITIGATION TRUSTEE**

By: _____
Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

**DELAWARE TRUSTEE**

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Delaware Trustee

By: _____
Name:
Title:

23

004662

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

**CLAIMANT TRUSTEE**

By: _____

    James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

**LITIGATION TRUSTEE**

By: _____

Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

**DELAWARE TRUSTEE**

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Delaware Trustee

By:_____
Name:
Title:

23

DOCS_NY:43848.3 36027/002

**004663**

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

CLAIMANT TRUSTEE

By: _____

        James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

LITIGATION TRUSTEE

By: _____

        Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

DELAWARE TRUSTEE

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Delaware Trustee

By: _____

Name: Neumann Marlett
Title: Bank Officer

DOCS_NY:43848.3 36027/002

004664