**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

In Re: **Highland Capital Management, L.P.** § Case No. **19-34054-SGJ-11**

**Hunter Mountain Investment Trust**

|  |  |  |  |
|---|---|---|---|
| | Appellant | § | |
| vs. | | § | |
| **Highland Capital Management, L.P, et al** | | § | **3:23-CV-2071-E** |
| | Appellee | § | |

   [3904] Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders" Denying Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding. Entered on 8/25/2023.

# Volume 17

# APPELLANT RECORD

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Reorganized Debtor. | § | |

*INDEX*

## APPELLANT HUNTER MOUNTAIN INVESTMENT TRUST'S
## SECOND SUPPLEMENTAL STATEMENT OF THE ISSUES AND
## DESIGNATION OF ITEMS FOR INCLUSION IN THE APPELLATE RECORD

COMES NOW Appellant/Movant Hunter Mountain Investment Trust, both in its individual capacity and derivatively on behalf of the Reorganized Debtor, Highland Capital Management, L.P., and the Highland Claimant Trust,[1] (collectively, "Appellant" or "HMIT"), and files this Second Supplemental[2] Statement of the Issues and Designation of Items for Inclusion in the Appellate Record pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1):

## I.
## STATEMENT OF THE ISSUES

A.  Did the bankruptcy court err in determining that the "colorable" claim analysis allowed the court to consider evidence and other non-pleading materials including, but not limited to, the court's reasoning that:

  1. the colorability analysis is stricter than a non-evidentiary, Rule 12(b)(6)-type analysis;

  2. the colorability analysis is "akin to the standards applied under the … *Barton* doctrine";

  3. the colorability analysis requires a "hybrid" of the *Barton* doctrine and "what courts have applied when considering motions to file suit when a vexatious litigant bar order is in place"; and/or,

---

[1] And in all capacities and alternative derivative capacities asserted in HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding [Dkt. Nos. 3699, 3815, and 3816] ("Emergency Motion"), the supplement to the Emergency Motion [Dkt. No. 3760], and the draft Complaint attached to the same [Dkt. No. 3760-1].

[2] Appellant files this Second Supplement pursuant to the Clerk's request at Docket #3949 and correspondence on 10/23/2023.

---

4. "[t]here may be mixed questions of fact and law implicated by the Motion for Leave"?

[*See* Dkt. Nos. 3781, 3790, 3903-04].

B. Did the bankruptcy court err in determining that Appellant lacked constitutional or prudential standing to bring its claims in its individual and derivative capacities?

[*See* Dkt. Nos. 3903-04].

C. Did the bankruptcy court err in alternatively determining that, even under a non-evidentiary, Rule 12(b)(6)-type analysis, Appellant did not assert colorable claims including, but not limited to, determining that:

1. Appellant's allegations are conclusory, speculative, or constitute "legal conclusions";

2. Appellant's claims or allegations are not "plausible";

3. Appellant's allegations pertaining to a *quid pro quo* are "pure speculation";

4. Proposed Defendant James P. Seery ("Seery") owed no duty to Appellant in any capacity as a matter of law;

5. Appellant failed "to allege facts in the Proposed Complaint that would support a reasonable inference that Seery breached his fiduciary duty to HMIT and the estate as a result of bad faith, self-interest, or other intentional misconduct rising to the level of a breach of the duty of loyalty";

6. Appellant's allegations pertaining to its aiding and abetting and conspiracy claims are speculative and not plausible;

7. The remedies of equitable disallowance and equitable subordination are not remedies "available" to Appellant as a matter of law;

8. Appellant's unjust enrichment claim is invalid as a matter of law because "Seery's compensation is governed by express agreements";

9. Appellant is not entitled to declaratory relief because it has no colorable claims; and/or

10. Appellant cannot recover punitive damages for its breach of fiduciary duty claim?

[*See* Dkt. Nos. 3903-04].

D.     Alternatively, even if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the court violate Appellant's due process rights by denying Appellant its requested discovery?

[*See* Dkt. Nos. 3800, 3853, 3903-04, June 8, 2023 Hearing].

E.     Alternatively, did the bankruptcy court err by denying Appellant's requested discovery including, but not limited to:

      1.   ordering that Appellant could not request or obtain any discovery other than a deposition of Seery and James D. Dondero; and/or

      2.   determining that state court "Rule 202" proceedings supported the denial of discovery?

[*See* Dkt. Nos. 3800 & June 8, 2023 Hearing; *see also* Dkt. Nos. 3903-04].

F.     Alternatively, did the bankruptcy court err by denying Appellant's alternative request for a continuance to obtain the requested discovery?

G.     Alternatively, did the bankruptcy court err by excluding Appellant's evidence, or admitting the same for only limited purposes, offered at the June 8, 2023 Hearing?

H.     Alternatively, did the bankruptcy court err by overruling Appellant's objections to Appellees' evidence offered at the June 8, 2023 Hearing?

I.     Alternatively, did the bankruptcy court err by excluding Appellant's experts' testimony?

[*See* Dkt. No. 3853; *see also* Dkt. Nos. 3903-04].

J.     Alternatively, did the bankruptcy court err by striking Appellant's proffer of its excluded experts' testimony from the record?

[*See* Dkt. No. 3869].

K.     Alternatively, if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the bankruptcy court err in determining that Appellant had not asserted colorable claims under that "hybrid" analysis including, but not limited to, its findings that:

      1.   there is no evidence to support that Seery shared material non-public information with the Claims Purchasers;

      2.   there is no evidence to support the alleged quid pro quo;

      3.   the material shared was *public* information; and/or

      4.   the Claims Purchasers had sufficient and lawful reasons to pay the amounts paid

for the purchased claims.

[*See* Dkt. Nos. 3903-04].

L.  Did the bankruptcy court err in finding that Appellant is controlled by Dondero, and, as such, Appellant "cannot show that it is pursuing the Proposed Claims for a proper purpose"?

M.  Alternatively, does sufficient evidence support the bankruptcy court's evidentiary findings made pursuant to its "hybrid" *Barton* analysis?

N.  Did the bankruptcy court err in denying an expedited hearing on Appellant's Motion for Leave? [*See* Dkt. 3713].

O.  Does the bankruptcy court's use of a new "colorability" standard to determine if claims by non-debtors against other non-debtors may proceed violate *Stern v. Marshall* and its progeny?

P.  Did the bankruptcy court err in denying Appellant's Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or Alternatively, for New Trial under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 including, but not limited to by:

  1.  declining to consider disclosures that demonstrated that Appellant is "in the money"—an issue pertinent to the court's erroneous standing decisions; and

  2.  concluding that the disclosures failed to reinforce Appellant's standing to pursue the claims presented?

[Dkt. 3936].

## II.
## DESIGNATION OF ITEMS FOR INCLUSION
## IN THE APPELLATE RECORD

*vol. 1*

1.  **Notice of Appeal**

    *000001*     a.  Notice of Appeal **[Dkt. 3906]**;

    *000276*     b.  Amended Notice of Appeal **[Dkt. 3908]**; and

    *000551*     c.  Second Amended Notice of Appeal **[Dkt. 3945]**

2.  **The judgment, order, or decree appealed from:**

    a.  Memorandum Opinion and Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders": Denying Hunter Mountain Investment

*000835*
*000940*

Trust's Emergency Motion for Leave to File Adversary Proceedings **[Dkts. 3903 & 3904]**; and

*001045*

**b.** Order Denying Motion of Hunter Mountain Investment Trust Seeking Relief Pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 **[Dkt. 3936]**.

**3. Docket sheet.**

*001049*

a. Bankruptcy Case No. 19-34054

**4. Other Items to be included:**

a. HMIT hereby designates the following items in the record on appeal from Cause No. 19-34054-sgj11:

*Vol. 2*

| FILE DATE | DOCKET NO. (INCLUDING ALL ATTACHMENTS AND APPENDICES) | DESCRIPTION |
|---|---|---|
| 01/22/2021 | 1808 | Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) |
| 02/22/2021 | 1943 | Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief |
| 09/09/2022 | 3503 | Motion to Conform Plan filed by Highland Capital Management, L.P. |
| 02/27/203 | 3671 | Memorandum Opinion and Order on Reorganized Debtor's Motion to Conform Plan |
| 03/28/2023 | 3699 (3699-1 — 3699-5) | HMIT Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| 03/28/2023 | 3700 (3700-1) | HMIT Motion for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/30/2023 | 3704 | Farallon, Stonehill, Jessup and Muck Objection to Motion for Expedited Hearing |
| 03/30/2023 | 3705 | HMIT Amended Certificate of Conference |

*001594*
*001660*
*001821*
*001830*
*Vol. 3*
*001849*
*Thru* *Vol. 4*
*Vol 4*
*002236*
*002243*
*002248*

| | | | |
|---|---|---|---|
| 03/30/2023 | 3706 | | HMIT Amended Certificate of Conference |
| 03/30/2023 | 3707 | | Highland's Response in Opposition to Emergency Motion for Leave |
| 03/30/2023 | 3708<br>(3708-1 — 3708-8) | | Declaration of John Morris in Support of the Highland Parties' Objection to Hunter Mountain Investment Trust's Opposed Application for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/31/2023 | 3712 | | HMIT Reply in Support of Application for Expedited Hearing |
| 03/31/2023 | 3713 | | Order Denying Motion for Expedited Hearing |
| 04/04/2023 | 3718<br>(3718-1 — 3718-4) | | HMIT Motion for Leave to File Appeal |
| 04/04/2023 | 3719<br>(3719-1) | | HMIT Motion for Expedited Hearing on Motion for Leave to File Appeal |
| 04/05/2023 | 3720 | | Order Denying HMIT's Opposed Motion for Expedited Hearing |
| 04/05/2023 | 3721<br>(3721-1 — 3721-2) | | HMIT Notice of Appeal |
| 04/06/2023 | 3726<br>(3726-1) | | Certificate of Mailing regarding HMIT Notice of Appeal |
| 04/07/2023 | 3731 | | Notice of Docketing Transmittal of Notice of Appeal |
| 04/13/2023 | 3738<br>(3738-1) | | Highland's Opposed Emergency Motion to Modify and Fix a Briefing Schedule and Set a Hearing Date with Respect to HMIT's Emergency Motion for Leave |
| 04/13/2023 | 3739 | | Highland's Motion for Expedited Hearing |
| 04/13/2023 | 3740 | | Joinder to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date With Respect to Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon |

| | | | Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
|---|---|---|---|
| *Vol. 10* *003281* | 04/13/2023 | 3741 | Notice of Hearing for 04/24/2023 at 1:30 PM |
| *003286* | 04/13/2023 | 3742 | Amended Notice of Hearing for 04/24/2023 at 1:30 PM |
| *003291* | 04/13/2023 | 3745 | Notice of Appearance and Request for Notice by Omar Jesus Alaniz filed by James P. Seery Jr. |
| *003294* | 04/15/2023 | 3747 | Joinder by James P. Seery Jr. to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date with Respect to Hunter Mountain Investment Trusts Emergency Motion for Leave to File Verified Adversary Proceeding |
| *003296* | 04/17/2023 | 3748 | HMIT's Response and Reservation of Rights |
| *003299* | 04/19/2023 | 3751 | Notice of Status Conference |
| *003302* | 04/21/2023 | 3758 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability" |
| *003311* | 04/21/2023 | 3759 | HMIT's Notice of Rescheduling Hearing |
| *003314* | 04/21/2023 | 3761 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability"[3] |
| *003323* | 04/23/2023 | 3760 (3760-1) | HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| *003368* | 04/25/2023 | 3765 | Transcript of Hearing held on 04/24/2023 |
| *003430* | 05/11/2023 | 3780 | Objection to Hunter Mountain Investment Trust's (i) Emergency Motion for Leave to File Verified Adversary Proceeding; and (ii) Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck |

---

[3] A duplicate of Doc 3758.

| | | | Holdings LLC, Stonehill Capital Management LLC |
|---|---|---|---|
| *Vol. 10*<br>*003458* | 05/11/2023 | 3781 | Order Fixing Briefing Scheduling and Hearing Date with Respect to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding as Supplemented |
| *003463* | 05/11/2023 | 3783 | Highland and Seery's Joint Response to HMIT's Emergency Motion for Leave |
| *Vol. 11*<br>*003537* | 05/11/2023 | 3784<br>(3784-1 — 3784-46) | Declaration of John Morris in Support of Highland Parties' Joint Response |
| *Thru Vol. 16*<br>*Vol. 17*<br>*004465* | 05/18/2023 | 3785 | HMIT's Reply in Support of Emergency Motion for Leave to File Adversary Proceeding |
| *004712* | 05/22/2023 | 3787 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004714* | 05/24/2023 | 3788<br>(3788-1 — 3788-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *004808* | 05/24/2023 | 3789 | HMIT's Application for Expedited Hearing |
| *004813* | 05/24/2023 | 3790 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004836* | 05/25/2023 | 3791<br>(3791-1 — 3791-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *Vol. 18*<br>*004930* | 05/25/2023 | 3792 | Order Setting Expedited Hearing |
| *004931* | 05/25/2023 | 3795 | Objection to Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

Vol. 18
004939.

| | 05/25/2023 | 3798<br>(3798-1) | Highland Parties' Joint Response in Opposition to HMIT's Emergency Motion for Expedited Discovery |
| 004959 | 05/26/2023 | 3800 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| 004961 | 05/28/2023 | 3801 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| 004984 | 06/05/2023 | 3815<br>(3815-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| 005049 | 06/05/2023 | 3816<br>(3816-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| 005114<br>*Thru Vol. 25* | 06/05/2023 | 3817<br>(3817-1 — 3817-5) | Highland Parties' Witness and Exhibit List with Respect to Evidentiary Hearing on June 8, 2023 |
| Vol. 26<br>006608<br>*Thru Vol. 39* | 06/05/2023 | 3818<br>(3818-1 — 3818-9) | HMIT's Witness and Exhibit List in Connection with its Emergency Motion for Leave to File Verified Adversary Proceeding, and Supplement |
| Vol. 39<br>009273 | 06/07/2023 | 3820 | Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 009290 | 06/07/2023 | 3821<br>(3821-1 — 3821-3) | Declaration in Support of Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 009416 | 06/07/2023 | 3822<br>(3822-1) | HMIT's Unopposed Motion to File Exhibit Under Seal [WITHDRAWN] |
| 009424 | 06/07/2023 | 3823 | Joinder to Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

*Vol. 40*

*00 9426*

*00 9436*

*00 9444*

*00 9445*

*00 9446*

*00 9456*

*00 9458*

*Vol. 41*

*Thru Vol. 41*

*Vol. 42*

*00 9847*

*00 9901*

*00 9905*

*00 9908*

*00 9912*

| 06/07/2023 | 3824 | HMIT's Objections to the Highland Parties' Exhibit and Witness List |
|---|---|---|
| 06/08/2023 | 3828 | HMIT's Response to Highland Claimant Trust and James P. Seery, Jr.'s Joint Motion to Exclude Testimony and Documents of Experts Scott Van Meter and Steve Pully |
| 06/09/2023 | 3837 | Request for transcript regarding hearing held on 06/08/2023 |
| 06/12/2023 | 3838 | Court admitted exhibits on hearing June 8, 2023 (*See* Docket Entry Nos. 3817 & 3818) |
| 06/12/2023 | 3841 | Highland Parties' Reply in Further Support of their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/12/2023 | 3842 (3842-1) | Claim Purchasers' Joinder to Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery Jr.'s Reply in Further Support of Their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
| 06/13/2023 | 3843 | Transcript regarding Hearing Held 06/08/2023 |
| 06/13/2023 | 3844 | Transcript regarding Hearing Held 05/26/2023 |
| 06/13/2023 | 3845 | HMIT's Request for Oral Hearing or, Alternatively, a Schedule for Evidentiary Proffer |
| 06/13/2023 | 3846 | Response in Opposition to Hunter Mountain Investment Trust's Request for Oral Argument or, Alternatively, a Schedule for Evidentiary Proffer filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Creditor James P. Seery Jr. |
| 06/13/2023 | 3847 | HMIT's Reply to the Highland Parties' Response to Request for Oral Hearing |
| 06/16/2023 | 3853 | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |

*Vol. 42*

*009928*

*009944*

*010013*

*010023*

*010025*

*010029*

*010035*

*010047*

*010059*

*Vol. 43*

*010062*

| Date | Doc | Description |
|---|---|---|
| 06/16/2023 | 3854 | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |
| 06/19/2023 | 3858 (3858-1 — 3858-2) | Hunter Mountain Investment Trust's Evidentiary Proffer Pursuant to Rule 103(a)(2)[4] |
| 06/23/2023 | 3860 | The Highland Parties' Objections to and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 06/23/2023 | 3861 | Claim Purchasers' Joinder to the Highland Parties' Objections and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 07/05/2023 | 3869 | Order Striking HMIT's Evidentiary Proffer Pursuant to Rule 103(a)(2) and Limiting Briefing |
| 07/06/2023 | 3872 | Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust filed by Debtor Highland Capital Management, L.P. and the Highland Claimant Trust |
| 07/21/2023 | 3888 | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by Highland Capital Management, L.P. |
| 07/21/2023 | 3889 | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by the Highland Claimant Trust |
| 08/17/2023 | 3901 | Withdrawal of HMIT's Unopposed Motion to File Exhibit Under Seal filed by Creditor Hunter Mountain Investment Trust |
| 09/08/2023 | 3905 (3905-1 — 3905-6) | Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or, Alternatively, for New Trial Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 and Incorporated Relief Filed by Creditor Hunter Mountain Investment Trust |

---

[4] HMIT understands that the Court struck this proffer in docket entry 3869. Because the proffer appears to remain on the record and to avoid any argument that HMIT has failed its burden to designate the record, HMIT designates this docket entry out of an abundance of caution.

Vol. 43
010135
010136

| 09/11/2023 | 3907 | Clerk's Correspondence regarding HMIT's Notice of Appeal |
| 09/22/2023 | 3928 | Notice Regarding Appeal and Pending Post-Judgment Motion filed by HMIT |

**B.      Exhibits.**

Further, the Parties submitted hearing exhibits. HMIT designates for inclusion in the record for appeal all the hearing exhibits submitted to the Court, which were all electronically filed and are in the Court's record and are a part of this Appellate Record. (Docs. 3817 and 3818). The following exhibits are submitted and included in the Court's record:

| **HMIT Exhibits**<br>**(Dkts. 3818, 3818-1, 3818-2, 3818-3, 3818-4, 3818-5. 3818-6, 3818-7, 3818-8, and 3818-9)** |
| HMIT Exhibits 1-4, 6-80 |
| **HCM Exhibits**<br>**(Dkts. 3817, 3817-1, 3817-2, 3817-3, 3817-4, 3817-5)** |
| HCM Exhibits 2-15, 25-34, 36, 38-42, 45-46, 51, 59-60, 100 |

Dated:  October 23, 2023                         Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By: */s/ Sawnie. A. McEntire*
   Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served via ECF notification on October 23, 2023, on all parties receiving electronic notification.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

Sawnie A. McEntire

Texas State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

Texas State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S REPLY BRIEF IN SUPPORT OF
<u>EMERGENCY MOTION FOR LEAVE TO FILE ADVERSARY PROCEEDING</u>**

004665

# TABLE OF CONTENTS

Overview ............................................................................................................. 8

Objections to "Evidence" .................................................................................. 12

Argument ............................................................................................................ 14
I.      Standing .................................................................................................. 14
        A. HMIT has standing to bring claims as a holder of a beneficial interest in the
           Claimant Trust both derivatively and in its own right ............................... 14
        B. The Plan did not divest the Claimant Trust of any claims and specifically
           reserved claims regarding acts or omissions that constitute bad faith, fraud, or
           willful misconduct which were not released ............................................ 18
        C. The Litigation Sub-Trust Assignment of Claims is Flawed ........................ 20

II.     The "Colorable" Standard .................................................................... 22
        A. The plain language of the Plan's Gatekeeper provision states that the Court
           must determine whether a cause of action represents a colorable claim ........... 22
        B. The *Barton* Doctrine does not support an evidentiary hearing .................. 23
        C. Vexatious Litigant Pre-Filing Injunction Standard does not apply .............. 29

III.    The Colorable Allegations and Factual Sufficiently of HMIT's Pleadings ......... 31
        A. The Financial Allegations ...................................................................... 31
        B. HMIT's Allegations Concerning MGM and MNPI ................................ 34
        C. Allegations on "Information and Belief" ............................................... 36

IV.     Duties .................................................................................................... 38

V.      Remedies ............................................................................................... 40

VI.     Declaratory Relief ................................................................................. 41

VII.    Claims Trading ...................................................................................... 43

VIII.   Texas State Securities Board .................................................................. 44

Reservation of Rights ........................................................................................ 45

004666

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937 *(2009)* .......................................... 37

*Baum v. Blue Moon Ventures, LLC,* 513 F.3d 181, 189 (5th Cir. 2008) .................................. 31

*Becker v. Noe,* No. CV ELH-18-00931, 2019 WL 1415483, at *18 (D. Md. Mar. 27, 2019) .............. 24

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............. 37

*Brown v. State,* 36 A.3d 321, 325 (Del. 2012) .............................................................. 16

*Cheng v. K & S Diversified Investments (In re Cheng),* 308 B.R. 448, 455 (9th Cir. BAP 2004), *aff'd,*
160 Fed.Appx. 644 (9th Cir.2005). ...................................................................... 39

*Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) .................................................. 26

*Collins Cnty. Texas v. Homeowners Ass'n for Values Essential to Neighborhoods,* 915 F.2d 167, 169-
71 (5th Cir. 1990) ......................................................................................... 40

*Dantzler v. United States Dep't of Just.,* No. CV 22-2211, 2022 WL 4820404, at *2 (E.D. La. Sept. 7,
2022), *report and recommendation adopted,* No. CV 22-2211, 2022 WL 4605508 (E.D. La. Sept. 30,
2022) ........................................................................................................ 24

*Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333 (5th Cir. 2008) .......................................... 38

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC),* 540 F.3d 351, 355 (5th Cir.
2008) ....................................................................................................... 20

*Est. of Tigani,* No. CV 7339-ML, 2016 WL 593169, at *14 (Del. Ch. Feb. 12, 2016) .................... 15, 16

*Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 360 (5th Cir. 1986) .................................... 30

004667

*Ferguson v. Texas Farm Bureau Bus. Corp.*, No. 6:17-CV-00111, 2017 WL 7053927, at *5 (W.D. Tex. July 26, 2017), *report and recommendation adopted*, No. 6:17-CV-111-RP, 2018 WL 1392703 (W.D. Tex. Mar. 20, 2018) ................................................................................................ 26

*Foster v. Aurzada (In re Foster)*, 2023 WL 20872, at *1 (5th Cir. Jan. 3, 2023) ....................................... 27

*Giagnorio v. Emmett C. Torkelson Tr.*, 292 Ill. App. 3d 318, 686 N.E.2d 42 (1997) ........................... 17

*Green v. Wells Fargo Home Mtg.*, 2016 WL 3746276, at *2 (S.D. Tex. June 7, 2016) ........................ 40

*Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *19 n.123 (Del. Ch. June 15, 2011), *aff'd* 38 A.3d 1254 (Del. 2012), .................................................................................................................... 16

*Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, Civil Action No. 3:21-CV-1895-D, 2022 U.S. Dist. LEXIS 15648, at *5 (N.D. Tex. 2022) ............................................................................................................................................ 22

*Hunter v. Shell Oil Co.*, 198 F.2d 485 (5th Cir. 1952) ...................................................................... 41

*In re A. Tarricone, Inc.*, 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002) .................................................... 44

*In re Acis Capital Mgmt., L.P.*, 604 B.R. 484, 535 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Capital Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021) ........................................................................ 44

*In re Beck Indus., Inc.*, 725 F.2d 880, 886 (2d Cir. 1984) ..................................................................... 28

*In re Deepwater Horizon*, 732 F.3d 326, 340 (5th Cir. 2013) ..................................................... 22, 25

*In re Grodsky*, No. 09-13383, 2019 WL 2006020, at *4 (Bankr. E.D. La. Apr. 11, 2019), *subsequently aff'd sub nom. Matter of Grodsky*, 799 F. App'x 271 (5th Cir. 2020) ............................................ 27

*In re Johnson*, 433 B.R. 626 (S.D. tex. 2010) ...................................................................................... 38

*In re Kovacs*, 16 B.R. 203, 205 (Bankr.D.Conn.1981). ........................................................................ 39

*In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) .................................................................................. 28

004668

*In re Nat'l Coll. Student Loan Tr. Litig.*, 251 A.3d 116, 191 (Del. Ch. 2020),.......................................... 16

*In re On-Site Fuel Serv., Inc.*, No. 18-04196-NPO, 2020 WL 3703004, at *12 (Bankr. S.D. Miss. May 8, 2020) ........................................................................................................................................ 24

*In re Phoenix Petroleum Co.*, 278 B.R. 385 (Bankr. E.D. Pa. 2001) ........................................................ 24

*In re Provider Meds, LP*, 514 B.R. 473, 476-77 (Bankr. N.D. Tex. 2014) ................................................ 25

*In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013) ................................................................ 20

*In re U.S. Brass Corp.*, 301 F.3d 296, 308-309 (5th Cir. 2002) .............................................................. 22

*In re VistaCare Grp., LLC*, 678 F.3d 218, 232 n.12 (3d Cir. 2012) .......................................................... 27

*In re World Mktg. Chi, LLC*, 584 B.R. 737, 743 (Bankr. N.D. Ill. 2018) .................................................. 27

*In re Xtreme Power Inc.*, 563 B.R. 614, 632-33 (Bankr. W.D. Tex. 2016) ............................................... 35

*Ironshore Europe DAC v. Schiff Hardin*, L.L.P., 912 F.3d 759, 763 (5th Cir. 2019) ............................... 26

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 733 (Del. 2020) ...................... 19

*Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004) ................................................................ 37

*Kobach Tool Co. v. Corbett-Wallace Corporation*, 160 S.W. 2d 509 (Tex. 1942) .................................. 41

*League of United Latin Am. Citizens v. Abbott*, 604 F. Supp 463, 496-97 (W.D. Tex. 2022) ............... 37

*Leighton Hold. Ltd. v. Belofsky*, 2000 WL 1761020, at *1 (N.D. Ill. Nov. 30, 2000) ............................. 28

*Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 252-53 and n. 15 (5th Cir. 1988) ............. 23

*Mangano v. Pericor Therapeutics*, No. CIV.A. 3777-VCN, 2009 WL 4345149, at *5 (Del. Ch. Dec. 1, 2009) ....................................................................................................................................................... 15

*Matter of Mobile Steel Co.*, 563 F.2d 692, 699 (5th Cir. 1977) ............................................................. 40

004669

*Mayfield v. Peek,* 446 S.W.3d 253 (Tex. App.—El Paso 2017, no pet.) ................................................. 17

*Metro Storage International, LLC v. Herron,* 275 A.3d 810 (Del. Ch. 2022) ........................................... 41

*Middaugh v. InterBank,* 528 F. Supp. 3d 509, 546 (N.D. Tex. 2021) ................................................. 18, 19

*Richardson v. United States,* 468 U.S. 317 (1984) ............................................................................... 22, 25

*Scanlon v. Eisenberg,* 2012 WL 169765 (7th Cir. Jan. 20, 2012) .............................................................. 17

*Shin-Chi-Su v. Vantage Drilling Company,* 474 S.W. 3d 384 (Tex. App. – 14th Dist. 2015, pet. denied) ..................................................................................................................................................... 41

*Siefert v. Leonhardt,* 975 S.W.2d 489, 492–93 (Mo. Ct. App. 1998) ....................................................... 17

*Silver v. Bemporad,* No. SA-19-CV-0284-XR, 2019 WL 1724047, at *1-4 (W.D. Tex. Apr. 18, 2019), appeal dismissed, No. 19-50339 (5th Cir. July 15, 2019) ....................................................................... 29

*Silver v. City of San Antonio,* No. SA-19-MC-1490-JKP, 2020 WL 3803922, at *6 (W.D. Tex. July 7, 2020) ................................................................................................................................................. 29, 30

*Silver v. Perez,* No. SA-20-MC-0655-JKP, 2020 WL 3790489, at *2 (W.D. Tex. July 7, 2020) .......... 29

*Smith v. Bank of Clearwater,* 479 So. 2d 755 (Fla. Dist. Ct. App. 1985) ................................................. 17

*Teacher's Retirement System of Louisiana v. Aidi off,* 900 A.2d 654 (Del. 2006) ............................ 41

*Trippodo v. SP Plus Corp.,* No. 4:20-CV-04063, 2021 WL 2446204, at *3 (S.D. Tex. May 21, 2021), *report and recommendation adopted,* No. 4:20-CV-04063, 2021 WL 2446191 (S.D. Tex. June 15, 2021) ......................................................................................................................................................... 24

*United States v. Contorinis,* 672 F.3d 136, 144 (2d Cir. 2012) ................................................................. 36

*US Bank Assoc. v. Verizon Commun., Inc.,* 817 F.Supp. 934, 944 (N.D. Tex. 2011) ............................ 41

*Yellowhouse Machinery Co. v. Mack (In re Hughes ),* 704 F.2d 820, 822 (5th Cir.1983) ...................... 39

004670

**Statutes**

Del. Code Ann. tit. 12, § 3816 .......................................................................................... 15, 16

Del. Code Ann. tit. 12, § 3801 .............................................................................................. 15

11 U.S.C. § 1123(b)(3)(B) ..................................................................................................... 20

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 24

Fed. R. Civ. P. 56(d) .............................................................................................................. 28

**Other Authorities**

§ 22:28. Beneficial ownership and convertible securities, 1F Going Public Corp. § 22:28 ........... 16

2 Moore's Fed. Prac. § 8.04[4] (3d ed.) ................................................................................. 37

5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1224 (4th ed.) ........................... 37

Restatement (Second) of Trusts Sec. 199 ................................................................................. 17

004671

Hunter Mountain Investment Trust ("HMIT" or "Movant") files this Reply Brief in Support of its Emergency Motion for Leave to File Verified Adversary Proceeding, together with its Supplemental Motion (collectively "HMIT's Motion for Leave") in Reply to the Joint Opposition filed by Highland Capital Management, LP., Highland Claimant Trust and James P. Seery, Jr. (Doc. 3783) ("Joint Opposition") and the Claims Purchasers Objection (Doc. 3780) ("Claims Purchasers Objection"), and respectfully shows as follows:[1]

<u>Overview</u>

1.      This Reply Brief is submitted to address the many flaws and misleading arguments in the Joint Opposition and the Claims Purchasers Objection and is submitted in further support of HMIT's Motion for Leave.

2.      The Respondents do nothing to defeat, much less mount an argument against, the allegations that indict them:

- **The Claims Purchasers do not deny they invested over $163 Million in the claim trades;**

- **The Claims Purchasers do not deny they did no due diligence before investing this $163 Million;**

- **The Claims Purchasers do not deny they refused to sell their newly acquired claims at any price;**

- **The Claims Purchasers do not deny they invested in the claims when, at best, only low ROIs were projected -- not to speak of the**

---

[1] James P. Seery, Jr., Highland Capital Management, L.P., Highland Claimant Trust and the so-called "Claims Purchaser" are collectively referred to as "Respondents."

> **substantial risks generally associated with claims trading in a
> bankruptcy setting—all happening within a short-window and,
> notably, within just weeks before the public announcement
> relating to the MGM sale**;

Tellingly, these questions and issues are never addressed in over 86 pages of
Respondents' collective briefing.

