**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| **Hunter Mountain Investment Trust** | | |
| Appellant | § | |
| vs. | § | |
| **Highland Capital Management, L.P, et al** | § | **3:23-CV-2071-E** |
| Appellee | § | |

  **[3904] Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders" Denying Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding. Entered on 8/25/2023.**

# Volume 33

# APPELLANT RECORD

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Reorganized Debtor. | § | *INDEX* |

### APPELLANT HUNTER MOUNTAIN INVESTMENT TRUST'S
### SECOND SUPPLEMENTAL STATEMENT OF THE ISSUES AND
### DESIGNATION OF ITEMS FOR INCLUSION IN THE APPELLATE RECORD

COMES NOW Appellant/Movant Hunter Mountain Investment Trust, both in its
individual capacity and derivatively on behalf of the Reorganized Debtor, Highland Capital
Management, L.P., and the Highland Claimant Trust,[1] (collectively, "Appellant" or "HMIT"), and
files this Second Supplemental[2] Statement of the Issues and Designation of Items for Inclusion in
the Appellate Record pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1):

### I.
### STATEMENT OF THE ISSUES

A. Did the bankruptcy court err in determining that the "colorable" claim analysis allowed the
court to consider evidence and other non-pleading materials including, but not limited to,
the court's reasoning that:

   1. the colorability analysis is stricter than a non-evidentiary, Rule 12(b)(6)-type
   analysis;

   2. the colorability analysis is "akin to the standards applied under the … *Barton*
   doctrine";

   3. the colorability analysis requires a "hybrid" of the *Barton* doctrine and "what courts
   have applied when considering motions to file suit when a vexatious litigant bar
   order is in place"; and/or,

---

[1] And in all capacities and alternative derivative capacities asserted in HMIT's Emergency Motion for Leave to File
Verified Adversary Proceeding [Dkt. Nos. 3699, 3815, and 3816] ("Emergency Motion"), the supplement to the
Emergency Motion [Dkt. No. 3760], and the draft Complaint attached to the same [Dkt. No. 3760-1].

[2] Appellant files this Second Supplement pursuant to the Clerk's request at Docket #3949 and correspondence on
10/23/2023.

    4.  "[t]here may be mixed questions of fact and law implicated by the Motion for Leave"?

[*See* Dkt. Nos. 3781, 3790, 3903-04].

B.    Did the bankruptcy court err in determining that Appellant lacked constitutional or prudential standing to bring its claims in its individual and derivative capacities?

[*See* Dkt. Nos. 3903-04].

C.    Did the bankruptcy court err in alternatively determining that, even under a non-evidentiary, Rule 12(b)(6)-type analysis, Appellant did not assert colorable claims including, but not limited to, determining that:

    1.  Appellant's allegations are conclusory, speculative, or constitute "legal conclusions";

    2.  Appellant's claims or allegations are not "plausible";

    3.  Appellant's allegations pertaining to a *quid pro quo* are "pure speculation";

    4.  Proposed Defendant James P. Seery ("Seery") owed no duty to Appellant in any capacity as a matter of law;

    5.  Appellant failed "to allege facts in the Proposed Complaint that would support a reasonable inference that Seery breached his fiduciary duty to HMIT or the estate as a result of bad faith, self-interest, or other intentional misconduct rising to the level of a breach of the duty of loyalty";

    6.  Appellant's allegations pertaining to its aiding and abetting and conspiracy claims are speculative and not plausible;

    7.  The remedies of equitable disallowance and equitable subordination are not remedies "available" to Appellant as a matter of law;

    8.  Appellant's unjust enrichment claim is invalid as a matter of law because "Seery's compensation is governed by express agreements";

    9.  Appellant is not entitled to declaratory relief because it has no colorable claims; and/or

    10.  Appellant cannot recover punitive damages for its breach of fiduciary duty claim?

[*See* Dkt. Nos. 3903-04].

D.  Alternatively, even if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the court violate Appellant's due process rights by denying Appellant its requested discovery?

[*See* Dkt. Nos. 3800, 3853, 3903-04, June 8, 2023 Hearing].

E.  Alternatively, did the bankruptcy court err by denying Appellant's requested discovery including, but not limited to:

1.  ordering that Appellant could not request or obtain any discovery other than a deposition of Seery and James D. Dondero; and/or

2.  determining that state court "Rule 202" proceedings supported the denial of discovery?

[*See* Dkt. Nos. 3800 & June 8, 2023 Hearing; *see also* Dkt. Nos. 3903-04].

F.  Alternatively, did the bankruptcy court err by denying Appellant's alternative request for a continuance to obtain the requested discovery?

G.  Alternatively, did the bankruptcy court err by excluding Appellant's evidence, or admitting the same for only limited purposes, offered at the June 8, 2023 Hearing?

H.  Alternatively, did the bankruptcy court err by overruling Appellant's objections to Appellees' evidence offered at the June 8, 2023 Hearing?

I.  Alternatively, did the bankruptcy court err by excluding Appellant's experts' testimony?

[*See* Dkt. No. 3853; *see also* Dkt. Nos. 3903-04].

J.  Alternatively, did the bankruptcy court err by striking Appellant's proffer of its excluded experts' testimony from the record?

[*See* Dkt. No. 3869].

K.  Alternatively, if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the bankruptcy court err in determining that Appellant had not asserted colorable claims under that "hybrid" analysis including, but not limited to, its findings that:

1.  there is no evidence to support that Seery shared material non-public information with the Claims Purchasers;

2.  there is no evidence to support the alleged quid pro quo;

3.  the material shared was *public* information; and/or

4.  the Claims Purchasers had sufficient and lawful reasons to pay the amounts paid

for the purchased claims.

[*See* Dkt. Nos. 3903-04].

L.   Did the bankruptcy court err in finding that Appellant is controlled by Dondero, and, as such, Appellant "cannot show that it is pursuing the Proposed Claims for a proper purpose"?

M.   Alternatively, does sufficient evidence support the bankruptcy court's evidentiary findings made pursuant to its "hybrid" *Barton* analysis?

N.   Did the bankruptcy court err in denying an expedited hearing on Appellant's Motion for Leave? [*See* Dkt. 3713].

O.   Does the bankruptcy court's use of a new "colorability" standard to determine if claims by non-debtors against other non-debtors may proceed violate *Stern v. Marshall* and its progeny?

P.   Did the bankruptcy court err in denying Appellant's Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or Alternatively, for New Trial under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 including, but not limited to by:

   1.   declining to consider disclosures that demonstrated that Appellant is "in the money"—an issue pertinent to the court's erroneous standing decisions; and

   2.   concluding that the disclosures failed to reinforce Appellant's standing to pursue the claims presented?

[Dkt. 3936].

## II.
## DESIGNATION OF ITEMS FOR INCLUSION
## IN THE APPELLATE RECORD

*Vol. 1*

1.  **Notice of Appeal**

    *000001*  a.  Notice of Appeal [**Dkt. 3906**];

    *000276*  b.  Amended Notice of Appeal [**Dkt. 3908**]; and

    *000551*  c.  Second Amended Notice of Appeal [**Dkt. 3945**]

2.  **The judgment, order, or decree appealed from:**

    a.  Memorandum Opinion and Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders": Denying Hunter Mountain Investment

---

000835
000940

Trust's Emergency Motion for Leave to File Adversary Proceedings **[Dkts. 3903 & 3904]**; and

001045

**b.** Order Denying Motion of Hunter Mountain Investment Trust Seeking Relief Pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 **[Dkt. 3936]**.

**3.** Docket sheet.

001049

a. Bankruptcy Case No. 19-34054

**4.** Other Items to be included:

a. HMIT hereby designates the following items in the record on appeal from Cause No. 19-34054-sgj11:

Vol. 2

| FILE DATE | DOCKET NO. (INCLUDING ALL ATTACHMENTS AND APPENDICES) | DESCRIPTION |
|---|---|---|
| 01/22/2021 | 1808 | Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) |
| 02/22/2021 | 1943 | Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief |
| 09/09/2022 | 3503 | Motion to Conform Plan filed by Highland Capital Management, L.P. |
| 02/27/203 | 3671 | Memorandum Opinion and Order on Reorganized Debtor's Motion to Conform Plan |
| 03/28/2023 | 3699 (3699-1 — 3699-5) | HMIT Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| 03/28/2023 | 3700 (3700-1) | HMIT Motion for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/30/2023 | 3704 | Farallon, Stonehill, Jessup and Muck Objection to Motion for Expedited Hearing |
| 03/30/2023 | 3705 | HMIT Amended Certificate of Conference |

001594
001660
001821
001830

Vol. 3
001849
Thru Vol 4

Vol 4
002236
002243
002248

*Vol. 5*
*002251*
*002254*
*002262*
*002341*
*002355*
*002358*
*002391*
*002398*
*002400*
*Vol. 8*
*002826*
*Vol. 9*
*003257*
*003260*
*003270*
*003278*

| 03/30/2023 | 3706 | HMIT Amended Certificate of Conference |
|---|---|---|
| 03/30/2023 | 3707 | Highland's Response in Opposition to Emergency Motion for Leave |
| 03/30/2023 | 3708 (3708-1 — 3708-8) | Declaration of John Morris in Support of the Highland Parties' Objection to Hunter Mountain Investment Trust's Opposed Application for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/31/2023 | 3712 | HMIT Reply in Support of Application for Expedited Hearing |
| 03/31/2023 | 3713 | Order Denying Motion for Expedited Hearing |
| 04/04/2023 | 3718 (3718-1 — 3718-4) | HMIT Motion for Leave to File Appeal |
| 04/04/2023 | 3719 (3719-1) | HMIT Motion for Expedited Hearing on Motion for Leave to File Appeal |
| 04/05/2023 | 3720 | Order Denying HMIT's Opposed Motion for Expedited Hearing |
| 04/05/2023 | 3721 (3721-1 — 3721-2) *Thru Vol. 7* | HMIT Notice of Appeal |
| 04/06/2023 | 3726 (3726-1) *Thru Vol. 9* | Certificate of Mailing regarding HMIT Notice of Appeal |
| 04/07/2023 | 3731 | Notice of Docketing Transmittal of Notice of Appeal |
| 04/13/2023 | 3738 (3738-1) | Highland's Opposed Emergency Motion to Modify and Fix a Briefing Schedule and Set a Hearing Date with Respect to HMIT's Emergency Motion for Leave |
| 04/13/2023 | 3739 | Highland's Motion for Expedited Hearing |
| 04/13/2023 | 3740 | Joinder to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date With Respect to Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon |

| | | | Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
|---|---|---|---|
| *Vol. 10* 003281 | 04/13/2023 | 3741 | Notice of Hearing for 04/24/2023 at 1:30 PM |
| 003286 | 04/13/2023 | 3742 | Amended Notice of Hearing for 04/24/2023 at 1:30 PM |
| 003291 | 04/13/2023 | 3745 | Notice of Appearance and Request for Notice by Omar Jesus Alaniz filed by James P. Seery Jr. |
| 003294 | 04/15/2023 | 3747 | Joinder by James P. Seery Jr. to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date with Respect to Hunter Mountain Investment Trusts Emergency Motion for Leave to File Verified Adversary Proceeding |
| 003296 | 04/17/2023 | 3748 | HMIT's Response and Reservation of Rights |
| 003299 | 04/19/2023 | 3751 | Notice of Status Conference |
| 003302 | 04/21/2023 | 3758 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability" |
| 003311 | 04/21/2023 | 3759 | HMIT's Notice of Rescheduling Hearing |
| 003314 | 04/21/2023 | 3761 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability"[3] |
| 003323 | 04/23/2023 | 3760 (3760-1) | HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| 003368 | 04/25/2023 | 3765 | Transcript of Hearing held on 04/24/2023 |
| 003430 | 05/11/2023 | 3780 | Objection to Hunter Mountain Investment Trust's (i) Emergency Motion for Leave to File Verified Adversary Proceeding; and (ii) Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck |

---

[3] A duplicate of Doc 3758.

| | | | |
|---|---|---|---|
| | | | Holdings LLC, Stonehill Capital Management LLC |
| | 05/11/2023 | 3781 | Order Fixing Briefing Scheduling and Hearing Date with Respect to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding as Supplemented |
| | 05/11/2023 | 3783 | Highland and Seery's Joint Response to HMIT's Emergency Motion for Leave |
| | 05/11/2023 | 3784 (3784-1 — 3784-46) | Declaration of John Morris in Support of Highland Parties' Joint Response |
| | 05/18/2023 | 3785 | HMIT's Reply in Support of Emergency Motion for Leave to File Adversary Proceeding |
| | 05/22/2023 | 3787 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| | 05/24/2023 | 3788 (3788-1 — 3788-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| | 05/24/2023 | 3789 | HMIT's Application for Expedited Hearing |
| | 05/24/2023 | 3790 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| | 05/25/2023 | 3791 (3791-1 — 3791-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| | 05/25/2023 | 3792 | Order Setting Expedited Hearing |
| | 05/25/2023 | 3795 | Objection to Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

*Handwritten annotations in left margin:*
Vol. 10
003458
003463
Vol. 11
003537
Thru Vol. 16
Vol. 17
004665
004712
004714
004808
004813
004836
Vol. 18
004930
004931

*Vol. 18*
*0049 39.*

| 05/25/2023 | 3798 (3798-1) | Highland Parties' Joint Response in Opposition to HMIT's Emergency Motion for Expedited Discovery |
|---|---|---|
| 05/26/2023 | 3800 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| 05/28/2023 | 3801 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| 06/05/2023 | 3815 (3815-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| 06/05/2023 | 3816 (3816-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| 06/05/2023 | 3817 (3817-1 — 3817-5) | Highland Parties' Witness and Exhibit List with Respect to Evidentiary Hearing on June 8, 2023 |
| 06/05/2023 | 3818 (3818-1 — 3818-9) | HMIT's Witness and Exhibit List in Connection with its Emergency Motion for Leave to File Verified Adversary Proceeding, and Supplement |
| 06/07/2023 | 3820 | Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/07/2023 | 3821 (3821-1 — 3821-3) | Declaration in Support of Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/07/2023 | 3822 (3822-1) | HMIT's Unopposed Motion to File Exhibit Under Seal [WITHDRAWN] |
| 06/07/2023 | 3823 | Joinder to Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

*0049 59*
*0049 61*
*0049 84*
*0050 49*
*0051 14*
*Vol. 26*
*Thru Vol. 25*
*0066 08*
*Vol. 39*
*Thru Vol. 39*
*0092 73*
*0092 90*
*0094 16*
*0094 24*

*Vol. 40*

*009426*

*009436*

*009444*

*009445*

*009446*

*009456*

*009458*
*Vol. 42*  *Thru Vol. 41*
*009841*

*009901*

*009905*

*009908*

*009912*

| 06/07/2023 | 3824 | HMIT's Objections to the Highland Parties' Exhibit and Witness List |
|---|---|---|
| 06/08/2023 | 3828 | HMIT's Response to Highland Claimant Trust and James P. Seery, Jr.'s Joint Motion to Exclude Testimony and Documents of Experts Scott Van Meter and Steve Pully |
| 06/09/2023 | 3837 | Request for transcript regarding hearing held on 06/08/2023 |
| 06/12/2023 | 3838 | Court admitted exhibits on hearing June 8, 2023 (*See* Docket Entry Nos. 3817 & 3818) |
| 06/12/2023 | 3841 | Highland Parties' Reply in Further Support of their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/12/2023 | 3842 (3842-1) | Claim Purchasers' Joinder to Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery Jr.'s Reply in Further Support of Their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
| 06/13/2023 | 3843 | Transcript regarding Hearing Held 06/08/2023 |
| 06/13/2023 | 3844 | Transcript regarding Hearing Held 05/26/2023 |
| 06/13/2023 | 3845 | HMIT's Request for Oral Hearing or, Alternatively, a Schedule for Evidentiary Proffer |
| 06/13/2023 | 3846 | Response in Opposition to Hunter Mountain Investment Trust's Request for Oral Argument or, Alternatively, a Schedule for Evidentiary Proffer filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Creditor James P. Seery Jr. |
| 06/13/2023 | 3847 | HMIT's Reply to the Highland Parties' Response to Request for Oral Hearing |
| 06/16/2023 | 3853 | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |

*Vol. 42*

*009928*

*009944*

*010013*

*010023*

*010025*

*010029*

*010035*

*010047*

*010059*

*Vol. 43*

*010062*

| | | | |
|---|---|---|---|
| 06/16/2023 | 3854 | | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |
| 06/19/2023 | 3858 (3858-1 — 3858-2) | | Hunter Mountain Investment Trust's Evidentiary Proffer Pursuant to Rule 103(a)(2)[4] |
| 06/23/2023 | 3860 | | The Highland Parties' Objections to and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 06/23/2023 | 3861 | | Claim Purchasers' Joinder to the Highland Parties' Objections and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 07/05/2023 | 3869 | | Order Striking HMIT's Evidentiary Proffer Pursuant to Rule 103(a)(2) and Limiting Briefing |
| 07/06/2023 | 3872 | | Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust filed by Debtor Highland Capital Management, L.P. and the Highland Claimant Trust |
| 07/21/2023 | 3888 | | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by Highland Capital Management, L.P. |
| 07/21/2023 | 3889 | | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by the Highland Claimant Trust |
| 08/17/2023 | 3901 | | Withdrawal of HMIT's Unopposed Motion to File Exhibit Under Seal filed by Creditor Hunter Mountain Investment Trust |
| 09/08/2023 | 3905 (3905-1 — 3905-6) | | Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or, Alternatively, for New Trial Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 and Incorporated Relief Filed by Creditor Hunter Mountain Investment Trust |

---

[4] HMIT understands that the Court struck this proffer in docket entry 3869.  Because the proffer appears to remain on the record and to avoid any argument that HMIT has failed its burden to designate the record, HMIT designates this docket entry out of an abundance of caution.

Vol. 43
010135
010136

| 09/11/2023 | 3907 | Clerk's Correspondence regarding HMIT's Notice of Appeal |
| 09/22/2023 | 3928 | Notice Regarding Appeal and Pending Post-Judgment Motion filed by HMIT |

**B.**    **Exhibits.**

Further, the Parties submitted hearing exhibits. HMIT designates for inclusion in the record for appeal all the hearing exhibits submitted to the Court, which were all electronically filed and are in the Court's record and are a part of this Appellate Record. (Docs. 3817 and 3818). The following exhibits are submitted and included in the Court's record:

| **HMIT Exhibits**<br>**(Dkts. 3818, 3818-1, 3818-2, 3818-3, 3818-4, 3818-5. 3818-6, 3818-7, 3818-8, and 3818-9)** |
| HMIT Exhibits 1-4, 6-80 |
| **HCM Exhibits**<br>**(Dkts. 3817, 3817-1, 3817-2, 3817-3, 3817-4, 3817-5)** |
| HCM Exhibits 2-15, 25-34, 36, 38-42, 45-46, 51, 59-60, 100 |

Dated:  October 23, 2023                    Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY**
**PLLC**

By:  */s/ Sawnie. A. McEntire*
       Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served via ECF notification on October 23, 2023, on all parties receiving electronic notification.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 15 of 214   PageID 7613

172

1  contract is now no longer under your purview once the contract

2  has been assumed.  And so they shouldn't have to make a

3  colorable claim to you that a breach of the contract has

4  occurred.  That should be the determining factor for another

5  court.

6      That's, in essence, what *Craig's Store* says.  Your

7  jurisdiction and the jurisdiction of a bankruptcy court is

8  limited.  It's limited by *Stern vs. Marshall*.  It's limited by

9  your ability to render findings of fact and conclusions of law

10 versus render a final decision.  That decision has been made

11 not by us, it's been made by Congress and it's been made by

12 the United States Constitution.

13     THE COURT:  All right.  And I think we all agree with

14 you regarding the holding of *Craig's Stores* and some of the

15 other post-confirmation bankruptcy subject matter jurisdiction

16 holdings.  But Mr. Pomerantz is arguing that this gatekeeping

17 function is warranted by, among other things, you know, there

18 was a district court holding, *Baum v. Blue Moon*, or a Fifth

19 Circuit case, that upheld a district court having the ability

20 to impose pre-filing injunctions in the context of a vexatious

21 litigator.  So, you know, that's a strong analogy he makes to

22 what's sought here.  What is your response to that?

23     MR. DRAPER:  My response to that is a district court

24 can do that.  A district court has jurisdiction to make that

25 decision.  And quite frankly, a district court can sanction a

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-3 Exhibit 1ExhibitFiled 12/07/23 Page 16 of 214    PageID 7614

173

1  vexatious litigator under Rule 11.

2      So, in fact -- again, you have to bifurcate your power

3  versus the power that a district court has.  And that

4  gatekeeper provision is allowed by a district court because

5  they had authority over the case.  You may not have authority

6  over being the gatekeeper for a post-confirmation matter that

7  you had no jurisdiction over to start with.

8          THE COURT:  Okay.

9          MR. DRAPER:  That, that's the distinction between

10  here.  That's -- what's going on here is they are -- they are

11  mashing together a whole load of concepts under the vexatious

12  litigator and the anti-Dondero function that fundamentally

13  abrogate the distinction between what your jurisdiction is

14  pre-confirmation versus your jurisdiction post-confirmation.

15  And that --

16          THE COURT:  Do you think --

17          MR. DRAPER:  -- is sacrosanct.

18          THE COURT:  Do you think Judge Lynn got it wrong in

19  *Pilgrim's Pride*?  Do you think Judge Houser got it wrong in

20  *CHC*?  Or do you think this situation is different?

21          MR. DRAPER:  There are two parts to that.  I have

22  told Judge Lynn, since I have been working with him, that I

23  think *Pilgrim's Pride* is wrongfully decided.  However, having

24  said that, *Pilgrim's Pride* and those cases dealt with claims

25  against the -- the channeling injunction affected actions

1   during the bankruptcy.  It did not serve as a post-

2   jurisdictional grant of jurisdiction to the bankruptcy court.

3   It did not pose as an ability -- as a limitation on a post-

4   confirmation litigator or a post-effective date litigator to

5   address a wrong done to them by an independent director of a

6   general partner.

7        In a sense, Judge Lynn's determination, and Judge Houser,

8   is consistent somewhat with the Barton Doctrine.  Now, do I

9   agree that they're right?  No.  But I understand the decision

10  and I understand the context in which it was rendered and I

11  don't have a huge problem with it.

12       So, again, let's parse what we're trying to do here.

13  Number one, we are -- we have to bifurcate post-confirmation

14  jurisdiction or post-effective date jurisdiction and what you

15  can do as a post-effective date arbiter versus what you could

16  do pre-effective date and pre-effective date claims.  And

17  again, that's the problem with what's written here.  It is

18  designed one hundred percent to expand your post-effective

19  date jurisdiction through both the gatekeeper provision and

20  the jurisdictional grant that's here from your pre-effective

21  date capability, your pre-effective date jurisdiction, and

22  your pre-effective date ability to either curb a claim or not

23  to curb a claim.  And that, that's the issue.

24       And again, let's start talking about the independent

25  directors.  I recognize, again, that there's an order there.

008010

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 53-File 12/07/23 2 of 992 18 of 214   PageID 7616

175

1    But if Mr. Seery -- let's take Mr. Seery -- is acting as a

2    director of Strand but is also an accountant for the Debtor

3    and makes a mistake, he would be sued in his capacity as the

4    accountant for the Debtor, not as an independent director of

5    Strand.  That distinction needs to be made.

6         What we are doing here under this plan, and what's been

7    argued by Mr. Pomerantz, is too broad a brush.  It needs to be

8    cut back.  The Court needs to take a very hard look at what's

9    being presented here.

10        And again, the Court's order is very clear.  And this is

11   binding.  I recognize that.  But the protection they got was

12   serving as an independent director.  The protection they

13   didn't get was -- let's take Mr. Seery, if Mr. Seery was

14   serving as an accountant and blew a tax return.  Those are

15   distinctions that warrant analysis and warrant looking at

16   here.  And again, it is too broad a brush that's touted here,

17   and that is why this plan on its face is not confirmable with

18   respect to both the post-confirmation jurisdiction, the

19   gatekeeper provision, the exculpation provisions.

20        And so let me address a few other things, just to address

21   them.  Number one, the argument has been made with respect to

22   the creditors and the resolicitation issue and that creditors

23   could have come in looking, seen, followed the case, and

24   basically calculated and made the same calculation that the

25   Debtor made when they filed this and put forth the new plan

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-3 Filed 12/07/23   Page 19 of 214   PageID 7617

176

1    analysis versus liquidation analysis.  And then they've also

2    made the argument, well, nobody came and complained.  Well,

3    two parts to that.

4        Number one, as you know, a disclosure statement needs to

5    be on its face and should not require a creditor to go back in

6    and monitor the record -- and quite frankly, in this record,

7    there are thousands of pages -- and do the calculation

8    himself.  This was incumbent upon the Debtor to possibly

9    resolicit when these material changes took place.

10       Number two, the recalculation has not been subject to the

11   entire creditor body seeing it.  And anybody who wanted to

12   call them would have had to have seen the document they filed

13   on February 1st and made a telephone call basically

14   contemporaneous with seeing it.

15       Those are two things.  The argument that they didn't call

16   me is just nonsensical.  There's nobody -- you, you are

17   sitting here -- and I've had a number of battles over the

18   years with Judge (indecipherable), who was -- who -- and her

19   view was, I'm here to protect the little guy who's not --

20   didn't hire counsel, who's not represented by Mr. Clemente and

21   his huge clients who have voted in favor of the plan.  It's

22   the little person, *i.e.*, the employees who would vote against

23   a plan that they so -- so desperately tried to get out from

24   under.

25              THE COURT:  Well, --

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-3 Filed 12/07/23   Page 20 of 214   PageID 7618

177

         1                MR. DRAPER:  It's really a function --

         2                THE COURT:  -- Mr. Pomerantz argues it's not as

         3       though there was a materially adverse change in treatment; it

         4       was the disbursement estimate.  And doesn't every Chapter 11

         5       plan -- most Chapter 11 plans, not every -- they make an

         6       estimate.  I mean, and it's, frankly, it's very often a big

         7       range of recovery, right, a big range of recovery, because we

         8       don't know what the allowed claims are going to compute to at

         9       the end of the day.  There's obviously liquidation of assets.

        10       We don't know.  Isn't this sort of like every -- not, again,

        11       not every other plan, but most other plans -- where there's a

        12       big range of possible estimated distributions?  I mean, this

        13       wasn't a change in treatment, right?

        14                MR. DRAPER:  Well, let me address that.  There are

        15       two parts to that.  Most plans I see that contain some sort of

        16       analysis have a range.  This one doesn't have a range.  What

        17       they've done is they've buried in a footnote or assumption

        18       that these numbers may change.  So had they said, look, your

        19       recovery can go from 60 cents to 85 cents, God bless, they

        20       probably would have been right.

        21            Number two, which is more problematic to me, to be honest

        22       with you, is the fact that, number one, the operating expenses

        23       have increased over a hundred percent.  And number two, the

        24       Debtor has made a determination post-disclosure statement and

        25       pre-hearing that they're going to change their model of

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 21 of 214   PageID 7619

178

1   business.

2        The original disclosure statement said we're not going to

3   get into the managing CLO part of the business and we're going

4   to let these contracts go.  However, at some point along the

5   way, they made a change.  I don't know to this day, because I

6   was never furnished the backup to the expense side.  I

7   understand what they said why they didn't give me the asset

8   side, but the expense side, they should have given me, and I

9   did ask for.

10        But, you know, what we have now is a more fundamental

11   problem with the execution of the plan and the expectation

12   that creditors -- what they're going to get, because, in fact,

13   the expense items have doubled.

14        I think creditors were entitled to know that, rather than

15   it having been sprung upon everybody, when I got it the day

16   before a deposition.  And so those are things that I think

17   warranted a change in solicitation.  Now, the result may have

18   been the same.  I don't know.  More people may have voted

19   against the plan.  More people may have opted in from Class 8

20   to Class 7, I mean, based upon that information.  That

21   information was not provided to them.

22        And so I look at two -- three things.  One is a range

23   could have been given, and they probably would have been a

24   whole lot better off.  Two, you have a material change in

25   expenses.  And three, you have a material change in business

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 22 of 214   PageID 7620

179

1    model.  Three things that occurred between November and this

2    confirmation hearing.  Three things that were not known by the

3    creditor body and not told to them.

4          THE COURT:  Mr. Draper, I --

5          MR. DRAPER:  Now, it may have been told --

6          THE COURT:  I don't want to belabor this any more

7    than I think we need to, but I've got a Creditors' Committee

8    with very sophisticated professionals, very sophisticated

9    members.  They're fiduciaries to this constituency.  You know,

10   you mentioned the little guy.  I'm not quite sure who is the

11   little guy in this case.  I think it's a case of all big guys.

12   But, I mean, they're fine with what's happened here.

13   Meanwhile, you -- I mean, clarify your standing here for

14   Dugaboy and Get Good.  I mean, --

15         MR. DRAPER:  I have --

16         THE COURT:  -- I know you have standing.  Mr.

17   Pomerantz did not say you don't have standing.  But in

18   pointing out the economic interests here, I think he said your

19   clients only have asserted a postpetition administrative

20   expense.  Is that correct?

21         MR. DRAPER:  No.  I have a post -- I have an -- I

22   have a claim that's been objected to.  I don't think my

23   economic --

24         THE COURT:  A claim of what amount?

25         MR. DRAPER:  I think it's $10 million.  But Mr.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33-5   Filed 12/07/23   Page 23 of 214   PageID 7621

180

 1    Pomerantz is right, it requires a looking through the --

 2    through the entity that I had a loan relationship with.

 3        I recognize all of those things.  I don't think that's

 4    relevant to whether my argument is correct or incorrect.  I

 5    have standing to do it.  I don't think whether my claim is 50

 6    cents or $50 million should change the Court's view of whether

 7    the claim is good or bad.

 8            THE COURT:  Well, I do want to understand, though.

 9    Okay.  So you have not asserted an administrative expense,

10    correct?

11            MR. DRAPER:  No.  There's been an administrative

12    expense that's been asserted, --

13            THE COURT:  For what?

14            MR. DRAPER:  -- but that --

15            THE COURT:  For what?

16            MR. DRAPER:  I don't have the number in front of me,

17    Your Honor.  I don't -- I don't have those numbers --

18            THE COURT:  Okay.  Well, then, --

19            MR. DRAPER:  -- in front of me.  I have asserted --

20            THE COURT:  -- what is the concept?  What is the

21    basis for it?

22            MR. DRAPER:  It deals with -- Mr. Pomerantz is

23    absolutely right as to how he's articulated it.

24            THE COURT:  I can't remember what he said.

25            MR. DRAPER:  It deals with -- it deals with a

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 33-5 Filed 12/07/23    Page 24 of 214    PageID 7622

181

```
 1    transaction that's unrelated to the Debtor that deals with

 2    Multi-Strat.  I agree with that.

 3          THE COURT:  Okay.  So I remember him saying piercing

 4    the corporate veil.  Your trusts -- both of them, one of them,

 5    I don't know -- engaged in a transaction with Multi-Strat that

 6    you say --

 7          MR. DRAPER:  No, that --

 8          THE COURT:  -- gave -- okay.  Well, you say Multi-

 9    Strat is liable and the Debtor is also liable?

10          MR. DRAPER:  No.  Let me make two things.  The

11    administrative claim deals with a Multi-Strat transaction that

12    took place during the bankruptcy.  My unsecured claim deals

13    with a transaction that took place prior to the bankruptcy,

14    where we lent money to another entity that then funneled money

15    out into the Debtor.  We're -- our contention is that the

16    Debtor is liable for that loan.

17          THE COURT:  All right.  So both the administrative

18    expense as well as the prepetition claim require veil-piercing

19    to establish liability of the Debtor?

20          MR. DRAPER:  Or single business enterprise.  I don't

21    necessarily have to veil-pierce.

22          THE COURT:  Okay.  I'm not even sure that single

23    business enterprise is completely available anymore in Texas,

24    by the Texas legislature doing different things, assuming

25    Texas law applies.  I don't know, maybe Delaware does.  But I
```

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 20-3 53    Filed 12/07/23    Page 25 of 214    PageID 7623

182

```
 1    -- sorry.  Just let me let that sink in a little bit.  You're

 2    -- okay.  Okay.  Let me let it --

 3             MR. DRAPER:  Your Honor, I --

 4             THE COURT:  -- sink in a little bit.

 5             MR. DRAPER:  Okay.

 6             THE COURT:  These trusts -- of which Mr. Dondero is

 7    the beneficiary ultimately, right?

 8             MR. DRAPER:  Yes.  Well, and to --

 9             THE COURT:  So, your --

10             MR. DRAPER:  Again, I have not gone up --

11             THE COURT:  The beneficiary of your client --

12             MR. DRAPER:  Mr. Dondero is --

13             THE COURT:  The beneficiary of your client is

14    ultimately hoping to succeed on the administrative expense and

15    the claim on the basis that you should disregard the

16    separateness of Highland and these other entities?

17             MR. DRAPER:  Well, let's take the --

18             THE COURT:  When he's resisted that --

19             MR. DRAPER:  -- unsecured claim.  The --

20             THE COURT:  -- in multiple pieces of litigation?

21    Right?  I'm sorry.  I'm just trying to let this sink in.

22    Okay.  If you could elaborate.  I'm sorry.  I'm talking too

23    much.  You answer me.

24             MR. DRAPER:  Okay.  What we are saying is that, in

25    essence, the party we lent the money to was a conduit for the
```

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 26 of 214   PageID 7624

183

1    Debtor.

2           THE COURT:  Okay.  And who was that entity that

3    either --

4           MR. DRAPER:  Highland Select.

5           THE COURT:  -- Dugaboy or Get Good lent money to?

6           MR. DRAPER:  The Get Good claim is completely

7    different.  The Get Good claim is written as a tax claim.

8    Honestly, I haven't taken a hard look at it.  I will, once we

9    get through this, and it may be withdrawn.  The Dugaboy claim

10   is a claim that arises through a conduit loan.

11          THE COURT:  Okay.  But to which entity?

12          MR. DRAPER:  Highland Select.

13          THE COURT:  Okay.  All right.  Well, continue with

14   your argument.  I'll get my flow chart out and --

15          MR. DRAPER:  Well, let me -- again, I think I've made

16   the points that I needed to make.  I think I've done it in a

17   sense that you -- what I think the Court needs to do is take a

18   very hard look at the jurisdictional extension that's being

19   granted here.  I think the exculpation provision, in and of

20   itself, just by the mere inclusion of Pachulski and the

21   Debtor's professionals and the Committee professionals, is

22   just unconfirmable.  It has to be stricken.

23       And I think the injunction and the juris... the gatekeeper

24   provision are not allowed by applicable law.  If this plan

25   merely said, we will enforce the Barton Doctrine, we will

008019

1    abide -- and this order the Court has entered stands, the

2    injunction that's provided and the rights that we have under

3    1141 stand, nobody would be objecting.  That's why the U.S.

4    Trustee has objected, because of the expansive nature of what

5    the -- what's been done in this plan.

6        And with that, I'll turn it over to Mr. Taylor or Davor.

7            THE COURT:  All right.  Who's next?

8            MR. RUKAVINA:  Your Honor, Davor Rukavina.  Can you

9    hear me?

10           THE COURT:  I can.

11    CLOSING ARGUMENT ON BEHALF OF CERTAIN FUNDS AND ADVISORS

12           MR. RUKAVINA:  Your Honor, thank you.  I'll try not

13    to repeat the arguments from Mr. Draper, but I do want to

14    point out a couple bigger-picture issues, I think.

15        One, the issue today is not Mr. Dondero, what he has been

16    alleged to have done, what he is alleged to do in the future.

17    The Debtor has gone out of its way to create the impression

18    that we're all tentacles, we're vexatious litigants, we're

19    frivolous litigants.  The issue today is whether this plan is

20    confirmable under 1129(a) and 1129(b).  And I think that that

21    has to be the focus.

22        Nor is the issue, I think, today any motivation behind my

23    objection or Mr. Draper's or anything else.

24        And I do take issue that my motivation or my client's

25    motivation has some ulterior motive for a competing plan or

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23 Page 28 of 214   PageID 7626

185

burning down the house or anything like that.  It's very, very

simple.  My clients do not want $140 million of their money

and their investors' money, to whom they owe fiduciary duties,

to be managed by a liquidating debtor under new management

without proper staffing and with an obvious conflict of

interest in the form of Mr. Seery wearing two hats.

I respect very much that Mr. Seery wants to monetize

estate assets for the benefit of the estate creditors.  That's

his job.  That's incompatible with his job under the Advisers

Act and, as he said, to maximize value to my clients and over

a billion dollars of investments in these CLOs.

That should not be, Your Honor, a controversial

proposition.  I should not be described as a tentacle or

vexatious because my clients don't want their money managed by

someone that they, in effect, did not contract with.  I may be

-- I may lose that argument.  The CLOs have obviously

consented to the assumption.  But my argument should not be

controversial.  It should not be painted with a broad brush of

somehow being done in bad faith by Mr. Dondero.

And in fact, Mr. Seery has admitted that the Debtor and he

are fiduciaries to us.  The fact that today they call us

things like tentacles and serial litigants and vexatious

litigants -- we all know what a vexatious litigant is.  We've

all dealt with those.  The fact that our fiduciary would call

us that just reconfirms that it should have no business

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibits 3-5    Page 207/283    Page 29 of 214    PageID 7627

186

1    managing our or other people's money.

2       And then for what?  Mr. Seery has basically said that the

3    Debtor will make some $8.5 million in revenue from these

4    contracts, net out $4 million of expenses.  That's net profit

5    of $4.5 million.  But then they have to pay $3.5 million for

6    D&O insurance and $525,000 in cure claims.  But it's the

7    Debtor's business decision, not ours.

8       Your Honor, the second issue is the cram-down of Class 8.

9    There are two problems here:  the disparate treatment between

10    Class 7 and Class 8, which also raises classification, and

11    then the absolute priority rule.  Class 7 is a convenience

12    class claim -- is a convenience claim, Your Honor, with a $1

13    million threshold.  Objectively, that is not for

14    administrative convenience, as the Code allows.  And the only

15    evidence as to how that million dollars was arrived at was,

16    oh, it was a negotiation of the Committee.

17       There is no evidence justifying administrative

18    convenience.  Therefore, there is no evidence justifying

19    separate classification.  And on cram-down, the treatment has

20    to be fair and equitable, which *per se* it is not if there is

21    unfair discrimination.  And there is unfair discrimination,

22    because Class 8 will be paid less.

23       On the absolute priority rule, Your Honor, I think that

24    it's very simple.  I think that the Code is very clear that

25    equity cannot retain anything -- I'm sorry, equity cannot

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-5 Filed 12/07/23  Page 30 of 214   PageID 7628

187

```
 1   retain any property or be given any property.  Property is the
 2   key word in 1129(b), not value.  It doesn't matter that this
 3   property may not have any value, although Mr. Seery said that
 4   it might.  What matters is whether these unvested contingent
 5   interests in the trust are property.  And Your Honor, they are
 6   property.  They have to be property.  They are trust
 7   interests.
 8        So the absolute priority rule is violated on its face.
 9   There is no evidence that unsecured creditors in Class 8 will
10   receive hundred-cent dollars.  The only evidence is that
11   they'll receive 71 cents.  Mr. Seery said there's a potential
12   upside from litigation.  He never quantified that upside.  And
13   there is zero evidence that Class 8 creditors are likely to be
14   paid hundred-cent dollars.  So, again, you have the absolute
15   priority rule issue.
16        And this construct where, okay, well, equity won't be in
17   the money unless everyone higher above is paid in full, that
18   is just a way to try to get around the dictate of the absolute
19   priority rule.  If that logic flies, then the next time I have
20   a hotel client or a Chapter 11 debtor-in-possession client
21   where my equity wants to retain ownership, I'll just create
22   something like, well, here's a trust, creditors own the trust,
23   I won't distribute any money to equity, and equity can just
24   stay in control.
25        The point again is that this is property and it's being
```

008023

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-33    Filed 12/07/23    Page 31 of 214    PageID 7629

188

1    received on account of prepetition equity.

2        And there's also the control issue.  The absolute priority

3    rule, the Supreme Court is clear that control of the post-

4    confirmation equity is also subject to the absolute priority

5    rule.  Here you have the same prepetition management

6    postpetition controlling the Debtor and the assets.

7        Your Honor, the Rule 2015.3 issue, someone's going to say

8    that it's trivial.  Someone's going to accuse me of pulling

9    out nothing to make something.  Your Honor, it's not trivial.

10    That's part of the problem in this case, that this Debtor owns

11    other entities that own assets, and there's been precious

12    little window given into that during the case, during this

13    confirmation hearing, and in the disclosure statement.

14        Rule 2015.3 is mandatory.  It's a shall.  I respect very

15    much Mr. Seery's explanation that there was a lot going on

16    with the COVID and with everything and that it just fell

17    through the cracks.  That's an honest explanation.  But the

18    Rule has not been complied with.  And 1107(a) requires that

19    the debtor-in-possession comply with a trustee's duties under

20    704(a)(8).  Those duties include filing reports required by

21    the Rules.

22        So we have an 1129(a)(3) problem, Your Honor, because this

23    plan proponent has not complied with Chapter 11 and Title 11.

24    I'll leave it at that, because I suspect, again, someone will

25    accuse me of being trivial on that.  It is not trivial.  It is

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23 Page 32 of 214   PageID 7630

189

1  a very important rule.

2      On the releases and exculpations, Your Honor, I'm not

3  going to try -- I'm not going to hopefully repeat Mr. Draper.

4  But there's a couple of huge things here with this exculpation

5  that takes it outside of any possible universe of *Pacific*

6  *Lumber*.

7      First, you have a nondebtor entity that is being

8  exculpated.  I understand the proposition that, during a

9  bankruptcy case, the professionals of a bankruptcy case might

10 be afforded some protection.  I understand that proposition.

11 But here you have Strand and its board that's a nondebtor.

12     The other thing you have that takes this outside of any

13 plausible case law is that the Debtor is exculpated from

14 business decisions, including post-confirmation.  I understand

15 that professionals in a case make decisions, and

16 professionals, at the end of the case, especially if the Court

17 is making findings about a plan's good faith, that

18 professionals making decisions on how to administer an estate

19 ought to have some protection.

20     That does not hold true for whether a debtor and its

21 professionals should have protection for how they manage their

22 business.  GM cannot be exculpated for having manufactured a

23 defective product and sold it during its bankruptcy case.

24     Here, I asked Mr. Seery whether this language in these

25 provisions, talking about whether the administration of the

Case 19-34054-sgj11 Doc 3818-4 Filed 06/05/23 Entered 06/05/23 22:10:41 Desc
Case 3:23-cv-02071-E Document 26-3 Filed 12/07/23 Page 33 of 214 PageID 7631
Exhibit Exhibit 3-53 Page 287 of 692

190

estate and the implementation of the plan includes the

Debtor's management of those contracts and funds. He said

yes. He said yes. So if you look at the exculpation

provision, it is not limited in time. It affects, Your Honor,

I'm quoting, it affects the implementation of the plan.

That's going forward.

So you are exculpating the Debtor and its professionals

from business decisions, including post-confirmation, from

negligence. Well, isn't negligence the number one protection

that people that have invested a billion dollars with the

Debtor have? It's cold comfort to hear, well, you can come

after us for gross negligence or theft. I get that. What

about negligence? Isn't that what professionals do? Isn't

that why professionals have insurance, liability insurance?

It's called professional negligence for malpractice.

So this exculpation, let there be no mistake -- I heard

Your Honor's view and discussion -- this is a different

universe, both in space and in time.

And we don't have to worry about *Pacific Lumber* too much

because we have the *Dropbox* opinion in *Thru, Inc.* We have

that opinion. Whether it's sound law or not, I don't wear the

robe. But the exculpation provision in that case was

virtually identical. And Your Honor, that's a 2018 U.S. Dist.

LEXIS 179769. In that opinion, Judge Fish -- I don't think

anyone could say that Judge Fish was not a very experienced

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-3 353 Filed 12/07/23    Page 34 of 214    PageID 7632

191

1    district court judge -- Judge Fish found that the exculpation

2    violated Fifth Circuit precedent.  That exculpation covered

3    the debtor's attorneys, the debtor, the very people that Mr.

4    Pomerantz is now saying, well, maybe the Fifth Circuit would

5    allow an exculpation for.

6         THE COURT:  Well, I think he is relying heavily on

7    the analogy of independent directors to Creditors' Committee

8    members, saying that's a different animal, if you will, than

9    prepetition officers and directors.  And he thinks, given the

10   little bit of policy analysis put out there by the Fifth

11   Circuit, they might agree that that's analogous and worthy of

12   an exculpation.

13        MR. RUKAVINA:  And they might.  And they might.  And

14   again, I usually do debtor cases.  You know that.  I'd love to

15   be exculpated.

16        THE COURT:  But --

17        MR. RUKAVINA:  And I think, again, I do -- I do --

18        THE COURT:  -- I really want people to give me their

19   best argument of why, you know, that's just flat wrong.  And

20   Mr. Draper just said it's, you know, there's a categorical --

21        MR. RUKAVINA:  Yeah.

22        THE COURT:  -- rejection of exculpations except for

23   Committee members and Committee in *Pacific Lumber*.  And I'm

24   scratching my head on that one.  And partly the reason I am,

25   while 524(e) was thrown out there, the fact is there's nothing

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-53 Filed 12/07/23 Page 35 of 214    PageID 7633
Document Page 289 of 692

192

1    explicitly in the Bankruptcy Code, right, that explicitly

2    permits exculpation to a Committee or Committee members.

3    There's just sort of this notion, you know, allegedly embodied

4    in 1103(c), or maybe there are cases you want to cite to me,

5    that they're fiduciaries, they're voluntary fiduciaries, they

6    ought to have qualified immunity.

7         And again, I see it as more of a policy rationale the

8    Fifth Circuit gave than pointing to a certain statute.  So if

9    it's really a policy rationale, then I think the analogy given

10   here to a newly-appointed independent board is pretty darn

11   good.

12        So tell me why I'm all wrong, why Mr. Pomerantz is all

13   wrong.

14             MR. RUKAVINA:  I am not going to tell you that you're

15   all wrong.  I'm not going to tell Mr. Pomerantz that he's all

16   wrong.  Although I am, I guess, a Dondero tentacle, I am not a

17   Mr. Draper tentacle, and I happen to disagree with him.

18   That's my right.  I respect the man very much.  I thought he

19   did a very honorable and ethical job explaining his position

20   to Your Honor.  I believe that the Fifth Circuit would approve

21   exculpations for postpetition pre-confirmation matters taken

22   by estate fiduciaries.  I do believe that they would.  And I

23   do believe that that should be the case.

24        But again, I'm telling you that this one is different.

25   It's -- Mr. Pomerantz is misdirecting you.  The estate

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-3    Filed 12/07/23    Page 36 of 214    PageID 7634
Exhibit Exhibit 3-3 Filed 12/07/20 Page 36 of 692

193

1    professionals manage the estate.  The Debtor manages its

2    business.  It goes out into the world and it manages business.

3    And as Your Honor knows, under that 1969 Supreme Court case,

4    of course I blanked, and under 28 U.S. 959, a debtor must

5    comply, when it's out there, with all applicable law.

6        So if the Debtor -- and I'm making this up, okay?  I am

7    making this up.  I'm not alleging anything.  But if the

8    Debtor, through actionable neglect, lost $500 million of its

9    clients' or its investor clients' money, I'm telling you that

10   under no theory can that be exculpated, and I'm telling you

11   that that's what this provision does.

12       The estate and the Debtor can release their claims.  It

13   happens all the time.  Whatever -- whatever claims the estate

14   may have against professionals, those can be released.  It's a

15   9019.  I'm not complaining about that.  Although I do think

16   that it's premature in this case, because we don't know

17   whether there's any liability for the $100 million that Mr.

18   Seery told you Mr. Dondero lost.  But in no event can business

19   -- business --

20           THE COURT:  I don't understand what you just said.

21           MR. RUKAVINA:  Your Honor, I --

22           THE COURT:  Mr. Dondero is not released --

23           MR. RUKAVINA:  -- went through Mr. Seery's --

24           THE COURT:  -- by the estate.

25           MR. RUKAVINA:  I understand.  I understand.  But we

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 36-3   Filed 12/07/24   Page 37 of 214   PageID 7635

194

1    all have to also understand that a board of directors and

2    officers can be liable, breaches of fiduciary duty by not

3    properly managing an employee.  So I'm not suggesting -- I

4    mean, I know that there's been an examiner motion filed.  I'm

5    not suggesting that we have a mini-trial.  I'm not suggesting

6    there's actionable conduct.  What I'm telling you is that the

7    evidence shows that there's a large postpetition loss.  And

8    it's premature to prevent third parties that might have claims

9    from bringing those.

10        And then I think -- I'm not sure that Your Honor

11   understood my point.  Let me try to make it again.  This

12   exculpation is not limited in time.  This exculpation is

13   expressly not limited in time and applies to the

14   administration of the plan post-confirmation.  I don't think

15   under any theory would the Fifth Circuit or any court at the

16   appellate level allow an exculpation for purely post-

17   reorganization post-bankruptcy matters.  I have nothing more

18   to tell Your Honor on exculpation.

19             THE COURT:  Well, again, I -- perhaps I go down some

20   roads I really don't need to go down here, but I'm not sure I

21   read it the way you did.  I thought we were just talking about

22   pre -- postpetition, pre-confirmation.  Or pre-effective date.

23             MR. RUKAVINA:  Your Honor, Page --

24             THE COURT:  The --

25             MR. RUKAVINA:  Page 48 of the plan, Section C,

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-3    Filed 12/07/23    Page 38 of 214    PageID 7636
Exhibit Exhibit 33-53 Page 207 of 692

195

1    Exculpation.  Romanette (iv).  The implementation of the plan.

2    And I -- and that's -- that's part of why I asked Mr. Seery

3    that yesterday.  Does the implementation of the plan, in his

4    understanding, include the Reorganized Debtor's management and

5    wind-down of the Funds, and he said yes.

6              THE COURT:  Okay.

7              MR. RUKAVINA:  So that's right there in black and

8    white.

9         It also includes the administration of the Chapter 11

10   case.  If that is defined broadly, as Mr. Seery wants it to

11   be, to define business decisions, then that also exceeds any

12   permissible exculpation.

13        So, again, I'm telling Your Honor, with due respect to you

14   and to Mr. Pomerantz, that the focus of Your Honor's

15   questioning is wrong.  The focus of Your Honor's questioning

16   should be on exculpation from what?  From business -- *i.e.*, GM

17   manufacturing and selling the car -- or from management of the

18   bankruptcy case?  Management of the bankruptcy case?  Okay.

19   Postpetition pre-confirmation managing business, never okay.

20        Your Honor, on the channeling -- and let me add, I think

21   it's very clear, there is no Barton Doctrine here.  This is

22   not a Chapter 11 trustee.  The Barton Doctrine does not

23   extend to debtors-in-possession.  And I can cite you to a

24   recent case, *In re Zaman*, 2020 Bankr. LEXIS 2361, that

25   confirms that the Barton Doctrine does not apply to a debtor-

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-3 Filed 12/07/23    Page 39 of 214    PageID 7637
Exhibit 26-33 Page 207/293    Page 39 of 214

196

 1    in-possession.

 2        I want to --

 3            THE COURT:  Remind me of that --

 4            MR. RUKAVINA:  -- discuss, Your Honor, the --

 5            THE COURT:  Remind me of the facts of that case.  I

 6    feel like I read it, but -- or saw it in the advance sheets,

 7    maybe.

 8            MR. RUKAVINA:  I honestly do not recall.  I read it a

 9    few days ago, and since then, I hope Your Honor can

10    appreciate, I've been up very late trying to negotiate

11    something good in this case.

12            THE COURT:  I'd like to know --

13            MR. RUKAVINA:  So, I mean, I have the case in front

14    of me.

15            THE COURT:  I'd like to know about a holding that

16    says Barton Doctrine can't be applied in a Chapter 11 post-

17    confirmation context, if that's --

18            MR. RUKAVINA:  Well, I have it --

19            THE COURT:  -- indeed the holding.

20            MR. RUKAVINA:  I have it right in front of me here,

21    Your Honor, and I can certainly -- all I know is that this

22    case held that -- it rejected the notion that the Barton

23    Doctrine applies to a debtor-in-possession.

24            THE COURT:  Okay.

25            MR. RUKAVINA:  And maybe --

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-3    Filed 12/07/23    Page 40 of 214    PageID 7638
Exhibit Exhibit 53 Page 294 of 692

197

1          THE COURT:  That --

2          MR. RUKAVINA:  There it is, right there.

3          THE COURT:  What judge?

4          MR. RUKAVINA:  Your Honor, it is the Southern

5    District of Florida, and it is the Honorable -- Your Honor, it

6    is the Honorable Mindy Mora.

7          THE COURT:  Okay.

8          MR. RUKAVINA:  M-O-R-A.

9          THE COURT:  Okay.

10         MR. RUKAVINA:  I have not had the pleasure of being

11   in front of that judge.

12      Your Honor, let me discuss the channeling injunction.

13   This is the big one for me.  This is the big one.  And I think

14   we have to begin -- and it's the big one, as I'll get to,

15   because Your Honor knows that the CLO management agreements

16   give my clients certain rights, and this injunction would

17   prevent those rights from being exercised post-confirmation.

18   It's not dissimilar from the PI hearing that we're in the

19   middle of in an adversary.

20      But I begin my analysis, again, with 28 U.S.C. 959.  Your

21   Honor, that -- the first sentence of that statute makes it

22   very clear that when it comes to carrying on a business, a

23   debtor-in-possession may be sued without leave of the court

24   appointing them.

25      So the first thing that this channel -- gatekeeper,

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-53 Filed 12/07/23 Page 41 of 214  PageID 7639

198

1   channeling, I don't mean to miscall it -- the first thing that

2   this gatekeeping injunction does is it stands directly

3   opposite to 28 U.S.C. 959.

4       28 U.S.C. 959 also says that jury rights must be

5   preserved.  As I'll argue in a moment, this injunction also

6   affects those rights.

7       In addition to 959, we have the fundamental issue of post-

8   confirmation jurisdiction.  As Mr. Draper said, here, this

9   channeling injunction applies to post-confirmation matters.

10  Similar to my answer to you on exculpation, I can see there

11  being a place for a channeling injunction during the pendency

12  of a case or for claims that might have arisen during the

13  pendency of a case.  I cannot see that, and I don't know of

14  any court that, at least at a circuit level, that would agree

15  that this can apply post-confirmation.

16      It is, again, the equivalent of GM manufacturing a car

17  post-confirmation and having to go to bankruptcy court because

18  someone's wanting to sue it for product negligence or

19  liability.  It's unthinkable.  The reason why a debtor exits

20  bankruptcy is to go back out into the community.  It's no

21  longer under the protection of the bankruptcy court.  That's

22  what the media calls Chapter 11, it calls it the protection of

23  the court.  There's no such protection post-reorganization.

24  So, --

25          THE COURT:  Is that really analogous, Mr. Rukavina?

008034

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 353 Filed 12/07/296 of 592 42 of 214   PageID 7640

199

1      Let's get real.  Is this really analogous --

2                MR. RUKAVINA:  It is.

3                THE COURT:  -- to GM --

4                MR. RUKAVINA:  It is.

5                THE COURT:  -- manufacturing thousands of cars?

6                MR. RUKAVINA:  It absolutely is analogous.  Because

7      this Debtor is going to assume these contracts and it is going

8      to go out there and it is going to make daily decisions

9      affecting a billion dollars of other people's money.  Each of

10     those decisions hopefully will be done correctly and make

11     everyone a lot of money, but each of those decisions is the

12     potential for claims and causes of action.

13         So it is analogous, Your Honor.  They want my clients and

14     others to come to you for purely post-confirmation matters.

15     The Court will not have that jurisdiction.  There will be no

16     bankruptcy estate, nor can the Court's limited jurisdiction to

17     ensure the implementation of the plan go to and affect a post-

18     confirmation business decision.

19         That's the distinction.  The Debtor's post-confirmation

20     business is not the implementation of a plan.  As Mr. Draper

21     said, there's a new entity.  There's a new general partner.

22     There's a new structure.  Go out there and do business,

23     Debtor.  That's what they're telling you.  They're telling you

24     this is not a liquidation because they're going to be in

25     business.  Okay.  Well, the consequence of that is that

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-3 Filed 12/07/23   Page 43 of 214   PageID 7641

200

1   there's no post-confirmation jurisdiction.

2        Now, Mr. Pomerantz says, and I think you asked Mr. Draper,

3   well, the jurisdiction to adjudicate whether something is

4   colorable is different from the jurisdiction to adjudicate the

5   underlying matter.  Your Honor, I don't understand that

6   argument, and I don't see a distinction.  If the Court has no

7   jurisdiction to decide the underlying matter, then how can the

8   Court have any jurisdiction to pass on any aspect of that

9   underlying matter?

10       And whether something is colorable is a fundamental issue

11  in every matter.  That's the thing that courts look at in a

12  12(b)(6), in a Rule 11 issue, in a 1927 issue.  So they're

13  going to come -- or someone is going to have to come to Your

14  Honor and present evidence and law that something is

15  colorable.  Let's say that we've said there's a breach of

16  contract.  Aren't we going to have to show you, here's the

17  contract, here's the language, here's the facts giving rise to

18  the breach, here's the elements?  And Your Honor is going to

19  have to pass on that.  And if Your Honor decides that

20  something is not colorable, then there ain't no step two.

21       And if Your Honor decides that something is colorable,

22  then isn't that going to be binding on the future proceeding?

23  And if it's going to be binding on the future proceeding, then

24  of course you're exercising jurisdiction to adjudicate an

25  aspect of that lawsuit.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 253-53 Filed 12/07/23   Page 44 of 214   PageID 7642

201

1          I don't think that that -- I don't know I can be clearer

2     than that, Your Honor, unless the Debtor has some other

3     understanding of what a colorable claim or cause of action is

4     that I'm misunderstanding.

5          And Your Honor, I would ask, when Your Honor is in

6     chambers, to look at one of these CLO management agreements.

7     I'm sure Your Honor has already.  I just pulled one out of the

8     Debtor's exhibits, Exhibit J as in Jason.  And Section 14, 14

9     talks about termination for cause.  Most of these contracts

10    are for cause.  So, Your Honor, cause includes willfully

11    breaching the agreement or violating the law, cause includes

12    fraud, cause includes a criminal matter, such as indictment.

13         So let's imagine, Your Honor, that I come to you a year

14    from now and I say, I would like to terminate this agreement

15    because I don't want the Debtor managing my $140 million

16    because of one of these causes.  What am I going to argue to

17    Your Honor?  I'm going to argue to Your Honor that those

18    causes exist.  And Your Honor is going to have to pass on

19    that.

20         And if Your Honor says they don't exist, again, I'm done.

21    I just got an effective final ruling from a federal judge that

22    my claim is without merit.  I'm done.  Your Honor has decided

23    the matter effectively, legally, and finally.

24         That's why, when Mr. Pomerantz says that the jurisdiction

25    to adjudicate the colorableness of a claim is different from

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-3 353 Filed 12/07/29 of 692  45 of 214    PageID 7643

202

1    adjudicating that claim, it's not correct.  They're part of

2    the same thing, Your Honor.

3        We strenuously object to that injunction, we think it's

4    unprecedented, and we strenuously object to that injunction

5    because we are not Mr. Dondero.

6        I understand the January 9th order.  I'll let Mr.

7    Dondero's counsel talk about why that was never intended to be

8    a perpetual order.  I'll let Mr. Dondero's counsel argue as to

9    why the extension of that order *ad infinitum* in the plan is

10   illegal.

11       But even if Mr. Dondero is enjoined in perpetuity from

12   causing the related parties to terminate these agreements,

13   Your Honor, the related parties themselves are not subject to

14   that injunction.  That's why you have the preliminary

15   injunction proceeding impending in front of you on ridiculous

16   allegations of tortious interference.

17       So whether the Court enjoins Mr. Dondero or not in

18   perpetuity is a separate matter.  The question is, as you've

19   heard, at least my retail clients, they have boards.  Those

20   boards are the final decision-makers.  Mr. Dondero is not on

21   those boards.

22       In other words, it is wrong to conclude *a priori* that

23   anything that my clients do has to be at the direction of Mr.

24   Dondero.  There is no evidence of that.  The evidence is to

25   the contrary.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-33   Filed 12/07/00   Page 46 of 214   PageID 7644

203

1      Yes, a couple of my clients, the Advisors are controlled

2   by Mr. Dondero.  Mr. Norris testified to that.  You'll not

3   find Mr. Norris anywhere testifying in that transcript that

4   Your Honor allowed into evidence that the funds, my retail

5   fund clients are controlled by Mr. Dondero.  You won't find

6   that evidence.  There was no evidence yesterday or today that

7   Mr. Dondero controls those retail funds.  The only evidence is

8   that they have independent boards.

9      So I ask the Court to see that it's a little bit of a

10  sleight of hand by the Debtor.  If I am to be enjoined or if I

11  am to have to come to Your Honor in the future as a vexatious

12  litigant or a tentacle or a frivolous litigant, whatever else

13  I've been called today, then let it be because of something

14  that I've done or failed to do, something that my client has

15  done to warrant such a serious remedy, not something that Mr.

16  Dondero is alleged to have done.

17     And what have my clients done, Your Honor?  What have we

18  done to be called vexatious litigants and serial litigants?

19  We've done nothing in this case, pretty much, until December

20  16th, when we filed a motion that was a poor motion,

21  unfortunately, the Court found it to be frivolous, and the

22  Court read us the riot act.

23     We refused, on December 22nd, we, my clients' employees,

24  to execute two trades that Mr. Dondero wanted us to execute.

25  We had no obligation to execute them.  We knew nothing about

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 47 of 214   PageID 7645
Exhibit Exhibit 3-53   Page 301 of 692

204

1     them.  And Mr. Seery -- I'm sorry.  Not Mr. Dondero, that Mr.

2     Seery wanted to execute.  And Mr. Seery closed those

3     transactions that same day.  And then a professional lawyer at

4     K&L Gates, a seasoned bankruptcy lawyer, sent three letters to

5     a seasoned professional lawyer at Pachulski, and the letters

6     were basically ignored.

7         Okay.  Those are the things that we've done.  Other than

8     that, we've defended ourselves against a TRO, we've defended

9     ourselves against a preliminary injunction, we will continue

10    to defend ourselves against a preliminary injunction, and we

11    defend ourselves against this plan because it takes away our

12    rights.  Is that vexatious litigation?  Is that, other than

13    the frivolous motion, is that frivolous litigation?

14        And we heard you loud and clear when you read us the riot

15    act on December 16th.  And I will challenge any of these

16    colleagues here today to point me to something that we have

17    filed since then that is in any way, shape, or form arguably

18    meritless.

19        So where is the evidence that my retail funds are

20    tentacles or vexatious litigants or anything else?  There is

21    no evidence, Your Honor, and the Debtor is doing its best to

22    give you smoke and mirrors to just make that mental jump from

23    Mr. Dondero to my clients, effectively an alter ego, without a

24    trial on alter ego.

25        Once these contracts are assumed, the Debtor must live

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-53 Filed 12/07/23    Page 48 of 214    PageID 7646

205

1    with their consequences.  It's as simple as that.  Your Honor

2    has so held.  Your Honor has so held forcefully in the *Texas*

3    *Ballpark* case.  And the Court, I submit respectfully, cannot

4    excise by an injunction a provision of a contract.

5        Also, this injunction will -- is a permanent injunction.

6    We know from *Zale* and other cases the Fifth Circuit does

7    permit certain limited plan injunctions that are temporary in

8    hundred-cent plans.  This is a permanent one.  It doesn't even

9    pretend to be a temporary one.

10        It's also a permanent one because the Debtor knows and I

11    think the Debtor is banking on me being unable to get relief

12    in the Fifth Circuit before Mr. Seery is finished liquidating

13    these CLOs.

14        So what we are talking about today is effectively excising

15    valuable and important negotiated provisions of these

16    contracts, provisions that, although my clients are not

17    counterparties to these contracts, you've heard from at least

18    three of them we do control the requisite vote, the voting

19    percentages, to cause a termination, to remove the Debtor, or

20    to seek to enforce the Debtor's obligations under those

21    contracts.

22        And again, Your Honor, it's very simple.  Where those

23    contracts require cause, there either is cause or is not

24    cause.  If there is not cause, the Debtor has its remedies.

25    If there is cause, I'll have my remedies.  But it's not for

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Exhibit Exhibit 353   Filed 12/07/23   Page 49 of 214   PageID 7647

206

1  this Court post-confirmation to be making that determination.

2  That's not my decision.  That's Congress's decision.

3      So, Your Honor, for those reasons, we object, and we

4  continue to object, and we'd ask that the Court not confirm

5  this plan because it is patently unconfirmable.  Or if the

6  Court does confirm the plan, that it excise those provisions

7  of the releases, exculpations, and injunction that I just

8  mentioned as being not in line with the Fifth Circuit or

9  Supreme Court precedent.

10      Thank you.

11          THE COURT:  All right.  Can I -- I meant to ask Mr.

12  Draper this.  Can we all agree that we do not have third-party

13  releases *per se* in this plan?  Can we all agree on that?

14          MR. DRAPER:  I don't know.  I have to look at that.

15  I think what you have are exculpations and channeling

16  injunctions for third parties who have not paid for those

17  channeling injunctions or those exculpations.

18          THE COURT:  All right.

19          MR. RUKAVINA:  Your Honor, was that question -- was

20  that question solely to Mr. Draper?

21          THE COURT:  Well, no, it was to all of you.  I

22  thought we could all agree that we don't have third party

23  releases *per se*.  Okay.  There was --

24          MR. RUKAVINA:  Your Honor, we --

25          THE COURT:  -- a little bit of glossing over that in

008042

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/304 of 592 Page 50 of 214   PageID 7648

207

1   some of the briefing, I can't remember whose.  But we have

2   Debtor releases, we have --

3           MR. RUKAVINA:  Yes.

4           THE COURT:  -- exculpations that deal with

5   postpetition negligence only, we have injunctions, which I

6   guess the Debtor would say merely serve to implement the plan

7   provisions and are commonplace, but Mr. Draper would say maybe

8   are tantamount to third-party releases.  Is that --

9           MR. RUKAVINA:  Your Honor, I don't think --

10          THE COURT:  -- where we are?

11          MR. RUKAVINA:  -- there's any question -- I don't

12  think there's any question that the exculpation is a third-

13  party release, and that that's also what Judge Fish held in

14  the *Dropbox* case.  It says that none of the exculpated parties

15  shall have any liability on any claim.  So, --

16          THE COURT:  All right.

17          MR. RUKAVINA:  -- that necessarily --

18          THE COURT:  I get what you're saying, but I just

19  think, in common bankruptcy lingo, most people regard a third-

20  party release as when third parties are releasing -- third

21  parties meaning, for example, creditors, interest holders --

22  are releasing officers and directors and other third parties

23  for anything and everything.

24      Exculpation, I get it, it's worded in a passive voice, but

25  it is third parties releasing third parties, but for a narrow

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33-5   Filed 12/07/23   Page 51 of 214   PageID 7649

208

1    thing, postpetition conduct that is negligent.  Okay.  So I

2    think -- while there's technically something like a third-

3    party release there, it's not in bankruptcy lingo what we call

4    a third-party release.  It's an exculpation means no liability

5    of the exculpated parties for postpetition conduct that's

6    negligent.  So I -- anyway, I think we all agree that, I mean,

7    can we all agree there aren't any *per se* third-party releases

8    as that term is typically used in bankruptcy parlance?

9              MR. RUKAVINA:   I apologize, Your Honor, and I'm not

10   trying to try your patience, but I cannot agree to that.

11   Whatever claims my client, a nondebtor, has against Strand, a

12   nondebtor, are gone.  Whether it's a release or exculpations,

13   they're gone.  So I apologize, I cannot agree to that, Your

14   Honor.

15             MR. DRAPER:  Your Honor, this is Douglas Draper.  I

16   can't agree, either.  I think it's definitional.  And quite

17   frankly, I think I'm looking at the functional effect of

18   what's here, and they appear to be third-party releases.

19             THE COURT:  Okay.  All right.  Who is making the

20   argument for Mr. Dondero?

21             MR. TAYLOR:  Your Honor, Clay Taylor appearing on

22   behalf of Mr. Dondero.

23             THE COURT:  Okay.

24           CLOSING ARGUMENT ON BEHALF OF JAMES D. DONDERO

25             MR. TAYLOR:  Your Honor, first of all, as this Court

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 52 of 214   PageID 7650

209

1    is well aware, this Court sits, as a bankruptcy court, as a

2    court of equity.  It has many different tools available to it.

3    One of those, of course, is denying confirmation of this plan

4    because of the laws that we have discussed today and that we

5    believe the evidence has shown, and I won't go into those.  Of

6    course, of course, Your Honor could confirm that plan.  Yet

7    another tool available to this Court is it can take it under

8    advisement.

9         To the extent that this Court decides to confirm this plan

10   and decides to confirm it today, it certainly takes a lot of

11   options off the table for all parties.  There are ongoing

12   discussions, I'm not going to go into any of the particulars

13   of those discussions, but a ruling on confirmation today would

14   effectively end that, because, absent, then, an order vacating

15   confirmation, there's a lot of eggs that can't become

16   unscrambled after a confirmation order is entered.

17        So we would respectively ask that, to the extent that the

18   Court is even considering confirmation, we don't believe it to

19   be appropriate, but at least take it under advisement for 30

20   days, or at least, in the very alternative, that it announce

21   some date which it is going to give a ruling, so that we kind

22   of know when that is going to come down, to see if any

23   positive ongoing discussions can result in more of a global

24   resolution that all parties can agree upon.

25        Addressing more the merits of the case, Your Honor, Mr.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 353 Filed 12/07/07 of 392 53 of 214   PageID 7651

210

1  Dondero does indeed object to the nondebtor releases, the

2  exculpations, the injunction.  I believe those have been

3  covered rather extensively in the prior argument, so I wasn't

4  going to go into those here because they've been addressed.

5  Of course, I will endeavor to answer any questions that Your

6  Honor may have on those.

7      I will say I think Your Honor asked for everybody's best

8  shot as to why this is different for a Committee member versus

9  the independent trustees here.  I will say my best shot is,

10  first of all, *Pacific Lumber* says what it says.  I believe Mr.

11  Pomerantz has indicated their position that that language is

12  dicta and therefore not binding upon this Court.  I

13  respectfully disagree with that.  But to the extent, more

14  directly answering Your Honor's question, to me, the

15  difference is clear.  Chapter 7 trustees are a creature of

16  statute.  So are Chapter 11 trustees.  And -- as are members

17  of a Committee that are seated pursuant to the Bankruptcy

18  Code.  Those are all creatures of statute.  And the

19  independent board of trustees, while there are certainly --

20  there are some analogies that can be made, undoubtedly, but

21  they are not a creature of statute.  There is no provision for

22  them under the Bankruptcy Code.  And therefore I don't believe

23  that they should and can receive the same protections under

24  *Pacific Lumber.*

25      And so hopefully that -- that is my best shot at

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 20-3   Filed 12/07/23   Page 54 of 214   PageID 7652
Exhibit Exhibits 53-58   Page 308 of 692

211

1    answering, directly answering the question that Your Honor

2    posed.

3            THE COURT:  Okay.

4            MR. DRAPER:  Mr. Dondero also has issue with the

5    overbroad continuing jurisdiction of this Court.  I believe

6    Mr. Rukavina has stated that rather succinctly, too.  Merely

7    ruling upon whatever claim is colorable or not certainly has

8    definite impacts.  If this Court has jurisdiction to do that

9    when it otherwise wouldn't have jurisdiction, it enacts an

10   expansion, a potentially impermissible expansion of this

11   Court's jurisdiction.  And for that reason, the plan should --

12   confirmation should be denied.

13       Getting into the particulars of 1129, Your Honor, there is

14   problems under 1129(a)(2).  Those are the solicitation

15   problems.  Let's just kind of look at what the evidence

16   showed.  On November 28th, there was a disclosure statement,

17   it was published to all creditors, and it said, under this

18   plan, you're going to get 87 cents.  It wasn't a range.  Now,

19   there was some assumptions that went in there, but they said,

20   under a liquidation of all these assets, you're going to get

21   62 cents.

22       The Debtors came back approximately two months later, on

23   January 28th, and said, oh, wait, we missed the boat here, and

24   actually, under the plan, you're going to get 61 cents.  And

25   under a liquidation, though, you'd only get 48.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 55 of 214   PageID 7653

212

1    Well, the problem is, already, two months later, they've

2    already told you they missed the boat on what the liquidation

3    analysis was just two months ago.  And two months ago, they

4    told you under a liquidation you'd get 62 cents, and now we're

5    telling you you're going to get less.  That's at least some

6    very good evidence that the best interests of the creditors

7    isn't being met, and potentially a liquidation is much better.

8    They then came back, potentially maybe realizing that

9    problem, also because some new information came in with the

10   employees, and also with UBS, which adjusted the overall

11   general unsecured claims pool, and said, well, under the plan

12   you're going to get 71 cents, and under a liquidation you're

13   going to get 55 cents.

14   In between those iterations from November to February,

15   they found $67 million more in assets.  So Mr. Seery testified

16   he believed some of that's as to market increases in values,

17   and some (garbling) investment, market -- securities.  And

18   some were just in these private equity investments.

19   There are indeed some rollups behind all of these numbers.

20   I do understand why they wouldn't want to make some of these

21   numbers public, because they might not be able to get --

22   create the upside for any particular asset class that they're

23   seeking to monetize.

24   However, we and others, including Mr. Draper, asked for

25   those rollups to be provided, and we certainly could have

008048

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-13   Filed 12/07/23   Page 56 of 214   PageID 7654

213

1   taken those under seal or a confidentiality agreement, could

2   have also put those before this Court under seal and the

3   Debtor could have put those rollups before this Court under

4   seal.  It elected not to do so.

5       So, rather, what you have is the naked assumptions of this

6   is what we think we can monetize the assets, or we're not

7   going to tell you what it is, but trust me, Creditors, and

8   cool, we found $67 million worth of value in the past two

9   months, so therefore we're going to beat the liquidation

10  analysis that we previously told you just two months ago.

11      They also acknowledge that, in those two months, that

12  there was going to be about $26 million in increased costs

13  from their November analysis to their February analysis.  And

14  they included that in their projections.

15      Finally, they acknowledged, in those two months, that we

16  had previously estimated -- and they even have it in their

17  assumptions in November liquidation and plan analysis -- that

18  UBS, HarbourVest, and I believe it was Acis, were all going to

19  be valued at zero dollars, and that's what the claims were

20  going to be.  Well, they kind of missed the boat on those, and

21  they missed it by a lot.  They -- it increased all the claims

22  in the pool from $195 million to $273 million, or sorry, I

23  don't -- look at that again, but it was an increase of $95

24  million.  I'm sorry, 190 -- the claims pool increased from

25  $194 million to -- I'm sorry, Your Honor, I have too many

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3 Filed 12/07/23   Page 57 of 214   PageID 7655

214

1   papers in front of me -- on November, the claims pool was 176

2   and it increased by February 1st to 273.  Therefore,

3   approximately $95, almost $100 million worth of claims that

4   they weren't anticipating that actually came in.

5        That tells you about the quality of the assumptions that

6   went into the analysis to begin with.  They missed it by 50

7   percent on what the overall claims pool was going to be.

8   That's significant.  It's material.

9        There is a lot of other assumptions that could go into

10   this document, and one of those assumptions are how much are

11   we going to be able to monetize these assets for?  One other

12   assumption is, well, how much is it going to cost during the

13   two-year life of this wind-down?  Another assumption is going

14   to be, are we actually going to be able to wind down in two

15   years?  Because if we're not, well, guess what, all those

16   costs are going to go up.  Another assumption is, well, how

17   much are those fee claims going to be over the two-year

18   period?  Again, if it goes over two years, they're going to be

19   significantly higher.  Moreover, you might have just missed

20   what the burn rate is.

21        So I think it's rather telling that the assumptions made

22   of -- all the way back of over two -- of only two months ago

23   were off by $100 million, and therefore it skewed all of the

24   plan-versus-liquidation analysis all over the board.

25        That's the only evidence that the Debtor has put forth as

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Exhibit Exhibit 53-58   Filed 12/07/32   Page 58 of 214   PageID 7656

215

1    to why it's in the best interest of the creditors.  And quite

2    frankly, we don't believe they have met their burden.  And it

3    is their burden to prove to Your Honor that the plan is better

4    than what a Chapter 7 trustee will -- can do.

5         What the evidence does show, as far as what the plan would

6    do as compared to a hypothetical Chapter 7 trustee, is that we

7    know for sure that the Claimant Trust base fee, just over the

8    two years, is going to be $3.6 million.

9         (Interruption.)

10             MR. TAYLOR:  I'm sorry.

11             THE COURT:  Someone needs to put their device on

12   mute.  I don't know who that was.

13             MR. TAYLOR:  Oh, I'm sorry.  I thought you said

14   something, Your Honor.

15             THE COURT:  No.

16             MR. TAYLOR:  So what we do know is the Claimant

17   Trustee base fee is going to be $3.6 million.  What we don't

18   know and what was not put into evidence because they are still

19   negotiating it is there's going to be a bonus fee on top of

20   that that's going to be paid to Mr. Seery.  Is that $2

21   million?  Is that $4 million?  Is that $10 million?  Well, we

22   don't know.  We can't perform that analysis as compared to

23   what a hypothetical Chapter 7 trustee could be.  Nor can Your

24   Honor, based upon the evidence presented.

25        And quite frankly, I don't see how one could ever conclude

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33-53 Filed 12/07/23   Page 59 of 214   PageID 7657

216

1    -- and there are some other unknowns that we're about to go

2    over, including the Litigation Trust base fee and there are

3    collection fees, contingency fees.  Those are also to be

4    negotiated.  To be negotiated and unknown.  You can't perform

5    the analysis.  The Debtor couldn't perform the analysis

6    because those are to be negotiated, so you can't tell whether

7    a Chapter -- hypothetical Chapter 7 trustee might come out

8    better because he's not going to incur all these costs.  We

9    know that they're going to incur D&O costs.

10           THE COURT:  Let me interject right now.

11           MR. TAYLOR:  Sure.

12           THE COURT:  Again, I'm going to go back to

13    understanding who your client is arguing for.  Okay?  Again,

14    as we've said before, Mr. Pomerantz did not technically say no

15    standing, but he thought it was important to point out the

16    economic interests that our Objectors either have or don't

17    have.  Okay?

18        So I'm looking through my notes to see exactly what the

19    Dondero economic interest is.  I have something written in my

20    notes, but I'm going to let you tell me.  Tell me what his

21    economic interests are with regard to this Debtor, this

22    reorganization.

23           MR. TAYLOR:  Your Honor, I believe he has been placed

24    into Class 9, Subordinated Claims.  So to the extent that

25    there is recovery available to Class 9, he can recover on

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit D-3 Filed 12/07/23   Page 60 of 214   PageID 7658

217

 1  those claims.

 2          THE COURT:  But what proof of claim --

 3          MR. TAYLOR:  We also have --

 4          THE COURT:  What proof of claim does he have pending

 5  at this juncture?

 6          MR. TAYLOR:  Your Honor, I would have to go back and

 7  look.  I don't have the proofs of claim register in front of

 8  me.  And I'm sorry, if I tried to speculate, I would be doing

 9  a disservice to my client and this Court by trying to

10  speculate.  I did not prepare those proofs of claim.  People

11  in my firm did.  But I would be merely speculating if I tried

12  to give you an answer off the spot.  And I apologize.  I'm

13  happy to submit a post-confirmation hearing letter --

14          THE COURT:  No, no, no.

15          MR. TAYLOR:  -- as to that.

16          THE COURT:  I'm not going to allow one more piece of

17  paper in connection with confirmation.  I thought you would be

18  able to answer that.

19          MR. TAYLOR:  I'm sorry.  I just don't want to lie to

20  Your Honor.

21          THE COURT:  What about his -- what would be an

22  indirect equity interest?

23          MR. TAYLOR:  Well, again, there are a lot of people

24  that know this org chart a lot better than me.  This is me

25  going on hearsay myself.  But I understand he also owns a lot

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23 Page 61 of 214   PageID 7659
Page 205 of 692

218

1    of indirect interests in subsidiaries, some of which are

2    majority, some of which are minority, and some of which he

3    owns maybe directly, some of which through other entities.  So

4    the way in which these assets could be monetized at the sub-

5    debtor level could certainly impact his economic rights and

6    could impact him greatly.  For instance, if the --

7              THE COURT:  I really wanted an exact answer.

8              MR. TAYLOR:  Mr. Seery --

9              THE COURT:  I really wanted an exact answer, not just

10   he has an indirect interest in, you know, some of the 2,000 --

11   I'm not going to say tentacles, but --

12       I'm going to interrupt briefly, because I really want to

13   nail down the answer as best I can.  Mr. Pomerantz, can you

14   just remind me of what your answer was or statement was

15   regarding Mr. Dondero, individually, his economic stake in all

16   this?

17             MR. POMERANTZ:  He has an indemnification claim

18   that's been objected to, --

19             THE COURT:  That's the one and only --

20             MR. POMERANTZ:  -- although it's not before --

21             THE COURT:  That's the one and only pending proof of

22   claim, right?

23             MR. POMERANTZ:  That's my understanding.  And while

24   it's not before the Court, we could all imagine whether Mr.

25   Dondero's going to be entitled to indemnification.

008054

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33-5ed 12/07/236 of 692 62 of 214   PageID 7660

219

 1    He has an interest in Strand, which is the general

 2  partner.

 3          THE COURT:  Right.

 4          MR. POMERANTZ:  And Strand owns a quarter-percent --

 5  a quarter of one percent of the equity.  I believe that is all

 6  of Mr. Dondero's economic interest in the Debtor.

 7          THE COURT:  Okay.  So, again, I'm just trying to, you

 8  know, understand who he's looking out for, for lack of a

 9  better way of saying it, Mr. Taylor, in making these

10  arguments.

11          MR. TAYLOR:  So, there is also, and this is -- I'm

12  not involved in what are these going to be filed collection

13  suits, or some of which have been filed, some of which have

14  not been filed, none of which I believe the answer date has

15  been -- has passed or come to be yet.

16      But he is also a defendant in collection suits on these

17  notes, as you are undoubtedly aware.

18          THE COURT:  Okay.  He's a defendant in adversary

19  proceedings.  Okay?  That makes him a party in interest to --

20  well, I keep -- that makes him have standing to make an

21  1129(a)(7) argument?  That's why I'm going down this trail.

22  Because you've spent the last five minutes talking about, you

23  know, creditors could do better in a Chapter 7 liquidation.

24  I'm not sure he has standing to make that argument, so I'm

25  wanting you to address that squarely.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 63 of 214   PageID 7661

220

1          MR. TAYLOR:  Your Honor, I believe he has economic

2     interests up and down the capital structure.  And I cannot

3     describe to you, without wildly speculating and potentially

4     lying to this Court, which I'm not going to do, without some

5     time to have looked at that, because I was -- I was not

6     involved in the proofs of claim and I am not his accountant.

7     So I could not do that without wildly speculating, so I just

8     -- I would like to more directly answer your question, Your

9     Honor.  I am not trying to avoid the question.  But I can't

10    honestly answer your question with true facts as we sit here

11    right now.

12          THE COURT:  All right.  But do you agree or disagree

13    with me that only parties -- the only parties that really can

14    make an 1129(a)(7) argument are holders of claims or interests

15    in impaired classes?

16          MR. TAYLOR:  Your Honor, I believe that Mr. Dondero

17    has standing to do so by virtue of claims for indemnification

18    --

19          THE COURT:  Okay.

20          MR. TAYLOR:  -- if these -- if these -- if this

21    Debtor (indecipherable) able to meet its obligations to

22    indemnify him.  And some of those are significant claims that

23    are being brought against him that could total millions, if

24    not tens of millions of dollars, just in defense costs alone,

25    that I do believe give some standing.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Exhibit Exhibit 3-53 Filed 12/07/23   Page 64 of 214   PageID 7662

221

1          THE COURT:  Okay.  So, assuming you're right, you

2     think the evidence does not show this is better than a Chapter

3     7 liquidation where we would have a stranger trustee come in

4     and just, yeah, I guess, cold-turkey liquidate it all.

5          MR. TAYLOR:  Your Honor, I do believe that the

6     evidence shows that the Debtor hasn't met its burden as to

7     this.  A Chapter 7 trustee doesn't necessarily have to

8     liquidate immediately.  It can run these -- these assets.  I

9     mean, Mr. Seery is going to do it with ten people.  At one

10    time, just two months ago, he said he was going to do it with

11    three people.  A Chapter 7 trustee could certainly have a

12    limited runway, or even an extended runway, if it so asked for

13    it, to liquate these Debtors.

14         Moreover, there would be at least the requirements that

15    the Chapter 7 trustee would request the sale, tell creditors

16    about it.  And, as many courts have said, the competitive

17    bidding process is the best way to make sure that you ensure

18    the highest and best offer that you can get.

19         Mr. Seery has not committed to providing notice of sales

20    to creditors and other parties in interest, potentially

21    bringing them in as bidders.  They -- he could name a stalking

22    horse, but he has not indicated any desire to do so.  A

23    Chapter 7 trustee would endeavor to do so.

24         So I do believe that there are some advantages.  And

25    you've heard no testimony that they've performed any analysis

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 65 of 214   PageID 7663
Exhibit Exhibit 53 Page 339 of 692

222

1   or conducted any interviews with any Chapter 7 trustees as to

2   whether or not this was possible or not.  They just made the

3   naked assumption that they would do work based upon what they

4   said was their experience.  And Mr. Seery's deposition, when

5   it was taken and noticed as a 30(b)(6) deposition, and I

6   believe it has been entered into evidence here, he said the

7   last time he dealt with a Chapter 7 trustee was 11 or 13 years

8   ago, and it was the *Lehman* case, and that was the -- a SIPC

9   trustee.  So --

10          THE COURT:  Well, --

11          MR. TAYLOR:  -- that's the last time he had any

12   experience with it.

13          THE COURT:  -- again, I don't mean to belabor this

14   point, just like I didn't mean to belabor a few others.  But,

15   you know, there is a mechanism, yes, in Chapter 7, Section

16   704, for a trustee to seek court authority to operate a

17   business.  But it's not a statute that contemplates long-term

18   operation.  Okay?  It's just, oh, we've got a little bit of --

19   you know, we have some assets here that really require a

20   short-term operation here.

21       If it's long-term, then you convert to Chapter 11.  Okay?

22   It's just a temporary tool, Section 704.  Right?  Would you

23   agree with me?

24          MR. TAYLOR:  That's typically how it has been used.

25          THE COURT:  Okay.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33-5   Page 207/320   Page 66 of 214   PageID 7664

223

1          MR. TAYLOR:  But that's not to say that it's limited

2     in time by the statute itself.  It doesn't say that it can't

3     go for one year or two years.  That can be a short wind-down

4     period.

5          THE COURT:  But hasn't your client's argument been

6     this past several weeks that Mr. Seery is moving too fast,

7     he's wanting to sell things and he needs to hold them longer?

8     I mean, these two argument seem inconsistent to me.

9          MR. TAYLOR:  So, just because a Chapter 7 trustee has

10    been appointed doesn't mean that he has to sell them any

11    faster than Mr. Seery.

12       I think what the -- the problem with the process that has

13    been going on with Mr. Seery, my client's problem with it, is

14    not necessarily the timing but the process that Mr. Seery is

15    going through with these sales.  Provide notice, allow more

16    bidders to come in, make sure that he's getting the highest

17    and best price.  And if that happens to be Mr. Dondero who

18    offers the highest and best price, great.  And if Mr. Dondero

19    gets outbid by somebody, well, that's all the more better for

20    the estate.

21         THE COURT:  Okay.  Continue your argument.

22         MR. TAYLOR:  I believe we covered a lot of it, Your

23    Honor, and the plan analysis is all based upon their

24    assumptions that there's $257 million worth of value.  Again,

25    there's no rollup provided as to how that asset allocation is

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 67 of 214   PageID 7665

224

1    broken out, but they consist of a couple of items.

2         First, there's the notes; and second, there's the assets.

3    The notes are either long-term or demand notes.  Those long-

4    term notes, Mr. Seery will tell you some have been validly

5    accelerated and therefore are now due and payable.  I think

6    there's arguments to the contrary.  But those long-term notes

7    probably have some both time value of money and collection

8    costs.  And then, of course, you have to discount them by

9    collectability issues, too.

10        I don't believe any analysis went into it, or at least the

11   Court was not provided any data or analysis as to what

12   discounts were applied to those notes.  And, therefore, I

13   don't think that this Court can make any determination that

14   the best interests of the creditors have been met.

15        As far as the assets that are to be monetized, again,

16   there's two sub-buckets of those assets.  There's securities

17   that are to be sold.  Some of those are semi-public securities

18   that have markets.  Those are somewhat more readily

19   ascertained.  The others are holdings in private equity

20   companies, and sometimes holdings in companies that own other

21   companies.

22        There's no evidence of the value -- empirical evidence of

23   the value of those companies, nor of the assumptions that went

24   into as to when they should be sold, how much they'd be sold

25   for.

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-53 Filed 12/07/22    Page 68 of 214    PageID 7666
Page 222 of 692

225

1      Again, I do realize the sensitive nature of such

2  information, but that could have been placed under seal.  And

3  without that information, I don't believe that the Court can

4  conduct the due diligence it's necessary to say the best

5  interest of the creditors have been met.

6      To sum up, Your Honor -- oh, I'm sorry.  One other point

7  that I did want to talk about before I summed up is, you know,

8  Mr. Pomerantz and I were listening to a different record or I

9  was totally confused as to the testimony that was put forth

10 regarding the directors and officers.  I believe the testimony

11 in the record is extremely clear that the Debtor made no

12 effort to go out and find out if it could obtain directors and

13 officers insurance without a gatekeeping injunction or a

14 channeling injunction, whatever you want to call it.  I

15 believe that his testimony was extremely clear.  He didn't

16 shop it.  He doesn't know.  And that's what the record is

17 before this Court.

18     To the extent that the Debtor wants to rely upon we can't

19 get Debtor -- or, directors and officers insurance because

20 without this gatekeeping function we just can't get it, I

21 believe the record just wholly does not support that.  The

22 testimony was at least extremely clear, as how I heard it.

23 Your Honor will have to review the record herself, but I don't

24 believe that there was much argument about it.

25     I'm sure -- as I stated in the beginning, Your Honor, this

008061

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 53 Filed 12/07/23   Page 69 of 214   PageID 7667

226

1   is a court of equity.  It could deny confirmation, as I

2   believe Your Honor should, based upon the flaws in the plan.

3       If Your Honor finds that the plan as written is

4   impermissible because of any of the exculpation or the

5   gatekeeping functions that they're asking, the testimony is

6   equally clear that the independent directors would not serve

7   in -- as officers of the Reorganized Debtor.  Any plan that is

8   put forth by the Debtor has to tell the people who are going

9   to be officers going forward.  And with that naked testimony

10  before the Court, that it's simply not feasible, and I don't

11  think it is one of the possible -- where the Court can come

12  back and say, well, I can't confirm this plan as written, but

13  if you change it and rewrite it to get rid of the certain

14  offensive parts of the exculpation or the gatekeeping

15  functions, then we can confirm this plan.  And I think the

16  evidence before this Court is it's not feasible because none

17  of the directors will serve in that capacity, and therefore

18  this plan should be dead on arrival if Your Honor agrees the

19  proposed provisions do not meet *Pacific Lumber*.

20      We would ask the Court to deny confirmation, but in the

21  alternative, to at least take this under advisement.  Give us

22  a time frame -- we'd ask for 30 days -- but give us a time

23  frame of when the Court is going to rule, to allow the

24  positive conversations to move forward.

25      To that end, Your Honor, there is, indeed, a hearing on

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23 Page 70 of 214   PageID 7668

227

1    the extension of a temporary injunction and contempt that is

2    scheduled for Friday.  I understand that the parties, at least

3    the joint parties, will not -- will agree to, I'm sorry, will

4    agree to the extension of the temporary injunction until such

5    time as the Court can rule on confirmation.  I do see that

6    there could be a lot of harm done at the Friday hearing.  We

7    would ask that the Court additionally continue that hearing on

8    that motion and on the injunction, and contempt, until such

9    time as confirmation has been ruled upon.  It will be both

10   efficient and allow discussions to continue regarding

11   potential global resolution.

12        And so that is the end of my argument, Your Honor.

13        THE COURT:  All right.  Thank you.  All right.  Mr.

14   Pomerantz, do you have any rebuttal?

15        REBUTTAL CLOSING ARGUMENT ON BEHALF OF THE DEBTOR

16        MR. POMERANTZ:  Yes, I do, Your Honor.  I want to

17   address a couple of comments that Mr. Taylor made towards the

18   end.  First of all -- and, actually, the beginning.

19        We think Your Honor should rule on confirmation.  Ruling

20   on confirmation and having an entered confirmation order are

21   two separate things.  We understand that a new offer was made.

22   Whether that's acceptable to the Committee -- I actually think

23   it will enhance the ability of the parties to see if they

24   could reach a deal if there's (audio gap) that Your Honor is

25   going to confirm the plan.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 20-13   Exhibit Exhibit 3-53 Filed 12/07/23   Page 71 of 214   PageID 7669
Page 71 of 214

228

 1    Again, doesn't mean a confirmation order has to be

 2    entered, but I think, based upon my personal experience in

 3    negotiating with Mr. Dondero, that your clear communication to

 4    the parties that, unless something happens, you will enter a

 5    confirmation order, I think will change things.  Okay?

 6    Without getting into settlement discussions, things have

 7    changed over the last several days, and we wish you would have

 8    -- wish things would have happened sooner.  But we totally

 9    disagree that Your Honor should hold your ruling for 30 days

10    or any other period of time.

11    Part of the reason I think they are making that argument

12    is because they have an examiner motion and they recognize

13    that, upon confirmation, the examiner motion is moot.  So I

14    think there's strategic reasons as well.

15    We don't think there should be a continuance of the TRO

16    hearing and of the contempt hearing.  As Your Honor recalls,

17    the contempt motion was specifically set for this time to give

18    Mr. Dondero enough time to prepare.  Your Honor was sensitive

19    to his due process concerns.  We set the TRO, the preliminary

20    injunction hearing against the Advisors and the Funds, we set

21    that, again, knowing that it would be after confirmation.

22    So we do not agree that either should be continued.

23    Again, we think the more direct, unequivocal answers Your

24    Honor can give to the parties, the better off we'll be.

25    I guess -- Mr. Taylor and I do agree that the record was

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3.53 Filed 12/07/23 Page 72 of 214    PageID 7670

229

1    clear.  I guess we just disagree on the clarity of it.  I

2    heard Mr. Tauber testify that when he went out to people, to

3    insurance carriers, after he and Aon were engaged, they all

4    talked about a Dondero exclusion.  Okay?  They weren't

5    convinced into a gatekeeper provision because it was provided

6    as part of the normal materials you would provide in a

7    bankruptcy court and trying to get D&O liability in the

8    context of a bankruptcy case.  Mr. Tauber's testimony was

9    pretty clear, that carriers wanted to have a Dondero

10   exclusion.  And, in fact, the only reason we were able to get

11   any coverage was because of the gatekeeper.

12        So, yes, the record was clear.  We just disagree.

13        I'd like to go back to Mr. Draper's comments going -- and

14   a couple of things, obviously, overlap.  I guess one of the

15   things here, it's great that everyone is coming in here as

16   different interests and different parties or whatnot.  But as

17   I mentioned, Your Honor, at the outset, and I've repeated a

18   few times, these are all -- the only people we have not been

19   able to resolve issues with are the Dondero parties and the

20   related parties.  And I recall the tentacles.  Mr. Davor

21   questioned that.  Mr. Clemente, his comments.  But the fact of

22   the matter is, Your Honor, Your Honor has heard testimony.

23   Your Honor has had hearings.  Mr. Rukavina represents the

24   Advisors and the Funds.  Your Honor has never seen the

25   independent board member testify in this case to demonstrate

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 73 of 214   PageID 7671

230

1   how these entities are really different.  So while Mr.

2   Rukavina does -- you know, tries his best, and I think he has

3   limited stuff to work with, but I give him credit for doing

4   the best he can, these are all Dondero-related entities and

5   Your Honor has seen that.

6       So, Your Honor, going to the resolicitation argument, it

7   actually has taken up a lot more time than the argument is

8   worth, for one very simple reason.  As I said in my argument,

9   and as Mr. Taylor and Mr. Draper totally ignored, there were

10  17 creditors who voted yes, 17 creditors who were apparently

11  misled, that Mr. Draper is looking out for the little guy and

12  Mr. Taylor is fumbling over his reason for why that's

13  important to Dondero.  And of those 17 creditors that voted

14  yes, Your Honor, they were either the employees related to

15  HarbourVest, UBS, Redeemer, or Acis, except for two.  And you

16  know the other two?  One was Contrarian, a claim buyer, who,

17  yeah, elected to be in Class 7, and the other was an employee

18  with a dollar claim.

19      So the whole argument that there should be a

20  resolicitation is preposterous, Your Honor.  But to go to some

21  of the specifics in what they argued, we didn't require

22  creditors to monitor recovery.  The footnote -- as I

23  indicated, the UBS 3018 was in the disclosure statement that

24  went out.  It didn't make it to the projections.  It was

25  clearly -- and they characterize it, I think Mr. Draper

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23 Page 74 of 214   PageID 7672

231

1    characterized it as buried in the document.  There is a

2    section that every disclosure statement is required to have

3    called Risk Factors.  This disclosure statement had that.  And

4    in the disclosure statement, it talked about the amount of

5    claims being a risk factor.

6        Mr. Draper also said that the Debtor totally changed its

7    business model from the first to the second analysis.  That is

8    incorrect.  The Debtor was always going to manage funds.  Yes,

9    did they add the CLOs?  But before, they were going to manage

10   Multi-Strat, they were going to manage Restoration Capital,

11   they were going to oversee Korea, they were going to be doing

12   the management of the funds.  So there wasn't a big change in

13   the business model, Your Honor.

14       Mr. Taylor, on the solicitation issue, says we found $67

15   million in assets.  You know, that's a disingenuous statement.

16   I think over $20 million was found because his client and

17   related entities didn't make a payment on notes and they got

18   accelerated.  So while before we would have had to wait over

19   time if they were paid, it's not surprising that Mr. Dondero

20   and his related entities just failed to basically pay the

21   notes.

22       So that was, I think, over $20 million.  And then there

23   was the HCLOF asset.  That was acquired in the HarbourVest

24   settlement.  And then there was basically an increase in some

25   value to some assets.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 75 of 214   PageID 7673

232

1    So there wasn't anything mysterious here.  There wasn't

2    anything that the Debtor was trying to hide.  There weren't

3    any found assets.  It was based upon different circumstances.

4        Mr. Taylor complains about the lack of rollup of assets,

5    the lack of evidence on the best interests of creditors test.

6    Your Honor, you've had extensive testimony from Mr. Seery

7    about what would happen in a Chapter 7 and what would happen

8    in a Chapter 11.  And you know why we didn't provide the

9    information to Mr. Taylor and his client on what the rollup of

10   the assets would be, and do you know why he wants them?  He

11   wants to know what the assets are so he can try to bid.

12       And there also was the allegation that the failure to

13   allow them to bid means we're going to get less in a Chapter

14   11 than a 7.  Two comments to that, Your Honor.  Number one,

15   if that was the case, a debtor would never be able to satisfy

16   the best interests of creditors test.  If the existence of a

17   public process *de facto* meant you would get more value than

18   outside, you would never be able to satisfy that.  And, quite

19   honestly, that's just not the law, Your Honor.

20       You have an Oversight Committee with over $200 million of

21   creditors who are going to watch Mr. Seery like a hawk, like

22   they have watched him during the case.  And the concern that

23   somehow, because these assets are not put into full view to

24   sell, that they will get less value, it's just not -- it's not

25   supported by the evidence at all, Your Honor.  And Mr. Seery

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-3 Filed 12/07/23    Page 76 of 214    PageID 7674

233

1   will make the determination.  If it makes sense to notice up

2   and provide Mr. Dondero with notice, he will.  If he doesn't,

3   he won't.

4        Your Honor, going -- oh, and then the last comment on the

5   -- that I'll make on the resolicitation and the liquidation

6   analysis is Mr. Taylor chides us and we've been criticized for

7   not disclosing more about the HarbourVest and the UBS

8   settlements and that we were off substantially.  Your Honor,

9   you've heard testimony that we were in pending litigation with

10  HarbourVest and UBS at the time.  What kind of litigant would

11  we be if we came in and said, you know, Your Honor, you know,

12  Creditors, we think the UBS claim is going to be allowed at

13  $60 million and we think the HarbourVest claim is going to be

14  allowed at $30 million?  Would that really have benefited

15  creditors and this estate, to basically, after we took the

16  position, hard negotiations and hard pleadings that we

17  prepared, and in some cases filed, that we didn't have any

18  liability?  It would have made no sense, and it would have

19  been a dereliction of our duty to actually come out and say

20  what the claims -- the claims were, or what we thought they

21  could be settled for.

22       Your Honor, going back to Mr. Draper's comments.  He

23  started with the exculpation.  First he made a comment that I

24  don't think he intended what he said, but he said that the

25  exculpation order, the January 9th order, cuts off when the

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33-53 Filed 12/07/23   Page 77 of 214   PageID 7675

234

1   independent directors go away.  I think what he meant to say

2   is that since the three people are not going to be independent

3   directors anymore, that basically any actions going forward by

4   any of those three are not covered.  But let's be clear.  The

5   January 9th order is in effect, and if at some point in the

6   future somebody has a claim against those three gentleman, or

7   their agents, for what they did as independent directors or

8   their agents, that order will apply.

9        Your Honor, we next had a discussion, or Mr. Draper and

10  you had a discussion on professionals.  I'm aware of the Fifth

11  Circuit law that says res judicata, fee applications.  I think

12  that only applies to claims that the Debtor and estate would

13  have.  It doesn't really apply to an exculpation.  But there's

14  Texas state law that I identified in our brief and we cited to

15  that limits third parties' ability to go after professionals.

16       But the bottom line is the Fifth Circuit, in *Pacific

17  Lumber*, didn't deal with professionals.  Your Honor was

18  correct in pushing both Mr. Taylor and Mr. Rukavina.  What

19  really that was was a policy case.  And professionals have

20  nothing to do with 524(e).  So the *Palco* and the *Pacific

21  Lumber* reference and explanation of 524(e) doesn't have

22  anything to do with professionals.  And we would submit, Your

23  Honor, that an exculpation, especially in a case like this, is

24  important for professionals.

25       I understand Your Honor's comments that maybe it's much

008070

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 353 Filed 12/07/23    Page 78 of 214    PageID 7676
Page 232 of 692

235

1    ado about nothing, but I'm not really sure it's much ado about

2    nothing when we have Mr. Dondero and his affiliates who,

3    notwithstanding their efforts to just claim that all they are

4    doing is trying to get a fair shake, Your Honor knows better.

5    Your Honor knows better from the years you've been litigating

6    with them, and we know better and the Debtor knows better from

7    what the independent directors have been dealing with.

8            THE COURT:  Let me ask you this, though.  I came into

9    the hearing with the impression we were just talking about

10   postpetition pre-confirmation, or pre-effective date maybe I

11   should say, was the expanse of time covered by exculpation.

12   And Mr. Rukavina said no, no, no, go back, look at, I don't

13   know, Subsection 4 of something.  It is a post-confirmation

14   concept.  What is your response to that?

15           MR. POMERANTZ:  I believe it's implementation.  And,

16   again, --

17           THE COURT:  Implementation?  Yes.

18           MR. POMERANTZ:  -- I think Mr. Rukavina -- right.  I

19   think Mr. Rukavina and Mr. Taylor and Mr. Draper have done a

20   great job trying to muddy the issues.  They talk about our

21   sleight of hand and how we're trying to do things that are way

22   beyond the bankruptcy court's jurisdiction.  We are not.  I

23   think they are trying -- what they have done throughout the

24   case is throw up enough mud.  And here's, here's the answer to

25   that question, Your Honor.  Implementation.  Okay?  We know

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Exhibit Exhibit 3-3 Filed 12/07/23   Page 79 of 214   Page 79 of 214   PageID 7677

236

1    what implementation means.  The plan says implementation is

2    cancelation of the equity interests, creation of new general

3    partners, restatement of the limited partners, establishment

4    of the Claimant Trust and Litigation Sub-Trust.  That's the

5    implementation.

6        We are not trying to get exculpation for post-confirmation

7    activity.  Actually, my partner, Mr. Kharasch, in specifically

8    addressing Mr. Rukavina's concern, said, look, if you have a

9    problem with cause, if you have a problem, want to exercise

10   your rights, we're only asking you to come back to the Court.

11   We are not stopping you.

12       So the whole argument that the exculpation is really broad

13   and is not really -- does not really cover just the plan, the

14   approved plan, I think is a red herring.  Implementation is

15   implementation in the context of the plan.

16       And also Mr. Rukavina tries to argue that, well, it's

17   administration, it's not really you acting any operation of

18   business.  I just don't think there's any support in the case

19   law.  Your Honor has overseen this case, overseen this

20   Debtor's activities, overseen the independent directors'

21   activities, overseen Strand's activities, overseen the

22   employees' activities.  And those activities have been

23   (indecipherable) administration of the case.  And his attempt

24   to create a different category for, well, it's not

25   administration, it's operation and so it doesn't apply, I just

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 26-5    Exhibit Exhibit 353 Filed 12/07/23 Page 80 of 214    Page 80 of 214    PageID 7678

237

1   think is wrong.

2       Your Honor made a couple of comments about what was

3   *Pacific Lumber* doing.  It was a policy decision.  If there was

4   a bright-line rule, then nobody would be entitled to

5   exculpation.  The very fact that the Fifth Circuit said that

6   Committee members are different made -- makes it clear it was

7   -- it was policy.

8       And Mr. Taylor's comments that, well, their creation of

9   statute, Chapter 11 trustees and Committee members, that's not

10  what basically the case said.  If you look at the citation to

11  touters in the case, it was we want people to volunteer and

12  who are needed for the process.  Committee members are needed

13  for the process.  We don't want to discourage them from coming

14  in.  And the only testimony you have on the independent

15  directors is from Mr. Dubel, and he testified the importance

16  of independent directors to modern-day Chapter 11 practice,

17  the importance of exculpation, indemnification, and D&O

18  insurance.  And his testimony: uncontroverted.  The Objectors

19  could have brought in someone to say something different, but

20  the only testimony before Your Honor is, if Your Honor does

21  not approve exculpations in cases like this, you will not get

22  independent directors and it will have an adverse effect on

23  the Chapter 11 process.

24      So, while I appreciate all the Objectors trying to say

25  bright line, trying to say *Pacific Lumber*, that is the gut

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-3 Filed 12/07/23   Page 81 of 214   PageID 7679

238

```
 1   reaction, right?  That's -- it's easy to say.  But Your Honor

 2   will know better, from reading the cases, that's not what

 3   Pacific Lumber says.  And for the several reasons I gave, it's

 4   the reason why Pacific Lumber does not govern the decision in

 5   this case.

 6       Your Honor, Mr. Draper then started to talk about Craig.

 7   And everyone cites Craig as this, you know, limiting

 8   jurisdiction.  Now, we acknowledge that Craig and the Fifth

 9   Circuit has a more limited post-confirmation jurisdiction

10   approach than the other Circuits, but it's not nonexistent.

11   And just because the Debtor is going out post-confirmation and

12   acting does not mean that the conduct that they are engaging

13   in is not -- and disputes that arise, doesn't come within the

14   Court's jurisdiction.  If that was the case, and I think Your

15   Honor recognized this, in your case it was the TXMS case,

16   while it's limited, more limited after confirmation, and I

17   think you even, in the case -- or, in one case of yours, said

18   that even after the case is closed there could be

19   jurisdiction.  So their just trying to argue Craig is just --

20   is just too much.

21       Going out of the gatekeeper, Mr. Draper tried to say we

22   are Barton, and that's it, and Barton has its limitations, et

23   cetera.  First of all, with respect to Barton, it is not

24   limited and doesn't include debtors-in-possession.  We have

25   cited cases in our materials where it has been applied to
```

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33-5   Filed 12/07/23   Page 82 of 214   PageID 7680

239

1  debtors-in-possession.

2      So, you know, look, maybe this is a provision -- this is a

3  proposition like many in bankruptcy, you could find a

4  bankruptcy court to agree with a proposition, but there's

5  cases all over the place on that.  There's cases applying to

6  post-confirmation.  The trend has been to expand *Barton*.  But

7  the beauty of it is, Your Honor, you don't have to rely on

8  *Barton*.  *Barton* was one of our arguments.  We gave *Barton* as,

9  you know, somewhat of an analogy but somehow applying because

10  in the -- because the independent directors were like the

11  trustees.

12      But we recognize it may be going farther than *Barton* has

13  previously gone.  But the case law is clear, it is being

14  extended.  But we -- I gave you several provisions of the

15  Bankruptcy Code that authorized you to enter a gatekeeper

16  order.  None of the Objectors objected on any of those

17  grounds.  They didn't say the statutes that I cited.  And it

18  wasn't only 105, I know bankruptcy practitioners love to cite

19  105, but there were three or four others that I mentioned, and

20  they're in our brief.  There's no case that they cited that

21  said that there is no authority on the gatekeeper.

22      But what was the argument that was raised?  And I think

23  Mr. Rukavina raised it, saying, you know, look, I don't

24  understand the argument of no jurisdiction, of jurisdiction

25  for a gatekeeper but no jurisdiction for underlying cause of

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Exhibit Exhibit 353 Filed 12/07/23   Page 83 of 214   PageID 7681
Page 237 of 692

240

1    action.  Well, Mr. Rukavina should read and Your Honor should

2    read, when you're considering the plan, the case, the *Villegas*

3    case in the Fifth Circuit as it dealt with *Stern*.  That was

4    particularly a case.  Does *Barton* -- is *Barton* impacted from

5    *Stern*?  By *Stern*?  And *Stern*, we know, limits the bankruptcy

6    court's jurisdiction.  But, no, the Fifth Circuit said, in

7    that case, no.  Even though the bankruptcy court's

8    jurisdiction is limited to hear the claim, there is nothing

9    inconsistent with that and allowing the bankruptcy court to

10   act as a gatekeeper.

11       So Mr. Rukavina's argument that, well, he'll present to

12   you that there's cause and you'll find there's no cause and

13   then he will be without a remedy by someone that had

14   jurisdiction, that really sounds good but it just doesn't

15   withstand analytic scrutiny.  There is a distinction.  They

16   are glossing over the distinction.  They don't like the

17   distinction.

18       And why is that distinction -- and why is it important in

19   this case?  Again, we're not talking about garden-variety

20   people who are just involved with a debtor and will get caught

21   up in a bankruptcy.  We narrowly tailored the gatekeeper to

22   enjoined parties.  Enjoined parties are the people before Your

23   Honor, some of the people that have made the Debtor's life

24   miserable over the last few months.

25       We have every interest and desire, as does the Committee,

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 84 of 214   PageID 7682

241

 1   to go out post-confirmation and monetize these assets.  But we

 2   see the clouds on the horizon.  We see all the pleadings that

 3   have been filed by the Objectors saying how, if there's no

 4   deal, there will be an unending amount of costs and appeals.

 5   It's, you know, the point, not too subtle.  It wasn't lost on

 6   us.

 7       Your Honor, going to Mr. Rukavina's arguments on Class 8

 8   cram down, again, it's really a hard argument to understand,

 9   but first I want to make a point.  He sort of mentioned -- and

10   I'm not sure if he intends to preserve this on appeal, but it

11   was not objected to and I'll ask for a ruling on it, Your

12   Honor -- he said that there was inappropriate separate

13   classification.  That was not raised in any of the objections.

14   We don't think it was properly before the Court.  We

15   understand there's a component of that in unfair

16   discrimination in connection with a cram down, but there is no

17   objection, there was no filed objection, to the separate

18   classification of the deficiency claims and the Class 8

19   unsecured claims.

20       And if you look at the voting, you realize it wasn't done

21   for gerrymandering, because if you put both claims together,

22   both classes together, you would have had one class that voted

23   yes.

24       So I don't believe the separate classification under the

25   1129 standards is appropriate for Your Honor to consider,

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/39 Page 85 of 214   PageID 7683

242

1    other than in connection with the cram down.

2         Now, Mr. Rukavina complains that the only way the

3    convenience class was decided was by way of negotiation.  Your

4    Honor, how else do provisions like that get decided?  And who

5    was the negotiation between?  It was between the Committee.

6    And one of the benefits of a Committee process, and I

7    represent a lot of Committees, you put people in a Committee

8    that have diverse interests and they can come up with an

9    appropriate result.  And here you have that.  You had one

10   creditor who was a convenience creditor.  You have three other

11   creditors who would lose liquidity if convenience payments are

12   made.

13        Do you think that UBS, Acis and Redeemer, do you think

14   they had a desire just to pay people off?  No.  It was part of

15   a collaborative process.  So to say that there was no basis

16   and no testimony on the appropriateness to have -- and how the

17   convenience class was put together just would be wrong.

18        And with respect to the absolute priority rule, Your

19   Honor, again, there's a missing link here, okay?  These are

20   contingent interests.  They are property.  No doubt they are

21   property.  But if I did not allow those creditors or those

22   equity to have a contingent interest, the argument would have

23   been made that the plan violates the absolute priority rule.

24   And I said that in my argument.  And why would it have

25   violated the absolute priority rule?  Because there's a

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23 Page 86 of 214   PageID 7684

243

```
 1    potential that creditors could get over a hundred cents on the

 2    dollar, plus interest.  So it's a game of gotcha, right?

 3         And why do they really care?  Mr. Dugaboy said in his --

 4    Mr. Draper said in his brief that Dugaboy cares because they

 5    may have wanted to buy the interest.  Well, I'm sure they can

 6    go to Hunter Mountain, you know, Mr. Dondero's left hand can

 7    go to his right hand, and I'm sure he'd be happy to sell the

 8    contingent interests.

 9         And with respect to the argument that Mr. Rukavina made

10    about control, equity be in control, yeah, control is a right.

11    No doubt.  You've got -- if you're giving control to the post-

12    confirmation Debtor, that could be a right and implicate the

13    absolute priority rule.  But what is the control here?  Equity

14    is not given any rights.  Your Honor heard how the post-

15    confirmation entity is structured.  It's going to be Mr.

16    Seery, overseen by an Oversight Board.  So I really don't

17    understand the concept of control.  There just is no violation

18    of the absolute priority rule.

19         Your Honor, Mr. Rukavina then took us to task for 2000 --

20    or, for not filing the 2015.3 statement.  And if you take his

21    argument to the logical conclusion -- well, we didn't file it,

22    we didn't comply with that Rule, so we're not in compliance

23    with the Bankruptcy Code, so we can never basically get our

24    plan confirmed, right, because it's a violation and we didn't

25    file and seek an extension.
```

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 33-53   Exhibit Exhibit 3-53 Filed 12/07/23   Page 87 of 214   PageID 7685   Page 87 of 214   PageID 7685

244

1    That's just a preposterous argument, Your Honor.  Mr.

2    Seery poignantly told the Court, in the rush of things that

3    were going on, it wasn't filed.  Did Mr. Rukavina, before

4    yesterday, having Mr. Dubel on the stand, did he ever ask

5    where is our 2015.3 report?  He probably didn't ask it because

6    the answer -- when I told him the reason why it wasn't filed

7    before January 9 was because I don't think Mr. Dondero wanted

8    it filed, and I think that's why, as Mr. Seery testified, we

9    were having a challenging time getting that information from

10   the in-house -- in-house.

11       But, yes, should it have been filed?  Yes.  But if that is

12   all they could point to through the course of the case that

13   Mr. Seery or Mr. -- or the rest of the board did wrong, you

14   know, I think that just demonstrates they did a fine job.

15              THE COURT:  All right.

16              MR. POMERANTZ:  Your Honor?

17              THE COURT:  You've got four minutes left.

18              MR. POMERANTZ:  Oh.  Okay.  Your Honor, going to Mr.

19   Rukavina and the Strand argument that it's a nondebtor entity,

20   as I explained in my argument, the Strand -- Strand needs to

21   get exculpation or else that's a backdoor way to the Debtor.

22   Forget about the independent directors, it's a backdoor way to

23   the Debtor.  Because Mr. Dondero will be in control.  If

24   Strand is sued for post-January 9th activities, he will assert

25   an administrative claim.  And one thing from *Pacific Lumber* is

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-53 Filed 12/07/23    Page 88 of 214    PageID 7686

245

1   clear, the Debtor is entitled to an exculpation as part of the

2   injunction and the -- and the discharge.

3       Your Honor, Mr. Kharasch adequately addressed Mr.

4   Rukavina's comments with the gatekeeper and the gatekeeper

5   problem.  We are not seeking to stop his clients, however

6   related they may be, from exercising their rights.  We are

7   seeking a process that will not embroil the Debtor in

8   litigation going forward.  There is no problem with Your Honor

9   acting as the gatekeeper to do so.  And to the extent that

10  they are bound by the January 9th order is not really an issue

11  for today.  That'll be an issue at the temporary -- the

12  temporary -- at the preliminary injunction hearing.

13      I -- just one minute, Your Honor.

14      (Pause.)

15          MR. POMERANTZ:  Your Honor, I think I covered a lot.

16  If there's anything that any of the Objectors have mentioned

17  that I failed to respond to, I'd be happy to answer questions

18  Your Honor has.

19          THE COURT:  All right.  I guess there's, what, about

20  two minutes left, if Mr. Clemente had anything.

21      Mr. Clemente, have you drifted off?  I doubt it.  But

22  anything else from you, Mr. Clemente?

23          MR. TAYLOR:  Your Honor, I show him talking -- this

24  is Clay Taylor -- but no one's hearing him.

25          THE COURT:  Okay.  Mr. Clemente, we are not hearing

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 33353 Filed 12/07/23   Page 89 of 214   PageID 7687

246

```
 1    you, or I'm not seeing you.  Make sure you're not on mute.
 2              THE CLERK:  He's not on mute, Judge.
 3              THE COURT:  He's not on mute?  So we must have a
 4    bandwidth issue or something else.
 5       All right.  Mr. Clemente, still not hearing or seeing you.
 6    We'll give him another 30 seconds.
 7              THE CLERK:  He's coming up.
 8              THE COURT:  He's coming up?  Ah, I see his name now.
 9              MR. CLEMENTE:  Your Honor, can you hear me?
10              THE COURT:  I can hear you now.
11              MR. CLEMENTE:  Okay, Your Honor.  I don't know what
12    happened.  I just switched another camera, so you may not be
13    able to see me, but can you hear me?  I'll be very quick.
14              THE COURT:  Okay.  I can hear you.
15              MR. CLEMENTE:  Can you hear me?
16              THE COURT:  Yes.
17              MR. CLEMENTE:  Okay.  Thank you, Your Honor.
18    CLOSING ARGUMENT ON BEHALF OF THE UNSECURED CREDITORS' COMMITTEE
19              MR. CLEMENTE:  Two things I want to say.  First, just
20    on Class 8, I think what's important, as my comments
21    emphasized earlier, the structure of Class 8.  We must
22    remember what it is.  It's really designed so that Class 8
23    holders receive their pro rata share of what's left after
24    prior claims are paid.  That's really what Class 8 creditors
25    voted on.  That's what the disclosure provided.  They did not
```

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/24   Page 90 of 214   PageID 7688
Exhibit Exhibit 3 Page 207 of 692

247

1    vote on receiving a specific dollar or a specific recovery

2    percentage.

3        And regarding the projections and estimates, Your Honor,

4    we're talking about large litigation claims that were asserted

5    and then settled.  And given the nature of these assets, the

6    values fluctuate.  It's perfectly expected, Your Honor, and

7    indeed disclosed, that there could be wide swings in the

8    amount of claims.  That does not lead to the conclusion that

9    the plan needs to be resolicited.

10       And then, finally, Your Honor, again, Mr. Pomerantz

11   adequately addressed all the points, as he did with his

12   earlier presentation, so I'm not going to touch on them, but I

13   did want to respond to one thing that Mr. Taylor said.  And I,

14   of course, agree with Mr. Pomerantz.  The Committee believes

15   there's no reason for you to delay a ruling and would in fact

16   urge you to rule as soon as Your Honor is ready to rule.

17   Confirmation of the plan, to the extent that there are

18   conversations occurring, is not going to prevent those

19   conversations from taking place, and they can continue after

20   the plan is confirmed.  There's simply nothing inherent in

21   Your Honor confirming the plan that would prevent those

22   conversations from occurring or would ultimately prevent

23   parties from pivoting to a deal on the off-chance that one

24   should be reached.

25       So I just wanted to emphasize, Your Honor, again, Your

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Exhibit Exhibit 3-53 Filed 12/07/23    Page 91 of 214    PageID 7689

248

1    Honor is going to rule when Your Honor rules, but the

2    Committee would urge you to rule, and certainly the idea that

3    there may or may not be discussions with Mr. Dondero should

4    not at all in any way lead you to the conclusion that you

5    shouldn't rule or that those conversations cannot continue

6    after plan confirmation.

7        Thank you, Your Honor.  Unless you have questions for me.

8    And my apologies with the technology.

9            THE COURT:  No problem.  All right.  Here's what I'm

10   going to do.  We can see you now, Mr. Clemente.

11           MR. CLEMENTE:  Oh.  I'm sorry, Your Honor.  I

12   switched to another camera again because it wasn't working.

13   So, I apologize.

14           THE COURT:  All right.  I am going to call you back

15   Monday.  What day of the week will that be?  Is that -- I

16   mean, Monday, what date, I should say.  That'll be the 8th,

17   right?  I am going to call you back Monday, this coming

18   Monday, February 8th, at 9:30 Central time, and I am going to

19   give you my ruling.  It will be a detailed oral bench ruling.

20   And I'm not going to leave you hanging on the edge of your

21   seat over the next few days.  I will tell you I'm inclined to

22   confirm this plan.  I think it meets all of the requirements

23   of 1129 and 1123 and 1122.

24       The thing that I am going to spend some time thinking

25   about between now and Monday morning is, no surprise, the

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 92 of 214   PageID 7690

249

1   propriety of the exculpations, the propriety of the plan

2   injunctions, the propriety of the gatekeeper provisions.  I

3   certainly am duty-bound to go back and reread *Pacific Lumber*,

4   to go back and read *Thru, Inc.*, and to really think hard about

5   what is happening here.

6        So, I'm pretty much down, I think, to just those three

7   issues here.  I'll talk to my law clerk.  He may remind me of

8   something else that I'm not articulating right now.  But I

9   think I'm just down to those issues.  Okay?  So it's not going

10  to be a mystery very long.  We will come back Monday, 9:30.

11  My courtroom deputy will post on the docket the WebEx

12  connection instructions as usual, and we'll go from there.

13  Now, --

14        MR. POMERANTZ:  Your Honor?  Your Honor, this is Jeff

15  Pomerantz.  I have a question, and it's going to sound odd

16  coming from someone on the West Coast, but I was wondering if

17  you could do it earlier.  And the only reason I say that is,

18  the night before, I have to call in to see if I'm on jury duty

19  on Monday, and it would be helpful to me -- I assume your

20  reading the ruling would be within a half hour, 45 minutes.

21  That if you started at 9:00, if that was possible, I could

22  then get in a car, and if I'm actually called to jury duty, I

23  can get there.  Of course, I don't know if I will be called,

24  but I'd hate to miss it.

25        THE COURT:  Okay.  Well, I don't want to make you

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 93 of 214   PageID 7691
Document Page 207 of 337

250

1   miss jury duty.  Okay.  We will do 9:00 o'clock.

2          MR. POMERANTZ:  Thank you, Your Honor.

3          THE COURT:  Hopefully no one will be, you know, hung

4   over from watching the Super Bowl.  Personally, I don't like

5   Tom Brady, so I may be boycotting the Super Bowl.  But maybe

6   I'll watch it.  Maybe I'll -- I'll watch it.  So we'll do it

7   9:00 o'clock.  So 9:00 o'clock next Monday.

8      Now, let's talk about next the currently-set hearing this

9   Friday, February 5th, on the injunction and contempt of court

10  motion as to Mr. Dondero and the other entities.  I want to

11  continue that, and here is what I am struggling with.  The

12  only day I have next week is Friday, the 12th, and I would

13  rather not use that date because I'm pretty jam-packed Monday

14  through Thursday, unless stuff has been settled that I haven't

15  become aware of.  So let me ask two things.  First, when is

16  the examiner motion set?  I'm just wondering if there's a

17  block of time we have coming up that --

18         MR. POMERANTZ:  I believe that's March 2nd, Your

19  Honor, so that's not for another month.

20         THE COURT:  Oh, that's not for another month?  All

21  right.

22     Traci, are you on the line?  I want to ask you --

23         THE CLERK:  Yes, I am.

24         THE COURT:  What about the following week?  I know

25  Monday, the 15th, is a federal holiday, but do we have

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 94 of 214   PageID 7692
Exhibit Exhibit 3-53   Page 238 of 692

251

```
 1   availability for -- I fear a full day is going to be needed

 2   for continuing this Friday setting.

 3           THE CLERK:  Wednesday, February 17th, is available.

 4           THE COURT:  We've got all day on Wednesday, February

 5   17th?

 6           THE CLERK:  Yes.

 7           THE COURT:  All right.  What about that?  I think I

 8   heard Mr. Rukavina, I think he's the one who threw it out

 9   there -- or maybe it was Mr. Taylor; I'm getting mixed up --

10   the possibility that they would agree to a continuation of the

11   preliminary injunction through -- well, I think you said

12   through confirmation.  Until the Court enters a confirmation

13   order.  And if I were to rule and approve confirmation Monday,

14   then we're talking about an order that might be entered sooner

15   than the 17th.  So, do you all have any --

16           MR. RUKAVINA:  Your Honor?

17           THE COURT:  -- mutually-agreeable suggestions?  If

18   not, I'm just going to set it the 12th and I'll, you know, I'm

19   killing myself, but I'll --

20           MR. TAYLOR:  Your Honor?

21           MR. RUKAVINA:  No, Your Honor.  I think Your Honor is

22   wise to do what's she's proposing.  The agreed TRO against my

23   clients expires on the 15th of February.

24           THE COURT:  Uh-huh.

25           MR. RUKAVINA:  We can easily move that back a week or
```

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 26-3   Filed 12/07/23   Page 95 of 214   PageID 7693
Exhibit Exhibit 353 Page 229 of 392

252

1   a sufficient amount of time so that there's no prejudice by

2   going on the 17th, if that would be acceptable to the Debtor,

3   and then we can just pick a date that's sufficiently after the

4   PI hearing so that there's protection for everyone.

5           THE COURT:  All right.  Mr. Taylor, do you agree?

6           MR. TAYLOR:  Yes, Your Honor.  That is acceptable to

7   Mr. Dondero.

8           THE COURT:  Okay.

9           MR. TAYLOR:  We can also push it back.  Can you hear

10  me?

11          THE COURT:  Yes, I can.  Uh-huh.

12          MR. TAYLOR:  Okay.

13          THE COURT:  All right.

14          MR. POMERANTZ:  I just want to make -- I just want to

15  make sure Mr. Morris, John Morris, is on, since he's taking

16  the lead in those matters.  I don't see his picture.

17          MR. MORRIS:  I am, Jeff, and I appreciate that.  I'm

18  available, Your Honor.  We were supposed to take the

19  depositions of Mr. Leventon and Mr. Ellington tomorrow.  I

20  don't know if their counsel is on the phone.  But given Your

21  Honor's decision to adjourn the hearing from Friday, I would

22  respectfully request at this time that counsel for those two

23  individuals work with me to find a date next week in order to

24  take those depositions.

25          THE COURT:  All right.  That's --

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23 Page 96 of 214   PageID 7694
Page 96 of 214

253

|    |    |
|----|----|
| 1  | MS. DANDENEAU:  Debra Dandeneau from -- |
| 2  | THE COURT:  Go ahead. |
| 3  | MS. DANDENEAU:  This is Debra Dandeneau from Baker |
| 4  | McKenzie.  We agree, and we're happy to work with you on a |
| 5  | rescheduled time. |
| 6  | MR. MORRIS:  Thank you very much. |
| 7  | THE COURT:  All right.  All right.  So, someone had |
| 8  | filed a motion to continue Friday's hearing.  I think it was |
| 9  | your firm, Mr. Taylor.  I already had a motion pending for a |
| 10 | few days now.  So I'm going to direct you to upload an order, |
| 11 | Mr. Taylor, or someone at your firm, continuing the hearing to |
| 12 | the 17th at 9:30, with language in there that your -- the |
| 13 | injunction is continuing at least through that date.  And, |
| 14 | again, it's a continuance of the motion for contempt as well |
| 15 | as the setting on the preliminary injunction.  And, of course, |
| 16 | run that by Mr. Morris and Mr. Rukavina. |
| 17 | MR. TAYLOR:  Sure.  Your Honor, this is -- I'm not |
| 18 | handling the injunction hearing, or at least I don't think I |
| 19 | am.  But just so that I'm clear, should maybe the injunction |
| 20 | continue through the next day or something, so depending on |
| 21 | how Your Honor rules, there's not a rush to try and get an |
| 22 | order to you? |
| 23 | MR. RUKAVINA:  Your Honor, I think that Mr. Morris |
| 24 | and I can work this out.  Mr. Taylor is not involved in that |
| 25 | adversary, that's true, but Mr. Morris and I will be able to |

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Exhibit Exhibit 3-53 Filed 12/07/23   Page 97 of 214   PageID 7695

254

```
 1   very quickly enter a proposed agreed order that extends that

 2   TRO for some period of time.

 3              THE COURT:  Okay.

 4              MR. RUKAVINA:  I'm not going to be difficult.

 5              THE COURT:  Okay.  So we'll shift to you and Mr.

 6   Morris to be the scriveners.  I just -- I suggested that

 7   because I thought there was a motion to link the order to that

 8   had been filed by Bonds Ellis.  I may be --

 9              MR. MORRIS:  There was, Your Honor.  There was an

10   emergency motion to continue.  We filed an opposition, and

11   Your Honor has not yet ruled on that motion.  You're exactly

12   right.

13              THE COURT:  Okay.  All right.

14              MR. TAYLOR:  Your Honor, this is Clay Taylor.  I will

15   make sure the right people confer with Davor and John, and

16   we'll get -- we'll link it to that motion, because that makes

17   sense, to have something to link it to.

18              THE COURT:  Okay.  Yes.  And it can be a two-

19   paragraph order, I would think.

20       All right.  And then so I'm going to see you Monday at

21   9:00 o'clock Central time with the ruling.

22       Please, don't anyone file anymore paper.  I threw that out

23   earlier today.  I've got all the paper I need.  And I will see

24   you Monday at 9:00 o'clock.  Okay?  We're adjourned.

25              MR. POMERANTZ:  Thank you, Your Honor.
```

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Case 3:23-cv-02071-E   Document 16-3   Filed 12/07/23   Page 98 of 214   PageID 7696
Exhibit Exhibit 3-5   Page 252 of 692

255

1              THE CLERK:  All rise.

2              MR. MORRIS:  Thank you, Your Honor.

3          (Proceedings concluded at 4:34 p.m.)

4                           --oOo--

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                         CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the
22  above-entitled matter.

23    **/s/ Kathy Rehling**                        **02/05/2021**

24  _____        _____

25  Kathy Rehling, CETD-444                        Date
    Certified Electronic Court Transcriber

256

INDEX

```
 1
     PROCEEDINGS                                                      4
 2
     WITNESSES
 3
     Debtor's Witnesses
 4
 5   Marc Tauber
     - Direct Examination by Mr. Morris                              25
 6   - Cross-Examination by Mr. Rukavina                             34
     - Cross-Examination by Mr. Taylor                               36
 7   - Redirect Examination by Mr. Morris                            41

 8   Certain Funds and Advisors' Witnesses

 9   James P. Seery
     - Direct Examination by Mr. Rukavina                            45
10   - Cross-Examination by Mr. Morris                               49
     - Redirect Examination by Mr. Rukavina                          50
11
     Robert Jason Post
12   - Direct Examination by Mr. Rukavina                            51
     - Cross-Examination by Mr. Morris                               56
13   - Redirect Examination by Mr. Rukavina                          62
     - Recross-Examination by Mr. Morris                             63
14
15   EXHIBITS

16   Debtor's Docket 1887 - Leatham Declaration       Received      6
     Debtor's Exhibit B, Docket 1822                   Received      8
17   Debtor's Exhibit 6R, Docket Entry 1822            Received      9
     Debtor's Exhibits 6S and 6T, Docket Entry 1822    Received     12
18   Debtor's Exhibit 6U, Docket Entry 1822            Received     13
     Debtor's Exhibits D and E, Docket Entry 1822      Received     15
19   Debtor's Exhibits 4D, 4E, and 4G, Docket 1822     Received     17
     Debtor's Exhibit 5T, Docket 1822                  Withdrawn    17
20   Debtor's Exhibit 10A                              Received     22
     Debtor's Omnibus Reply to Plan Objections,        Received     23
21     Docket 1807
     Debtor's Exhibit 7O (Abridged)                    Received     44
22
23   Certain Funds and Advisors' Exhibit 2,            Received     53
       Docket Entry 1863
24
     Dondero's Exhibits 6 through 12 and               Received     66
25     15 through 17
```

008092

Case 19-34054-sgj11 Doc 3818-4 Filed 06/05/23 Entered 06/05/23 22:10:41 Desc
Case 3:23-cv-02071-E Document 20-8 Filed 12/07/23 Page 100 of 214 PageID 7698

257

1                                    INDEX
                                    Page 2
2

3     EXHIBITS, cont'd.

4     Judicial Notice to be Taken of Docket 1887,                6
          Patrick Leatham Declaration
5
      Judicial Notice to be Taken of Docket 247,               45
6         Schedules

7     CLOSING ARGUMENTS

8     - By Mr. Pomerantz                                       73
      - By Mr. Kharasch                                       151
9     - By Mr. Clemente                                       154
      - By Mr. Draper                                         159
10    - By Mr. Rukavina                                       184
      - By Mr. Taylor                                         208
11    - By Mr. Pomerantz                                      227
      - By Mr. Clemente                                       246
12

13    RULINGS

14    Confirmation Hearing [1808] - *Taken Under Advisement*   248

15    Agreed Motion to (1) Assume Non-Residential Real Property  248
      Lease with Crescent TC Investors, LP upon Confirmation of
16    Plan and (II) Extend Assumption Deadline [1624] - *Taken
      Under Advisement*
17

18    END OF PROCEEDINGS                                      255

19    INDEX                                               256-257

20

21

22

23

24

25

# HMIT Exhibit No. 55

008094

# EXHIBIT DDDDDDD

008095

**Highland Capital Management, L.P.**
*Disclaimer For Financial Projections*

This document includes financial projections for July 2020 through December 2022 (the "Projections") for Highland Capital Management, L.P. "Company"). These Projections have been prepared by DSI with input from management at the Company. The historical information utilized in these Projections has not been audited or reviewed for accuracy by DSI.

This document includes certain statements, estimates and forecasts provided by the Company with respect to the Company's anticipated future performance. These estimates and forecasts contain significant elements of subjective judgment and analysis that may or may not prove to be accurate or correct. There can be no assurance that these statements, estimates and forecasts will be attained and actual outcomes and results may differ materially from what is estimated or forecast herein.

These Projections should not be regarded as a representation of DSI that the projected results will be achieved.

Management may update or supplement these Projections in the future, however, DSI expressly disclaims any obligation to update its report.

These Projections were not prepared with a view toward compliance with published guidelines of the Securities and Exchange Commission or the American Institute of Certified Public Accountants regarding historical financial statements, projections or forecasts.

Case 19-34054-sgj11 Doc 1656-53 Filed 01/14/21 Entered 01/14/21 12:30:26 Page 8
Exhibit Exhibits 53-58    Page 558 of 692

*Highland Capital Management, L.P.*
*Statement of Assumptions*

A. Plan effective date is March 1, 2021

B. All investment assets are sold by December 31, 2022.

C. All demand notes are collected in the year 2021; 3 term notes defaulted and have been demanded based on default provisions; payment estimated in 2021

D. Dugaboy term note with maturity date beyond 12/31/2022 are sold in Q1 2022; in the interim interest income and principal payments are not collected due to prepayment on note

E. Fixed assets currently used in daily operations are sold in June 2021 for $0

F. Highland bonus plan has been terminated in accordance with its terms. Accrual for employee bonuses as of January 2021 are reversed and not paid.

G. All Management advisory or shared service contracts are terminated on their terms by the effective date or shortly thereafter

H. Post-effective date, the reorganized Debtor would retain up to ten HCMLP employees (or hire similar employees) to help monetize the remaining assets.

I. Litigation Trustee budget is $6,500,000.

J. Unrealized gains or losses are not recorded on a monthly basis; all gains or losses are recorded as realized gains or losses upon sale of asset.

K. Plan does not provide for payment of interest to Class 8 holders of general unsecured claims, as set forth in the Plan. If holders of general unsecured claims receive 100% of their allowed claims, they would then be entitled to receive interest at the federal judgement rate, prior to any funds being available for claims or interest of junior priority.

L. Plan assumes zero allowed claims for IFA and Hunter Mountain Investment Trust ("HMI"); UBS claim based on voting amount of $94.8 million, but Debtor and UBS have agreed in principal regarding UBS's allowed claim

M. Claim amounts listed in Plan vs. Liquidation schedule are subject to change; claim amounts in Class 8 assume $0 for IFA and HM, $94.8 million for UBS and $45 million HV. Assumes RCP claims will offset against HCMLP's interest in fund and will not be paid from Debtor assets

N. With the exception of Class 2 - Frontier, Classes 1-7 will be paid in full within 30 days of effective date.

O. Class 7 payout limited to 85% of each individual creditor claim or in the aggregate $13.15 million. Plan currently projects Class 7 payout of $10.3 million.

P. See below for Class 8 estimated payout schedule; payout is subject to certain assets being monetized by payout date (no Plan requirement to do so):
  o By September 30, 2021 - $50,000,000
  o By March 31, 2022 – additional $50,000,000
  o By June 30, 2022 – additional $25,000,000
  o All remaining proceeds are assumed to be paid out on or soon after all remaining assets are monetized.

Q. Assumptions subject to revision based on business decision and performance of the business

008097

1/28/2021

008098

**Highland Capital Management, L.P.**
*Plan Analysis Vs. Liquidation Analysis*
*(US $000's)*

| | Plan Analysis | Liquidation Analysis |
|---|---|---|
| Estimated cash on hand at 1/31/2020 | $ 24,290 | $ 24,290 |
| Estimated proceeds from monetization of assets [1][2] | 257,941 | 191,946 |
| Estimated expenses through final distribution[1][3] | (59,573) | (41,488) |
| Total estimated $ available for distribution | 222,658 | 174,748 |
| Less: Claims paid in full | | |
| Unclassified [4] | (1,080) | (1,080) |
| Administrative claims [5] | (10,574) | (10,574) |
| Class 1 - Jefferies Secured Claim | - | - |
| Class 2 - Frontier Secured Claim [6] | (5,781) | (5,781) |
| Class 3 - Other Secured Claims | (62) | (62) |
| Class 4 - Priority Non-Tax Claims | (16) | (16) |
| Class 5 - Retained Employee Claims | - | - |
| Class 6 - PTO Claims [5] | - | - |
| Class 7 – Convenience Claims [7][8] | (10,280) | - |
| Subtotal | (27,793) | (17,514) |
| Estimated amount remaining for distribution to general unsecured claims | 194,865 | 157,235 |
| % Distribution to Class 7 (Class 7 claims included in Class 8 in Liquidation scenario) | 85.00% | 0.00% |
| Class 8 – General Unsecured Claims [8][10] | 313,588 | 326,468 |
| Subtotal | 313,588 | 326,468 |
| % Distribution to general unsecured claims | 62.14% | 48.16% |
| Estimated amount remaining for distribution | - | - |
| Class 9 – Subordinated Claims | no distribution | no distribution |
| Class 10 – Class B/C Limited Partnership Interests | no distribution | no distribution |
| Class 11 – Class A Limited Partnership Interest | no distribution | no distribution |

*Footnotes:*

[1] Assumes chapter 7 Trustee will not be able to achieve same sales proceeds as Claimant Trustee

Assumes Chapter 7 Trustee engages new professionals to help liquidate assets and terminates any management agreements with funds or CLOS

[2] Sale of investment assets, sale of fixed assets, collection of accounts receivable and interest receivable; Plan includes revenue from managing CLOs

[3] Estimated expenses through final distribution exclude non-cash expenses:

Depreciation of $462 thousand in 2021; Bad debt of $124K in 2021

[4] Unclassified claims include payments for priority tax claims and settlements with previously approved by the Bankruptcy Court

[5] Represents $4.7 million in unpaid professional fees, $4.5 million in timing of payments to vendors and $1.2 million to pay PTO

[6] Debtor will pay all unpaid interest estimated at $253 thousand of Frontier on effective date and continue to pay interest quarterly at 5.25% until Frontier's collateral is sold

[7] Claims payout limited to 85% of each individual creditor claim or limited to a total class payout of $13.15 million

[8] Plan: Class 7 includes $1.2 million estimate for aggregate contract rejections damage; Liquidation Class 8 includes $2.0 million for estimated rejection damages

[10] Class estimates $0 allowed claim for the following creditors: IFA and HM; assumes RCP claims offset against HCMLP interest in RCP Fund

UBS claim included at voting amount of $94.8 million. Debtor and UBS have agreed on principal regarding UBS's allowed claim

*Notes:*

All claim amounts are estimated as of January 26, 2020 and subject to change

Case 19-34054-sgj11 Doc 3565-8 Filed 06/18/22 Entered 06/18/22 22:00:10 Page Desc 8
Exhibit Exhibits 53-58    Page 560 of 692

**Highland Capital Management, L.P.**
**Balance Sheet**
**(US $000's)**

| | Actual Jun-20 | Actual Sep-20 | Forecast --> Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | |
| Cash and Cash Equivalents | $ 14,994 | $ 5,888 | $ 31,047 | $ 10,328 | $ 40,063 | $ 42,833 | $ 135,137 | $ 80,733 | $ 72,238 | $ 69,368 | $ - |
| Other Current Assets | 13,182 | 13,651 | 13,784 | 15,172 | 14,671 | 14,220 | 9,943 | 8,268 | 8,417 | 8,567 | - |
| Investment Assets | 320,912 | 305,961 | 283,812 | 280,946 | 233,234 | 171,174 | 47,503 | 47,503 | 25,888 | 25,888 | - |
| Net Fixed Assets | 3,055 | 2,823 | 2,592 | 1,348 | - | - | - | - | - | - | - |
| **TOTAL ASSETS** | $ 352,142 | $ 328,323 | $ 331,235 | $ 307,793 | $ 287,968 | $ 228,227 | $ 192,583 | $ 136,504 | $ 106,542 | $ 103,823 | $ - |
| **Liabilities** | | | | | | | | | | | |
| Post-petition Liabilities | $ 142,730 | $ 135,597 | $ 131,230 | $ 12,891 | $ 10,249 | $ 10,503 | $ - | $ - | $ - | $ - | $ - |
| Pre-petition Liabilities | 9,861 | 9,884 | 10,000 | - | - | - | - | - | - | - | - |
| Claims | | | | | | | | | | | |
| Unclassified | - | - | - | - | - | - | - | - | - | - | - |
| Class 1 – Jefferies Secured Claim | - | - | - | - | - | - | - | - | - | - | - |
| Class 2 – Frontier Secured Claim | - | - | - | 5,528 | - | - | - | - | - | - | - |
| Class 3 – Other Secured Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 4 – Priority Non-Tax Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 5 – Retained Employee Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 6 – PTO Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 7 – Convenience Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 8 – General Unsecured Claims | - | - | - | 313,588 | 313,588 | 263,588 | 263,588 | 213,588 | 188,588 | 188,588 | 118,723 |
| Class 9 – Subordinated Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 10 – Class B/C Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Class 11 – Class A Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Claim Payable | 9,861 | 9,884 | 10,000 | 319,115 | 313,588 | 263,588 | 263,588 | 213,588 | 188,588 | 188,588 | 118,723 |
| **TOTAL LIABILITIES** | $ 152,591 | $ 145,481 | $ 141,230 | 332,007 | 323,836 | 274,091 | 263,588 | 213,588 | 188,588 | 188,588 | 118,723 |
| Partners' Capital | 199,551 | 182,842 | 190,005 | (24,214) | (35,868) | (45,863) | (71,004) | (77,083) | (82,045) | (84,764) | (118,722) |
| **TOTAL LIABILITIES AND PARTNERS' CAPITAL** | $ 352,142 | $ 328,323 | $ 331,235 | $ 307,793 | $ 287,968 | $ 228,227 | $ 192,583 | $ 136,504 | $ 106,543 | $ 103,823 | $ - |

008099

1/28/2021

1/28/2021

008100

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

| | Actual Jan 2020 to June 2020 Total | Actual 3 month ended Sept 2020 | Forecast --> 3 month ended Dec 2020 | Total 2020 | 3 month ended Mar 2021 | 3 month ended Jun 2021 | 3 month ended Sept 2021 | 3 month ended Dec 2021 | Total 2021 |
|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | |
| Management Fees | $ 6,572 | $ 1,949 | $ 2,804 | $ 11,325 | $ 1,329 | $ 856 | $ 856 | $ 856 | $ 3,897 |
| Shared Service Fees | 7,672 | 3,765 | 3,788 | 15,225 | 1,373 | 45 | 45 | - | 1,463 |
| Other Income | 3,126 | 538 | 340 | 4,004 | 316 | 274 | - | - | 590 |
| Total revenue | $ 17,370 | $ 6,252 | $ 6,931 | $ 30,554 | $ 3,018 | $ 1,176 | $ 901 | $ 856 | $ 5,950 |
| Operating Expenses [1] | 13,328 | 9,171 | 9,399 | 31,899 | 12,168 | 4,897 | 3,973 | 3,333 | 24,371 |
| Income/(loss) From Operations | $ 4,042 | $ (2,918) | $ (2,468) | $ (1,345) | $ (9,149) | $ (3,722) | $ (3,072) | $ (2,477) | $ (18,420) |
| Professional Fees | 17,522 | 7,707 | 8,351 | 33,581 | 7,478 | 6,583 | 2,268 | 1,810 | 18,139 |
| Other Income/(Expenses) [2] | 2,302 | 1,518 | 1,059 | 4,879 | (196,410) | 326 | (93) | 29 | (196,148) |
| Operating Gain/(Loss) | $ (11,178) | $ (9,107) | $ (9,761) | $ (30,046) | $ (213,037) | $ (9,978) | $ (5,433) | $ (4,259) | $ (232,707) |
| **Realized and Unrealized Gain/(Loss)** | | | | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | - | (1,013) | 522 | - | - | (491) |
| Net Realized Gain/(Loss) on Sale of Investment | (28,418) | 1,549 | (8,850) | (35,719) | (168) | (2,198) | (4,563) | (7,581) | (14,510) |
| Net Change in Unrealized Gain/(Loss) of Investments | (29,929) | (7,450) | 4,523 | (32,857) | - | - | - | (13,301) | (13,301) |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | (364) | (364) | - | - | - | - | - |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | (80,782) | (1,700) | - | (82,482) | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ (139,129) | $ (7,601) | $ (4,692) | $ (151,422) | $ (1,182) | $ (1,675) | $ (4,563) | $ (20,882) | $ (28,302) |
| Net Income | $ (150,307) | $ (16,708) | $ (14,453) | $ (181,468) | $ (214,219) | $ (11,654) | $ (9,996) | $ (25,141) | $ (261,009) |

*Footnotes:*
[1] Operating expenses include an adjustment in January 2021 to account for expenses that have not been accrued or paid prior to effective date.
[2] Other income and expenses of $197.3 million in Q1 2021 includes:
   [a] $209.7 million was expensed to record the increase of allowed claims.
   [b] Income of $11.7 million for the accrued, but unpaid payroll liability related to the Debtor's deferred bonus programs amount written-off.

1/28/2021

008101

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

| | Forecast --> | | | | | |
| | 3 month ended Mar 2022 | 3 month ended Jun 2022 | 3 month ended Sept 2022 | 3 month ended Dec 2022 | Total 2022 | Plan |
|---|---|---|---|---|---|---|
| **Revenue** | | | | | | |
| Management Fees | $ 580 | $ 580 | $ 580 | $ 580 | $ 2,318 | $ 6,215 |
| Shared Service Fees | - | - | - | - | - | 1,463 |
| Other Income | - | - | - | - | - | 591 |
| Total revenue | $ 580 | $ 580 | $ 580 | $ 580 | $ 2,318 | $ 8,269 |
| Operating Expenses | 3,635 | 2,679 | 1,739 | 6,425 | 14,478 | 38,849 |
| Income/(loss) From Operations | $ (3,056) | $ (2,099) | $ (1,159) | $ (5,846) | $ (12,160) | $ (30,580) |
| Professional Fees | 2,921 | 2,761 | 1,461 | 2,176 | 9,318 | 27,455 |
| Other Income/(Expenses) | (103) | (101) | (100) | (350) | (654) | (196,803) |
| Operating Gain/(Loss) | $ (6,079) | $ (4,961) | $ (2,719) | $ (8,371) | $ (22,131) | $ (254,838) |
| **Realized and Unrealized Gain/(Loss)** | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | (25,587) | (25,587) | (26,078) |
| Net Realized Gain/(Loss) on Sale of Investment | - | - | - | - | - | (14,510) |
| Net Change in Unrealized Gain/(Loss) of Investments | - | - | - | - | - | - |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | (13,301) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ - | $ - | $ - | $ (25,587) | $ (25,587) | $ (53,889) |
| Net Income | $ (6,079) | $ (4,961) | $ (2,719) | $ (33,958) | $ (47,718) | $ (308,727) |

008102

1/28/2021

**Highland Capital Management, L.P.**
*Cash Flow Indirect*
*(US $000's)*

Forecast --->

| | Sep-20 | Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|
| Net (Loss) Income | (16,708) | (14,453) | (214,219) | (11,654) | (9,996) | (25,141) | (6,079) | (4,961) | (2,719) | (33,733) |
| **Cash Flow from Operating Activity** | | | | | | | | | | |
| (Increase) / Decrease in Cash | | | | | | | | | | |
| Depreciation and amortization | 231 | 231 | 231 | 231 | - | - | - | - | - | - |
| Other realized (gain)/ loss | - | - | 1,013 | (522) | - | - | - | - | - | 25,587 |
| Investment realized (gain)/ loss | (1,549) | 9,214 | 168 | 2,198 | 4,563 | 20,882 | - | - | - | - |
| Unrealized (gain)/ loss | (9,150) | 4,523 | - | - | - | - | - | - | - | - |
| (Increase) Decrease in Current Assets | (470) | (133) | (1,388) | 501 | 450 | 4,277 | 1,675 | (149) | (150) | - |
| Increase (Decrease) in Current Liabilities | (7,110) | (4,251) | (44,172) | (2,643) | 255 | (10,503) | - | - | - | - |
| Net Cash Increase / (Decrease) - Operating Activities | (34,757) | (4,868) | (258,366) | (11,889) | (4,727) | (10,485) | (4,404) | (5,110) | (2,870) | (7,148) |
| **Cash Flow From Investing Activities** | | | | | | | | | | |
| Proceeds from Sale of Fixed Assets | | | | | | | | | | |
| Proceeds from Investment Assets | 25,650 | 30,027 | 2,698 | 47,152 | 57,498 | 102,788 | - | 21,616 | - | 7,960 |
| Net Cash Increase / (Decrease) - Investing Activities | 25,650 | 30,027 | 2,698 | 47,152 | 57,498 | 102,788 | - | 21,616 | - | 7,148 |
| **Cash Flow from Financing Activities** | | | | | | | | | | |
| Claims payable | - | - | (73,997) | - | - | - | - | - | - | - |
| Claim reclasses/(paid) | - | - | 319,115 | (5,528) | (50,000) | - | (50,000) | (25,000) | - | (69,368) |
| Maple Avenue Holdings | - | - | (4,975) | - | - | - | - | - | - | - |
| Frontier Note | - | - | (5,195) | - | - | - | - | - | - | - |
| Net Cash Increase / (Decrease) - Financing Activities | - | - | 234,948 | (5,528) | (50,000) | - | (50,000) | (25,000) | - | (69,368) |
| Net Change in Cash | (9,107) | 25,159 | (20,719) | 29,735 | 2,770 | 92,303 | (54,404) | (8,495) | (2,870) | (69,368) |
| Beginning Cash | 14,994 | 5,888 | 31,047 | 10,328 | 40,063 | 42,833 | 135,137 | 80,733 | 72,238 | 69,368 |
| Ending Cash | 5,888 | 31,047 | 10,328 | 40,063 | 42,833 | 135,137 | 80,733 | 72,238 | 69,368 | |

# HMIT Exhibit No. 56

008103

**FORM ADV**

**UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION AND REPORT BY EXEMPT REPORTING ADVISERS**

| | |
|---|---|
| **Primary Business Name: HIGHLAND CAPITAL MANAGEMENT, L.P.** | **CRD Number: 110126** |
| **Annual Amendment - All Sections** | **Rev. 10/2021** |
| 3/31/2023 11:15:58 AM | |

**WARNING:** Complete this form truthfully. False statements or omissions may result in denial of your application, revocation of your registration, or criminal prosecution. You must keep this form updated by filing periodic amendments. See Form ADV General Instruction 4.

**Item 1 Identifying Information**

Responses to this Item tell us who you are, where you are doing business, and how we can contact you. If you are filing an *umbrella registration*, the information in Item 1 should be provided for the *filing adviser* only. General Instruction 5 provides information to assist you with filing an *umbrella registration*.

A. Your full legal name (if you are a sole proprietor, your last, first, and middle names):
   **HIGHLAND CAPITAL MANAGEMENT, L.P.**

B. (1) Name under which you primarily conduct your advisory business, if different from Item 1.A.
   **HIGHLAND CAPITAL MANAGEMENT, L.P.**

   *List on Section 1.B. of Schedule D any additional names under which you conduct your advisory business.*

   (2) If you are using this Form ADV to register more than one investment adviser under an *umbrella registration*, check this box ☑

   *If you check this box, complete a Schedule R for each relying adviser.*

C. If this filing is reporting a change in your legal name (Item 1.A.) or primary business name (Item 1.B.(1)), enter the new name and specify whether the name change is of
   ☐ your legal name or ☐ your primary business name:

D. (1) If you are registered with the SEC as an investment adviser, your SEC file number: **801-54874**

   (2) If you report to the SEC as an *exempt reporting adviser*, your SEC file number:

   (3) If you have one or more Central Index Key numbers assigned by the SEC ("CIK Numbers"), all of your CIK numbers:
   No Information Filed

E. (1) If you have a number ("*CRD* Number") assigned by the *FINRA's CRD* system or by the IARD system, your *CRD* number: **110126**

   *If your firm does not have a CRD number, skip this Item 1.E. Do not provide the CRD number of one of your officers, employees, or affiliates.*

   (2) If you have additional *CRD* Numbers, your additional *CRD* numbers:
   No Information Filed

F. *Principal Office and Place of Business*
   (1) Address (do not use a P.O. Box):

   | | | | |
   |---|---|---|---|
   | Number and Street 1: | | Number and Street 2: | |
   | 100 CRESCENT COURT | | SUITE 1850 | |
   | City: | State: | Country: | ZIP+4/Postal Code: |
   | DALLAS | Texas | United States | 75201 |

   If this address is a private residence, check this box: ☐

   *List on Section 1.F. of Schedule D any office, other than your principal office and place of business, at which you conduct investment advisory business. If you are applying for registration, or are registered, with one or more state securities authorities, you must list all of your offices in the state or states to which you are applying for registration or with whom you are registered. If you are applying for SEC registration, if you are registered only with the SEC, or if you are reporting to the SEC as an exempt reporting adviser, list the largest twenty-five offices in terms of numbers of employees as of the end of your most recently completed fiscal year.*

   (2) Days of week that you normally conduct business at your *principal office and place of business*:
   ◉ Monday - Friday ○ Other:

   Normal business hours at this location:
   BY APPOINTMENT

   (3) Telephone number at this location:
   972-628-4100

   (4) Facsimile number at this location, if any:
   972-637-9197

   (5) What is the total number of offices, other than your *principal office and place of business*, at which you conduct investment advisory business as of

G.   Mailing address, if different from your *principal office and place of business* address:

    Number and Street 1:                             Number and Street 2:

    City:               State:                   Country:            ZIP+4/Postal Code:

    If this address is a private residence, check this box: ☐

H.   If you are a sole proprietor, state your full residence address, if different from your *principal office and place of business* address in Item 1.F.:

    Number and Street 1:                             Number and Street 2:

    City:               State:                   Country:            ZIP+4/Postal Code:

    **Yes  No**

I.   Do you have one or more websites or accounts on publicly available social media platforms (including, but not limited to, Twitter, Facebook and LinkedIn)?    ◉  ○

    *If "yes," list all firm website addresses and the address for each of the firm's accounts on publicly available social media platforms on* Section 1.I. of Schedule D. *If a website address serves as a portal through which to access other information you have published on the web, you may list the portal without listing addresses for all of the other information. You may need to list more than one portal address. Do not provide the addresses of websites or accounts on publicly available social media platforms where you do not control the content. Do not provide the individual electronic mail (e-mail) addresses of employees or the addresses of employee accounts on publicly available social media platforms.*

J.   Chief Compliance Officer

    (1) Provide the name and contact information of your Chief Compliance Officer. If you are an *exempt reporting adviser*, you must provide the contact information for your Chief Compliance Officer, if you have one. If not, you must complete Item 1.K. below.

    Name:                                        Other titles, if any:

    Telephone number:                      Facsimile number, if any:

    Number and Street 1:                             Number and Street 2:

    City:               State:                   Country:            ZIP+4/Postal Code:

    Electronic mail (e-mail) address, if Chief Compliance Officer has one:

    (2) If your Chief Compliance Officer is compensated or employed by any *person* other than you, a *related person* or an investment company registered under the Investment Company Act of 1940 that you advise for providing chief compliance officer services to you, provide the *person's* name and IRS Employer Identification Number (if any):

    Name:

    IRS Employer Identification Number:

K.   Additional Regulatory Contact Person: If a person other than the Chief Compliance Officer is authorized to receive information and respond to questions about this Form ADV, you may provide that information here.

    Name:                                       Titles:

    Telephone number:                      Facsimile number, if any:

    Number and Street 1:                             Number and Street 2:

    City:               State:                   Country:            ZIP+4/Postal Code:

    Electronic mail (e-mail) address, if contact person has one:

    **Yes  No**

L.   Do you maintain some or all of the books and records you are required to keep under Section 204 of the Advisers Act, or similar state law, somewhere other than your *principal office and place of business*?    ◉  ○

    *If "yes," complete* Section 1.L. of Schedule D.

    **Yes  No**

M.   Are you registered with a *foreign financial regulatory authority*?    ◉  ○

    *Answer "no" if you are not registered with a foreign financial regulatory authority, even if you have an affiliate that is registered with a foreign financial regulatory authority. If "yes," complete* Section 1.M. of Schedule D.

    **Yes  No**

N.   Are you a public reporting company under Sections 12 or 15(d) of the Securities Exchange Act of 1934?    ○  ◉

    **Yes  No**

O.   Did you have $1 billion or more in assets on the last day of your most recent fiscal year?    ○  ◉

    If yes, what is the approximate amount of your assets:

    ○  $1 billion to less than $10 billion

    ○  $10 billion to less than $50 billion

*For purposes of Item 1.O. only, "assets" refers to your total assets, rather than the assets you manage on behalf of clients. Determine your total assets using the total assets shown on the balance sheet for your most recent fiscal year end.*

P.    Provide your *Legal Entity Identifier* if you have one:
549300BKFQI8M03HT187

A *legal entity identifier* is a unique number that companies use to identify each other in the financial marketplace. You may not have a *legal entity identifier*.

---

### SECTION 1.B. Other Business Names

List your other business names and the jurisdictions in which you use them. You must complete a separate Schedule D Section 1.B. for each business name.

Name: HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED

Jurisdictions

| | | | |
|---|---|---|---|
| ☐ AL | ☐ IL | ☐ NE | ☐ SC |
| ☐ AK | ☐ IN | ☐ NV | ☐ SD |
| ☐ AZ | ☐ IA | ☐ NH | ☐ TN |
| ☐ AR | ☐ KS | ☐ NJ | ☑ TX |
| ☐ CA | ☐ KY | ☐ NM | ☐ UT |
| ☐ CO | ☐ LA | ☐ NY | ☐ VT |
| ☐ CT | ☐ ME | ☐ NC | ☐ VI |
| ☐ DE | ☐ MD | ☐ ND | ☐ VA |
| ☐ DC | ☐ MA | ☐ OH | ☐ WA |
| ☐ FL | ☐ MI | ☐ OK | ☐ WV |
| ☐ GA | ☐ MN | ☐ OR | ☐ WI |
| ☐ GU | ☐ MS | ☐ PA | ☐ WY |
| ☐ HI | ☐ MO | ☐ PR | ☑ Other: SOUTH KOREA |
| ☐ ID | ☐ MT | ☐ RI | |

---

### SECTION 1.F. Other Offices

Complete the following information for each office, other than your *principal office and place of business*, at which you conduct investment advisory business. You must complete a separate Schedule D Section 1.F. for each location. If you are applying for SEC registration, if you are registered only with the SEC, or if you are an *exempt reporting adviser*, list only the largest twenty-five offices (in terms of numbers of *employees*).

Number and Street 1:             Number and Street 2:
136, SEJONG-DAERO, JUNG-GU        SEOUL FINANCE CENTER

City:                State:        Country:             ZIP+4/Postal Code:
SEOUL                        Korea, South

If this address is a private residence, check this box: ☐

Telephone Number:             Facsimile Number, if any:
972-628-4100

If this office location is also required to be registered with FINRA or a *state securities authority* as a branch office location for a broker-dealer or investment adviser on the Uniform Branch Office Registration Form (Form BR), please provide the *CRD* Branch Number here:

How many *employees* perform investment advisory functions from this office location?
4

Are other business activities conducted at this office location? (check all that apply)
☐ (1) Broker-dealer (registered or unregistered)
☐ (2) Bank (including a separately identifiable department or division of a bank)
☐ (3) Insurance broker or agent

☐ (4) Commodity pool operator or commodity trading advisor (whether registered or exempt from registration)

☐ (5) Registered municipal advisor

☐ (6) Accountant or accounting firm

☐ (7) Lawyer or law firm

Describe any other *investment-related* business activities conducted from this office location:

---

## SECTION 1.I. Website Addresses

List your website addresses, including addresses for accounts on publicly available social media platforms where you control the content (including, but not limited to, Twitter, Facebook and/or LinkedIn). You must complete a separate Schedule D Section 1.I. for each website or account on a publicly available social media platform.

Address of Website/Account on Publicly Available Social Media Platform:   HTTP://HIGHLANDCAPITAL.COM/

Address of Website/Account on Publicly Available Social Media Platform:   HTTPS://TWITTER.COM/HIGHLANDCAPMGMT

Address of Website/Account on Publicly Available Social Media Platform:   HTTPS://WWW.LINKEDIN.COM/COMPANY/164190/

Address of Website/Account on Publicly Available Social Media Platform:   HTTPS://WWW.FACEBOOK.COM/HIGHLANDCAPITALMGMT/

---

## SECTION 1.L. Location of Books and Records

Complete the following information for each location at which you keep your books and records, other than your *principal office and place of business*. You must complete a separate Schedule D, Section 1.L. for each location.

Name of entity where books and records are kept:
HIGHLAND CAPITAL MANAGEMENT, L.P.

| Number and Street 1: | | Number and Street 2: |
| 136, SEJONG-DAERO, JUNG-GU | | SEOUL FINANCE CENTER |

| City: | State: | Country: | ZIP+4/Postal Code: |
| SEOUL | | Korea, South | |

If this address is a private residence, check this box: ☐

| Telephone Number: | Facsimile number, if any: |
| 972-628-4100 | |

This is (check one):
◉ one of your branch offices or affiliates.

○ a third-party unaffiliated recordkeeper.

○ other.

Briefly describe the books and records kept at this location.
PRIMARILY MARKETING AND ADVERTISING MATERIALS.

Name of entity where books and records are kept:
IRON MOUNTAIN

| Number and Street 1: | | Number and Street 2: |
| 1402 LAKEWAY DRIVE | | |

| City: | State: | Country: | ZIP+4/Postal Code: |
| LEWISVILLE | Texas | United States | 75057-6000 |

If this address is a private residence, check this box: ☐

This is (check one):

○ one of your branch offices or affiliates.

◉ a third-party unaffiliated recordkeeper.

○ other.

Briefly describe the books and records kept at this location.
OFFSITE STORAGE AND BACKUP OF FILES MAINTAINED AT OTHER BRANCH OFFICES.

---

Name of entity where books and records are kept:
GLOBAL RELAY COMMUNICATIONS

| Number and Street 1: | | Number and Street 2: | |
|---|---|---|---|
| 220 CAMBIE STREET | | 2ND FLOOR | |
| City: | State: | Country: | ZIP+4/Postal Code: |
| VANCOUVER | | Canada | V6B2M9 |

If this address is a private residence, check this box: ☐

Telephone Number:                    Facsimile number, if any:
8664846630

This is (check one):

○ one of your branch offices or affiliates.

◉ a third-party unaffiliated recordkeeper.

○ other.

Briefly describe the books and records kept at this location.
EMAIL ARCHIVING

---

Name of entity where books and records are kept:
AMAZON WEB SERVICES (AWS)

| Number and Street 1: | | Number and Street 2: | |
|---|---|---|---|
| 410 TERRY AVENUE NORTH | | | |
| City: | State: | Country: | ZIP+4/Postal Code: |
| SEATTLE | Washington | United States | 98108-5210 |

If this address is a private residence, check this box: ☐

Telephone Number:                    Facsimile number, if any:
9999999999

This is (check one):

○ one of your branch offices or affiliates.

◉ a third-party unaffiliated recordkeeper.

○ other.

Briefly describe the books and records kept at this location.
CLOUD BASED E-STORAGE

---

**SECTION 1.M. Registration with Foreign Financial Regulatory Authorities**

List the name and country, in English, of each *foreign financial regulatory authority* with which you are registered. You must complete a separate Schedule D Section 1.M. for each *foreign financial regulatory authority* with whom you are registered.

Name of Country/*Foreign Financial Regulatory Authority*:

Cayman Islands - Cayman Islands Monetary Authority

Other:

---

Name of Country/*Foreign Financial Regulatory Authority*:

South Korea - Financial Supervisory Commission / Financial Supervisory Service

Other:

---

## Item 2 SEC Registration/Reporting

Responses to this Item help us (and you) determine whether you are eligible to register with the SEC. Complete this Item 2.A. only if you are applying for SEC registration or submitting an *annual updating amendment* to your SEC registration. If you are filing an *umbrella registration*, the information in Item 2 should be provided for the *filing adviser* only.

A. To register (or remain registered) with the SEC, you must check **at least one** of the Items 2.A.(1) through 2.A.(12), below. If you are submitting an *annual updating amendment* to your SEC registration and you are no longer eligible to register with the SEC, check Item 2.A.(13). Part 1A Instruction 2 provides information to help you determine whether you may affirmatively respond to each of these items.

You (the adviser):

☑ (1) are a **large advisory firm** that either:

    (a) has regulatory assets under management of $100 million (in U.S. dollars) or more; or

    (b) has regulatory assets under management of $90 million (in U.S. dollars) or more at the time of filing its most recent *annual updating amendment* and is registered with the SEC;

☐ (2) are a **mid-sized advisory firm** that has regulatory assets under management of $25 million (in U.S. dollars) or more but less than $100 million (in U.S. dollars) and you are either:

    (a) not required to be registered as an adviser with the *state securities authority* of the state where you maintain your *principal office and place of business*; or

    (b) not subject to examination by the *state securities authority* of the state where you maintain your *principal office and place of business*;

    *Click HERE for a list of states in which an investment adviser, if registered, would not be subject to examination by the state securities authority.*

  (3) Reserved

☐ (4) have your *principal office and place of business* **outside the United States**;

☐ (5) are **an investment adviser (or subadviser) to an investment company** registered under the Investment Company Act of 1940;

☐ (6) are **an investment adviser to a company which has elected to be a business development company** pursuant to section 54 of the Investment Company Act of 1940 and has not withdrawn the election, and you have at least $25 million of regulatory assets under management;

☐ (7) are a **pension consultant** with respect to assets of plans having an aggregate value of at least $200,000,000 that qualifies for the exemption in rule 203A-2(a);

☐ (8) are a **related adviser** under rule 203A-2(b) that *controls*, is *controlled* by, or is under common *control* with, an investment adviser that is registered with the SEC, and your *principal office and place of business* is the same as the registered adviser;

    *If you check this box, complete Section 2.A.(8) of Schedule D.*

☐ (9) are an **adviser** relying on rule 203A-2(c) because you **expect to be eligible for SEC registration within 120 days;**

    *If you check this box, complete Section 2.A.(9) of Schedule D.*

☐ (10) are a **multi-state adviser** that is required to register in 15 or more states and is relying on rule 203A-2(d);

    *If you check this box, complete Section 2.A.(10) of Schedule D.*

☐ (11) are an **Internet adviser** relying on rule 203A-2(e);

☐ (12) have **received an SEC order** exempting you from the prohibition against registration with the SEC;

    *If you check this box, complete Section 2.A.(12) of Schedule D.*

☐ (13) are **no longer eligible** to remain registered with the SEC.

---

## *State Securities Authority Notice Filings* and State Reporting by *Exempt Reporting Advisers*

C. Under state laws, SEC-registered advisers may be required to provide to *state securities authorities* a copy of the Form ADV and any amendments they file with the SEC. These are called *notice filings*. In addition, *exempt reporting advisers* may be required to provide *state securities authorities* with a copy of reports and any amendments they file with the SEC. If this is an initial application or report, check the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings or reports you submit to the SEC. If this is an amendment to direct your *notice filings* or reports to

additional state(s), check the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings or reports you submit to the SEC. If this is an annual updating amendment and your registration with the states is terminating, on file reports that you no longer want to receive them, uncheck the box(es) next to those state(s).

Jurisdictions

| | | | |
|---|---|---|---|
| ☐ AL | ☐ IL | ☐ NE | ☐ SC |
| ☐ AK | ☐ IN | ☐ NV | ☐ SD |
| ☐ AZ | ☐ IA | ☐ NH | ☐ TN |
| ☐ AR | ☐ KS | ☐ NJ | ☐ TX |
| ☐ CA | ☐ KY | ☐ NM | ☐ UT |
| ☐ CO | ☐ LA | ☐ NY | ☐ VT |
| ☐ CT | ☐ ME | ☐ NC | ☐ VI |
| ☐ DE | ☐ MD | ☐ ND | ☐ VA |
| ☐ DC | ☐ MA | ☐ OH | ☐ WA |
| ☐ FL | ☐ MI | ☐ OK | ☐ WV |
| ☐ GA | ☐ MN | ☐ OR | ☐ WI |
| ☐ GU | ☐ MS | ☐ PA | ☐ WY |
| ☐ HI | ☐ MO | ☐ PR | |
| ☐ ID | ☐ MT | ☐ RI | |

*If you are amending your registration to stop your notice filings or reports from going to a state that currently receives them and you do not want to pay that state's notice filing or report filing fee for the coming year, your amendment must be filed before the end of the year (December 31).*

---

**SECTION 2.A.(8) Related Adviser**

If you are relying on the exemption in rule 203A-2(b) from the prohibition on registration because you *control*, are *controlled* by, or are under common *control* with an investment adviser that is registered with the SEC and your *principal office and place of business* is the same as that of the registered adviser, provide the following information:

Name of Registered Investment Adviser

*CRD* Number of Registered Investment Adviser

SEC Number of Registered Investment Adviser
-

---

**SECTION 2.A.(9) Investment Adviser Expecting to be Eligible for Commission Registration within 120 Days**

If you are relying on rule 203A-2(c), the exemption from the prohibition on registration available to an adviser that expects to be eligible for SEC registration within 120 days, you are required to make certain representations about your eligibility for SEC registration. By checking the appropriate boxes, you will be deemed to have made the required representations. You must make both of these representations:

☐ I am not registered or required to be registered with the SEC or a *state securities authority* and I have a reasonable expectation that I will be eligible to register with the SEC within 120 days after the date my registration with the SEC becomes effective.

☐ I undertake to withdraw from SEC registration if, on the 120th day after my registration with the SEC becomes effective, I would be prohibited by Section 203A(a) of the Advisers Act from registering with the SEC.

---

**SECTION 2.A.(10) Multi-State Adviser**

If you are relying on rule 203A-2(d), the multi-state adviser exemption from the prohibition on registration, you are required to make certain representations about your eligibility for SEC registration. By checking the appropriate boxes, you will be deemed to have made the required representations.

If you are applying for registration as an investment adviser with the SEC, you must make both of these representations:

☐ I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of 15 or more states to register as an investment adviser with the *state securities authorities* in those states.

☐ I undertake to withdraw from SEC registration if I file an amendment to this registration indicating that I would be required by the laws of fewer than 15 states to register as an investment adviser with the *state securities authorities* of those states.

If you are submitting your *annual updating amendment*, you must make this representation:

☐ Within 90 days prior to the date of filing this amendment, I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of at least 15 states to register as an investment adviser with the *state securities authorities* in those states.

---

**SECTION 2.A.(12) SEC Exemptive *Order***

If you are relying upon an SEC *order* exempting you from the prohibition on registration, provide the following information:

Date of *order*:

---

**Item 3 Form of Organization**

If you are filing an *umbrella registration*, the information in Item 3 should be provided for the *filing adviser* only.

A.   How are you organized?

○   Corporation

○   Sole Proprietorship

○   Limited Liability Partnership (LLP)

○   Partnership

○   Limited Liability Company (LLC)

◉   Limited Partnership (LP)

○   Other (specify):

*If you are changing your response to this Item, see Part 1A Instruction 4.*

B.   In what month does your fiscal year end each year?
DECEMBER

C.   Under the laws of what state or country are you organized?

State      Country

Delaware   United States

*If you are a partnership, provide the name of the state or country under whose laws your partnership was formed. If you are a sole proprietor, provide the name of the state or country where you reside.*

*If you are changing your response to this Item, see Part 1A Instruction 4.*

---

**Item 4 Successions**

|  | Yes | No |
|---|---|---|

A.   Are you, at the time of this filing, succeeding to the business of a registered investment adviser, including, for example, a change of your structure or legal status (e.g., form of organization or state of incorporation)?   ○ Yes  ◉ No

*If "yes", complete Item 4.B. and Section 4 of Schedule D.*

B.   Date of Succession: (MM/DD/YYYY)

*If you have already reported this succession on a previous Form ADV filing, do not report the succession again. Instead, check "No." See Part 1A Instruction 4.*

---

**SECTION 4 Successions**

No Information Filed

---

**Item 5 Information About Your Advisory Business - Employees, Clients, and Compensation**

Responses to this Item help us understand your business, assist us in preparing for on-site examinations, and provide us with data we use when making regulatory policy. Part 1A Instruction 5.a. provides additional guidance to newly formed advisers for completing this Item 5.

**Employees**

*If you are organized as a sole proprietorship, include yourself as an employee in your responses to Item 5.A. and Items 5.B.(1), (2), (3), (4), and (5). If an employee performs more than one function, you should count that employee in each of your responses to Items 5.B.(1), (2), (3), (4), and (5).*

A.   Approximately how many *employees* do you have? Include full- and part-time *employees* but do not include any clerical workers.
12

B. (1) Approximately how many of the *employees* reported in 5.A. perform investment advisory functions (including research)?

6

(2) Approximately how many of the *employees* reported in 5.A. are registered representatives of a broker-dealer?

0

(3) Approximately how many of the *employees* reported in 5.A. are registered with one or more *state securities authorities* as *investment adviser representatives*?

0

(4) Approximately how many of the *employees* reported in 5.A. are registered with one or more *state securities authorities* as *investment adviser representatives* for an investment adviser other than you?

0

(5) Approximately how many of the *employees* reported in 5.A. are licensed agents of an insurance company or agency?

0

(6) Approximately how many firms or other *persons* solicit advisory *clients* on your behalf?

0

*In your response to Item 5.B.(6), do not count any of your employees and count a firm only once – do not count each of the firm's employees that solicit on your behalf.*

## Clients

*In your responses to Items 5.C. and 5.D. do not include as "clients" the investors in a private fund you advise, unless you have a separate advisory relationship with those investors.*

C. (1) To approximately how many *clients* for whom you do not have regulatory assets under management did you provide investment advisory services during your most recently completed fiscal year?

0

(2) Approximately what percentage of your *clients* are non-*United States persons*?

85%

D. *For purposes of this Item 5.D., the category "individuals" includes trusts, estates, and 401(k) plans and IRAs of individuals and their family members, but does not include businesses organized as sole proprietorships.*
*The category "business development companies" consists of companies that have made an election pursuant to section 54 of the Investment Company Act of 1940. Unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940, do not answer (1)(d) or (3)(d) below.*

Indicate the approximate number of your *clients* and amount of your total regulatory assets under management (reported in Item 5.F. below) attributable to each of the following type of *client*. If you have fewer than 5 *clients* in a particular category (other than (d), (e), and (f)) you may check Item 5.D.(2) rather than respond to Item 5.D.(1).

The aggregate amount of regulatory assets under management reported in Item 5.D.(3) should equal the total amount of regulatory assets under management reported in Item 5.F.(2)(c) below.

If a *client* fits into more than one category, select one category that most accurately represents the *client* to avoid double counting *clients* and assets. If you advise a registered investment company, business development company, or pooled investment vehicle, report those assets in categories (d), (e), and (f) as applicable.

| Type of *Client* | (1) Number of *Client(s)* | (2) Fewer than 5 Clients | (3) Amount of Regulatory Assets under Management |
|---|---|---|---|
| (a) Individuals (other than *high net worth individuals*) | 0 | ☐ | $ 0 |
| (b) *High net worth individuals* | 0 | ☐ | $ 0 |
| (c) Banking or thrift institutions | 0 | ☐ | $ 0 |
| (d) Investment companies | 0 | | $ 0 |
| (e) Business development companies | 0 | | $ 0 |
| (f) Pooled investment vehicles (other than investment companies and business development companies) | 24 | | $ 271,892,320 |
| (g) Pension and profit sharing plans (but not the plan participants or government pension plans) | 0 | ☐ | $ 0 |
| (h) Charitable organizations | 0 | ☐ | $ 0 |
| (i) State or municipal *government entities* (including government pension plans) | 1 | ☑ | $ 25,021,154 |
| (j) Other investment advisers | 0 | ☐ | $ 0 |
| (k) Insurance companies | 0 | ☐ | $ 0 |
| (l) Sovereign wealth funds and foreign official institutions | 0 | ☐ | $ 0 |
| (m) Corporations or other businesses not listed above | 0 | ☐ | $ 0 |

| (n) Other: | | | 0 | | ☐ | | $ 0 |

**Compensation Arrangements**

E.    You are compensated for your investment advisory services by (check all that apply):

- ☑ (1)    A percentage of assets under your management
- ☐ (2)    Hourly charges
- ☐ (3)    Subscription fees (for a newsletter or periodical)
- ☐ (4)    Fixed fees (other than subscription fees)
- ☐ (5)    Commissions
- ☑ (6)    *Performance-based fees*
- ☐ (7)    Other (specify):

---

**Item 5 Information About Your Advisory Business - Regulatory Assets Under Management**

**Regulatory Assets Under Management**

|  |  | Yes | No |
|---|---|---|---|
| F.    (1)    Do you provide continuous and regular supervisory or management services to securities portfolios? |  | ◉ | ○ |

(2)    If yes, what is the amount of your regulatory assets under management and total number of accounts?

|  | U.S. Dollar Amount | | Total Number of Accounts |
|---|---|---|---|
| Discretionary: | (a)  $ 296,913,474 | (d) | 25 |
| Non-Discretionary: | (b)  $ 0 | (e) | 0 |
| Total: | (c)  $ 296,913,474 | (f) | 25 |

*Part 1A Instruction 5.b.* explains how to calculate your regulatory assets under management. You must follow these instructions carefully when completing this Item.

(3)    What is the approximate amount of your total regulatory assets under management (reported in Item 5.F.(2)(c) above) attributable to *clients* who are non-*United States persons*?

$ 252,376,453

---

**Item 5 Information About Your Advisory Business - Advisory Activities**

**Advisory Activities**

G.    What type(s) of advisory services do you provide? Check all that apply.

- ☐ (1)    Financial planning services
- ☐ (2)    Portfolio management for individuals and/or small businesses
- ☐ (3)    Portfolio management for investment companies (as well as "business development companies" that have made an election pursuant to section 54 of the Investment Company Act of 1940)
- ☑ (4)    Portfolio management for pooled investment vehicles (other than investment companies)
- ☑ (5)    Portfolio management for businesses (other than small businesses) or institutional *clients* (other than registered investment companies and other pooled investment vehicles)
- ☐ (6)    Pension consulting services
- ☐ (7)    Selection of other advisers (including *private fund* managers)
- ☐ (8)    Publication of periodicals or newsletters
- ☐ (9)    Security ratings or pricing services
- ☐ (10)  Market timing services
- ☐ (11)  Educational seminars/workshops
- ☐ (12)  Other(specify):

Do not check Item 5.G.(3) unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940, including as a subadviser. If you check Item 5.G.(3), report the 811 or 814 number of the investment company or investment companies to which you provide advice in *Section 5.G.(3) of Schedule D*.

H.    If you provide financial planning services, to how many *clients* did you provide these services during your last fiscal year?

- ◉ 0
- ○ 1 - 10
- ○ 11 - 25
- ○ 26 - 50
- ○ 51 - 100
- ○ 101 - 250
- ○ 251 - 500
- ○ More than 500

If more than 500, how many?
(round to the nearest 500)

*In your responses to this Item 5.H., do not include as "clients" the investors in a private fund you advise, unless you have a separate advisory relationship*

*with those investors.*

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 121 of 214    PageID 7719
Exhibit Exhibits 53-58    Page 575 of 692

|  |  | Yes | No |
|---|---|---|---|
| I. | (1) Do you participate in a *wrap fee program*? | ○ | ⦿ |

(2) If you participate in a *wrap fee program*, what is the amount of your regulatory assets under management attributable to acting as:

(a) *sponsor* to a *wrap fee program*
$

(b) portfolio manager for a *wrap fee program*?
$

(c) *sponsor* to and portfolio manager for the same *wrap fee program*?
$

*If you report an amount in Item 5.I.(2)(c), do not report that amount in Item 5.I.(2)(a) or Item 5.I.(2)(b).*

*If you are a portfolio manager for a wrap fee program, list the names of the programs, their sponsors and related information in Section 5.I.(2) of Schedule D.*

*If your involvement in a wrap fee program is limited to recommending wrap fee programs to your clients, or you advise a mutual fund that is offered through a wrap fee program, do not check Item 5.I.(1) or enter any amounts in response to Item 5.I.(2).*

|  |  | Yes | No |
|---|---|---|---|
| J. | (1) In response to Item 4.B. of Part 2A of Form ADV, do you indicate that you provide investment advice only with respect to limited types of investments? | ⦿ | ○ |
|  | (2) Do you report *client* assets in Item 4.E. of Part 2A that are computed using a different method than the method used to compute your regulatory assets under management? | ○ | ⦿ |

K.   Separately Managed Account *Clients*

|  | Yes | No |
|---|---|---|
| (1) Do you have regulatory assets under management attributable to *clients* other than those listed in Item 5.D.(3)(d)-(f) (separately managed account *clients*)? | ⦿ | ○ |

*If yes, complete Section 5.K.(1) of Schedule D.*

| | Yes | No |
|---|---|---|
| (2) Do you engage in borrowing transactions on behalf of any of the separately managed account *clients* that you advise? | ○ | ⦿ |

*If yes, complete Section 5.K.(2) of Schedule D.*

| | Yes | No |
|---|---|---|
| (3) Do you engage in derivative transactions on behalf of any of the separately managed account *clients* that you advise? | ○ | ⦿ |

*If yes, complete Section 5.K.(2) of Schedule D.*

| | Yes | No |
|---|---|---|
| (4) After subtracting the amounts in Item 5.D.(3)(d)-(f) above from your total regulatory assets under management, does any custodian hold ten percent or more of this remaining amount of regulatory assets under management? | ⦿ | ○ |

*If yes, complete Section 5.K.(3) of Schedule D for each custodian.*

L.   Marketing Activities

|  | Yes | No |
|---|---|---|
| (1) Do any of your *advertisements* include: | | |
| (a) Performance results? | ○ | ⦿ |
| (b) A reference to specific investment advice provided by you (as that phrase is used in rule 206(4)-1(a)(5))? | ○ | ⦿ |
| (c) *Testimonials* (other than those that satisfy rule 206(4)-1(b)(4)(ii))? | ○ | ⦿ |
| (d) *Endorsements* (other than those that satisfy rule 206(4)-1(b)(4)(ii))? | ○ | ⦿ |
| (e) *Third-party ratings*? | ○ | ⦿ |
| (2) If you answer "yes" to L(1)(c), (d), or (e) above, do you pay or otherwise provide cash or non-cash compensation, directly or indirectly, in connection with the use of *testimonials*, *endorsements*, or *third-party ratings*? | ○ | ○ |
| (3) Do any of your *advertisements* include *hypothetical performance*? | ○ | ○ |
| (4) Do any of your *advertisements* include *predecessor performance*? | ○ | ○ |

Registered Investment Companies and Business Development Companies 11/06/2023 22:10:41   Desc
Exhibit Exhibits 53-58   Page 576 of 692

No Information Filed

---

**SECTION 5.I.(2)** *Wrap Fee Programs*

No Information Filed

---

**SECTION 5.K.(1) Separately Managed Accounts**

After subtracting the amounts reported in Item 5.D.(3)(d)-(f) from your total regulatory assets under management, indicate the approximate percentage of this remaining amount attributable to each of the following categories of assets. If the remaining amount is at least $10 billion in regulatory assets under management, complete Question (a). If the remaining amount is less than $10 billion in regulatory assets under management, complete Question (b).

Any regulatory assets under management reported in Item 5.D.(3)(d), (e), and (f) should not be reported below.

If you are a subadviser to a separately managed account, you should only provide information with respect to the portion of the account that you subadvise.

End of year refers to the date used to calculate your regulatory assets under management for purposes of your *annual updating amendment* . Mid-year is the date six months before the end of year date. Each column should add up to 100% and numbers should be rounded to the nearest percent.

Investments in derivatives, registered investment companies, business development companies, and pooled investment vehicles should be reported in those categories. Do not report those investments based on related or underlying portfolio assets. Cash equivalents include bank deposits, certificates of deposit, bankers' acceptances and similar bank instruments.

Some assets could be classified into more than one category or require discretion about which category applies. You may use your own internal methodologies and the conventions of your service providers in determining how to categorize assets, so long as the methodologies or conventions are consistently applied and consistent with information you report internally and to current and prospective clients. However, you should not double count assets, and your responses must be consistent with any instructions or other guidance relating to this Section.

(a)

| Asset Type | | Mid-year | End of year |
|---|---|---|---|
| (i) | Exchange-Traded Equity Securities | % | % |
| (ii) | Non Exchange-Traded Equity Securities | % | % |
| (iii) | U.S. Government/Agency Bonds | % | % |
| (iv) | U.S. State and Local Bonds | % | % |
| (v) | *Sovereign Bonds* | % | % |
| (vi) | Investment Grade Corporate Bonds | % | % |
| (vii) | Non-Investment Grade Corporate Bonds | % | % |
| (viii) | Derivatives | % | % |
| (ix) | Securities Issued by Registered Investment Companies or Business Development Companies | % | % |
| (x) | Securities Issued by Pooled Investment Vehicles (other than Registered Investment Companies or Business Development Companies) | % | % |
| (xi) | Cash and Cash Equivalents | % | % |
| (xii) | Other | % | % |

Generally describe any assets included in "Other"

(b)

| Asset Type | | End of year |
|---|---|---|
| (i) | Exchange-Traded Equity Securities | 0 % |
| (ii) | Non Exchange-Traded Equity Securities | 74 % |
| (iii) | U.S. Government/Agency Bonds | 0 % |
| (iv) | U.S. State and Local Bonds | 0 % |
| (v) | *Sovereign Bonds* | 0 % |
| (vi) | Investment Grade Corporate Bonds | 0 % |
| (vii) | Non-Investment Grade Corporate Bonds | 0 % |
| (viii) | Derivatives | 0 % |
| (ix) | Securities Issued by Registered Investment Companies or Business Development Companies | 0 % |
| (x) | Securities Issued by Pooled Investment Vehicles (other than Registered Investment Companies or Business Development Companies) | 0 % |
| (xi) | Cash and Cash Equivalents | 2 % |
| (xii) | Other | 24 % |

**SECTION 5.K.(2) Separately Managed Accounts – Use of *Borrowings* and Derivatives**

☐ No information is required to be reported in this Section 5.K.(2) per the instructions of this Section 5.K.(2)

If your regulatory assets under management attributable to separately managed accounts are at least $10 billion, you should complete Question (a). If your regulatory assets under management attributable to separately managed accounts are at least $500 million but less than $10 billion, you should complete Question (b).

(a)   In the table below, provide the following information regarding the separately managed accounts you advise. If you are a subadviser to a separately managed account, you should only provide information with respect to the portion of the account that you subadvise. End of year refers to the date used to calculate your regulatory assets under management for purposes of your *annual updating amendment*. Mid-year is the date six months before the end of year date.

In column 1, indicate the regulatory assets under management attributable to separately managed accounts associated with each level of gross notional exposure. For purposes of this table, the gross notional exposure of an account is the percentage obtained by dividing (i) the sum of (a) the dollar amount of any *borrowings* and (b) the *gross notional value* of all derivatives, by (ii) the regulatory assets under management of the account.

In column 2, provide the dollar amount of *borrowings* for the accounts included in column 1.

In column 3, provide aggregate *gross notional value* of derivatives divided by the aggregate regulatory assets under management of the accounts included in column 1 with respect to each category of derivatives specified in 3(a) through (f).

You may, but are not required to, complete the table with respect to any separately managed account with regulatory assets under management of less than $10,000,000.

Any regulatory assets under management reported in Item 5.D.(3)(d), (e), and (f) should not be reported below.

(i) Mid-Year

| Gross Notional Exposure | (1) Regulatory Assets Under Management | (2) *Borrowings* | (3) Derivative Exposures | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | (a) *Interest Rate Derivative* | (b) *Foreign Exchange Derivative* | (c) *Credit Derivative* | (d) *Equity Derivative* | (e) *Commodity Derivative* | (f) *Other Derivative* |
| **Less than 10%** | $ | $ | % | % | % | % | % | % |
| **10-149%** | $ | $ | % | % | % | % | % | % |
| **150% or more** | $ | $ | % | % | % | % | % | % |

Optional: Use the space below to provide a narrative description of the strategies and/or manner in which *borrowings* and derivatives are used in the management of the separately managed accounts that you advise.

(ii) End of Year

| Gross Notional Exposure | (1) Regulatory Assets Under Management | (2) *Borrowings* | (3) Derivative Exposures | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | (a) *Interest Rate Derivative* | (b) *Foreign Exchange Derivative* | (c) *Credit Derivative* | (d) *Equity Derivative* | (e) *Commodity Derivative* | (f) *Other Derivative* |
| **Less than 10%** | $ | $ | % | % | % | % | % | % |
| **10-149%** | $ | $ | % | % | % | % | % | % |
| **150% or more** | $ | $ | % | % | % | % | % | % |

Optional: Use the space below to provide a narrative description of the strategies and/or manner in which *borrowings* and derivatives are used in the management of the separately managed accounts that you advise.

(b)   In the table below, provide the following information regarding the separately managed accounts you advise as of the date used to calculate your regulatory assets under management for purposes of your *annual updating amendment*. If you are a subadviser to a separately managed account, you should only provide information with respect to the portion of the account that you subadvise.

In column 1, indicate the regulatory assets under management attributable to separately managed accounts associated with each level of gross notional exposure. For purposes of this table, the gross notional exposure of an account is the percentage obtained by dividing (i) the sum of (a) the

dollar amount of any *borrowings* and (b) the *gross notional value* of all derivatives, by (ii) the regulatory assets under management of the account.

In column 2, provide the dollar amount of *borrowings* attributable to the assets.

You may, but are not required to, complete the table with respect to any separately managed accounts with regulatory assets under management of less than $10,000,000.

Any regulatory assets under management reported in Item 5.D.(3)(d), (e), and (f) should not be reported below.

| Gross Notional Exposure | (1) Regulatory Assets Under Management | (2) *Borrowings* |
|---|---|---|
| Less than 10% | $ | $ |
| 10-149% | $ | $ |
| 150% or more | $ | $ |

Optional: Use the space below to provide a narrative description of the strategies and/or manner in which *borrowings* and derivatives are used in the management of the separately managed accounts that you advise.

---

## SECTION 5.K.(3) Custodians for Separately Managed Accounts

Complete a separate Schedule D Section 5.K.(3) for each custodian that holds ten percent or more of your aggregate separately managed account regulatory assets under management.

(a)      Legal name of custodian:

THE BANK OF NEW YORK MELLON

(b)      Primary business name of custodian:

BNY MELLON

(c)      The location(s) of the custodian's office(s) responsible for *custody* of the assets :

City:                          State:                          Country:

NEW YORK                       New York                       United States

                                                                                                    **Yes  No**

(d)      Is the custodian a *related person* of your firm?                                          ○   ●

(e)      If the custodian is a broker-dealer, provide its SEC registration number (if any)

-

(f)      If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)

(g)      What amount of your regulatory assets under management attributable to separately managed accounts is held at the custodian?

$ 74,501,290

---

## Item 6 Other Business Activities

In this Item, we request information about your firm's other business activities.

A.    You are actively engaged in business as a (check all that apply):

☐    (1)   broker-dealer (registered or unregistered)
☐    (2)   registered representative of a broker-dealer
☐    (3)   commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
☐    (4)   futures commission merchant
☐    (5)   real estate broker, dealer, or agent
☐    (6)   insurance broker or agent
☐    (7)   bank (including a separately identifiable department or division of a bank)
☐    (8)   trust company
☐    (9)   registered municipal advisor
☐    (10)  registered security-based swap dealer
☐    (11)  major security-based swap participant
☐    (12)  accountant or accounting firm
☐    (13)  lawyer or law firm
☐    (14)  other financial product salesperson (specify):

*If you engage in other business using a name that is different from the names reported in Items 1.A. or 1.B.(1), complete* Section 6.A. of Schedule D.

                                                                                                    **Yes  No**

B.    (1)   Are you actively engaged in any other business not listed in Item 6.A. (other than giving investment advice)?    ○   ●

      (2)   If yes, is this other business your primary business?                                    ○   ○

| | | | Yes | No |
|---|---|---|---|---|
| (3) | Do you or any *related person* sell products or provide services other than investment advisory services to your *advisory clients*? | | ○ | ● |

*If "yes," describe this other business on* *Section 6.B.(2) of Schedule D, and if you engage in this business under a different name, provide that name.*

*If "yes," describe this other business on* *Section 6.B.(3) of Schedule D, and if you engage in this business under a different name, provide that name.*

---

### SECTION 6.A. Names of Your Other Businesses

No Information Filed

---

### SECTION 6.B.(2) Description of Primary Business

Describe your primary business (not your investment advisory business):


If you engage in that business under a different name, provide that name:

---

### SECTION 6.B.(3) Description of Other Products and Services

Describe other products or services you sell to your *client*. You may omit products and services that you listed in Section 6.B.(2) above.


If you engage in that business under a different name, provide that name:

---

### Item 7 Financial Industry Affiliations

In this Item, we request information about your financial industry affiliations and activities. This information identifies areas in which conflicts of interest may occur between you and your *clients*.

A.   This part of Item 7 requires you to provide information about you and your *related persons*, including foreign affiliates. Your *related persons* are all of your *advisory affiliates* and any *person* that is under common *control* with you.

You have a *related person* that is a (check all that apply):

- ☐ (1)   broker-dealer, municipal securities dealer, or government securities broker or dealer (registered or unregistered)
- ☑ (2)   other investment adviser (including financial planners)
- ☐ (3)   registered municipal advisor
- ☐ (4)   registered security-based swap dealer
- ☐ (5)   major security-based swap participant
- ☐ (6)   commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
- ☐ (7)   futures commission merchant
- ☐ (8)   banking or thrift institution
- ☐ (9)   trust company
- ☐ (10)  accountant or accounting firm
- ☐ (11)  lawyer or law firm
- ☐ (12)  insurance company or agency
- ☐ (13)  pension consultant
- ☐ (14)  real estate broker or dealer
- ☐ (15)  sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
- ☑ (16)  sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

*Note that Item 7.A. should not be used to disclose that some of your employees perform investment advisory functions or are registered representatives of a broker-dealer. The number of your firm's employees who perform investment advisory functions should be disclosed under Item 5.B.(1). The number of your firm's employees who are registered representatives of a broker-dealer should be disclosed under Item 5.B.(2).*

*Note that if you are filing an umbrella registration, you should not check Item 7.A.(2) with respect to your relying advisers, and you do not have to complete Section 7.A. in Schedule D for your relying advisers. You should complete a Schedule R for each relying adviser.*

*For each related person, including foreign affiliates that may not be registered or required to be registered in the United States, complete* *Section 7.A. of Schedule D*.

*You do not need to complete Section 7.A. of Schedule D for any related person if: (1) you have no business dealings with the related person in connection with advisory services you provide to your clients; (2) you do not conduct shared operations with the related person; (3) you do not refer clients or business to the related person, and the related person does not refer prospective clients or business to you; (4) you do not share supervised persons or premises with the related person; and (5) you have no reason to believe that your relationship with the related person otherwise creates a conflict of interest with your clients.*

*You must complete* *Section 7.A. of Schedule D* *for each related person acting as qualified custodian in connection with advisory services you provide to your clients (other than any mutual fund transfer agent pursuant to rule 206(4)-2(b)(1)), regardless of whether you have determined the related person to be operationally independent under rule 206(4)-2 of the Advisers Act.*

---

### SECTION 7.A. Financial Industry Affiliations

Complete a separate Schedule D Section 7.A. for each *related person* listed in Item 7.A.

1. Legal Name of *Related Person*:
HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P.

2. Primary Business Name of *Related Person*:
HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P.

3. *Related Person's* SEC File Number (if any) (e.g., 801-, 8-, 866-, 802-)
-
or
Other

4. *Related Person's*
   (a)  *CRD* Number (if any):

   (b)  CIK Number(s) (if any):
   
                                        No Information Filed

5. *Related Person* is: (check all that apply)
   (a) ☐  broker-dealer, municipal securities dealer, or government securities broker or dealer
   (b) ☐  other investment adviser (including financial planners)
   (c) ☐  registered municipal advisor
   (d) ☐  registered security-based swap dealer
   (e) ☐  major security-based swap participant
   (f) ☐  commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
   (g) ☐  futures commission merchant
   (h) ☐  banking or thrift institution
   (i) ☐  trust company
   (j) ☐  accountant or accounting firm
   (k) ☐  lawyer or law firm
   (l) ☐  insurance company or agency
   (m) ☐  pension consultant
   (n) ☐  real estate broker or dealer
   (o) ☐  sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
   (p) ☑  sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

|  |  | Yes | No |
|---|---|---|---|
| 6. | Do you *control* or are you *controlled* by the *related person*? | ○ | ● |
| 7. | Are you and the *related person* under common *control*? | ● | ○ |
| 8. (a) | Does the *related person* act as a qualified custodian for your *clients* in connection with advisory services you provide to *clients*? | ○ | ● |
| (b) | If you are registering or registered with the SEC and you have answered "yes," to question 8.(a) above, have you overcome the presumption that you are not operationally independent (pursuant to rule 206(4)-2(d)(5)) from the *related person* and thus are not required to obtain a surprise examination for your *clients'* funds or securities that are maintained at the *related person*? | ○ | ○ |

(c) If you have answered "yes" to question 8.(a) above, provide the location of the *related person's* office responsible for *custody* of your *clients'* assets:
Number and Street 1:                    Number and Street 2:
City:            State:                  Country:            ZIP+4/Postal Code:
If this address is a private residence, check this box: ☐

|  |  | Yes | No |
|---|---|---|---|
| 9. (a) | If the *related person* is an investment adviser, is it exempt from registration? | ○ | ○ |
| (b) | If the answer is yes, under what exemption? | | |
| 10. (a) | Is the *related person* registered with a *foreign financial regulatory authority*? | ○ | ● |
| (b) | If the answer is yes, list the name and country, in English of each *foreign financial regulatory authority* with which the *related person* is registered. | | |

                                        No Information Filed

|  |  | Yes | No |
|---|---|---|---|
| 11. | Do you and the *related person* share any *supervised persons*? | ● | ○ |
| 12. | Do you and the *related person* share the same physical location? | ● | ○ |

---

1. Legal Name of *Related Person*:
HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED

2. Primary Business Name of *Related Person*:

3. *Related Person's* SEC File Number (if any) (e.g., 801-, 8-, 866-, 802-)
- 
or
Other

4. *Related Person's*
(a)  *CRD* Number (if any):

(b)  CIK Number(s) (if any):

No Information Filed

5. *Related Person* is: (check all that apply)
(a) ☐ broker-dealer, municipal securities dealer, or government securities broker or dealer
(b) ☐ other investment adviser (including financial planners)
(c) ☐ registered municipal advisor
(d) ☐ registered security-based swap dealer
(e) ☐ major security-based swap participant
(f) ☐ commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
(g) ☐ futures commission merchant
(h) ☐ banking or thrift institution
(i) ☐ trust company
(j) ☐ accountant or accounting firm
(k) ☐ lawyer or law firm
(l) ☐ insurance company or agency
(m) ☐ pension consultant
(n) ☐ real estate broker or dealer
(o) ☐ sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
(p) ☑ sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

|  | Yes | No |
|---|---|---|
| 6. Do you *control* or are you *controlled* by the *related person*? | ○ | ◉ |
| 7. Are you and the *related person* under common *control*? | ◉ | ○ |
| 8. (a) Does the *related person* act as a qualified custodian for your *clients* in connection with advisory services you provide to *clients*? | ○ | ◉ |
| (b) If you are registering or registered with the SEC and you have answered "yes," to question 8.(a) above, have you overcome the presumption that you are not operationally independent (pursuant to rule 206(4)-2(d)(5)) from the *related person* and thus are not required to obtain a surprise examination for your *clients'* funds or securities that are maintained at the *related person*? | ○ | ○ |

(c) If you have answered "yes" to question 8.(a) above, provide the location of the *related person's* office responsible for *custody* of your *clients'* assets:
Number and Street 1:                Number and Street 2:
City:                State:                Country:                ZIP+4/Postal Code:
If this address is a private residence, check this box: ☐

|  | Yes | No |
|---|---|---|
| 9. (a) If the *related person* is an investment adviser, is it exempt from registration? | ○ | ○ |
| (b) If the answer is yes, under what exemption? | | |
| 10. (a) Is the *related person* registered with a *foreign financial regulatory authority*? | ◉ | ○ |

(b) If the answer is yes, list the name and country, in which of each *foreign financial regulatory authority* with which the *related person* is registered.

| Name of Country/English Name of *Foreign Financial Regulatory Authority* |
|---|
| South Korea - Financial Supervisory Commission / Financial Supervisory Service |

|  | Yes | No |
|---|---|---|
| 11. Do you and the *related person* share any *supervised persons*? | ◉ | ○ |
| 12. Do you and the *related person* share the same physical location? | ○ | ◉ |

1. Legal Name of *Related Person*:
HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC

2. Primary Business Name of *Related Person*:
HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC

3. *Related Person's* SEC File Number (if any) (e.g., 801-, 8-, 866-, 802-)
- 
or

Other

4.  *Related Person's*
    (a)   *CRD* Number (if any):

    (b)   CIK Number(s) (if any):

                                          No Information Filed

5.  *Related Person* is: (check all that apply)
    (a)  ☐   broker-dealer, municipal securities dealer, or government securities broker or dealer
    (b)  ☐   other investment adviser (including financial planners)
    (c)  ☐   registered municipal advisor
    (d)  ☐   registered security-based swap dealer
    (e)  ☐   major security-based swap participant
    (f)  ☐   commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
    (g)  ☐   futures commission merchant
    (h)  ☐   banking or thrift institution
    (i)  ☐   trust company
    (j)  ☐   accountant or accounting firm
    (k)  ☐   lawyer or law firm
    (l)  ☐   insurance company or agency
    (m)  ☐   pension consultant
    (n)  ☐   real estate broker or dealer
    (o)  ☐   sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
    (p)  ☑   sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

                                                                                                    **Yes  No**

6.  Do you *control* or are you *controlled* by the *related person*?                                  ○    ◉

7.  Are you and the *related person* under common *control*?                                           ◉    ○

8.  (a)  Does the *related person* act as a qualified custodian for your *clients* in connection with advisory services you provide to *clients*?   ○    ◉
    (b)  If you are registering or registered with the SEC and you have answered "yes," to question 8.(a) above, have you overcome the   ○    ○
         presumption that you are not operationally independent (pursuant to rule 206(4)-2(d)(5)) from the *related person* and thus are not
         required to obtain a surprise examination for your *clients'* funds or securities that are maintained at the *related person*?
    (c)  If you have answered "yes" to question 8.(a) above, provide the location of the *related person's* office responsible for *custody* of your *clients'* assets:
         Number and Street 1:                          Number and Street 2:
         City:                    State:                Country:                ZIP+4/Postal Code:
         If this address is a private residence, check this box: ☐

                                                                                                    **Yes  No**

9.  (a)  If the *related person* is an investment adviser, is it exempt from registration?             ○    ○
    (b)  If the answer is yes, under what exemption?

10. (a)  Is the *related person* registered with a *foreign financial regulatory authority*?           ○    ◉
    (b)  If the answer is yes, list the name and country, in English of each *foreign financial regulatory authority* with which the *related person* is registered.
                                          No Information Filed

11. Do you and the *related person* share any *supervised persons*?                                    ◉    ○

12. Do you and the *related person* share the same physical location?                                  ◉    ○

---

**Item 7 *Private Fund* Reporting**

                                                                                                    **Yes  No**

B. Are you an adviser to any *private fund*?                                                           ◉    ○

   If "yes," then for each private fund that you advise, you must complete a Section 7.B.(1) of Schedule D, except in certain circumstances described in the next
   sentence and in Instruction 6 of the Instructions to Part 1A. If you are registered or applying for registration with the SEC or reporting as an SEC exempt
   reporting adviser, and another SEC-registered adviser or SEC exempt reporting adviser reports this information with respect to any such private fund in Section
   7.B.(1) of Schedule D of its Form ADV (e.g., if you are a subadviser), do not complete Section 7.B.(1) of Schedule D with respect to that private fund. You must,
   instead, complete Section 7.B.(2) of Schedule D.

   In either case, if you seek to preserve the anonymity of a private fund client by maintaining its identity in your books and records in numerical or alphabetical
   code, or similar designation, pursuant to rule 204-2(d), you may identify the private fund in Section 7.B.(1) or 7.B.(2) of Schedule D using the same code or
   designation in place of the fund's name.

A. PRIVATE FUND

### Information About the *Private Fund*

1.  (a)  Name of the *private fund*:

    HIGHLAND MULTI STRATEGY CREDIT FUND, L.P.

    (b)  *Private fund* identification number:
    (include the "805-" prefix also)

    805-9872591840

2.  Under the laws of what state or country is the *private fund* organized:

    State:               Country:

    Delaware          United States

3.  (a)  Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

| Name of General Partner, Manager, Trustee, or Director |
| --- |
| HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P. |

    (b)  If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| *Filing Adviser/Relying Adviser* Name |
| --- |
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

4.  The *private fund* (check all that apply; you must check at least one):

☐ (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

☑ (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5.  List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| No Information Filed |
| --- |

                                                   **Yes  No**

6.  (a)  Is this a "master fund" in a master-feeder arrangement?                       ◉  ○

    (b)  If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| Name of *private fund* | *Private fund* identification number |
| --- | --- |
| HIGHLAND MULTI STRATEGY CREDIT FUND, LTD | 805-1960274517 |

                                                   **Yes  No**

    (c)  Is this a "feeder fund" in a master-feeder arrangement?                    ○  ◉

    (d)  If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

    Name of *private fund*:

    *Private fund* identification number:
    (include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| Additional Feeder Fund Information : 1 Record(s) Filed. |
| --- |

    7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

        (a)    Name of the *private fund*:

                HIGHLAND MULTI STRATEGY CREDIT FUND, LTD

(b)   *Private fund* identification number:

805-1960274517

(c)   Under the laws of what state or country is the *private fund* organized:

State:                              Country:

Cayman Islands

(d) (1)   Name(s) of General Partner, Manager, Trustee or Directors (or *persons* serving in a similar capacity):

| Name of General Partner, Manager, Trustee or Director |
| --- |
| JAMES P. SEERY, JR. |

(d) (2)   If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*:

| Filing Adviser/Relying Adviser Name |
| --- |
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

(e)   The *private fund* (check all that apply; you must check at least one):

☐  (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

☑  (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

(f)   List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| Name of Country/English Name of *Foreign Financial Regulatory Authority* |
| --- |
| Cayman Islands - Cayman Islands Stock Exchange Authority |
| Other - CAYMAN ISLANDS MONETARY AUTHORITY |

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

                                                **Yes  No**

8.   (a)  Is this *private fund* a "fund of funds"?                                                 ☐    ☑

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

(b)  If yes, does the *private fund* invest in funds managed by you or by a *related person*?          ☐    ☐

                                                **Yes  No**

9.   During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment     ☐    ☑
Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)?

10.   What type of fund is the *private fund*?

☑ hedge fund   ☐ liquidity fund   ☐ private equity fund   ☐ real estate fund   ☐ securitized asset fund   ☐ venture capital fund   ☐ Other *private fund*:

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

11.   Current gross asset value of the *private fund*:

$ 142,554,481

**Ownership**

12.   Minimum investment commitment required of an investor in the *private fund*:

$ 1,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13.   Approximate number of the *private fund's* beneficial owners:

3

14. What is the approximate percentage of the private fund beneficially owned by you and your related persons: Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
59%
Exhibit Exhibits 53-58    Page 585 of 692
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 131 of 214    PageID 7729

15. (a)  What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

|  | Yes | No |
|---|---|---|

(b)  If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*?    ○  ○

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

55%

## Your Advisory Services

|  | Yes | No |
|---|---|---|

17. (a)  Are you a subadviser to this *private fund*?    ○  ⦿

(b)  If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|

18. (a)  Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*?    ○  ⦿

(b)  If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|

19. Are your *clients* solicited to invest in the *private fund*?    ○  ⦿

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

## Private Offering

|  | Yes | No |
|---|---|---|

21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933?    ○  ⦿

22. If yes, provide the *private fund's* Form D file number (if any):

| No Information Filed |
|---|

## B. SERVICE PROVIDERS

## Auditors

|  | Yes | No |
|---|---|---|

23. (a)  (1) Are the *private fund's* financial statements subject to an annual audit?    ⦿  ○

(2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP?    ⦿  ○

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

| Additional Auditor Information : 1 Record(s) Filed. |
|---|

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

(b)  Name of the auditing firm:

COHEN AND COMPANY

(c)  The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

City:    State:    Country:
CLEVELAND    Ohio    United States

|  | Yes | No |
|---|---|---|

(d)  Is the auditing firm an *independent public accountant*?    ⦿  ○

(e) Is the auditing firm registered with the Public Company Accounting Oversight Board?    ⦿ Yes   ○ No

If yes, Public Company Accounting Oversight Board-Assigned Number:
925

(f) If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules?    ⦿ Yes   ○ No

           **Yes No**

(g) Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors?    ⦿ ○

(h) Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions?

⦿ Yes   ○ No   ○ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

## Prime Broker

           **Yes No**

24. (a) Does the *private fund* use one or more prime brokers?    ○ ⦿

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

| No Information Filed |
|---|

## Custodian

           **Yes No**

25. (a) Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets?    ⦿ ○

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b) Legal name of custodian:
THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION

(c) Primary business name of custodian:
BANK OF NEW YORK

(d) The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):

| City: | State: | Country: |
|---|---|---|
| HOUSTON | Texas | United States |

           **Yes No**

(e) Is the custodian a *related person* of your firm?    ○ ⦿

(f) If the custodian is a broker-dealer, provide its SEC registration number (if any):
-

CRD Number (if any):

(g) If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)
WFLLPEPC7FZXENRZV188

## Administrator

           **Yes No**

26. (a) Does the *private fund* use an administrator other than your firm?

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

---

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b) Name of administrator:

   SEI INVESTMENT MANAGER SERVICES

(c) Location of administrator (city, state and country):

| City: | State: | Country: |
|---|---|---|
| OAKS | Pennsylvania | United States |

                                                              **Yes  No**

(d) Is the administrator a *related person* of your firm?

(e) Does the administrator prepare and send investor account statements to the *private fund*'s investors?

   ● Yes (provided to all investors)   ○ Some (provided to some but not all investors)   ○ No (provided to no investors)

(f) If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund*'s investors? If investor account statements are not sent to the (rest of the) *private fund*'s investors, respond "not applicable."

---

27. During your last fiscal year, what percentage of the *private fund*'s assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

   81%

   Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

### Marketers

                                                                    **Yes  No**

28. (a) Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?

   You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

---

No Information Filed

---

## A. PRIVATE FUND

### Information About the *Private Fund*

1. (a) Name of the *private fund*:

   HIGHLAND RESTORATION CAPITAL PARTNERS MASTER, LP

   (b) *Private fund* identification number:
   (include the "805-" prefix also)

   805-4547867916

2. Under the laws of what state or country is the *private fund* organized:

| State: | Country: |
|---|---|
| Delaware | United States |

3. (a) Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

| Name of General Partner, Manager, Trustee, or Director |
|---|
| HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC |

(b) If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| Filing Adviser/Relying Adviser Name |
| --- |
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

4.  The *private fund* (check all that apply; you must check at least one):

☐ (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

☑ (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5.  List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| No Information Filed |
| --- |

                                                                                    **Yes  No**

6.  (a)  Is this a "master fund" in a master-feeder arrangement?                     ○    ◉

(b)  If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| No Information Filed |
| --- |

                                                                                    **Yes  No**

(c)  Is this a "feeder fund" in a master-feeder arrangement?                          ○    ◉

(d)  If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

Name of *private fund*:

*Private fund* identification number:
(include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| No Information Filed |
| --- |

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

                                                                                    **Yes  No**

8.  (a)  Is this *private fund* a "fund of funds"?                                    ○    ◉

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

(b)  If yes, does the *private fund* invest in funds managed by you or by a *related person*?    ○    ○

                                                                                    **Yes  No**

9.  During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment    ○    ◉
Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)?

10.  What type of fund is the *private fund*?

○ hedge fund  ○ liquidity fund  ◉ private equity fund  ○ real estate fund  ○ securitized asset fund  ○ venture capital fund  ○ Other *private fund*:

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

11.  Current gross asset value of the *private fund*:

$ 119,268,136

**Ownership**

12.  Minimum investment commitment required of an investor in the *private fund*:

$ 10,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the

organizational documents of the fund).

13. Approximate number of the *private fund's* beneficial owners:

6

14. What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

15%

15. (a)  What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

|  | Yes | No |
|---|---|---|
| (b)  If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*? | ○ | ○ |

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

100%

**Your Advisory Services**

|  | Yes | No |
|---|---|---|
| 17. (a)  Are you a subadviser to this *private fund*? | ○ | ● |

(b)  If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 18. (a)  Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*? | ○ | ● |

(b)  If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 19. Are your *clients* solicited to invest in the *private fund*? | ○ | ● |

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

**Private Offering**

|  | Yes | No |
|---|---|---|
| 21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933? | ● | ○ |

22. If yes, provide the *private fund's* Form D file number (if any):

| Form D file number |
|---|
| 021-120530 |

B. SERVICE PROVIDERS

**Auditors**

|  | Yes | No |
|---|---|---|
| 23. (a)  (1) Are the *private fund's* financial statements subject to an annual audit? | ● | ○ |
| (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP? | ● | ○ |

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

**Additional Auditor Information : 1 Record(s) Filed.**

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

(b)  Name of the auditing firm:

COHEN AND COMPANY

|  |  | Yes | No |
|---|---|---|---|
| (d) | Is the auditing firm an *independent public accountant*? | ◉ | ○ |
| (e) | Is the auditing firm registered with the Public Company Accounting Oversight Board? | ◉ | ○ |

If yes, Public Company Accounting Oversight Board-Assigned Number:
925

|  |  | Yes | No |
|---|---|---|---|
| (f) | If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ◉ | ○ |

|  |  | Yes | No |
|---|---|---|---|
| (g) | Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ◉ | ○ |

(h) Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions?

◉ Yes   ○ No   ○ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

**Prime Broker**

|  |  | Yes | No |
|---|---|---|---|
| 24. (a) | Does the *private fund* use one or more prime brokers? | ○ | ◉ |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

| No Information Filed |
|---|

**Custodian**

|  |  | Yes | No |
|---|---|---|---|
| 25. (a) | Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ◉ | ○ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b) Legal name of custodian:
THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION

(c) Primary business name of custodian:
BANK OF NEW YORK

(d) The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):

| City: | State: | Country: |
|---|---|---|
| HOUSTON | Texas | United States |

|  |  | Yes | No |
|---|---|---|---|
| (e) | Is the custodian a *related person* of your firm? | ○ | ◉ |

(f) If the custodian is a broker-dealer, provide its SEC registration number (if any):
-
CRD Number (if any):

(g) If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its legal entity identifier (if any)

008129

WFLLPEPC7FZXENRZV188

**Administrator**

|  | Yes | No |
|---|---|---|

26. (a) Does the *private fund* use an administrator other than your firm?  ● ○

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

---

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b) Name of administrator:

SEI INVESTMENT MANAGER SERVICES

(c) Location of administrator (city, state and country):

| City: | State: | Country: |
|---|---|---|
| OAKS | Pennsylvania | United States |

|  | Yes | No |
|---|---|---|

(d) Is the administrator a *related person* of your firm?  ○ ●

(e) Does the administrator prepare and send investor account statements to the *private fund's* investors?
● Yes (provided to all investors)  ○ Some (provided to some but not all investors)  ○ No (provided to no investors)

(f) If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund's* investors? If investor account statements are not sent to the (rest of the) *private fund's* investors, respond "not applicable."

---

27. During your last fiscal year, what percentage of the *private fund's* assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

98%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

**Marketers**

|  | Yes | No |
|---|---|---|

28. (a) Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?  ○ ●

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

No Information Filed

---

A. PRIVATE FUND

**Information About the *Private Fund***

1. (a) Name of the *private fund*:

HIGHLAND RESTORATION CAPITAL PARTNERS, L.P.

(b) *Private fund* identification number:
(include the "805-" prefix also)

805-2103133324

2. Under the laws of what state or country is the *private fund* organized:

| State: | Country: |
|---|---|
| Delaware | United States |

008130

3.  (a)  Name(s) of General Partner, Manager, Trustee, or Director (or any person serving in a similar capacity):

| Name of General Partner, Manager, Trustee, or Director |
|---|
| HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC |

(b)  If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| Filing Adviser/Relying Adviser Name |
|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

4.  The *private fund* (check all that apply; you must check at least one):
☐  (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940
☑  (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5.  List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 6.  (a)  Is this a "master fund" in a master-feeder arrangement? | ○ | ● |

(b)  If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| (c)  Is this a "feeder fund" in a master-feeder arrangement? | ○ | ● |

(d)  If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

Name of *private fund*:

*Private fund* identification number:
(include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| No Information Filed |
|---|

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

|  | Yes | No |
|---|---|---|
| 8.  (a)  Is this *private fund* a "fund of funds"? | ○ | ● |

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

|  | Yes | No |
|---|---|---|
| (b)  If yes, does the *private fund* invest in funds managed by you or by a *related person*? | ○ | ○ |

|  | Yes | No |
|---|---|---|
| 9.  During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)? | ○ | ● |

10.  What type of fund is the *private fund*?

○ hedge fund  ○ liquidity fund  ● private equity fund  ○ real estate fund  ○ securitized asset fund  ○ venture capital fund  ○ Other *private fund*:

NOTE: For definitions of these fund types, please see *Instruction 6 of the Instructions to Part 1A*.

11.  Current gross asset value of the *private fund*:
$ 97,014,675

008131

**Ownership**

12. Minimum investment commitment required of an investor in the *private fund*:

$ 10,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13. Approximate number of the *private fund's* beneficial owners:

5

14. What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

19%

15. (a) What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

| | Yes | No |
|---|---|---|
| (b) If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*? | ○ | ○ |

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

0%

**Your Advisory Services**

| | Yes | No |
|---|---|---|
| 17. (a) Are you a subadviser to this *private fund*? | ○ | ● |

(b) If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

| | Yes | No |
|---|---|---|
| 18. (a) Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*? | ○ | ● |

(b) If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

| | Yes | No |
|---|---|---|
| 19. Are your *clients* solicited to invest in the *private fund*? | ○ | ● |

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

**Private Offering**

| | Yes | No |
|---|---|---|
| 21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933? | ● | ○ |

22. If yes, provide the *private fund's* Form D file number (if any):

| Form D file number |
|---|
| 021-120513 |

B. SERVICE PROVIDERS

**Auditors**

| | Yes | No |
|---|---|---|
| 23. (a) (1) Are the *private fund's* financial statements subject to an annual audit? | ● | ○ |
| (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP? | ● | ○ |

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

| Additional Auditor Information : 1 Record(s) Filed. |
|---|
| If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one |

008132

auting firm, you must complete questions (b) through (f) separately for each auditing firm.

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc

Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 140 of 214    PageID 7738

Exhibit Exhibits 53-58    Page 594 of 692

COHEN AND COMPANY

(c) The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

| City: | State: | Country: |
|---|---|---|
| CLEVELAND | Ohio | United States |

|  | Yes | No |
|---|---|---|
| (d) Is the auditing firm an *independent public accountant*? | ◉ | ○ |
| (e) Is the auditing firm registered with the Public Company Accounting Oversight Board? | ◉ | ○ |

If yes, Public Company Accounting Oversight Board-Assigned Number:
925

| | Yes | No |
|---|---|---|
| (f) If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ◉ | ○ |

| | Yes | No |
|---|---|---|
| (g) Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ◉ | ○ |
| (h) Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions? | | |

◉ Yes    ○ No    ○ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

## Prime Broker

|  | Yes | No |
|---|---|---|
| 24. (a) Does the *private fund* use one or more prime brokers? | ○ | ◉ |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

| No Information Filed |
|---|

## Custodian

|  | Yes | No |
|---|---|---|
| 25. (a) Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ○ | ◉ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b) Legal name of custodian:
THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION

(c) Primary business name of custodian:
BANK OF NEW YORK

(d) The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):

| City: | State: | Country: |
|---|---|---|
| HOUSTON | Texas | United States |

|  | Yes | No |
|---|---|---|
| (e) Is the custodian a *related person* of your firm? | ○ | ○ |

(f) If the custodian is a broker-dealer, provide its SEC registration number (if any):
-

008133

CRD Number (if any):
Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 141 of 214    PageID 7739
Exhibit Exhibits 53-58    Page 595 of 692

(g) If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)

WFLLPEPC7FZXENRZV188

---

## Administrator

|  | Yes | No |
|---|---|---|

26. (a) Does the *private fund* use an administrator other than your firm?    ☉ Yes  ○ No

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b) Name of administrator:

SEI INVESTMENT MANAGER SERVICES

(c) Location of administrator (city, state and country):

| City: | State: | Country: |
|---|---|---|
| OAKS | Pennsylvania | United States |

(d) Is the administrator a *related person* of your firm?    ○ Yes  ☉ No

(e) Does the administrator prepare and send investor account statements to the *private fund's* investors?
☉ Yes (provided to all investors)   ○ Some (provided to some but not all investors)   ○ No (provided to no investors)

(f) If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund's* investors? If investor account statements are not sent to the (rest of the) *private fund's* investors, respond "not applicable."

27. During your last fiscal year, what percentage of the *private fund's* assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

98%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

## Marketers

|  | Yes | No |
|---|---|---|

28. (a) Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?    ○ Yes  ☉ No

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

No Information Filed

---

A. PRIVATE FUND

**Information About the *Private Fund***

1. (a) Name of the *private fund*:

STONEBRIDGE-HIGHLAND HEALTHCARE PRIVATE EQUITY FUND

(b) *Private fund* identification number:
(include the "805-" prefix also)

008134

2.  Under the laws of what state or country is the *private fund* organized:

State:                              Country:
                                   Korea, South

3.  (a)  Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

| No Information Filed |
|---|

(b)  If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| *Filing Adviser/Relying Adviser* **Name** |
|---|
| HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED |

4.  The *private fund* (check all that apply; you must check at least one):

☐  (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940
☑  (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5.  List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| **Name of Country/English Name of** *Foreign Financial Regulatory Authority* |
|---|
| South Korea - Financial Supervisory Commission / Financial Supervisory Service |

                                                                                    **Yes  No**
6.  (a)  Is this a "master fund" in a master-feeder arrangement?                      ○    ●

(b)  If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| No Information Filed |
|---|

                                                                                    **Yes  No**
(c)  Is this a "feeder fund" in a master-feeder arrangement?                          ○    ●

(d)  If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?
     Name of *private fund*:

     *Private fund* identification number:
     (include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| No Information Filed |
|---|

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

                                                                                    **Yes  No**
8.  (a)  Is this *private fund* a "fund of funds"?                                    ○    ●

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

(b)  If yes, does the *private fund* invest in funds managed by you or by a *related person*?        ○    ○

                                                                                    **Yes  No**
9.  During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment    ○    ○
Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)?

10.  What type of fund is the *private fund*?

   ○ hedge fund  ○ liquidity fund  ● private equity fund  ○ real estate fund  ○ securitized asset fund  ○ venture capital fund  ○ other *private fund*:

008135

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Exhibit Exhibits 53-58   Page 597 of 692

Case 3:23-cv-02071-E   Document 23-33   Filed 12/07/23   Page 143 of 214   PageID 7741

11. Current gross asset value of the *private fund*:

$ 118,073,343

**Ownership**

12. Minimum investment commitment required of an investor in the *private fund*:

$ 0

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13. Approximate number of the *private fund's* beneficial owners:

7

14. What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

6%

15. (a)  What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

|  | Yes | No |
|---|---|---|
| (b) If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*? | ○ | ○ |

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

100%

**Your Advisory Services**

|  | Yes | No |
|---|---|---|
| 17. (a) Are you a subadviser to this *private fund*? | ○ | ● |

(b) If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 18. (a) Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*? | ○ | ● |

(b) If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 19. Are your *clients* solicited to invest in the *private fund*? | ○ | ● |

NOTE: For purposes of this question, do not consider feeder funds of the private fund.

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

**Private Offering**

|  | Yes | No |
|---|---|---|
| 21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933? | ○ | ● |

22. If yes, provide the *private fund's* Form D file number (if any):

| No Information Filed |
|---|

B. SERVICE PROVIDERS

**Auditors**

|  | Yes | No |
|---|---|---|
| 23. (a) (1) Are the *private fund's* financial statements subject to an annual audit? | ● | ○ |
| (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP? | ○ | ○ |

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm,

008136

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Additional Auditor Information : 1 Record   Exhibit Exhibits 53-58   Page 598 of 692

Case 3:23-cv-02071-E   Document 23-33   Filed 12/07/23   Page 144 of 214   PageID 7742

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

(b)  Name of the auditing firm:

   DELOITTE ANJIN, LCC

(c)  The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

   City:                          State:                          Country:
   SEOUL                                                         Korea, South

|  | | Yes | No |
|---|---|---|---|
| (d) | Is the auditing firm an *independent public accountant*? | ⦿ | ○ |
| (e) | Is the auditing firm registered with the Public Company Accounting Oversight Board? | ○ | ⦿ |
|  | If yes, Public Company Accounting Oversight Board-Assigned Number: | | |
| (f) | If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ○ | ○ |

|  | | Yes | No |
|---|---|---|---|
| (g) | Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ⦿ | ○ |
| (h) | Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions? | | |

   ⦿ Yes   ○ No   ○ Report Not Yet Received

   *If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

### Prime Broker

|  | | Yes | No |
|---|---|---|---|
| 24. (a) | Does the *private fund* use one or more prime brokers? | ○ | ⦿ |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

> No Information Filed

### Custodian

|  | | Yes | No |
|---|---|---|---|
| 25. (a) | Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ⦿ | ○ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b)  Legal name of custodian:
   KEB HANA BANK

(c)  Primary business name of custodian:
   KEB HANA BANK

(d)  The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):
   City:                          State:                          Country:
   SEOUL                                                         Korea, South

|  | | Yes | No |

(e)  Is the custodian a *related person* of your firm?                                                       ○  ●

(f)  If the custodian is a broker-dealer, provide its SEC registration number (if any):

-

CRD Number (if any):

(g)  If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)

---

## Administrator

|  |  | Yes | No |
|---|---|---|---|
| 26. (a) | Does the *private fund* use an administrator other than your firm? | ● | ○ |

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

> **Additional Administrator Information : 1 Record(s) Filed.**
>
> If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.
>
> (b)  Name of administrator:
>
>   SHINHAN AITAS
>
> (c)  Location of administrator (city, state and country):
>
>   City:                      State:                      Country:
>   SEOUL                                                 Korea, South
>
> |  |  | Yes | No |
> |---|---|---|---|
> | (d) | Is the administrator a *related person* of your firm? | ○ | ● |
>
> (e)  Does the administrator prepare and send investor account statements to the *private fund*'s investors?
>   ● Yes (provided to all investors)   ○ Some (provided to some but not all investors)   ○ No (provided to no investors)
>
> (f)  If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund*'s investors? If investor account statements are not sent to the (rest of the) *private fund*'s investors, respond "not applicable."

27.  During your last fiscal year, what percentage of the *private fund*'s assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

30%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

## Marketers

|  |  | Yes | No |
|---|---|---|---|
| 28. (a) | Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes? | ○ | ● |

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

> No Information Filed

---

Funds per Page:  15  Total Funds: 4

---

**SECTION 7.B.(2)** *Private Fund* **Reporting**                                                    008138

**Item 8 Participation or Interest in *Client* Transactions**

In this Item, we request information about your participation and interest in your *clients*' transactions. This information identifies additional areas in which conflicts of interest may occur between you and your *clients*. Newly-formed advisers should base responses to these questions on the types of participation and interest that you expect to engage in during the next year.

Like Item 7, Item 8 requires you to provide information about you and your *related persons*, including foreign affiliates.

**Proprietary Interest in *Client* Transactions**

|  |  | Yes | No |
|---|---|---|---|
| A. | Do you or any *related person*: | | |
| (1) | buy securities for yourself from advisory *clients*, or sell securities you own to advisory *clients* (principal transactions)? | ● | ○ |
| (2) | buy or sell for yourself securities (other than shares of mutual funds) that you also recommend to advisory *clients*? | ● | ○ |
| (3) | recommend securities (or other investment products) to advisory *clients* in which you or any *related person* has some other proprietary (ownership) interest (other than those mentioned in Items 8.A.(1) or (2))? | ● | ○ |

**Sales Interest in *Client* Transactions**

|  |  | Yes | No |
|---|---|---|---|
| B. | Do you or any *related person*: | | |
| (1) | as a broker-dealer or registered representative of a broker-dealer, execute securities trades for brokerage customers in which advisory *client* securities are sold to or bought from the brokerage customer (agency cross transactions)? | ○ | ● |
| (2) | recommend to advisory *clients*, or act as a purchaser representative for advisory *clients* with respect to, the purchase of securities for which you or any *related person* serves as underwriter or general or managing partner? | ● | ○ |
| (3) | recommend purchase or sale of securities to advisory *clients* for which you or any *related person* has any other sales interest (other than the receipt of sales commissions as a broker or registered representative of a broker-dealer)? | ● | ○ |

**Investment or Brokerage Discretion**

|  |  | Yes | No |
|---|---|---|---|
| C. | Do you or any *related person* have *discretionary authority* to determine the: | | |
| (1) | securities to be bought or sold for a *client's* account? | ● | ○ |
| (2) | amount of securities to be bought or sold for a *client's* account? | ● | ○ |
| (3) | broker or dealer to be used for a purchase or sale of securities for a *client's* account? | ● | ○ |
| (4) | commission rates to be paid to a broker or dealer for a *client's* securities transactions? | ● | ○ |
| D. | If you answer "yes" to C.(3) above, are any of the brokers or dealers *related persons*? | ○ | ● |
| E. | Do you or any *related person* recommend brokers or dealers to *clients*? | ● | ○ |
| F. | If you answer "yes" to E. above, are any of the brokers or dealers *related persons*? | ○ | ● |
| G. (1) | Do you or any *related person* receive research or other products or services other than execution from a broker-dealer or a third party ("soft dollar benefits") in connection with *client* securities transactions? | ○ | ● |
| (2) | If "yes" to G.(1) above, are all the "soft dollar benefits" you or any *related persons* receive eligible "research or brokerage services" under section 28(e) of the Securities Exchange Act of 1934? | ○ | ● |
| H. (1) | Do you or any *related person*, directly or indirectly, compensate any *person* that is not an *employee* for *client* referrals? | ○ | ● |
| (2) | Do you or any *related person*, directly or indirectly, provide any *employee* compensation that is specifically related to obtaining *clients* for the firm (cash or non-cash compensation in addition to the *employee's* regular salary)? | ○ | ● |
| I. | Do you or any *related person*, including any *employee*, directly or indirectly, receive compensation from any *person* (other than you or any *related person*) for *client* referrals? | ○ | ● |

*In your response to Item 8.I., do not include the regular salary you pay to an employee.*

*In responding to Items 8.H. and 8.I., consider all cash and non-cash compensation that you or a related person gave to (in answering Item 8.H.) or received from (in answering Item 8.I.) any person in exchange for client referrals, including any bonus that is based, at least in part, on the number or amount of client referrals.*

---

**Item 9 Custody**

In this Item, we ask you whether you or a *related person* has *custody* of client (other than *clients* that are investment companies registered under the Investment Company Act of 1940) assets and about your custodial practices.

|  |  | Yes | No |
|---|---|---|---|
| A. (1) | Do you have *custody* of any advisory *clients'*: | | |
| (a) | cash or bank accounts? | ● | ○ |
| (b) | securities? | ● | ○ |

*If you are registering or registered with the SEC, answer "No" to Item 9.A.(1)(a) and (b) if you have custody solely because (i) you deduct your advisory fees*

008139

directly from your clients' accounts, or (ii) a related person has custody of client assets in connection with advisory services you provide to clients, but you have overcome the presumption that you are not operationally independent (under rule 206(4)-(2)(b)) from the related person.

Case 1:23-cv-34054-sg11 Doc 39 18-4 Filed 06/05/23 Entered 06/05/23 22:10:41 Desc

Case 3:23-cv-02071-E   Document 23-33   Filed 12/07/23   Page 147 of 214   PageID 7745

Exhibit Exhibits 53-58    Page 601 of 692

(2)  If you checked "yes" to Item 9.A.(1)(a) or (b), what is the approximate amount of *client* funds and securities and total number of *clients* for which you have *custody*:

    U.S. Dollar Amount              Total Number of *Clients*

    (a) $ 100,726,146             (b) 3

*If you are registering or registered with the SEC and you have custody solely because you deduct your advisory fees directly from your clients' accounts, do not include the amount of those assets and the number of those clients in your response to Item 9.A.(2). If your related person has custody of client assets in connection with advisory services you provide to clients, do not include the amount of those assets and number of those clients in your response to 9.A.(2). Instead, include that information in your response to Item 9.B.(2).*

B. (1)  In connection with advisory services you provide to *clients*, do any of your *related persons* have *custody* of any of your advisory *clients'*:    **Yes No**

    (a)  cash or bank accounts?      ○ ◉

    (b)  securities?      ○ ◉

*You are required to answer this item regardless of how you answered Item 9.A.(1)(a) or (b).*

(2)  If you checked "yes" to Item 9.B.(1)(a) or (b), what is the approximate amount of *client* funds and securities and total number of *clients* for which your *related persons* have *custody*:

    U.S. Dollar Amount              Total Number of *Clients*

    (a) $             (b)

C.  If you or your *related persons* have *custody* of *client* funds or securities in connection with advisory services you provide to *clients*, check all the following that apply:

(1)  A qualified custodian(s) sends account statements at least quarterly to the investors in the pooled investment vehicle(s) you manage. ☐

(2)  An *independent public accountant* audits annually the pooled investment vehicle(s) that you manage and the audited financial statements are distributed to the investors in the pools. ☑

(3)  An *independent public accountant* conducts an annual surprise examination of *client* funds and securities. ☐

(4)  An *independent public accountant* prepares an internal control report with respect to custodial services when you or your *related persons* are qualified custodians for *client* funds and securities. ☐

*If you checked Item 9.C.(2), C.(3) or C.(4), list in* Section 9.C. of Schedule D *the accountants that are engaged to perform the audit or examination or prepare an internal control report. (If you checked Item 9.C.(2), you do not have to list auditor information in* Section 9.C. of Schedule D *if you already provided this information with respect to the private funds you advise in* Section 7.B.(1) of Schedule D*).*

D.  Do you or your *related person(s)* act as qualified custodians for your *clients* in connection with advisory services you provide to *clients*?    **Yes No**

(1)  you act as a qualified custodian      ○ ◉

(2)  your *related person(s)* act as qualified custodian(s)      ○ ◉

*If you checked "yes" to Item 9.D.(2), all related persons that act as qualified custodians (other than any mutual fund transfer agent pursuant to rule 206(4)-2(b)(1)) must be identified in* Section 7.A. of Schedule D*, regardless of whether you have determined the related person to be operationally independent under rule 206(4)-2 of the Advisers Act.*

E.  If you are filing your *annual updating amendment* and you were subject to a surprise examination by an *independent public accountant* during your last fiscal year, provide the date (MM/YYYY) the examination commenced:

F.  If you or your *related persons* have *custody* of *client* funds or securities, how many *persons*, including, but not limited to, you and your *related persons,* act as qualified custodians for your *clients* in connection with advisory services you provide to *clients*?
  1

---

**SECTION 9.C.** *Independent Public Accountant*

You must complete the following information for each *independent public accountant* engaged to perform a surprise examination, perform an audit of a pooled investment vehicle that you manage, or prepare an internal control report. You must complete a separate Schedule D Section 9.C. for each *independent public accountant*.

(1)  Name of the *independent public accountant*:
    COHEN AND COMPANY

(2)  The location of the *independent public accountant's* office responsible for the services provided:

    Number and Street 1:           Number and Street 2:

|  | Yes | No |
|---|---|---|

(3)  Is the *independent public accountant* registered with the Public Company Accounting Oversight Board?  ⦿ ○

If "yes," Public Company Accounting Oversight Board-Assigned Number:
925

(4)  If "yes" to (3) above, is the *independent public accountant* subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules?  ⦿ ○

(5)  The *independent public accountant* is engaged to:
A. ☑ audit a pooled investment vehicle
B. ☐ perform a surprise examination of *clients'* assets
C. ☐ prepare an internal control report

(6)  Since your last *annual updating amendment*, did all of the reports prepared by the *independent public accountant* that audited the pooled investment vehicle or that examined internal controls contain unqualified opinions?

⦿ Yes

○ No

○ Report Not Yet Received

*If you check "Report Not Yet Received", you must promptly file an amendment to your Form ADV to update your response when the accountant's report is available.*

## Item 10 Control Persons

In this Item, we ask you to identify every *person* that, directly or indirectly, *controls* you. If you are filing an *umbrella registration*, the information in Item 10 should be provided for the *filing adviser* only.

If you are submitting an initial application or report, you must complete Schedule A and Schedule B. Schedule A asks for information about your direct owners and executive officers. Schedule B asks for information about your indirect owners. If this is an amendment and you are updating information you reported on either Schedule A or Schedule B (or both) that you filed with your initial application or report, you must complete Schedule C.

|  | Yes | No |
|---|---|---|

A.  Does any *person* not named in Item 1.A. or Schedules A, B, or C, directly or indirectly, *control* your management or policies?  ○ ⦿

*If yes, complete* Section 10.A. of Schedule D.

B.  If any *person* named in Schedules A, B, or C or in Section 10.A. of Schedule D is a public reporting company under Sections 12 or 15(d) of the Securities Exchange Act of 1934, please complete Section 10.B. of Schedule D.

## SECTION 10.A. *Control Persons*

No Information Filed

## SECTION 10.B. *Control Person* Public Reporting Companies

No Information Filed

## Item 11 Disclosure Information

In this Item, we ask for information about your disciplinary history and the disciplinary history of all your *advisory affiliates*. We use this information to determine whether to grant your application for registration, to decide whether to revoke your registration or to place limitations on your activities as an investment adviser, and to identify potential problem areas to focus on during our on-site examinations. One event may result in "yes" answers to more than one of the questions below. In accordance with General Instruction 5 to Form ADV, "you" and "your" include the *filing adviser* and all *relying advisers* under an *umbrella registration*.

Your *advisory affiliates* are: (1) all of your current *employees* (other than *employees* performing only clerical, administrative, support or similar functions); (2) all of your officers, partners, or directors (or any *person* performing similar functions); and (3) all *persons* directly or indirectly *controlling* you or *controlled* by you. If you are a "separately identifiable department or division" (SID) of a bank, see the Glossary of Terms to determine who your *advisory affiliates* are.

*If you are registered or registering with the SEC or if you are an exempt reporting adviser, you may limit your disclosure of any event listed in Item 11 to ten years following the date of the event. If you are registered or registering with a state, you must respond to the questions as posed; you may, therefore, limit your disclosure to ten years following the date of an event only in responding to Items 11.A.(1), 11.A.(2), 11.B.(1), 11.B.(2), 11.D.(4), and 11.H.(1)(a). For purposes of calculating this ten-year period, the date of an event is the date the final order, judgment, or decree was entered, or the date any rights of appeal from preliminary*

008141

*orders, judgments, or decrees lapsed.*

You must complete the appropriate Disclosure Reporting Page ("DRP") for "yes" answers to the questions in this Item 11.

|  | Yes | No |
|---|---|---|
| Do any of the events below involve you or any of your *supervised persons*? | ○ | ◉ |

**For "yes" answers to the following questions, complete a Criminal Action DRP:**

|  | Yes | No |
|---|---|---|
| A. In the past ten years, have you or any *advisory affiliate*: | | |
| (1) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*? | ○ | ◉ |
| (2) been *charged* with any *felony*? | ○ | ◉ |

*If you are registered or registering with the SEC, or if you are reporting as an exempt reporting adviser, you may limit your response to Item 11.A.(2) to charges that are currently pending.*

|  | Yes | No |
|---|---|---|
| B. In the past ten years, have you or any *advisory affiliate*: | | |
| (1) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to a *misdemeanor* involving: investments or an *investment-related* business, or any fraud, false statements, or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ◉ |
| (2) been *charged* with a *misdemeanor* listed in Item 11.B.(1)? | ○ | ◉ |

*If you are registered or registering with the SEC, or if you are reporting as an exempt reporting adviser, you may limit your response to Item 11.B.(2) to charges that are currently pending.*

**For "yes" answers to the following questions, complete a Regulatory Action DRP:**

|  | Yes | No |
|---|---|---|
| C. Has the SEC or the Commodity Futures Trading Commission (CFTC) ever: | | |
| (1) *found* you or any *advisory affiliate* to have made a false statement or omission? | ○ | ◉ |
| (2) *found* you or any *advisory affiliate* to have been *involved* in a violation of SEC or CFTC regulations or statutes? | ◉ | ○ |
| (3) *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4) entered an *order* against you or any *advisory affiliate* in connection with *investment-related* activity? | ◉ | ○ |
| (5) imposed a civil money penalty on you or any *advisory affiliate*, or *ordered* you or any *advisory affiliate* to cease and desist from any activity? | ◉ | ○ |
| D. Has any other federal regulatory agency, any state regulatory agency, or any *foreign financial regulatory authority*: | | |
| (1) ever *found* you or any *advisory affiliate* to have made a false statement or omission, or been dishonest, unfair, or unethical? | ○ | ◉ |
| (2) ever *found* you or any *advisory affiliate* to have been *involved* in a violation of *investment-related* regulations or statutes? | ○ | ◉ |
| (3) ever *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4) in the past ten years, entered an *order* against you or any *advisory affiliate* in connection with an *investment-related* activity? | ○ | ◉ |
| (5) ever denied, suspended, or revoked your or any *advisory affiliate's* registration or license, or otherwise prevented you or any *advisory affiliate*, by *order*, from associating with an *investment-related* business or restricted your or any *advisory affiliate's* activity? | ○ | ◉ |
| E. Has any *self-regulatory organization* or commodities exchange ever: | | |
| (1) *found* you or any *advisory affiliate* to have made a false statement or omission? | ○ | ◉ |
| (2) *found* you or any *advisory affiliate* to have been *involved* in a violation of its rules (other than a violation designated as a "*minor rule violation*" under a plan approved by the SEC)? | ○ | ◉ |
| (3) *found* you or any *advisory affiliate* to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4) disciplined you or any *advisory affiliate* by expelling or suspending you or the *advisory affiliate* from membership, barring or suspending you or the *advisory affiliate* from association with other members, or otherwise restricting your or any *advisory affiliate's* activities? | ○ | ◉ |
| F. Has an authorization to act as an attorney, accountant, or federal contractor granted to you or any *advisory affiliate* ever been revoked or suspended? | ○ | ◉ |
| G. Are you or any *advisory affiliate* now the subject of any regulatory *proceeding* that could result in a "yes" answer to any part of Item 11.C., 11.D., or 11.E.? | ○ | ◉ |

**For "yes" answers to the following questions, complete a Civil Judicial Action DRP:**

|  | Yes | No |
|---|---|---|
| H. (1) Has any domestic or foreign court: | | |
| (a) in the past ten years, *enjoined* you or any *advisory affiliate* in connection with any *investment-related* activity? | ○ | ◉ |
| (b) ever *found* that you or any *advisory affiliate* were *involved* in a violation of *investment-related* statutes or regulations? | ○ | ◉ |
| (c) ever dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you or any *advisory affiliate* by a state or *foreign financial regulatory authority*? | ○ | ◉ |

008142

(2) Are you or any *advisory affiliate* now the subject of any civil *proceeding* that could result in a "yes" answer to any part of Item 11.H.(1)?

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc

Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 150 of 214    PageID 7748

Exhibit Exhibits 53-58    Page 604 of 692

## Item 12 Small Businesses

The SEC is required by the Regulatory Flexibility Act to consider the effect of its regulations on small entities. In order to do this, we need to determine whether you meet the definition of "small business" or "small organization" under rule 0-7.

Answer this Item 12 only if you are registered or registering with the SEC **and** you indicated in response to Item 5.F.(2)(c) that you have regulatory assets under management of less than $25 million. You are not required to answer this Item 12 if you are filing for initial registration as a state adviser, amending a current state registration, or switching from SEC to state registration.

For purposes of this Item 12 only:

- Total Assets refers to the total assets of a firm, rather than the assets managed on behalf of *clients*. In determining your or another *person's* total assets, you may use the total assets shown on a current balance sheet (but use total assets reported on a consolidated balance sheet with subsidiaries included, if that amount is larger).
- *Control* means the power to direct or cause the direction of the management or policies of a *person*, whether through ownership of securities, by contract, or otherwise. Any *person* that directly or indirectly has the right to vote 25 percent or more of the voting securities, or is entitled to 25 percent or more of the profits, of another *person* is presumed to *control* the other *person*.

|  | Yes | No |
|---|---|---|
| A. Did you have total assets of $5 million or more on the last day of your most recent fiscal year? | ○ | ○ |

*If "yes," you do not need to answer Items 12.B. and 12.C.*

B. Do you:

|  | Yes | No |
|---|---|---|
| (1) *control* another investment adviser that had regulatory assets under management (calculated in response to Item 5.F.(2)(c) of Form ADV) of $25 million or more on the last day of its most recent fiscal year? | ○ | ○ |
| (2) *control* another *person* (other than a natural person) that had total assets of $5 million or more on the last day of its most recent fiscal year? | ○ | ○ |

C. Are you:

|  | Yes | No |
|---|---|---|
| (1) *controlled* by or under common *control* with another investment adviser that had regulatory assets under management (calculated in response to Item 5.F.(2)(c) of Form ADV) of $25 million or more on the last day of its most recent fiscal year? | ○ | ○ |
| (2) *controlled* by or under common *control* with another *person* (other than a natural person) that had total assets of $5 million or more on the last day of its most recent fiscal year? | ○ | ○ |

## Schedule A

### Direct Owners and Executive Officers

1. Complete Schedule A only if you are submitting an initial application or report. Schedule A asks for information about your direct owners and executive officers. Use Schedule C to amend this information.
2. Direct Owners and Executive Officers. List below the names of:
   (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, Chief Compliance Officer(Chief Compliance Officer is required if you are registered or applying for registration and cannot be more than one individual), director, and any other individuals with similar status or functions;
   (b) if you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);
   Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.
   (c) if you are organized as a partnership, <u>all</u> general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;
   (d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and
   (e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.
3. Do you have any indirect owners to be reported on Schedule B?  ● Yes   ○ No
4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.
5. Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).
6. Ownership codes are:   NA - less than 5%         B - 10% but less than 25%    D - 50% but less than 75%
                          A - 5% but less than 10%   C - 25% but less than 50%    E - 75% or more
7. (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.
   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.
   (c) Complete each column.

008143

| FULL LEGAL NAME (Individuals: | DE/FE/I | Title or Status | Date Title or Status | Ownership | Control | PR | CRD No. If None: S.S. No. and |

| Last Name, First Name, Middle Name) | DE/FE/I | Entity/Status | Acquired MM/YYYY | Code | Person | Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|
| SURGENT, THOMAS, G | | CHIEF COMPLIANCE OFFICER AND GENERAL COUNSEL | | | | |
| Seery, James, Patrick | I | CHIEF EXECUTIVE OFFICER AND CHIEF RESTRUCTURING OFFICER | 03/2020 | NA | Y | N | 4531254 |
| Klos, David, Kelly | I | CHIEF FINANCIAL OFFICER AND CHIEF OPERATING OFFICER | 02/2021 | NA | Y | N | 6590515 |
| HIGHLAND CLAIMANT TRUST | DE | SOLE LIMITED PARTNER | 08/2021 | E | Y | N | |
| HCMLP GP LLC | DE | GENERAL PARTNER | 08/2021 | NA | Y | N | |

## Schedule B

### Indirect Owners

1. Complete Schedule B only if you are submitting an initial application or report. Schedule B asks for information about your indirect owners; you must first complete Schedule A, which asks for information about your direct owners. Use Schedule C to amend this information.

2. Indirect Owners. With respect to each owner listed on Schedule A (except individual owners), list below:

   (a) in the case of an owner that is a corporation, each of its shareholders that beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 25% or more of a class of a voting security of that corporation;

   For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

   (b) in the case of an owner that is a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 25% or more of the partnership's capital;

   (c) in the case of an owner that is a trust, the trust and each trustee; and

   (d) in the case of an owner that is a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 25% or more of the LLC's capital, and (ii) if managed by elected managers, all elected managers.

3. Continue up the chain of ownership listing all 25% owners at each level. Once a public reporting company (a company subject to Sections 12 or 15(d) of the Exchange Act) is reached, no further ownership information need be given.

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner is an individual.

5. Complete the Status column by entering the owner's status as partner, trustee, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6. Ownership codes are:    C - 25% but less than 50%    E - 75% or more
                          D - 50% but less than 75%    F - Other (general partner, trustee, or elected manager)

7. (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

   (c) Complete each column.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Entity in Which Interest is Owned | Status | Date Status Acquired MM/YYYY | Ownership Code | *Control Person* | PR | *CRD* No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|---|
| Seery, James, Patrick | I | HIGHLAND CLAIMANT TRUST | CLAIMANT TRUSTEE | 08/2021 | F | Y | N | 4531254 |
| HIGHLAND CLAIMANT TRUST | DE | HCMLP GP LLC | MANAGING MEMBER | 08/2021 | E | Y | N | |

## Schedule D - Miscellaneous

You may use the space below to explain a response to an Item or to provide any other information.

CERTAIN MASTER TRADING PORTFOLIOS HAVE FEEDER ENTITIES OF WHICH RELATED PARTIES OF THE MANAGER ARE THE GENERAL PARTNER OR MANAGER. IN ADDITION, CERTAIN TRADING PORTFOLIOS HAVE SUBSIDIARY PORTFOLIOS OF WHICH RELATED PARTIES OF THE MANAGER ARE THE GENERAL PARTNER OR MANAGER. THE ASSETS UNDER MANAGEMENT FOR SUCH MASTER TRADING PORTFOLIOS IS REFLECTED IN THE ASSETS IN ITS FEEDER FUNDS. SIMILARLY, THE ASSETS UNDER MANAGEMENT FOR SUCH SUBSIDIARY TRADING PORTFOLIOS IS REFLECTED IN THE ASSETS OF THE RELATED MASTER TRADING PORTFOLIO. ALL PORTFOLIO DATA AS OF 12/31/2022.

## Schedule R

### SECTION 1 Identifying Information

Responses to this Section tell us who you (the *relying adviser*) are, where you are doing business, and how we can contact you.

A.   Your full legal name:
     HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED

008144

B. Name under which you *primarily conduct your advisory business, if different from Section 1.A. above, or Item 1.A. of the *filing adviser's* Form ADV Part 1A.

C. List any other business names and the jurisdictions in which you use them. Complete this question for each other business name.

> No Information Filed

*You do not have to include the names or jurisdictions of the filing adviser or other relying adviser(s) in response to this Section 1.C.*

D. If you currently have, or ever had, a number ("*CRD* Number") assigned by the *FINRA's CRD* system or by the IARD system (other than the *filing adviser's CRD* number), your *CRD* number:
**295035**

> No Information Filed

*If you do not have a CRD number, skip this Section 1.D. Do not provide the CRD number of one of your officers, employees, or affiliates (including the filing adviser).*

E. *Principal Office and Place of Business*

   (1)  Address (do not use a P.O. Box):

   ☐ Same as the *filing adviser*.

   | Number and Street 1: | | Number and Street 2: | |
   |---|---|---|---|
   | SEOUL FINANCE CENTER | | 136 SEJONG-DAERO, JUNG-GU | |
   | City: | State: | Country: | ZIP+4/Postal Code: |
   | SEOUL | | Korea, South | 100-768 |

   If this address is a private residence, check this box: ☐

   (2)  Days of week that you normally conduct business at your *principal office and place of business:*
   ⦿ Monday - Friday  ◯ Other:

   Normal business hours at this location:
   7AM-6PM

   (3)  Telephone number at this location:
   972-628-4100

   (4)  Facsimile number at this location, if any:
   972-628-4147

F. Mailing address, if different from your *principal office and place of business* address:

   ☐ Same as the *filing adviser*.

   | Number and Street 1: | | Number and Street 2: | |
   |---|---|---|---|
   | City: | State: | Country: | ZIP+4/Postal Code: |

   If this address is a private residence, check this box: ☐

G. Provide your *Legal Entity Identifier* if you have one:

   *A legal entity identifier is a unique number that companies use to identify each other in the financial marketplace. You may not have a legal entity identifier.*

H. If you have Central Index Key numbers assigned by the SEC ("CIK Numbers"), all of your CIK numbers:

> No Information Filed

008145

**SECTION 2 SEC Registration**

Responses to this Section help us (and you) determine whether you are eligible to register (or remain registered) with the SEC.

A.  To be a *relying adviser*, you must be independently eligible to register (or remain registered) with the SEC. You must check **at least one** of the Sections 2.A.(1) through 2.A.(8), below. Part 1A Instruction 2 provides information to help you determine whether you may affirmatively respond to each of these items.

You (the *relying adviser*):

☐  (1)  are a **large advisory firm** that either:

(a)  has regulatory assets under management of $100 million (in U.S. dollars) or more; or

(b)  has regulatory assets under management of $90 million (in U.S. dollars) or more at the time of filing its most recent *annual updating amendment* and is registered with the SEC;

☐  (2)  are a **mid-sized advisory firm** that has regulatory assets under management of $25 million (in U.S. dollars) or more but less than $100 million (in U.S. dollars) and you are either:

(a)  not required to be registered as an adviser with the *state securities authority* of the state where you maintain your *principal office and place of business*; or

(b)  not subject to examination by the *state securities authority* of the state where you maintain your *principal office and place of business*;

*Click* HERE *for a list of states in which an investment adviser, if registered, would not be subject to examination by the state securities authority.*

(3)  Reserved

☐  (4)  have your *principal office and place of business* **outside the United States**;

☑  (5)  are a **related adviser** under rule 203A-2(b) that *controls*, is *controlled* by, or is under common *control* with, an investment adviser that is registered with the SEC, and your *principal office and place of business* is the same as the registered adviser;

☐  (6)  are an **adviser** relying on rule 203A-2(c) because you **expect to be eligible for SEC registration within 120 days**;

If you check this box, you must make both of the representations below:

☐  I am not registered or required to be registered with the SEC or a state securities authority and I have a reasonable expectation that I will be eligible to register with the SEC within 120 days after the date my registration with the SEC becomes effective.

☐  By submitting this Form ADV to the SEC, *the filing adviser* undertakes to file an amendment to this *umbrella registration* to remove this Schedule R if, on the 120th day after this application for *umbrella registration* with the SEC becomes effective, I would be prohibited by Section 203A(a) of the Advisers Act from registering with the SEC.

☐  (7)  are a **multi-state adviser** that is required to register in 15 or more states and is relying on rule 203A-2(d);

If this is your initial filing as a relying adviser, you must make both of these representations:

☐  I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of 15 or more states to register as an investment adviser with the *state securities authorities* in those states.

☐  The *filing adviser* undertakes to file an amendment to this *umbrella registration* to remove this Schedule R if, at the time of the *annual updating amendment*, I would be required by the laws of fewer than 15 states to register as an investment adviser with the *state securities authorities* of those states.

If you are submitting your *annual updating amendment*, you must make this representation:

☐  Within 90 days prior to the date of filing this amendment, I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of at least 15 states to register as an investment adviser with the *state securities authorities* in those states.

☐  (8)  have **received an SEC *Order*** exempting you from the prohibition against registration with the SEC. If you check this box, provide the following information:

Application Number:  803-        Date of *Order*:

☐  (9)  are **no longer eligible** to remain registered with the SEC.

---

**SECTION 3 Form of Organization**

A.  How are you organized?

◉  Corporation

○  Sole Proprietorship

○  Limited Liability Partnership (LLP)

○  Partnership

○  Limited Liability Company (LLC)

○  Limited Partnership (LP)

○  Other (specify):

B.  In what month does your fiscal year end each year?

008146

C.   Under the laws of what state or country was your _____ organized:

State   Country

        Korea, South

*If you are a partnership, provide the name of the state or country under whose laws your partnership was formed.*

---

## SECTION 4.A. Direct Owners and Executive Officers

In this Section 4, we ask you to identify each other *person* that, directly or indirectly, *controls* you.

(1) Section 4.A. asks for information about your direct owners and executive officers.

(2) Direct Owners and Executive Officers. List below the names of:

   (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, director and any other individuals with similar status or functions;

   (b) if you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);

     Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Section 4.A., a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

   (c) if you are organized as a partnership, <u>all</u> general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;

   (d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and

   (e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.

(3) Do you have any indirect owners to be reported on Section 4.B. below?   ⦿ Yes   ◯ No

(4) In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.

(5) Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

(6) Ownership codes are:   NA - less than 5%    B - 10% but less than 25%    D - 50% but less than 75%
                                A - 5% but less than 10%    C - 25% but less than 50%    E - 75% or more

(7) (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

   (c) Complete each column.

   Check this box if you are filing this Form ADV through the IARD system and want the IARD system to pre-fill Schedule B with the same indirect owners you have provided in Schedule B for your filing adviser. If you check the box, the system will pre-fill these fields for you, but you will be able to manually edit the information after it is pre-filled and before you submit your filing.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Title or Status | Date Title or Status Acquired MM/YYYY | Ownership Code | *Control Person* | PR | *CRD* No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P. | DE | SHAREHOLDER | 06/2012 | E | Y | N | 110126 |
| PARK, JUN, BOM | I | REPRESENTATIVE DIRECTOR | 08/2012 | NA | Y | N | 6909096 |
| Seery, James, Patrick | I | DIRECTOR | 03/2021 | NA | Y | N | 4531254 |

---

## SECTION 4.B. Indirect Owners

(1) Section 4.B. asks for information about your indirect owners; you must first complete Section 4.A., which asks for information about your direct owners

(2) Indirect Owners. With respect to each owner listed in Section 4.A. (except individual owners), list below:

   (a) in the case of an owner that is a corporation, each of its shareholders that beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 25% or more of a class of a voting security of that corporation;

     For purposes of this Section, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

   (b) in the case of an owner that is a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 25% or more of the partnership's capital;

   (c) in the case of an owner that is a trust, the trust and each trustee; and

   (d) in the case of an owner that is a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have

008147

(3) Continue up the chain of ownership listing all 25% or more owners at each level. Once a public reporting company (a company subject to Sections 12 or 15(d) of the Exchange Act) is reached, no further ownership information need be given.

(4) In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner is an individual.

(5) Complete the Status column by entering the owner's status as partner, trustee, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

(6) Ownership codes are:  C - 25% but less than 50%  E - 75% or more
                          D - 50% but less than 75%  F - Other (general partner, trustee, or elected manager)

(7) (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the person does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

(b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

(c) Complete each column.

Check this box if you are filing this Form ADV through the IARD system and want the IARD system to pre-fill Schedule B with the same indirect owners you have provided in Schedule B for your filing adviser. If you check the box, the system will pre-fill these fields for you, but you will be able to manually edit the information after it is pre-filled and before you submit your filing.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Entity in Which Interest is Owned | Status | Date Status Acquired MM/YYYY | Ownership Code | *Control Person* | PR | *CRD* No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|---|
| HCMLP GP LLC | DE | HIGHLAND CAPITAL MANAGEMENT, L.P. | GENERAL PARTNER | 08/2021 | F | Y | N | |
| HIGHLAND CLAIMANT TRUST | DE | HIGHLAND CAPITAL MANAGEMENT, L.P. | SOLE LIMITED PARTNER | 08/2021 | E | Y | N | |
| HIGHLAND CLAIMANT TRUST | DE | HCMLP GP LLC | MANAGING MEMBER | 08/2021 | F | Y | N | |
| Seery, James, Patrick | I | HIGHLAND CLAIMANT TRUST | CLAIMANT TRUSTEE | 08/2021 | F | Y | N | 4531254 |

---

**SECTION 4.C. *Control Persons***

C.  Does any *person* not named in Section 1.A., Section 4.A., or Section 4.B. directly or indirectly, *control* your management or policies?   Yes ○   No ●

If yes, you must complete the information below for each *control person* not named in Section 1.A., Section 4.A., or Section 4.B. that directly or indirectly *controls* your management or policies.

No Information Filed

---

**SECTION 4.D. *Control Persons* - Public Reporting Companies**

No Information Filed

---

**DRP Pages**

---

**CRIMINAL DISCLOSURE REPORTING PAGE (ADV)**

No Information Filed

---

**REGULATORY ACTION DISCLOSURE REPORTING PAGE (ADV)**

*GENERAL INSTRUCTIONS*

This Disclosure Reporting Page (DRP ADV) is an ○ INITIAL *OR* ● AMENDED response used to report details for affirmative responses to Items 11.C., 11.D., 11.E., 11.F. or 11.G. of Form ADV.

Regulatory Action

Check item(s) being responded to:

☐ 11.C(1)   ☑ 11.C(2)   ☐ 11.C(3)   ☑ 11.C(4)   ☑ 11.C(5)

008148

☐ 11.D(1)  ☐ 11.D(2)  ☐ 11.D(3)  ☐ 11.D(4)  ☐ 11.D(5)
☐ 11.E(1)  ☐ 11.E(2)  ☐ 11.E(3)  ☐ 11.E(4)
☐ 11.F.

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Exhibit Exhibits 53-58    Page 610 of 692

Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 156 of 214    PageID 7754

Use a separate DRP for each event or *proceeding* . The same event or *proceeding* may be reported for more than one *person* or entity using one DRP. File with a completed Execution Page.

One event may result in more than one affirmative answer to Items 11.C., 11.D., 11.E., 11.F. or 11.G. Use only one DRP to report details related to the same event. If an event gives rise to actions by more than one regulator, provide details for each action on a separate DRP.

## PART I

A.    The *person(s)* or entity(ies) for whom this DRP is being filed is (are):

⦿ You (the advisory firm)

○ You and one or more of your *advisory affiliates*

○ One or more of your *advisory affiliates*

If this DRP is being filed for an *advisory affiliate*, give the full name of the *advisory affiliate* below (for individuals, Last name, First name, Middle name). If the *advisory affiliate* has a *CRD* number, provide that number. If not, indicate "non-registered" by checking the appropriate box.

ADV DRP - *ADVISORY AFFILIATE*

No Information Filed

☐ This DRP should be removed from the ADV record because the *advisory affiliate(s)* is no longer associated with the adviser.
☐ This DRP should be removed from the ADV record because: (1) the event or *proceeding* occurred more than ten years ago or (2) the adviser is registered or applying for registration with the SEC or reporting as an *exempt reporting adviser* with the SEC and the event was resolved in the adviser's or *advisory affiliate's* favor.

If you are registered or registering with a *state securities authority* , you may remove a DRP for an event you reported only in response to Item 11.D(4), and only if that event occurred more than ten years ago. If you are registered or registering with the SEC, you may remove a DRP for any event listed in Item 11 that occurred more than ten years ago.

☐ This DRP should be removed from the ADV record because it was filed in error, such as due to a clerical or data-entry mistake. Explain the circumstances:

B.    If the *advisory affiliate* is registered through the IARD system or *CRD* system, has the *advisory affiliate* submitted a DRP (with Form ADV, BD or U-4) to the IARD or *CRD* for the event? If the answer is "Yes," no other information on this DRP must be provided.

○ Yes    ○ No

NOTE: The completion of this form does not relieve the *advisory affiliate* of its obligation to update its IARD or *CRD* records.

## PART II

1.    Regulatory Action initiated by:

⦿ SEC    ○ Other Federal    ○ State    ○ *SRO*    ○ Foreign

(Full name of regulator, *foreign financial regulatory authority*, federal, state, or *SRO*)
U.S. SECURITIES AND EXCHANGE COMMISSION

2.    Principal Sanction:
Cease and Desist
Other Sanctions:
CENSURE, CIVIL AND ADMINISTRATIVE PENALTY(IES)/FINE(S), UNDERTAKINGS

3.    Date Initiated (MM/DD/YYYY):

09/25/2014  ⦿ Exact    ○ Explanation
If not exact, provide explanation:

4.    Docket/Case Number:
ADMINISTRATIVE PROCEEDING FILE NO. 3-16169

5.    *Advisory Affiliate* Employing Firm when activity occurred which led to the regulatory action (if applicable):

6.    Principal Product Type:
No Product
Other Product Types:

008149

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Exhibit Exhibit 23-33 Filed 12/07/21 Page 157 of 214   Page 4 of 7

Case 3:23-cv-02071   Document 23-33 Filed 12/07/23   Page 157 of 214   PageID 1755

7.  Describe the allegations related to this regulatory action (your response must fit within the space provided):

ON SEPTEMBER 25, 2014, HIGHLAND CAPITAL MANAGEMENT, L.P. ("HIGHLAND") ENTERED INTO A SETTLEMENT WITH THE SECURITIES AND EXCHANGE COMMISSION ("SEC") REGARDING THE SEC'S ALLEGATIONS THAT HIGHLAND VIOLATED AND/OR CAUSED ANOTHER ENTITY TO VIOLATE FEDERAL SECURITIES LAWS. THE ORDER FOUND THAT HIGHLAND VIOLATED SECTIONS 204(A) AND 206(3) OF THE INVESTMENT ADVISERS ACT OF 1940 ("ADVISERS ACT") AND RULE 204-2 THEREUNDER BY TRADING SECURITIES BETWEEN ITS CLIENTS' ACCOUNTS AND ACCOUNTS IN WHICH HIGHLAND AND ITS PRINCIPALS MAINTAINED AN OWNERSHIP INTEREST WITHOUT ADHERING TO CERTAIN REQUIREMENTS SET FORTH BY THE ADVISERS ACT. THE TRANSACTIONS OCCURRED BETWEEN 2007 AND 2009, AND MANY WERE EXECUTED IN AN EFFORT TO GENERATE OR MAINTAIN LIQUIDITY FOR THE ADVISED ACCOUNTS DURING SEPTEMBER AND OCTOBER 2008. THE ORDER FOUND THAT, DURING THE RELEVANT TIME PERIOD, HIGHLAND ENGAGED IN A NUMBER OF TRANSACTIONS WITH ITS CLIENT ADVISORY ACCOUNTS WITHOUT DISCLOSING IN WRITING TO THOSE CLIENTS THAT HIGHLAND WAS ACTING AS PRINCIPAL, OR OBTAINING CLIENT CONSENT TO THE TRANSACTIONS, BEFORE THE TRADES WERE COMPLETED. HIGHLAND DID ULTIMATELY RECEIVE CLIENT CONSENT FOR MANY OF THE TRANSACTIONS; HOWEVER, THIS CONSENT WAS RECEIVED AFTER THE TRANSACTIONS HAD SETTLED, AND THEREFORE DID NOT COMPLY WITH THE REQUIREMENTS OF ADVISERS ACT SECTION 206(3). IN ADDITION, THE ORDER FOUND THAT, DURING THE RELEVANT TIME PERIOD, HIGHLAND FAILED TO KEEP AND MAINTAIN TRUE, ACCURATE AND CURRENT CERTAIN BOOKS AND RECORDS AS REQUIRED BY THE ADVISERS ACT.

8.  Current Status?   ○ Pending   ○ On Appeal   ● Final

9.  If on appeal, regulatory action appealed to (SEC, *SRO,* Federal or State Court) and Date Appeal Filed:

If Final or On Appeal, complete all items below. For Pending Actions, complete Item 13 only.

10. How was matter resolved:

Settled

11. Resolution Date (MM/DD/YYYY):

09/25/2014   ● Exact   ○ Explanation

If not exact, provide explanation:

12. Resolution Detail:

A.  Were any of the following Sanctions *Ordered* (check all appropriate items)?

☑ Monetary/Fine Amount: $ 225,000.00
☐ Revocation/Expulsion/Denial        ☐ Disgorgement/Restitution
☑ Censure                            ☑ Cease and Desist/Injunction
☐ Bar                                ☐ Suspension

B.  Other Sanctions *Ordered:*

UNDERTAKINGS
Sanction detail: if suspended, *enjoined* or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against you or an *advisory affiliate,* date paid and if any portion of penalty was waived:

THE ORDER REQUIRES HIGHLAND TO CEASE AND DESIST FROM COMMITTING OR CAUSING ANY VIOLATIONS AND ANY FUTURE VIOLATIONS OF ADVISERS ACT SECTIONS 204(A) AND 206(3) AND RULE 204-2; CENSURES HIGHLAND; AND REQUIRES HIGHLAND TO PAY A CIVIL MONETARY PENALTY OF $225,000, WHICH HIGHLAND PAID ON SEPTEMBER 26, 2014. HIGHLAND MUST ALSO COMPLY WITH CERTAIN UNDERTAKINGS, INCLUDING RETAINING AN INDEPENDENT CONSULTANT TO CONDUCT A COMPREHENSIVE REVIEW OF HIGHLAND'S COMPLIANCE AND CONTROL SYSTEMS RELATING TO PRINCIPAL TRADES, AND THE CREATION AND RETENTION OF ITS BOOKS AND RECORDS.

13. Provide a brief summary of details related to the action status and (or) disposition and include relevant terms, conditions and dates (your response must fit within the space provided).

SOLELY FOR THE PURPOSE OF SETTLING THESE PROCEEDINGS, HIGHLAND CONSENTED TO THE ORDER WITHOUT ADMITTING OR DENYING THE MATTERS IN IT (EXCEPT THE SEC'S JURISDICTION). THE ALLEGATIONS, DISPOSITIONS, FINDINGS AND SANCTIONS OF THE ORDER ARE DESCRIBED ABOVE IN ITEMS 7 AND 12.

---

**CIVIL JUDICIAL ACTION DISCLOSURE REPORTING PAGE (ADV)**

No Information Filed

---

**Part 2**

**Exemption from brochure delivery requirements for SEC-registered advisers**

SEC rules exempt SEC-registered advisers from delivering a firm brochure to some kinds of clients.  If these exemptions excuse you from delivering a brochure to *all* of your advisory clients, you do not have to prepare a brochure.

|  | Yes | No |
|---|---|---|

Are you exempt from delivering a brochure to all of your clients under the SEC rules? ○ ●

*If no, complete the ADV Part 2 filing below.*

Amend, retire or file new brochures:

| Brochure ID | Brochure Name | Brochure Type(s) |
|---|---|---|
| 368358 | HIGHLAND CAPITAL MANAGEMENT, L.P. ADV PART 2A | Individuals, High net worth individuals, Pension plans/profit sharing plans, Foundations/charities, Government/municipal, Other institutional, Private funds or pools |
| 382775 | HIGHLAND CAPITAL MANAGEMENT, L.P. ADV PART 2A | Individuals, High net worth individuals, Pension plans/profit sharing plans, Pension consulting, Foundations/charities, Government/municipal, Other institutional, Private funds or pools |

## Part 3

| CRS | Type(s) | Affiliate Info | Retire |
|---|---|---|---|

There are no CRS filings to display.

## Execution Pages

### DOMESTIC INVESTMENT ADVISER EXECUTION PAGE

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial submission of Form ADV to the SEC and all amendments.

Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint the Secretary of State or other legally designated officer, of the state in which you maintain your *principal office and place of business* and any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such *persons* may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding*, or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of the state in which you maintain your *principal office and place of business* or of any state in which you are submitting a *notice filing*.

Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

| | |
|---|---|
| Signature: | Date: MM/DD/YYYY |
| THOMAS SURGENT | 03/31/2023 |
| Printed Name: | Title: |
| THOMAS SURGENT | CHIEF COMPLIANCE OFFICER AND GENERAL COUNSEL |

Adviser *CRD* Number:
110126

### *NON-RESIDENT* INVESTMENT ADVISER EXECUTION PAGE

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial submission of Form ADV to the SEC and all amendments.

1. Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint each of the Secretary of the SEC, and the Secretary of State or other legally designated officer, of any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such persons may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding* or arbitration (a) arises out of any

activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of any state in which you are submitting a *notice filing*.

## 2. Appointment and Consent: Effect on Partnerships

If you are organized as a partnership, this irrevocable power of attorney and consent to service of process will continue in effect if any partner withdraws from or is admitted to the partnership, provided that the admission or withdrawal does not create a new partnership. If the partnership dissolves, this irrevocable power of attorney and consent shall be in effect for any action brought against you or any of your former partners.

## 3. *Non-Resident* Investment Adviser Undertaking Regarding Books and Records

By signing this Form ADV, you also agree to provide, at your own expense, to the U.S. Securities and Exchange Commission at its principal office in Washington D.C., at any Regional or District Office of the Commission, or at any one of its offices in the United States, as specified by the Commission, correct, current, and complete copies of any or all records that you are required to maintain under Rule 204-2 under the Investment Advisers Act of 1940. This undertaking shall be binding upon you, your heirs, successors and assigns, and any *person* subject to your written irrevocable consents or powers of attorney or any of your general partners and *managing agents*.

## Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the *non-resident* investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

Signature:                                               Date: MM/DD/YYYY

Printed Name:                                   Title:

Adviser *CRD* Number:
110126

# HMIT Exhibit No. 57

008153

**FORM ADV**

**UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION AND REPORT BY EXEMPT REPORTING ADVISERS**

| | |
|---|---|
| **Primary Business Name: HIGHLAND CAPITAL MANAGEMENT, L.P.** | **CRD Number: 110126** |
| **Other-Than-Annual Amendment - All Sections** | **Rev. 10/2021** |
| **4/25/2023 12:27:41 PM** | |

**WARNING:** Complete this form truthfully. False statements or omissions may result in denial of your application, revocation of your registration, or criminal prosecution. You must keep this form updated by filing periodic amendments. See Form ADV General Instruction 4.

**Item 1 Identifying Information**

Responses to this Item tell us who you are, where you are doing business, and how we can contact you. If you are filing an *umbrella registration*, the information in Item 1 should be provided for the *filing adviser* only. General Instruction 5 provides information to assist you with filing an *umbrella registration*.

A.   Your full legal name (if you are a sole proprietor, your last, first, and middle names):
　　**HIGHLAND CAPITAL MANAGEMENT, L.P.**

B.   (1) Name under which you primarily conduct your advisory business, if different from Item 1.A.
　　**HIGHLAND CAPITAL MANAGEMENT, L.P.**

　　*List on Section 1.B. of Schedule D any additional names under which you conduct your advisory business.*

　　(2) If you are using this Form ADV to register more than one investment adviser under an *umbrella registration*, check this box ☑

　　*If you check this box, complete a Schedule R for each relying adviser.*

C.   If this filing is reporting a change in your legal name (Item 1.A.) or primary business name (Item 1.B.(1)), enter the new name and specify whether the name change is of
　　☐ your legal name or ☐ your primary business name:

D.   (1) If you are registered with the SEC as an investment adviser, your SEC file number: **801-54874**

　　(2) If you report to the SEC as an *exempt reporting adviser*, your SEC file number:

　　(3) If you have one or more Central Index Key numbers assigned by the SEC ("CIK Numbers"), all of your CIK numbers:
　　　　　　　　　　No Information Filed

E.   (1) If you have a number ("*CRD* Number") assigned by the *FINRA's CRD* system or by the IARD system, your *CRD* number: **110126**

　　*If your firm does not have a CRD number, skip this Item 1.E. Do not provide the CRD number of one of your officers, employees, or affiliates.*

　　(2) If you have additional *CRD* Numbers, your additional *CRD* numbers:
　　　　　　　　　　No Information Filed

F.   *Principal Office and Place of Business*
　　(1) Address (do not use a P.O. Box):
　　　　Number and Street 1:　　　　　　　　　　Number and Street 2:
　　　　100 CRESCENT COURT　　　　　　　　　　SUITE 1850
　　　　City:　　　　　　State:　　　　　　Country:　　　　　　ZIP+4/Postal Code:
　　　　DALLAS　　　　　　Texas　　　　　　United States　　　　　　75201

　　　　If this address is a private residence, check this box: ☐

　　　　*List on Section 1.F. of Schedule D any office, other than your principal office and place of business, at which you conduct investment advisory business. If you are applying for registration, or are registered, with one or more state securities authorities, you must list all of your offices in the state or states to which you are applying for registration or with whom you are registered. If you are applying for SEC registration, if you are registered only with the SEC, or if you are reporting to the SEC as an exempt reporting adviser, list the largest twenty-five offices in terms of numbers of employees as of the end of your most recently completed fiscal year.*

　　(2) Days of week that you normally conduct business at your *principal office and place of business*:
　　　　◉ Monday - Friday ◯ Other:
　　　　Normal business hours at this location:
　　　　BY APPOINTMENT
　　(3) Telephone number at this location:
　　　　972-628-4100
　　(4) Facsimile number at this location, if any:
　　　　972-637-9197
　　(5) What is the total number of offices, other than your *principal office and place of business*, at which you conduct investment advisory business as of

G.   Mailing address, if different from your *principal office and place of business* address:

Number and Street 1:                                Number and Street 2:

City:                          State:                Country:                      ZIP+4/Postal Code:

If this address is a private residence, check this box: ☐

H.   If you are a sole proprietor, state your full residence address, if different from your *principal office and place of business* address in Item 1.F.:

Number and Street 1:                                Number and Street 2:

City:                          State:                Country:                      ZIP+4/Postal Code:

**Yes  No**

I.   Do you have one or more websites or accounts on publicly available social media platforms (including, but not limited to, Twitter, Facebook and LinkedIn)?                                                                                                               ⦿   ○

*If "yes," list all firm website addresses and the address for each of the firm's accounts on publicly available social media platforms on* Section 1.I. of Schedule D. *If a website address serves as a portal through which to access other information you have published on the web, you may list the portal without listing addresses for all of the other information. You may need to list more than one portal address. Do not provide the addresses of websites or accounts on publicly available social media platforms where you do not control the content. Do not provide the individual electronic mail (e-mail) addresses of employees or the addresses of employee accounts on publicly available social media platforms.*

J.   Chief Compliance Officer

(1) Provide the name and contact information of your Chief Compliance Officer. If you are an *exempt reporting adviser*, you must provide the contact information for your Chief Compliance Officer, if you have one. If not, you must complete Item 1.K. below.

Name:                                               Other titles, if any:

Telephone number:                                   Facsimile number, if any:

Number and Street 1:                                Number and Street 2:

City:                          State:                Country:                      ZIP+4/Postal Code:

Electronic mail (e-mail) address, if Chief Compliance Officer has one:

(2) If your Chief Compliance Officer is compensated or employed by any *person* other than you, a *related person* or an investment company registered under the Investment Company Act of 1940 that you advise for providing chief compliance officer services to you, provide the *person's* name and IRS Employer Identification Number (if any):

Name:

IRS Employer Identification Number:

K.   Additional Regulatory Contact Person: If a person other than the Chief Compliance Officer is authorized to receive information and respond to questions about this Form ADV, you may provide that information here.

Name:                                               Titles:

Telephone number:                                   Facsimile number, if any:

Number and Street 1:                                Number and Street 2:

City:                          State:                Country:                      ZIP+4/Postal Code:

Electronic mail (e-mail) address, if contact person has one:

**Yes  No**

L.   Do you maintain some or all of the books and records you are required to keep under Section 204 of the Advisers Act, or similar state law, somewhere other than your *principal office and place of business*?                                                           ⦿   ○

*If "yes," complete* Section 1.L. of Schedule D.

**Yes  No**

M.   Are you registered with a *foreign financial regulatory authority*?                                                     ⦿   ○

*Answer "no" if you are not registered with a foreign financial regulatory authority, even if you have an affiliate that is registered with a foreign financial regulatory authority. If "yes," complete* Section 1.M. of Schedule D.

**Yes  No**

N.   Are you a public reporting company under Sections 12 or 15(d) of the Securities Exchange Act of 1934?                    ○   ⦿

**Yes  No**

O.   Did you have $1 billion or more in assets on the last day of your most recent fiscal year?                              ○   ⦿
If yes, what is the approximate amount of your assets:

○   $1 billion to less than $10 billion

○   $10 billion to less than $50 billion

○ $50 billion or more   Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Exhibit Exhibits 53-58    Page 617 of 692

Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 163 of 214    PageID 7761

*For purposes of Item 1.O. only, "assets" refers to your total assets, rather than the assets you manage on behalf of clients. Determine your total assets using the total assets shown on the balance sheet for your most recent fiscal year end.*

P.   Provide your *Legal Entity Identifier* if you have one:
     549300BKFQI8M03HT187

     A *legal entity identifier* is a unique number that companies use to identify each other in the financial marketplace. You may not have a *legal entity identifier*.

## SECTION 1.B. Other Business Names

List your other business names and the jurisdictions in which you use them. You must complete a separate Schedule D Section 1.B. for each business name.

Name: HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED

Jurisdictions

| | | | |
|---|---|---|---|
| ☐ AL | ☐ IL | ☐ NE | ☐ SC |
| ☐ AK | ☐ IN | ☐ NV | ☐ SD |
| ☐ AZ | ☐ IA | ☐ NH | ☐ TN |
| ☐ AR | ☐ KS | ☐ NJ | ☑ TX |
| ☐ CA | ☐ KY | ☐ NM | ☐ UT |
| ☐ CO | ☐ LA | ☐ NY | ☐ VT |
| ☐ CT | ☐ ME | ☐ NC | ☐ VI |
| ☐ DE | ☐ MD | ☐ ND | ☐ VA |
| ☐ DC | ☐ MA | ☐ OH | ☐ WA |
| ☐ FL | ☐ MI | ☐ OK | ☐ WV |
| ☐ GA | ☐ MN | ☐ OR | ☐ WI |
| ☐ GU | ☐ MS | ☐ PA | ☐ WY |
| ☐ HI | ☐ MO | ☐ PR | ☑ Other: SOUTH KOREA |
| ☐ ID | ☐ MT | ☐ RI | |

## SECTION 1.F. Other Offices

Complete the following information for each office, other than your *principal office and place of business*, at which you conduct investment advisory business. You must complete a separate Schedule D Section 1.F. for each location. If you are applying for SEC registration, if you are registered only with the SEC, or if you are an *exempt reporting adviser*, list only the largest twenty-five offices (in terms of numbers of *employees*).

Number and Street 1:                              Number and Street 2:
136, SEJONG-DAERO, JUNG-GU                        SEOUL FINANCE CENTER

City:                          State:             Country:                ZIP+4/Postal Code:
SEOUL                                             Korea, South

If this address is a private residence, check this box: ☐

Telephone Number:                    Facsimile Number, if any:
972-628-4100

If this office location is also required to be registered with FINRA or a *state securities authority* as a branch office location for a broker-dealer or investment adviser on the Uniform Branch Office Registration Form (Form BR), please provide the *CRD* Branch Number here:

How many *employees* perform investment advisory functions from this office location?
4

Are other business activities conducted at this office location? (check all that apply)
☐ (1) Broker-dealer (registered or unregistered)
☐ (2) Bank (including a separately identifiable department or division of a bank)
☐ (3) Insurance broker or agent

☐ (4) Commodity pool operator or commodity trading advisor (whether registered or exempt from registration)

☐ (5) Registered municipal advisor

☐ (6) Account 3:23-cv-02071-E

☐ (7) Lawyer or law firm

Describe any other *investment-related* business activities conducted from this office location:

---

## SECTION 1.I. Website Addresses

List your website addresses, including addresses for accounts on publicly available social media platforms where you control the content (including, but not limited to, Twitter, Facebook and/or LinkedIn). You must complete a separate Schedule D Section 1.I. for each website or account on a publicly available social media platform.

Address of Website/Account on Publicly Available Social Media Platform:   HTTP://HIGHLANDCAPITAL.COM/

Address of Website/Account on Publicly Available Social Media Platform:   HTTPS://TWITTER.COM/HIGHLANDCAPMGMT

Address of Website/Account on Publicly Available Social Media Platform:   HTTPS://WWW.LINKEDIN.COM/COMPANY/164190/

Address of Website/Account on Publicly Available Social Media Platform:   HTTPS://WWW.FACEBOOK.COM/HIGHLANDCAPITALMGMT/

---

## SECTION 1.L. Location of Books and Records

Complete the following information for each location at which you keep your books and records, other than your *principal office and place of business*. You must complete a separate Schedule D, Section 1.L. for each location.

Name of entity where books and records are kept:
GLOBAL RELAY COMMUNICATIONS

| Number and Street 1: | | Number and Street 2: | |
|---|---|---|---|
| 220 CAMBIE STREET | | 2ND FLOOR | |
| City: | State: | Country: | ZIP+4/Postal Code: |
| VANCOUVER | | Canada | V6B2M9 |

If this address is a private residence, check this box:   ☐

Telephone Number:                  Facsimile number, if any:
8664846630

This is (check one):
○ one of your branch offices or affiliates.
◉ a third-party unaffiliated recordkeeper.
○ other.

Briefly describe the books and records kept at this location.
EMAIL ARCHIVING

Name of entity where books and records are kept:
AMAZON WEB SERVICES (AWS)

| Number and Street 1: | | Number and Street 2: | |
|---|---|---|---|
| 410 TERRY AVENUE NORTH | | | |
| City: | State: | Country: | ZIP+4/Postal Code: |
| SEATTLE | Washington | United States | 98108-5210 |

If this address is a private residence, check this box:   ☐

Telephone Number:
9999999999

Facsimile number, if any:

This is (check one):
○ one of your branch offices or affiliates.
● a third-party unaffiliated recordkeeper.
○ other.

Briefly describe the books and records kept at this location.
CLOUD BASED E-STORAGE

---

Name of entity where books and records are kept:
HIGHLAND CAPITAL MANAGEMENT, L.P.

Number and Street 1:                          Number and Street 2:
136, SEJONG-DAERO, JUNG-GU                    SEOUL FINANCE CENTER

City:                          State:         Country:              ZIP+4/Postal Code:
SEOUL                                         Korea, South

If this address is a private residence, check this box: ☐

Telephone Number:                Facsimile number, if any:
972-628-4100

This is (check one):
● one of your branch offices or affiliates.
○ a third-party unaffiliated recordkeeper.
○ other.

Briefly describe the books and records kept at this location.
PRIMARILY MARKETING AND ADVERTISING MATERIALS.

---

Name of entity where books and records are kept:
IRON MOUNTAIN

Number and Street 1:                          Number and Street 2:
1402 LAKEWAY DRIVE

City:                          State:         Country:              ZIP+4/Postal Code:
LEWISVILLE                     Texas          United States         75057-6000

If this address is a private residence, check this box: ☐

Telephone Number:                Facsimile number, if any:
972-434-2222

This is (check one):
○ one of your branch offices or affiliates.
● a third-party unaffiliated recordkeeper.
○ other.

Briefly describe the books and records kept at this location.
OFFSITE STORAGE AND BACKUP OF FILES MAINTAINED AT OTHER BRANCH OFFICES.

---

## SECTION 1.M. Registration with Foreign Financial Regulatory Authorities

List the name and country, in English, of each *foreign financial regulatory authority* with which you are registered. You must complete a separate Schedule D Section 1.M. for each *foreign financial regulatory authority* with whom you are registered.

Name of Country/*Foreign Financial Regulatory Authority*:

Cayman Islands - Cayman Islands Monetary Authority

Other:

---

Name of Country/*Foreign Financial Regulatory Authority*:

South Korea - Financial Supervisory Commission / Financial Supervisory Service

Other:

---

## Item 2 SEC Registration/Reporting

Responses to this Item help us (and you) determine whether you are eligible to register with the SEC. Complete this Item 2.A. only if you are applying for SEC registration or submitting an *annual updating amendment* to your SEC registration. If you are filing an *umbrella registration*, the information in Item 2 should be provided for the *filing adviser* only.

A.  To register (or remain registered) with the SEC, you must check **at least one** of the Items 2.A.(1) through 2.A.(12), below. If you are submitting an *annual updating amendment* to your SEC registration and you are no longer eligible to register with the SEC, check Item 2.A.(13). Part 1A Instruction 2 provides information to help you determine whether you may affirmatively respond to each of these items.

You (the adviser):

☑ (1)  are a **large advisory firm** that either:

(a) has regulatory assets under management of $100 million (in U.S. dollars) or more; or

(b) has regulatory assets under management of $90 million (in U.S. dollars) or more at the time of filing its most recent *annual updating amendment* and is registered with the SEC;

☐ (2)  are a **mid-sized advisory firm** that has regulatory assets under management of $25 million (in U.S. dollars) or more but less than $100 million (in U.S. dollars) and you are either:

(a) not required to be registered as an adviser with the *state securities authority* of the state where you maintain your *principal office and place of business*; or

(b) not subject to examination by the *state securities authority* of the state where you maintain your *principal office and place of business*;

Click **HERE** for a list of states in which an investment adviser, if registered, would not be subject to examination by the state securities authority.

(3)  Reserved

☐ (4)  have your *principal office and place of business* **outside the United States**;

☐ (5)  are **an investment adviser (or subadviser) to an investment company** registered under the Investment Company Act of 1940;

☐ (6)  are **an investment adviser to a company which has elected to be a business development company** pursuant to section 54 of the Investment Company Act of 1940 and has not withdrawn the election, and you have at least $25 million of regulatory assets under management;

☐ (7)  are a **pension consultant** with respect to assets of plans having an aggregate value of at least $200,000,000 that qualifies for the exemption in rule 203A-2(a);

☐ (8)  are a **related adviser** under rule 203A-2(b) that *controls*, is *controlled* by, or is under common *control* with, an investment adviser that is registered with the SEC, and your *principal office and place of business* is the same as the registered adviser;

If you check this box, complete Section 2.A.(8) of Schedule D.

☐ (9)  are an **adviser** relying on rule 203A-2(c) because you **expect to be eligible for SEC registration within 120 days;**

If you check this box, complete Section 2.A.(9) of Schedule D.

☐ (10)  are a **multi-state adviser** that is required to register in 15 or more states and is relying on rule 203A-2(d);

If you check this box, complete Section 2.A.(10) of Schedule D.

☐ (11)  are an **Internet adviser** relying on rule 203A-2(e);

☐ (12)  have **received an SEC order** exempting you from the prohibition against registration with the SEC;

If you check this box, complete Section 2.A.(12) of Schedule D.

☐ (13)  are **no longer eligible** to remain registered with the SEC.

---

### *State Securities Authority Notice Filings* and State Reporting by *Exempt Reporting Advisers*

C.  Under state laws, SEC-registered advisers may be required to provide to *state securities authorities* a copy of the Form ADV and any amendments they file with the SEC. These are called *notice filings*. In addition, *exempt reporting advisers* may be required to provide *state securities authorities* with a copy of reports and any amendments they file with the SEC. If this is an initial application or report, check the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings or reports you submit to the SEC. If this is an amendment to direct your *notice filings* or reports to

additional state(s), check the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings or reports you submit to the SEC. If this is an annual updating amendment and you want to stop filing as reports or notices that states currently receive them, uncheck the box(es) next to those state(s).

#### Jurisdictions

| | | | |
|---|---|---|---|
| ☐ AL | ☐ IL | ☐ NE | ☐ SC |
| ☐ AK | ☐ IN | ☐ NV | ☐ SD |
| ☐ AZ | ☐ IA | ☐ NH | ☐ TN |
| ☐ AR | ☐ KS | ☐ NJ | ☐ TX |
| ☐ CA | ☐ KY | ☐ NM | ☐ UT |
| ☐ CO | ☐ LA | ☐ NY | ☐ VT |
| ☐ CT | ☐ ME | ☐ NC | ☐ VI |
| ☐ DE | ☐ MD | ☐ ND | ☐ VA |
| ☐ DC | ☐ MA | ☐ OH | ☐ WA |
| ☐ FL | ☐ MI | ☐ OK | ☐ WV |
| ☐ GA | ☐ MN | ☐ OR | ☐ WI |
| ☐ GU | ☐ MS | ☐ PA | ☐ WY |
| ☐ HI | ☐ MO | ☐ PR | |
| ☐ ID | ☐ MT | ☐ RI | |

*If you are amending your registration to stop your notice filings or reports from going to a state that currently receives them and you do not want to pay that state's notice filing or report filing fee for the coming year, your amendment must be filed before the end of the year (December 31).*

---

#### SECTION 2.A.(8) Related Adviser

If you are relying on the exemption in rule 203A-2(b) from the prohibition on registration because you *control*, are *controlled* by, or are under common *control* with an investment adviser that is registered with the SEC and your *principal office and place of business* is the same as that of the registered adviser, provide the following information:

Name of Registered Investment Adviser

*CRD* Number of Registered Investment Adviser

SEC Number of Registered Investment Adviser
-

---

#### SECTION 2.A.(9) Investment Adviser Expecting to be Eligible for Commission Registration within 120 Days

If you are relying on rule 203A-2(c), the exemption from the prohibition on registration available to an adviser that expects to be eligible for SEC registration within 120 days, you are required to make certain representations about your eligibility for SEC registration. By checking the appropriate boxes, you will be deemed to have made the required representations. You must make both of these representations:

☐ I am not registered or required to be registered with the SEC or a *state securities authority* and I have a reasonable expectation that I will be eligible to register with the SEC within 120 days after the date my registration with the SEC becomes effective.

☐ I undertake to withdraw from SEC registration if, on the 120th day after my registration with the SEC becomes effective, I would be prohibited by Section 203A(a) of the Advisers Act from registering with the SEC.

---

#### SECTION 2.A.(10) Multi-State Adviser

If you are relying on rule 203A-2(d), the multi-state adviser exemption from the prohibition on registration, you are required to make certain representations about your eligibility for SEC registration. By checking the appropriate boxes, you will be deemed to have made the required representations.

If you are applying for registration as an investment adviser with the SEC, you must make both of these representations:

☐ I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of 15 or more states to register as an investment adviser with the *state securities authorities* in those states.

☐ I undertake to withdraw from SEC registration if I file an amendment to this registration indicating that I would be required by the laws of fewer than 15 states to register as an investment adviser with the *state securities authorities* of those states.

If you are submitting your *annual updating amendment*, you must make this representation:

☐ Within 90 days prior to the date of filing this amendment, I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of at least 15 states to register as an investment adviser with the *state securities authorities* in those states.

---

#### SECTION 2.A.(12) SEC Exemptive *Order*

If you are relying upon an SEC *order* exempting you from the prohibition on registration, provide the following information:

Date of *order*:

---

**Item 3 Form of Organization**

If you are filing an *umbrella registration*, the information in Item 3 should be provided for the *filing adviser* only.

A.   How are you organized?

   ○  Corporation

   ○  Sole Proprietorship

   ○  Limited Liability Partnership (LLP)

   ○  Partnership

   ○  Limited Liability Company (LLC)

   ◉  Limited Partnership (LP)

   ○  Other (specify):

   *If you are changing your response to this Item, see* Part 1A Instruction 4.

B.   In what month does your fiscal year end each year?
   DECEMBER

C.   Under the laws of what state or country are you organized?

   State       Country

   Delaware   United States

   *If you are a partnership, provide the name of the state or country under whose laws your partnership was formed. If you are a sole proprietor, provide the name of the state or country where you reside.*

   *If you are changing your response to this Item, see* Part 1A Instruction 4.

---

**Item 4 Successions**

|  |  | Yes | No |
|---|---|---|---|
| A. | Are you, at the time of this filing, succeeding to the business of a registered investment adviser, including, for example, a change of your structure or legal status (e.g., form of organization or state of incorporation)? | ○ | ◉ |

   *If "yes", complete Item 4.B. and* Section 4 of Schedule D.

B.   Date of Succession: (MM/DD/YYYY)

   *If you have already reported this succession on a previous Form ADV filing, do not report the succession again. Instead, check "No." See* Part 1A Instruction 4.

---

**SECTION 4 Successions**

No Information Filed

---

**Item 5 Information About Your Advisory Business - Employees, Clients, and Compensation**

Responses to this Item help us understand your business, assist us in preparing for on-site examinations, and provide us with data we use when making regulatory policy. Part 1A Instruction 5.a. provides additional guidance to newly formed advisers for completing this Item 5.

**Employees**

*If you are organized as a sole proprietorship, include yourself as an employee in your responses to Item 5.A. and Items 5.B.(1), (2), (3), (4), and (5). If an employee performs more than one function, you should count that employee in each of your responses to Items 5.B.(1), (2), (3), (4), and (5).*

A.   Approximately how many *employees* do you have? Include full- and part-time *employees* but do not include any clerical workers.
   12

**B.** **(1)** Approximately how many of the *employees* reported in 5.A. perform investment advisory functions (including research)?

6

**(2)** Approximately how many of the *employees* reported in 5.A. are registered representatives of a broker-dealer?

0

**(3)** Approximately how many of the *employees* reported in 5.A. are registered with one or more *state securities authorities* as *investment adviser representatives*?

0

**(4)** Approximately how many of the *employees* reported in 5.A. are registered with one or more *state securities authorities* as *investment adviser representatives* for an investment adviser other than you?

0

**(5)** Approximately how many of the *employees* reported in 5.A. are licensed agents of an insurance company or agency?

0

**(6)** Approximately how many firms or other *persons* solicit advisory *clients* on your behalf?

0

*In your response to Item 5.B.(6), do not count any of your employees and count a firm only once – do not count each of the firm's employees that solicit on your behalf.*

## Clients

*In your responses to Items 5.C. and 5.D. do not include as "clients" the investors in a private fund you advise, unless you have a separate advisory relationship with those investors.*

**C.** **(1)** To approximately how many *clients* for whom you do not have regulatory assets under management did you provide investment advisory services during your most recently completed fiscal year?

0

**(2)** Approximately what percentage of your *clients* are non-*United States persons*?

85%

**D.** *For purposes of this Item 5.D., the category "individuals" includes trusts, estates, and 401(k) plans and IRAs of individuals and their family members, but does not include businesses organized as sole proprietorships.*
*The category "business development companies" consists of companies that have made an election pursuant to section 54 of the Investment Company Act of 1940. Unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940, do not answer (1)(d) or (3)(d) below.*

Indicate the approximate number of your *clients* and amount of your total regulatory assets under management (reported in Item 5.F. below) attributable to each of the following type of *client*. If you have fewer than 5 *clients* in a particular category (other than (d), (e), and (f)) you may check Item 5.D.(2) rather than respond to Item 5.D.(1).

The aggregate amount of regulatory assets under management reported in Item 5.D.(3) should equal the total amount of regulatory assets under management reported in Item 5.F.(2)(c) below.

If a *client* fits into more than one category, select one category that most accurately represents the *client* to avoid double counting *clients* and assets. If you advise a registered investment company, business development company, or pooled investment vehicle, report those assets in categories (d), (e), and (f) as applicable.

| Type of *Client* | (1) Number of *Client(s)* | (2) Fewer than 5 Clients | (3) Amount of Regulatory Assets under Management |
|---|---|---|---|
| (a) Individuals (other than *high net worth individuals*) | 0 | ☐ | $ 0 |
| (b) *High net worth individuals* | 0 | ☐ | $ 0 |
| (c) Banking or thrift institutions | 0 | ☐ | $ 0 |
| (d) Investment companies | 0 | | $ 0 |
| (e) Business development companies | 0 | | $ 0 |
| (f) Pooled investment vehicles (other than investment companies and business development companies) | 24 | | $ 271,892,320 |
| (g) Pension and profit sharing plans (but not the plan participants or government pension plans) | 0 | ☐ | $ 0 |
| (h) Charitable organizations | 0 | ☐ | $ 0 |
| (i) State or municipal *government entities* (including government pension plans) | 1 | ☑ | $ 25,021,154 |
| (j) Other investment advisers | 0 | ☐ | $ 0 |
| (k) Insurance companies | 0 | ☐ | $ 0 |
| (l) Sovereign wealth funds and foreign official institutions | 0 | ☐ | $ 0 |
| (m) Corporations or other businesses not listed above | 0 | ☐ | $ 0 |

**Compensation Arrangements**

E.    You are compensated for your investment advisory services by (check all that apply):

☑ (1)    A percentage of assets under your management

☐ (2)    Hourly charges

☐ (3)    Subscription fees (for a newsletter or periodical)

☐ (4)    Fixed fees (other than subscription fees)

☐ (5)    Commissions

☑ (6)    *Performance-based fees*

☐ (7)    Other (specify):

---

**Item 5 Information About Your Advisory Business - Regulatory Assets Under Management**

**Regulatory Assets Under Management**

|  |  | **Yes** | **No** |
|---|---|---|---|

F.    (1)    Do you provide continuous and regular supervisory or management services to securities portfolios?    ⦿    ○

(2)    If yes, what is the amount of your regulatory assets under management and total number of accounts?

| | U.S. Dollar Amount | | Total Number of Accounts |
|---|---|---|---|
| Discretionary: | (a) $ 296,913,474 | (d) | 25 |
| Non-Discretionary: | (b) $ 0 | (e) | 0 |
| Total: | (c) $ 296,913,474 | (f) | 25 |

*Part 1A Instruction 5.b. explains how to calculate your regulatory assets under management. You must follow these instructions carefully when completing this Item.*

(3)    What is the approximate amount of your total regulatory assets under management (reported in Item 5.F.(2)(c) above) attributable to *clients* who are non-*United States persons*?

$ 252,376,453

---

**Item 5 Information About Your Advisory Business - Advisory Activities**

**Advisory Activities**

G.    What type(s) of advisory services do you provide? Check all that apply.

☐ (1)    Financial planning services

☐ (2)    Portfolio management for individuals and/or small businesses

☐ (3)    Portfolio management for investment companies (as well as "business development companies" that have made an election pursuant to section 54 of the Investment Company Act of 1940)

☑ (4)    Portfolio management for pooled investment vehicles (other than investment companies)

☑ (5)    Portfolio management for businesses (other than small businesses) or institutional *clients* (other than registered investment companies and other pooled investment vehicles)

☐ (6)    Pension consulting services

☐ (7)    Selection of other advisers (including *private fund* managers)

☐ (8)    Publication of periodicals or newsletters

☐ (9)    Security ratings or pricing services

☐ (10)    Market timing services

☐ (11)    Educational seminars/workshops

☐ (12)    Other(specify):

*Do not check Item 5.G.(3) unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940, including as a subadviser. If you check Item 5.G.(3), report the 811 or 814 number of the investment company or investment companies to which you provide advice in Section 5.G.(3) of Schedule D.*

H.    If you provide financial planning services, to how many *clients* did you provide these services during your last fiscal year?

⦿    0

○    1 - 10

○    11 - 25

○    26 - 50

○    51 - 100

○    101 - 250

○    251 - 500

○    More than 500

If more than 500, how many?

(round to the nearest 500)

*In your responses to this Item 5.H., do not include as "clients" the investors in a private fund you advise, unless you have a separate advisory relationship*

with those investors.

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 171 of 214    PageID 7769
Exhibit Exhibits 53-58    Page 625 of 692

**Yes  No**

I. (1) Do you participate in a *wrap fee program*?

(2) If you participate in a *wrap fee program*, what is the amount of your regulatory assets under management attributable to acting as:

(a) *sponsor* to a *wrap fee program*

$

(b) portfolio manager for a *wrap fee program*?

$

(c) *sponsor* to and portfolio manager for the same *wrap fee program*?

$

*If you report an amount in Item 5.I.(2)(c), do not report that amount in Item 5.I.(2)(a) or Item 5.I.(2)(b).*

*If you are a portfolio manager for a wrap fee program, list the names of the programs, their sponsors and related information in Section 5.I.(2) of Schedule D.*

*If your involvement in a wrap fee program is limited to recommending wrap fee programs to your clients, or you advise a mutual fund that is offered through a wrap fee program, do not check Item 5.I.(1) or enter any amounts in response to Item 5.I.(2).*

**Yes  No**

J. (1) In response to Item 4.B. of Part 2A of Form ADV, do you indicate that you provide investment advice only with respect to limited types of investments?

(2) Do you report *client* assets in Item 4.E. of Part 2A that are computed using a different method than the method used to compute your regulatory assets under management?

K. Separately Managed Account *Clients*

**Yes  No**

(1) Do you have regulatory assets under management attributable to *clients* other than those listed in Item 5.D.(3)(d)-(f) (separately managed account *clients*)?

*If yes, complete Section 5.K.(1) of Schedule D.*

(2) Do you engage in borrowing transactions on behalf of any of the separately managed account *clients* that you advise?

*If yes, complete Section 5.K.(2) of Schedule D.*

(3) Do you engage in derivative transactions on behalf of any of the separately managed account *clients* that you advise?

*If yes, complete Section 5.K.(2) of Schedule D.*

(4) After subtracting the amounts in Item 5.D.(3)(d)-(f) above from your total regulatory assets under management, does any custodian hold ten percent or more of this remaining amount of regulatory assets under management?

*If yes, complete Section 5.K.(3) of Schedule D for each custodian.*

L. Marketing Activities

**Yes  No**

(1) Do any of your *advertisements* include:

(a) Performance results?

(b) A reference to specific investment advice provided by you (as that phrase is used in rule 206(4)-1(a)(5))?

(c) *Testimonials* (other than those that satisfy rule 206(4)-1(b)(4)(ii))?

(d) *Endorsements* (other than those that satisfy rule 206(4)-1(b)(4)(ii))?

(e) *Third-party ratings*?

(2) If you answer "yes" to L(1)(c), (d), or (e) above, do you pay or otherwise provide cash or non-cash compensation, directly or indirectly, in connection with the use of *testimonials*, *endorsements*, or *third-party ratings*?

(3) Do any of your *advertisements* include *hypothetical performance*?

(4) Do any of your *advertisements* include *predecessor performance*?

No Information Filed

---

**SECTION 5.I.(2) *Wrap Fee Programs***

No Information Filed

---

**SECTION 5.K.(1) Separately Managed Accounts**

After subtracting the amounts reported in Item 5.D.(3)(d)-(f) from your total regulatory assets under management, indicate the approximate percentage of this remaining amount attributable to each of the following categories of assets. If the remaining amount is at least $10 billion in regulatory assets under management, complete Question (a). If the remaining amount is less than $10 billion in regulatory assets under management, complete Question (b).

Any regulatory assets under management reported in Item 5.D.(3)(d), (e), and (f) should not be reported below.

If you are a subadviser to a separately managed account, you should only provide information with respect to the portion of the account that you subadvise.

End of year refers to the date used to calculate your regulatory assets under management for purposes of your *annual updating amendment* . Mid-year is the date six months before the end of year date. Each column should add up to 100% and numbers should be rounded to the nearest percent.

Investments in derivatives, registered investment companies, business development companies, and pooled investment vehicles should be reported in those categories. Do not report those investments based on related or underlying portfolio assets. Cash equivalents include bank deposits, certificates of deposit, bankers' acceptances and similar bank instruments.

Some assets could be classified into more than one category or require discretion about which category applies. You may use your own internal methodologies and the conventions of your service providers in determining how to categorize assets, so long as the methodologies or conventions are consistently applied and consistent with information you report internally and to current and prospective clients. However, you should not double count assets, and your responses must be consistent with any instructions or other guidance relating to this Section.

(a)

| Asset Type | | Mid-year | End of year |
|---|---|---|---|
| (i) | Exchange-Traded Equity Securities | % | % |
| (ii) | Non Exchange-Traded Equity Securities | % | % |
| (iii) | U.S. Government/Agency Bonds | % | % |
| (iv) | U.S. State and Local Bonds | % | % |
| (v) | *Sovereign Bonds* | % | % |
| (vi) | Investment Grade Corporate Bonds | % | % |
| (vii) | Non-Investment Grade Corporate Bonds | % | % |
| (viii) | Derivatives | % | % |
| (ix) | Securities Issued by Registered Investment Companies or Business Development Companies | % | % |
| (x) | Securities Issued by Pooled Investment Vehicles (other than Registered Investment Companies or Business Development Companies) | % | % |
| (xi) | Cash and Cash Equivalents | % | % |
| (xii) | Other | % | % |

Generally describe any assets included in "Other"

(b)

| Asset Type | | End of year |
|---|---|---|
| (i) | Exchange-Traded Equity Securities | 0 % |
| (ii) | Non Exchange-Traded Equity Securities | 74 % |
| (iii) | U.S. Government/Agency Bonds | 0 % |
| (iv) | U.S. State and Local Bonds | 0 % |
| (v) | *Sovereign Bonds* | 0 % |
| (vi) | Investment Grade Corporate Bonds | 0 % |
| (vii) | Non-Investment Grade Corporate Bonds | 0 % |
| (viii) | Derivatives | 0 % |
| (ix) | Securities Issued by Registered Investment Companies or Business Development Companies | 0 % |
| (x) | Securities Issued by Pooled Investment Vehicles (other than Registered Investment Companies or Business Development Companies) | 0 % |
| (xi) | Cash and Cash Equivalents | 2 % |
| (xii) | Other | 24 % |

Generally describe any assets included in "Other"

FLOATING RATE SYNDICA Case 19-34054-sgj11 Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Exhibit Exhibits 53-58   Page 627 of 692

Case 3:23-cv-02071-E   Document 23-33   Filed 12/07/23   Page 173 of 214   PageID 7771

---

**SECTION 5.K.(2) Separately Managed Accounts – Use of *Borrowings* and Derivatives**

---

☐ **No information is required to be reported in this Section 5.K.(2) per the instructions of this Section 5.K.(2)**

If your regulatory assets under management attributable to separately managed accounts are at least $10 billion, you should complete Question (a). If your regulatory assets under management attributable to separately managed accounts are at least $500 million but less than $10 billion, you should complete Question (b).

(a)  In the table below, provide the following information regarding the separately managed accounts you advise. If you are a subadviser to a separately managed account, you should only provide information with respect to the portion of the account that you subadvise. End of year refers to the date used to calculate your regulatory assets under management for purposes of your *annual updating amendment*. Mid-year is the date six months before the end of year date.

In column 1, indicate the regulatory assets under management attributable to separately managed accounts associated with each level of gross notional exposure. For purposes of this table, the gross notional exposure of an account is the percentage obtained by dividing (i) the sum of (a) the dollar amount of any *borrowings* and (b) the *gross notional value* of all derivatives, by (ii) the regulatory assets under management of the account.

In column 2, provide the dollar amount of *borrowings* for the accounts included in column 1.

In column 3, provide aggregate *gross notional value* of derivatives divided by the aggregate regulatory assets under management of the accounts included in column 1 with respect to each category of derivatives specified in 3(a) through (f).

You may, but are not required to, complete the table with respect to any separately managed account with regulatory assets under management of less than $10,000,000.

Any regulatory assets under management reported in Item 5.D.(3)(d), (e), and (f) should not be reported below.

(i) Mid-Year

| Gross Notional Exposure | (1) Regulatory Assets Under Management | (2) *Borrowings* | (3) Derivative Exposures | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | (a) *Interest Rate Derivative* | (b) *Foreign Exchange Derivative* | (c) *Credit Derivative* | (d) *Equity Derivative* | (e) *Commodity Derivative* | (f) *Other Derivative* |
| **Less than 10%** | $ | $ | % | % | % | % | % | % |
| **10-149%** | $ | $ | % | % | % | % | % | % |
| **150% or more** | $ | $ | % | % | % | % | % | % |

Optional: Use the space below to provide a narrative description of the strategies and/or manner in which *borrowings* and derivatives are used in the management of the separately managed accounts that you advise.

(ii) End of Year

| Gross Notional Exposure | (1) Regulatory Assets Under Management | (2) *Borrowings* | (3) Derivative Exposures | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | (a) *Interest Rate Derivative* | (b) *Foreign Exchange Derivative* | (c) *Credit Derivative* | (d) *Equity Derivative* | (e) *Commodity Derivative* | (f) *Other Derivative* |
| **Less than 10%** | $ | $ | % | % | % | % | % | % |
| **10-149%** | $ | $ | % | % | % | % | % | % |
| **150% or more** | $ | $ | % | % | % | % | % | % |

Optional: Use the space below to provide a narrative description of the strategies and/or manner in which *borrowings* and derivatives are used in the management of the separately managed accounts that you advise.

(b)  In the table below, provide the following information regarding the separately managed accounts you advise as of the date used to calculate your regulatory assets under management for purposes of your *annual updating amendment*. If you are a subadviser to a separately managed account, you should only provide information with respect to the portion of the account that you subadvise.

In column 1, indicate the regulatory assets under management attributable to separately managed accounts associated with each level of gross notional exposure. For purposes of this table, the gross notional exposure of an account is the percentage obtained by dividing (i) the sum of (a) the

dollar amount of any *borrowings* and (b) the *gross notional value* of all derivatives, by (ii) the regulatory assets under management of the account.

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 174 of 214    PageID 7772
Exhibit Exhibits 53-58    Page 628 of 692

In column 2, provide the dollar amount of *borrowings* attributable to the assets.

You may, but are not required to, complete the table with respect to any separately managed accounts with regulatory assets under management of less than $10,000,000.

Any regulatory assets under management reported in Item 5.D.(3)(d), (e), and (f) should not be reported below.

| Gross Notional Exposure | (1) Regulatory Assets Under Management | (2) *Borrowings* |
|---|---|---|
| **Less than 10%** | $ | $ |
| **10-149%** | $ | $ |
| **150% or more** | $ | $ |

Optional: Use the space below to provide a narrative description of the strategies and/or manner in which *borrowings* and derivatives are used in the management of the separately managed accounts that you advise.

---

### SECTION 5.K.(3) Custodians for Separately Managed Accounts

Complete a separate Schedule D Section 5.K.(3) for each custodian that holds ten percent or more of your aggregate separately managed account regulatory assets under management.

(a)  Legal name of custodian:

  THE BANK OF NEW YORK MELLON

(b)  Primary business name of custodian:

  BNY MELLON

(c)  The location(s) of the custodian's office(s) responsible for *custody* of the assets :

  City:  State:  Country:
  NEW YORK  New York  United States

  Yes No

(d)  Is the custodian a *related person* of your firm?  ○ ●

(e)  If the custodian is a broker-dealer, provide its SEC registration number (if any)

  -

(f)  If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)

(g)  What amount of your regulatory assets under management attributable to separately managed accounts is held at the custodian?

  $ 74,501,290

---

### Item 6 Other Business Activities

In this Item, we request information about your firm's other business activities.

A.  You are actively engaged in business as a (check all that apply):

☐  (1)  broker-dealer (registered or unregistered)
☐  (2)  registered representative of a broker-dealer
☐  (3)  commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
☐  (4)  futures commission merchant
☐  (5)  real estate broker, dealer, or agent
☐  (6)  insurance broker or agent
☐  (7)  bank (including a separately identifiable department or division of a bank)
☐  (8)  trust company
☐  (9)  registered municipal advisor
☐  (10) registered security-based swap dealer
☐  (11) major security-based swap participant
☐  (12) accountant or accounting firm
☐  (13) lawyer or law firm
☐  (14) other financial product salesperson (specify):

*If you engage in other business using a name that is different from the names reported in Items 1.A. or 1.B.(1), complete Section 6.A. of Schedule D.*

  Yes No

B.  (1)  Are you actively engaged in any other business not listed in Item 6.A. (other than giving investment advice)?  ○ ●

  (2)  If yes, is this other business your primary business?  ○ ○

| | | | | **Yes** | **No** |
|---|---|---|---|---|---|
| (3) | Do you sell products or provide services other than investment advice to your *clients*? | | | ○ | ● |

*If "yes," describe this other business on* Section 6.B.(3) of Schedule D, *and if you engage in this business under a different name, provide that name.*

---

**SECTION 6.A. Names of Your Other Businesses**

No Information Filed

---

**SECTION 6.B.(2) Description of Primary Business**

Describe your primary business (not your investment advisory business):

If you engage in that business under a different name, provide that name:

---

**SECTION 6.B.(3) Description of Other Products and Services**

Describe other products or services you sell to your *client*. You may omit products and services that you listed in Section 6.B.(2) above.

If you engage in that business under a different name, provide that name:

---

**Item 7 Financial Industry Affiliations**

In this Item, we request information about your financial industry affiliations and activities. This information identifies areas in which conflicts of interest may occur between you and your *clients*.

A.   This part of Item 7 requires you to provide information about you and your *related persons*, including foreign affiliates. Your *related persons* are all of your *advisory affiliates* and any *person* that is under common *control* with you.

You have a *related person* that is a (check all that apply):

- ☐ (1)  broker-dealer, municipal securities dealer, or government securities broker or dealer (registered or unregistered)
- ☑ (2)  other investment adviser (including financial planners)
- ☐ (3)  registered municipal advisor
- ☐ (4)  registered security-based swap dealer
- ☐ (5)  major security-based swap participant
- ☐ (6)  commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
- ☐ (7)  futures commission merchant
- ☐ (8)  banking or thrift institution
- ☐ (9)  trust company
- ☐ (10) accountant or accounting firm
- ☐ (11) lawyer or law firm
- ☐ (12) insurance company or agency
- ☐ (13) pension consultant
- ☐ (14) real estate broker or dealer
- ☐ (15) sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
- ☑ (16) sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

*Note that Item 7.A. should not be used to disclose that some of your employees perform investment advisory functions or are registered representatives of a broker-dealer. The number of your firm's employees who perform investment advisory functions should be disclosed under Item 5.B.(1). The number of your firm's employees who are registered representatives of a broker-dealer should be disclosed under Item 5.B.(2).*

*Note that if you are filing an umbrella registration, you should not check Item 7.A.(2) with respect to your relying advisers, and you do not have to complete Section 7.A. in Schedule D for your relying advisers. You should complete a Schedule R for each relying adviser.*

*For each related person, including foreign affiliates that may not be registered or required to be registered in the United States, complete* Section 7.A. of Schedule D.

*You do not need to complete Section 7.A. of Schedule D for any related person if: (1) you have no business dealings with the related person in connection with advisory services you provide to your clients; (2) you do not conduct shared operations with the related person; (3) you do not refer clients or business to the related person, and the related person does not refer prospective clients or business to you; (4) you do not share supervised persons or premises with the related person; and (5) you have no reason to believe that your relationship with the related person otherwise creates a conflict of interest with your clients.*

*You must complete* Section 7.A. of Schedule D *for each related person acting as qualified custodian in connection with advisory services you provide to your clients (other than any mutual fund transfer agent pursuant to rule 206(4)-2(b)(1)), regardless of whether you have determined the related person to be operationally independent under rule 206(4)-2 of the Advisers Act.*

---

**SECTION 7.A. Financial Industry Affiliations**

Complete a separate Schedule D Section 7.A. for each *related person* listed in Item 7.A.

1. Legal Name of *Related Person*:

   HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P.

2. Primary Business Name of *Related Person*:

   HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P.

3. *Related Person's* SEC File Number (if any) (e.g., 801-, 8-, 866-, 802-)

   -

   or

   Other

4. *Related Person's*

   (a)  *CRD* Number (if any):

   (b)  CIK Number(s) (if any):

   No Information Filed

5. *Related Person* is: (check all that apply)

   (a) ☐ broker-dealer, municipal securities dealer, or government securities broker or dealer
   (b) ☐ other investment adviser (including financial planners)
   (c) ☐ registered municipal advisor
   (d) ☐ registered security-based swap dealer
   (e) ☐ major security-based swap participant
   (f) ☐ commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
   (g) ☐ futures commission merchant
   (h) ☐ banking or thrift institution
   (i) ☐ trust company
   (j) ☐ accountant or accounting firm
   (k) ☐ lawyer or law firm
   (l) ☐ insurance company or agency
   (m) ☐ pension consultant
   (n) ☐ real estate broker or dealer
   (o) ☐ sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
   (p) ☑ sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

|  |  | Yes | No |
|---|---|---|---|
| 6. | Do you *control* or are you *controlled* by the *related person*? | ○ | ● |
| 7. | Are you and the *related person* under common *control*? | ● | ○ |
| 8. (a) | Does the *related person* act as a qualified custodian for your *clients* in connection with advisory services you provide to *clients*? | ○ | ● |
| (b) | If you are registering or registered with the SEC and you have answered "yes," to question 8.(a) above, have you overcome the presumption that you are not operationally independent (pursuant to rule 206(4)-2(d)(5)) from the *related person* and thus are not required to obtain a surprise examination for your *clients'* funds or securities that are maintained at the *related person*? | ○ | ○ |

   (c) If you have answered "yes" to question 8.(a) above, provide the location of the *related person's* office responsible for *custody* of your *clients'* assets:

   Number and Street 1:                    Number and Street 2:
   City:                State:            Country:            ZIP+4/Postal Code:
   If this address is a private residence, check this box: ☐

|  |  | Yes | No |
|---|---|---|---|
| 9. (a) | If the *related person* is an investment adviser, is it exempt from registration? | ○ | ○ |
| (b) | If the answer is yes, under what exemption? | | |
| 10. (a) | Is the *related person* registered with a *foreign financial regulatory authority*? | ○ | ● |
| (b) | If the answer is yes, list the name and country, in English of each *foreign financial regulatory authority* with which the *related person* is registered. | | |

   No Information Filed

|  |  | Yes | No |
|---|---|---|---|
| 11. | Do you and the *related person* share any *supervised persons*? | ● | ○ |
| 12. | Do you and the *related person* share the same physical location? | ● | ○ |

---

1. Legal Name of *Related Person*:

   HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED

2. Primary Business Name of *Related Person*:

3.  *Related Person's* SEC File Number (if any) (e.g., 801-, 8-, 866-, 802-)
-
or
Other

4.  *Related Person's*
(a)  *CRD* Number (if any):

(b)  CIK Number(s) (if any):

                                        No Information Filed

5.  *Related Person* is: (check all that apply)
(a)  ☐  broker-dealer, municipal securities dealer, or government securities broker or dealer
(b)  ☐  other investment adviser (including financial planners)
(c)  ☐  registered municipal advisor
(d)  ☐  registered security-based swap dealer
(e)  ☐  major security-based swap participant
(f)  ☐  commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
(g)  ☐  futures commission merchant
(h)  ☐  banking or thrift institution
(i)  ☐  trust company
(j)  ☐  accountant or accounting firm
(k)  ☐  lawyer or law firm
(l)  ☐  insurance company or agency
(m)  ☐  pension consultant
(n)  ☐  real estate broker or dealer
(o)  ☐  sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
(p)  ☑  sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

|  | Yes | No |
|---|---|---|
| 6.  Do you *control* or are you *controlled* by the *related person*? | ○ | ⦿ |
| 7.  Are you and the *related person* under common *control*? | ⦿ | ○ |

8.  (a)  Does the *related person* act as a qualified custodian for your *clients* in connection with advisory services you provide to *clients*?   ○ ⦿

(b)  If you are registering or registered with the SEC and you have answered "yes," to question 8.(a) above, have you overcome the   ○ ⦿
presumption that you are not operationally independent (pursuant to rule 206(4)-2(d)(5)) from the *related person* and thus are not
required to obtain a surprise examination for your *clients'* funds or securities that are maintained at the *related person*?

(c)  If you have answered "yes" to question 8.(a) above, provide the location of the *related person's* office responsible for *custody* of your *clients'* assets:
Number and Street 1:                   Number and Street 2:
City:                State:            Country:            ZIP+4/Postal Code:
If this address is a private residence, check this box:  ☐

|  | Yes | No |
|---|---|---|
| 9.  (a)  If the *related person* is an investment adviser, is it exempt from registration? | ○ | ○ |

(b)  If the answer is yes, under what exemption?

10.  (a)  Is the *related person* registered with a *foreign financial regulatory authority* ?   ⦿ ○

(b)  If the answer is yes, list the name and country, in each of each *foreign financial regulatory authority* with which the *related person* is registered.

| Name of Country/English Name of *Foreign Financial Regulatory Authority* |
|---|
| South Korea - Financial Supervisory Commission / Financial Supervisory Service |

11.  Do you and the *related person* share any *supervised persons*?   ⦿ ○

12.  Do you and the *related person* share the same physical location?   ○ ⦿

---

1.  Legal Name of *Related Person*:
HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC

2.  Primary Business Name of *Related Person*:
HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC

3.  *Related Person's* SEC File Number (if any) (e.g., 801-, 8-, 866-, 802-)
-
or

Other

4.  *Related Person*
    (a)  *CRD* Number (if any):

    (b)  CIK Number(s) (if any):

                                   No Information Filed

5.  *Related Person* is: (check all that apply)
    (a)  ☐  broker-dealer, municipal securities dealer, or government securities broker or dealer
    (b)  ☐  other investment adviser (including financial planners)
    (c)  ☐  registered municipal advisor
    (d)  ☐  registered security-based swap dealer
    (e)  ☐  major security-based swap participant
    (f)  ☐  commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
    (g)  ☐  futures commission merchant
    (h)  ☐  banking or thrift institution
    (i)  ☐  trust company
    (j)  ☐  accountant or accounting firm
    (k)  ☐  lawyer or law firm
    (l)  ☐  insurance company or agency
    (m)  ☐  pension consultant
    (n)  ☐  real estate broker or dealer
    (o)  ☐  sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
    (p)  ☑  sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

                                                                                                      **Yes No**

6.  Do you *control* or are you *controlled* by the *related person*?                                  ○    ◉

7.  Are you and the *related person* under common *control*?                                           ◉    ○

8.  (a)  Does the *related person* act as a qualified custodian for your *clients* in connection with advisory services you provide to *clients*?    ○    ◉

    (b)  If you are registering or registered with the SEC and you have answered "yes," to question 8.(a) above, have you overcome the    ○    ○
         presumption that you are not operationally independent (pursuant to rule 206(4)-2(d)(5)) from the *related person* and thus are not
         required to obtain a surprise examination for your *clients'* funds or securities that are maintained at the *related person*?

    (c)  If you have answered "yes" to question 8.(a) above, provide the location of the *related person's* office responsible for *custody* of your *clients'* assets:
         Number and Street 1:                              Number and Street 2:
         City:                    State:                   Country:                  ZIP+4/Postal Code:
         If this address is a private residence, check this box: ☐

                                                                                                      **Yes No**

9.  (a)  If the *related person* is an investment adviser, is it exempt from registration?             ○    ○

    (b)  If the answer is yes, under what exemption?

10. (a)  Is the *related person* registered with a *foreign financial regulatory authority*?           ○    ◉

    (b)  If the answer is yes, list the name and country, in English of each *foreign financial regulatory authority* with which the *related person* is registered.
                                   No Information Filed

11. Do you and the *related person* share any *supervised persons*?                                    ◉    ○

12. Do you and the *related person* share the same physical location?                                  ◉    ○

---

**Item 7 *Private Fund* Reporting**

                                                                                                      **Yes No**

B.  Are you an adviser to any *private fund*?                                                          ◉    ○

    If "yes," then for each private fund that you advise, you must complete a Section 7.B.(1) of Schedule D, except in certain circumstances described in the next
    sentence and in Instruction 6 of the Instructions to Part 1A. If you are registered or applying for registration with the SEC or reporting as an SEC exempt
    reporting adviser, and another SEC-registered adviser or SEC exempt reporting adviser reports this information with respect to any such private fund in Section
    7.B.(1) of Schedule D of its Form ADV (e.g., if you are a subadviser), do not complete Section 7.B.(1) of Schedule D with respect to that private fund. You must,
    instead, complete Section 7.B.(2) of Schedule D.

    In either case, if you seek to preserve the anonymity of a private fund client by maintaining its identity in your books and records in numerical or alphabetical
    code, or similar designation, pursuant to rule 204-2(d), you may identify the private fund in Section 7.B.(1) or 7.B.(2) of Schedule D using the same code or
    designation in place of the fund's name.

A. PRIVATE FUND

**Information About the *Private Fund***

1.  (a)  Name of the *private fund*:

    HIGHLAND MULTI STRATEGY CREDIT FUND, L.P.

    (b)  *Private fund* identification number:
    (include the "805-" prefix also)

    805-9872591840

2.  Under the laws of what state or country is the *private fund* organized:

    State:                    Country:
    Delaware                  United States

3.  (a)  Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

| Name of General Partner, Manager, Trustee, or Director |
| --- |
| HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P. |

    (b)  If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| *Filing Adviser/Relying Adviser* Name |
| --- |
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

4.  The *private fund* (check all that apply; you must check at least one):
    ☐  (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940
    ☑  (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5.  List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| No Information Filed |
| --- |

                                                                                    **Yes  No**

6.  (a)  Is this a "master fund" in a master-feeder arrangement?                      ◉    ○

    (b)  If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| Name of *private fund* | *Private fund* identification number |
| --- | --- |
| HIGHLAND MULTI STRATEGY CREDIT FUND, LTD | 805-1960274517 |

                                                                                    **Yes  No**

    (c)  Is this a "feeder fund" in a master-feeder arrangement?                      ○    ◉

    (d)  If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

    Name of *private fund*:


    *Private fund* identification number:
    (include the "805-" prefix also)


NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| Additional Feeder Fund Information : 1 Record(s) Filed. |
| --- |

    7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

    (a)    Name of the *private fund*:

           HIGHLAND MULTI STRATEGY CREDIT FUND, LTD

(b)    *Private fund* identification number:

805-1960274517

(c)    Under the laws of what state or country is the *private fund* organized:

State:                          Country:

Cayman Islands

(d) (1)    Name(s) of General Partner, Manager, Trustee or Directors (or *persons* serving in a similar capacity):

| Name of General Partner, Manager, Trustee or Director |
|---|
| JAMES P. SEERY, JR. |

(d) (2)    If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*:

| Filing Adviser/Relying Adviser Name |
|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

(e)    The *private fund* (check all that apply; you must check at least one):

☐   (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

☑   (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

(f)    List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| Name of Country/English Name of *Foreign Financial Regulatory Authority* |
|---|
| Cayman Islands - Cayman Islands Stock Exchange Authority |
| Other - CAYMAN ISLANDS MONETARY AUTHORITY |

---

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

|  | | Yes | No |
|---|---|---|---|
| 8. (a)  Is this *private fund* a "fund of funds"? | | ○ | ● |

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

(b)  If yes, does the *private fund* invest in funds managed by you or by a *related person*?   ○  ○

|  | Yes | No |
|---|---|---|
| 9. During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)? | ○ | ● |

10. What type of fund is the *private fund*?

◉ hedge fund  ○ liquidity fund  ○ private equity fund  ○ real estate fund  ○ securitized asset fund  ○ venture capital fund  ○ Other *private fund*:

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

11. Current gross asset value of the *private fund*:

$ 48,917,448

**Ownership**

12. Minimum investment commitment required of an investor in the *private fund*:

$ 1,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13. Approximate number of the *private fund's* beneficial owners:

3

14. What is the approximate percentage of the private fund beneficially owned by you and your related persons:  
Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
63%
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 181 of 214    PageID 7779
Exhibit Exhibits 53-58    Page 635 of 692

15. (a) What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

                                                                          **Yes No**

    (b) If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*?  ○  ○

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

37%

## Your Advisory Services

                                                                          **Yes No**

17. (a) Are you a subadviser to this *private fund*?  ○  ◉

    (b) If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
| --- |

                                                                          **Yes No**

18. (a) Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*?  ○  ◉

    (b) If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
| --- |

                                                                           **Yes No**

19. Are your *clients* solicited to invest in the *private fund*?  ○  ◉

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

## Private Offering

                                                                          **Yes No**

21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933?  ○  ◉

22. If yes, provide the *private fund's* Form D file number (if any):

| No Information Filed |
| --- |

## B. SERVICE PROVIDERS

### Auditors

                                                                          **Yes No**

23. (a) (1) Are the *private fund's* financial statements subject to an annual audit?  ◉  ○

       (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP?  ◉  ○

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

**Additional Auditor Information : 1 Record(s) Filed.**

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

(b) Name of the auditing firm:
    COHEN AND COMPANY

(c) The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

| City: | State: | Country: |
| --- | --- | --- |
| CLEVELAND | Ohio | United States |

                                                                           **Yes No**

(d) Is the auditing firm an *independent public accountant*?  ◉  ○

(e) Is the auditing firm registered with the Public Company Accounting Oversight Board?

If yes, Public Company Accounting Oversight Board-Assigned Number:

925

(f) If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules?

**Yes   No**

(g) Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors?

(h) Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions?

○ Yes   ○ No   ○ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

## Prime Broker

**Yes   No**

24. (a) Does the *private fund* use one or more prime brokers?

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

| No Information Filed |
| --- |

## Custodian

**Yes   No**

25. (a) Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets?

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b) Legal name of custodian:
THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION

(c) Primary business name of custodian:
BANK OF NEW YORK

(d) The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):

| City: | State: | Country: |
| --- | --- | --- |
| HOUSTON | Texas | United States |

**Yes   No**

(e) Is the custodian a *related person* of your firm?

(f) If the custodian is a broker-dealer, provide its SEC registration number (if any):
-

CRD Number (if any):

(g) If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)
WFLLPEPC7FZXENRZV188

## Administrator

**Yes   No**

26. (a) Does the *private fund* use an administrator other than your firm?

If the answer to question 26.(a) is "yes," respond to questions (b) through below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

**Additional Administrator Information : 1 Record(s) Filed.**

> If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.
>
> (b)  Name of administrator:
>
> SEI INVESTMENT MANAGER SERVICES
>
> (c)  Location of administrator (city, state and country):
>
> | City: | State: | Country: |
> |---|---|---|
> | OAKS | Pennsylvania | United States |
>
> **Yes   No**
>
> (d)  Is the administrator a *related person* of your firm?    ○ ●
>
> (e)  Does the administrator prepare and send investor account statements to the *private fund*'s investors?
>
> ● Yes (provided to all investors)   ○ Some (provided to some but not all investors)   ○ No (provided to no investors)
>
> (f)  If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund*'s investors? If investor account statements are not sent to the (rest of the) *private fund*'s investors, respond "not applicable."

27. During your last fiscal year, what percentage of the *private fund*'s assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

0%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

**Marketers**

**Yes   No**

28. (a) Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?    ○ ●

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

> No Information Filed

---

A. PRIVATE FUND

**Information About the *Private Fund***

1. (a) Name of the *private fund*:

HIGHLAND RESTORATION CAPITAL PARTNERS MASTER, LP

(b) *Private fund* identification number:
(include the "805-" prefix also)

805-4547867916

2. Under the laws of what state or country is the *private fund* organized:

| State: | Country: |
|---|---|
| Delaware | United States |

3. (a) Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

| Name of General Partner, Manager, Trustee, or Director |
|---|
| HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC |

(b) If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| Filing Adviser/Relying Adviser Name |
| --- |
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

4. The *private fund* (check all that apply; you must check at least one):

☐ (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

☑ (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5. List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| No Information Filed |
| --- |

                                                                                                    **Yes  No**

6. (a) Is this a "master fund" in a master-feeder arrangement?                                        ○  ◉

(b) If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| No Information Filed |
| --- |

                                                                                                    **Yes  No**

(c) Is this a "feeder fund" in a master-feeder arrangement?                                          ○  ◉

(d) If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

Name of *private fund*:

*Private fund* identification number:
(include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7. If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| No Information Filed |
| --- |

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

                                                                                                    **Yes  No**

8. (a) Is this *private fund* a "fund of funds"?                                                      ○  ◉

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

(b) If yes, does the *private fund* invest in funds managed by you or by a *related person*?           ○  ○

                                                                                                    **Yes  No**

9. During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)?     ○  ◉

10. What type of fund is the *private fund*?

○ hedge fund  ○ liquidity fund  ◉ private equity fund  ○ real estate fund  ○ securitized asset fund  ○ venture capital fund  ○ Other *private fund*:

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

11. Current gross asset value of the *private fund*:

$ 28,526,244

**Ownership**

12. Minimum investment commitment required of an investor in the *private fund*:

$ 10,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the

13. Approximate number of the private fund's beneficial owners:

6

14. What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

44%

15. (a) What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

|  | Yes | No |
|---|---|---|

(b) If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*?   ○ ○

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

100%

**Your Advisory Services**

|  | Yes | No |
|---|---|---|

17. (a) Are you a subadviser to this *private fund*?   ○ ●

(b) If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|

18. (a) Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*?   ○ ●

(b) If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|

19. Are your *clients* solicited to invest in the *private fund*?   ○ ●

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

**Private Offering**

|  | Yes | No |
|---|---|---|

21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933?   ● ○

22. If yes, provide the *private fund's* Form D file number (if any):

| Form D file number |
|---|
| 021-120530 |

B. SERVICE PROVIDERS

**Auditors**

|  | Yes | No |
|---|---|---|

23. (a) (1) Are the *private fund's* financial statements subject to an annual audit?   ● ○

(2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP?   ● ○

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

**Additional Auditor Information : 1 Record(s) Filed.**

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

(b) Name of the auditing firm:

COHEN AND COMPANY

(c) The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

City: _____   State: _____   Country: _____

| | Yes | No |
|---|---|---|
| (d) Is the auditing firm an *independent public accountant*? | ⦿ | ○ |
| (e) Is the auditing firm registered with the Public Company Accounting Oversight Board? | ⦿ | ○ |

If yes, Public Company Accounting Oversight Board-Assigned Number:
925

| | Yes | No |
|---|---|---|
| (f) If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ⦿ | ○ |

| | Yes | No |
|---|---|---|
| (g) Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ⦿ | ○ |

(h) Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions?

⦿ Yes   ○ No   ○ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

### Prime Broker

| | Yes | No |
|---|---|---|
| 24. (a) Does the *private fund* use one or more prime brokers? | ○ | ⦿ |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

> No Information Filed

### Custodian

| | Yes | No |
|---|---|---|
| 25. (a) Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ⦿ | ○ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b) Legal name of custodian:
THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION

(c) Primary business name of custodian:
BANK OF NEW YORK

(d) The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):

City:   State:   Country:
HOUSTON   Texas   United States

| | Yes | No |
|---|---|---|
| (e) Is the custodian a *related person* of your firm? | ○ | ⦿ |

(f) If the custodian is a broker-dealer, provide its SEC registration number (if any):
-
CRD Number (if any):

(g) If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)

WFLLPEPC7FZXENRZV188

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Exhibit Exhibits 53-58   Page 641 of 692
Case 3:23-cv-02071-E   Document 23-33   Filed 12/07/23   Page 187 of 214   PageID 7785

### Administrator

|  | Yes | No |
|---|---|---|

26. (a)  Does the *private fund* use an administrator other than your firm?   ◉ Yes   ○ No

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b)  Name of administrator:

SEI INVESTMENT MANAGER SERVICES

(c)  Location of administrator (city, state and country):

| City: | State: | Country: |
|---|---|---|
| OAKS | Pennsylvania | United States |

|  | Yes | No |
|---|---|---|

(d)  Is the administrator a *related person* of your firm?   ○ Yes   ◉ No

(e)  Does the administrator prepare and send investor account statements to the *private fund*'s investors?
◉ Yes (provided to all investors)   ○ Some (provided to some but not all investors)   ○ No (provided to no investors)

(f)  If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund*'s investors? If investor account statements are not sent to the (rest of the) *private fund*'s investors, respond "not applicable."

27.  During your last fiscal year, what percentage of the *private fund*'s assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

0%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

### Marketers

|  | Yes | No |
|---|---|---|

28. (a)  Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?   ○ Yes   ◉ No

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

No Information Filed

---

A. PRIVATE FUND

**Information About the *Private Fund***

1. (a)  Name of the *private fund*:

HIGHLAND RESTORATION CAPITAL PARTNERS, L.P.

(b)  *Private fund* identification number:
(include the "805-" prefix also)

805-2103133324

2. Under the laws of what state or country is the *private fund* organized:

| State: | Country: |
|---|---|
| Delaware | United States |

3.  (a)  Name(s) of General Partner, Manager, Trustee, or Director Exhibit B (1 to 55's speaking in same capacity):

| Name of General Partner, Manager, Trustee, or Director |
| --- |
| HIGHLAND RESTORATION CAPITAL PARTNERS GP, LLC |

(b)  If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| Filing Adviser/Relying Adviser Name |
| --- |
| HIGHLAND CAPITAL MANAGEMENT, L.P. |

4.  The *private fund* (check all that apply; you must check at least one):
    ☐  (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940
    ☑  (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5.  List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| No Information Filed |
| --- |

            **Yes  No**

6.  (a)  Is this a "master fund" in a master-feeder arrangement?      ○  ◉

    (b)  If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| No Information Filed |
| --- |

            **Yes  No**

    (c)  Is this a "feeder fund" in a master-feeder arrangement?      ○  ◉

    (d)  If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

    Name of *private fund*:

    *Private fund* identification number:
    (include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7.  If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| No Information Filed |
| --- |

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

            **Yes  No**

8.  (a)  Is this *private fund* a "fund of funds"?      ○  ◉

    NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

    (b)  If yes, does the *private fund* invest in funds managed by you or by a *related person*?      ○  ○

            **Yes  No**

9.  During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)?      ○  ◉

10. What type of fund is the *private fund*?
    ○ hedge fund  ○ liquidity fund  ◉ private equity fund  ○ real estate fund  ○ securitized asset fund  ○ venture capital fund  ○ Other *private fund*:

    NOTE: For definitions of these fund types, please see *Instruction 6 of the Instructions to Part 1A*.

11. Current gross asset value of the *private fund*:
    $ 23,282,452

008181

**Ownership**

12. Minimum investment commitment required of an investor in the private fund:

$ 10,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13. Approximate number of the *private fund's* beneficial owners:

5

14. What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

50%

15. (a)  What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

|  | Yes | No |
|---|---|---|
| (b)  If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*? | ○ | ○ |

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

0%

**Your Advisory Services**

|  | Yes | No |
|---|---|---|
| 17. (a)  Are you a subadviser to this *private fund*? | ○ | ● |

(b)  If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 18. (a)  Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*? | ○ | ● |

(b)  If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 19.  Are your *clients* solicited to invest in the *private fund*? | ○ | ● |

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20.  Approximately what percentage of your *clients* has invested in the *private fund*?

0%

**Private Offering**

|  | Yes | No |
|---|---|---|
| 21.  Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933? | ● | ○ |

22.  If yes, provide the *private fund's* Form D file number (if any):

| Form D file number |
|---|
| 021-120513 |

B. SERVICE PROVIDERS

**Auditors**

|  | Yes | No |
|---|---|---|
| 23. (a)  (1) Are the *private fund's* financial statements subject to an annual audit? | ● | ○ |
|      (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP? | ● | ○ |

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

| Additional Auditor Information : 1 Record(s) Filed. |
|---|
| If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one |

008182

auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc

Case 3:23-cv-02071-E   Document 23-33   Filed 12/07/23   Page 190 of 214   PageID 7788
Exhibit Exhibits 53-58   Page 644 of 692

COHEN AND COMPANY

(c) The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

City:                          State:                          Country:
CLEVELAND                      Ohio                           United States

|  |  | Yes | No |
|---|---|---|---|
| (d) | Is the auditing firm an *independent public accountant*? | ◉ | ○ |
| (e) | Is the auditing firm registered with the Public Company Accounting Oversight Board? | ◉ | ○ |

If yes, Public Company Accounting Oversight Board-Assigned Number:
925

| (f) | If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ◉ | ○ |

| | | Yes | No |
|---|---|---|---|
| (g) | Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ◉ | ○ |
| (h) | Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions? | | |

◉ Yes   ○ No   ○ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

**Prime Broker**

|  |  | Yes | No |
|---|---|---|---|
| 24. (a) | Does the *private fund* use one or more prime brokers? | ○ | ◉ |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

| No Information Filed |
|---|

**Custodian**

|  |  | Yes | No |
|---|---|---|---|
| 25. (a) | Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ◉ | ○ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b) Legal name of custodian:
THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION

(c) Primary business name of custodian:
BANK OF NEW YORK

(d) The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):

City:                          State:                          Country:
HOUSTON                        Texas                          United States

|  |  | Yes | No |
|---|---|---|---|
| (e) | Is the custodian a *related person* of your firm? | ○ | ○ |

(f) If the custodian is a broker-dealer, provide its SEC registration number (if any):
-

008183

(g) If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)

WFLLPEPC7FZXENRZV188

---

## Administrator

|  | Yes | No |
|---|---|---|

26. (a) Does the *private fund* use an administrator other than your firm? ⦿ ○

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b) Name of administrator:

SEI INVESTMENT MANAGER SERVICES

(c) Location of administrator (city, state and country):

| City: | State: | Country: |
|---|---|---|
| OAKS | Pennsylvania | United States |

| | Yes | No |
|---|---|---|

(d) Is the administrator a *related person* of your firm? ○ ⦿

(e) Does the administrator prepare and send investor account statements to the *private fund's* investors?
⦿ Yes (provided to all investors)   ○ Some (provided to some but not all investors)   ○ No (provided to no investors)

(f) If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund's* investors? If investor account statements are not sent to the (rest of the) *private fund's* investors, respond "not applicable."

27. During your last fiscal year, what percentage of the *private fund's* assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

0%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

## Marketers

|  | Yes | No |
|---|---|---|

28. (a) Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes? ○ ⦿

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

No Information Filed

---

A. PRIVATE FUND

**Information About the *Private Fund***

1. (a) Name of the *private fund*:

STONEBRIDGE-HIGHLAND HEALTHCARE PRIVATE EQUITY FUND

(b) *Private fund* identification number:
(include the "805-" prefix also)

008184

2. Under the laws of what state or country is the *private fund* organized:

    State:                           Country:

                                            Korea, South

3. (a) Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

| No Information Filed |
|---|

   (b) If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| *Filing Adviser/Relying Adviser* **Name** |
|---|
| HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED |

4. The *private fund* (check all that apply; you must check at least one):

   ☐  (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

   ☑  (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5. List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| **Name of Country/English Name of** *Foreign Financial Regulatory Authority* |
|---|
| South Korea - Financial Supervisory Commission / Financial Supervisory Service |

                                                            **Yes  No**

6. (a) Is this a "master fund" in a master-feeder arrangement?        ○  ●

   (b) If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| No Information Filed |
|---|

                                                            **Yes  No**

   (c) Is this a "feeder fund" in a master-feeder arrangement?       ○  ●

   (d) If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

     Name of *private fund*:

     *Private fund* identification number:
     (include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7. If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| No Information Filed |
|---|

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

                                                            **Yes  No**

8. (a) Is this *private fund* a "fund of funds"?       ○  ●

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

   (b) If yes, does the *private fund* invest in funds managed by you or by a *related person*?   ○  ○

                                                            **Yes  No**

9. During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)?   ○  ○

10. What type of fund is the *private fund*?

    ○ hedge fund  ○ liquidity fund  ● private equity fund  ○ real estate fund  ○ securitized asset fund  ○ venture capital fund  ○ other private fund:

008185

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

Case 19-34054-sgj11   Doc 3818-4   Filed 06/05/23   Entered 06/05/23 22:10:41   Desc
Exhibit Exhibits 53-58   Page 647 of 692

Case 3:23-cv-02071-E   Document 23-33   Filed 12/07/23   Page 193 of 214   PageID 7791

11. Current gross asset value of the *private fund*:

$ 95,022,163

**Ownership**

12. Minimum investment commitment required of an investor in the *private fund*:

$ 0

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13. Approximate number of the *private fund's* beneficial owners:

7

14. What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

6%

15. (a)  What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

0%

|  | Yes | No |
|---|---|---|
| (b) If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*? | ○ | ○ |

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

100%

**Your Advisory Services**

|  | Yes | No |
|---|---|---|
| 17. (a)  Are you a subadviser to this *private fund*? | ○ | ● |

(b) If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 18. (a)  Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*? | ○ | ● |

(b) If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|
| 19. Are your *clients* solicited to invest in the *private fund*? | ○ | ● |

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

**Private Offering**

|  | Yes | No |
|---|---|---|
| 21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933? | ○ | ● |

22. If yes, provide the *private fund's* Form D file number (if any):

| No Information Filed |
|---|

B. SERVICE PROVIDERS

**Auditors**

|  | Yes | No |
|---|---|---|
| 23. (a) (1) Are the *private fund's* financial statements subject to an annual audit? | ● | ○ |
| (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP? | ○ | ○ |

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm,

008186

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Additional Auditor Information : 1 Record Filed Exhibits 53-58    Page 648 of 692

Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 194 of 214    PageID 7792

you must complete questions (b) through (f) separately for each auditing firm.

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

(b)  Name of the auditing firm:

DELOITTE ANJIN, LCC

(c)  The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

City:                              State:                              Country:
SEOUL                                                                Korea, South

|   |   | Yes | No |
|---|---|---|---|
| (d) | Is the auditing firm an *independent public accountant*? | ● | ○ |
| (e) | Is the auditing firm registered with the Public Company Accounting Oversight Board? | ○ | ● |
|   | If yes, Public Company Accounting Oversight Board-Assigned Number: |   |   |
| (f) | If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ○ | ○ |

|   |   | Yes | No |
|---|---|---|---|
| (g) | Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ● | ○ |

(h)  Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions?

● Yes   ○ No   ○ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

<u>**Prime Broker**</u>

|   |   | Yes | No |
|---|---|---|---|
| 24. (a) | Does the *private fund* use one or more prime brokers? | ○ | ● |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

No Information Filed

<u>**Custodian**</u>

|   |   | Yes | No |
|---|---|---|---|
| 25. (a) | Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ● | ○ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

**Additional Custodian Information : 1 Record(s) Filed.**

If the answer to question 25.(a) is "yes," respond to questions (b) through g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

(b)  Legal name of custodian:
KEB HANA BANK

(c)  Primary business name of custodian:
KEB HANA BANK

(d)  The location of the custodian's office responsible for *custody* of the *private fund's* assets (city, state and country):

City:                              State:                              Country:
SEOUL                                                                Korea, South

008187

Yes  No

(e)  Is the custodian a *related person* of your firm?

(f)  If the custodian is a broker-dealer, provide its SEC registration number (if any):
-

CRD Number (if any):

(g)  If the custodian is not a broker-dealer, or is a broker-dealer but does not have an SEC registration number, provide its *legal entity identifier* (if any)

## Administrator

| | | Yes | No |
|---|---|---|---|

26.  (a)  Does the *private fund* use an administrator other than your firm?

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b)  Name of administrator:
SHINHAN AITAS

(c)  Location of administrator (city, state and country):

| City: | State: | Country: |
|---|---|---|
| SEOUL | | Korea, South |

|  | Yes | No |
|---|---|---|

(d)  Is the administrator a *related person* of your firm?

(e)  Does the administrator prepare and send investor account statements to the *private fund*'s investors?
◉ Yes (provided to all investors)   ○ Some (provided to some but not all investors)   ○ No (provided to no investors)

(f)  If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund*'s investors? If investor account statements are not sent to the (rest of the) *private fund*'s investors, respond "not applicable."

27.  During your last fiscal year, what percentage of the *private fund*'s assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

30%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

## Marketers

| | | Yes | No |
|---|---|---|---|

28.  (a)  Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

No Information Filed

Funds per Page:  15    Total Funds: 4

**SECTION 7.B.(2)** *Private Fund* **Reporting**

008188

**Item 8 Participation or Interest in *Client* Transactions**

In this Item, we request information about your participation and interest in your *clients*' transactions. This information identifies additional areas in which conflicts of interest may occur between you and your *clients*. Newly-formed advisers should base responses to these questions on the types of participation and interest that you expect to engage in during the next year.

Like Item 7, Item 8 requires you to provide information about you and your *related persons*, including foreign affiliates.

**Proprietary Interest in *Client* Transactions**

|  |  | Yes | No |
|---|---|---|---|
| A. | Do you or any *related person*: | | |
| (1) | buy securities for yourself from advisory *clients*, or sell securities you own to advisory *clients* (principal transactions)? | ● | ○ |
| (2) | buy or sell for yourself securities (other than shares of mutual funds) that you also recommend to advisory *clients*? | ● | ○ |
| (3) | recommend securities (or other investment products) to advisory *clients* in which you or any *related person* has some other proprietary (ownership) interest (other than those mentioned in Items 8.A.(1) or (2))? | ● | ○ |

**Sales Interest in *Client* Transactions**

|  |  | Yes | No |
|---|---|---|---|
| B. | Do you or any *related person*: | | |
| (1) | as a broker-dealer or registered representative of a broker-dealer, execute securities trades for brokerage customers in which advisory *client* securities are sold to or bought from the brokerage customer (agency cross transactions)? | ○ | ● |
| (2) | recommend to advisory *clients*, or act as a purchaser representative for advisory *clients* with respect to, the purchase of securities for which you or any *related person* serves as underwriter or general or managing partner? | ● | ○ |
| (3) | recommend purchase or sale of securities to advisory *clients* for which you or any *related person* has any other sales interest (other than the receipt of sales commissions as a broker or registered representative of a broker-dealer)? | ● | ○ |

**Investment or Brokerage Discretion**

|  |  | Yes | No |
|---|---|---|---|
| C. | Do you or any *related person* have *discretionary authority* to determine the: | | |
| (1) | securities to be bought or sold for a *client's* account? | ● | ○ |
| (2) | amount of securities to be bought or sold for a *client's* account? | ● | ○ |
| (3) | broker or dealer to be used for a purchase or sale of securities for a *client's* account? | ● | ○ |
| (4) | commission rates to be paid to a broker or dealer for a *client's* securities transactions? | ● | ○ |
| D. | If you answer "yes" to C.(3) above, are any of the brokers or dealers *related persons*? | ○ | ● |
| E. | Do you or any *related person* recommend brokers or dealers to *clients*? | ● | ○ |
| F. | If you answer "yes" to E. above, are any of the brokers or dealers *related persons*? | ○ | ● |
| G. (1) | Do you or any *related person* receive research or other products or services other than execution from a broker-dealer or a third party ("soft dollar benefits") in connection with *client* securities transactions? | ○ | ● |
| (2) | If "yes" to G.(1) above, are all the "soft dollar benefits" you or any *related persons* receive eligible "research or brokerage services" under section 28(e) of the Securities Exchange Act of 1934? | ○ | ● |
| H. (1) | Do you or any *related person*, directly or indirectly, compensate any *person* that is not an *employee* for *client* referrals? | ○ | ● |
| (2) | Do you or any *related person*, directly or indirectly, provide any *employee* compensation that is specifically related to obtaining *clients* for the firm (cash or non-cash compensation in addition to the *employee's* regular salary)? | ○ | ● |
| I. | Do you or any *related person*, including any *employee*, directly or indirectly, receive compensation from any *person* (other than you or any *related person*) for *client* referrals? | ○ | ● |

*In your response to Item 8.I., do not include the regular salary you pay to an employee.*

*In responding to Items 8.H. and 8.I., consider all cash and non-cash compensation that you or a related person gave to (in answering Item 8.H.) or received from (in answering Item 8.I.) any person in exchange for client referrals, including any bonus that is based, at least in part, on the number or amount of client referrals.*

**Item 9 Custody**

In this Item, we ask you whether you or a *related person* has *custody* of client (other than *clients* that are investment companies registered under the Investment Company Act of 1940) assets and about your custodial practices.

|  |  | Yes | No |
|---|---|---|---|
| A. (1) | Do you have *custody* of any advisory *clients'*: | | |
| (a) | cash or bank accounts? | ● | ○ |
| (b) | securities? | ● | ○ |

*If you are registering or registered with the SEC, answer "No" to Item 9.A.(1)(a) and (b) if you have custody solely because (i) you deduct your advisory fees*

008189

*directly from your clients' accounts, or (ii) a related person has custody of client assets in connection with advisory services you provide to clients, but you have overcome the presumption that you are not operationally independent (under rule 206(4)-2(b)(1)) from the related person.*

(2)  If you checked "yes" to Item 9.A.(1)(a) or (b), what is the approximate amount of *client* funds and securities and total number of *clients* for which you have *custody*:

U.S. Dollar Amount

(a) $ 100,726,146

Total Number of *Clients*

(b) 3

*If you are registering or registered with the SEC and you have custody solely because you deduct your advisory fees directly from your clients' accounts, do not include the amount of those assets and the number of those clients in your response to Item 9.A.(2). If your related person has custody of client assets in connection with advisory services you provide to clients, do not include the amount of those assets and number of those clients in your response to 9.A.(2). Instead, include that information in your response to Item 9.B.(2).*

B.  (1)  In connection with advisory services you provide to *clients*, do any of your *related persons* have *custody* of any of your advisory *clients'*:  **Yes  No**

(a)  cash or bank accounts?   ○  ●

(b)  securities?   ○  ●

*You are required to answer this item regardless of how you answered Item 9.A.(1)(a) or (b).*

(2)  If you checked "yes" to Item 9.B.(1)(a) or (b), what is the approximate amount of *client* funds and securities and total number of *clients* for which your *related persons* have *custody*:

U.S. Dollar Amount

(a) $

Total Number of *Clients*

(b)

C.  If you or your *related persons* have *custody* of *client* funds or securities in connection with advisory services you provide to *clients*, check all the following that apply:

(1)  A qualified custodian(s) sends account statements at least quarterly to the investors in the pooled investment vehicle(s) you manage.  ☐

(2)  An *independent public accountant* audits annually the pooled investment vehicle(s) that you manage and the audited financial statements are distributed to the investors in the pools.  ☑

(3)  An *independent public accountant* conducts an annual surprise examination of *client* funds and securities.  ☐

(4)  An *independent public accountant* prepares an internal control report with respect to custodial services when you or your *related persons* are qualified custodians for *client* funds and securities.  ☐

*If you checked Item 9.C.(2), C.(3) or C.(4), list in Section 9.C. of Schedule D the accountants that are engaged to perform the audit or examination or prepare an internal control report. (If you checked Item 9.C.(2), you do not have to list auditor information in Section 9.C. of Schedule D if you already provided this information with respect to the private funds you advise in Section 7.B.(1) of Schedule D).*

D.  Do you or your *related person(s)* act as qualified custodians for your *clients* in connection with advisory services you provide to *clients*?  **Yes  No**

(1)  you act as a qualified custodian   ○  ●

(2)  your *related person(s)* act as qualified custodian(s)   ○  ●

*If you checked "yes" to Item 9.D.(2), all related persons that act as qualified custodians (other than any mutual fund transfer agent pursuant to rule 206(4)-2(b)(1)) must be identified in Section 7.A. of Schedule D, regardless of whether you have determined the related person to be operationally independent under rule 206(4)-2 of the Advisers Act.*

E.  If you are filing your *annual updating amendment* and you were subject to a surprise examination by an *independent public accountant* during your last fiscal year, provide the date (MM/YYYY) the examination commenced:

F.  If you or your *related persons* have *custody* of *client* funds or securities, how many *persons*, including, but not limited to, you and your *related persons*, act as qualified custodians for your *clients* in connection with advisory services you provide to *clients*?

1

---

**SECTION 9.C.** *Independent Public Accountant*

You must complete the following information for each *independent public accountant* engaged to perform a surprise examination, perform an audit of a pooled investment vehicle that you manage, or prepare an internal control report. You must complete a separate Schedule D Section 9.C. for each *independent public accountant*.

(1)  Name of the *independent public accountant*:

COHEN AND COMPANY

(2)  The location of the *independent public accountant's* office responsible for the services provided:

Number and Street 1:                        Number and Street 2:

008190

1350 EUCLID AVE                    #800
Case 19-34054-sgj11    Doc 3818    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
City:                                                         ZIP+4/Postal Code:
CLEVELAND            State:    Exhibit Exhibits 53-58    Page 652 of 692

Case 3:23-cv-02071-E    Document 23-35    Filed 12/07/23    Page 198 of 214    PageID 7796

|  | | Yes | No |
|---|---|---|---|

(3)  Is the *independent public accountant* registered with the Public Company Accounting Oversight Board?  ⊙  ○

If "yes," Public Company Accounting Oversight Board-Assigned Number:
925

(4)  If "yes" to (3) above, is the *independent public accountant* subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules?  ⊙  ○

(5)  The *independent public accountant* is engaged to:
A. ☑ audit a pooled investment vehicle
B. ☐ perform a surprise examination of *clients'* assets
C. ☐ prepare an internal control report

(6)  Since your last *annual updating amendment*, did all of the reports prepared by the *independent public accountant* that audited the pooled investment vehicle or that examined internal controls contain unqualified opinions?

⊙ Yes

○ No

○ Report Not Yet Received

*If you check "Report Not Yet Received", you must promptly file an amendment to your Form ADV to update your response when the accountant's report is available.*

---

**Item 10 Control Persons**

In this Item, we ask you to identify every *person* that, directly or indirectly, *controls* you. If you are filing an *umbrella registration*, the information in Item 10 should be provided for the *filing adviser* only.

If you are submitting an initial application or report, you must complete Schedule A and Schedule B. Schedule A asks for information about your direct owners and executive officers. Schedule B asks for information about your indirect owners. If this is an amendment and you are updating information you reported on either Schedule A or Schedule B (or both) that you filed with your initial application or report, you must complete Schedule C.

|  | | Yes | No |
|---|---|---|---|

A.  Does any *person* not named in Item 1.A. or Schedules A, B, or C, directly or indirectly, *control* your management or policies?  ○  ⊙

If yes, complete *Section 10.A. of Schedule D.*

B.  If any *person* named in Schedules A, B, or C or in Section 10.A. of Schedule D is a public reporting company under Sections 12 or 15(d) of the Securities Exchange Act of 1934, please complete *Section 10.B. of Schedule D*.

---

**SECTION 10.A. *Control Persons***

No Information Filed

---

**SECTION 10.B. *Control Person* Public Reporting Companies**

No Information Filed

---

**Item 11 Disclosure Information**

In this Item, we ask for information about your disciplinary history and the disciplinary history of all your *advisory affiliates*. We use this information to determine whether to grant your application for registration, to decide whether to revoke your registration or to place limitations on your activities as an investment adviser, and to identify potential problem areas to focus on during our on-site examinations. One event may result in "yes" answers to more than one of the questions below. In accordance with General Instruction 5 to Form ADV, "you" and "your" include the *filing adviser* and all *relying advisers* under an *umbrella registration*.

Your *advisory affiliates* are: (1) all of your current *employees* (other than *employees* performing only clerical, administrative, support or similar functions); (2) all of your officers, partners, or directors (or any *person* performing similar functions); and (3) all *persons* directly or indirectly *controlling* you or *controlled* by you. If you are a "separately identifiable department or division" (SID) of a bank, see the Glossary of Terms to determine who your *advisory affiliates* are.

*If you are registered or registering with the SEC or if you are an exempt reporting adviser, you may limit your disclosure of any event listed in Item 11 to ten years following the date of the event. If you are registered or registering with a state, you must respond to the questions as posed; you may, therefore, limit your disclosure to ten years following the date of an event only in responding to Items 11.A.(1), 11.A.(2), 11.B.(1), 11.B.(2), 11.D.(4), and 11.H.(1)(a). For purposes of calculating this ten-year period, the date of an event is the date the final order, judgment, or decree was entered, or the date any rights of appeal from preliminary*

008191

orders, judgments, or decrees lapsed.

You must complete the appropriate Disclosure Reporting Page ("DRP") for "yes" answers to the questions in this Item 11.

|  | Yes | No |
|---|---|---|
| Do any of the events below involve you or any of your *supervised persons*? | ○ | ● |

**For "yes" answers to the following questions, complete a Criminal Action DRP:**

| | | Yes | No |
|---|---|---|---|
| A. | In the past ten years, have you or any *advisory affiliate*: | | |
| (1) | been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*? | ○ | ● |
| (2) | been *charged* with any *felony*? | ○ | ● |

*If you are registered or registering with the SEC, or if you are reporting as an exempt reporting adviser, you may limit your response to Item 11.A.(2) to charges that are currently pending.*

| | | Yes | No |
|---|---|---|---|
| B. | In the past ten years, have you or any *advisory affiliate*: | | |
| (1) | been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to a *misdemeanor* involving: investments or an *investment-related* business, or any fraud, false statements, or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ● |
| (2) | been *charged* with a *misdemeanor* listed in Item 11.B.(1)? | ○ | ● |

*If you are registered or registering with the SEC, or if you are reporting as an exempt reporting adviser, you may limit your response to Item 11.B.(2) to charges that are currently pending.*

**For "yes" answers to the following questions, complete a Regulatory Action DRP:**

| | | Yes | No |
|---|---|---|---|
| C. | Has the SEC or the Commodity Futures Trading Commission (CFTC) ever: | | |
| (1) | *found* you or any *advisory affiliate* to have made a false statement or omission? | ○ | ● |
| (2) | *found* you or any *advisory affiliate* to have been *involved* in a violation of SEC or CFTC regulations or statutes? | ● | ○ |
| (3) | *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ● |
| (4) | entered an *order* against you or any *advisory affiliate* in connection with *investment-related* activity? | ● | ○ |
| (5) | imposed a civil money penalty on you or any *advisory affiliate*, or *ordered* you or any *advisory affiliate* to cease and desist from any activity? | ● | ○ |
| D. | Has any other federal regulatory agency, any state regulatory agency, or any *foreign financial regulatory authority*: | | |
| (1) | ever *found* you or any *advisory affiliate* to have made a false statement or omission, or been dishonest, unfair, or unethical? | ○ | ● |
| (2) | ever *found* you or any *advisory affiliate* to have been *involved* in a violation of *investment-related* regulations or statutes? | ○ | ● |
| (3) | ever *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ● |
| (4) | in the past ten years, entered an *order* against you or any *advisory affiliate* in connection with an *investment-related* activity? | ○ | ● |
| (5) | ever denied, suspended, or revoked your or any *advisory affiliate's* registration or license, or otherwise prevented you or any *advisory affiliate*, by *order*, from associating with an *investment-related* business or restricted your or any *advisory affiliate's* activity? | ○ | ● |
| E. | Has any *self-regulatory organization* or commodities exchange ever: | | |
| (1) | *found* you or any *advisory affiliate* to have made a false statement or omission? | ○ | ● |
| (2) | *found* you or any *advisory affiliate* to have been *involved* in a violation of its rules (other than a violation designated as a "*minor rule violation*" under a plan approved by the SEC)? | ○ | ● |
| (3) | *found* you or any *advisory affiliate* to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ● |
| (4) | disciplined you or any *advisory affiliate* by expelling or suspending you or the *advisory affiliate* from membership, barring or suspending you or the *advisory affiliate* from association with other members, or otherwise restricting your or the *advisory affiliate's* activities? | ○ | ● |
| F. | Has an authorization to act as an attorney, accountant, or federal contractor granted to you or any *advisory affiliate* ever been revoked or suspended? | ○ | ● |
| G. | Are you or any *advisory affiliate* now the subject of any regulatory *proceeding* that could result in a "yes" answer to any part of Item 11.C., 11.D., or 11.E.? | ○ | ● |

**For "yes" answers to the following questions, complete a Civil Judicial Action DRP:**

| | | Yes | No |
|---|---|---|---|
| H. (1) | Has any domestic or foreign court: | | |
| (a) | in the past ten years, *enjoined* you or any *advisory affiliate* in connection with any *investment-related* activity? | ○ | ● |
| (b) | ever *found* that you or any *advisory affiliate* were *involved* in a violation of *investment-related* statutes or regulations? | ○ | ● |
| (c) | ever dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you or any *advisory affiliate* by a state or *foreign financial regulatory authority*? | ○ | ● |

008192

(2) Are you or any *advisory affiliate* now the subject of any civil *proceeding* that could result in a "yes" answer to any part of Item 11.H.(1)?

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Exhibit Exhibits 53-58    Page 654 of 692

Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 200 of 214    PageID 7798

## Item 12 Small Businesses

The SEC is required by the Regulatory Flexibility Act to consider the effect of its regulations on small entities. In order to do this, we need to determine whether you meet the definition of "small business" or "small organization" under rule 0-7.

Answer this Item 12 only if you are registered or registering with the SEC **and** you indicated in response to Item 5.F.(2)(c) that you have regulatory assets under management of less than $25 million. You are not required to answer this Item 12 if you are filing for initial registration as a state adviser, amending a current state registration, or switching from SEC to state registration.

For purposes of this Item 12 only:

- Total Assets refers to the total assets of a firm, rather than the assets managed on behalf of *clients*. In determining your or another *person's* total assets, you may use the total assets shown on a current balance sheet (but use total assets reported on a consolidated balance sheet with subsidiaries included, if that amount is larger).
- *Control* means the power to direct or cause the direction of the management or policies of a *person*, whether through ownership of securities, by contract, or otherwise. Any *person* that directly or indirectly has the right to vote 25 percent or more of the voting securities, or is entitled to 25 percent or more of the profits, of another *person* is presumed to *control* the other *person*.

|  | Yes | No |
|---|---|---|
| A.   Did you have total assets of $5 million or more on the last day of your most recent fiscal year? | ○ | ○ |

*If "yes," you do not need to answer Items 12.B. and 12.C.*

B.   Do you:

|  | | |
|---|---|---|
| (1) *control* another investment adviser that had regulatory assets under management (calculated in response to Item 5.F.(2)(c) of Form ADV) of $25 million or more on the last day of its most recent fiscal year? | ○ | ○ |
| (2) *control* another *person* (other than a natural person) that had total assets of $5 million or more on the last day of its most recent fiscal year? | ○ | ○ |

C.   Are you:

|  | | |
|---|---|---|
| (1) *controlled* by or under common *control* with another investment adviser that had regulatory assets under management (calculated in response to Item 5.F.(2)(c) of Form ADV) of $25 million or more on the last day of its most recent fiscal year? | ○ | ○ |
| (2) *controlled* by or under common *control* with another *person* (other than a natural person) that had total assets of $5 million or more on the last day of its most recent fiscal year? | ○ | ○ |

## Schedule A

**Direct Owners and Executive Officers**

1. Complete Schedule A only if you are submitting an initial application or report. Schedule A asks for information about your direct owners and executive officers. Use Schedule C to amend this information.
2. Direct Owners and Executive Officers. List below the names of:
   (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, Chief Compliance Officer(Chief Compliance Officer is required if you are registered or applying for registration and cannot be more than one individual), director, and any other individuals with similar status or functions;
   (b) if you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);
   Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.
   (c) if you are organized as a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;
   (d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and
   (e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.
3. Do you have any indirect owners to be reported on Schedule B?  ○ Yes  ○ No
4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.
5. Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).
6. Ownership codes are:    NA - less than 5%        B - 10% but less than 25%    D - 50% but less than 75%
                                            A - 5% but less than 10%      C - 25% but less than 50%    E - 75% or more
7. (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.
   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.
   (c) Complete each column.

008193

| FULL LEGAL NAME (Individuals: | DE/FE/I | Title or Status | Date Title or Status | Ownership | Control | PR | CRD No. If None: S.S. No. and |

| Last Name, First Name, Middle Name) | | | Acquired MM/YYYY | Code | Person | Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|
| SURGENT, THOMAS, COLLIN | CHIEF COMPLIANCE OFFICER AND GENERAL COUNSEL | | | NA | Y | N | 5424405 |
| Seery, James, Patrick | I | CHIEF EXECUTIVE OFFICER AND CHIEF RESTRUCTURING OFFICER | 03/2020 | NA | Y | N | 4531254 |
| Klos, David, Kelly | I | CHIEF FINANCIAL OFFICER AND CHIEF OPERATING OFFICER | 02/2021 | NA | Y | N | 6590515 |
| HIGHLAND CLAIMANT TRUST | DE | SOLE LIMITED PARTNER | 08/2021 | E | Y | N | |
| HCMLP GP LLC | DE | GENERAL PARTNER | 08/2021 | NA | Y | N | |

---

### Schedule B

#### Indirect Owners

1. Complete Schedule B only if you are submitting an initial application or report. Schedule B asks for information about your indirect owners; you must first complete Schedule A, which asks for information about your direct owners. Use Schedule C to amend this information.

2. Indirect Owners. With respect to each owner listed on Schedule A (except individual owners), list below:

   (a) in the case of an owner that is a corporation, each of its shareholders that beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 25% or more of a class of a voting security of that corporation;

   For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

   (b) in the case of an owner that is a partnership, <u>all</u> general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 25% or more of the partnership's capital;

   (c) in the case of an owner that is a trust, the trust and each trustee; and

   (d) in the case of an owner that is a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 25% or more of the LLC's capital, and (ii) if managed by elected managers, all elected managers.

3. Continue up the chain of ownership listing all 25% owners at each level. Once a public reporting company (a company subject to Sections 12 or 15(d) of the Exchange Act) is reached, no further ownership information need be given.

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner is an individual.

5. Complete the Status column by entering the owner's status as partner, trustee, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6. Ownership codes are:    C - 25% but less than 50%    E - 75% or more
                           D - 50% but less than 75%    F - Other (general partner, trustee, or elected manager)

7. (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

   (c) Complete each column.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Entity in Which Interest is Owned | Status | Date Status Acquired MM/YYYY | Ownership Code | Control Person | PR | CRD No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|---|
| Seery, James, Patrick | I | HIGHLAND CLAIMANT TRUST | CLAIMANT TRUSTEE | 08/2021 | F | Y | N | 4531254 |
| HIGHLAND CLAIMANT TRUST | DE | HCMLP GP LLC | MANAGING MEMBER | 08/2021 | E | Y | N | |

---

### Schedule D - Miscellaneous

You may use the space below to explain a response to an Item or to provide any other information.

CERTAIN MASTER TRADING PORTFOLIOS HAVE FEEDER ENTITIES OF WHICH RELATED PARTIES OF THE MANAGER ARE THE GENERAL PARTNER OR MANAGER. IN ADDITION, CERTAIN TRADING PORTFOLIOS HAVE SUBSIDIARY PORTFOLIOS OF WHICH RELATED PARTIES OF THE MANAGER ARE THE GENERAL PARTNER OR MANAGER. THE ASSETS UNDER MANAGEMENT FOR SUCH MASTER TRADING PORTFOLIOS IS REFLECTED IN THE ASSETS IN ITS FEEDER FUNDS. SIMILARLY, THE ASSETS UNDER MANAGEMENT FOR SUCH SUBSIDIARY TRADING PORTFOLIOS IS REFLECTED IN THE ASSETS OF THE RELATED MASTER TRADING PORTFOLIO. ALL PORTFOLIO DATA AS OF 12/31/2022.

---

### Schedule R

| SECTION 1 Identifying Information |
|---|
| Responses to this Section tell us who you (the *relying adviser*) are, where you are doing business, and how we can contact you. |
| A.   Your full legal name: HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED |

008194

B.    Name under which you primarily conduct your advisory business, if different from Section 1.A. above, or Item 1.A. of the *filing adviser's* Form ADV Part 1A.

C.    List any other business names and the jurisdictions in which you use them. Complete this question for each other business name.

| No Information Filed |
| --- |

*You do not have to include the names or jurisdictions of the filing adviser or other relying adviser(s) in response to this Section 1.C.*

D.    If you currently have, or ever had, a number ("*CRD* Number") assigned by the *FINRA's CRD* system or by the IARD system (other than the *filing adviser's CRD* number), your *CRD* number:

**295035**

| No Information Filed |
| --- |

*If you do not have a CRD number, skip this Section 1.D. Do not provide the CRD number of one of your officers, employees, or affiliates (including the filing adviser).*

E.    *Principal Office and Place of Business*

(1)    Address (do not use a P.O. Box):

☐ Same as the *filing adviser*.

Number and Street 1:                    Number and Street 2:
SEOUL FINANCE CENTER                    136 SEJONG-DAERO, JUNG-GU
City:                      State:            Country:                      ZIP+4/Postal Code:
SEOUL                                    Korea, South                    100-768

If this address is a private residence, check this box: ☐

(2)    Days of week that you normally conduct business at your *principal office and place of business:*
◉ Monday - Friday  ○ Other:

Normal business hours at this location:
7AM-6PM

(3)    Telephone number at this location:
972-628-4100

(4)    Facsimile number at this location, if any:
972-628-4147

F.    Mailing address, if different from your *principal office and place of business* address:

☐ Same as the *filing adviser*.

Number and Street 1:                    Number and Street 2:
City:                      State:            Country:                      ZIP+4/Postal Code:

If this address is a private residence, check this box: ☐

G.    Provide your *Legal Entity Identifier* if you have one:

*A legal entity identifier is a unique number that companies use to identify each other in the financial marketplace. You may not have a legal entity identifier.*

H.    If you have Central Index Key numbers assigned by the SEC ("CIK Numbers"), all of your CIK numbers:

| No Information Filed |
| --- |

**SECTION 2 SEC Registration**

Responses to this Section help us (and you) determine whether you are eligible to register with the SEC.

A. To be a *relying adviser*, you must be independently eligible to register (or remain registered) with the SEC. You must check **at least one** of the Sections 2.A.(1) through 2.A.(8), below. Part 1A Instruction 2 provides information to help you determine whether you may affirmatively respond to each of these items.

You (the *relying adviser*):

☐ (1) are a **large advisory firm** that either:

(a) has regulatory assets under management of $100 million (in U.S. dollars) or more; or

(b) has regulatory assets under management of $90 million (in U.S. dollars) or more at the time of filing its most recent *annual updating amendment* and is registered with the SEC;

☐ (2) are a **mid-sized advisory firm** that has regulatory assets under management of $25 million (in U.S. dollars) or more but less than $100 million (in U.S. dollars) and you are either:

(a) not required to be registered as an adviser with the *state securities authority* of the state where you maintain your *principal office and place of business*; or

(b) not subject to examination by the *state securities authority* of the state where you maintain your *principal office and place of business*;

*Click* HERE *for a list of states in which an investment adviser, if registered, would not be subject to examination by the state securities authority.*

(3) Reserved

☐ (4) have your *principal office and place of business* **outside the United States**;

☑ (5) are a **related adviser** under rule 203A-2(b) that *controls*, is *controlled* by, or is under common *control* with, an investment adviser that is registered with the SEC, and your *principal office and place of business* is the same as the registered adviser;

☐ (6) are an **adviser** relying on rule 203A-2(c) because you **expect to be eligible for SEC registration within 120 days**;

If you check this box, you must make both of the representations below:

☐ I am not registered or required to be registered with the SEC or a state securities authority and I have a reasonable expectation that I will be eligible to register with the SEC within 120 days after the date my registration with the SEC becomes effective.

☐ By submitting this Form ADV to the SEC, *the filing adviser* undertakes to file an amendment to this *umbrella registration* to remove this Schedule R if, on the 120th day after this application for *umbrella registration* with the SEC becomes effective, I would be prohibited by Section 203A(a) of the Advisers Act from registering with the SEC.

☐ (7) are a **multi-state adviser** that is required to register in 15 or more states and is relying on rule 203A-2(d);

If this is your initial filing as a relying adviser, you must make both of these representations:

☐ I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of 15 or more states to register as an investment adviser with the *state securities authorities* in those states.

☐ The *filing adviser* undertakes to file an amendment to this *umbrella registration* to remove this Schedule R if, at the time of the *annual updating amendment*, I would be required by the laws of fewer than 15 states to register as an investment adviser with the *state securities authorities* of those states.

If you are submitting your *annual updating amendment*, you must make this representation:

☐ Within 90 days prior to the date of filing this amendment, I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of at least 15 states to register as an investment adviser with the *state securities authorities* in those states.

☐ (8) have **received an SEC** *Order* exempting you from the prohibition against registration with the SEC. If you check this box, provide the following information:

Application Number:  803-        Date of *Order*:

☐ (9) are **no longer eligible** to remain registered with the SEC.

---

**SECTION 3 Form of Organization**

A.    How are you organized?

◉ Corporation

○ Sole Proprietorship

○ Limited Liability Partnership (LLP)

○ Partnership

○ Limited Liability Company (LLC)

○ Limited Partnership (LP)

○ Other (specify):

B.    In what month does your fiscal year end each year?

DECEMBER

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Exhibit Exhibits 53-58    Page 658 of 692
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 204 of 214    PageID 7802

C.   Under the laws of what state or country was your partnership formed?

State   Country

Korea, South

*If you are a partnership, provide the name of the state or country under whose laws your partnership was formed.*

---

## SECTION 4.A. Direct Owners and Executive Officers

In this Section 4, we ask you to identify each other *person* that, directly or indirectly, *controls* you.

(1) Section 4.A. asks for information about your direct owners and executive officers.

(2) Direct Owners and Executive Officers. List below the names of:

   (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, director and any other individuals with similar status or functions;

   (b) if you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);
   Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Section 4.A., a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

   (c) if you are organized as a partnership, <u>all</u> general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;

   (d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and

   (e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.

(3) Do you have any indirect owners to be reported on Section 4.B. below?   ◉ Yes   ○ No

(4) In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.

(5) Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

(6) Ownership codes are:    NA - less than 5%        B - 10% but less than 25%    D - 50% but less than 75%
                                          A - 5% but less than 10%    C - 25% but less than 50%    E - 75% or more

(7) (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does *not* have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

   (c) Complete each column.

   ☐ Check this box if you are filing this Form ADV through the IARD system and want the IARD system to pre-fill Schedule B with the same indirect owners you have provided in Schedule B for your filing adviser. If you check the box, the system will pre-fill these fields for you, but you will be able to manually edit the information after it is pre-filled and before you submit your filing.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Title or Status | Date Title or Status Acquired MM/YYYY | Ownership Code | Control Person | PR | CRD No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P. | DE | SHAREHOLDER | 06/2012 | E | Y | N | 110126 |
| PARK, JUN, BOM | I | REPRESENTATIVE DIRECTOR | 08/2012 | NA | Y | N | 6909096 |
| Seery, James, Patrick | I | DIRECTOR | 03/2021 | NA | Y | N | 4531254 |

---

## SECTION 4.B. Indirect Owners

(1) Section 4.B. asks for information about your indirect owners; you must first complete Section 4.A., which asks for information about your direct owners

(2) Indirect Owners. With respect to each owner listed in Section 4.A. (except individual owners), list below:

   (a) in the case of an owner that is a corporation, each of its shareholders that beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 25% or more of a class of a voting security of that corporation;

   For purposes of this Section, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

   (b) in the case of an owner that is a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 25% or more of the partnership's capital;

   (c) in the case of an owner that is a trust, the trust and each trustee; and

   (d) in the case of an owner that is a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have

(3) Continue up the chain of ownership listing all 25% or more owners at each level. Once a public reporting company (a company subject to Sections 12 or 15(d) of the Exchange Act) is reached, no further ownership information need be given.

(4) In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner is an individual.

(5) Complete the Status column by entering the owner's status as partner, trustee, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

(6) Ownership codes are:  C - 25% but less than 50%  E - 75% or more
   D - 50% but less than 75%  F - Other (general partner, trustee, or elected manager)

(7) (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the person does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

(b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

(c) Complete each column.

Check this box if you are filing this Form ADV through the IARD system and want the IARD system to pre-fill Schedule B with the same indirect owners you have provided in Schedule B for your filing adviser. If you check the box, the system will pre-fill these fields for you, but you will be able to manually edit the information after it is pre-filled and before you submit your filing.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Entity in Which Interest is Owned | Status | Date Status Acquired MM/YYYY | Ownership Code | *Control Person* | PR | *CRD* No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|---|
| HCMLP GP LLC | DE | HIGHLAND CAPITAL MANAGEMENT, L.P. | GENERAL PARTNER | 08/2021 | F | Y | N | |
| HIGHLAND CLAIMANT TRUST | DE | HIGHLAND CAPITAL MANAGEMENT, L.P. | SOLE LIMITED PARTNER | 08/2021 | E | Y | N | |
| HIGHLAND CLAIMANT TRUST | DE | HCMLP GP LLC | MANAGING MEMBER | 08/2021 | F | Y | N | |
| Seery, James, Patrick | I | HIGHLAND CLAIMANT TRUST | CLAIMANT TRUSTEE | 08/2021 | F | Y | N | 4531254 |

---

**SECTION 4.C.** *Control Persons*

C. Does any *person* not named in Section 1.A., Section 4.A., or Section 4.B. directly or indirectly, *control* your management or policies?   Yes ○   No ◉

If yes, you must complete the information below for each *control person* not named in Section 1.A., Section 4.A., or Section 4.B. that directly or indirectly *controls* your management or policies.

No Information Filed

---

**SECTION 4.D.** *Control Persons* **- Public Reporting Companies**

No Information Filed

---

**DRP Pages**

---

**CRIMINAL DISCLOSURE REPORTING PAGE (ADV)**

No Information Filed

---

**REGULATORY ACTION DISCLOSURE REPORTING PAGE (ADV)**

*GENERAL INSTRUCTIONS*

This Disclosure Reporting Page (DRP ADV) is an ○ INITIAL *OR* ◉ AMENDED response used to report details for affirmative responses to Items 11.C., 11.D., 11.E., 11.F. or 11.G. of Form ADV.

Regulatory Action

Check item(s) being responded to:

☐ 11.C(1)   ☑ 11.C(2)   ☐ 11.C(3)   ☑ 11.C(4)   ☑ 11.C(5)

008198

☐ 11.D(1)  ☐ 11.D(2)  ☐ 11.D(3)  ☐ 11.D(4)  ☐ 11.D(5)
☐ 11.E(1)  ☐ 11.E(2)  ☐ 11.E(3)  ☐ 11.E(4)
☐ 11.F.

Case 19-34054-sgj11    Doc 3818-4    Filed 06/05/23    Entered 06/05/23 22:10:41    Desc
Exhibit Exhibits 53-58    Page 660 of 692

Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 206 of 214    PageID 7804

Use a separate DRP for each event or *proceeding* . The same event or *proceeding* may be reported for more than one *person* or entity using one DRP. File with a completed Execution Page.

One event may result in more than one affirmative answer to Items 11.C., 11.D., 11.E., 11.F. or 11.G. Use only one DRP to report details related to the same event. If an event gives rise to actions by more than one regulator, provide details for each action on a separate DRP.

| PART I |
|---|

A.    The *person(s)* or entity(ies) for whom this DRP is being filed is (are):

     ⦿ You (the advisory firm)

     ○ You and one or more of your *advisory affiliates*

     ○ One or more of your *advisory affiliates*

If this DRP is being filed for an *advisory affiliate*, give the full name of the *advisory affiliate* below (for individuals, Last name, First name, Middle name). If the *advisory affiliate* has a *CRD* number, provide that number. If not, indicate "non-registered" by checking the appropriate box.

ADV DRP - *ADVISORY AFFILIATE*

No Information Filed

☐ This DRP should be removed from the ADV record because the *advisory affiliate(s)* is no longer associated with the adviser.
☐ This DRP should be removed from the ADV record because: (1) the event or *proceeding* occurred more than ten years ago or (2) the adviser is registered or applying for registration with the SEC or reporting as an *exempt reporting adviser* with the SEC and the event was resolved in the adviser's or *advisory affiliate's* favor.

If you are registered or registering with a *state securities authority* , you may remove a DRP for an event you reported only in response to Item 11.D(4), and only if that event occurred more than ten years ago. If you are registered or registering with the SEC, you may remove a DRP for any event listed in Item 11 that occurred more than ten years ago.

☐ This DRP should be removed from the ADV record because it was filed in error, such as due to a clerical or data-entry mistake. Explain the circumstances:

B.    If the *advisory affiliate* is registered through the IARD system or *CRD* system, has the *advisory affiliate* submitted a DRP (with Form ADV, BD or U-4) to the IARD or *CRD* for the event? If the answer is "Yes," no other information on this DRP must be provided.

     ○ Yes    ○ No

NOTE: The completion of this form does not relieve the *advisory affiliate* of its obligation to update its IARD or *CRD* records.

| PART II |
|---|

1.    Regulatory Action initiated by:

     ⦿ SEC    ○ Other Federal    ○ State    ○ *SRO*    ○ Foreign

(Full name of regulator, *foreign financial regulatory authority*, federal, state, or *SRO*)
U.S. SECURITIES AND EXCHANGE COMMISSION

2.    Principal Sanction:
Cease and Desist
Other Sanctions:
CENSURE, CIVIL AND ADMINISTRATIVE PENALTY(IES)/FINE(S), UNDERTAKINGS

3.    Date Initiated (MM/DD/YYYY):
09/25/2014  ⦿ Exact    ○ Explanation
If not exact, provide explanation:

4.    Docket/Case Number:
ADMINISTRATIVE PROCEEDING FILE NO. 3-16169

5.    *Advisory Affiliate* Employing Firm when activity occurred which led to the regulatory action (if applicable):

6.    Principal Product Type:
No Product
Other Product Types:

008199

7. Describe the allegations related to this regulatory action (your response must fit within the space provided):

ON SEPTEMBER 25, 2014, HIGHLAND CAPITAL MANAGEMENT, L.P. ("HIGHLAND") ENTERED INTO A SETTLEMENT WITH THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"). THE SEC FOUND THAT HIGHLAND VIOLATED, OR CAUSED VIOLATIONS OF, CERTAIN ANTI-FRAUD AND OTHER RELATED SECTIONS 204(A) AND 206(3) OF THE INVESTMENT ADVISERS ACT OF 1940 ("ADVISERS ACT") AND RULE 204-2 THEREUNDER BY TRADING SECURITIES BETWEEN ITS CLIENTS' ACCOUNTS AND ACCOUNTS IN WHICH HIGHLAND AND ITS PRINCIPALS MAINTAINED AN OWNERSHIP INTEREST WITHOUT ADHERING TO CERTAIN REQUIREMENTS SET FORTH BY THE ADVISERS ACT. THE TRANSACTIONS OCCURRED BETWEEN 2007 AND 2009, AND MANY WERE EXECUTED IN AN EFFORT TO GENERATE OR MAINTAIN LIQUIDITY FOR THE ADVISED ACCOUNTS DURING SEPTEMBER AND OCTOBER 2008. THE ORDER FOUND THAT, DURING THE RELEVANT TIME PERIOD, HIGHLAND ENGAGED IN A NUMBER OF TRANSACTIONS WITH ITS CLIENT ADVISORY ACCOUNTS WITHOUT DISCLOSING IN WRITING TO THOSE CLIENTS THAT HIGHLAND WAS ACTING AS PRINCIPAL, OR OBTAINING CLIENT CONSENT TO THE TRANSACTIONS, BEFORE THE TRADES WERE COMPLETED. HIGHLAND DID ULTIMATELY RECEIVE CLIENT CONSENT FOR MANY OF THE TRANSACTIONS; HOWEVER, THIS CONSENT WAS RECEIVED AFTER THE TRANSACTIONS HAD SETTLED, AND THEREFORE DID NOT COMPLY WITH THE REQUIREMENTS OF ADVISERS ACT SECTION 206(3). IN ADDITION, THE ORDER FOUND THAT, DURING THE RELEVANT TIME PERIOD, HIGHLAND FAILED TO KEEP AND MAINTAIN TRUE, ACCURATE AND CURRENT CERTAIN BOOKS AND RECORDS AS REQUIRED BY THE ADVISERS ACT.

8. Current Status?  ○ Pending   ○ On Appeal   ● Final

9. If on appeal, regulatory action appealed to (SEC, *SRO,* Federal or State Court) and Date Appeal Filed:

If Final or On Appeal, complete all items below. For Pending Actions, complete Item 13 only.

10. How was matter resolved:

Settled

11. Resolution Date (MM/DD/YYYY):

09/25/2014  ● Exact   ○ Explanation

If not exact, provide explanation:

12. Resolution Detail:

A. Were any of the following Sanctions *Ordered* (check all appropriate items)?

☑ Monetary/Fine Amount: $ 225,000.00
☐ Revocation/Expulsion/Denial                    ☐ Disgorgement/Restitution
☑ Censure                                         ☑ Cease and Desist/Injunction
☐ Bar                                             ☐ Suspension

B. Other Sanctions *Ordered:*
UNDERTAKINGS
Sanction detail: if suspended, *enjoined* or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against you or an *advisory affiliate*, date paid and if any portion of penalty was waived:
THE ORDER REQUIRES HIGHLAND TO CEASE AND DESIST FROM COMMITTING OR CAUSING ANY VIOLATIONS AND ANY FUTURE VIOLATIONS OF ADVISERS ACT SECTIONS 204(A) AND 206(3) AND RULE 204-2; CENSURES HIGHLAND; AND REQUIRES HIGHLAND TO PAY A CIVIL MONETARY PENALTY OF $225,000, WHICH HIGHLAND PAID ON SEPTEMBER 26, 2014. HIGHLAND MUST ALSO COMPLY WITH CERTAIN UNDERTAKINGS, INCLUDING RETAINING AN INDEPENDENT CONSULTANT TO CONDUCT A COMPREHENSIVE REVIEW OF HIGHLAND'S COMPLIANCE AND CONTROL SYSTEMS RELATING TO PRINCIPAL TRADES, AND THE CREATION AND RETENTION OF ITS BOOKS AND RECORDS.

13. Provide a brief summary of details related to the action status and (or) disposition and include relevant terms, conditions and dates (your response must fit within the space provided).
SOLELY FOR THE PURPOSE OF SETTLING THESE PROCEEDINGS, HIGHLAND CONSENTED TO THE ORDER WITHOUT ADMITTING OR DENYING THE MATTERS IN IT (EXCEPT THE SEC'S JURISDICTION). THE ALLEGATIONS, DISPOSITIONS, FINDINGS AND SANCTIONS OF THE ORDER ARE DESCRIBED ABOVE IN ITEMS 7 AND 12.

---

**CIVIL JUDICIAL ACTION DISCLOSURE REPORTING PAGE (ADV)**

No Information Filed

---

**Part 2**

**Exemption from brochure delivery requirements for SEC-registered advisers**

SEC rules exempt SEC-registered advisers from delivering a firm brochure to some kinds of clients.  If these exemptions excuse you from delivering a brochure to *all* of your advisory clients, you do not have to prepare a brochure.

008200

|  | Yes | No |
|---|---|---|
| Are you exempt from delivering an annual updated brochure to your clients under the rules? | ○ | ⦿ |

*If no, complete the ADV Part 2 filing below.*

Amend, retire or file new brochures:

---

**Part 3**

| CRS | Type(s) | Affiliate Info | Retire |
|---|---|---|---|
|  |  |  |  |

There are no CRS filings to display.

---

**Execution Pages**

**DOMESTIC INVESTMENT ADVISER EXECUTION PAGE**

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial submission of Form ADV to the SEC and all amendments.

Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint the Secretary of State or other legally designated officer, of the state in which you maintain your *principal office and place of business* and any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such *persons* may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding*, or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of the state in which you maintain your *principal office and place of business* or of any state in which you are submitting a *notice filing*.

Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

| | |
|---|---|
| Signature: | Date: MM/DD/YYYY |
| THOMAS SURGENT | 04/25/2023 |
| Printed Name: | Title: |
| THOMAS SURGENT | CHIEF COMPLIANCE OFFICER AND GENERAL COUNSEL |
| Adviser *CRD* Number: | |
| 110126 | |

---

**NON-RESIDENT INVESTMENT ADVISER EXECUTION PAGE**

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial submission of Form ADV to the SEC and all amendments.

1. Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint each of the Secretary of the SEC, and the Secretary of State or other legally designated officer, of any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such persons may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding* or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of any state in which you are submitting a *notice filing*.

2. Appointment and Consent: Effect on Partnerships

If you are organized as a partnership, this irrevocable power of attorney and consent to service of process will continue in effect if any *person* withdraws from or is admitted to the partnership, provided that the admission or withdrawal does not create a new partnership. If the partnership dissolves, this

008201

irrevocable power of attorney and consent shall be in effect for any action brought against you or any of your former partners.

3. *Non-Resident Investment Adviser Undertaking Regarding Books and Records*

By signing this Form ADV, you also agree to provide, at your own expense, to the U.S. Securities and Exchange Commission at its principal office in Washington D.C., at any Regional or District Office of the Commission, or at any one of its offices in the United States, as specified by the Commission, correct, current, and complete copies of any or all records that you are required to maintain under Rule 204-2 under the Investment Advisers Act of 1940. This undertaking shall be binding upon you, your heirs, successors and assigns, and any *person* subject to your written irrevocable consents or powers of attorney or any of your general partners and *managing agents*.

## Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the *non-resident* investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

Signature:                                              Date: MM/DD/YYYY

Printed Name:                                           Title:

Adviser *CRD* Number:
110126

008202

# HMIT Exhibit No. 58

008203

**STINSON LLP**
Deborah Deitsch-Perez
Michael P. Aigen
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Plaintiffs The Dugaboy Investment Trust and the
Hunter Mountain Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| DUGABOY INVESTMENT TRUST and HUNTER MOUNTAIN INVESTMENT TRUST, | § | |
| | § | |
| Plaintiffs, | § | Adversary Proceeding No. |
| | § | _____ |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. and HIGHLAND CLAIMANT TRUST, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT TO (I) COMPEL DISCLOSURES
## ABOUT THE ASSETS OF THE HIGHLAND CLAIMANT TRUST AND
## (II) DETERMINE (A) RELATIVE VALUE OF THOSE ASSETS, AND
## (B) NATURE OF PLAINTIFFS' INTERESTS IN THE CLAIMANT TRUST

008204

Plaintiffs The Dugaboy Investment Trust ("Dugaboy") and Hunter Mountain Investment Trust ("HMIT" and collectively with Dugaboy, the "Plaintiffs") file this adversary complaint (the "Complaint") against Defendants Highland Capital Management, L.P. ("HCM" or the "Debtor") and the Highland Claimant Trust (the "Claimant Trust," and collectively with HCM, the "Defendants"), seeking: (1) disclosures about all distributions and an accounting of the assets and liabilities currently held in the Claimant Trust; (2) a determination of the value of the assets and liabilities; and (3) declaratory relief setting forth the nature of Plaintiffs' interests in the Claimant Trust.

## PRELIMINARY STATEMENT

1.     As holders of Contingent Claimant Trust Interests[1] that vest into Claimant Trust Interests once all creditors are paid in full, and as defendants in litigation pursued by Marc S. Kirschner ("Kirschner") as Trustee of the Litigation Sub-Trust (which seeks to recover damages on behalf of the Claimant Trust), Plaintiffs file this Complaint to obtain information about the assets and liabilities of the Claimant Trust, which was established to monetize and liquidate the assets of the HCM bankruptcy estate.

2.     Defendants' October 21, 2022, January 24, 2023, and April 21, 2023 post-confirmation reports show that even with inflated claims and below-market sales of assets, cash available – if not squandered in self-serving litigation – is more than enough to pay class 8 and class 9 creditors in full. With more than $100 million in assets left to monetize (not even counting related party notes), and almost $550,000 in assets already monetized, even after burning through more than $100 million in professional fees, there is and was more than enough money to pay the inflated $387 million in creditor claims the Debtor allowed. These numbers compel the question

---

[1] Capitalized terms not defined have the meanings set forth herein. If no meaning is set forth herein, the terms have the meaning set forth in the Fifth Amended Plan of Reorganization (as Modified) [Docket No. 1808].

– "What was all of this for, other than to justify outsize fees and bonuses for the professionals involved?" See paragraphs 17-18 below. And despite repeated and increasingly specific requests, the Debtor has never provided granular enough information to specifically identify all of the monies raised and where all the money has gone, including another hundred million dollars that appears to be unaccounted. *Id.*

3.    Accordingly, Plaintiffs and the entire estate would benefit from a close evaluation of current assets and liabilities. Such evaluation will also show whether assets were marked below appraised value during the pandemic and unreasonably held on the books ***at those crisis period values***, along with overstated liabilities, to justify continued litigation. That litigation has served to enable James P. Seery ("Mr. Seery") and other estate professionals to carefully extract nearly every last dollar out of the estate (along with incentive fees), leaving little or nothing for the owners that built the company.

4.    Significantly, Kirschner seems to concede the merits of Plaintiffs' position. After Plaintiffs began seeking the relief sought herein (originally by way of motion), Kirschner himself sought a stay of the massive litigation he instituted to evaluate whether the estate actually needed to collect additional funds. Plaintiffs and other defendants in that litigation agreed to the stay but could not convince the Debtor to provide the kind of fulsome disclosure that would allow Plaintiffs to evaluate for themselves the status of the estate, which secrecy continues to leave Plaintiffs with suspicions that prevent an overall resolution of the bankruptcy with no further need for indemnification reserves. Rather, Debtor continues to provide summary information that is not sufficient to enable Plaintiffs to determine the amounts of money being spent on administration and litigation, and not sufficient to determine whether if all litigation ceased, the estate could pay all creditors with money to spare for equity. Plaintiffs are especially concerned because the

CORE/3524155.0004/178862860.20

information they have gleaned suggests inappropriate self-dealing that undermines confidence in the Debtor's financial reporting, making the relief sought herein all the more important.

5.      While grave harm has already been done by the Defendants' excessive litigation and unnecessary secrecy, valuation now would at least enable the Court to put an end to this already long-running case and salvage some value for equity.  As this Court observed in *In re ADPT DFW Holdings*, where there is significant uncertainty about insolvency, protections must be put in place so that the conduct of the case itself does not deplete the equity.  In some cases, the protection is in the form of an equity committee; here a prompt valuation of the estate is needed.

6.      Upon information and belief, during the pendency of HCM's bankruptcy proceedings, creditor claims and estate assets have been sold in a manner that fails to maximize the potential return to the estate, including Plaintiffs.  Rather, Mr. Seery, first acting as Chief Executive Officer and Chief Restructuring Officer of the Debtor and then as the Claimant Trustee, facilitated the sale of creditor claims to entities that had undisclosed business relationships with Mr. Seery; entities that Mr. Seery knew would approve inflated compensation to him when the hidden but true value of the estate's assets were realized.  Because Mr. Seery and the Debtor have failed to operate the estate in the required transparent manner, they have been able to justify pursuit of unnecessary avoidance actions (for the benefit of the professionals involved), even though the assets of the estate, if managed in good faith, should be sufficient to pay all creditors.

7.      Further, by understating the value of the estate and preventing open and robust scrutiny of sales of the estate's assets, Mr. Seery and the Debtor have been able to justify actions to further marginalize equity holders that otherwise would be in the money, such as including plan and trust provisions that disenfranchise equity holders such as Plaintiffs by preventing them from having any input or information unless the Claimant Trustee certifies that all other interest holders

008207