3.      The Joint Opposition states that HMIT is "harassing those individuals
charged with maximizing value for creditors while (perversely) wasting Highland's
resources." Joint Opposition ¶ 1. Nothing is further from the truth. It should be clear to
all who seek fairness that HMIT seeks restitution to benefit (not hurt) the Claimant Trust,
adding substantially to "Highland's resources." The fact that the Joint Opposition
advances a contrary notion underscores the conflict that plagues the Pachulski law firm's
involvement in this matter. That the "Highland Parties" are tying their knot to James
Seery is a grave misjudgment, and the Pachulski firm should be disqualified as a result.
If indulged, the Pachulski firm's arguments will damage the Reorganized Debtor, the
Claimant Trust and innocent stakeholders.

4.      The Joint Opposition suggests that HMIT is guilty of *ad hominem* attacks on
James Seery's character, notwithstanding the many plausible allegations against him.
This is wildly ironic given the vitriol the Joint Opposition uses in its tiresome, ineffectual
assault on Jim Dondero. The Joint Opposition uses hyperbolic references to Mr. Dondero
on no less than 123 occasions in the first 29 pages, and the Claims Purchasers echo these
exaggerations. Yet none of these attacks have anything to do with the current

proceedings. They are intended as a deflection: Mr. Dondero is not a party to HMIT's

Motion for Leave, and the Court's docket confirms that HMIT has not been held to be –

and is not - a "vexatious" litigant. There also is no viable basis for Respondents to contend

that HMIT is a "Dondero affiliate," much less that Jim Dondero has any current

connection with HMIT. The diatribe against Mr. Dondero underscores the irrelevance of

over 60% of the Joint Opposition. Rather than attempting to address the colorability of

HMIT's insider trading allegations, which they cannot effectively do, the Respondents

clearly want to litigate in an alternate dimension in the hope of inflaming the Court

against HMIT's Motion for Leave.

5.      The Respondents' arguments concerning standards of review are

misleading. An evidentiary hearing in this setting is highly inappropriate and would

open a Pandora's box of discovery and procedural issues. Relevant case law makes clear

that the determination of "colorability" does not allow the "weighing" of evidence. At

most, a Rule 12(b)(6) "plausibility" standard applies.

6.      To allow a full-blown evidentiary hearing on HMIT's Motion for Leave is

incorrect even if the *Barton* doctrine is applied, though it should not be applied. In the

absence of discovery, an evidentiary hearing would be akin to a mini-trial where HMIT

is deprived of basic discovery and due process. Respondents urge an amorphous (and

improper) standard of proof (*e.g.*, must every factual allegation be established by

admissible, credible evidence **before** leave to file is granted?). By doing so, Respondents

are inviting reversible error and encouraging an abuse of discretion. Their effort to turn these proceedings into a 3-ring donnybrook will not withstand appellate scrutiny.

7.     Both the Joint Opposition and the Claims Purchasers Objection play fast and loose with standing arguments. HMIT has constitutional standing to bring claims on its individual behalf as an aggrieved party. Indeed, there is no question HMIT has individual standing under Delaware statutory trust law as well as standing to seek declaratory relief that it is "*in the money*," and that Seery's refusal to certify HMIT's status as a beneficiary of the Claimant Trust is part of the larger conspiracy (Complaint ¶¶ 3-5, Count III). The Respondents' conduct caused a non-speculative, legally cognizable injury to HMIT, the Claimant Trust and the Reorganized Debtor.

8.     Seery and the Pachulski firm seek to keep HMIT in a box as a "contingent" interest to fashion the argument that Seery does not owe direct duties to HMIT, post-effective date. But this is inconsistent with pertinent Delaware trust law, which also provides derivative standing.

9.     The suggestion that HMIT needed to sue on behalf of the Litigation Sub-Trust is also wrong and distorts the plain language of the Assignment Agreement[2] discussed in the Joint Opposition, a document which the Pachulski firm presumably drafted.

---

[2] Document Number 211, Bankruptcy Adversary Proceedings (Case No. 21-03076-sgj (Bankr. N.D. Tex.)).

10.     The Respondents miss the boat in their discussions of MGM. First, HMIT alleges that the Claims Purchasers had access to MNPI far greater than just MGM. Respondents ignore this claim. Second, Respondents fail to distinguish between substantive MNPI that Seery received and provided to the Claims Purchasers and the indefinite, unconfirmed media reports regarding MGM. The former is actionable under relevant law.

11.     The Joint Opposition uses the last few pages of its briefing as a scatter gun attack on HMIT's Motion for Leave. None of these arguments have merit. In response, and without limitation, it is clear that HMIT can fairly represent the interests of the derivative parties; HMIT has standing to bring forth all of the claims set forth in the Complaint; HMIT does plausibly allege its claims as set forth in the Complaint; HMIT does plausibly set forth its claims for breach of fiduciary duty as set forth in the Complaint; HMIT has adequately plead the futility of making demands as a condition precedent to bringing a derivative action as set forth in the Complaint; HMIT does seek remedies that are available as a matter of law, including, without limitation, unjust enrichment, disgorgement, constructive trust, and declaratory relief. The Joint Opposition's discussion in paragraph 154 is frivolous.

<u>**Objections to "Evidence"**</u>

12.     HMIT objects to the entirety of the Declaration of John Morris ("Morris Decl.") and all of the attached purported "evidence," which is appended to the Joint

004676

Opposition, (collectively the "Opposition Evidence") on several grounds, and HMIT

hereby request the Court strike all Opposition Evidence based upon the reasons set forth

herein.

13.    First, the Opposition Evidence is irrelevant to the Court's inquiry

concerning "colorability." The Court should not weigh evidence outside the 4-corners of

HMIT's proposed Complaint.

14.    Second, Respondent's suggestion that HMIT is allegedly a "vexatious"

litigant is a red herring, and HMIT objects that Respondents' "Opposition Evidence"

purportedly relating to Mr. Dondero is entirely irrelevant.  This Court has made no such

finding – nor has any other court. There also is no indication in the Court's docket that

HMIT should be pigeonholed in such a manner to impose unwarranted burdens on

HMIT.

15.    Third, hypothetically, and for the sake of argument only, even if

Respondents' contentions about Mr. Dondero's purported control over HMIT were

correct (which HMIT denies), this would have no bearing on the "colorability" of HMIT's

allegations under applicable legal standards. In any event, Respondents' blunderbuss of

"Dondero evidence" is immaterial in the absence, at a minimum, of any showing that Jim

Dondero exercises direct or functional control over the affairs of HMIT in connection with

the specific proposed adversary proceeding at issue. Respondents make no such

showing.

16.     In addition, numerous Opposing Evidence documents have been heavily redacted without any explanation or stated justification. The Joint Opposition is using both sword and shield in this proceeding, and this should not be allowed.

17.     HMIT provides notice that it withdraws all affidavits and other evidence attached to its Motion for Leave, subject to a reservation of rights that, in the event the Court concludes it will conduct an evidentiary hearing, HMIT may offer the same evidence at the hearing.  Further, if the Court concludes that it will conduct an evidentiary hearing on HMIT's Motion for Leave, HMIT reserves all rights to conduct merits-based discovery before the hearing – without waiving any of HMIT's substantive or procedural rights, and without admitting that an evidentiary hearing or discovery is proper.

<u>**Argument**</u>

I.      <u>**Standing**</u>

**A. HMIT has standing to bring claims as a holder of a beneficial interest in the Claimant Trust both derivatively and in its own right.**

18.     The Respondents assert, as a threshold legal matter, that the "contingent" nature of HMIT's interest in the Claimant Trust divests HMIT of any right or remedy to assert a derivative claim or a claim on its own behalf. *See* Joint Opposition, ¶3.[3] Their arguments are flat wrong.

---

[3] The Respondents *never* address HMIT's allegation that Seery refuses to certify HMIT's status as a Beneficiary as part of the scheme at issue.

004678

19.      Delaware statutory trust law provides that a plaintiff in a derivative action

on behalf of a trust must be a beneficial owner at the time of the action and at the time of

the transaction. DEL. CODE ANN. tit. 12, § 3816. A "beneficial owner" means "*any* owner

of a beneficial interest in a statutory trust, the fact of ownership to be determined and

evidenced ... in conformity to the applicable provisions of the governing instrument of

the statutory trust." DEL. CODE ANN. tit. 12, § 3801 (emphasis added). A "beneficial

interest" is the "profit, benefit, or advantage resulting from a contract." *Mangano v. Pericor*

*Therapeutics*, No. CIV.A. 3777-VCN, 2009 WL 4345149, at *5 (Del. Ch. Dec. 1, 2009) (citing

favorably to Black's Law Dictionary 156 (6th ed. 1990)). As one Delaware court

recognized when evaluating derivative standing, the statute "use[s] … the general term

beneficiary, without any language restricting the class of beneficiary to whom it refers…"

*Est. of Tigani*, No. CV 7339-ML, 2016 WL 593169, at *14 (Del. Ch. Feb. 12, 2016).

20.      Here, it is clear HMIT owns *some* benefit or advantage under the Claimant

Trust Agreement [Doc. 3521-5]. The Respondents argue that the language of the Claimant

Trust Agreement -- that the "Claimant Trust Beneficiaries shall be the sole beneficiaries

of the Claimant Trust" -- is proof HMIT does not own a beneficial interest. *See* Joint

Opposition, ¶105. But "Claimant Trust Beneficiaries" *includes* the Holders of Allowed

Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited

Partnership Interests (*i.e.*, HMIT) *if* the Claimant Trustee pays Holders of Allowed

Unsecured Claims and Holders of Allowed Subordinated Claims are paid. *See* Claimant

Trust Agreement, ¶1.1(h). While HMIT holds a different class of beneficial interest (*i.e.*, a contingent or secondary interest), it nonetheless owns a *type* of beneficial interest. Importantly, in the context of equity securities, courts reject "the argument that an investor cannot be considered a beneficial owner of an equity security when the investor's right to acquire the security is contingent upon a future event." § 22:28. *Beneficial ownership and convertible securitie*s, 1F Going Public Corp. § 22:28 (collecting cases).[4] Nor is there any reason for a different result here. The Delaware legislature easily could have restricted standing to limit derivative actions to a specific class of beneficial interests holders **but did not do so**. DEL. CODE ANN. tit. 12, § 3816; *Tigani*, 2016 WL 593169, at *14. Thus, this omission must be interpreted as an expression of legislative intent to include *any* owner of a beneficial interest, just as the statute says. *Brown v. State*, 36 A.3d 321, 325 (Del. 2012) (Delaware law follows the maxim of statutory interpretation "*expressio unius est exclusio alterius*"). The Claimant Trust Agreement is otherwise silent on derivative standing and, therefore, Delaware statutory trust law applies. HMIT therefore meets the requirements for derivative standing under Delaware law because HMIT owns a type of beneficial interest.

---

[4] Of note, **none** of the cases cited in the Joint Opposition involve contingent beneficiaries. Rather, in *In re Nat'l Coll. Student Loan Tr. Litig.*, 251 A.3d 116, 191 (Del. Ch. 2020), the applicable trust documents required holders of beneficial interests to be evidenced by a trust certificate and the court found that those who did not hold a trust certificate did not have derivative standing. This is **not** a "contingent beneficiary" case. In *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *19 n.123 (Del. Ch. June 15, 2011), *aff'd* 38 A.3d 1254 (Del. 2012), the court noted that certain investors no longer owned affected shares at all so they no longer had standing to pursue a derivative claim. Again, this is **not** a "contingent beneficiary" case.

004680

21.     While the class of beneficial interest is distinct (*i.e.,* contingent), the

Claimant Trust Agreement does not preclude HMIT, as a holder of a contingent beneficial

interest, from asserting claims in its individual right. Leading trust authority and courts

throughout the country recognize that a *contingent beneficiary* has standing to bring claims

against a trustee of a trust. RESTATEMENT (SECOND) OF TRUSTS Sec. 199; *Scanlon v. Eisenberg*,

2012 WL 169765 (7th Cir. Jan. 20, 2012) (contingent, discretionary beneficiary of a trust

has Article III standing to bring a suit against the trustee for breach of fiduciary duty in

mismanaging the trust's assets); *Mayfield v. Peek*, 446 S.W.3d 253 (Tex. App.—El Paso 2017,

no pet.); *Siefert v. Leonhardt*, 975 S.W.2d 489, 492–93 (Mo. Ct. App. 1998) (holders of

contingent interest in trust have standing to bring suit against at trustee); *Smith v. Bank of

Clearwater*, 479 So. 2d 755 (Fla. Dist. Ct. App. 1985) (contingent beneficiary was entitled

to bring suit against trustee for alleged mismanagement of trust resulting in diminution

of trust asset); *Giagnorio v. Emmett C. Torkelson Tr.*, 292 Ill. App. 3d 318, 686 N.E.2d 42

(1997) (contingent beneficiary had standing to bring action for breach of fiduciary duty).

The same applies here.

22.     The Respondents' arguments -- that HMIT is excluded from the definition

of a Claimant Trust Beneficiary -- leads only to the conclusion that subsection 5.10 of the

Claimant Trust Agreement does not apply to HMIT. *See* Joint Opposition, n. 35. But the

contingent nature of HMIT's beneficial interest does not divest it from having standing

004681

to bring causes of action in its own right—contingent beneficial interest holders have

standing to bring actions against trustees under Delaware law.

23.     The Claims Purchasers also argue there is no legal duty and no cognizable

injury fairly traceable to their conduct, and that "only the transferor may object to a

transfer." [Claims Purchaser Objection at ¶11) This is again not true. The Complaint

involves more than just private trades between sellers and buyers outside of the purview

of the Court. Seery's excessive compensation is a quid pro quo which causes a cognizable,

legal injury to both the Claimant Trust and HMIT.[5] Furthermore, the Claims Purchasers

have a duty to not aid and abet Seery's breaches of fiduciary duty.[6]

**B.  The Plan did not divest the Claimant Trust of any claims and specifically
     reserved claims regarding acts or omissions that constitute bad faith, fraud, or
     willful misconduct which were not released.**

24.     The Joint Opposition argues that the Plan did not reserve claims against

Seery or the other Respondents and, as a consequence, neither HCMLP nor the Claimant

---

[5] The nature of this injury, in addition to Seery's influence over the Claimant Trust, and the lack of prior action by the Claimant Trust to pursue the claims HMIT seeks to pursue derivatively, among other things, demonstrate that HMIT is not only a proper party to assert its derivative claims - but the best party to do so.

[6] *See RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015) (aider and abetter is liable if its participation in the breach of fiduciary duty is "knowing"). The Claims Purchasers also claim that even if Seery's compensation was excessive, HMIT cannot show that any disgorgement of these fees would inure to HMIT's benefit as a contingent beneficiary. [Claims Purchasers Objection ¶22] In making this argument, however, they obviously ignore the well-pleaded allegations that the Claims Purchasers aided and abetted Seery's breaches of fiduciary duty and they should be disgorged of their ill-gotten profits.

004682

Trust has standing to bring claims based on pre-effective date conduct.[7]  Joint Opposition

¶ 124.  This is not true.

25.    Article IX(D) of the Plan[8] specifically states that each of the "Released

Parties" (which is defined by the Plan to include Seery) is released and discharged by the

Debtor and the Estate (including by the Claimant Trust) from any and all Causes of

Action, including derivative claims *except that* the forgoing "does not release … any

Causes of Action arising from the willful misconduct, criminal misconduct, actual fraud

or gross negligence of such applicable Released Party."  *See* Plan, Art. IX(D).  Further, in

the Confirmation Order, this Court ruled that the Plan does not purport to release any

claim held by the Claimant Trust.  *See* Confirmation Order[9] at ¶71.[10]

26.    Claims brought derivatively on behalf of the Reorganized Debtor and the

Claimant Trust were specifically retained by the Plan in keeping with applicable Fifth

---

[7] HMIT reserves all rights regarding the timing of the accrual of the causes of action, including whether the ultimate step in the fraudulent scheme occurred post-Effective Date -- with the payment of Seery's excess compensation -- a legal injury. *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 546 (N.D. Tex. 2021) (a claim for fraud accrues "when a wrongful act causes some legal injury"); *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 733 (Del. 2020) ("[a] cause of action in tort accrues at the moment when 'an injury, although slight, is sustained in consequence of the wrongful act of another.'").

[8] The *Fifth Amended Plan Of Reorganization Of Highland Capital Management, L.P. (As Modified)* [Doc. 1943-1] (the "Plan").

[9] Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief [Doc. 1943] (the "Confirmation Order").

[10] Furthermore, in the alternative, Section E of the Plan specifically preserves all causes of action not expressly settled or released, including all causes of action ". . .of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or be different from those the Debtor now believes to exist." Here, the principles requiring specificity in the identification of reserved claims do not apply for several reasons, *inter alia*, because Seery is part of the larger conspiracy. If Seery's willful misconduct is not released, then those who willfully aided and abetted his conduct is effectively also preserved.

004683

Circuit law. *See In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013) (quoting 11 U.S.C. § 1123(b)(3)(B)).[11] Therefore, the Plan does not affect HMIT's standing to bring derivative claims because these claims are grounded in willful misconduct and fraud. Furthermore, to the extent that claims against the Claims Purchasers accrued post-effective date, then the Claimant Trust owns those claims, and HMIT may pursue those claims derivatively. HMIT reserves its procedural rights to pursue such claims accordingly.

**C. The Litigation Sub-Trust Assignment of Claims [Doc. 211] is Flawed.**

27.     The Joint Opposition argues that the so-called Litigation Sub-Trust Assignment precludes HMIT's current derivative claims on behalf of the Claimant Trust. Again, this is wrong.

28.     The Litigation Sub-Trust was charged with the responsibility to pursue Estate Claims, but not other Causes of Action identified in Paragraph 19(a) of the Plan.

---

[11] *See, Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)* and its progeny deal with the retention of *pre-confirmation* causes of action. 540 F.3d 351, 355 (5th Cir. 2008). Specifically, in *United Operating*, the Fifth Circuit explained:

> To facilitate this timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation. Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it—"absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote.

*Id*. at 354; But here, HMIT's claims are post-confirmation. The stated rationale for the specific claims reservation being tied to notice in the confirmation process has no applicability to post-confirmation claims.

004684

This is also made clear under Section 2.2 of the Sub-Trust Agreement where the Litigation Sub-Trust was established for purposes of monetizing the Estate Claims. [Doc. 1811-4] In this context, it is clear that the Assignment Agreement dated October 8, 2021 was intended to transfer only those causes of action necessary for the Litigation Sub-Trust to pursue its defined responsibilities. Any further expansion of the assignment language would constitute an impermissible effort to modify the Plan.

29.    The language of the Assignment Agreement recognizes the Plan's limitation by making clear that the assignment is only intended to transfer those causes of action "that will be included in the Litigation Trustee's complaint filed on or before October 15, 2021 are assigned to the Litigation Sub-Trust." This evinces the assignor's intent that all other causes of action were not assigned. Thus, the Claimant Trust still holds the claims which HMIT seeks to assert derivatively.

30.    It also appears that the Litigation Sub-Trust may not have standing to pursue non-Estate claims. *See* Plan, Section IV(D).[12] The Plan incorporates the Final Term Sheet (Doc. 354) which defines "Estate Claims" as "any and all Estate Claims and causes of action against Mr. Dondero, Mr. Okada, other insiders of the Debtor and each of the Released Parties." Clearly, this does not include breaches of fiduciary duty or aiding and

---

[12] HMIT has alleged, alternatively, that it seeks to bring the Adversary Proceeding in the name of the Litigation Sub-Trust only if it is determined that the Claimant Trust does not own the claims but the Sub-Trust does. It has also alleged that demand on the Trustee of the Litigation Sub-Trust would be futile.

abetting breaches of such duties against Seery, as well as Muck and Jessup as members of the Oversight Board.

31.     In its arguments concerning the Assignment Agreement, the Joint Opposition seeks to modify the Plan. The Fifth Circuit is clear that any modification of the "rights obligations and expectations" under a Plan of Reorganization that was not "specifically contemplated and negotiated by the Parties at confirmation" constitutes a modification of the Plan. *See In re U.S. Brass Corp.*, 301 F.3d 296, 308-309 (5th Cir. 2002); *cf. Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.),* Civil Action No. 3:21-CV-1895-D, 2022 U.S. Dist. LEXIS 15648, at *5 (N.D. Tex. 2022).

## II.    The "Colorable" Standard

### A. The plain language of the Plan's Gatekeeper provision states that the Court must determine whether a cause of action represents a colorable claim

32.     The Fifth Circuit quoted *Richardson v. United States*, 468 U.S. 317 (1984), for a definition of a "colorable" claim as one with "*some possible validity*." *See In re Deepwater Horizon*, 732 F.3d 326, 340 (5th Cir. 2013) (quoting *Richardson*, 468 U.S. at 326 n. 6). The Fifth Circuit also made clear that whether a claim is colorable is based on *allegations* and not merits-based proof: "There is a distinction here between whether a claim is colorable and whether it is meritorious. A plaintiff's claim is colorable if he can *allege* standing and the elements necessary to state a claim on which relief can be

granted—**whether or not his claim is ultimately meritorious**—**whether he can** *prove* **his case**.” *Id*. at 341 (emphasis in original, bold emphasis added).

33.     Here, in an analysis under the “colorable” standard, the Court need not be satisfied there is an evidentiary basis on the merits of the claims to be asserted. *See Louisiana World Exposition v. Fed. Ins. Co*., 858 F.2d 233, 252-53 and n. 15 (5th Cir. 1988) (allegations were sufficient, and no evidentiary hearing was necessary, to determine that breach of fiduciary duty claim against bankruptcy estate’s officers and directors for mismanagement of estate was colorable claim).[13] In *Louisiana World Exposition*, the Fifth Circuit explained: “[I]n light of our analysis, we find that the debtor-in-possession’s refusal to pursue LWE’s cause of action against its officers and directors for negligent management was indeed unjustified. The Committee outlined a colorable claim which, if pursued successfully, could have greatly increased the value of the estate.” *Id*. Similarly here, where the proposed claims are brought pursuant to the Plan and this Court’s exclusive jurisdiction, the more lenient colorability standard applies and an evidentiary hearing is neither warranted nor appropriate.

**B.  The *Barton* Doctrine does not support an evidentiary hearing.**

34.     The Respondents urge application of the Barton Doctrine. They complain that HMIT’s stated authority -- that the colorable standard is lower than a FED. R. CIV. P.

---

[13] In *Louisiana World Exposition*, when stating that an evidentiary hearing was unnecessary, the court noted that there were no objections to the claim other than the debtor-in- possession’s “grave” conflict of interest and his unjustified refusal to bring the claims. *Id*.

004687

12(b)(6) analysis -- cannot apply because these authorities do not arise in a "gatekeeper"

context.[14] Joint Opposition, ¶97. Claim Purchasers Objection, ¶44. However, as the

drafters of the Plan and the "gatekeeper" provisions, the Highland Parties could easily

have incorporated a *Barton* doctrine standard, but they instead elected to use the

"colorable" standard. This choice must be construed as having some consequence,

particularly because the applied standard should be what the Plan says: *colorable*.  *In re

Phoenix Petroleum Co.*, 278 B.R. 385 (Bankr. E.D. Pa. 2001) (noting the general rule that

ambiguities in plans are interpreted against the drafters).

35.    HMIT's authorities directly address the "colorable" standard, while

Respondents provide no persuasive argument that a standard higher than a Rule 12(b)(6)

standard should apply in the context of the Gatekeeper order.  *See, e.g., In re On-Site Fuel

Serv., Inc.*, No. 18-04196-NPO, 2020 WL 3703004, at *12 (Bankr. S.D. Miss. May 8, 2020)

(derivative standing for a creditor's committee); *Trippodo v. SP Plus Corp.*, No. 4:20-CV-

04063, 2021 WL 2446204, at *3 (S.D. Tex. May 21, 2021), *report and recommendation adopted*,

No. 4:20-CV-04063, 2021 WL 2446191 (S.D. Tex. June 15, 2021) (amending a complaint

where the amendment would destroy diversity jurisdiction); *Dantzler v. United States

Dep't of Just.*, No. CV 22-2211, 2022 WL 4820404, at *2 (E.D. La. Sept. 7, 2022), *report and

recommendation adopted*, No. CV 22-2211, 2022 WL 4605508 (E.D. La. Sept. 30, 2022)

---

[14] The Highland Parties also assert that the Court must essentially consider HMIT a vexatious litigant.  Such
a finding would of course be procedurally improper and unsupported by the record before this Court
which shows that HMIT has had extremely limited participation in the Bankruptcy Case.

004688

(dismissal for lack of federal question jurisdiction); *In re Deepwater Horizon*, 732 F.3d 326, 342 (5th Cir. 2013) (inclusion of claims into a class); *Richardson v. United States*, 468 U.S. 317, , 104 S. Ct. 3081, 3086, 82 L. Ed. 2d 242 (1984)(appealability of a double jeopardy claim); *Becker v. Noe*, No. CV ELH-18-00931, 2019 WL 1415483, at *18 (D. Md. Mar. 27, 2019) (Reliance on the nationwide service of process provision in a RICO case).

36.     It is clear that courts apply the "colorable" standard in the ***same*** manner in a variety of different factual and procedural contexts. Yet Respondents argue that the Court should ignore this abundant precedent. Respondents also ask the Court to disregard the choice to incorporate a "colorable" standard in the Gatekeeper provisions.

37.     There is yet another flaw in Respondents' arguments. Even if the *Barton* doctrine applies, the *prima facie* standard used in *Barton*, like the "colorable" standard, is ***lower*** than a FED. R. CIV. P. 12(b)(6) standard. In *Provider Meds, LP*, Judge Houser analyzed the *Barton* doctrine and ultimately concluded that it did not apply to a suit before the appointing court. 514 B.R. 473, 476 (Bankr. N.D. Tex. 2014). Importantly in reaching this conclusion, Judge Houser explained that:

> **Federal Rule of Civil Procedure 12(b)(6)…provides a more stringent standard in evaluating whether a legitimate claim for relief has been stated than is applied when leave [under the Barton doctrine] is sought**. Specifically, when a party seeks leave to sue a trustee, that party must make a prima facie case against the trustee, showing that its claim is not without foundation.  And, while the standard for granting leave is similar to the standard courts employ when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), **the standard for granting leave to sue is more flexible than the standard for granting a motion to dismiss**.

004689

*Id*. at 476-77. (Emphasis added) Therefore, contrary to the Respondents' analysis, a *Barton* doctrine analysis is not appropriate but even then, it is *less* stringent than Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6).

38.    The Respondents cite cases where the bankruptcy court considered evidence in the context of a *Barton* doctrine analysis as support for the idea that a higher standard than a Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) applies. But the case law is clear that -- under a Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) analysis -- courts may consider certain types of evidence: *i.e.* documents attached to the complaint and any documents that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added). Further, courts can consider matters of public record as judicially noticed. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). And a court cannot weigh it at a Fed. R. Civ. P. 12(b)(6) hearing. *Ferguson v. Texas Farm Bureau Bus. Corp.*, No. 6:17-CV-00111, 2017 WL 7053927, at *5 (W.D. Tex. July 26, 2017), *report and recommendation adopted*, No. 6:17-CV-111-RP, 2018 WL 1392703 (W.D. Tex. Mar. 20, 2018) (weighing evidence at the 12(b)(6) stage is wholly improper under the 12(b)(6) framework). But none of these authorities suggest an evidentiary hearing is appropriate, much less an open-ended 3-ring evidentiary circus as Respondents urge.

39.    A cursory look at the cases cited in the Joint Opposition confirms that Courts do *not* weigh evidence but rather conduct a Fed. R. Civ. P. 12(b)(6) type analysis.

▪    In *VistaCare*, the Third Circuit indicated that while a court can decide to a hold a hearing, there is no mention of the type of hearing the

004690

court should conduct. *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 n.12 (3d Cir. 2012).

- In *Foster v. Aurzada (In re Foster)*, 2023 WL 20872, at \*1 (5th Cir. Jan. 3, 2023) the bankruptcy court considered filed pleadings, *i.e.,* matters of public record, and the bankruptcy court expressly stated that in considering the evidence it was giving "great latitude for what amounts to evidence" on the issue because the movant was a pro se litigant.  *See In re Foster*, Case No. 12-43804-elm7 (Bankr. N.D. Tex.), Dkt. Nos. 544 and 539 (witness and exhibit lists); 547 (Transcript, p. 18:22-25).

- In *Grodksy*, again, the bankruptcy court expressly reviewed transcripts (*i.e.,* the record before the bankruptcy court)[15] and documents submitted with the proposed complaint, i.e., exactly what a court would do in a FED. R. CIV. P. 12(b)(6) analysis.  No. 09-13383, 2019 WL 2006020, at \*4 (Bankr. E.D. La. Apr. 11, 2019), *subsequently aff'd sub nom. Matter of Grodsky*, 799 F. App'x 271 (5th Cir. 2020).

Here, HMIT does not dispute that this Court can conduct a hearing, and that it can look at documents incorporated into the Complaint and the record in the Bankruptcy Case that is referred to in support the allegations in the Complaint. But what the Court cannot do is consider and weigh evidence outside the boundaries of a FED. R. CIV. P. 12(b)(6) analysis.

40.     The Joint Opposition brief (at para. 95) misconstrues the cases suggesting that HMIT must meet a prima facia standard. *In re World Mktg. Chi*, LLC, 584 B.R. 737, 743 (Bankr. N.D. Ill. 2018) (holding that Barton doctrine only applies to a request to bring

---

[15] Of note, bankruptcy courts can and do consider the record in a bankruptcy case in a Barton doctrine analysis and the record can often be dispositive.  If a trustee is acting pursuant to court orders (which are matters of public record), there can be no ultra vires act.

a suit outside of the bankruptcy court); *Leighton Hold. Ltd. v. Belofsky*, 2000 WL 1761020, at *1 (N.D. Ill. Nov. 30, 2000) (same). Additionally, the cases cited to state that *Barton* requires more than a Rule 12(b)(6) review are distinguishable. *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) (discussing particular problem of bringing suit against trustee in a Chapter 7 while the bankruptcy was ongoing as a threat to the trustee); *In re beck Indus., Inc.*, 725 F.2d 880, 886 (2d Cir. 1984) (deciding whether a California court would have jurisdiction without leave of bankruptcy court and finding that "*Barton* has long been the subject of statutory exception").

41.     When undertaking a *Barton* doctrine analysis (which is a **more lenient** standard than a FED. R. CIV. P. 12(b)(6)), there is **no** authority that courts should conduct a full evidentiary hearing. In a FED. R. CIV. P. 12(b)(6) context, considering matters that are outside of the Complaint or not matters of public record would convert a FED. R. CIV. P. 12(b)(6) motion to dismiss into a motion for summary judgement. FED. R. CIV. P. 12(d).[16] But a motion for summary judgment requires that parties have adequate opportunity for discovery, which of course has not occurred here.  FED. R. CIV. P. 56(d).

42.     Accordingly, an evidentiary hearing on the HMIT's Motion for Leave is wholly improper and it, and any associated discovery, would result in a waste of judicial

---

[16] Indeed, the Claims Purchasers aggressively opposed discovery in the related Rule 202 proceedings in Texas State Court.

004692

time and resources, along with unnecessary and burdensome delay, inconvenience, and expense to HMIT (calculated to deny HMIT's due process rights).

### C. Vexatious Litigant Pre-Filing Injunction Standard does not apply.

43.     The Respondents next argue that -- rather than the colorable standard contained in the Gatekeeper provisions (or even the plausible claim *Barton* doctrine analysis) -- the Court should conduct a heighted analysis because the Confirmation Order states that the Gatekeeper is "consistent with" the notion of a pre-filing injunction to deter vexatious litigants, and the Fifth Circuit stated the Gatekeeper provisions screen and prevent bad faith litigation. Joint Opposition, ¶4.

44.     The Joint Opposition cites two cases that involve the *same* pro se litigant with an extensive, documented history of an "abuse of the judicial process," who after notice and hearing was deemed a "vexatious litigant," and who then proceeded to violate the pre-filing injunction on numerous occasions. *See Silver v. Bemporad*, No. SA-19-CV-0284-XR, 2019 WL 1724047, at *1-4 (W.D. Tex. Apr. 18, 2019), *appeal dismissed*, No. 19-50339 (5th Cir. July 15, 2019) (finding filer to be a vexatious litigant); *Silver v. City of San Antonio*, No. SA-19-MC-1490-JKP, 2020 WL 3803922, at *6 (W.D. Tex. July 7, 2020); *Silver v. Perez*, No. SA-20-MC-0655-JKP, 2020 WL 3790489, at *2 (W.D. Tex. July 7, 2020). In such a case, the court did afford itself greater latitude than a FED. R. CIV. P. 12(b)(6) analysis finding that, based on the facts before it, "merely satisfying the minimal requirements to survive screening or a motion to dismiss may not always carry a sanctioned litigant's burden to

persuade the Court that it should permit a proposed action to be filed." *City of San Antonio*, 2020 WL 3803922 at *6. But the *Silver* courts do not purport to establish some standard for all pre-filing injunctions. Rather, the *Silver* courts make clear that the standard imposed is begot by its previous specific, extensive findings regarding this particular litigant's behavior. Importantly, citing the Fifth Circuit, the *Silver* court cautioned that an "injunction against future filings must be **tailored** to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986).

45.     Here, however, the Gatekeeper protocol was tailored by the Highland Parties to include the **colorable** standard as a predicate. And this is the standard ordered by the Court based upon the record before it, and this is the standard that was affirmed by the Fifth Circuit. Notably, given the breadth of the Gatekeeper protocol (applying to likely hundreds of parties including any entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case and any entity related thereto),[17] any higher standard would never been found to have been "tailored" to preserve legitimate rights of hundreds of parties under *Farguson*.

---

[17] "Enjoined Parties" (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

46.     The time to advocate for a higher standard for a pre-filing injunction was at confirmation of the Plan—not years later, particularly where there is **no finding** of HMIT being a vexatious litigant.  *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008) (noting that in modifying a pre-filing injunction, after appropriate notice and an opportunity for hearing, a court must consider the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits).

### III.     The Colorable Allegations and Factual Sufficiency of HMIT's Pleadings

#### A.  The Financial Allegations

47.     Applying the correct "colorable" standard which, at most, is consistent with Rule 12(b)(6) standards for plausibility, the Court should focus on the four corners of HMIT's proposed Adversary Complaint and not weigh extraneous evidence. When doing so, it is clear HMIT pleads sufficient factual allegations to raise more than a colorable claim.

48.     Notwithstanding over 85 pages of collective briefing, Respondents **do not deny** that the Claims Purchasers failed to undertake due diligence (Complaint ¶40). Respondents **also never deny** that the Claims Purchasers invested $163 million, a very significant sum with low annualized projected returns within optimistic timeframes, in the absence of due diligence (Complaint ¶¶40, 49). This is particularly curious because the purchased claims related to a Debtor whose assets are contained in numerous portfolio companies, advised funds and whose fee revenue is dependent upon numerous

sources. This was and is not a typical "one business" bankruptcy where investors can review comparable investments to make an informed decision to buy claims. This alone provides compelling support for the colorable nature of the allegations that the Claims Purchasers used Material Non-Public Information ("MNPI") provided by Seery.[18] Otherwise, they cannot economically justify their significant financial investment and the attendant risks.

49.     But the strength of HMIT's claims is even more robust. As the Complaint alleges, information made public by the Debtor at the time of the claims trades forecasted pessimistic returns: 71% for Class 8 Creditor Claims and 0% for Class 9 Creditor Claims (Complaint ¶¶38-43). Focusing on Class 8 Claims, Farallon purchased the HarbourVest Class 8 Claim ($45 million par value) for $27 million (Complaint ¶¶38-43). Based on the modeling publicly provided by the Debtors, the face value of this Claim must be discounted by at least 29% because of the payout projections (if not even more because of inherent risk). The Debtor's disclosures indicated, at the very best, a payout of only $31.9 million. Thus, a buyer relying on this publicly available information provided by the Debtor could not reasonably expect more than $4.9 million in return, best case, over

---

[18] Respondents argue that only the claim Sellers have a gripe. This is not so. The Court can take judicial notice that Claims Purchase Agreements frequently contain MNPI waivers or "Big Boy" letters, whereby the buyer and sellers acknowledge potential access to MNPI, but then waive or release rights, accordingly. The Claims Purchase Agreements have never been produced and the Claims Purchasers have openly resisted such discovery. This lack of openness and candor reinforces the colorable nature of HMIT's claims.

several years. This is a paltry payout over time that does not account for the inherent uncertainties and risks in any bankruptcy (Complaint ¶¶38-43).

50.     Similarly, Farallon and Stonehill collectively invested $50 million to acquire UBS' Class 8 Claim with a par value of $65 million which, again, must be reduced due to the 71% payout projections (Complaint ¶¶38-43). In this instance, the best-case ROI is no more than $46 million. Thus, Farallon and Stonehill invested $50 million to acquire a Claim that was projected by the Debtor to be worth only $46 million – less than their investment. Of course, this begs the question -- who would do this? Both Farallon and Stonehill are fiduciaries to their investors (Complaint ¶ 3). As sophisticated investors, Farallon and Stonehill traditionally undertake extensive due diligence before committing to an investment. It is therefore mindboggling that this was not done. It also defies common sense that Farallon and Stonehill invested a huge sum ($50 million) to realize a loss.

51.     The Joint Opposition also plays an arithmetic shell game when it argues a potential return of 30%. Joint Opposition ¶ 70. This is trickery because the Claims Purchasers would never have reasonably considered a payout for Class 9 Claims unless, of course, they had access to MNPI. It also makes no sense because Farallon does not deny HMIT's allegations that it was not interested in selling at even a higher premium – 40% above their purchase price (Complaint ¶43). Stated differently, the known

circumstantial evidence (as alleged in the Complaint) more than plausibly supports the

notion that Farallon and Stonehill had information that was unavailable to others.

### B. HMIT's Allegations Concerning MGM and MNPI

52.    The draft Complaint includes allegations, both plausible and colorable, that

Seery transferred MNPI to the Claims Purchasers.[19] At no point do any of the Claims

Purchasers dispute they conducted no due diligence, nor do they deny they relied upon

Seery. Instead, both the Joint Opposition and the Claim Purchasers devote significant

efforts to allege that the information they received relating to MGM was already public.

*See* Joint Opposition at 13-15; Claims Purchasers Objection at ¶50.[20] But, as shown below,

this is simply not true. Also, they ignore the broader allegations in the Complaint that

**MNPI other than MGM** also was involved (Complaint at ¶43-54). Stated differently,

HMIT alleges that Seery gave MNPI to the Claim Purchasers *in addition* to MGM.

53.    The Respondents' arguments concerning MGM are also anemic. The "news

articles" upon which they rely are only rumor, and not direct information from an MGM

board member, such as Mr. Dondero. The Wall Street Journal Article (December 2020),

which is the basis for the other articles which Respondents rely, cites no sources, other

than people who are allegedly "familiar" with the matter—with no other explanation or

---

[19] This includes, but is not limited to information concerning MGM. *See* proposed Adversary Complaint [Doc. 3760-1] at ¶¶ 3, 13, 14, 16,17, 43.
[20] *See* Joint Opposition Exhibits 25-30.

004698

expansion on the (lack of) reliability of the source.[21] These same articles also make clear that a sale is in no way imminent and that MGM has been allegedly trying to solicit a sale for years:

- In 2018, MGM tried selling to Apple but the "preliminary talks fell apart"[22]

- "MGM has been shopping itself for years"[23]

- In 2019, MGM again tried selling to Apple but "those talks didn't appear to bear any fruit."[24]

Thus, on their face, these media articles are nothing more than interesting and unconfirmed rumors. On the other hand, the information Seery received from James Dondero, an MGM board member with access to verified information and communications that are not available to the public, is qualitatively different. In fact, the Dondero email discusses the sale in terms of "probability" within a specific defined time period. This is a far cry from the speculative indefinite nature of the media reports. This information is clearly MNPI and would provide a significant advantage to any investor.

> Just got off a pre board call, board call at 3:00. Update is as follows: Amazon and Apple actively diligencing in Data Room. Both continue to express material interest.

> *Probably* first quarter event, will update as facts change. Note also any sales are subject to a shareholder agreement.

---

[21] Joint Opposition, Ex. 27.
[22] *Id.*
[23] Joint Opposition, Ex. 34.
[24] Joint Opposition, Ex. 29.

004699

54.     Courts consistently hold that speculative media reports about "potential"

transactions are materially distinct from information possessed by corporate insiders:

> "Insiders often have special access to information about a
> transaction.  *Rumors or press reports about the transaction may be*
> *circulating but are difficult to evaluate because their source may be*
> *unknown.  A trier of fact may find that information obtained from a*
> *particular insider, even if it mirrors rumors of press reports, is sufficiently*
> *more reliable, and, therefore is material and nonpublic, because the insider*
> *tip alters the mix by confirming the rumor or reports."*[25]

The Respondents' argument that a rumor transforms Respondents' use of MNPI

concerning MGM into public information is simply not the law.

### C.  Allegations on "Information and Belief"

55.     Respondents next try to argue that HMIT's pleadings concerning Seery's

compensation are not colorable or factually insufficient. The opposite is true.

56.     First, it is clear that Muck and Jessup purchased claims that placed them on

the Oversight Board. In this capacity, it is clear that Muck and Jessup could control

compensation awards relating to Seery. It is also clear that the Plan was modified to

provide Seery with the opportunity to receive open-ended "performance" compensation.

It is also undisputed that the Claims Purchasers have resisted discovery on their

communications with Seery that would shed further light on the compensation awards.

---

[25] *United States v. Contorinis*, 672 F.3d 136, 144 (2d Cir. 2012) (emphasis added).

57.    HMIT has undoubtedly asserted various of its *quid pro quo* allegations based

upon information and belief. *See, e.g.*, Complaint at 47. This was necessary because of the

discovery blockade erected by the Claims Purchasers. But "pleading on information and

belief is accepted in the Fifth Circuit and throughout the federal courts." *See League of

United Latin Am. Citizens v. Abbott*, 604 F. Supp 463, 496-97 (W.D. Tex. 2022) (citing *Johnson*

*v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004); 5 Charles Alan Wright & Arthur R. Miller,

Fed. Prac. & Proc. § 1224 (4th ed.), 2 Moore's Fed. Prac. § 8.04[4] (3d ed.).

58.    Even in a motion to dismiss context, the argument that "information and

belief" pleadings should be disregarded is properly rejected. *See id*. ("*Second*, Defendants

say that the Court must disregard any factual allegations in MALC's complaint that are

made on information and belief. Dkt. 80 at 12. In their telling, that form of pleading is

impermissible unless MALC specifies the "basis" for its factual allegations. Dkt. 80 at 12

(quotation omitted). But information-and-belief pleading is accepted in the Fifth Circuit

and throughout the federal courts. That's because the Court must accept all factual

allegations as true at the motion-to-dismiss stage; the time to dispute their truth is at

summary judgment. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The Court therefore declines

Defendants' invitation to disregard factual allegations pleaded on information

and belief—so long as they are truly factual and not "legal conclusion[s] couched as ...

factual allegation[s]." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))."). Moreover, "[i]f the

facts pleaded in a complaint are peculiarly within the opposing party's knowledge, as often with fraud allegations, they may be based on information and belief." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5ᵗʰ Cir. 2008). That is particularly true here.

59.     Applying these established principles to determine the sufficiency of HMIT's Complaint, it is clear that HMIT's allegations concerning Respondents' quid pro quo agreements regarding compensation must be accepted as true at this stage. HMIT has not had access to the actual financial records detailing Seery's actual compensation. HMIT has not had access to email communications between Seery, Farallon, Stonehill, Muck, and Jessup concerning his compensation and agreements relating to his compensation. The Joint Opposition has produced documents that are highly redacted and otherwise not properly considered at this stage of the proceeding. The Claims Purchasers also strenuously objected to discovery of these matters in the Rule 202 state court proceedings. To now challenge HMIT's allegations concerning Seery's compensation is the epitome of unfairness and, if indulged, a denial of due process.

**IV. <u>Duties</u>**

60.     The proposed Complaint focuses on post-Plan trades which resulted in unjustified compensation to Seery and the Claims Purchasers' ill-gotten gains. HMIT, and the Reorganized Debtor and Claimant Trust, seek disgorgement of those gains. Seery, as Trustee, owed fiduciary duties to act in the Debtor's Estate's and HMIT's best interest and to maximize the value of the Debtor's Estate. *In re Johnson*, 433 B.R. 626 (S.D. tex. 2010)

("The term 'best interest of the estate' is not defined in the Bankruptcy Code.  The Court

therefore looks to the general duties of the debtor in possession regarding his Chapter 11

estate. 'The debtor in possession performing the duties of the trustee is the representative

of the estate and is saddled with the same fiduciary duty as a trustee to maximize the

value of the estate available to pay creditors.' *Cheng v. K & S Diversified Investments (In re

Cheng)*, 308 B.R. 448, 455 (9th Cir. BAP 2004), aff'd, 160 Fed.Appx. 644 (9th Cir.2005). '[A]

debtor in possession holds its powers in trust for the benefit of creditors. The creditors

have the right to require the debtor in possession to exercise those powers for their

benefit.' *Yellowhouse Machinery Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir.1983),

*quoting In re Kovacs*, 16 B.R. 203, 205 (Bankr.D.Conn.1981).").

61.     There is no doubt Seery owed the Original Debtor's Estate, as well as equity

(including HMIT), fiduciary duties, including the duty of loyalty and the duty to avoid

conflicts of interest. *See In re Xtreme Power Inc.*, 563 B.R. 614, 632-33 (Bankr. W.D. Tex. 2016)

(detailing fiduciary duties owed by corporate officers and directors under Delaware law);

*Louisiana World*, 858 F.2d at 245-46 (detailing duties owed by debtors-in-possession).

62.     Likewise, the Claims Purchasers owed a legal duty to not knowingly aid

and abet breaches of these fiduciary duties. [26]

---

[26]  *See RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015) (aider and abetter is liable if its
participation in the breach of fiduciary duty is "knowing").

004703

## V. **Remedies**

63.    Respondents self-servingly argue that no equitable remedy is available to remedy their breaches of fiduciary duty, and thus, they should be able to broker and purchase claims using MNPI without repercussions. That is not the law. The courts can fashion equitable remedies to deter and rectify this type of bad faith, willful misconduct.

64.    The Fifth Circuit's decision in *Mobile Steel* was premised on the notion that disallowance was not necessary because creditors "are fully protected by subordination" and "[i]f the misconduct directed against the bankrupt is so extreme that disallowance might appear to be warranted, then *surely* the claim is either invalid or the bankrupt possesses a clear defense against it." *Mobile Steel*, 563 F.2d at 699 n. 10 (emphasis added). The *Mobile Steel* factors are not present here,[27] which indicates that the Fifth Circuit would allow equitable disgorgement and declaratory judgment relief to assure creditors are "fully protected." *See id*. The Joint Opposition at paragraph 152 states that a declaratory judgment is only appropriate when is supported by an underlying cause of action. The brief cites *Green v. Wells Fargo*, a case which relies on and misinterprets *Collins Cnty. Texas v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 169-71 (5th Cir. 1990) (requiring a party to have a cognizable interest in an actual controversy."

---

[27] Equitable subordination cannot effectively address the current facts where the Original Debtor's CEO and CRO conspired directly with close business allies who acquired the largest unsecured claims to the detriment of other innocent creditors and *former equity*. The reasoning in published cases from other circuits supports this conclusion. *See Adelphia*, 365 B.R. at 71-73; *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 991 n. 7 (3d Cir. 1998).

65.     The Respondents engaged in the alleged conduct which damaged the Reorganized Debtor and the Claimant Trust, including improper agreements to compensate Seery under the terms of the Claimant Trust Agreement. Under these circumstances, disgorgement is an available remedy for breach of fiduciary duty both under Texas Law, *see Kobach Tool Co. v. Corbett-Wallace Corporation*, 160 S.W. 2d 509 (Tex. 1942), and under Delaware law, *see Metro Storage International, LLC v. Herron*, 275 A.3d 810 (Del. Ch. 2022). Disgorgement is also an appropriate remedy for unjust enrichment under Texas law, *Hunter v. Shell Oil Co.*, 198 F.2d 485 (5th Cir. 1952). Disgorgement is also an appropriate remedy for aiding and abetting.[28]

66.     Imposition of a constructive trust also is proper for addressing unjust enrichment under both Delaware and Texas law, *see Teacher's Retirement System of Louisiana v. Aidi off*, 900 A.2d 654 (Del. Ch. 2006) and *Shin-Chi-Su v. Vantage Drilling Company*, 474 S.W. 3d 384 (Tex. App. – 14th Dist. 2015, pet. denied). The elements of unjust enrichment are: (1) the defendant must have gained a benefit (2) at the expense of plaintiff, (3) and retention of that benefit must be shown to be unjust. *See* Restatement (Third) of Restitution and Unjust Enrichment §321, cut. e (2011).

---

[28] Aiding and abetting is a derivative tort that is reliant upon the underlying tort. As a result, the damages for aiding and abetting a breach of fiduciary duty are the same as those available for breach of fiduciary duty. *See US Bank Assoc. v. Verizon Commun., Inc.*, 817 F.Supp. 934, 944 (N.D. Tex. 2011) (applying Delaware law).

## VI.   **Declaratory Relief**

67.     The Joint Opposition devotes only a single conclusory paragraph to HMIT's requested declaratory relief (Joint Opposition ¶ 152). The Claims Purchasers Objection provides none. The singular argument presented by the Joint Opposition – that there is no case or controversy – is also weak. This is particularly so after considering over 85 pages of combined briefing, 44 exhibits, and over 1000 pages of heavily-redacted purported "evidence" dumped into the Court's record.

68.     Declaratory relief is appropriate here to address HMIT's rights and entitlements under the Claimant Trust Agreement. These rights and entitlements include whether (i) HMIT has standing to bring an action against a trustee even if its interest is considered "contingent;" (ii) HMIT's status as a Claimant Trust Beneficiary is fully vested upon disgorgement of the ill-gotten profits of Muck and Jessup, and by extension, Farallon and Stonehill; (iii) HMIT's status as a Claimant Trust Beneficiary is fully vested upon the equitable disallowance of the Claims held by Muck and Jessup over and above their initial investments; (iv) Seery is properly estopped from asserting that HMIT is not an appropriate party to bring this derivative action on behalf of the Reorganized Debtor and/or the Claimant Trust because of fraudulent conduct, bad faith, willful misconduct, and unclean hands; (v) Muck and Jessup are properly estopped from asserting that HMIT is not an appropriate party to bring this derivative action on behalf of the Reorganized Debtor and the Claimant Trust because of their fraudulent conduct, bad faith, willful

misconduct, and unclean hands; and (vi) all of the Respondents are estopped from

asserting that HMIT does not have standing in its individual capacity due to their

fraudulent conduct, bad faith, willful misconduct, and unclean hands.

### VII.  Claims Trading

69.     The Respondents' discussion of claims trading – and the seller's right to

object – avoids HMIT's allegations in the Complaint. The Respondents misapply the

principle that the claims trades are a private transaction outside of the Court's purview

(Claims Purchasers Objection ¶10. Respondents are wrong. The trades at issue were part

of a pact that caused legal injury to the Reorganized Debtor, the Claimant Trust and

HMIT.

70.     Here, the claims trading was highly irregular. HMIT alleges that the

sophisticated Claims Purchasers did none of the typical, expected due diligence when

purchasing multi-million-dollar claims; they purchased claims with low or non-existent

ROI; they purchased the UBS claims when the public information projected a loss; and

their claims trades were substantially different from a private transaction. It involved the

Debtor's CEO and MNPI and promises of enhanced compensation as the *quid pro quo*.

71.     The information regarding the true value of the transferred claims also was

not discovered until long after confirmation of the Plan and the limited opportunity to

object to the trades. Discovery of relevant information has been withheld. The

Respondents should not be allowed to refuse discovery of the Claims purchase

agreements and then rely on them as a basis for opposing the proposed Adversary Complaint. The agreements may very well provide important information as to why the claims sellers did not object to the claims—including potential mutual waivers and "Big Boy" agreements with releases.   But again, these agreements have been withheld.

72.    The Claims Purchasers mistakenly argue that Claims Purchasers were not non-statutory insiders because they did not have a sufficiently close relationship to the debtor. (Claims Purchasers ¶ 36). However, a person can be a non-statutory insider based on his relationship with a statutory insider of the debtor, regardless of his relationship with the debtor itself.[29] The facts as alleged by HMIT are sufficient to establish a "sufficiently close relationship" with a statutory insider of the debtor.[30]

### VIII.    Texas State Securities Board

73.    The Joint Opposition improperly states that the Texas Securities Board ("TSSB") never "opened an investigation" and that the TSSB's determination on regulatory action is somehow indicative of the potential for a civil claim. In support of the contention, the Joint Opposition includes only a select portion of the communication it received from the TSSB instead of the entire communication. The reasons are obvious

---

[29] *In re Acis Capital Mgmt., L.P.,* 604 B.R. 484, 535 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Capital Mgmt., L.P.,* 850 F. App'x 302 (5th Cir. 2021) (applying standard that relationship with statutory insider is sufficient); *In re A. Tarricone, Inc.,* 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002).
[30] *See In re Smith,* 415 B.R. 222, 233 (Bankr. N.D. Tex. 2009).

004708

– the TSSB regards its efforts as an "investigation" under the Texas Securities Act and the TSSB specifically disclaims the relevance of its decision as to civil claims.

74. Further, the closure of the "complaint" is not a determination of the validity of any of the allegations in the proposed Adversary Complaint. The TSSB as a regulatory body is responsible for investigating and enforcing violations of the Texas Securities Act and pursuing regulatory action where it determines it to be appropriate. That determination is distinct from the merits of HMIT's civil claims.

75. To the extent that the Joint Opposition regards a TSSB "investigation" as being more significant than a "review," this Court should not be misled by the Joint Opposition's argument that the TSSB only conducted a "review."

76. The Joint Opposition does not present any support for its claim that the TSSB only conducted a "review." Instead, the Joint Opposition seek to argue that the TSSB's use of the verb "reviewed" somehow morphs the TSSB's investigation into the noun "review." The truth lies in the communications and requests issued by the TSSB, which HMIT believes confirm the fact that the TSSB conducted an "investigation" because there were sufficient indicia of wrongdoing to warrant one.

## Reservation of Rights

77. The Joint Opposition and the Claims Purchaser's Objection (collectively the "Responses") present a scatter-gun, chaotic approach to the law and the issues before the Court. To the extent HMIT has not addressed every matter raised by and each case cited

by the Respondents in their Responses, HMIT specifically reserves all and does not waive any of its rights to present additional arguments and appropriate authorities to further demonstrate the flaws and errors in the Respondents' arguments and Responses.

WHEREFORE PREMISES CONSIDERED, Hunter Mountain Investment Trust respectfully requests this Court grant HMIT leave to file its proposed Adversary Complaint, and also seeks such other and further relief to which HMIT may be justly entitled.

Dated: May 18, 2023.

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By: */s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

[46]

004710

*Attorneys for Hunter Mountain*
*Investment Trust*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 18th day of May 2023, a true and correct copy of the foregoing motion was served on all counsel of record or, as appropriate, on the Respondents directly.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

004711



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 22, 2023**

_____
**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | § |
| | §  Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | §  Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § |
| | § |

### ORDER PERTAINING TO THE HEARING ON HUNTER MOUNTAIN INVESTMENT TRUST'S MOTION FOR LEAVE TO FILE ADVERSARY PROCEEDING

### [DE ## 3699 & 3760]

Based on the court's review of all of the parties' pleadings and briefing relating to the above-referenced motion and supplemental motion ("Motion for Leave"), the court has determined that there may be mixed questions of fact and law implicated by the Motion for Leave—and, in particular, pertaining to the court's required inquiry into whether "colorable" claims may exist, as described in the Motion for Leave. Therefore, the parties will be permitted to present evidence (including witness testimony) at the June 8, 2023 hearing if they so choose. This may include

1

004712

examining any witness for whom a Declaration or Affidavit has already been filed.  The parties

will be allowed no more than three hours of presentation time each (allocated three hours to the

movant and three hours to the aggregate respondents).  This allocated presentation time may be

spent in whatever manner the parties believe will be useful to the court (argument/evidence).

### # # # END OF ORDER # # #

004713

Sawnie A. McEntire

Texas State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

Texas State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S EMERGENCY MOTION
FOR EXPEDITED DISCOVERY OR, ALTERNATIVELY,
<u>FOR CONTINUACE OF JUNE 8, 2023 HEARING</u>**

Hunter Mountain Investment Trust ("<u>HMIT</u>"), as Movant, files this Emergency

Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023

Hearing ("Motion") concerning HMIT's Motion for Leave to File Adversary Complaint

004714

(Doc. 3699) and related Supplement (Doc. 3760) (Docs. 3699 and 3760 collectively "Motion

for Leave"), and would respectfully show:

### A. Summary of Motion

1.      This Motion seeks discovery on an expedited basis to prepare for the

evidentiary hearing on the Motion for Leave currently scheduled for June 8, 2023.

2.      HMIT submits that the colorable nature of the claims asserted in HMIT's

proposed adversary proceeding is evident on the face of HMIT's proposed Complaint.

HMIT previously objected and continues to object that any evidentiary hearing relating

to the Motion for Leave is inappropriate. *See* HMIT'S Reply Brief in Support of its Motion

for Leave (Doc. 3785) at paras. 12-17.

3.      Nevertheless, on May 22, 2023, the Court ruled that it intends to conduct an

evidentiary hearing on the Motion for Leave. As a result, HMIT faces the untenable

prospect of attempting to prepare for this evidentiary hearing, and attempting to respond

to voluminous evidence that one or more of the Respondents intends to offer at the

hearing, without a reasonable opportunity to obtain meaningful and timely discovery.

HMIT therefore files this Motion seeking to protect its due process rights, of which HMIT

004715

will be deprived unless HMIT is granted expedited discovery as requested in this

Motion.[1]

### B. Summary of Procedural Background

4.       On April 24, 2023, this Court conducted a status conference regarding a

briefing and hearing schedule for HMIT's Motion for Leave and whether the hearing on

HMIT's Motion for Leave would be evidentiary.  *See* Order Fixing Briefing Schedule (Doc.

3781).

5.       At the April 24, 2023, status conference, HMIT also objected that an

evidentiary hearing on HMIT's Motion for Leave was improper. HMIT also provided

notice at that time that it intended to withdraw all affidavits and other materials attached

to its Motion for Leave.[2]  However, in the event this Court elected to hold an evidentiary

hearing on its Motion for Leave, HMIT reserved all rights to conduct merits-based

discovery relating to the Motion for Leave before the hearing – without waiving its

substantive or procedural rights, and without conceding the propriety of an evidentiary

hearing (which HMIT continues to deny).

---

[1] This Motion and HMIT's related discovery requests are related to HMIT's Motion for Leave and the
Court's May 22, 2023, order (Doc. 3787) ("Order") ruling that the June 8 hearing on HMIT's Motion for
Leave will be evidentiary. HMIT reserves all and does not waive any of its substantive or procedural rights
and objections in connection with its Motion for Leave, this Motion, and the discovery HMIT seeks to
obtain. Further, and not by way of limitation, HMIT's discovery requests are subject to and without waiver
of HMIT's objections that the hearing on HMIT's Motion is not properly an evidentiary hearing.

[2] This withdrawal was subject to HMIT's reservation of rights that, in the event the Court concludes it will
conduct an evidentiary hearing on the Motion for Leave, HMIT reserved the right to offer the same at any
such hearing.

6.     On May 11, 2023, the Claim Purchasers filed their Objection to HMIT's Motion for Leave; (Doc. 3783) and Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr. filed their Joint Opposition to HMIT's Motion for Leave (Doc. 3780) with the Declaration of John A. Morris and the exhibits thereto (Doc. 3784) ("Morris Declaration") (Objection, Joint Opposition, and Declaration collectively filed by the "Respondents").

7.     On May 22, 2023, the Court entered its Order granting Respondents' request for an evidentiary hearing. Therefore, subject to and without waiving its objections, HMIT requests immediate leave to obtain all of its requested discovery on or before the specific dates identified in each deposition notice (with duces tecum), failing which the hearing on HMIT's Motion for Leave should be continued until HMIT has obtained such discovery. The requested discovery is generally described in this Motion, but is set forth with particularity in the Deposition Notices with Duces Tecum attached as Exhibits A-E.

8.     In summary, HMIT seeks expedited depositions of corporate representatives of Farallon Capital Management, LLC ("Farallon"), Stonehill Capital Management, LLC ("Stonehill"), Muck Holdings, LLC ("Muck"), Jessup Holdings, LLC ("Jessup") and also seeks the deposition of James A. Seery, Jr. ("Seery"). Without limitation, the following topics and documents are generally addressed in the requested discovery:

004717

- The factual background related to the proposed Adversary Complaint, including the facts relevant to the objections to the Motion for Leave filed by the Respondents, including but not limited to HMIT's standing to bring the claims;

- Communications between Respondents related to the claims made the basis of the proposed Adversary Complaint;

- Any due diligence undertaken by the Claims Purchases related to the Claims purchased and the value of the Debtor's Estate;

- Information regarding Seery's compensation and communications with the Oversight Board;

- Communications or information related to the Respondents' knowledge of the MGM sale and related emails and communications with James Dondero ("Dondero");

- Relationship between Seery and Farallon, Stonehill, or any of the Claims Purchasers or Sellers;

- Communications between the Claims Sellers and the Claims Purchasers, including, but not limited to, the Claims purchase agreements;

- Communications with Dondero;

- Litigation hold notices and document retention protocols.

**B.      Argument**

9.      The Respondents should not be allowed to play fast and loose with the rules by using purported evidence as a sword while seeking to shield documents from discovery. Consideration of John Morris' Declaration, which is attached to the Joint

004718

Opposition and the related Exhibits (Nos. 1 – 44) is not only inappropriate, but to do so

without allowing discovery denies HMIT due process.[3]

10.    The Morris Declaration was filed on May 11, 2023, making it impossible for

HMIT to conduct discovery on any basis other than on an expedited basis. Accordingly,

HMIT requests an expedited discovery schedule for all requested depositions and

document productions with a completion date on the deadlines identified in each

discovery device. Alternatively, HMIT requests a continuance of the June 8, 2023, hearing

date so it can timely conduct all of the requested discovery in advance of any hearing.

**Reservation of Rights**

11.    HMIT reserves its substantive and procedural rights and objections

concerning any discovery requests (document requests and interrogatories) propounded

to HMIT as well as to the date, time and scope of any deposition notices relating to HMIT.

HMIT also reserves its right to supplement this Motion or otherwise seek to compel

production of specific documents to which objections have been or may be asserted.

WHEREFORE PREMISES CONSIDERED, Hunter Mountain Investment Trust

respectfully requests this Court grant its Emergency Motion for Expedited Discovery or,

---

[3] HMIT filed objections as part of its Reply Brief in Support of its Motion for Leave (Doc. 3785) at paras.
12-17.

Alternatively, for a Continuance of the June 8, 2023, Hearing on HMIT's Motion for Leave to File Adversary Complaint, and seeks further relief to which HMIT may be justly entitled.

Dated: May 24, 2023.

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  */s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

***Attorneys for Hunter Mountain
Investment Trust***

<u>**CERTIFICATE OF CONFERENCE**</u>

On May 24, 2023, counsel for HMIT and counsel for all Respondents conferred during a conference call regarding the substance of this Motion. Counsel for Farallon Capital Management, L.L.C., Stonehill Capital Management LLC, Jessup Holdings LLC,

004720

and Muck Holdings, LLC, are opposed to any discovery related to their clients. Counsel for James P. Seery, Jr., generally agrees to participate in expedited discovery, however, there may be disagreements concerning specific document production requests. Counsel for Highland Capital Management, L.P. and Highland Claimant Trust is generally not opposed to conducting expedited discovery; however, it is opposed to producing any currently redacted documents except by in-camera tender to the Court. Counsel for all Respondents are opposed to postponing the hearing currently set for June 8, 2023.


 /s/ Sawnie A. McEntire
Sawnie A. McEntire


## CERTIFICATE OF SERVICE

I certify that on the 24th day of May 2023, a true and correct copy of the foregoing Motion was served on all counsel of record or, as appropriate, on the Respondents directly.


 /s/ Sawnie A. McEntire
Sawnie A. McEntire

004721

# Exhibit A

004722

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND
<u>VIDEOTAPED DEPOSITION OF JAMES P. SEERY, JR.</u>**

To:  James P. Seery, Jr., by and through his counsel of record, Mark T. Stancil and Joshua S. Levy, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, D.C. 20006; and Omar J. Alaniz, Reed Smith LLP, 2850 N. Harwood St., Ste. 1500, Dallas, Texas 75201

1

004723

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of   James P. Seery, Jr. ("Seery").   This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **9:00 a.m.** on **Monday, June 5, 2023** and continuing day after day until completed.

Please take further notice that Seery is requested to produce the documents described in Exhibit "A", attached hereto.   The documents to be produced as described in Exhibit "A" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions. The deposition will be videotaped.

Dated:  May 23, 2023                    Respectfully Submitted,

                                             **PARSONS MCENTIRE MCCLEARY PLLC**

                                             By:   /s/*Sawnie A. McEntire*
                                               Sawnie A. McEntire
                                             State Bar No. 13590100

004724

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain
Investment Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Sawnie A. McEntire*

Sawnie A. McEntire

004725

## EXHIBIT "A"

### TO NOTICE OF DEPOSITION OF JAMES P. SEERY, JR.

For purposes of the attached, the following rules and definitions shall apply.

## RULES OF CONSTRUCTION

1.  The terms "all" and "each" shall be construed as all and each.

2.  The terms "all" and "any" shall be construed as all and any.

3.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.  The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

1.  "You," "Your," and/or "Seery" means James P. Seery, Jr. and includes all of his partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of him, including any attorney, financial advisor, or other representative.

2.  "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

3.  "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

4.  "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

5.  "Grosvenor" refers to Grosvenor Capital Management, L.P.

004726

6. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

7. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

8. "Jessup" refers to Jessup Holdings LLC.

9. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

10. "Muck" shall refer to Muck Holdings, LLC.

11. "NAV" means net asset value.

12. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

13. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

14. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

15. "ROI" means return on investment.

16. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

17. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

004727

18.  "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

19.  "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30.  "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.,* Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

004728

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (<mark>Dkt. 3760</mark>).

33.  "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., <mark>Docket No. 2700</mark>, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35.  "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense. It includes reference to both facts and applicable principles. This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents. The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced,

8

004730

including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004731

## DOCUMENT REQUESTS

1.      Any and all documents created by, prepared for, or received by Seery concerning any of the following topics:

   a.  The purchase of the Claims by Muck and/or Farallon or Stonehill and/or Jessup;

   b.  Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

   c.  Negotiations regarding the purchase of the Claims;

   d.  Valuations of the Claims or the assets underlying the Claims;

   e.  Promises and representations made in connection with the purchase of the Claims;

   f.  Any documents, including, but not limited to, any investment memoranda considered or prepared as part of any due diligence undertaken or considered by any of the Claims Purchasers prior to acquiring the Claims;

   g.  Consideration for the transfer of the Claims;

   h.  Value of HCM's Estate;

   i.  Projected future value of HCM's Estate;

   j.  Past distributions and projected distributions from the Highland Claimant Trust;

   k.  Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

   l.  Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

   m. Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

10

004732

2.      Any and all communications between Seery, on the one hand, and any of the following individuals or entities: (i) Muck, (ii) the UCC, (iii) the Settling Parties, (iv) Stonehill, (v) Farallon, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero, (ix) Jessup, (x) any fund affiliated with or managed by Muck, (xi) any fund affiliated with or managed by Jessup, (xii) any fund affiliated with or managed by Farallon, and (xiii) any fund affiliated with or managed by Stonehill, concerning any of the following topics:

    a.   Purchase or sale of the Claims;

    b.   Negotiation of any agreement regarding the purchase or sale of the Claims;

    c.   Valuation of the Claims or the assets underlying the Claims;

    d.   Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

    e.   Any due diligence undertaken by Farallon or Muck prior to acquiring the Claims;

    f.   Any due diligence undertaken by Stonehill or Jessup prior to acquiring the Claims;

    g.   Consideration for the purchase of the Claims;

    h.   Value of HCM's Estate;

    i.   Projected future value of HCM's Estate;

    j.   Past distributions and projected distributions from HCM's Estate;

    k.   Compensation earned by or paid to Seery in connection with or relating to the Claims;

    l.   Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    m.  Future compensation to be paid to Seery as Trustee of the Highland

11

004733

Claimant Trust.

    n.  Decisions made by the Oversight Board.

3.    All correspondence and/or other documents by or between Seery and any investors in any fund regarding the Claims and/or the acquisition or transfer of the Claims.

4.    Any and all documents reflecting the sources of funding used to acquire any of the Claims.

5.    Organizational and formation documents relating to Muck and/or Jessup including, but not limited to, their certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.    Company resolutions prepared by or on behalf of Muck or Jessup approving the acquisition of any of the Claims.

7.    Any and all documents reflecting any internal or external audits regarding Muck's or Jessup's NAV.

8.    Agreements between Farallon and Muck or Stonehill and Jessup regarding management, advisory, or other services provided to Muck by Farallon or Stonehill or Jessup.

9.    Any documents reflecting any communications with James Dondero.

10.    Annual fund audits relating to Muck or Jessup.

11.    Muck's or Jessup's NAV Statements.

12.    Documents reflecting the fees or other compensation earned by Muck or Jessup in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.    12/6/21 Memorandum Agreement.

14.    5/9/23 Letter from the Texas State Securities Board to Highland.

004734

15.    Minutes of Meetings of the Claimant Trust Oversight Board.

16.    All texts/communications with any member of the Oversight Board regarding your compensation and distributions.

17.    All text messages or other communications with any of the Claims Purchasers.

18.    Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Muck and/or Jessup and/or efforts to market any interests held by either Muck and/or Jessup.

19.    Any document retention policy or protocol or Litigation Hold Requests.

20.    Unredacted copies of all exhibits to the Declaration of John A. Morris in Support of Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr.'s Joint Opposition to HMIT's Motion for leave to File Verified Adversary Proceeding (Dkt. 3784).

004735

# Exhibit B

004736

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND VIDEOTAPED RULE 30(b)(6) DEPOSITION OF FARALLON CAPITAL MANAGEMENT, L.L.C.'S CORPORATE REPRESENTATIVE**

To:   Farallon Capital Management, L.L.C., by and through its counsel of record, Brent R. McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND & KNIGHT LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

004737

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal

Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take

the oral and videotaped deposition of a corporate representative or representatives of

Farallon Capital Management, L.L.C. ("Farallon") or other consenting person designated

by Farallon, to testify concerning the matters specified in Exhibit "A".  This deposition

and document request relates to HMIT's Motion for Leave to File Adversary Complaint

(Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC,

1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location)

beginning at **9:00 a.m.** on **Thursday, June 1, 2023** and continuing day after day until

completed.  Farallon is instructed to designate a person or persons authorized to testify

on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule

of Civil Procedure 30(b)(6).

Please take further notice that Farallon is requested to designate one or more

person(s) most knowledgeable and prepared to testify on behalf of Farallon concerning

the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit

"A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall

be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the

deposition.

004738

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions. The deposition will be videotaped.

Dated: May 23, 2023        Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:   /s/ *Sawnie A. McEntire*
       Sawnie A. McEntire
       State Bar No. 13590100
       smcentire@pmmlaw.com
       1700 Pacific Avenue, Suite 4400
       Dallas, Texas 75201
       Telephone: (214) 237-4300
       Facsimile: (214) 237-4340

       Roger L. McCleary
       State Bar No. 13393700
       rmccleary@pmmlaw.com
       One Riverway, Suite 1800
       Houston, Texas 77056
       Telephone: (713) 960-7315
       Facsimile: (713) 960-7347

       ***Attorneys for Hunter Mountain Investment Trust***

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

       /s/ *Sawnie A. McEntire*
       Sawnie A. McEntire

3

004739

## EXHIBIT "A"

## TO NOTICE OF DEPOSITION OF FARALLON CAPITAL MANAGEMENT, LLC

For purposes of the attached, the following rules and definitions shall apply.

## RULES OF CONSTRUCTION

1.     The terms "all" and "each" shall be construed as all and each.

2.     The terms "all" and "any" shall be construed as all and any.

3.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.     The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

1.     "You," "Your," and/or "Farallon" refer to Farallon Capital Management, L.L.C., and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Muck Holdings, LLC. These terms also include Michael Lin and any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Farallon is a general partner or owns an entities' general partner, or anyone else acting on Farallon's behalf, now or at any time relevant to the response.

2.     "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

3.     "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

4.     "Grosvenor" refers to Grosvenor Capital Management, L.P.

4

004740

5.  "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

6.  "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

7.  "Jessup" refers to Jessup Holdings LLC.

8.  "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

9.  "Muck" shall refer to Muck Holdings, LLC.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

17. "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18. "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19. "Seery" refers to James P. ("Jim") Seery.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30. "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

004742

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt. 3760).

33. "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35. "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

004743

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense. It includes reference to both facts and applicable principles. This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents. The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004745

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Farallon to testify on its behalf is (are) requested to

testify concerning the following Topic Categories:

1.     The factual background and circumstances relating to the subject matter of the
Proposed Adversary Complaint;

2.     The alleged factual background and circumstances regarding the evidence and
allegations supporting Highland Capital Management, L.P., Highland Claimant Trust,
and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified
Adversary Proceeding (Dkt. 3783);

3.     The alleged factual background and circumstances regarding evidence and
allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for
Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.     Communications between Farallon and any of the following entities or persons
relating to any of the Claims:

      a.   Any member of the UCC;

      b.   HCM;

      c.   Grosvenor;

      d.   Muck;

      e.   Any member of the Oversight Board;

      f.   Seery;

      g.   Stonehill or Jessup;

      h.   Any of the Settling Parties;

      i.   Dondero; and

      j.   Any fund managed by and/or affiliated with Farallon that invested any
         funds in connection with the purchase of any of the Claims.

5.     The sources of funds used by Muck and/or Farallon to acquire any of the Claims;

6.     The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Muck and/or Farallon and the subsequent assignment of such Claims to Muck;

7.     All communications between Farallon and Seery related to the Proposed Adversary Complaint;

8.     Representations and/or warranties made by either Farallon, Muck, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims;

9.     Information known to Farallon regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Farallon and Seery relating to MGM;

10.     Appointment of Muck to the Oversight Board;

11.     Farallon's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Farallon or Grovesner;

12.     Communications between Farallon and/or Muck, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.     Actual compensation paid to Seery since the Effective Date of the Plan.

14.     All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.     All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

004747

16.     Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Muck and/or Farallon and all communications regarding any such offer(s).

17.     Any offer by Muck and/or Farallon to sell any of the Claims or any part thereof.

18.     Any effort by either Muck and/or Farallon to sell or market any of the Claims or any portion thereof.

19.     Any due diligence conducted by either Muck or Farallon related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.     Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.     The substance, types, and sources of information Farallon considered in making any decision to invest in any of the Claims on behalf of itself, Muck, and/or any fund with which Farallon is affiliated or which Farallon manages.

22.     All communications reflecting due diligence information provided by any HCM Party to Farallon regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.     The extent to which Farallon was involved in creating and organizing Muck in connection with the acquisition of any of the Claims.

24.     The organizational structure of Muck (including identification of all members, managing members), as well as the purpose for creating Muck, including, but not limited to, regarding holding title to any of the Claims.

25.     All base fees and performance fees which Farallon has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same.

004748

26.     All monies and/or distributions received by Muck and/or Farallon in connection with any of the Claims and any distributions made by Muck to any members of Muck relating to such Claims.

27.     Whether Farallon is a co-investor in any fund which holds an interest in Muck or otherwise holds a direct interest in Muck and all documents reflecting the same.

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004749

## EXHIBIT "A-2"
## DOCUMENT REQUESTS

1.  Any and all documents created by, prepared for, or received by Farallon concerning any of the following topics:

    a.  The purchase of the Claims by Muck and/or Farallon;

    b.  Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

    c.  Negotiations regarding the purchase of the Claims;

    d.  Valuations of the Claims or the assets underlying the Claims;

    e.  Promises and representations made in connection with the purchase of the Claims;

    f.  Any documents, including, but not limited to, any investment memoranda, considered or prepared as part of any due diligence undertaken or considered by Farallon or Muck prior to acquiring the Claims;

    g.  Consideration for the transfer of the Claims;

    h.  Value of HCM's Estate;

    i.  Projected future value of HCM's Estate;

    j.  Past distributions and projected distributions from the Highland Claimant Trust;

    k.  Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

    l.  Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    m.  Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

14

004750

2.      Any and all communications between Farallon, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Stonehill, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund affiliated with or managed by Farallon concerning any of the following topics:

    a.   Purchase or sale of the Claims;

    b.   Negotiation of any agreement regarding the purchase or sale of the Claims;

    c.   Valuation of the Claims or the assets underlying the Claims;

    d.   Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

    e.   Any due diligence undertaken by Farallon or Muck prior to acquiring the Claims;

    f.   Consideration for the purchase of the Claims;

    g.   Value of HCM's Estate;

    h.   Projected future value of HCM's Estate;

    i.   Past distributions and projected distributions from HCM's Estate;

    j.   Compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.   Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.   Future compensation to be paid to Seery as Trustee of the Highland Claimant Trust;

    m. Decisions made by the Oversight Board.

3.      All correspondence and/or other documents by or between Farallon and/or Muck and any investors in any fund regarding the Claims and/or the acquisition or

15

004751

transfer of the Claims.

4.      Any and all documents reflecting the sources of funding used by Muck to acquire any of the Claims.

5.      Organizational and formation documents relating to Muck including, but not limited to, Muck's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.      Company resolutions prepared by or on behalf of Muck approving the acquisition of any of the Claims.

7.      Any and all documents reflecting any internal or external audits regarding Muck's NAV.

8.      Agreements between Farallon and Muck regarding management, advisory, or other services provided to Muck by Farallon.

9.       Any documents reflecting any communications with James Dondero.

10.      Annual fund audits relating to Muck.

11.       Muck's NAV Statements.

12.      Documents reflecting the fees or other compensation earned by Farallon in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.      12/6/21 Memorandum Agreement.

14.      5/9/23 Letter from the Texas State Securities Board to Highland.

15.      Minutes of Meetings of the Claimant Trust Oversight Board.

16.      All texts/communications with any member of the Oversight Board regarding

Seery's compensation and distributions.

004752

17.     All text messages or other communications with any of the other Claims Purchasers.

18.     Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Muck and/or Farallon and/or efforts to market any interests held by either Muck and/or Farallon.

19.     Any document retention policy or protocol or Litigation Hold Requests.

004753

# Exhibit C

004754

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND
VIDEOTAPED RULE 30(b)(6) DEPOSITION OF STONEHILL CAPITAL
MANAGEMENT LLC'S CORPORATE REPRESENTATIVE**

To:   Stonewill Capital Management LLC, by and through its counsel of record, Brent R. McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND & KNIGHT LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

1

004755

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative or representatives of Stonehill Capital Management LLC ("Stonehill") or other consenting person designated by Stonehill, to testify concerning the matters specified in Exhibit "A". This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **9:00 a.m.** on **Friday, June 2, 2023** and continuing day after day until completed. Stonehill is instructed to designate a person or persons authorized to testify on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule of Civil Procedure 30(b)(6).

Please take further notice that Stonehill is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Stonehill concerning the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit "A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

004756

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions.  The deposition will be videotaped.

Dated:  May 23, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:   /s/*Sawnie A. McEntire*
　　　Sawnie A. McEntire
　　　State Bar No. 13590100
　　　smcentire@pmmlaw.com
　　　1700 Pacific Avenue, Suite 4400
　　　Dallas, Texas 75201
　　　Telephone: (214) 237-4300
　　　Facsimile: (214) 237-4340

　　　Roger L. McCleary
　　　State Bar No. 13393700
　　　rmccleary@pmmlaw.com
　　　One Riverway, Suite 1800
　　　Houston, Texas 77056
　　　Telephone: (713) 960-7315
　　　Facsimile: (713) 960-7347

　　　*Attorneys for Hunter Mountain*
　　　*Investment Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

　　　/s/ *Sawnie A. McEntire*
　　　Sawnie A. McEntire

3

004757

EXHIBIT "A"

## TO NOTICE OF DEPOSITION OF STONEHILL CAPITAL MANAGEMENT, LLC

For purposes of the attached, the following rules and definitions shall apply.

## RULES OF CONSTRUCTION

1.      The terms "all" and "each" shall be construed as all and each.

2.      The terms "all" and "any" shall be construed as all and any.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

1.      "You," "Your," and/or "Stonehill" refer to Stonehill Capital Management LLC, and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Jessup Holdings LLC. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Stonehill is a general partner or owns an entities' general partner, or anyone else acting on Stonehill's behalf, now or at any time relevant to the response.

2.      "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

3.      "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

4.      "Grosvenor" refers to Grosvenor Capital Management, L.P.

4

004758

5. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

6. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

7. "Jessup" refers to Jessup Holdings LLC.

8. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

9. "Muck" shall refer to Muck Holdings, LLC.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

5

004759

17. "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18. "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19. "Seery" refers to James P. Seery, Jr.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30. "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

004760

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt. 3760).

33. "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35. "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

004761

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense. It includes reference to both facts and applicable principles. This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

004762

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents. The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004763

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Stonehill to testify on its behalf is (are) requested

to testify concerning the following Topic Categories:

1.      The factual background and circumstances relating to the subject matter of the Proposed Adversary Complaint.

2.      The alleged factual background and circumstances regarding the evidence and allegations supporting Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified Adversary Proceeding (Dkt. 3783).

3.      The alleged factual background and circumstances regarding evidence and allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.      Communications between Stonehill and any of the following entities or persons relating to any of the Claims:

>       a.   Any member of the UCC;
>
>       b.   HCM;
>
>       c.   Grosvenor;
>
>       d.   Jessup;
>
>       e.   Any member of the Oversight Board;
>
>       f.   Seery;
>
>       g.   Farallon or Muck;
>
>       h.   Any of the Settling Parties;
>
>       i.   Dondero; and
>
>       j.   Any fund managed by and/or affiliated with Stonehill that invested any funds in connection with the purchase of any of the Claims.

004764

5.      The sources of funds used by Jessup and/or Stonehill to acquire any of the Claims.

6.      The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Jessup and/or Stonehill and the subsequent assignment of such Claims to Jessup.

7.      All communications between Stonehill and Seery related to the Proposed Adversary Complaint.

8.      Representations and/or warranties made by either Stonehill, Jessup, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims.

9.      Information known to Stonehill regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Stonehill and Seery relating to MGM.

10.     Appointment of Jessup to the Oversight Board.

11.     Stonehill's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Stonehill or Grovesner.

12.     Communications between Stonehill and/or Jessup, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.     Actual compensation paid to Seery since the Effective Date of the Plan.

14.     All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.     All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

11

004765

16.     Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Jessup and/or Stonehill and all communications regarding any such offer(s).

17.     Any offer by Jessup and/or Stonehill to sell any of the Claims or any part thereof.

18.     Any effort by either Jessup and/or Stonehill to sell or market any of the Claims or any portion thereof.

19.     Any due diligence conducted by either Jessup or Stonehill related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.     Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.     The substance, types, and sources of information Stonehill considered in making any decision to invest in any of the Claims on behalf of itself, Jessup, and/or any fund with which Stonehill is affiliated or which Stonehill manages.

22.     All communications reflecting due diligence information provided by any HCM Party to Stonehill regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.     The extent to which Stonehill was involved in creating and organizing Jessup in connection with the acquisition of any of the Claims.

24.     The organizational structure of Jessup (including identification of all members, managing members), as well as the purpose for creating Jessup, including, but not limited to, regarding holding title to any of the Claims.

25.     All base fees and performance fees which Stonehill has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same.

12

004766

26.     All monies and/or distributions received by Jessup and/or Stonehill in connection with any of the Claims and any distributions made by Jessup to any members of Jessup relating to such Claims.

27.     Whether Stonehill is a co-investor in any fund which holds an interest in Jessup or otherwise holds a direct interest in Jessup and all documents reflecting the same.

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004767

## EXHIBIT "A-2"
## <u>DOCUMENT REQUESTS</u>

1.      Any and all documents created by, prepared for, or received by Stonehill concerning any of the following topics:

    a.   The purchase of the Claims by Jessup and/or Stonehill;

    b.   Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

    c.   Negotiations regarding the purchase of the Claims;

    d.   Valuations of the Claims or the assets underlying the Claims;

    e.   Promises and representations made in connection with the purchase of the Claims;

    f.   Any documents, including but not limited to investment memoranda, considered or prepared as part of any due diligence undertaken or considered by Stonehill or Jessup prior to acquiring the Claims;

    g.   Consideration for the transfer of the Claims;

    h.   Value of HCM's Estate;

    i.   Projected future value of HCM's Estate;

    j.   Past distributions and projected distributions from the Highland Claimant Trust;

    k.   Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

    l.   Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    m. Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

004768

2.      Any and all communications between Stonehill, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Farallon, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund affiliated with or managed by Stonehill concerning any of the following topics:

    a.  Purchase or sale of the Claims;

    b.  Negotiation of any agreement regarding the purchase or sale of the Claims;

    c.  Valuation of the Claims or the assets underlying the Claims;

    d.  Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

    e.  Any due diligence undertaken by Stonehill or Jessup prior to acquiring the Claims;

    f.  Consideration for the purchase of the Claims;

    g.  Value of HCM's Estate;

    h.  Projected future value of HCM's Estate;

    i.  Past distributions and projected distributions from HCM's Estate;

    j.  Compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.  Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.  Future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

    m. Decisions made by the Oversight Board.

004769

3.      All correspondence and/or other documents by or between Stonehill and/or Jessup and any investors in any fund regarding the Claims and/or the acquisition or transfer of the Claims.

4.      Any and all documents reflecting the sources of funding used by Jessup to acquire any of the Claims.

5.      Organizational and formation documents relating to Jessup including, but not limited to, Jessup's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.      Company resolutions prepared by or on behalf of Jessup approving the acquisition of any of the Claims.

7.      Any and all documents reflecting any internal or external audits regarding Jessup's NAV.

8.      Agreements between Stonehill and Jessup regarding management, advisory, or other services provided to Jessup by Stonehill.

10.      Any documents reflecting any communications with James Dondero.

11.      Annual fund audits relating to Jessup.

12.      Jessup's NAV Statements.

13.      Documents reflecting the fees or other compensation earned by Stonehill in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

14.      12/6/21 Memorandum Agreement.

15.      5/9/23 Letter from the Texas State Securities Board to Highland.

16.      Minutes of Meetings of the Claimant Trust Oversight Board.

17.      All texts/communications with any member of the Oversight Board regarding Seery's compensation and distributions.

004770

18.    All text messages or other communications with any of the other Claims Purchasers.

19.    Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Jessup and/or Stonehill and/or efforts to market any interests held by either Jessup and/or Stonehill.

20.    Any document retention policy or protocol or Litigation hold Request.

004771

# Exhibit D

Sawnie A. McEntire
State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347
*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND VIDEOTAPED RULE 30(b)(6) DEPOSITION OF MUCK HOLDINGS, LLC'S <u>CORPORATE REPRESENTATIVE</u>**

To:     Muck Holdings, LLC, by and through its counsel of record, Brent R. McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND & KNIGHT LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

004773

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative or representatives Of Muck Holdings, LLC ("Muck") or other consenting person designated by Muck, to testify concerning the matters specified in Exhibit "A". This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **3:00 p.m.** on **Thursday, June 1, 2023** and continuing day after day until completed. Muck is instructed to designate a person or persons authorized to testify on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule of Civil Procedure 30(b)(6).

Please take further notice that Muck is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Muck concerning the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit "A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

004774

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions.  The deposition will be videotaped.

Dated:  May 23, 2023                    Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:   /s/*Sawnie A. McEntire*
   Sawnie A. McEntire
   State Bar No. 13590100
   smcentire@pmmlaw.com
   1700 Pacific Avenue, Suite 4400
   Dallas, Texas 75201
   Telephone: (214) 237-4300
   Facsimile: (214) 237-4340

   Roger L. McCleary
   State Bar No. 13393700
   rmccleary@pmmlaw.com
   One Riverway, Suite 1800
   Houston, Texas 77056
   Telephone: (713) 960-7315
   Facsimile: (713) 960-7347

   *Attorneys for Hunter Mountain*
   *Investment Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

   /s/ *Sawnie A. McEntire*
   Sawnie A. McEntire

3

004775

## EXHIBIT "A"

## TO NOTICE OF DEPOSITION OF MUCK HOLDINGS, LLC

For purposes of the attached, the following rules and definitions shall apply.

## RULES OF CONSTRUCTION

1.      The terms "all" and "each" shall be construed as all and each.

2.      The terms "all" and "any" shall be construed as all and any.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

1.  "You," "Your," and/or "Muck" refer to Muck Holdings, LLC, and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Farallon Capital Management, L.L.C. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Muck is a general partner or owns an entities' general partner, or anyone else acting on Muck's behalf, now or at any time relevant to the response.

2.  "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

3.  "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

4

4. "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

5. "Grosvenor" refers to Grosvenor Capital Management, L.P.

6. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

7. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

8. "Jessup" refers to Jessup Holdings LLC.

9. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

004777

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

17. "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18. "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19. "Seery" refers to James P. Seery, Jr.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30. "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with,

004778

advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt.. 3760).

33. "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35. "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the

style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense.  It includes reference to both facts and applicable principles.  This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium.*

8

*Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents.  The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

9

004781

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Muck to testify on its behalf is (are) requested to

testify concerning the following Topic Categories:

1.      The factual background and circumstances relating to the subject matter of the Proposed Adversary Complaint.

2.      The alleged factual background and circumstances regarding the evidence and allegations supporting Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified Adversary Proceeding (Dkt. 3783).

3.      The alleged factual background and circumstances regarding evidence and allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.      Communications between Muck and any of the following entities or persons relating to any of the Claims:

      a.   Any member of the UCC;

      b.   HCM;

      c.   Grosvenor;

      d.   Muck;

      e.   Any member of the Oversight Board;

      f.   Seery;

      g.   Stonehill or Jessup;

      h.   Any of the Settling Parties;

      i.   Dondero; and

      j.   Any fund managed by and/or affiliated with Muck that invested any funds in connection with the purchase of any of the Claims.

004782

5.      The sources of funds used by Muck and/or Farallon to acquire any of the Claims.

6.      The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Muck and/or Farallon and the subsequent assignment of such Claims to Muck.

7.      All communications between Muck and Seery related to the Proposed Adversary Complaint.

8.      Representations and/or warranties made by either Farallon, Muck, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims.

9.      Information known to Muck regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Muck and Seery relating to MGM.

10.      Appointment of Muck to the Oversight Board.

11.      Farallon's or Muck's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Farallon or Muck or Grovesner.

12.      Communications between Farallon and/or Muck, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.      Actual compensation paid to Seery since the Effective Date of the Plan.

14.      All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.      All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

004783

16.     Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Muck and/or Farallon and all communications regarding any such offer(s).

17.     Any offer by Muck and/or Farallon to sell any of the Claims or any part thereof.

18.     Any effort by either Muck and/or Farallon to sell or market any of the Claims or any portion thereof.

19.     Any due diligence conducted by either Muck or Farallon related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.     Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.     The substance, types, and sources of information Muck considered in making any decision to invest in any of the Claims on behalf of itself, Farallon, and/or any fund with which Farallon is affiliated or which Farallon manages.

22.     All communications reflecting due diligence information provided by any HCM Party to Muck regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.     The extent to which Farallon was involved in creating and organizing Muck in connection with the acquisition of any of the Claims.

24.     The organizational structure of Muck (including identification of all members, managing members), as well as the purpose for creating Muck, including, but not limited to, regarding holding title to any of the Claims.

25.      All base fees and performance fees which Muck has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same.

004784

26.     All monies and/or distributions received by Muck and/or Farallon in connection with any of the Claims and any distributions made by Muck to any members of Muck relating to such Claims.

27.     Whether Farallon is a co-investor in any fund which holds an interest in Muck or otherwise holds a direct interest in Muck and all documents reflecting the same.

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004785

## EXHIBIT "A-2"
## DOCUMENT REQUESTS

1.     Any and all documents created by, prepared for, or received by Muck concerning any of the following topics:

   a.   The purchase of the Claims by Muck and/or Farallon;

   b.   Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

   c.   Negotiations regarding the purchase of the Claims;

   d.   Valuations of the Claims or the assets underlying the Claims;

   e.   Promises and representations made in connection with the purchase of the Claims;

   f.   Any documents considered or prepared as part of any due diligence, including, but not limited to, any investment memoranda undertaken or considered by Farallon or Muck prior to acquiring the Claims;

   g.   Consideration for the transfer of the Claims;

   h.   Value of HCM's Estate;

   i.   Projected future value of HCM's Estate;

   j.   Past distributions and projected distributions from the Highland Claimant Trust;

   k.   Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

   l.   Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

   m.   Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

004786

2.      Any and all communications between Muck, on the one hand, and any of the
following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv)
Stonehill, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund
affiliated with or managed by Muck concerning any of the following topics:

a.   Purchase or sale of the Claims;

b.   Negotiation of any agreement regarding the purchase or sale of the Claims;

c.   Valuation of the Claims or the assets underlying the Claims;

d.   Promises and representations made in connection with the purchase, sale
and/or transfer of the Claims;

e.   Any due diligence undertaken by Farallon or Muck prior to acquiring the
Claims;

f.   Consideration for the purchase of the Claims;

g.   Value of HCM's Estate;

h.   Projected future value of HCM's Estate;

i.   Past distributions and projected distributions from HCM's Estate;

j.   Compensation earned by or paid to Seery in connection with or relating to
the Claims;

k.   Compensation earned by or paid to Seery for his roles as CEO and
Foreign Representative of HCM, Trustee of the Highland Claimant Trust,
and/or Independent Director of Strand; and

l.   Future compensation to be paid to Seery as Trustee of the Highland
Claimant Trust.

m.   Decisions made by the Oversight Board.

3.      All correspondence and/or other documents by or between Farallon and/or Muck
and any investors in any fund regarding the Claims and/or the acquisition or

15

transfer of the Claims.

4.      Any and all documents reflecting the sources of funding used by Muck to acquire any of the Claims.

5.      Organizational and formation documents relating to Muck including, but not limited to, Muck's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.      Company resolutions prepared by or on behalf of Muck approving the acquisition of any of the Claims.

7.      Any and all documents reflecting any internal or external audits regarding Muck's NAV.

8.      Agreements between Farallon and Muck regarding management, advisory, or other services provided to Muck by Farallon.

9.       Any documents reflecting any communications with James Dondero.

10.     Annual fund audits relating to Muck.

11.      Muck's NAV Statements.

12.     Documents reflecting the fees or other compensation earned by Muck in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.     12/6/21 Memorandum Agreement.

14.     5/9/23 Letter from the Texas State Securities Board to Highland.

15.     Minutes of Meetings of the Claimant Trust Oversight Board.

16.     All texts/communications with any member of the Oversight Board regarding Seery's compensation and distributions.

17.     All text messages or other communications with any of the other Claims Purchasers.

004788

18.    Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Muck and/or Farallon and/or efforts to market any interests held by either Muck and/or Farallon.

19.    Any document retention policy or protocol or Litigation Hold Requests.

004789

# Exhibit E

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340


Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND VIDEOTAPED RULE 30(b)(6) DEPOSITION OF JESSUP HOLDINGS LLC'S <u>CORPORATE REPRESENTATIVE</u>**

To:     Jessup Holdings LLC, by and through its counsel of record, Brent R. McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND & KNIGHT LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

1

004791

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative or representatives of Jessup Holdings LLC ("Jessup") or other consenting person designated by Jessup, to testify concerning the matters specified in Exhibit "A".  This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **3:00 p.m.** on **Friday, June 2, 2023** and continuing day after day until completed.  Jessup is instructed to designate a person or persons authorized to testify on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule of Civil Procedure 30(b)(6).

Please take further notice that Jessup is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Jessup concerning the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit "A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

004792

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions.  The deposition will be videotaped.

Dated:  May 23, 2023                    Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  /s/Sawnie A. McEntire
       Sawnie A. McEntire
       State Bar No. 13590100
       smcentire@pmmlaw.com
       1700 Pacific Avenue, Suite 4400
       Dallas, Texas 75201
       Telephone: (214) 237-4300
       Facsimile: (214) 237-4340

       Roger L. McCleary
       State Bar No. 13393700
       rmccleary@pmmlaw.com
       One Riverway, Suite 1800
       Houston, Texas 77056
       Telephone: (713) 960-7315
       Facsimile: (713) 960-7347

       *Attorneys for Hunter Mountain*
       *Investment Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

       /s/ Sawnie A. McEntire
       Sawnie A. McEntire

3

004793

## EXHIBIT "A"

## TO NOTICE OF DEPOSITION OF JESSUP HOLDINGS, LLC

For purposes of the attached, the following rules and definitions shall apply.

## RULES OF CONSTRUCTION

1.      The terms "all" and "each" shall be construed as all and each.

2.      The terms "all" and "any" shall be construed as all and any.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

1.  "You," "Your," and/or "Jessup" refer to Jessup Holdings LLC, and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Stonehill Capital Management LLC. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Jessup is a general partner or owns an entities' general partner, or anyone else acting on Stonehill's behalf, now or at any time relevant to the response.

2.  "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

3.  "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

4

4. "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

5. "Grosvenor" refers to Grosvenor Capital Management, L.P.

6. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

7. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates or entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

8. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

9. "Muck" shall refer to Muck Holdings, LLC.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

17. "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18. "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19. "Seery" refers to James P. Seery, Jr.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30. "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with,

004796

advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt. 3760).

33. "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35. "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position. When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business. When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it. When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication. When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the

004797

style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense.  It includes reference to both facts and applicable principles.  This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium.*

8

*Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents.  The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004799

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Jessup to testify on its behalf is (are) requested to

testify concerning the following Topic Categories:

1.      The factual background and circumstances relating to the subject matter of the
Proposed Adversary Complaint;

2.      The alleged factual background and circumstances regarding the evidence and
allegations supporting Highland Capital Management, L.P., Highland Claimant Trust,
and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified
Adversary Proceeding (Dkt. 3783);

3.      The alleged factual background and circumstances regarding evidence and
allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for
Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.      Communications between Jessup and any of the following entities or persons
relating to any of the Claims:

> a.   Any member of the UCC;
>
> b.   HCM;
>
> c.   Grosvenor;
>
> d.   Stonehill;
>
> e.   Any member of the Oversight Board;
>
> f.   Seery;
>
> g.   Farallon or Muck;
>
> h.   Any of the Settling Parties;
>
> i.   Dondero; and
>
> j.   Any fund managed by and/or affiliated with Jessup that invested any funds
> in connection with the purchase of any of the Claims.

004800

5.      The sources of funds used by Jessup and/or Stonehill to acquire any of the Claims;

6.      The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Jessup and/or Stonehill and the subsequent assignment of such Claims to Jessup;

7.      All communications between Jessup and Seery related to the Proposed Adversary Complaint;

8.      Representations and/or warranties made by either Stonehill, Jessup, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims;

9.      Information known to Jessup regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Jessup and Seery relating to MGM;

10.     Appointment of Jessup to the Oversight Board;

11.     Stonehill's or Jessup's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Stonehill or Grovesner;

12.     Communications between Stonehill and/or Jessup, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.     Actual compensation paid to Seery since the Effective Date of the Plan.

14.     All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.     All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

004801

16.     Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Jessup and/or Stonehill and all communications regarding any such offer(s).

17.     Any offer by Jessup and/or Stonehill to sell any of the Claims or any part thereof.

18.     Any effort by either Jessup and/or Stonehill to sell or market any of the Claims or any portion thereof.

19.     Any due diligence conducted by either Jessup or Stonehill related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.     Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.     The substance, types, and sources of information Jessup considered in making any decision to invest in any of the Claims on behalf of itself, Jessup, and/or any fund with which Jessup is affiliated or which Jessup manages;

22.     All communications reflecting due diligence information provided by any HCM Party to Jessup regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.     The extent to which Stonehill was involved in creating and organizing Jessup in connection with the acquisition of any of the Claims;

24.     The organizational structure of Jessup (including identification of all members, managing members), as well as the purpose for creating Jessup, including, but not limited to, regarding holding title to any of the Claims;

25.     All base fees and performance fees which Jessup has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same;

004802

26.     All monies and/or distributions received by Jessup and/or Stonehill in connection with any of the Claims and any distributions made by Jessup to any members of Jessup relating to such Claims;

27.     Whether Stonehill is a co-investor in any fund which holds an interest in Jessup or otherwise holds a direct interest in Jessup and all documents reflecting the same;

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004803

## EXHIBIT "A-2"
## <u>DOCUMENT REQUESTS</u>

1.     Any and all documents created by, prepared for, or received by Jessup concerning any of the following topics:

    a.   The purchase of the Claims by Jessup and/or Stonehill;

    b.   Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

    c.   Negotiations regarding the purchase of the Claims;

    d.   Valuations of the Claims or the assets underlying the Claims;

    e.   Promises and representations made in connection with the purchase of the Claims;

    f.   Any documents, including, but not limited to, any investment memoranda considered or prepared as part of any due diligence undertaken or considered by Stonehill or Jessup prior to acquiring the Claims;

    g.   Consideration for the transfer of the Claims;

    h.   Value of HCM's Estate;

    i.   Projected future value of HCM's Estate;

    j.   Past distributions and projected distributions from the Highland Claimant Trust;

    k.   Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

    l.   Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    m.   Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

004804

2.      Any and all communications between Jessup, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Farallon, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund affiliated with or managed by Jessup concerning any of the following topics:

   a.   Purchase or sale of the Claims;

   b.   Negotiation of any agreement regarding the purchase or sale of the Claims;

   c.   Valuation of the Claims or the assets underlying the Claims;

   d.   Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

   e.   Any due diligence undertaken by Stonehill or Jessup prior to acquiring the Claims;

   f.   Consideration for the purchase of the Claims;

   g.   Value of HCM's Estate;

   h.   Projected future value of HCM's Estate;

   i.   Past distributions and projected distributions from HCM's Estate;

   j.   Compensation earned by or paid to Seery in connection with or relating to the Claims;

   k.   Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

   l.   Future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

   m.  Decisions by the Oversight Board.

3.      All correspondence and/or other documents by or between Stonehill and/or Jessup and any investors in any fund regarding the Claims and/or the acquisition or

004805

transfer of the Claims.

4.      Any and all documents reflecting the sources of funding used by Jessup to acquire any of the Claims.

5.      Organizational and formation documents relating to Jessup including, but not limited to, Jessup's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.      Company resolutions prepared by or on behalf of Jessup approving the acquisition of any of the Claims.

7.      Any and all documents reflecting any internal or external audits regarding Jessup's NAV.

8.      Agreements between Stonehill and Jessup regarding management, advisory, or other services provided to Jessup by Stonehill.

9.      Any documents reflecting any communications with James Dondero.

10.     Annual fund audits relating to Jessup.

11.      Jessup's NAV Statements.

12.     Documents reflecting the fees or other compensation earned by Stonehill in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.     12/6/21 Memorandum Agreement.

14.     5/9/23 Letter from the Texas State Securities Board to Highland.

15.     Minutes of Meetings of the Claimant Trust Oversight Board.

16.      All texts/communications with any member of the Oversight Board regarding Seery's compensation and distributions.

17.     All text messages or other communications with any of the other Claims Purchasers.

004806

18.     Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Jessup and/or Stonehill and/or efforts to market any interests held by either Jessup and/or Stonehill.

19.     Any document retention policy or protocol or Litigation Hold Requests.

004807

Sawnie A. McEntire
State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347
*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S APPLICATION FOR EXPEDITED HEARING ON EMERGENCY MOTION FOR EXPEDITED DISCOVERY, OR ALTERNATIVELY, FOR CONTINUANCE OF JUNE 8, 2023 HEARING**

Hunter Mountain Investment Trust ("HMIT"), as Applicant, submits this

Application for an Expedited Hearing ("Application for Expedited Hearing") on its

Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the

004808

June 8, 2023, Hearing ("Motion for Expedited Discovery").[1] In support of this Application, HMIT states the following:

1.      The Motion for Expedited Discovery seeks leave to obtain discovery related to: (1) HMIT's Motion for Leave to File Adversary Complaint (Doc. 3699) and related Supplement (Doc. 3760) (Docs. 3699 and 3760, collectively "Motion for Leave"); (2) Claim Purchasers Objection to HMIT's Motion for Leave; (Doc. 3783) (3) Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr.'s Joint Opposition to HMIT's Motion for Leave (Doc. 3780); and Declaration of John A. Morris and the exhibits thereto (Doc. 3784) ("Morris Declaration") (Objection, Joint Opposition, and Declaration collectively filed by the "Respondents").

2.      The requested discovery is needed in advance of the scheduled evidentiary hearing ("Evidentiary Hearing") on the Motion for Leave, which is currently scheduled for June 8, 2023. HMIT should have adequate opportunity to conduct discovery in light of the evidentiary format of the June 8, 2023, hearing as ordered by the Court.

3.      An expedited hearing is permitted under Fed. R. Bank P. 9006 (c)(1), which authorizes a shortened time for a response and hearing for good cause. For the reasons set forth fully in the Motion for Expedited Discovery, and as set forth herein, HMIT has shown good cause and requests that the Court schedule a hearing on the Motion for

---

[1] The Motion for Expedited Discovery is being filed contemporaneously with this Application.

Expedited Discovery on Friday, May 26, 2023, or not more than two (2) days' notice and set an appropriate response deadline.

4.      Good cause exists because of the fast-approaching June 8, 2023, date for the Evidentiary Hearing. The Respondents' Objections and Joint Opposition, as well as the Morris Declaration with exhibits, all of which were appended to the Joint Opposition, were filed on May 11, 2023, making it impossible for HMIT to conduct discovery on any basis other than on an expedited basis.

5.      Alternatively, if such a setting on Friday, May 26, 2023, is not possible, HMIT requests that the Motion for Expedited Discovery be scheduled for an expedited hearing on the Court's earliest available date, and that an appropriate response deadline also be established. HMIT requests a 45-minute hearing.

WHEREFORE, Hunter Mountain Investment Trust, as Applicant, respectfully requests this Court (i) grant this Application for Expedited Hearing, (ii) set an expedited hearing on the Motion for Expedited Discovery on Friday, May 26, 2023 or within two (2) days of the filing of this Application for Expedited Hearing, and also establish an appropriate response deadline; (iii) in the event such a setting is not possible, and in the alternative, set an expedited hearing on the Motion for Expedited Discovery on the Court's earliest available date and time thereafter, and otherwise set an appropriate response deadline before the scheduled hearing, and (iv) grant such other and further relief as is just and proper.

[3]

004810

DATED: May 24, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  */s/ Sawnie A. McEntire*

Sawnie A. McEntire
State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF CONFERENCE

On May 24, 2023, counsel for HMIT and counsel for all Respondents conferred during a conference call regarding the substance of this Application. Counsel for all Respondents, James P. Seery, Jr., Highland Capital Management, L.P., Highland Claimant Trust, Farallon Capital Management, L.L.C., Stonehill Capital Management LLC, Jessup Holdings LLC, and Muck Holdings, LLC indicated they are not opposed to an expedited hearing on the underlying Motion for Expedited Discovery. However, various Respondents do object to the underlying Motion for Expedited Discovery as reflected in the certificate of conference reflected in that motion.

[4]

_/s/ Sawnie A. McEntire_
Sawnie A. McEntire

## CERTIFICATE OF SERVICE

I certify that on the 24th day of May 2023, a true and correct copy of the foregoing Motion was served on all counsel of record or, as appropriate, on the Respondents directly.

_/s/ Sawnie A. McEntire_
Sawnie A. McEntire

004812

Case 3:23-cv-02071-E   Document 23-17   Filed 12/07/23   Page 163 of 279   PageID 4194



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 22, 2023**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

## ORDER PERTAINING TO THE HEARING ON HUNTER MOUNTAIN INVESTMENT TRUST'S MOTION FOR LEAVE TO FILE ADVERSARY PROCEEDING

### [DE ## 3699 & 3760]

Based on the court's review of all of the parties' pleadings and briefing relating to the above-referenced motion and supplemental motion ("Motion for Leave"), the court has determined that there may be mixed questions of fact and law implicated by the Motion for Leave—and, in particular, pertaining to the court's required inquiry into whether "colorable" claims may exist, as described in the Motion for Leave. Therefore, the parties will be permitted to present evidence (including witness testimony) at the June 8, 2023 hearing if they so choose. This may include

1

004813

examining any witness for whom a Declaration or Affidavit has already been filed.  The parties

will be allowed no more than three hours of presentation time each (allocated three hours to the

movant and three hours to the aggregate respondents).  This allocated presentation time may be

spent in whatever manner the parties believe will be useful to the court (argument/evidence).

### # # # END OF ORDER # # #

004814

United States Bankruptcy Court

Northern District of Texas

In re:

Highland Capital Management, L.P.

Debtor

Case No. 19-34054-sgj

Chapter 11

# CERTIFICATE OF NOTICE

District/off: 0539-3    User: admin    Page 1 of 21

Date Rcvd: May 23, 2023    Form ID: pdf012    Total Noticed: 1

The following symbols are used throughout this certificate:
**Symbol      Definition**

\+              Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS
                regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on May 24, 2023:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | Alan J. Kornfeld, Pachulski Stang Ziehl & Jones LLPL, 10100 Santa Monica Blvd., 13 Fl, Los Angeles, CA 90067-4114 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 24, 2023    Signature:    /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on May 22, 2023 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| A. Lee Hogewood, III | on behalf of Interested Party NexPoint Real Estate Strategies Fund lee.hogewood@klgates.com matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Defendant NexPoint Advisors  L.P. lee.hogewood@klgates.com, matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Interested Party NexPoint Strategic Opportunities Fund lee.hogewood@klgates.com matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Interested Party Highland/iBoxx Senior Loan ETF lee.hogewood@klgates.com matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E |

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Imaged Certificate of Notice    Page 4 of 23
Case 3:23-cv-02071-E    Document 26-13    Filed 12/07/23    Page 166 of 279    PageID 4197
District/off: 0539-3                                    User: admin                                    Page 2 of 21
Date Rcvd: May 23, 2023                                 Form ID: pdf012                                Total Noticed: 1

mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Merger Arbitrage Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party NexPoint Advisors  L.P. lee.hogewood@klgates.com,
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Total Return Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Defendant Highland Capital Management Fund Advisors  L.P. lee.hogewood@klgates.com,
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Global Allocation Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Funds I and its series lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Opportunistic Credit Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Defendant Highland Income Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Fixed Income Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Defendant NexPoint Capital  Inc. lee.hogewood@klgates.com,
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Defendant NexPoint Strategic Opportunities Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Small-Cap Equity Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Socially Responsible Equity Fund lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Funds II and its series lee.hogewood@klgates.com
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party NexPoint Capital  Inc. lee.hogewood@klgates.com,
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. lee.hogewood@klgates.com,
matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;E
mily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Imaged Certificate of Notice    Page 5 of 23
Case 3:23-cv-02071-E    Document 26-14    Filed 12/07/23    Page 167 of 279    PageID 4198

| | |
|---|---|
| | on behalf of Interested Party Highland Healthcare Opportunities Fund lee.hogewood@klgates.com matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | |
| | on behalf of Interested Party Highland Income Fund lee.hogewood@klgates.com matthew.houston@klgates.com;Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com |
| Alexandre J. Tschumi | |
| | on behalf of Interested Party Litigation Trustee of the Highland Capital Management  L.P. Litigation Sub-Trust alexandretschumi@quinnemanuel.com |
| Alyssa Russell | |
| | on behalf of Creditor Committee Official Committee of Unsecured Creditors alyssa.russell@sidley.com efilingnotice@sidley.com;alyssa-russell-3063@ecf.pacerpro.com |
| Amanda Rush | |
| | on behalf of Interested Party CCS Medical  Inc. asrush@jonesday.com |
| Amy K. Anderson | |
| | on behalf of Creditor Issuer Group aanderson@joneswalker.com lfields@joneswalker.com;amy-anderson-9331@ecf.pacerpro.com |
| Andrew Clubok | |
| | on behalf of Plaintiff UBS AG London Branch andrew.clubok@lw.com andrew-clubok-9012@ecf.pacerpro.com,ny-courtmail@lw.com,dclitserv@lw.com |
| Andrew Clubok | |
| | on behalf of Plaintiff UBS Securities LLC andrew.clubok@lw.com andrew-clubok-9012@ecf.pacerpro.com,ny-courtmail@lw.com,dclitserv@lw.com |
| Andrew Clubok | |
| | on behalf of Interested Party UBS Securities LLC andrew.clubok@lw.com andrew-clubok-9012@ecf.pacerpro.com,ny-courtmail@lw.com,dclitserv@lw.com |
| Andrew Clubok | |
| | on behalf of Interested Party UBS AG London Branch andrew.clubok@lw.com andrew-clubok-9012@ecf.pacerpro.com,ny-courtmail@lw.com,dclitserv@lw.com |
| Annmarie Antoniette Chiarello | |
| | on behalf of Creditor Acis Capital Management  L.P. achiarello@winstead.com, dgalindo@winstead.com;kknight@winstead.com |
| Annmarie Antoniette Chiarello | |
| | on behalf of Creditor Acis Capital Management GP  LLC achiarello@winstead.com, dgalindo@winstead.com;kknight@winstead.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party Highland Fixed Income Fund artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. artoush.varshosaz@klgates.com, Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party Highland Small-Cap Equity Fund artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Defendant Highland Income Fund artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party NexPoint Real Estate Strategies Fund artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party Highland Funds II and its series artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party NexPoint Capital  Inc. artoush.varshosaz@klgates.com, Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party Highland Socially Responsible Equity Fund artoush.varshosaz@klgates.com Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party Highland/iBoxx Senior Loan ETF artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party NexPoint Strategic Opportunities Fund artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |
| | on behalf of Interested Party Highland Total Return Fund artoush.varshosaz@klgates.com  Julie.garrett@klgates.com |
| Artoush Varshosaz | |

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Imaged Certificate of Notice    Page 6 of 23
Case 3:23-cv-02071-E    Document 26-13    Filed 12/07/23    Page 168 of 279    PageID 4199

District/off: 0539-3 | User: admin | Page 4 of 21
Date Rcvd: May 23, 2023 | Form ID: pdf012 | Total Noticed: 1

| | |
|---|---|
| Artoush Varshosaz | on behalf of Defendant NexPoint Strategic Opportunities Fund artoush.varshosaz@klgates.com Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Defendant Highland Capital Management Fund Advisors L.P. artoush.varshosaz@klgates.com, Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Interested Party NexPoint Advisors L.P. artoush.varshosaz@klgates.com, Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Defendant NexPoint Advisors L.P. artoush.varshosaz@klgates.com, Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Defendant NexPoint Capital Inc. artoush.varshosaz@klgates.com, Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Interested Party Highland Healthcare Opportunities Fund artoush.varshosaz@klgates.com Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Interested Party Highland Income Fund artoush.varshosaz@klgates.com Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Interested Party Highland Funds I and its series artoush.varshosaz@klgates.com Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Interested Party Highland Global Allocation Fund artoush.varshosaz@klgates.com Julie.garrett@klgates.com |
| Artoush Varshosaz | on behalf of Interested Party Highland Merger Arbitrage Fund artoush.varshosaz@klgates.com Julie.garrett@klgates.com |
| Asif Attarwala | on behalf of Interested Party UBS Securities LLC asif.attarwala@lw.com |
| Asif Attarwala | on behalf of Interested Party UBS AG London Branch asif.attarwala@lw.com |
| Basil A. Umari | on behalf of Interested Party Meta-e Discovery LLC BUmari@dykema.com, pelliott@dykema.com |
| Bennett Rawicki | on behalf of Defendant Alvarez & Marsal CRF Management LLC brawicki@gibsondunn.com |
| Bojan Guzina | on behalf of Creditor Committee Official Committee of Unsecured Creditors bguzina@sidley.com |
| Brant C. Martin | on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC brant.martin@wickphillips.com samantha.tandy@wickphillips.com |
| Brent Ryan McIlwain | on behalf of Defendant Farallon Capital Management L.L.C. brent.mcilwain@hklaw.com, robert.jones@hklaw.com;brian.smith@hklaw.com |
| Brent Ryan McIlwain | on behalf of Creditor Muck Holdings LLC brent.mcilwain@hklaw.com robert.jones@hklaw.com;brian.smith@hklaw.com |
| Brian D. Glueckstein | on behalf of Defendant MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #2 gluecksteinb@sullcrom.com |
| Brian D. Glueckstein | on behalf of Defendant Mark Okada gluecksteinb@sullcrom.com |
| Brian D. Glueckstein | on behalf of Interested Party Mark Okada gluecksteinb@sullcrom.com |
| Brian D. Glueckstein | on behalf of Defendant MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #1 gluecksteinb@sullcrom.com |
| Brian D. Glueckstein | on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #2 gluecksteinb@sullcrom.com |
| Brian D. Glueckstein | on behalf of Interested Party The Okada Insurance Rabbi Trust gluecksteinb@sullcrom.com |
| Brian D. Glueckstein | on behalf of Interested Party Okada Family Foundation Inc. gluecksteinb@sullcrom.com |
| Brian D. Glueckstein | on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #1 gluecksteinb@sullcrom.com |

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Imaged Certificate of Notice    Page 7 of 23
Case 3:23-cv-02071-E    Document 26-13    Filed 12/07/23    Page 169 of 279    PageID 4200

District/off: 0539-3                                 User: admin                                          Page 5 of 21
Date Rcvd: May 23, 2023                         Form ID: pdf012                              Total Noticed: 1

Brian J. Smith
                      on behalf of Defendant Farallon Capital Management  L.L.C. brian.smith@hklaw.com,
                      robert.jones@hklaw.com;brent.mcilwain@hklaw.com

Bryan C. Assink
                      on behalf of Defendant James D. Dondero bryan.assink@bondsellis.com

Bryan C. Assink
                      on behalf of Creditor The Dugaboy Investment Trust bryan.assink@bondsellis.com

Bryan C. Assink
                      on behalf of Plaintiff James Dondero bryan.assink@bondsellis.com

Cameron A. Fine
                      on behalf of Defendant Hunter Mountain Investment Trust cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Cross Defendant DUGABOY INVESTMENT TRUST AND NANCY DONDERO  AS TRUSTEE OF DUGABOY
                      INVESTMENT TRUST cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Cross-Claimant Hunter Mountain Investment Trust cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Defendant STRAND ADVISORS  INC cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Defendant DUGABOY INVESTMENT TRUST AND NANCY DONDERO  AS TRUSTEE OF DUGABOY
                      INVESTMENT TRUST cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Defendant GET GOOD TRUST AND GRANT JAMES SCOTT III  AS TRUSTEE OF GET GOOD TRUST
                      cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Defendant James D. Dondero cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Cross-Claimant RAND PE FUND I  LP, SERIES 1 cameron.fine@us.dlapiper.com

Cameron A. Fine
                      on behalf of Defendant RAND PE FUND I  LP, SERIES 1 cameron.fine@us.dlapiper.com

Candice Marie Carson
                      on behalf of Plaintiff UBS Securities LLC Candice.Carson@butlersnow.com

Candice Marie Carson
                      on behalf of Interested Party UBS AG London Branch Candice.Carson@butlersnow.com

Candice Marie Carson
                      on behalf of Plaintiff UBS AG London Branch Candice.Carson@butlersnow.com

Candice Marie Carson
                      on behalf of Interested Party UBS Securities LLC Candice.Carson@butlersnow.com

Chad D. Timmons
                      on behalf of Creditor COLLIN COUNTY TAX ASSESSOR/COLLECTOR bankruptcy@abernathy-law.com

Charles Martin Persons, Jr.
                      on behalf of Creditor Committee Official Committee of Unsecured Creditors cpersons@sidley.com
                      txefilingnotice@sidley.com;charles-persons-5722@ecf.pacerpro.com

Charles W. Gameros, Jr.
                      on behalf of Creditor HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) bgameros@legaltexas.com,
                      lmilam@legaltexas.com;jrauch@legaltexas.com;wcarvell@legaltexas.com

Charles W. Gameros, Jr.
                      on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC bgameros@legaltexas.com
                      lmilam@legaltexas.com;jrauch@legaltexas.com;wcarvell@legaltexas.com

Christopher Andrew Bailey
                      on behalf of Creditor Jessup Holdings LLC Christopher.Bailey@hklaw.com  hapi@hklaw.com

Christopher Andrew Bailey
                      on behalf of Creditor Stonehill Capital Management LLC Christopher.Bailey@hklaw.com  hapi@hklaw.com

Christopher Andrew Bailey
                      on behalf of Creditor Farallon Capital Management  LLC Christopher.Bailey@hklaw.com, hapi@hklaw.com

Christopher Andrew Bailey
                      on behalf of Creditor Muck Holdings LLC Christopher.Bailey@hklaw.com  hapi@hklaw.com

Christopher J. Akin

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Imaged Certificate of Notice    Page 8 of 23
Case 3:23-cv-02071-E    Document 26-14    Filed 12/07/23    Page 170 of 279    PageID 4201
District/off: 0539-3                        User: admin                        Page 6 of 21
Date Rcvd: May 23, 2023                    Form ID: pdf012                    Total Noticed: 1

|  |  |
|---|---|
| | on behalf of Defendant Isaac Leventon cakin@lynnllp.com  cbaker@lynnllp.com |
| Christopher J. Akin | on behalf of Defendant Scott Ellington cakin@lynnllp.com  cbaker@lynnllp.com |
| Clay M. Taylor | on behalf of Interested Party James Dondero clay.taylor@bondsellis.com  linda.gordon@bondsellis.com |
| Clay M. Taylor | on behalf of Plaintiff James Dondero clay.taylor@bondsellis.com  linda.gordon@bondsellis.com |
| Cortney C. Thomas | on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #2 cort@brownfoxlaw.com korourke@brownfoxlaw.com |
| Cortney C. Thomas | on behalf of Defendant MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #1 cort@brownfoxlaw.com korourke@brownfoxlaw.com |
| Cortney C. Thomas | on behalf of Defendant Mark Okada cort@brownfoxlaw.com  korourke@brownfoxlaw.com |
| Cortney C. Thomas | on behalf of Interested Party Okada Family Foundation  Inc. cort@brownfoxlaw.com, korourke@brownfoxlaw.com |
| Cortney C. Thomas | on behalf of Defendant MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #2 cort@brownfoxlaw.com  korourke@brownfoxlaw.com |
| Cortney C. Thomas | on behalf of Interested Party The Okada Insurance Rabbi Trust cort@brownfoxlaw.com  korourke@brownfoxlaw.com |
| Cortney C. Thomas | on behalf of Interested Party Mark Okada cort@brownfoxlaw.com  korourke@brownfoxlaw.com |
| Cortney C. Thomas | on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #1 cort@brownfoxlaw.com korourke@brownfoxlaw.com |
| Daniel P. Winikka | on behalf of Interested Party Jack Yang dan@danwinlaw.com  dan@danwinlaw.com |
| Daniel P. Winikka | on behalf of Interested Party Brad Borud dan@danwinlaw.com  dan@danwinlaw.com |
| David G. Adams | on behalf of Creditor United States (IRS) david.g.adams@usdoj.gov  southwestern.taxcivil@usdoj.gov;dolores.c.lopez@usdoj.gov |
| David Grant Crooks | on behalf of Creditor Committee Official Committee of Unsecured Creditors dcrooks@foxrothschild.com etaylor@foxrothschild.com,rdietz@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com |
| David Grant Crooks | on behalf of Creditor PensionDanmark Pensionsforsikringsaktieselskab dcrooks@foxrothschild.com etaylor@foxrothschild.com,rdietz@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com |
| David Grant Crooks | on behalf of Debtor Highland Capital Management  L.P. dcrooks@foxrothschild.com, etaylor@foxrothschild.com,rdietz@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com |
| Davor Rukavina | on behalf of Defendant NexPoint Advisors  L.P. drukavina@munsch.com |
| Davor Rukavina | on behalf of Interested Party Highland Healthcare Opportunities Fund drukavina@munsch.com |
| Davor Rukavina | on behalf of Interested Party NexPoint Real Estate Strategies Fund drukavina@munsch.com |
| Davor Rukavina | on behalf of Interested Party Highland Global Allocation Fund drukavina@munsch.com |
| Davor Rukavina | on behalf of Interested Party Highland Funds I and its series drukavina@munsch.com |
| Davor Rukavina | on behalf of Interested Party NexPoint Strategic Opportunities Fund drukavina@munsch.com |
| Davor Rukavina | on behalf of Interested Party Highland Merger Arbitrage Fund drukavina@munsch.com |

004820

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Imaged Certificate of Notice    Page 9 of 23
Case 3:23-cv-02071-E    Document 26-14    Filed 12/07/23    Page 171 of 279    PageID 4202

District/off: 0539-3                                      User: admin                                           Page 7 of 21
Date Rcvd: May 23, 2023                          Form ID: pdf012                                    Total Noticed: 1

Davor Rukavina
    on behalf of Interested Party Highland Total Return Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland Socially Responsible Equity Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party NexPoint Capital  Inc. drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. drukavina@munsch.com

Davor Rukavina
    on behalf of Defendant NexPoint Strategic Opportunities Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland Small-Cap Equity Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Defendant Highland Income Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Defendant Highland Capital Management Fund Advisors  L.P. drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party NexPoint Advisors  L.P. drukavina@munsch.com

Davor Rukavina
    on behalf of Defendant NexPoint Capital  Inc. drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland Fixed Income Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland Opportunistic Credit Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland Income Fund drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland Funds II and its series drukavina@munsch.com

Davor Rukavina
    on behalf of Interested Party Highland/iBoxx Senior Loan ETF drukavina@munsch.com

Deborah Rose Deitsch-Perez
    on behalf of Defendant Nancy Dondero deborah.deitschperez@stinson.com
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Defendant Highland Capital Management Services  Inc. deborah.deitschperez@stinson.com,
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Defendant Highland Capital Management Fund Advisors  L.P. deborah.deitschperez@stinson.com,
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Plaintiff Dugaboy Investment Trust deborah.deitschperez@stinson.com
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Plaintiff Hunter Mountain Investment Trust deborah.deitschperez@stinson.com
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Defendant James Dondero deborah.deitschperez@stinson.com
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Defendant NexPoint Advisors  L.P. deborah.deitschperez@stinson.com,
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Defendant The Dugaboy Investment Trust deborah.deitschperez@stinson.com
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Creditor The Dugaboy Investment Trust deborah.deitschperez@stinson.com
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez
    on behalf of Witness Nancy Dondero deborah.deitschperez@stinson.com

patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez

on behalf of Interested Party Highland CLO Management Ltd deborah.deitschperez@stinson.com
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez

on behalf of Defendant HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) deborah.deitschperez@stinson.com,
patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Debra A Dandeneau

on behalf of Creditor Scott Ellington  Thomas Surgent, Frank Waterhouse, Isaac Leventon debra.dandeneau@bakermckenzie.com,
blaire.cahn@bakermckenzie.com

Debra A Dandeneau

on behalf of Defendant Frank Waterhouse debra.dandeneau@bakermckenzie.com  blaire.cahn@bakermckenzie.com

Debra A Dandeneau

on behalf of Defendant Isaac Leventon debra.dandeneau@bakermckenzie.com  blaire.cahn@bakermckenzie.com

Debra A Dandeneau

on behalf of Interested Party CPCM  LLC debra.dandeneau@bakermckenzie.com, blaire.cahn@bakermckenzie.com

Debra A Dandeneau

on behalf of Defendant CPCM  LLC debra.dandeneau@bakermckenzie.com, blaire.cahn@bakermckenzie.com

Debra A Dandeneau

on behalf of Defendant Scott Ellington debra.dandeneau@bakermckenzie.com  blaire.cahn@bakermckenzie.com

Dennis M. Twomey

on behalf of Creditor Committee Official Committee of Unsecured Creditors dtwomey@sidley.com

Donna K. Webb

on behalf of Creditor Pension Benefit Guaranty Corporation donna.webb@usdoj.gov
brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov

Douglas J. Schneller

on behalf of Creditor Contrarian Funds LLC douglas.schneller@rimonlaw.com

Douglas S. Draper

on behalf of Creditor The Get Good Non Exempt Trust No 2 ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Get Better Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Canis Minor Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Get Good Non Exempt Trust No 1 ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor The Dondero Insurance Rabbi Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Get Good Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Dana Scott Breault ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor SLHC Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Defendant The Dugaboy Investment Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Defendant The Get Good Nonexempt Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor The Dugaboy Investment Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Case 19-34054-sgj11 Doc 3790 Filed 05/24/23 Entered 05/24/23 23:21:14 Desc
Case 3:23-cv-02071-E Imaged Certificate of Notice Page 173 of 279 PageID 4204
District/off: 0539-3 User: admin Page 9 of 21
Date Rcvd: May 23, 2023 Form ID: pdf012 Total Noticed: 1

Douglas S. Draper

on behalf of Creditor Dolomiti LLC ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Edmon L. Morton

on behalf of Creditor Committee Official Committee of Unsecured Creditors emorton@ycst.com

Edward J. Leen

on behalf of Creditor Jessup Holdings LLC eleen@mkbllp.com

Edwin Paul Keiffer

on behalf of Creditor Beacon Mountain  LLC pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Atlas IDF  GP, LLC pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Rand PE Fund Management  LLC pkeiffer@romclaw.com,
bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Defendant Hunter Mountain Investment Trust pkeiffer@romclaw.com
bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Atlas IDF  LP pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Hunter Mountain Investment Trust pkeiffer@romclaw.com
bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Rand PE Fund I  LP pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor John Honis pkeiffer@romclaw.com  bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Interested Party Hunter Mountain Trust pkeiffer@romclaw.com  bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Rand Advisors  LLC pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Elizabeth Weller

on behalf of Creditor Fannin CAD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Grayson County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Dallas County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Coleman County TAD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Allen ISD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Irving ISD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Tarrant County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Rockwall CAD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Kaufman County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Upshur County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Eric A. Soderlund

on behalf of Interested Party CPCM  LLC eric.soderlund@rsbfirm.com

Eric A. Soderlund

on behalf of Interested Party Former Employees eric.soderlund@rsbfirm.com

Eric A. Soderlund

on behalf of Creditor Scott Ellington  Thomas Surgent, Frank Waterhouse, Isaac Leventon eric.soderlund@rsbfirm.com

Eric A. Soderlund

004823

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Image of Certificate of Notice    Page 12 of 21
Case 3:23-cv-02071-E    Document 26-1    Filed 12/07/23    Page 174 of 279    PageID 4205

District/off: 0539-3                              User: admin                              Page 10 of 21
Date Rcvd: May 23, 2023                          Form ID: pdf012                          Total Noticed: 1

|  |  |
|---|---|
|  | on behalf of Creditor Frank Waterhouse  Scott B. Ellington, Isaac Leventon, Jean Paul Sevilla, Hunter Covitz and Thomas Surgent eric.soderlund@rsbfirm.com |
| Eric Thomas Haitz | on behalf of Defendant Alvarez & Marsal CRF Management  LLC ehaitz@gibsondunn.com, skoller@gibsondunn.com |
| Frances Anne Smith | on behalf of Interested Party CPCM  LLC frances.smith@rsbfirm.com, michael.coulombe@rsbfirm.com |
| Frances Anne Smith | on behalf of Plaintiff Scott Byron Ellington frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com |
| Frances Anne Smith | on behalf of Creditor Frank Waterhouse frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com |
| Frances Anne Smith | on behalf of Interested Party Former Employees frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com |
| Frances Anne Smith | on behalf of Interested Party Matthew DiOrio  Scott Ellington, Isaac Leventon, Mary Kathryn Lucas (nee Irving), John Paul Sevilla, Stephanie Vitiello, and Frank Waterhouse frances.smith@rsbfirm.com, michael.coulombe@rsbfirm.com |
| Frances Anne Smith | on behalf of Creditor Scott Ellington frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com |
| Frances Anne Smith | on behalf of Creditor Scott Ellington  Thomas Surgent, Frank Waterhouse, Isaac Leventon frances.smith@rsbfirm.com, michael.coulombe@rsbfirm.com |
| Gregory Getty Hesse | on behalf of Spec. Counsel Hunton Andrews Kurth LLP ghesse@huntonak.com kkirk@huntonak.com;tcanada@HuntonAK.com;creeves@HuntonAK.com |
| Gregory V. Demo | on behalf of Creditor Committee Official Committee of Unsecured Creditors gdemo@pszjlaw.com jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Gregory V. Demo | on behalf of Defendant Highland Capital Management  LP gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Gregory V. Demo | on behalf of Debtor Highland Capital Management  L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Gregory V. Demo | on behalf of Defendant Highland Capital Management  L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Greta M. Brouphy | on behalf of Creditor The Dugaboy Investment Trust gbrouphy@hellerdraper.com dhepting@hellerdraper.com;vgamble@hellerdraper.com |
| Greta M. Brouphy | on behalf of Defendant The Dugaboy Investment Trust gbrouphy@hellerdraper.com dhepting@hellerdraper.com;vgamble@hellerdraper.com |
| Greta M. Brouphy | on behalf of Creditor Get Good Trust gbrouphy@hellerdraper.com  dhepting@hellerdraper.com;vgamble@hellerdraper.com |
| Hayley R. Winograd | on behalf of Defendant Highland Capital Management  LP hwinograd@pszjlaw.com |
| Hayley R. Winograd | on behalf of Defendant Highland Capital Management  L.P. hwinograd@pszjlaw.com |
| Hayley R. Winograd | on behalf of Debtor Highland Capital Management  L.P. hwinograd@pszjlaw.com |
| Holland N. O'Neil | on behalf of Spec. Counsel Foley Gardere  Foley & Lardner LLP honeil@foley.com, jcharrison@foley.com;holly-holland-oneil-3540@ecf.pacerpro.com |
| J. Seth Moore | on behalf of Creditor Siepe  LLC smoore@condontobin.com, jsteele@condontobin.com |
| Jaclyn C. Weissgerber | on behalf of Creditor Committee Official Committee of Unsecured Creditors bankfilings@ycst.com  jweissgerber@ycst.com |

Case 19-34054-sgj11 Doc 3790 Filed 05/24/23 Entered 05/24/23 23:21:14 Desc
Imaged Certificate of Notice Page 19 of 21
Case 3:23-cv-02071-E Document 20-17 Filed 12/07/23 Page 175 of 279 PageID 4206

District/off: 0539-3           User: admin           Page 11 of 21

Date Rcvd: May 23, 2023           Form ID: pdf012           Total Noticed: 1

Jason Bernstein
on behalf of Creditor BHH Equities LLC casey.doherty@dentons.com
dawn.brown@dentons.com;Melinda.sanchez@dentons.com;docket.general.lit.dal@dentons.com

Jason Bernstein
on behalf of Interested Party Jefferies LLC casey.doherty@dentons.com
dawn.brown@dentons.com;Melinda.sanchez@dentons.com;docket.general.lit.dal@dentons.com

Jason Alexander Enright
on behalf of Creditor Acis Capital Management L.P. jenright@winstead.com

Jason Alexander Enright
on behalf of Creditor Acis Capital Management GP LLC jenright@winstead.com

Jason Michael Hopkins
on behalf of Interested Party James Dondero jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Defendant James D. Dondero jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Defendant DUGABOY INVESTMENT TRUST AND NANCY DONDERO AS TRUSTEE OF DUGABOY
INVESTMENT TRUST jason.hopkins@dlapiper.com, jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Creditor The Dugaboy Investment Trust jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Defendant RAND PE FUND I LP, SERIES 1 jason.hopkins@dlapiper.com,
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Creditor Strand Advisors Inc. jason.hopkins@dlapiper.com,
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Defendant GET GOOD TRUST AND GRANT JAMES SCOTT III AS TRUSTEE OF GET GOOD TRUST
jason.hopkins@dlapiper.com, jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Creditor Get Good Trust jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Defendant STRAND ADVISORS INC jason.hopkins@dlapiper.com,
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins
on behalf of Defendant Hunter Mountain Investment Trust jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Patrick Kathman
on behalf of Creditor Patrick Daugherty jkathman@spencerfane.com
gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman
on behalf of Creditor Paul Kauffman jkathman@spencerfane.com
gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman
on behalf of Defendant Patrick Daugherty jkathman@spencerfane.com
gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman
on behalf of Creditor Todd Travers jkathman@spencerfane.com
gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman
on behalf of Defendant Patrick Hagaman Daugherty jkathman@spencerfane.com
gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman
on behalf of Creditor Davis Deadman jkathman@spencerfane.com
gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com

Jason S. Brookner
on behalf of Creditor Patrick Daugherty jbrookner@grayreed.com lwebb@grayreed.com;acarson@grayreed.com

Jason S. Brookner
on behalf of Defendant Patrick Daugherty jbrookner@grayreed.com lwebb@grayreed.com;acarson@grayreed.com

Case 19-34054-sgj11   Doc 3790   Filed 05/24/23   Entered 05/24/23 23:21:14   Desc
Imaged Certificate of Notice   Page 14 of 21
Case 3:23-cv-02071-E   Document 20-17   Filed 12/07/23   Page 176 of 279   PageID 4207

Jason S. Brookner
                        on behalf of Creditor Gray Reed & McGraw LLP jbrookner@grayreed.com  lwebb@grayreed.com;acarson@grayreed.com

Jeff P. Prostok
                        on behalf of Creditor Acis Capital Management  L.P. jprostok@forsheyprostok.com,
                        calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com;khartogh@forsheyprostok.com;
                        khartogh@ecf.courtdrive.com

Jeff P. Prostok
                        on behalf of Creditor Joshua Terry jprostok@forsheyprostok.com
                        calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com;khartogh@forsheyprostok.com;
                        khartogh@ecf.courtdrive.com

Jeff P. Prostok
                        on behalf of Creditor Jennifer G. Terry jprostok@forsheyprostok.com
                        calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com;khartogh@forsheyprostok.com;
                        khartogh@ecf.courtdrive.com

Jeff P. Prostok
                        on behalf of Creditor Acis Capital Management GP  LLC jprostok@forsheyprostok.com,
                        calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com;khartogh@forsheyprostok.com;
                        khartogh@ecf.courtdrive.com

Jeffrey Kurtzman
                        on behalf of Creditor BET Investments II  L.P. kurtzman@kurtzmansteady.com

Jeffrey Nathan Pomerantz
                        on behalf of Defendant Highland Capital Management  L.P. jpomerantz@pszjlaw.com

Jeffrey Nathan Pomerantz
                        on behalf of Debtor Highland Capital Management  L.P. jpomerantz@pszjlaw.com

John A. Morris
                        on behalf of Defendant Highland Capital Management  L.P. jmorris@pszjlaw.com

John A. Morris
                        on behalf of Defendant Highland Capital Management  LP jmorris@pszjlaw.com

John A. Morris
                        on behalf of Debtor Highland Capital Management  L.P. jmorris@pszjlaw.com

John J. Kane
                        on behalf of Defendant CLO Holdco  Ltd. jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com

John J. Kane
                        on behalf of Defendant Grant James Scott III jkane@krcl.com  ecf@krcl.com;jkane@ecf.courtdrive.com

John J. Kane
                        on behalf of Creditor Grant James Scott III jkane@krcl.com  ecf@krcl.com;jkane@ecf.courtdrive.com

John J. Kane
                        on behalf of Defendant Grant James Scott III jkane@krcl.com  ecf@krcl.com;jkane@ecf.courtdrive.com

John Kendrick Turner
                        on behalf of Creditor City of Allen john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Tarrant County john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Fannin CAD john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Irving ISD john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Dallas County john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Upshur County john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Allen ISD john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Kaufman County john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor City of Richardson john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner
                        on behalf of Creditor Grayson County john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

District/off: 0539-3                          User: admin                              Page 13 of 21
Date Rcvd: May 23, 2023                       Form ID: pdf012                          Total Noticed: 1

John Kendrick Turner
                     on behalf of Creditor Coleman County TAD john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John T. Cox, III
                     on behalf of Defendant Alvarez & Marsal CRF Management  LLC tcox@gibsondunn.com,
                     WCassidy@gibsondunn.com;twesley@gibsondunn.com

Jonathan D. Sundheimer
                     on behalf of Creditor NWCC  LLC jsundhimer@btlaw.com

Jonathan E. Bridges
                     on behalf of Plaintiff PCMG Trading Partners XXIII LP jeb@sbaitilaw.com

Jonathan E. Bridges
                     on behalf of Plaintiff CLO Holdco  Ltd. jeb@sbaitilaw.com

Jonathan E. Bridges
                     on behalf of Interested Party CLO Holdco  Ltd. jeb@sbaitilaw.com

Jonathan E. Bridges
                     on behalf of Plaintiff Charitable DAF Fund  LP jeb@sbaitilaw.com

Jonathan E. Bridges
                     on behalf of Interested Party Charitable DAF Fund  LP jeb@sbaitilaw.com

Jonathan E. Bridges
                     on behalf of Creditor CLO Holdco  Ltd. jeb@sbaitilaw.com

Jordan A. Kroop
                     on behalf of Debtor Highland Capital Management  L.P. jkroop@pszjlaw.com, tcorrea@pszjlaw.com

Joseph E. Bain
                     on behalf of Creditor Issuer Group JBain@joneswalker.com
                     kvrana@joneswalker.com;joseph-bain-8368@ecf.pacerpro.com;msalinas@joneswalker.com

Joshua Seth Levy
                     on behalf of Other Professional James P. Seery  Jr. jlevy@willkie.com

Joshua Seth Levy
                     on behalf of Creditor James P. Seery  Jr. jlevy@willkie.com

Julian Preston Vasek
                     on behalf of Interested Party NexPoint Real Estate Strategies Fund jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland Opportunistic Credit Fund jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Defendant NexPoint Capital  Inc. jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland Small-Cap Equity Fund jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland Healthcare Opportunities Fund jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Defendant Highland Capital Management Fund Advisors  L.P. jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland Merger Arbitrage Fund jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party NexPoint Capital  Inc. jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland Fixed Income Fund jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland/iBoxx Senior Loan ETF jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party Highland Funds I and its series jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Interested Party NexPoint Advisors GP  LLC jvasek@munsch.com

Julian Preston Vasek
                     on behalf of Defendant NexPoint Strategic Opportunities Fund jvasek@munsch.com

District/off: 0539-3                        User: admin                                    Page 14 of 21
Date Rcvd: May 23, 2023                     Form ID: pdf012                    Total Noticed: 1

Julian Preston Vasek

on behalf of Interested Party NexPoint Advisors  L.P. jvasek@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Socially Responsible Equity Fund jvasek@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Global Allocation Fund jvasek@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Total Return Fund jvasek@munsch.com

Julian Preston Vasek

on behalf of Interested Party NexPoint Strategic Opportunities Fund jvasek@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Funds II and its series jvasek@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Income Fund jvasek@munsch.com

Julian Preston Vasek

on behalf of Defendant NexPoint Advisors  L.P. jvasek@munsch.com

Julian Preston Vasek

on behalf of Defendant Highland Income Fund jvasek@munsch.com

Juliana Hoffman

on behalf of Creditor Sidley Austin LLP jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Creditor Committee Official Committee of Unsecured Creditors jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Financial Advisor FTI Consulting  Inc. jhoffman@sidley.com,
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Plaintiff Official Committee of Unsecured Creditors jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Plaintiff Marc Kirschner jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Other Professional Teneo Capital  LLC jhoffman@sidley.com,
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Interested Party UBS Securities LLC jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Interested Party UBS AG London Branch jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Debtor Highland Capital Management  L.P. jhoffman@sidley.com,
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Interested Party Committee of Unsecured Creditors jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Kesha Tanabe

on behalf of Creditor Cedar Glade LP kesha@tanabelaw.com

Kevin Perkins

on behalf of Defendant MASSAND CAPITAL  LLC kperkins@vanacourperkins.com

Kevin Perkins

on behalf of Defendant MASSAND CAPITAL  INC. kperkins@vanacourperkins.com

Kimberly A. Posin

on behalf of Interested Party UBS Securities LLC kim.posin@lw.com  colleen.rico@lw.com

Kimberly A. Posin

on behalf of Plaintiff UBS AG London Branch kim.posin@lw.com  colleen.rico@lw.com

Kimberly A. Posin

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Case 3:23-cv-02071-E    Imaged Certificate of Notice    Page 15 of 21    Page 179 of 279    PageID 4210
District/off: 0539-3                                    User: admin                                    Page 15 of 21
Date Rcvd: May 23, 2023                                Form ID: pdf012                                Total Noticed: 1

| | |
|---|---|
| | on behalf of Interested Party UBS AG London Branch kim.posin@lw.com   colleen.rico@lw.com |
| Kimberly A. Posin | |
| | on behalf of Plaintiff UBS Securities LLC kim.posin@lw.com   colleen.rico@lw.com |
| Kristin H. Jain | |
| | on behalf of Interested Party NexPoint Advisors  L.P. KHJain@JainLaw.com, dskierski@skijain.com |
| Kristin H. Jain | |
| | on behalf of Interested Party NexPoint Real Estate Advisors  L.P. KHJain@JainLaw.com, dskierski@skijain.com |
| Larry R. Boyd | |
| | on behalf of Creditor COLLIN COUNTY TAX ASSESSOR/COLLECTOR lboyd@abernathy-law.com   ljameson@abernathy-law.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Residential Trust  Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Finance Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Creditor Eagle Equity Advisors  LLC lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Creditor Highland Capital Management Services  Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party VineBrook Homes  Trust, Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Partners  LLC lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party Nexpoint Real Estate Capital  LLC lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Advisors VIII  L.P. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Advisors VI  L.P. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Advisors  L.P. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexBank lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Advisors III  L.P. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Multifamily Capital Trust  Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party MGM Holdings  Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexBank Securities Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexBank Title Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Creditor Advisors Equity Group  LLC lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Hospitality Trust lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Advisors VII  L.P. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Creditor HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexBank Capital Inc. lkdrawhorn@gmail.com |
| Lauren Kessler Drawhorn | |
| | on behalf of Interested Party NexPoint Real Estate Advisors V  L.P. lkdrawhorn@gmail.com |

District/off: 0539-3                          User: admin                                          Page 16 of 21
Date Rcvd: May 23, 2023                      Form ID: pdf012                          Total Noticed: 1

Lauren Kessler Drawhorn
on behalf of Interested Party NexPoint Real Estate Advisors IV  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Interested Party NexPoint Real Estate Advisors II  L.P. lkdrawhorn@gmail.com

Laurie A Spindler
on behalf of Creditor Grayson County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler
on behalf of Creditor Dallas County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler
on behalf of Creditor Allen ISD Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler
on behalf of Creditor Kaufman County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler
on behalf of Creditor Tarrant County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler
on behalf of Creditor City of Allen Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler
on behalf of Creditor City of Richardson Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler
on behalf of Creditor Irving ISD Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Leslie A. Collins
on behalf of Creditor The Dugaboy Investment Trust lcollins@hellerdraper.com

Leslie A. Collins
on behalf of Defendant The Dugaboy Investment Trust lcollins@hellerdraper.com

Leslie A. Collins
on behalf of Creditor Get Good Trust lcollins@hellerdraper.com

Linda D. Reece
on behalf of Creditor Plano ISD lreece@pbfcm.com  lreece@ecf.courtdrive.com

Linda D. Reece
on behalf of Creditor City of Garland lreece@pbfcm.com  lreece@ecf.courtdrive.com

Linda D. Reece
on behalf of Creditor Wylie ISD lreece@pbfcm.com  lreece@ecf.courtdrive.com

Linda D. Reece
on behalf of Creditor Garland ISD lreece@pbfcm.com  lreece@ecf.courtdrive.com

Lindsey Lee Robin
on behalf of Other Professional James P. Seery  Jr. lrobin@reedsmith.com,
jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin
on behalf of Creditor James P. Seery  Jr. lrobin@reedsmith.com,
jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lisa L. Lambert
on behalf of U.S. Trustee United States Trustee lisa.l.lambert@usdoj.gov

Louis M. Phillips
on behalf of Creditor Charitable DAF HoldCo  Ltd. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
on behalf of Interested Party Mary Jalonick louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
on behalf of Defendant Charitable DAF Fund  LP louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

Case 19-34054-sgj11   Doc 3790   Filed 05/24/23   Entered 05/24/23 23:21:14   Desc
Case 3:23-cv-02071-E   Document 26   Filed 12/07/23   Page 181 of 279   PageID 4212
Imaged Certificate of Notice   Page 19 of 21

District/off: 0539-3                          User: admin                          Page 17 of 21
Date Rcvd: May 23, 2023                       Form ID: pdf012                      Total Noticed: 1

Louis M. Phillips
    on behalf of Defendant CLO Holdco  Ltd. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Creditor CLO Holdco  Ltd. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party The Santa Barbara Foundation louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Defendant Highland Dallas Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party The Dallas Foundation louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party Charitable DAF Fund  LP louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Respondent Mark Patrick louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Creditor The Charitable DAF Fund  L.P. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party CLO Holdco  Ltd. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Creditor Charitable DAF GP  L.P. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party The Greater Kansas City Community Foundation louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party Highland Santa Barbara Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party Highland Kansas City Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Plaintiff CLO Holdco  Ltd. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Plaintiff Charitable DAF Fund  LP louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party Highland Dallas Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Interested Party The Charitable DAF Fund  L.P. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Defendant CLO HOLDCO  LTD.; CHARITABLE DAF HOLDCO, LTD. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Creditor Highland Dallas Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips
    on behalf of Creditor Hunter Mountain Investment Trust louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

M. David Bryant, Jr.
    on behalf of Interested Party Integrated Financial Associates  Inc. dbryant@dykema.com, csmith@dykema.com

Margaret Michelle Hartmann

Case 19-34054-sgj11    Doc 3790    Filed 05/24/23    Entered 05/24/23 23:21:14    Desc
Case 3:23-cv-02071-E    Imaged Certificate of Notice    Filed 12/07/23    Page 2 of 23    Page 182 of 279    PageID 4213
District/off: 0539-3                                        User: admin                                        Page 18 of 21
Date Rcvd: May 23, 2023                                Form ID: pdf012                                Total Noticed: 1

on behalf of Defendant Scott Ellington michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Interested Party CPCM  LLC michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Defendant Frank Waterhouse michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Defendant CPCM  LLC michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Defendant Isaac Leventon michelle.hartmann@bakermckenzie.com

Mark Stancil

on behalf of Other Professional James P. Seery  Jr. mstancil@robbinsrussell.com

Mark Stancil

on behalf of Creditor James P. Seery  Jr. mstancil@robbinsrussell.com

Mark A. Platt

on behalf of Interested Party Redeemer Committee of the Highland Crusader Fund mplatt@fbtlaw.com
dwilliams@fbtlaw.com,mluna@fbtlaw.com

Martin A. Sosland

on behalf of Interested Party UBS AG London Branch martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Martin A. Sosland

on behalf of Plaintiff UBS AG London Branch martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Martin A. Sosland

on behalf of Interested Party UBS Securities LLC martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Martin A. Sosland

on behalf of Plaintiff UBS Securities LLC martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Matthew Gold

on behalf of Creditor Argo Partners courts@argopartners.net

Matthew A. Clemente

on behalf of Creditor Committee Official Committee of Unsecured Creditors mclemente@sidley.com
matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwom
ey@sidley.com

Matthew A. Clemente

on behalf of Interested Party Committee of Unsecured Creditors mclemente@sidley.com
matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwom
ey@sidley.com

Matthew G. Bouslog

on behalf of Interested Party Alvarez & Marsal CRF Management  LLC, as Investment Manager of the Highland Crusader Funds
mbouslog@gibsondunn.com, nbrosman@gibsondunn.com

Mazin Ahmad Sbaiti

on behalf of Plaintiff CLO Holdco  Ltd. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti

on behalf of Interested Party Charitable DAF Fund  LP mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti

on behalf of Plaintiff PCMG Trading Partners XXIII LP mas@sbaitilaw.com
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti

on behalf of Interested Party CLO Holdco  Ltd. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti

on behalf of Creditor The Charitable DAF Fund  L.P. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti

on behalf of Plaintiff Charitable DAF Fund  LP mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti

on behalf of Interested Party The Charitable DAF Fund  L.P. mas@sbaitilaw.com,

krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti

on behalf of Creditor CLO Holdco  Ltd. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Megan Young-John

on behalf of Creditor Issuer Group myoung-john@porterhedges.com

Megan F. Clontz

on behalf of Creditor Todd Travers mclontz@spencerfane.com  lvargas@spencerfane.com

Megan F. Clontz

on behalf of Creditor Patrick Daugherty mclontz@spencerfane.com  lvargas@spencerfane.com

Melissa S. Hayward

on behalf of Defendant Highland Capital Management  L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Melissa S. Hayward

on behalf of Debtor Highland Capital Management  L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Melissa S. Hayward

on behalf of Defendant Highland Capital Management  LP MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Melissa S. Hayward

on behalf of Plaintiff Highland Capital Management  L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Michael A. Rosenthal

on behalf of Defendant Alvarez & Marsal CRF Management  LLC mrosenthal@gibsondunn.com

Michael Justin Lang

on behalf of Interested Party James Dondero mlang@cwl.law  aohlinger@cwl.law;mbrown@cwl.law

Michael P. Aigen

on behalf of Plaintiff Hunter Mountain Investment Trust michael.aigen@stinson.com

Michael P. Aigen

on behalf of Creditor The Dugaboy Investment Trust michael.aigen@stinson.com

Michael P. Aigen

on behalf of Defendant James Dondero michael.aigen@stinson.com

Michael P. Aigen

on behalf of Plaintiff Dugaboy Investment Trust michael.aigen@stinson.com

Michael P. Aigen

on behalf of Defendant NexPoint Advisors  L.P. michael.aigen@stinson.com

Michael P. Aigen

on behalf of Defendant HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) michael.aigen@stinson.com

Michael P. Aigen

on behalf of Defendant Highland Capital Management Services  Inc. michael.aigen@stinson.com

Michael P. Aigen

on behalf of Creditor Hunter Mountain Investment Trust michael.aigen@stinson.com

Michael P. Aigen

on behalf of Defendant Highland Capital Management Fund Advisors  L.P. michael.aigen@stinson.com

Michael P. Aigen

on behalf of Defendant Nancy Dondero michael.aigen@stinson.com

Michael P. Aigen

on behalf of Interested Party Highland CLO Management Ltd michael.aigen@stinson.com

Michael Scott Held

on behalf of Creditor Crescent TC Investors  L.P. mheld@jw.com, kgradney@jw.com;azuniga@jw.com

Michelle E. Shriro

on behalf of Interested Party California Public Employees Retirement System (CalPERS) mshriro@singerlevick.com
scotton@singerlevick.com;tguillory@singerlevick.com

Nicole Skolnekovich

on behalf of Interested Party Hunton Andrews Kurth LLP nskolnekovich@hunton.com
astowe@huntonak.com;creeves@huntonak.com

Omar Jesus Alaniz

on behalf of Other Professional James P. Seery  Jr. oalaniz@reedsmith.com,
omar-alaniz-2648@ecf.pacerpro.com;jkrasnic@reedsmith.com;ahinson@reedsmith.com

Paige Holden Montgomery

on behalf of Creditor Committee Official Committee of Unsecured Creditors pmontgomery@sidley.com

txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery

on behalf of Plaintiff Marc Kirschner pmontgomery@sidley.com
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery

on behalf of Interested Party Committee of Unsecured Creditors pmontgomery@sidley.com
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery

on behalf of Plaintiff Official Committee of Unsecured Creditors pmontgomery@sidley.com
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery

on behalf of Interested Party Litigation Trustee of the Highland Capital Management  L.P. Litigation Sub-Trust
pmontgomery@sidley.com,
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paul M. Lopez

on behalf of Creditor COLLIN COUNTY TAX ASSESSOR/COLLECTOR bankruptcy@abernathy-law.com

Paul Richard Bessette

on behalf of Interested Party Highland CLO Funding  Ltd. pbessette@KSLAW.com,
ccisneros@kslaw.com;jworsham@kslaw.com;kbryan@kslaw.com;jcarvalho@kslaw.com

Penny Packard Reid

on behalf of Creditor Committee Official Committee of Unsecured Creditors preid@sidley.com
txefilingnotice@sidley.com;penny-reid-4098@ecf.pacerpro.com;ncade@sidley.com

Phillip L. Lamberson

on behalf of Creditor Acis Capital Management GP  LLC plamberson@winstead.com

Phillip L. Lamberson

on behalf of Creditor Acis Capital Management  L.P. plamberson@winstead.com

Rakhee V. Patel

on behalf of Creditor Acis Capital Management GP  LLC rpatel@sidley.com, dgalindo@winstead.com;achiarello@winstead.com

Rakhee V. Patel

on behalf of Creditor Acis Capital Management  L.P. rpatel@sidley.com, dgalindo@winstead.com;achiarello@winstead.com

Robert Joel Feinstein

on behalf of Debtor Highland Capital Management  L.P. rfeinstein@pszjlaw.com

Robert Joel Feinstein

on behalf of Defendant Highland Capital Management  LP rfeinstein@pszjlaw.com

Ryan E. Manns

on behalf of Interested Party UBS Securities LLC ryan.manns@nortonrosefulbright.com

Ryan E. Manns

on behalf of Interested Party UBS AG London Branch ryan.manns@nortonrosefulbright.com

Sarah A. Schultz

on behalf of Interested Party PetroCap  LLC sschultz@akingump.com,
mstamer@akingump.com;afreeman@akingump.com;dkazlow@akingump.com;aqureshi@akingump.com;dkrasa-berstell@akingu
mp.com;bkemp@akingump.com;brenda-kemp-7410@ecf.pacerpro.com

Sawnie A. McEntire

on behalf of Interested Party Hunter Mountain Trust smcentire@pmmlaw.com
gromero@pmmlaw.com;tmiller@pmmlaw.com;bcandis@pmmlaw.com

Sawnie A. McEntire

on behalf of Creditor Hunter Mountain Investment Trust smcentire@pmmlaw.com
gromero@pmmlaw.com;tmiller@pmmlaw.com;bcandis@pmmlaw.com

Sean M. Beach

on behalf of Creditor Committee Official Committee of Unsecured Creditors bankfilings@ycst.com  sbeach@ycst.com

Shawn M Bates

on behalf of Creditor Acis Capital Management  L.P. sbates@azalaw.com, tbyrd@azalaw.com

Shawn M. Christianson

on behalf of Creditor Oracle America  Inc. schristianson@buchalter.com, cmcintire@buchalter.com

Susheel Kirpalani

on behalf of Interested Party Litigation Trustee of the Highland Capital Management  L.P. Litigation Sub-Trust

Case 19-34054-sgj11 Doc 3790 Filed 05/24/23 Entered 05/24/23 23:21:14 Desc
Imaged Certificate of Notice Page 29 of 21
Case 3:23-cv-02071-E Document 20-12 Filed 12/07/23 Page 185 of 279 PageID 4216
District/off: 0539-3 User: admin Page 21 of 21
Date Rcvd: May 23, 2023 Form ID: pdf012 Total Noticed: 1

susheelkirpalani@quinnemanuel.com, dian.gwinnup@haynesboone.com

| | |
|---|---|
| Suzanne K. Rosen | on behalf of Creditor Acis Capital Management GP LLC srosen@forsheyprostok.com, calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com;khartogh@forsheyprostok.com;khartogh@ecf.courtdrive.com |
| Suzanne K. Rosen | on behalf of Creditor Acis Capital Management L.P. srosen@forsheyprostok.com, calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com;khartogh@forsheyprostok.com;khartogh@ecf.courtdrive.com |
| Thomas Albert Cooke | on behalf of Creditor Acis Capital Management L.P. tcooke@azalaw.com, mflores@azalaw.com |
| Thomas C. Scannell | on behalf of Interested Party Sentinel Reinsurance Ltd. tscannell@foley.com acordero@foley.com;thomas-scannell-3441@ecf.pacerpro.com |
| Thomas Daniel Berghman | on behalf of Interested Party NexPoint Advisors L.P. tberghman@munsch.com, amays@munsch.com |
| Thomas Daniel Berghman | on behalf of Interested Party Highland Capital Management Fund Advisors L.P. tberghman@munsch.com, amays@munsch.com |
| Thomas Daniel Berghman | on behalf of Defendant NexPoint Advisors L.P. tberghman@munsch.com, amays@munsch.com |
| Thomas Daniel Berghman | on behalf of Defendant Highland Capital Management Fund Advisors L.P. tberghman@munsch.com, amays@munsch.com |
| Thomas G. Haskins, Jr. | on behalf of Creditor NWCC LLC thaskins@btlaw.com |
| Thomas M. Melsheimer | on behalf of Creditor Frank Waterhouse Scott B. Ellington, Isaac Leventon, Jean Paul Sevilla, Hunter Covitz and Thomas Surgent tmelsheimer@winston.com, tom-melsheimer-7823@ecf.pacerpro.com |
| United States Trustee | ustpregion06.da.ecf@usdoj.gov |
| Vickie L. Driver | on behalf of Creditor HarbourVest et al Vickie.Driver@crowedunlevy.com crissie.stephenson@crowedunlevy.com;elisa.weaver@crowedunlevy.com;ecf@crowedunlevy.com |
| William R. Howell, Jr. | on behalf of Defendant James D. Dondero williamhowell@utexas.edu williamhowell@utexas.edu |
| Zachery Z. Annable | on behalf of Defendant Highland Capital Management LP zannable@haywardfirm.com |
| Zachery Z. Annable | on behalf of Defendant Highland Capital Management L.P. zannable@haywardfirm.com |
| Zachery Z. Annable | on behalf of Other Professional Hayward PLLC zannable@haywardfirm.com |
| Zachery Z. Annable | on behalf of Plaintiff Highland Capital Management L.P. zannable@haywardfirm.com |
| Zachery Z. Annable | on behalf of Other Professional Highland Claimant Trust zannable@haywardfirm.com |
| Zachery Z. Annable | on behalf of Debtor Highland Capital Management L.P. zannable@haywardfirm.com |
| Zachery Z. Annable | on behalf of Other Professional Hayward & Associates PLLC zannable@haywardfirm.com |

TOTAL: 476

004835

Sawnie A. McEntire

Texas State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

Texas State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S EMERGENCY MOTION
FOR EXPEDITED DISCOVERY OR, ALTERNATIVELY,
<u>FOR CONTINUACE OF JUNE 8, 2023 HEARING</u>**

Hunter Mountain Investment Trust ("<u>HMIT</u>"), as Movant, files this Emergency

Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023

Hearing ("Motion") concerning HMIT's Motion for Leave to File Adversary Complaint

004836

(Doc. 3699) and related Supplement (Doc. 3760) (Docs. 3699 and 3760 collectively "Motion for Leave"), and would respectfully show:

**A. Summary of Motion**

1.      This Motion seeks discovery on an expedited basis to prepare for the evidentiary hearing on the Motion for Leave currently scheduled for June 8, 2023.

2.      HMIT submits that the colorable nature of the claims asserted in HMIT's proposed adversary proceeding is evident on the face of HMIT's proposed Complaint. HMIT previously objected and continues to object that any evidentiary hearing relating to the Motion for Leave is inappropriate. *See* HMIT'S Reply Brief in Support of its Motion for Leave (Doc. 3785) at paras. 12-17.

3.      Nevertheless, on May 22, 2023, the Court ruled that it intends to conduct an evidentiary hearing on the Motion for Leave. As a result, HMIT faces the untenable prospect of attempting to prepare for this evidentiary hearing, and attempting to respond to voluminous evidence that one or more of the Respondents intends to offer at the hearing, without a reasonable opportunity to obtain meaningful and timely discovery. HMIT therefore files this Motion seeking to protect its due process rights, of which HMIT

004837

will be deprived unless HMIT is granted expedited discovery as requested in this Motion.[1]

### B. Summary of Procedural Background

**4.**        On April 24, 2023, this Court conducted a status conference regarding a briefing and hearing schedule for HMIT's Motion for Leave and whether the hearing on HMIT's Motion for Leave would be evidentiary.  *See* Order Fixing Briefing Schedule (<mark>Doc. 3781</mark>).

5.        At the April 24, 2023, status conference, HMIT also objected that an evidentiary hearing on HMIT's Motion for Leave was improper. HMIT also provided notice at that time that it intended to withdraw all affidavits and other materials attached to its Motion for Leave.[2]  However, in the event this Court elected to hold an evidentiary hearing on its Motion for Leave, HMIT reserved all rights to conduct merits-based discovery relating to the Motion for Leave before the hearing – without waiving its substantive or procedural rights, and without conceding the propriety of an evidentiary hearing (which HMIT continues to deny).

---

[1] This Motion and HMIT's related discovery requests are related to HMIT's Motion for Leave and the Court's May 22, 2023, order (<mark>Doc. 3787</mark>) ("Order") ruling that the June 8 hearing on HMIT's Motion for Leave will be evidentiary. HMIT reserves all and does not waive any of its substantive or procedural rights and objections in connection with its Motion for Leave, this Motion, and the discovery HMIT seeks to obtain. Further, and not by way of limitation, HMIT's discovery requests are subject to and without waiver of HMIT's objections that the hearing on HMIT's Motion is not properly an evidentiary hearing.

[2] This withdrawal was subject to HMIT's reservation of rights that, in the event the Court concludes it will conduct an evidentiary hearing on the Motion for Leave, HMIT reserved the right to offer the same at any such hearing.

004838

6.      On May 11, 2023, the Claim Purchasers filed their Objection to HMIT's Motion for Leave; (Doc. 3783) and Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr. filed their Joint Opposition to HMIT's Motion for Leave (Doc. 3780) with the Declaration of John A. Morris and the exhibits thereto (Doc. 3784) ("Morris Declaration") (Objection, Joint Opposition, and Declaration collectively filed by the "Respondents").

7.      On May 22, 2023, the Court entered its Order granting Respondents' request for an evidentiary hearing. Therefore, subject to and without waiving its objections, HMIT requests immediate leave to obtain all of its requested discovery on or before the specific dates identified in each deposition notice (with duces tecum), failing which the hearing on HMIT's Motion for Leave should be continued until HMIT has obtained such discovery. The requested discovery is generally described in this Motion, but is set forth with particularity in the Deposition Notices with Duces Tecum attached as Exhibits A-E.

8.      In summary, HMIT seeks expedited depositions of corporate representatives of Farallon Capital Management, LLC ("Farallon"), Stonehill Capital Management, LLC ("Stonehill"), Muck Holdings, LLC ("Muck"), Jessup Holdings, LLC ("Jessup") and also seeks the deposition of James A. Seery, Jr. ("Seery"). Without limitation, the following topics and documents are generally addressed in the requested discovery:

- The factual background related to the proposed Adversary Complaint, including the facts relevant to the objections to the Motion for Leave filed by the Respondents, including but not limited to HMIT's standing to bring the claims;

- Communications between Respondents related to the claims made the basis of the proposed Adversary Complaint;

- Any due diligence undertaken by the Claims Purchasers related to the Claims purchased and the value of the Debtor's Estate;

- Information regarding Seery's compensation and communications with the Oversight Board;

- Communications or information related to the Respondents' knowledge of the MGM sale and related emails and communications with James Dondero ("Dondero");

- Relationship between Seery and Farallon, Stonehill, or any of the Claims Purchasers or Sellers;

- Communications between the Claims Sellers and the Claims Purchasers, including, but not limited to, the Claims purchase agreements;

- Communications with Dondero;

- Litigation hold notices and document retention protocols.

**B.    Argument**

9.      The Respondents should not be allowed to play fast and loose with the rules by using purported evidence as a sword while seeking to shield documents from discovery. Consideration of John Morris' Declaration, which is attached to the Joint

Opposition and the related ==Exhibit==s (Nos. 1 – 44) is not only inappropriate, but to do so without allowing discovery denies HMIT due process.[3]

10.     The Morris Declaration was filed on May 11, 2023, making it impossible for HMIT to conduct discovery on any basis other than on an expedited basis. Accordingly, HMIT requests an expedited discovery schedule for all requested depositions and document productions with a completion date on the deadlines identified in each discovery device. Alternatively, HMIT requests a continuance of the June 8, 2023, hearing date so it can timely conduct all of the requested discovery in advance of any hearing.

## Reservation of Rights

11.     HMIT reserves its substantive and procedural rights and objections concerning any discovery requests (document requests and interrogatories) propounded to HMIT as well as to the date, time and scope of any deposition notices relating to HMIT. HMIT also reserves its right to supplement this Motion or otherwise seek to compel production of specific documents to which objections have been or may be asserted.

WHEREFORE PREMISES CONSIDERED, Hunter Mountain Investment Trust respectfully requests this Court grant its Emergency Motion for Expedited Discovery or,

---

[3] HMIT filed objections as part of its Reply Brief in Support of its Motion for Leave (==Doc. 3785==) at paras. 12-17.

004841

Alternatively, for a Continuance of the June 8, 2023, Hearing on HMIT's Motion for Leave to File Adversary Complaint, and seeks further relief to which HMIT may be justly entitled.

Dated: May 24, 2023.

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  /s/ Sawnie A. McEntire
      Sawnie A. McEntire
      Texas State Bar No. 13590100
      smcentire@pmmlaw.com
      1700 Pacific Avenue, Suite 4400
      Dallas, Texas 75201
      Telephone: (214) 237-4300
      Facsimile: (214) 237-4340

      Roger L. McCleary
      Texas State Bar No. 13393700
      rmccleary@pmmlaw.com
      One Riverway, Suite 1800
      Houston, Texas 77056
      Telephone: (713) 960-7315
      Facsimile: (713) 960-7347

      *Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF CONFERENCE

On May 24, 2023, counsel for HMIT and counsel for all Respondents conferred during a conference call regarding the substance of this Motion. Counsel for Farallon Capital Management, L.L.C., Stonehill Capital Management LLC, Jessup Holdings LLC,

004842

and Muck Holdings, LLC, are opposed to any discovery related to their clients. Counsel for James P. Seery, Jr., generally agrees to participate in expedited discovery, however, there may be disagreements concerning specific document production requests. Counsel for Highland Capital Management, L.P. and Highland Claimant Trust is generally not opposed to conducting expedited discovery; however, it is opposed to producing any currently redacted documents except by in-camera tender to the Court. Counsel for all Respondents are opposed to postponing the hearing currently set for June 8, 2023.


 /s/ Sawnie A. McEntire
Sawnie A. McEntire


## CERTIFICATE OF SERVICE

I certify that on the 24th day of May 2023, a true and correct copy of the foregoing Motion was served on all counsel of record or, as appropriate, on the Respondents directly.


 /s/ Sawnie A. McEntire
Sawnie A. McEntire

004843

# Exhibit A

004844

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND**
**VIDEOTAPED DEPOSITION OF JAMES P. SEERY, JR.**

To:   James P. Seery, Jr., by and through his counsel of record, Mark T. Stancil
and Joshua S. Levy, WILLKIE FARR & GALLAGHER LLP, 1875 K Street, N.W.,
Washington, D.C. 20006; and Omar J. Alaniz, REED SMITH LLP, 2850 N.
Harwood St., Ste. 1500, Dallas, Texas 75201

004845

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of   James P. Seery, Jr. ("Seery").   This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **9:00 a.m.** on **Monday, June 5, 2023** and continuing day after day until completed.

Please take further notice that Seery is requested to produce the documents described in Exhibit "A", attached hereto.  The documents to be produced as described in Exhibit "A" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions. The deposition will be videotaped.

Dated:  May 23, 2023                              Respectfully Submitted,

                                            **PARSONS MCENTIRE MCCLEARY PLLC**

                                       By:  /s/*Sawnie A. McEntire*
                                          Sawnie A. McEntire
                                          State Bar No. 13590100

004846

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

**Attorneys for Hunter Mountain
Investment Trust**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

_/s/ Sawnie A. McEntire_
Sawnie A. McEntire

3

004847

## EXHIBIT "A"

## TO NOTICE OF DEPOSITION OF JAMES P. SEERY, JR.

For purposes of the attached, the following rules and definitions shall apply.

## RULES OF CONSTRUCTION

1.      The terms "all" and "each" shall be construed as all and each.

2.      The terms "all" and "any" shall be construed as all and any.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

1.      "You," "Your," and/or "Seery" means James P. Seery, Jr. and includes all of his partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of him, including any attorney, financial advisor, or other representative.

2.      "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

3.      "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

4.      "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

5.      "Grosvenor" refers to Grosvenor Capital Management, L.P.

4

004848

6. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

7. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

8. "Jessup" refers to Jessup Holdings LLC.

9. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

10. "Muck" shall refer to Muck Holdings, LLC.

11. "NAV" means net asset value.

12. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

13. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

14. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

15. "ROI" means return on investment.

16. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

17. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

5

004849

18.  "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

19.  "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30.  "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

004850

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt. 3760).

33.  "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35.  "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

004851

38. The term "information" as used herein should be construed in the broad sense. It includes reference to both facts and applicable principles. This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents. The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced,

including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004853

## DOCUMENT REQUESTS

1.      Any and all documents created by, prepared for, or received by Seery concerning any of the following topics:

   a.  The purchase of the Claims by Muck and/or Farallon or Stonehill and/or Jessup;

   b.  Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

   c.  Negotiations regarding the purchase of the Claims;

   d.  Valuations of the Claims or the assets underlying the Claims;

   e.  Promises and representations made in connection with the purchase of the Claims;

   f.  Any documents, including, but not limited to, any investment memoranda considered or prepared as part of any due diligence undertaken or considered by any of the Claims Purchasers prior to acquiring the Claims;

   g.  Consideration for the transfer of the Claims;

   h.  Value of HCM's Estate;

   i.  Projected future value of HCM's Estate;

   j.  Past distributions and projected distributions from the Highland Claimant Trust;

   k.  Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

   l.  Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

   m. Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

10

004854

2.     Any and all communications between Seery, on the one hand, and any of the following individuals or entities: (i) Muck, (ii) the UCC, (iii) the Settling Parties, (iv) Stonehill, (v) Farallon, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero, (ix) Jessup, (x) any fund affiliated with or managed by Muck, (xi) any fund affiliated with or managed by Jessup, (xii) any fund affiliated with or managed by Farallon, and (xiii) any fund affiliated with or managed by Stonehill, concerning any of the following topics:

   a.  Purchase or sale of the Claims;

   b.  Negotiation of any agreement regarding the purchase or sale of the Claims;

   c.  Valuation of the Claims or the assets underlying the Claims;

   d.  Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

   e.  Any due diligence undertaken by Farallon or Muck prior to acquiring the Claims;

   f.  Any due diligence undertaken by Stonehill or Jessup prior to acquiring the Claims;

   g.  Consideration for the purchase of the Claims;

   h.  Value of HCM's Estate;

   i.  Projected future value of HCM's Estate;

   j.  Past distributions and projected distributions from HCM's Estate;

   k.  Compensation earned by or paid to Seery in connection with or relating to the Claims;

   l.  Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

   m. Future compensation to be paid to Seery as Trustee of the Highland

11

004855

Claimant Trust.

    n.  Decisions made by the Oversight Board.

3.    All correspondence and/or other documents by or between Seery and any investors in any fund regarding the Claims and/or the acquisition or transfer of the Claims.

4.    Any and all documents reflecting the sources of funding used to acquire any of the Claims.

5.    Organizational and formation documents relating to Muck and/or Jessup including, but not limited to, their certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.    Company resolutions prepared by or on behalf of Muck or Jessup approving the acquisition of any of the Claims.

7.    Any and all documents reflecting any internal or external audits regarding Muck's or Jessup's NAV.

8.    Agreements between Farallon and Muck or Stonehill and Jessup regarding management, advisory, or other services provided to Muck by Farallon or Stonehill or Jessup.

9.    Any documents reflecting any communications with James Dondero.

10.    Annual fund audits relating to Muck or Jessup.

11.    Muck's or Jessup's NAV Statements.

12.    Documents reflecting the fees or other compensation earned by Muck or Jessup in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.    12/6/21 Memorandum Agreement.

14.    5/9/23 Letter from the Texas State Securities Board to Highland.

12

15.     Minutes of Meetings of the Claimant Trust Oversight Board.

16.     All texts/communications with any member of the Oversight Board regarding your compensation and distributions.

17.     All text messages or other communications with any of the Claims Purchasers.

18.     Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Muck and/or Jessup and/or efforts to market any interests held by either Muck and/or Jessup.

19.     Any document retention policy or protocol or Litigation Hold Requests.

20.     Unredacted copies of all exhibits to the Declaration of John A. Morris in Support of Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr.'s Joint Opposition to HMIT's Motion for leave to File Verified Adversary Proceeding (Dkt. 3784).

004857

# Exhibit B

004858

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340


Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND
VIDEOTAPED RULE 30(b)(6) DEPOSITION OF FARALLON CAPITAL
MANAGEMENT, L.L.C.'S CORPORATE REPRESENTATIVE**

To:   Farallon Capital Management, L.L.C., by and through its counsel of record,
Brent R. McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND &
KNIGHT LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

1

004859

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative or representatives of Farallon Capital Management, L.L.C. ("Farallon") or other consenting person designated by Farallon, to testify concerning the matters specified in Exhibit "A". This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **9:00 a.m.** on **Thursday, June 1, 2023** and continuing day after day until completed. Farallon is instructed to designate a person or persons authorized to testify on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule of Civil Procedure 30(b)(6).

Please take further notice that Farallon is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Farallon concerning the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit "A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

004860

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions.  The deposition will be videotaped.

Dated:  May 23, 2023                    Respectfully Submitted,

                                                 **PARSONS MCENTIRE MCCLEARY PLLC**

                                                 By:  */s/Sawnie A. McEntire*
                                                       Sawnie A. McEntire
        State Bar No. 13590100
        smcentire@pmmlaw.com
        1700 Pacific Avenue, Suite 4400
        Dallas, Texas 75201
        Telephone: (214) 237-4300
        Facsimile: (214) 237-4340

        Roger L. McCleary
        State Bar No. 13393700
        rmccleary@pmmlaw.com
        One Riverway, Suite 1800
        Houston, Texas 77056
        Telephone: (713) 960-7315
        Facsimile: (713) 960-7347

        ***Attorneys for Hunter Mountain***
        ***Investment Trust***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

        */s/ Sawnie A. McEntire*
        Sawnie A. McEntire

3

004861

## EXHIBIT "A"

## TO NOTICE OF DEPOSITION OF FARALLON CAPITAL MANAGEMENT, LLC

For purposes of the attached, the following rules and definitions shall apply.

### RULES OF CONSTRUCTION

1.    The terms "all" and "each" shall be construed as all and each.

2.    The terms "all" and "any" shall be construed as all and any.

3.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.    The use of the singular form of any word includes the plural and vice versa.

### DEFINITIONS

1.    "You," "Your," and/or "Farallon" refer to Farallon Capital Management, L.L.C., and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Muck Holdings, LLC. These terms also include Michael Lin and any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Farallon is a general partner or owns an entities' general partner, or anyone else acting on Farallon's behalf, now or at any time relevant to the response.

2.    "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

3.    "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

4.    "Grosvenor" refers to Grosvenor Capital Management, L.P.

4

5. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

6. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

7. "Jessup" refers to Jessup Holdings LLC.

8. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

9. "Muck" shall refer to Muck Holdings, LLC.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

004863

17. "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18. "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19. "Seery" refers to James P. ("Jim") Seery.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30. "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

004864

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt. 3760).

33. "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35. "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

004865

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense. It includes reference to both facts and applicable principles. This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents.  The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004867

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Farallon to testify on its behalf is (are) requested to

testify concerning the following Topic Categories:

1.      The factual background and circumstances relating to the subject matter of the
Proposed Adversary Complaint;

2.      The alleged factual background and circumstances regarding the evidence and
allegations supporting Highland Capital Management, L.P., Highland Claimant Trust,
and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified
Adversary Proceeding (Dkt. 3783);

3.      The alleged factual background and circumstances regarding evidence and
allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for
Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.      Communications between Farallon and any of the following entities or persons
relating to any of the Claims:

    a.   Any member of the UCC;

    b.   HCM;

    c.   Grosvenor;

    d.   Muck;

    e.   Any member of the Oversight Board;

    f.   Seery;

    g.   Stonehill or Jessup;

    h.   Any of the Settling Parties;

    i.   Dondero; and

    j.   Any fund managed by and/or affiliated with Farallon that invested any
         funds in connection with the purchase of any of the Claims.

004868

5.     The sources of funds used by Muck and/or Farallon to acquire any of the Claims;

6.     The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Muck and/or Farallon and the subsequent assignment of such Claims to Muck;

7.     All communications between Farallon and Seery related to the Proposed Adversary Complaint;

8.     Representations and/or warranties made by either Farallon, Muck, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims;

9.     Information known to Farallon regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Farallon and Seery relating to MGM;

10.     Appointment of Muck to the Oversight Board;

11.     Farallon's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Farallon or Grovesner;

12.     Communications between Farallon and/or Muck, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.     Actual compensation paid to Seery since the Effective Date of the Plan.

14.     All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.     All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

004869

16.     Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Muck and/or Farallon and all communications regarding any such offer(s).

17.     Any offer by Muck and/or Farallon to sell any of the Claims or any part thereof.

18.     Any effort by either Muck and/or Farallon to sell or market any of the Claims or any portion thereof.

19.     Any due diligence conducted by either Muck or Farallon related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.     Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.     The substance, types, and sources of information Farallon considered in making any decision to invest in any of the Claims on behalf of itself, Muck, and/or any fund with which Farallon is affiliated or which Farallon manages.

22.     All communications reflecting due diligence information provided by any HCM Party to Farallon regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.     The extent to which Farallon was involved in creating and organizing Muck in connection with the acquisition of any of the Claims.

24.     The organizational structure of Muck (including identification of all members, managing members), as well as the purpose for creating Muck, including, but not limited to, regarding holding title to any of the Claims.

25.      All base fees and performance fees which Farallon has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same.

004870

26.     All monies and/or distributions received by Muck and/or Farallon in connection with any of the Claims and any distributions made by Muck to any members of Muck relating to such Claims.

27.     Whether Farallon is a co-investor in any fund which holds an interest in Muck or otherwise holds a direct interest in Muck and all documents reflecting the same.

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004871

# EXHIBIT "A-2"
## DOCUMENT REQUESTS

1. Any and all documents created by, prepared for, or received by Farallon concerning any of the following topics:

   a. The purchase of the Claims by Muck and/or Farallon;

   b. Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

   c. Negotiations regarding the purchase of the Claims;

   d. Valuations of the Claims or the assets underlying the Claims;

   e. Promises and representations made in connection with the purchase of the Claims;

   f. Any documents, including, but not limited to, any investment memoranda, considered or prepared as part of any due diligence undertaken or considered by Farallon or Muck prior to acquiring the Claims;

   g. Consideration for the transfer of the Claims;

   h. Value of HCM's Estate;

   i. Projected future value of HCM's Estate;

   j. Past distributions and projected distributions from the Highland Claimant Trust;

   k. Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

   l. Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

   m. Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

004872

2.      Any and all communications between Farallon, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Stonehill, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund affiliated with or managed by Farallon concerning any of the following topics:

    a.   Purchase or sale of the Claims;

    b.   Negotiation of any agreement regarding the purchase or sale of the Claims;

    c.   Valuation of the Claims or the assets underlying the Claims;

    d.   Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

    e.   Any due diligence undertaken by Farallon or Muck prior to acquiring the Claims;

    f.   Consideration for the purchase of the Claims;

    g.   Value of HCM's Estate;

    h.   Projected future value of HCM's Estate;

    i.   Past distributions and projected distributions from HCM's Estate;

    j.   Compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.   Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.   Future compensation to be paid to Seery as Trustee of the Highland Claimant Trust;

    m.  Decisions made by the Oversight Board.

3.      All correspondence and/or other documents by or between Farallon and/or Muck and any investors in any fund regarding the Claims and/or the acquisition or

15

004873

transfer of the Claims.

4.      Any and all documents reflecting the sources of funding used by Muck to acquire any of the Claims.

5.      Organizational and formation documents relating to Muck including, but not limited to, Muck's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.      Company resolutions prepared by or on behalf of Muck approving the acquisition of any of the Claims.

7.      Any and all documents reflecting any internal or external audits regarding Muck's NAV.

8.      Agreements between Farallon and Muck regarding management, advisory, or other services provided to Muck by Farallon.

9.       Any documents reflecting any communications with James Dondero.

10.     Annual fund audits relating to Muck.

11.      Muck's NAV Statements.

12.     Documents reflecting the fees or other compensation earned by Farallon in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.     12/6/21 Memorandum Agreement.

14.     5/9/23 Letter from the Texas State Securities Board to Highland.

15.     Minutes of Meetings of the Claimant Trust Oversight Board.

16.     All texts/communications with any member of the Oversight Board regarding Seery's compensation and distributions.

004874

17.     All text messages or other communications with any of the other Claims Purchasers.

18.     Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Muck and/or Farallon and/or efforts to market any interests held by either Muck and/or Farallon.

19.     Any document retention policy or protocol or Litigation Hold Requests.

004875

# Exhibit C

004876

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND
VIDEOTAPED RULE 30(b)(6) DEPOSITION OF STONEHILL CAPITAL
<u>MANAGEMENT LLC'S CORPORATE REPRESENTATIVE</u>**

To:   Stonehill Capital Management LLC, by and through its counsel of record,
Brent R. McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND &
KNIGHT LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

1

004877

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative or representatives of Stonehill Capital Management LLC ("Stonehill") or other consenting person designated by Stonehill, to testify concerning the matters specified in Exhibit "A".  This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **9:00 a.m.** on **Friday, June 2, 2023** and continuing day after day until completed.  Stonehill is instructed to designate a person or persons authorized to testify on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule of Civil Procedure 30(b)(6).

Please take further notice that Stonehill is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Stonehill concerning the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit "A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

004878

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions. The deposition will be videotaped.

Dated: May 23, 2023          Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:   /s/ *Sawnie A. McEntire*        
       Sawnie A. McEntire
       State Bar No. 13590100
       smcentire@pmmlaw.com
       1700 Pacific Avenue, Suite 4400
       Dallas, Texas 75201
       Telephone: (214) 237-4300
       Facsimile: (214) 237-4340

       Roger L. McCleary
       State Bar No. 13393700
       rmccleary@pmmlaw.com
       One Riverway, Suite 1800
       Houston, Texas 77056
       Telephone: (713) 960-7315
       Facsimile: (713) 960-7347

       ***Attorneys for Hunter Mountain
       Investment Trust***

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

       /s/ *Sawnie A. McEntire*        
       Sawnie A. McEntire

004879

EXHIBIT "A"

**TO NOTICE OF DEPOSITION OF STONEHILL CAPITAL MANAGEMENT, LLC**

For purposes of the attached, the following rules and definitions shall apply.

**RULES OF CONSTRUCTION**

1.    The terms "all" and "each" shall be construed as all and each.

2.    The terms "all" and "any" shall be construed as all and any.

3.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.    The use of the singular form of any word includes the plural and vice versa.

**DEFINITIONS**

1.    "You," "Your," and/or "Stonehill" refer to Stonehill Capital Management LLC, and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Jessup Holdings LLC. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Stonehill is a general partner or owns an entities' general partner, or anyone else acting on Stonehill's behalf, now or at any time relevant to the response.

2.    "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

3.    "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

4.    "Grosvenor" refers to Grosvenor Capital Management, L.P.

4

004880

5.  "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

6.  "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

7.  "Jessup" refers to Jessup Holdings LLC.

8.  "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

9.  "Muck" shall refer to Muck Holdings, LLC.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

5

004881

17.  "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18.  "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19.  "Seery" refers to James P. Seery, Jr.

20.  "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21.  "Stonehill" refers to Stonehill Capital Management, LLC.

22.  "Strand" refers to Strand Advisors, Inc.

23.  "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24.  "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25.  "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26.  "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27.  "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28.  "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29.  "Dondero" means James Dondero.

30.  "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

6

004882

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt. 3760).

33. "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35. "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense. It includes reference to both facts and applicable principles. This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

8

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents.  The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004885

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Stonehill to testify on its behalf is (are) requested

to testify concerning the following Topic Categories:

1.      The factual background and circumstances relating to the subject matter of the Proposed Adversary Complaint.

2.      The alleged factual background and circumstances regarding the evidence and allegations supporting Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified Adversary Proceeding (Dkt. 3783).

3.      The alleged factual background and circumstances regarding evidence and allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.      Communications between Stonehill and any of the following entities or persons relating to any of the Claims:

   a.   Any member of the UCC;

   b.   HCM;

   c.   Grosvenor;

   d.   Jessup;

   e.   Any member of the Oversight Board;

   f.   Seery;

   g.   Farallon or Muck;

   h.   Any of the Settling Parties;

   i.   Dondero; and

   j.   Any fund managed by and/or affiliated with Stonehill that invested any funds in connection with the purchase of any of the Claims.

5.      The sources of funds used by Jessup and/or Stonehill to acquire any of the Claims.

6.      The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Jessup and/or Stonehill and the subsequent assignment of such Claims to Jessup.

7.      All communications between Stonehill and Seery related to the Proposed Adversary Complaint.

8.      Representations and/or warranties made by either Stonehill, Jessup, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims.

9.      Information known to Stonehill regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Stonehill and Seery relating to MGM.

10.      Appointment of Jessup to the Oversight Board.

11.      Stonehill's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Stonehill or Grovesner.

12.      Communications between Stonehill and/or Jessup, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.      Actual compensation paid to Seery since the Effective Date of the Plan.

14.      All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.      All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

004887

16.    Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Jessup and/or Stonehill and all communications regarding any such offer(s).

17.    Any offer by Jessup and/or Stonehill to sell any of the Claims or any part thereof.

18.    Any effort by either Jessup and/or Stonehill to sell or market any of the Claims or any portion thereof.

19.    Any due diligence conducted by either Jessup or Stonehill related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.    Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.    The substance, types, and sources of information Stonehill considered in making any decision to invest in any of the Claims on behalf of itself, Jessup, and/or any fund with which Stonehill is affiliated or which Stonehill manages.

22.    All communications reflecting due diligence information provided by any HCM Party to Stonehill regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.    The extent to which Stonehill was involved in creating and organizing Jessup in connection with the acquisition of any of the Claims.

24.    The organizational structure of Jessup (including identification of all members, managing members), as well as the purpose for creating Jessup, including, but not limited to, regarding holding title to any of the Claims.

25.    All base fees and performance fees which Stonehill has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same.

004888

26.     All monies and/or distributions received by Jessup and/or Stonehill in connection with any of the Claims and any distributions made by Jessup to any members of Jessup relating to such Claims.

27.     Whether Stonehill is a co-investor in any fund which holds an interest in Jessup or otherwise holds a direct interest in Jessup and all documents reflecting the same.

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004889

## EXHIBIT "A-2"
## DOCUMENT REQUESTS

1.      Any and all documents created by, prepared for, or received by Stonehill concerning any of the following topics:

    a.   The purchase of the Claims by Jessup and/or Stonehill;

    b.   Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

    c.   Negotiations regarding the purchase of the Claims;

    d.   Valuations of the Claims or the assets underlying the Claims;

    e.   Promises and representations made in connection with the purchase of the Claims;

    f.   Any documents, including but not limited to investment memoranda, considered or prepared as part of any due diligence undertaken or considered by Stonehill or Jessup prior to acquiring the Claims;

    g.   Consideration for the transfer of the Claims;

    h.   Value of HCM's Estate;

    i.   Projected future value of HCM's Estate;

    j.   Past distributions and projected distributions from the Highland Claimant Trust;

    k.   Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

    l.   Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    m.  Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

004890

2.      Any and all communications between Stonehill, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Farallon, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund affiliated with or managed by Stonehill concerning any of the following topics:

    a.  Purchase or sale of the Claims;

    b.  Negotiation of any agreement regarding the purchase or sale of the Claims;

    c.  Valuation of the Claims or the assets underlying the Claims;

    d.  Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

    e.  Any due diligence undertaken by Stonehill or Jessup prior to acquiring the Claims;

    f.  Consideration for the purchase of the Claims;

    g.  Value of HCM's Estate;

    h.  Projected future value of HCM's Estate;

    i.  Past distributions and projected distributions from HCM's Estate;

    j.  Compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.  Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.  Future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

    m.  Decisions made by the Oversight Board.

004891

3.     All correspondence and/or other documents by or between Stonehill and/or Jessup and any investors in any fund regarding the Claims and/or the acquisition or transfer of the Claims.

4.     Any and all documents reflecting the sources of funding used by Jessup to acquire any of the Claims.

5.     Organizational and formation documents relating to Jessup including, but not limited to, Jessup's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.     Company resolutions prepared by or on behalf of Jessup approving the acquisition of any of the Claims.

7.     Any and all documents reflecting any internal or external audits regarding Jessup's NAV.

8.     Agreements between Stonehill and Jessup regarding management, advisory, or other services provided to Jessup by Stonehill.

10.     Any documents reflecting any communications with James Dondero.

11.     Annual fund audits relating to Jessup.

12.     Jessup's NAV Statements.

13.     Documents reflecting the fees or other compensation earned by Stonehill in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

14.     12/6/21 Memorandum Agreement.

15.     5/9/23 Letter from the Texas State Securities Board to Highland.

16.     Minutes of Meetings of the Claimant Trust Oversight Board.

17.     All texts/communications with any member of the Oversight Board regarding Seery's compensation and distributions.

004892

18.    All text messages or other communications with any of the other Claims Purchasers.

19.    Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Jessup and/or Stonehill and/or efforts to market any interests held by either Jessup and/or Stonehill.

20.    Any document retention policy or protocol or Litigation hold Request.

004893

# Exhibit D

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340


Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND VIDEOTAPED RULE 30(b)(6) DEPOSITION OF MUCK HOLDINGS, LLC'S <u>CORPORATE REPRESENTATIVE</u>**

To:   Muck Holdings, LLC, by and through its counsel of record, Brent R. McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND & KNIGHT LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

1

004895

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative or representatives Of Muck Holdings, LLC ("Muck") or other consenting person designated by Muck, to testify concerning the matters specified in Exhibit "A". This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **3:00 p.m.** on **Thursday, June 1, 2023** and continuing day after day until completed. Muck is instructed to designate a person or persons authorized to testify on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule of Civil Procedure 30(b)(6).

Please take further notice that Muck is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Muck concerning the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit "A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

004896

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions.  The deposition will be videotaped.

Dated:  May 23, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:   /s/Sawnie A. McEntire
       Sawnie A. McEntire
       State Bar No. 13590100
       smcentire@pmmlaw.com
       1700 Pacific Avenue, Suite 4400
       Dallas, Texas 75201
       Telephone: (214) 237-4300
       Facsimile: (214) 237-4340

       Roger L. McCleary
       State Bar No. 13393700
       rmccleary@pmmlaw.com
       One Riverway, Suite 1800
       Houston, Texas 77056
       Telephone: (713) 960-7315
       Facsimile: (713) 960-7347

       *Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ Sawnie A. McEntire
Sawnie A. McEntire

3

004897

## EXHIBIT "A"

### TO NOTICE OF DEPOSITION OF MUCK HOLDINGS, LLC

For purposes of the attached, the following rules and definitions shall apply.

### RULES OF CONSTRUCTION

1. The terms "all" and "each" shall be construed as all and each.

2. The terms "all" and "any" shall be construed as all and any.

3. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. The use of the singular form of any word includes the plural and vice versa.

### DEFINITIONS

1. "You," "Your," and/or "Muck" refer to Muck Holdings, LLC, and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Farallon Capital Management, L.L.C. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Muck is a general partner or owns an entities' general partner, or anyone else acting on Muck's behalf, now or at any time relevant to the response.

2. "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

3. "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

4

4. "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

5. "Grosvenor" refers to Grosvenor Capital Management, L.P.

6. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

7. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

8. "Jessup" refers to Jessup Holdings LLC.

9. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

17. "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18. "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19. "Seery" refers to James P. Seery, Jr.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30. "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with,

6

004900

advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt.. 3760).

33.  "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means  August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35.  "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position.  When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business.  When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it.  When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication.  When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the

004901

style of the case.  When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense.  It includes reference to both facts and applicable principles.  This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium.*

004902

*Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents. The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

004903

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Muck to testify on its behalf is (are) requested to

testify concerning the following Topic Categories:

1.    The factual background and circumstances relating to the subject matter of the
Proposed Adversary Complaint.

2.    The alleged factual background and circumstances regarding the evidence and
allegations supporting Highland Capital Management, L.P., Highland Claimant Trust,
and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified
Adversary Proceeding (Dkt. 3783).

3.    The alleged factual background and circumstances regarding evidence and
allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for
Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.    Communications between Muck and any of the following entities or persons
relating to any of the Claims:

        a.    Any member of the UCC;

        b.    HCM;

        c.    Grosvenor;

        d.    Muck;

        e.    Any member of the Oversight Board;

        f.    Seery;

        g.    Stonehill or Jessup;

        h.    Any of the Settling Parties;

        i.    Dondero; and

        j.    Any fund managed by and/or affiliated with Muck that invested any funds
          in connection with the purchase of any of the Claims.

004904

5.      The sources of funds used by Muck and/or Farallon to acquire any of the Claims.

6.      The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Muck and/or Farallon and the subsequent assignment of such Claims to Muck.

7.      All communications between Muck and Seery related to the Proposed Adversary Complaint.

8.      Representations and/or warranties made by either Farallon, Muck, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims.

9.      Information known to Muck regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Muck and Seery relating to MGM.

10.      Appointment of Muck to the Oversight Board.

11.      Farallon's or Muck's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Farallon or Muck or Grovesner.

12.      Communications between Farallon and/or Muck, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.      Actual compensation paid to Seery since the Effective Date of the Plan.

14.      All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.      All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

16.     Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Muck and/or Farallon and all communications regarding any such offer(s).

17.     Any offer by Muck and/or Farallon to sell any of the Claims or any part thereof.

18.     Any effort by either Muck and/or Farallon to sell or market any of the Claims or any portion thereof.

19.     Any due diligence conducted by either Muck or Farallon related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.     Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.     The substance, types, and sources of information Muck considered in making any decision to invest in any of the Claims on behalf of itself, Farallon, and/or any fund with which Farallon is affiliated or which Farallon manages.

22.     All communications reflecting due diligence information provided by any HCM Party to Muck regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.     The extent to which Farallon was involved in creating and organizing Muck in connection with the acquisition of any of the Claims.

24.     The organizational structure of Muck (including identification of all members, managing members), as well as the purpose for creating Muck, including, but not limited to, regarding holding title to any of the Claims.

25.      All base fees and performance fees which Muck has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same.

004906

26.     All monies and/or distributions received by Muck and/or Farallon in connection with any of the Claims and any distributions made by Muck to any members of Muck relating to such Claims.

27.     Whether Farallon is a co-investor in any fund which holds an interest in Muck or otherwise holds a direct interest in Muck and all documents reflecting the same.

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004907

## EXHIBIT "A-2"
## <u>DOCUMENT REQUESTS</u>

1.      Any and all documents created by, prepared for, or received by Muck concerning any of the following topics:

a.  The purchase of the Claims by Muck and/or Farallon;

b.  Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

c.  Negotiations regarding the purchase of the Claims;

d.  Valuations of the Claims or the assets underlying the Claims;

e.  Promises and representations made in connection with the purchase of the Claims;

f.  Any documents considered or prepared as part of any due diligence, including, but not limited to, any investment memoranda undertaken or considered by Farallon or Muck prior to acquiring the Claims;

g.  Consideration for the transfer of the Claims;

h.  Value of HCM's Estate;

i.  Projected future value of HCM's Estate;

j.  Past distributions and projected distributions from the Highland Claimant Trust;

k.  Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

l.  Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

m. Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

14

2.      Any and all communications between Muck, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Stonehill, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund affiliated with or managed by Muck concerning any of the following topics:

    a.   Purchase or sale of the Claims;

    b.   Negotiation of any agreement regarding the purchase or sale of the Claims;

    c.   Valuation of the Claims or the assets underlying the Claims;

    d.   Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

    e.   Any due diligence undertaken by Farallon or Muck prior to acquiring the Claims;

    f.   Consideration for the purchase of the Claims;

    g.   Value of HCM's Estate;

    h.   Projected future value of HCM's Estate;

    i.   Past distributions and projected distributions from HCM's Estate;

    j.   Compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.   Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.   Future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

    m.   Decisions made by the Oversight Board.

3.      All correspondence and/or other documents by or between Farallon and/or Muck and any investors in any fund regarding the Claims and/or the acquisition or

15

004909

transfer of the Claims.

4.      Any and all documents reflecting the sources of funding used by Muck to acquire any of the Claims.

5.      Organizational and formation documents relating to Muck including, but not limited to, Muck's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.      Company resolutions prepared by or on behalf of Muck approving the acquisition of any of the Claims.

7.      Any and all documents reflecting any internal or external audits regarding Muck's NAV.

8.      Agreements between Farallon and Muck regarding management, advisory, or other services provided to Muck by Farallon.

9.       Any documents reflecting any communications with James Dondero.

10.      Annual fund audits relating to Muck.

11.       Muck's NAV Statements.

12.      Documents reflecting the fees or other compensation earned by Muck in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.      12/6/21 Memorandum Agreement.

14.      5/9/23 Letter from the Texas State Securities Board to Highland.

15.      Minutes of Meetings of the Claimant Trust Oversight Board.

16.      All texts/communications with any member of the Oversight Board regarding Seery's compensation and distributions.

17.      All text messages or other communications with any of the other Claims Purchasers.

004910

18.     Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Muck and/or Farallon and/or efforts to market any interests held by either Muck and/or Farallon.

19.     Any document retention policy or protocol or Litigation Hold Requests.

004911

# Exhibit E

004912

Sawnie A. McEntire

State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Petitioner Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF ORAL AND
VIDEOTAPED RULE 30(b)(6) DEPOSITION OF JESSUP HOLDINGS LLC'S
<u>CORPORATE REPRESENTATIVE</u>**

To:   Jessup Holdings LLC, by and through its counsel of record, Brent R.
McIlwain, David C. Shulte, and Christopher Bailey, HOLLAND & KNIGHT
LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201.

1

004913

Pursuant to Federal Rule of Civil Procedure 30(b)(6), as adopted by the Federal Rules of Bankruptcy Procedure, Hunter Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative or representatives of Jessup Holdings LLC ("Jessup") or other consenting person designated by Jessup, to testify concerning the matters specified in Exhibit "A".  This deposition and document request relates to HMIT's Motion for Leave to File Adversary Complaint (Dkt. 3699) and related Supplement (Dkt. 3760) ("Motion for Leave").

The deposition will take place at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location) beginning at **3:00 p.m.** on **Friday, June 2, 2023** and continuing day after day until completed.  Jessup is instructed to designate a person or persons authorized to testify on its behalf concerning the issues specified in Exhibit "A", as required by Federal Rule of Civil Procedure 30(b)(6).

Please take further notice that Jessup is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Jessup concerning the topics identified on Exhibit "A-1", and to produce the documents described in Exhibit "A-2", attached hereto. The documents to be produced as described in Exhibit "A-2" shall be produced electronically to counsel for HMIT, twenty-four (24) hours prior to the deposition.

004914

The deposition shall be conducted before a certified court reporter or other individual authorized by law to administer oaths and take depositions. The deposition will be videotaped.

Dated: May 23, 2023            Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:   _/s/Sawnie A. McEntire_
      Sawnie A. McEntire
      State Bar No. 13590100
      smcentire@pmmlaw.com
      1700 Pacific Avenue, Suite 4400
      Dallas, Texas 75201
      Telephone: (214) 237-4300
      Facsimile: (214) 237-4340

      Roger L. McCleary
      State Bar No. 13393700
      rmccleary@pmmlaw.com
      One Riverway, Suite 1800
      Houston, Texas 77056
      Telephone: (713) 960-7315
      Facsimile: (713) 960-7347

      **_Attorneys for Hunter Mountain_**
      **_Investment Trust_**

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2023, a true and correct copy of the foregoing instrument was served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

      _/s/ Sawnie A. McEntire_
      Sawnie A. McEntire

3

004915

## EXHIBIT "A"

### TO NOTICE OF DEPOSITION OF JESSUP HOLDINGS, LLC

For purposes of the attached, the following rules and definitions shall apply.

### RULES OF CONSTRUCTION

1.      The terms "all" and "each" shall be construed as all and each.

2.      The terms "all" and "any" shall be construed as all and any.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      The use of the singular form of any word includes the plural and vice versa.

### DEFINITIONS

1.   "You," "Your," and/or "Jessup" refer to Jessup Holdings LLC, and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Stonehill Capital Management LLC. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Jessup is a general partner or owns an entities' general partner, or anyone else acting on Stonehill's behalf, now or at any time relevant to the response.

2.   "Farallon" means Farallon Capital Management, L.L.C., including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Farallon, including any attorney, financial advisor, or other representative.

3.   "Stonehill" means Stonehill Capital Management LLC, including its partners, directors, agents, servants, employees, and any other persons consulting with, advising, acting or purporting to act on behalf of Stonehill, including any attorney, financial advisor, or other representative.

4

4. "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

5. "Grosvenor" refers to Grosvenor Capital Management, L.P.

6. "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

7. "HCM" refers to debtor Highland Capital Management, L.P. and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Seery, and the Reorganized Debtor. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which HCM is a general partner or owns an entities' general partner, or anyone else acting on HCM's behalf, now or at any time relevant to the response.

8. "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

9. "Muck" shall refer to Muck Holdings, LLC.

10. "NAV" means net asset value.

11. "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

12. "Claimant Trust" includes the Highland Claimant Trust as identified in Bankruptcy Case Dkt. 2801 and the Plan.

13. "UCC" includes all official members of the UCC and for purposes of this Motion for Leave, Sidley Austin LLP.

14. "ROI" means return on investment.

15. "Respondents" means Seery, Muck, Jessup, Farallon and Stonehill.

5

16. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

17. "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and supplemented.

18. "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

19. "Seery" refers to James P. Seery, Jr.

20. "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

21. "Stonehill" refers to Stonehill Capital Management, LLC.

22. "Strand" refers to Strand Advisors, Inc.

23. "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

24. "Claims Purchasers" includes Farallon, Stonehill, Muck and Jessup.

25. "Claims Purchases" includes the Claims purchased by Farallon and Stonehill through Muck and Jessup as described in the Proposed Adversary Complaint.

26. "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

27. "Proposed Defendants" refers to, collectively, Seery, Muck, Jessup, Farallon, and Stonehill.

28. "Proposed Plaintiffs" refers to, collectively, HMIT in its individual capacity and in a derivative capacity on behalf of the Reorganized Debtor, Highland Capital Management, L.P., the Highland Claimant Trust and the Litigation Sub-Trust.

29. "Dondero" means James Dondero.

30. "HMIT" shall mean Hunter Mountain Investment Trust including its partners, directors, agents, servants, employees, and any other persons consulting with,

004918

advising, acting or purporting to act on behalf of HMIT, including any attorney, financial advisor, or other representative.

31. "Highland Bankruptcy" or "Bankruptcy Case" means the above-captioned matter styled: *In re Highland Capital Management, L.P.*, Cause No. 19-34054 in the United States Bankruptcy Court of the Northern District of Texas.

32. "Proposed Adversary Complaint" is the proposed adversary complaint which is Exhibit 1-A to HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Complaint (Dkt. 3760).

33. "Estate" means HCM's bankruptcy estate.

34. "Effective Date" of the Plan means August 11, 2021, which is the Effective Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., and pursuant to the Plan and the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., Docket No. 2700, in bankruptcy proceedings of Highland Capital Management, L.P. in the Bankruptcy Court for the Norther District of Texas, Dallas Division (Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

35. "Communications" means every form of interchange, exchange or transmission of information, thought or opinion, and shall include, without limitation, all verbal Communications (whether transmitted face to face or by media such as intercoms, telephones, electronic mail, television or radio), all written or graphic Communications of any kind, and all statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia.

36. "Identify or identity" when used in reference to a natural person means his or her full legal name, present or last known address, employer, and present or last known job title or position. When used in reference to a corporation or other legal entity, the term "identify or identity" means to give its name, and the address of its principal place of business. When used in reference to a document, "identify" means the name and date of the document and the identity of the person who prepared it and who signed it. When used for a communication, "identify" means to give the date, time, method of communication, persons involved, and substance of the communication. When used for deposition or other sworn testimony, "identify" means to give the witness's name, the date of the testimony and the

004919

style of the case. When used for any other purpose, the common dictionary meaning of "identify or identity" applies.

37. The terms "pertaining to" or "relating to" means concerning, including, evidencing, mentioning, or referring, directly or indirectly, to the specified subject matter or any aspect or portion thereof.

38. The term "information" as used herein should be construed in the broad sense. It includes reference to both facts and applicable principles. This word should not be construed to be limited by any method of acquisition or compilation and, therefore, includes oral information as well as documents.

39. The words "relate", "relating", "refer", "referring" refer to and shall include documents concerning, containing, showing, relating, mentioning, referring or pertaining in any way, directly or indirectly to, or in legal, logical or factual way connected with, a discovery request, and includes Documents underlying, supporting, nor or previously attached or appended to, or used in the preparation of any document called for by such request.

40. The term "document" shall mean "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure and includes any medium upon which data, intelligence or information can be ascertained that is within the possession, custody, or control of a person or entity or of its agents, employees, representatives (including, without limitation, attorneys, consultants, and accountants), or other person acting or purporting to act for or on behalf of or in concert with that person or entity, including, but not limited to contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summary of records of personal conversations or interview, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports of summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising magnet tapes, computer tapes, disks and cards, printouts and all other written, printed, stenographic, or sound reproductions, however produced or reproduced, and all drafts and copies of all of the foregoing. Electronically Stored Information or ESI. The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium.*

004920

*Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI.*

41. "Drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not the draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final documents. The term "copies" means each and every copy of any documents that is not identify in every respect with the document being produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, or where the original is not in your possession, custody or control.

42. "Material" is used in its broadest sense and means any tangible thing.

9

## EXHIBIT "A-1" – DEPOSITION TOPICS

The witness(es) designated by Jessup to testify on its behalf is (are) requested to

testify concerning the following Topic Categories:

1.      The factual background and circumstances relating to the subject matter of the
Proposed Adversary Complaint;

2.      The alleged factual background and circumstances regarding the evidence and
allegations supporting Highland Capital Management, L.P., Highland Claimant Trust,
and James P. Seery's Joint Opposition to HMIT's Motion for Leave to file Verified
Adversary Proceeding (Dkt. 3783);

3.      The alleged factual background and circumstances regarding evidence and
allegations supporting the Claim Purchasers' Objection to HMIT's Emergency Motion for
Leave to File Verified Adversary Proceeding and Supplement thereto (Dkt. 3780).

4.      Communications between Jessup and any of the following entities or persons
relating to any of the Claims:

> a.   Any member of the UCC;
>
> b.   HCM;
>
> c.   Grosvenor;
>
> d.   Stonehill;
>
> e.   Any member of the Oversight Board;
>
> f.   Seery;
>
> g.   Farallon or Muck;
>
> h.   Any of the Settling Parties;
>
> i.   Dondero; and
>
> j.   Any fund managed by and/or affiliated with Jessup that invested any funds
>      in connection with the purchase of any of the Claims.

004922

5.      The sources of funds used by Jessup and/or Stonehill to acquire any of the Claims;

6.      The agreements, including all terms and conditions relating to or governing the purchase of any of the Claims by either Jessup and/or Stonehill and the subsequent assignment of such Claims to Jessup;

7.      All communications between Jessup and Seery related to the Proposed Adversary Complaint;

8.      Representations and/or warranties made by either Stonehill, Jessup, Seery, and/or any of the Settling Parties in connection with any agreements relating to the purchase, sale, transfer and/or assignment of any of the Claims;

9.      Information known to Jessup regarding the sale of MGM prior to the execution of any agreements to purchase any of the Claims, as well as all communications between Jessup and Seery relating to MGM;

10.     Appointment of Jessup to the Oversight Board;

11.     Stonehill's or Jessup's historical relationships and business dealings with Seery and Grovesnor, including any prior business dealings between Seery and any person who is currently an officer, principle, director and/or member of Stonehill or Grovesner;

12.     Communications between Stonehill and/or Jessup, on the one hand, and Seery, on the other hand, related to Seery's compensation as CEO and Trustee of the Highland Claimant Trust following the Effective Date of the Plan.

13.     Actual compensation paid to Seery since the Effective Date of the Plan.

14.     All agreements and other communications between Seery and any member of the Oversight Board regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and all the negotiations leading up to such agreements.

15.     All communications between any of the Respondents related to indemnification or indemnity of any other Respondent in connection with the Claims set forth in the Proposed Adversary Complaint.

004923

16.      Any offers from any third-party to purchase any of the Claims (or any portion thereof) from Jessup and/or Stonehill and all communications regarding any such offer(s).

17.      Any offer by Jessup and/or Stonehill to sell any of the Claims or any part thereof.

18.      Any effort by either Jessup and/or Stonehill to sell or market any of the Claims or any portion thereof.

19.      Any due diligence conducted by either Jessup or Stonehill related to the Claims Purchases including, without limitation, all accounting analyses, investment analyses, valuations, ROI analyses, projections, forecasts, cost, loss, risk, and benefit calculations, investment adviser analyses, any internal or external NAV valuations and/or fiduciary analysis.

20.      Identity of any persons contacted and documents reviewed for purposes of any due diligence related to the Claims Purchases.

21.      The substance, types, and sources of information Jessup considered in making any decision to invest in any of the Claims on behalf of itself, Jessup, and/or any fund with which Jessup is affiliated or which Jessup manages;

22.      All communications reflecting due diligence information provided by any HCM Party to Jessup regarding the assets or liabilities of the HCM Estate, the monetization of any assets, projected timing of any such monetization, and distributions relating to the Claims, and any other financial information related to the Claims.

23.      The extent to which Stonehill was involved in creating and organizing Jessup in connection with the acquisition of any of the Claims;

24.      The organizational structure of Jessup (including identification of all members, managing members), as well as the purpose for creating Jessup, including, but not limited to, regarding holding title to any of the Claims;

25.      All base fees and performance fees which Jessup has received or may receive in connection with distributions relating to the Claims and all documents relating to, regarding, or reflecting the same;

004924

26.     All monies and/or distributions received by Jessup and/or Stonehill in connection with any of the Claims and any distributions made by Jessup to any members of Jessup relating to such Claims;

27.     Whether Stonehill is a co-investor in any fund which holds an interest in Jessup or otherwise holds a direct interest in Jessup and all documents reflecting the same;

28.     Any communications related to any litigation hold or document retention protocol related to the facts and claims made the basis of the Proposed Adversary Complaint.

29.     Identify any document retention policy or protocol.

30.     The documents produced in response to the requests in this Notice.

004925

## EXHIBIT "A-2"
## DOCUMENT REQUESTS

1.      Any and all documents created by, prepared for, or received by Jessup concerning any of the following topics:

    a.   The purchase of the Claims by Jessup and/or Stonehill;

    b.   Any purchase agreement relating to the acquisition of the Claims, including any draft agreements, final agreements, letters of intent, and term sheets;

    c.   Negotiations regarding the purchase of the Claims;

    d.   Valuations of the Claims or the assets underlying the Claims;

    e.   Promises and representations made in connection with the purchase of the Claims;

    f.   Any documents, including, but not limited to, any investment memoranda considered or prepared as part of any due diligence undertaken or considered by Stonehill or Jessup prior to acquiring the Claims;

    g.   Consideration for the transfer of the Claims;

    h.   Value of HCM's Estate;

    i.   Projected future value of HCM's Estate;

    j.   Past distributions and projected distributions from the Highland Claimant Trust;

    k.   Compensation earned by or paid to Seery in connection with or relating to his role as Trustee of the Highland Claimant Trust;

    l.   Compensation earned by or paid to Seery for his roles as CEO, Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    m. Any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

14

004926

2.      Any and all communications between Jessup, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Farallon, (vi) Grosvenor, (vii) the Oversight Board, (viii) Dondero and (ix) any fund affiliated with or managed by Jessup concerning any of the following topics:

   a.   Purchase or sale of the Claims;

   b.   Negotiation of any agreement regarding the purchase or sale of the Claims;

   c.   Valuation of the Claims or the assets underlying the Claims;

   d.   Promises and representations made in connection with the purchase, sale and/or transfer of the Claims;

   e.   Any due diligence undertaken by Stonehill or Jessup prior to acquiring the Claims;

   f.   Consideration for the purchase of the Claims;

   g.   Value of HCM's Estate;

   h.   Projected future value of HCM's Estate;

   i.   Past distributions and projected distributions from HCM's Estate;

   j.   Compensation earned by or paid to Seery in connection with or relating to the Claims;

   k.   Compensation earned by or paid to Seery for his roles as CEO and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

   l.   Future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

   m.   Decisions by the Oversight Board.

3.      All correspondence and/or other documents by or between Stonehill and/or Jessup and any investors in any fund regarding the Claims and/or the acquisition or

004927

transfer of the Claims.

4.      Any and all documents reflecting the sources of funding used by Jessup to acquire any of the Claims.

5.      Organizational and formation documents relating to Jessup including, but not limited to, Jessup's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6.      Company resolutions prepared by or on behalf of Jessup approving the acquisition of any of the Claims.

7.      Any and all documents reflecting any internal or external audits regarding Jessup's NAV.

8.      Agreements between Stonehill and Jessup regarding management, advisory, or other services provided to Jessup by Stonehill.

9.      Any documents reflecting any communications with James Dondero.

10.     Annual fund audits relating to Jessup.

11.     Jessup's NAV Statements.

12.     Documents reflecting the fees or other compensation earned by Stonehill in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

13.     12/6/21 Memorandum Agreement.

14.     5/9/23 Letter from the Texas State Securities Board to Highland.

15.     Minutes of Meetings of the Claimant Trust Oversight Board.

16.     All texts/communications with any member of the Oversight Board regarding Seery's compensation and distributions.

17.     All text messages or other communications with any of the other Claims Purchasers.

16

004928

18. Any documents reflecting any offer to purchase any of the Claims (and any portion thereof) from either Jessup and/or Stonehill and/or efforts to market any interests held by either Jessup and/or Stonehill.

19. Any document retention policy or protocol or Litigation Hold Requests.

004929