**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| **Hunter Mountain Investment Trust** | | |
| Appellant | § | |
| vs. | § | |
| **Highland Capital Management, L.P, et al** | § | **3:23-CV-2071-E** |
| Appellee | § | |

**[3904] Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders" Denying Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding. Entered on 8/25/2023.**

# Volume 39

# APPELLANT RECORD

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Reorganized Debtor. | § | *INDEX* |

### APPELLANT HUNTER MOUNTAIN INVESTMENT TRUST'S
### SECOND SUPPLEMENTAL STATEMENT OF THE ISSUES AND
### DESIGNATION OF ITEMS FOR INCLUSION IN THE APPELLATE RECORD

COMES NOW Appellant/Movant Hunter Mountain Investment Trust, both in its individual capacity and derivatively on behalf of the Reorganized Debtor, Highland Capital Management, L.P., and the Highland Claimant Trust,[1] (collectively, "Appellant" or "HMIT"), and files this Second Supplemental[2] Statement of the Issues and Designation of Items for Inclusion in the Appellate Record pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1):

### I.
### STATEMENT OF THE ISSUES

A. Did the bankruptcy court err in determining that the "colorable" claim analysis allowed the court to consider evidence and other non-pleading materials including, but not limited to, the court's reasoning that:

    1. the colorability analysis is stricter than a non-evidentiary, Rule 12(b)(6)-type analysis;

    2. the colorability analysis is "akin to the standards applied under the … *Barton* doctrine";

    3. the colorability analysis requires a "hybrid" of the *Barton* doctrine and "what courts have applied when considering motions to file suit when a vexatious litigant bar order is in place"; and/or,

---

[1] And in all capacities and alternative derivative capacities asserted in HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding [Dkt. Nos. 3699, 3815, and 3816] ("Emergency Motion"), the supplement to the Emergency Motion [Dkt. No. 3760], and the draft Complaint attached to the same [Dkt. No. 3760-1].

[2] Appellant files this Second Supplement pursuant to the Clerk's request at Docket #3949 and correspondence on 10/23/2023.

4. "[t]here may be mixed questions of fact and law implicated by the Motion for Leave"?

[*See* Dkt. Nos. 3781, 3790, 3903-04].

B. Did the bankruptcy court err in determining that Appellant lacked constitutional or prudential standing to bring its claims in its individual and derivative capacities?

[*See* Dkt. Nos. 3903-04].

C. Did the bankruptcy court err in alternatively determining that, even under a non-evidentiary, Rule 12(b)(6)-type analysis, Appellant did not assert colorable claims including, but not limited to, determining that:

1. Appellant's allegations are conclusory, speculative, or constitute "legal conclusions";

2. Appellant's claims or allegations are not "plausible";

3. Appellant's allegations pertaining to a *quid pro quo* are "pure speculation";

4. Proposed Defendant James P. Seery ("Seery") owed no duty to Appellant in any capacity as a matter of law;

5. Appellant failed "to allege facts in the Proposed Complaint that would support a reasonable inference that Seery breached his fiduciary duty to HMIT and the estate as a result of bad faith, self-interest, or other intentional misconduct rising to the level of a breach of the duty of loyalty";

6. Appellant's allegations pertaining to its aiding and abetting and conspiracy claims are speculative and not plausible;

7. The remedies of equitable disallowance and equitable subordination are not remedies "available" to Appellant as a matter of law;

8. Appellant's unjust enrichment claim is invalid as a matter of law because "Seery's compensation is governed by express agreements";

9. Appellant is not entitled to declaratory relief because it has no colorable claims; and/or

10. Appellant cannot recover punitive damages for its breach of fiduciary duty claim?

[*See* Dkt. Nos. 3903-04].

D.   Alternatively, even if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the court violate Appellant's due process rights by denying Appellant its requested discovery?

[*See* Dkt. Nos. 3800, 3853, 3903-04, June 8, 2023 Hearing].

E.   Alternatively, did the bankruptcy court err by denying Appellant's requested discovery including, but not limited to:

1.   ordering that Appellant could not request or obtain any discovery other than a deposition of Seery and James D. Dondero; and/or

2.   determining that state court "Rule 202" proceedings supported the denial of discovery?

[*See* Dkt. Nos. 3800 & June 8, 2023 Hearing; *see also* Dkt. Nos. 3903-04].

F.   Alternatively, did the bankruptcy court err by denying Appellant's alternative request for a continuance to obtain the requested discovery?

G.   Alternatively, did the bankruptcy court err by excluding Appellant's evidence, or admitting the same for only limited purposes, offered at the June 8, 2023 Hearing?

H.   Alternatively, did the bankruptcy court err by overruling Appellant's objections to Appellees' evidence offered at the June 8, 2023 Hearing?

I.   Alternatively, did the bankruptcy court err by excluding Appellant's experts' testimony?

[*See* Dkt. No. 3853; *see also* Dkt. Nos. 3903-04].

J.   Alternatively, did the bankruptcy court err by striking Appellant's proffer of its excluded experts' testimony from the record?

[*See* Dkt. No. 3869].

K.   Alternatively, if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the bankruptcy court err in determining that Appellant had not asserted colorable claims under that "hybrid" analysis including, but not limited to, its findings that:

1.   there is no evidence to support that Seery shared material non-public information with the Claims Purchasers;

2.   there is no evidence to support the alleged quid pro quo;

3.   the material shared was *public* information; and/or

4.   the Claims Purchasers had sufficient and lawful reasons to pay the amounts paid

for the purchased claims.

[*See* Dkt. Nos. 3903-04].

L.  Did the bankruptcy court err in finding that Appellant is controlled by Dondero, and, as such, Appellant "cannot show that it is pursuing the Proposed Claims for a proper purpose"?

M.  Alternatively, does sufficient evidence support the bankruptcy court's evidentiary findings made pursuant to its "hybrid" *Barton* analysis?

N.  Did the bankruptcy court err in denying an expedited hearing on Appellant's Motion for Leave?  [*See* Dkt. 3713].

O.  Does the bankruptcy court's use of a new "colorability" standard to determine if claims by non-debtors against other non-debtors may proceed violate *Stern v. Marshall* and its progeny?

P.  Did the bankruptcy court err in denying Appellant's Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or Alternatively, for New Trial under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 including, but not limited to by:

1.  declining to consider disclosures that demonstrated that Appellant is "in the money"—an issue pertinent to the court's erroneous standing decisions; and

2.  concluding that the disclosures failed to reinforce Appellant's standing to pursue the claims presented?

[Dkt. 3936].

## II.
## DESIGNATION OF ITEMS FOR INCLUSION
## IN THE APPELLATE RECORD

*Vol. 1*

1.  **Notice of Appeal**

*000001*  a.  Notice of Appeal **[Dkt. 3906]**;

*000276*  b.  Amended Notice of Appeal **[Dkt. 3908]**; and

*000551*  c.  Second Amended Notice of Appeal **[Dkt. 3945]**

2.  **The judgment, order, or decree appealed from:**

a.  Memorandum Opinion and Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders": Denying Hunter Mountain Investment

*000835*
*000940*

Trust's Emergency Motion for Leave to File Adversary Proceedings **[Dkts. 3903 & 3904]**; and

*001045*

**b.** Order Denying Motion of Hunter Mountain Investment Trust Seeking Relief Pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 **[Dkt. 3936]**.

**3. Docket sheet.**

*001049*   a. Bankruptcy Case No. 19-34054

**4. Other Items to be included:**

**a.** HMIT hereby designates the following items in the record on appeal from Cause No. 19-34054-sgj11:

*Vol. 2*

| FILE DATE | DOCKET NO. (INCLUDING ALL ATTACHMENTS AND APPENDICES) | DESCRIPTION |
|---|---|---|
| 01/22/2021 | 1808 | Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) |
| 02/22/2021 | 1943 | Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief |
| 09/09/2022 | 3503 | Motion to Conform Plan filed by Highland Capital Management, L.P. |
| 02/27/203 | 3671 | Memorandum Opinion and Order on Reorganized Debtor's Motion to Conform Plan |
| 03/28/2023 | 3699 (3699-1 — 3699-5) | HMIT Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| 03/28/2023 | 3700 (3700-1) | HMIT Motion for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/30/2023 | 3704 | Farallon, Stonehill, Jessup and Muck Objection to Motion for Expedited Hearing |
| 03/30/2023 | 3705 | HMIT Amended Certificate of Conference |

*001594*
*001660*
*001821*
*001830*
*Vol. 3*
*001849*
*Thru  Vol. 4*
*Vol 4*
*002236*
*002243*
*002248*

*Vol. 5*
*002251*

*002254*

*002262*

*002341*

*002355*

*002358*

*002391*

*002398*

*002400*

*Vol. 6*
*002826* *Thru Vol. 7*

*Vol. 9* *Thru Vol. 9*
*003257*

*003260*

*003270*

*003278*

| 03/30/2023 | 3706 | HMIT Amended Certificate of Conference |
|---|---|---|
| 03/30/2023 | 3707 | Highland's Response in Opposition to Emergency Motion for Leave |
| 03/30/2023 | 3708 (3708-1 — 3708-8) | Declaration of John Morris in Support of the Highland Parties' Objection to Hunter Mountain Investment Trust's Opposed Application for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/31/2023 | 3712 | HMIT Reply in Support of Application for Expedited Hearing |
| 03/31/2023 | 3713 | Order Denying Motion for Expedited Hearing |
| 04/04/2023 | 3718 (3718-1 — 3718-4) | HMIT Motion for Leave to File Appeal |
| 04/04/2023 | 3719 (3719-1) | HMIT Motion for Expedited Hearing on Motion for Leave to File Appeal |
| 04/05/2023 | 3720 | Order Denying HMIT's Opposed Motion for Expedited Hearing |
| 04/05/2023 | 3721 (3721-1 — 3721-2) | HMIT Notice of Appeal |
| 04/06/2023 | 3726 (3726-1) | Certificate of Mailing regarding HMIT Notice of Appeal |
| 04/07/2023 | 3731 | Notice of Docketing Transmittal of Notice of Appeal |
| 04/13/2023 | 3738 (3738-1) | Highland's Opposed Emergency Motion to Modify and Fix a Briefing Schedule and Set a Hearing Date with Respect to HMIT's Emergency Motion for Leave |
| 04/13/2023 | 3739 | Highland's Motion for Expedited Hearing |
| 04/13/2023 | 3740 | Joinder to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date With Respect to Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon |

| | | | Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
|---|---|---|---|
| *Vol. 10* *003281* | 04/13/2023 | 3741 | Notice of Hearing for 04/24/2023 at 1:30 PM |
| *003286* | 04/13/2023 | 3742 | Amended Notice of Hearing for 04/24/2023 at 1:30 PM |
| *003291* | 04/13/2023 | 3745 | Notice of Appearance and Request for Notice by Omar Jesus Alaniz filed by James P. Seery Jr. |
| *003294* | 04/15/2023 | 3747 | Joinder by James P. Seery Jr. to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date with Respect to Hunter Mountain Investment Trusts Emergency Motion for Leave to File Verified Adversary Proceeding |
| *003296* | 04/17/2023 | 3748 | HMIT's Response and Reservation of Rights |
| *003299* | 04/19/2023 | 3751 | Notice of Status Conference |
| *003302* | 04/21/2023 | 3758 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability" |
| *003311* | 04/21/2023 | 3759 | HMIT's Notice of Rescheduling Hearing |
| *003314* | 04/21/2023 | 3761 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability"[3] |
| *003323* | 04/23/2023 | 3760 (3760-1) | HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| *003368* | 04/25/2023 | 3765 | Transcript of Hearing held on 04/24/2023 |
| *003430* | 05/11/2023 | 3780 | Objection to Hunter Mountain Investment Trust's (i) Emergency Motion for Leave to File Verified Adversary Proceeding; and (ii) Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck |

---

[3] A duplicate of Doc 3758.

| | | | |
|---|---|---|---|
| *VOL. 10* | | | Holdings LLC, Stonehill Capital Management LLC |
| *003458* | 05/11/2023 | 3781 | Order Fixing Briefing Scheduling and Hearing Date with Respect to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding as Supplemented |
| *003463* | 05/11/2023 | 3783 | Highland and Seery's Joint Response to HMIT's Emergency Motion for Leave |
| *VOL. 11* *003537* *Thru Vol. 16* | 05/11/2023 | 3784 (3784-1 — 3784-46) | Declaration of John Morris in Support of Highland Parties' Joint Response |
| *VOL. 17* *004466* | 05/18/2023 | 3785 | HMIT's Reply in Support of Emergency Motion for Leave to File Adversary Proceeding |
| *004712* | 05/22/2023 | 3787 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004714* | 05/24/2023 | 3788 (3788-1 — 3788-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *004808* | 05/24/2023 | 3789 | HMIT's Application for Expedited Hearing |
| *004813* | 05/24/2023 | 3790 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004836* | 05/25/2023 | 3791 (3791-1 — 3791-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *VOL. 18* *004930* | 05/25/2023 | 3792 | Order Setting Expedited Hearing |
| *004931* | 05/25/2023 | 3795 | Objection to Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

*Vol. 18*

*004939.*

*004959*

| | 05/25/2023 | 3798 (3798-1) | Highland Parties' Joint Response in Opposition to HMIT's Emergency Motion for Expedited Discovery |
|---|---|---|---|
| | 05/26/2023 | 3800 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| *004961* | 05/28/2023 | 3801 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| *004984* | 06/05/2023 | 3815 (3815-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| *005049* | 06/05/2023 | 3816 (3816-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| *005114* | 06/05/2023 | 3817 (3817-1 — 3817-5) *Thru Vol. 25* | Highland Parties' Witness and Exhibit List with Respect to Evidentiary Hearing on June 8, 2023 |
| *Vol. 26* *006608* | 06/05/2023 | 3818 (3818-1 — 3818-9) *Thru Vol. 39* | HMIT's Witness and Exhibit List in Connection with its Emergency Motion for Leave to File Verified Adversary Proceeding, and Supplement |
| *Vol. 39* *009273* | 06/07/2023 | 3820 | Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| *009290* | 06/07/2023 | 3821 (3821-1 — 3821-3) | Declaration in Support of Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| *009416* | 06/07/2023 | 3822 (3822-1) | HMIT's Unopposed Motion to File Exhibit Under Seal [WITHDRAWN] |
| *009424* | 06/07/2023 | 3823 | Joinder to Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

| 06/07/2023 | 3824 | HMIT's Objections to the Highland Parties' Exhibit and Witness List |
|---|---|---|
| 06/08/2023 | 3828 | HMIT's Response to Highland Claimant Trust and James P. Seery, Jr.'s Joint Motion to Exclude Testimony and Documents of Experts Scott Van Meter and Steve Pully |
| 06/09/2023 | 3837 | Request for transcript regarding hearing held on 06/08/2023 |
| 06/12/2023 | 3838 | Court admitted exhibits on hearing June 8, 2023 (*See* Docket Entry Nos. 3817 & 3818) |
| 06/12/2023 | 3841 | Highland Parties' Reply in Further Support of their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/12/2023 | 3842 (3842-1) | Claim Purchasers' Joinder to Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery Jr.'s Reply in Further Support of Their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
| 06/13/2023 | 3843 | Transcript regarding Hearing Held 06/08/2023 |
| 06/13/2023 | 3844 | Transcript regarding Hearing Held 05/26/2023 |
| 06/13/2023 | 3845 | HMIT's Request for Oral Hearing or, Alternatively, a Schedule for Evidentiary Proffer |
| 06/13/2023 | 3846 | Response in Opposition to Hunter Mountain Investment Trust's Request for Oral Argument or, Alternatively, a Schedule for Evidentiary Proffer filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Creditor James P. Seery Jr. |
| 06/13/2023 | 3847 | HMIT's Reply to the Highland Parties' Response to Request for Oral Hearing |
| 06/16/2023 | 3853 | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |

Handwritten annotations in left margin:
Vol. 40
009426
009436
009444
009445
009446
009456
009458
Vol. 41
Thru Vol. 41
Vol. 42
009841
009901
009905
009908
009912

*Vol. 42*
*009928*

*009944*

*010013*

*010023*

*010025*

*010029*

*010035*

*010047*

*010059*

*Vol. 43*

*010062*

| | | | |
|---|---|---|---|
| 06/16/2023 | 3854 | | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |
| 06/19/2023 | 3858 (3858-1 — 3858-2) | | Hunter Mountain Investment Trust's Evidentiary Proffer Pursuant to Rule 103(a)(2)[4] |
| 06/23/2023 | 3860 | | The Highland Parties' Objections to and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 06/23/2023 | 3861 | | Claim Purchasers' Joinder to the Highland Parties' Objections and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 07/05/2023 | 3869 | | Order Striking HMIT's Evidentiary Proffer Pursuant to Rule 103(a)(2) and Limiting Briefing |
| 07/06/2023 | 3872 | | Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust filed by Debtor Highland Capital Management, L.P. and the Highland Claimant Trust |
| 07/21/2023 | 3888 | | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by Highland Capital Management, L.P. |
| 07/21/2023 | 3889 | | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by the Highland Claimant Trust |
| 08/17/2023 | 3901 | | Withdrawal of HMIT's Unopposed Motion to File Exhibit Under Seal filed by Creditor Hunter Mountain Investment Trust |
| 09/08/2023 | 3905 (3905-1 — 3905-6) | | Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or, Alternatively, for New Trial Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 and Incorporated Relief Filed by Creditor Hunter Mountain Investment Trust |

[4] HMIT understands that the Court struck this proffer in docket entry 3869. Because the proffer appears to remain on the record and to avoid any argument that HMIT has failed its burden to designate the record, HMIT designates this docket entry out of an abundance of caution.

*Vol. 43*

*010135*

*010136*

| 09/11/2023 | 3907 | Clerk's Correspondence regarding HMIT's Notice of Appeal |
| 09/22/2023 | 3928 | Notice Regarding Appeal and Pending Post-Judgment Motion filed by HMIT |

**B.    Exhibits.**

Further, the Parties submitted hearing exhibits. HMIT designates for inclusion in the record for appeal all the hearing exhibits submitted to the Court, which were all electronically filed and are in the Court's record and are a part of this Appellate Record. (Docs. 3817 and 3818). The following exhibits are submitted and included in the Court's record:

| **HMIT Exhibits** **(Dkts. 3818, 3818-1, 3818-2, 3818-3, 3818-4, 3818-5. 3818-6, 3818-7, 3818-8, and 3818-9)** |
| HMIT Exhibits 1-4, 6-80 |
| **HCM Exhibits** **(Dkts. 3817, 3817-1, 3817-2, 3817-3, 3817-4, 3817-5)** |
| HCM Exhibits 2-15, 25-34, 36, 38-42, 45-46, 51, 59-60, 100 |

Dated:  October 23, 2023                    Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  */s/ Sawnie. A. McEntire*
         Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served via ECF notification on October 23, 2023, on all parties receiving electronic notification.

*/s/ Sawnie A. McEntire*

Sawnie A. McEntire

failure to perform any of the foregoing obligations that first accrue from and after the date hereof.

5.      Assignor agrees to indemnify and hold harmless Assignee from any cost, liability, damage or expense (including reasonable attorneys' fees) arising out of or relating to Assignor's failure to perform any of the obligations of Assignor under the Leases, to the extent accruing prior to the date hereof.

6.      The property conveyed hereunder is conveyed by Assignor and accepted by Assignee **AS IS, WHERE IS, AND WITHOUT ANY WARRANTIES OF WHATSOEVER NATURE, EXPRESS OR IMPLIED, EXCEPT AS EXPRESSLY SET FORTH IN THE PURCHASE AGREEMENT, IT BEING THE INTENTION OF ASSIGNOR AND ASSIGNEE EXPRESSLY TO NEGATE AND EXCLUDE ALL WARRANTIES, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, WARRANTIES CREATED BY ANY AFFIRMATION OF FACT OR PROMISE OR BY ANY DESCRIPTION OF THE PROPERTY CONVEYED HEREUNDER, OR BY ANY SAMPLE OR MODEL THEREOF, AND ALL OTHER WARRANTIES WHATSOEVER CONTAINED IN OR CREATED BY THE TEXAS UNIFORM COMMERCIAL CODE.**

7.      This Bill of Sale, Assignment and Assumption may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

8.      This Bill of Sale, Assignment and Assumption shall inure to the benefit of and be binding upon the heirs, personal representatives, successors, and assigns of each of the parties hereto.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

009208

EXECUTED as of _____, 202___.

**ASSIGNOR:**

       **MAPLE AVENUE HOLDINGS, LLC**, a Texas limited liability company

       By: Highland Capital Management, L.P., a Delaware limited partnership, its sole Member

       By:_____
       Name:_____
       Title:_____

**ASSIGNEE:**

       [_____], a
       [_____]

       By:
       Name:
       Title:

009209

# HMIT Exhibit No. 76

009210

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., ET AL, | § | Case No. 18-30264-sgj11 |
| | § | |
| Debtor. | § | |

## STATEMENT OF INTERESTED PARTY IN RESPONSE TO MOTION OF NEXPOINT STRATEGIC OPPORTUNITIES FUND TO CONFIRM DISCHARGE OR PLAN INJUNCTION DOES NOT BAR LAWSUIT, OR ALTERNATIVELY, FOR RELIEF FROM ALL APPLICABLE INJUNCTIONS

Highland Capital Management, L.P. ("HCMLP") respectfully submits this *Statement of*

*Interested Party in Support of Objections to Motion of NexPoint Strategic Opportunities Fund to*

*Confirm Discharge or Plan Injunction Does Not Bar Lawsuit, or Alternatively, for Relief from All*

*Applicable Injunctions* (the "Statement") and, in support thereof, states as follows:

## STATEMENT

1.  Highland CLO Funding, Ltd. ("HCLOF"),[1] holds 100% of the subordinated notes
(*i.e.*, the equity) issued by the Acis CLOs,[2] except for 13% of the subordinated notes in Acis 2015-
6 allegedly held by NexPoint Strategic Opportunities Fund ("NHF"). In turn, HCMLP and its
wholly owned subsidiary, HCMLP Investments, LLC ("HCMLPI"),[3] own 50.62% of HCLOF's
interests.[4] Accordingly, HCMLP has the greatest economic interest in the outcome of this dispute.

2.  On April 28, 2021, HCLOF and Acis Capital Management, L.P. ("Acis"), among
others, entered into a settlement agreement pursuant to which HCLOF released all of its claims
against Acis and Joshua Terry, among others (the "Acis/HCLOF Settlement"),[5] that arose prior to
the effective date of the Acis/HCLOF Settlement. In turn, Acis agreed to a consensual optional
redemption of the Acis CLOs and distribution of the proceeds therefrom. Acis has successfully
liquidated the vast majority of the Acis CLOs' collateral and paid off *all* the secured, senior notes
issued by the Acis CLOs. The only obligations of the Acis CLOs still outstanding are the

---

[1] HCLOF is managed by its Guernsey directors and advised by Highland HCF Advisors, Ltd. ("HHCFA"), its investment manager. HHCFA is a wholly owned subsidiary of HCMLP. HCLOF's current directors are two independent directors appointed on July 7, 2020, who have worked cooperatively with HHCFA and James P. Seery, Jr., HCMLP's Court-approved chief executive officer and chief restructuring officer, since their appointment. Both HCLOF and HHCFA support the filing of this Statement.

[2] "Acis CLOs" collectively refers to (i) Acis CLO 2014-3 Ltd. and Acis CLO 2014-3 LLC ("Acis 2014-3"); (ii) Acis CLO 2014-4 Ltd. and Acis CLO 2014-4 LLC ("Acis 2014-4"); (iii) Acis CLO 2014-5 Ltd. and Acis CLO 2014-5 LLC ("Acis 2014-5"); and (iv) Acis CLO 2015-6 Ltd. and Acis CLO 2015-6 LLC ("Acis 2015-6").

[3] HCMLPI obtained its HCLOF interests pursuant to HCMLP's settlement with the HarbourVest entities. *Order Approving Debtor's Settlement with HarbourVest (Claim Nos. 143, 147, 150, 153, 154) and Authorizing Actions Consistent Therewith*, *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, D.I. 1788 (Bankr. N.D. Tex. Jan. 21, 2021).

[4] The balance of HCLOF's interests is held by CLO Holdco Ltd. ("CLOH"), a wholly owned subsidiary of Mr. Dondero's charitable trust, the Charitable DAF, L.P. HCMLP, HCMLPI, and CLOH have no right, as interest holders, to control HCLOF, and neither Mr. Dondero nor his related entities have any right to direct HCLOF.

[5] A true and correct copy of the Acis/HCLOF Settlement is attached hereto as **Exhibit A**. Although HCMLP and HCMLPI are not parties to the Acis/HCLOF Settlement, they support the settlement.

009212

subordinated notes, which were subject to the HCLOF optional redemption. The Acis CLOs currently hold, in cash, approximately $33 million in liquidation proceeds which must be distributed to the subordinated noteholders and an additional $20 million in loans which, when sold, must also be distributed to the subordinated noteholders.

3.      However, the litigation filed by NHF in the U.S. District for the Southern District of New York,[6] which is the predicate for the Motion,[7] as well as the threat of re-filing the DAF/Acis Complaint[8] (collectively, the "Litigation"), has caused Acis and U.S. Bank National Association (the "Trustee") to withhold the distributions due to the Acis CLOs' investors, including HCLOF (and ultimately HCMLP), as a purported reserve to pay potential indemnification claims.[9]  The Acis CLOs' refusal to distribute the proceeds as required by the governing documents and the Acis/HCLOF Settlement adversely impacts HCLOF and HCMLP.[10]

---

[6] *See Original Complaint*, *NexPoint Strategic Opportunities Fund v. Acis Capital Management, L.P., U.S. Bank, N.A., Joshua N. Terry, Brigade Capital Management, L.P.*, Case No. 1:21-cv-04384, D.I. 1 (S.D.N.Y. May 14, 2021) (the "NHF Complaint"). The NHF Complaint was filed by Sbaiti & Company PLLC.

[7] "Motion" refers to the *Motion of NexPoint Strategic Opportunities Fund to Confirm Discharge or Plan Injunction Does Not Bar Lawsuit, or Alternatively, for Relief from All Applicable Injunctions* [D.I. 1219].

[8] "DAF/Acis Complaint" refers to *Plaintiffs' Original Complaint and Jury Demand, The Charitable Donor Advised Fund, L.P. and CLO Holdco Ltd. v. U.S. Bank National Association, Moody's Investor Service, Inc., Acis Capital Management, L.P., and Brigade Capital Management LP, and Joshua N. Terry*, Case No. 20-CV-01036-LGS, D.I. 1 (S.D.N.Y. Feb. 6, 2020). The DAF/Acis Complaint was filed in February 2020 and subsequently withdrawn after HCMLP's independent directors intervened. It is not currently pending.

[9] HCLOF believes that the Acis CLOs have no authority to withhold the distributions under the Acis CLOs' governing documents and that such action may violate the Acis/HCLOF Settlement. Even assuming the Litigation has merit (and it does not), there is no justification for reserving nearly 100% of the current cash liquidation proceeds. The actions of Acis and the Trustee alleged by Mr. Dondero are egregious and would not be subject to indemnification if those allegations prove true. *See, e.g.*, *Indenture*, dated April 16, 2015, by and between Acis CLO 2015-6 Ltd., as issuer, Acis CLO 2015-6 LLC, as co-issuer, and U.S. Bank National Association, as trustee (the "Acis 2015-6 Indenture"), § 6.1(a)(iii); Portfolio Management Agreement, dated as of April 16, 2015, between Acis CLO 2015-6 Ltd. and Acis Capital Management, L.P., § 11(a).

HCLOF reserves all rights that it may have at law and in equity, and nothing herein shall be considered a waiver of any such rights.

[10] As the largest subordinated noteholder, HCLOF would receive approximately $50 million (less costs) of the withheld proceeds (assuming all remaining collateral is sold and cash distributed). HCMLP, as the ultimate holder of 50.62% of HCLOF's interests, would receive approximately $25 million.

DOCS_NY:43880.11 36027/002

009213

4. For the reasons discussed in the Objections,[11] HCMLP believes the Litigation is baseless and, in any event, barred by the Acis Plan Injunction,[12] including for the following additional reasons:

- NHF has no claim against Acis 2014-3. NHF's $5 million in Series F notes issued by Acis 2014-3 have been paid in full with interest.

- NHF's claim against Acis 2015-6 based on its alleged 13% "equity" interest is barred by the "no-action" clause contained in Acis 2015-6's indenture, which mandates that no less than 25% of the "Controlling Class" (*i.e.*, the subordinated notes) consent to bring suit.[13] HCLOF holds the balance of Acis 2015-6's subordinated notes and will not consent to the Litigation.

- With the exception of NHF's minimal and insufficient interest in Acis 2015-6, the only other party that could possibly assert the claims against Acis and the Trustee alleged in the Litigation, including the DAF/Acis Complaint, would be HCLOF. But, again, HCLOF has released those claims as set forth in the HCLOF/Acis Settlement, and no party, including Mr. Dondero and his related entities, can assert HCLOF's claims derivatively.

- The Acis Plan Injunction was approved to, among other things, allow Acis to manage the Acis CLOs free from frivolous litigation and general interference. At a minimum, the Litigation violates the intent and spirit of the Acis Plan Injunction because it is preventing Acis (and the Trustee) from complying with their obligations to the Acis CLOs by causing them to withhold distributions that are otherwise required to be made.

5. Ultimately, Mr. Dondero and his controlled entities are not pursuing the Litigation in order to vindicate their economic interests. Instead, the Litigation appears to be motivated by

---

[11] "Objections" means collectively (i) the *Objection of Reorganized Debtor Acis Capital Management, L.P. and Joshua N. Terry to Motion of NexPoint Strategic Opportunities Fund to Confirm Discharge or Plan Injunction Does Not Bar Lawsuit, or, Alternatively, for Relief from All Applicable Injunctions* [D.I. 1225]; and (ii) *Objection of U.S. Bank National Association, as CLO Trustee, to the Motion of NexPoint Strategic Opportunities Fund to Confirm Discharge or Plan Injunction Does Not Bar Lawsuit, or, Alternatively, for Relief from All Applicable Injunctions* [D.I. 1227].

[12] "Acis Plan Injunction" means those injunctions contained in Article 14.03 of that certain *Third Amended Joint Plan for Acis Capital Management, L.P., and Acis Capital Management GP, LLC*, as confirmed by the *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified, In re Acis Capital Management, L.P., et al*, Case No. 18-30264-SGJ11 (Bankr. N.D. Tex. Jan. 31, 2019).

[13] *See* Acis 2015-6 Indenture, § 5.8. The purpose of a "no-action" clause is to prevent superfluous suits against an issuer that are contrary to the interests of the bondholders as a whole – exactly the situation present here.

009214

Mr. Dondero's desire to harass Acis and the Trustee while simultaneously interfering with distributions to be made pursuant to HCMLP's confirmed plan of reorganization. The Court should enforce the Acis Plan Injunction; shut down Mr. Dondero's attempts to evade this Court's jurisdiction; and put an end to the Litigation before it starts.[14]

*[Remainder of Page Intentionally Blank]*

---

[14] If this Court determines that additional evidence is required to rule on the Motion, the Court should, respectfully, reopen Acis's bankruptcy case.

DOCS_NY:43880.11 36027/002

009215

WHEREFORE, HCMLP respectfully requests this Court (a) deny the Motion, and (b) grant

such other relief as is just and proper, including the reopening of the Acis Bankruptcy.

Dated:  August 18, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

009216

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that, on August 18, 2021, a true and correct copy of the foregoing *Statement* was served via electronic mail upon those parties registered to receive electronic service via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*         
Zachery Z. Annable

DOCS_NY:43880.11 36027/002

009217

# EXHIBIT A

009218

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of April 28, 2021 (the "Effective Date"), by and among (i) Highland CLO Funding, Ltd. ("HCLOF"), (ii) Acis Capital Management, L.P. ("Acis LP"), (iii) Acis Capital Management GP, LLC ("Acis GP," and with Acis LP, collectively, "Acis"); and (iv) Joshua Terry ("Terry," and with HCLOF and Acis, collectively, the "Parties").

WHEREAS, Acis GP and Acis LP are reorganized debtors in the chapter 11 bankruptcy cases *In re Acis Capital Management, L.P. and Acis Capital Management GP, LLC,* Case Nos. 18-30264 and 18-30265 (the "Bankruptcy Cases"), filed in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"); and

WHEREAS, section 14.03 of the Third Amended Plan of Reorganization filed in the Bankruptcy Cases on October 25, 2018 and confirmed by the Bankruptcy Court (the "Plan") provides for an injunction generally prohibiting the redemption or liquidation of certain Collateralized Loan Obligations or "CLOs" managed by Acis, defined in Plan section 1.01 (collectively, the "Acis CLOs") until, among terminating events, all allowed claims against the Debtors, as defined in the Plan, in the Bankruptcy Cases are paid in full (the "Injunction"); and

WHEREAS, the Parties agree that upon full payment of all allowed claims against the Debtors, as defined in the Plan, the Injunction shall automatically dissolve; and

WHEREAS, the Parties agree that in the absence of the Injunction, HCLOF may, among other things, direct Acis to redeem or liquidate some or all of the Acis CLOs as more specifically provided for in the CLO governing documents, including, without limitation, the PMAs, as the term PMAs is defined in section 1.88 of the Plan (collectively, the "PMAs"); and

WHEREAS, on July 26, 2019, HCLOF filed a notice of appeal from the judgment of the United States District Court for the Northern District of Texas affirming Bankruptcy Court's order confirming the Plan, which appeal is pending before the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") under Docket No. 19-10847 (the "Fifth Circuit Appeal"); and

WHEREAS, on June 20, 2019, Acis filed a second amended complaint in an adversary proceeding styled *Acis Capital Management, L.P. and Acis Capital Management GP, LLC v. Highland Capital Management, L.P., et al.,* Adv. Pro. No. 18-03078, in Bankruptcy Cases No. 18-30264 and 18-30265, in the United States Bankruptcy Court for the Northern District of Texas (the "First Lawsuit"); and

WHEREAS, on April 11, 2020, Acis filed an original complaint in an adversary proceeding styled *Acis Capital Management, L.P. and Acis Capital Management GP, LLC, Reorganized Debtors v. James Dondero et al.,* Adv. Pro. No. 20-03060, in Bankruptcy Cases No. 18-30264 and 18-30265, in the United States Bankruptcy Court for the Northern District of Texas (the "Second Lawsuit"); and

009219

WHEREAS, the Parties desire to enter into this Agreement which, as set forth in more detail herein, provides for, among other things, the satisfaction of conditions necessary to lift the Injunction by its terms under the Plan, the optional redemption of certain Acis CLOs on terms directed by HCLOF and in accordance with the terms of the governing documents of the Acis CLOs (the "Redemption"), the dismissal with prejudice of the First Lawsuit; the dismissal of the Second Lawsuit with prejudice against defendants William Scott and Heather Bestwick (the "HCLOF Director Defendants"), the dismissal of the Fifth Circuit Appeal, and mutual full and complete releases of all claims and causes of action that the Parties have, or may have, against each other, as more fully set forth below.

NOW THEREFORE, in consideration of the above recitals, the covenants, conditions, and promises made herein, the Parties agree as follows:

1.    **Representations and Warranties Regarding Acis CLO Fees and Expenses.** Acis and Terry represent and warrant as follows: (a) Acis has provided certain confidential information, consisting of an analysis by a well-known international law firm with expertise in CLO documentation and the rights and remedies of parties who manage CLOs, and an analysis of well-known financial advisory firm, with regard to fees and expense submitted to and paid by the Acis CLOs (the "Confidential Professional Analyses"); (b) in the preparation of the Confidential Professional Analyses, Acis provided all requested information to the aforementioned law firm and the financial advisory firm in good faith, and all such information was accurate and complete to the best of Acis's and Terry's knowledge; and (c) Acis and Terry have no reason to believe that the conclusions contained in the Confidential Professional Analyses are incorrect.

2.    **Representations and Warranties Regarding HCLOF's Ownership of Subordinated Notes of the Acis CLOs.** HCLOF represents and warrants it is currently, and has been since February 15, 2019, the owner of $39,750,000 subordinated notes issued by Acis CLO 2014-3 Ltd., $50,750,000 subordinated notes issued by Acis CLO 2014-4 Ltd., $53,000,000 subordinated notes issued by Acis CLO 2014-5 Ltd., and $51,850,000 subordinated notes issued by Acis CLO 2015-6 Ltd (the "HCLOF Subordinated Notes"). HCLOF further agrees that: (i) it will not sell, transfer or assign the HCLOF Subordinated Notes to any third party for a period of one hundred eighty (180) days following the Effective Date, (ii) any sale, transfer or assignment of the HCLOF Subordinated Notes to a third party following the expiration of this 180-day period shall provide that such third party transferee, assignee or successor (and any transferees, assignees or successors of an initial third party transferee, assignee or successor) shall be subject to, and bound by, the terms of this Agreement, and (iii) any third party transferees, assignees, or successors shall not be affiliated in any way with James Dondero, CLO Holdco, Ltd., The Charitable DAF Fund, L.P., or any other entities owned or controlled by James Dondero, including but not limited to any funds or entities managed by an affiliate of James Dondero.

3.    **Stipulation, Representation and Warranty Regarding Payment of Claims against Acis.** As of the Effective Date, Acis and Terry stipulate, represent and warrant that all Allowed Claims against the Debtors, as that term is defined in section 1.48 of the Plan, have been paid in full and that the Injunction has expired by its terms under the Plan. Acis and Terry agree to provide notice and verification that the Injunction has expired by its terms to all parties required

009220

to be notified, including the issuers and the indenture trustees for each of the Acis CLOs, so as to ensure that HCLOF may exercise all rights that have been restricted or impaired by the Injunction.

4.   **Cooperation and Further Efforts to Extinguish Injunction.** Although the Parties agree that no order of the Bankruptcy Court or any other court is required for this Agreement and all its terms and provisions to be fully effective, Acis agrees to cooperate with HCLOF and take any further action reasonably requested by HCLOF to confirm the dissolution of the Injunction, including, without limitation, filing appropriate motions to reopen the Bankruptcy Cases and to obtain entry of an order of the Bankruptcy Court dissolving or confirming the dissolution of the Injunction.

5.   **Redemption of the Acis CLOs.** In the event that Acis receives a notice of redemption or refinancing related to the Acis CLOs, Acis agrees to act in good faith and in accordance with its responsibilities and duties under the PMAs and consistent with the terms of the respective Acis CLO indentures. In exercising such duties, Acis shall discharge its duty of best execution consistent with the terms of the PMAs, and, if requested by HCLOF, shall provide HCLOF with the price and counterparty of any bids received on any Acis CLO collateral in the event of an optional redemption of any Acis CLO. Attached as Exhibit A to this Agreement are form redemption notices for each of the Acis CLOs which the Parties have approved as sufficient and acceptable in all respects to initiate the redemption of the Acis CLOs.  Acis agrees that, provided it is not prohibited from doing so under the terms of the respective Acis CLO indentures, Acis will execute in good faith the redemptions of the Acis CLOs.  Acis further agrees to accept and comply with HCLOF's reasonable requests for information related to daily reporting (if requested) on the execution of any trades or other activity to effectuate HCLOF's requested optional redemption of the Acis CLOs, and (if requested) act in good faith to facilitate direct communications between HCLOF and Acis's sub-adviser, Brigade Capital Management, LP related to the execution of any trades. The Parties further agree to cooperate in good faith to enjoin any third parties from interfering with any Redemption of the Acis CLOs (if requested), and shall not cooperate, encourage or voluntarily assist any third party from interfering with the Redemption of the Acis CLOs.  Notwithstanding anything contained herein to the contrary, to the extent this agreement requires any action to be taken with respect to any matter and the PMAs or indentures of the Acis CLOs require(s) that a different action be taken with respect to such matter, the provisions of the PMAs and/or Acis CLO indenture in respect thereof shall control.

6.   **Abstention From Further Portfolio Management.** Acis and Terry agree to refrain from acting or proposing to act as portfolio manager of HCLOF or any CLOs managed by Highland Capital Management, LP.

7.   **Dismissal of the First and Second Lawsuits.**  Acis agrees to file a motion to dismiss or a stipulation of dismissal of the First Lawsuit with prejudice within three (3) business days following the occurrence of both the Effective Date and Acis' receipt of an agreed proposed order or a signed stipulation of dismissal from HCLOF.  Acis further agrees to file a motion to dismiss with prejudice the Second Lawsuit as against William Scott and Heather Bestwick within three (3) business days following the occurrence of both the Effective Date and Acis' receipt of an agreed proposed order of dismissal from William Scott and Heather Bestwick. Acis agrees to use its best efforts to obtain approval of any motions to dismiss filed pursuant to this paragraph and,

009221

regardless of the disposition of any such motion, the Acis Releasors (as defined below) agree to be bound by the covenant not to sue or sue further, as set forth below, any of the Acis Releasees (as defined below) with respect to the First Lawsuit and the Second Lawsuit.

8.   **Dismissal of the Fifth Circuit Appeal.**   Within three (3) business days of the Effective Date, HCLOF and Acis shall jointly move to dismiss the Fifth Circuit Appeal with prejudice, with each party bearing its own costs of such dismissal.   The Parties agree to act in good faith and to take all measures reasonably necessary to obtain Fifth Circuit approval of this request for dismissal.

9.   **Acis Releases.**   Effective upon the Effective Date, each of Acis GP, Acis LP, and Terry, for themselves and all their agents, representatives, officers, directors, advisors, employees, subsidiaries, successors and assigns in their capacities as such (collectively, "Acis Releasors"), with no further action required, forever agree and covenant not to sue or prosecute, or sue or prosecute further, against any Acis Releasee (as hereinafter defined) and shall forever waive, release and discharge, to the fullest extent permitted by law, each Acis Releasee from any and all claims (including, without limitation, crossclaims, counterclaims, rights of set-off and recoupment), actions, causes of action, suits, debts, accounts, interests, liens, promises, warranties, damages and consequential damages, demands, agreements, bonds, bills, specialties, covenants, controversies, variances, trespasses, judgments, executions, costs, expenses or claims whatsoever, that such Acis Releasor then has or thereafter may have, of whatsoever nature and kind, whether known or unknown, whether then existing or thereafter arising, whether arising at law or in equity, existing on or before the Effective Date (the "Acis Released Claims") against HCLOF in any capacity, HCLOF's respective successors and assigns, and each and all of the current and former officers, directors, employees, agents, attorneys, advisors and other representatives of each of the foregoing, including, without limitation, William Scott and Heather Bestwick (collectively, the "Acis Releasees"), provided, however, that Acis Released Claims do not include claims for the breach of this Agreement. In furtherance of the foregoing releases, and on and after the Effective Date, each of the Acis Releasors hereby irrevocably covenants and agrees to refrain from, directly or indirectly, asserting any claim, demand or remedy, or continuing, commencing, instituting, or causing to be commenced or instituted any proceeding, of any kind or nature whatsoever against any Acis Releasee based upon any Acis Released Claim.  This release is intended to be a general release of all claims existing on or before the Effective Date.  Notwithstanding anything contained herein to the contrary, the term Acis Releasees shall not include the Charitable Donor Advised Fund, LP (or any of its subsidiaries, including CLO Holdco, Ltd.), Grant Scott, James Dondero, David Simek, Dugaboy Investment Trust (or any trustee acting for that trust), or Mark Okada and his family trusts (and the trustees for such trusts in their representative capacities).

10.   **HCLOF Releases.**   Effective upon the Effective Date, HCLOF, for itself and all its agents, representatives, officers, directors, advisors, employees, subsidiaries, successors and assigns in their capacities as such (collectively, "HCLOF Releasors"), with no further action required, forever agrees and covenants not to sue or prosecute, or sue or prosecute further, against any HCLOF Releasee (as hereinafter defined) and shall forever waive, release and discharge, to the fullest extent permitted by law, each HCLOF Releasee from any and all claims (including, without limitation, crossclaims, counterclaims, rights of set-off and recoupment), actions, causes of action, suits, debts, accounts, interests, liens, promises, warranties, damages and consequential

damages, demands, agreements, bonds, bills, specialties, covenants, controversies, variances, trespasses, judgments, executions, costs, expenses or claims whatsoever, that such HCLOF Releasor then has or thereafter may have, of whatsoever nature and kind, whether known or unknown, whether then existing or thereafter arising, whether arising at law or in equity, existing on or before the Effective Date (the "HCLOF Released Claims") against Acis GP, Acis LP, and Terry, in any capacity, Brigade Capital Management, LP, U.S. Bank National Association, Moody's Investor Services, Inc., the Acis CLOs (with respect to any claims for breach of any duties or obligations owed by Acis to the Acis CLOs under the PMAs arising prior to the Effective Date, including but not limited to any fees and expenses paid by the Acis CLOs to Acis), each of their respective successors and assigns, and each and all of the officers, directors, employees, agents, attorneys, advisors and other representatives of each of the foregoing (collectively, the "HCLOF Releasees"), provided, however, that HCLOF Released Claims do not include claims for the breach of this Agreement. In furtherance of the foregoing releases, and on and after the Effective Date, HCLOF hereby irrevocably covenants and agrees to refrain from, directly or indirectly, asserting any claim, demand or remedy, or continuing, commencing, instituting, or causing to be commenced or instituted any proceeding, of any kind or nature whatsoever against any HCLOF Releasee based upon any HCLOF Released Claim. This release is intended to be a general release of all claims existing on or before the Effective Date.

11.     **Additional Representations and Warranties**. In executing this Release, each of the Parties, on behalf of itself and each of its respective Releasors, hereby acknowledges, represents and warrants that it (i) has read and understands the terms in this Agreement, (ii) has consulted with and obtained the advice and counsel of its own attorney, (iii) has executed this Agreement and the releases therein without relying upon any statements, representations or warranties, written or oral, as to any law or fact made by any other Party, not expressly set forth herein, (iv) has executed this Agreement and the releases therein voluntarily and without any duress, coercion or undue influence of any kind, (v) is the sole owner of its Released Claims, and (vi) has not assigned, sold, or otherwise transferred its Released Claim to any other person or entity.

12.     **Remedies.** In addition to all other remedies at law or equity available to any Party with respect to any breach of any provision of this Agreement, the Parties agree that a breach of the provisions of Sections 2 through 10 of this Agreement cannot be adequately remedied at law or by money damages, that resort to legal remedies alone would impose an undue hardship on the non-breaching Party, and would frustrate the intention of the parties in entering into this Agreement, and that the non-breaching Party is entitled to specific performance and injunctive relief, in addition to any otherwise appropriate legal remedy.

13.     **Notices.**  Notices or certifications within the scope of any PMAs or indenture of the Acis CLOs shall be served in the manner required by the respective PMA or indenture. All other requirements for notices or certifications under this Agreement, including notices for Requested Discovery or service of accounting, shall be satisfied if effected by electronic mail and overnight delivery as follows:

009223

If to HCLOF:

To:

Richard Burwood, Director
Highland CLO Funding Ltd.
P.O. Box 650
1st Floor, Royal Chambers
St. Julians Ave
St. Peter Port, Guernsey, GY1 3JX


With a copy to:

Mark M. Maloney
King & Spalding LLP
1180 Peachtree Street, 35th Floor
Atlanta, Georgia 30309
mmaloney@kslaw.com

If to Acis:

To:
Joshua N. Terry
Acis Capital Management, LP
4514 Cole Ave. Suite 600
Dallas, TX 75205
josh@aciscm.com

With a copy to:

Jeff P. Prostok
Suzanne K. Rosen
Forshey Prostok, LLP
777 Main Street, Suite 1590
Fort Worth, TX 76102
jprostok@forsheyprostok.com
srosen@forsheyprostok.com

If to Terry:

Joshua Terry
4514 Cole Ave. Suite 600
Dallas, TX 75205
joshuanterry@gmail.com

009224

With a copy to:

Jeff P. Prostok
Suzanne K. Rosen
Forshey Prostok, LLP
777 Main Street, Suite 1590
Fort Worth, TX 76102
jprostok@forsheyprostok.com
srosen@forsheyprostok.com

14.    **Governing Law.**  This Release shall be governed by the laws of the State of Texas. Any claim or action arising out of or relating to this Agreement shall be brought in the United States District Court for the Northern District of Texas.

15.    **No Admission of Liability**. It is hereby understood and agreed that nothing herein, nor the acceptance or delivery of this Agreement by any Party shall be deemed or construed as an admission of liability of any nature whatsoever by any Party. This Agreement may be disclosed to the Bankruptcy Court or the Fifth Circuit by any Party for reasons other than to establish liability of any Party.

16.    **Authority to Enter Into the Agreement**. Each Party hereby represents, warrants and agrees to the others that (i) it has the requisite power and authority to enter into and perform the terms of this Agreement on behalf of itself and each of its respective Releasors, (ii) no further authority or approval is necessary, and (iii) the person executing this Agreement on his, her or its behalf, if applicable, has the full right and authority to fully commit and bind such Party.

17.    **Expenses.** Each Party shall bear its own expenses incurred in connection with the negotiation, execution and performance of this Agreement.

18.    **Entire Agreement.** This Agreement sets forth the entire understanding of the Parties with respect to the subject matter hereof, and supersedes all prior letters of intent, agreements, covenants, arrangements, communications, representations or warranties, whether oral or written, made by any officer, director, manager, member or representative of any of the Parties.

19.    **Counterparts**. This Agreement may be executed in multiple counterparts, each of which when taken together shall constitute one and the same instrument, and facsimile and PDF signatures shall be deemed originals.

*[Signatures Appear On Next Page]*

Executed and Agreed To:

**Acis Capital Management, L.P.:**
By: Shorewood GP, LLC, its general partner
Date: April __28__, 2021

By: _Joshua N. Terry_
Its: _President_

**Acis Capital Management GP, LLC:**

Date: April __28__, 2021

By: _Joshua N. Terry_
Its: _President_

**Joshua Terry:**

Date: April __25__, 2021

**Highland CLO Funding, Ltd.:**

Date: April _____, 2021

By: _____
Its: _____

By: _____
Its: _____

009226

Executed and Agreed To:

**Acis Capital Management, L.P.:**

Date: April _____, 2021

By:_____

Its:_____

**Acis Capital Management GP, LLC:**

Date: April _____, 2021

By:_____

Its:_____

**Joshua Terry:**

Date: April _____, 2021

_____

**Highland CLO Funding, Ltd.:**

Date: April 28th, 2021

By: RICHARD BURWOOD

Its: DIRECTOR

By: Richard Boleat

Its: Director

009227

**EXHIBIT A**

[_____], 2021

ACIS CLO 2014-3 Ltd.
c/o FFP (Corporate Services) Limited
2nd Floor, Harbour Centre
42 North Church Street
George Town, Grand Cayman
Cayman Islands
Facsimile: 1 345 941 5855

**Re: Direction Letter – ACIS CLO 2014-3 Ltd.**

Dear Sir or Madam:

Reference is hereby made to that certain Indenture, dated as of February 25, 2014 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS  CLO 2014-3 Ltd. (the "Issuer"), ACIS CLO 2014-3 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least a Majority of the Aggregate Outstanding Amount of the Subordinated Notes have delivered a written notice dated [_____], 2021 to the Issuer directing the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [_____], 2021.

In connection therewith, the undersigned Holders hereby direct the Issuer to deliver an Issuer Order to the Trustee to deliver a notice of redemption to the Holders in the manner required by Section 9.4 of the Indenture in the name and at the expense of the Co-Issuers pursuant to Section 9.4(b) of the Indenture.

*[Signature pages follow]*

009229

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)

By:_____
Name:
Title:

[_____], 2021

ACIS CLO 2014-3 Ltd.
c/o MaplesFS Limited
P.O. Box 1093
Boundary Hall, Cricket Square
Grand Cayman, KY1-1102
Cayman Islands
Telephone: +1 (345) 945-7099
Facsimile: +1 (345) 945-7100

U.S. Bank National Association
190 South LaSalle Street, 8th Floor
Chicago, IL 60603
Attn: Global Corporate Trust – ACIS CLO 2014-3 Ltd.
Fax: 312-332-8030
E-mail: ACIS.CLO.2014.04@usbank.com

Acis Capital Management, L.P.
c/o Acis Capital Management GP, LLC
4514 Cole Avenue, Suite 600
Dallas, TX 75205
Attn: Joshua N. Terry, President
Email: Josh@aciscm.com

**Re: ACIS CLO 2014-3 Ltd.**

Dear Sir or Madam:

    Reference is hereby made to that certain Indenture, dated as of February 25, 2014 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS CLO 2014-3 Ltd. (the "Issuer"), ACIS CLO 2014-3 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

    Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least a Majority of the Aggregate Outstanding Amount of the Subordinated Notes hereby direct the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [_____], 2021.

*[Signature pages follow]*

009231

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)


By:_____
Name:
Title:


By:_____
Name:
Title:

[_____], 2021

ACIS CLO 2014-4 Ltd.
c/o FFP (Corporate Services) Limited
2nd Floor, Harbour Centre
42 North Church Street
George Town, Grand Cayman
Cayman Islands
Facsimile: 1 345 941 5855

**Re: Direction Letter – ACIS CLO 2014-4 Ltd.**

Dear Sir or Madam:

Reference is hereby made to that certain Indenture, dated as of June 5, 2014 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS CLO 2014-4 Ltd. (the "Issuer"), ACIS CLO 2014-4 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least 66 2/3% of the Aggregate Outstanding Amount of the Subordinated Notes have delivered a written notice dated [_____], 2021 to the Issuer directing the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [_____], 2021.

In connection therewith, the undersigned Holders hereby direct the Issuer to deliver an Issuer Order to the Trustee to deliver a notice of redemption to the Holders in the manner required by Section 9.3 of the Indenture in the name and at the expense of the Co-Issuers pursuant to Section 9.3(b) of the Indenture.

*[Signature pages follow]*

WORKAMER\38549379.v3

009233

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)


By:_____
Name:
Title:

009234

[\_\_\_ \_\_\_], 2021

ACIS CLO 2014-4 Ltd.
c/o FFP (Corporate Services) Limited
2nd Floor, Harbour Centre
42 North Church Street
George Town, Grand Cayman
Cayman Islands
Facsimile: 1 345 941 5855

U.S. Bank National Association
190 South LaSalle Street, 8th Floor
Chicago, IL 60603
Attn: Corporate Trust Services – ACIS CLO 2014-4
Fax: 312-332-8030
Email: ACIS.CLO.2014.04@usbank.com

Acis Capital Management, L.P.
c/o Acis Capital Management GP, LLC
4514 Cole Avenue, Suite 600
Dallas, TX 75205
Attn: Joshua N. Terry, President
Email: Josh@aciscm.com

**Re: ACIS CLO 2014-4 Ltd.**

Dear Sir or Madam:

Reference is hereby made to that certain Indenture, dated as of June 5, 2014 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS CLO 2014-4 Ltd. (the "Issuer"), ACIS CLO 2014-4 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least 66 2/3% of the Aggregate Outstanding Amount of the Subordinated Notes hereby direct the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [\_\_\_ \_\_], 2021.

*[Signature pages follow]*

009235

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)


By:_____
Name:
Title:


By:_____
Name:
Title:

[_____], 2021

ACIS CLO 2014-5 Ltd.
c/o FFP (Corporate Services) Limited
2nd Floor, Harbour Centre
42 North Church Street
George Town, Grand Cayman
Cayman Islands
Facsimile: 1 345 941 5855

**Re: Direction Letter – ACIS CLO 2014-5 Ltd.**

Dear Sir or Madam:

Reference is hereby made to that certain Indenture, dated as of November 18, 2014 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS CLO 2014-5 Ltd. (the "Issuer"), ACIS CLO 2014-5 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least 66 2/3% of the Aggregate Outstanding Amount of the Subordinated Notes have delivered a written notice dated [_____], 2021 to the Issuer directing the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [_____], 2021.

In connection therewith, the undersigned Holders hereby direct the Issuer to deliver an Issuer Order to the Trustee to deliver a notice of redemption to the Holders in the manner required by Section 9.3 of the Indenture in the name and at the expense of the Co-Issuers pursuant to Section 9.3(b) of the Indenture.

*[Signature pages follow]*

009237

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)


By:_____
Name:
Title:

[_____ _], 2021

ACIS CLO 2014-5 Ltd.
c/o FFP (Corporate Services) Limited
2nd Floor, Harbour Centre
42 North Church Street
George Town, Grand Cayman
Cayman Islands
Facsimile: 1 345 941 5855

U.S. Bank National Association
190 South LaSalle Street, 8th Floor
Chicago, IL 60603
Attn: Corporate Trust Services – ACIS CLO 2014-5
Fax: 312-332-8030
Email: ACIS.CLO.2014.05@usbank.com

Acis Capital Management, L.P.
c/o Acis Capital Management GP, LLC
4514 Cole Avenue, Suite 600
Dallas, TX 75205
Attn: Joshua N. Terry, President
Email: Josh@aciscm.com

**Re: ACIS CLO 2014-5 Ltd.**

Dear Sir or Madam:

Reference is hereby made to that certain Indenture, dated as of November 18, 2014 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS CLO 2014-5 Ltd. (the "Issuer"), ACIS CLO 2014-5 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least 66 2/3% of the Aggregate Outstanding Amount of the Subordinated Notes hereby direct the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [_____ __], 2021.

*[Signature pages follow]*

009239

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)

By:_____
Name:
Title:


By:_____
Name:
Title:

[_____], 2021

ACIS CLO 2015-6 Ltd.
c/o FFP (Corporate Services) Limited
2nd Floor, Harbour Centre
42 North Church Street
George Town, Grand Cayman
Cayman Islands
Facsimile: 1 345 941 5855

**Re: Direction Letter – ACIS CLO 2015-6 Ltd.**

Dear Sir or Madam:

    Reference is hereby made to that certain Indenture, dated as of April 16, 2015 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS CLO 2015-6 Ltd. (the "Issuer"), ACIS CLO 2015-6 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

    Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least 66 2/3% of the Aggregate Outstanding Amount of the Subordinated Notes have delivered a written notice dated [_____], 2021 to the Issuer directing the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [_____], 2021.

    In connection therewith, the undersigned Holders hereby direct the Issuer to deliver an Issuer Order to the Trustee to deliver a notice of redemption to the Holders in the manner required by Section 9.3 of the Indenture in the name and at the expense of the Co-Issuers pursuant to Section 9.3(b) of the Indenture.

*[Signature pages follow]*

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)

By:_____
Name:
Title:

009242

[\_\_\_ \_\_], 2021

ACIS CLO 2015-6 Ltd.
c/o FFP (Corporate Services) Limited
2nd Floor, Harbour Centre
42 North Church Street
George Town, Grand Cayman
Cayman Islands
Facsimile: 1 345 941 5855

U.S. Bank National Association
190 South LaSalle Street, 8th Floor
Chicago, IL 60603
Attn: Corporate Trust Services – ACIS CLO 2015-6
Fax: 312-332-8030
Email: ACIS.CLO.2015.06@usbank.com

Acis Capital Management, L.P.
c/o Acis Capital Management GP, LLC
4514 Cole Avenue, Suite 600
Dallas, TX 75205
Attn: Joshua N. Terry, President
Email: Josh@aciscm.com

**Re: ACIS CLO 2015-6 Ltd.**

Dear Sir or Madam:

Reference is hereby made to that certain Indenture, dated as of April 16, 2015 (as amended, modified or supplemented from time to time, the "Indenture"), among ACIS CLO 2015-6 Ltd. (the "Issuer"), ACIS CLO 2015-6 LLC (the "Co-Issuer") and U.S. Bank National Association (the "Trustee"). Capitalized terms used but not defined herein shall have the meanings set forth or incorporated by reference in the Indenture.

Pursuant to Sections 9.2 and 14.3 of the Indenture, the undersigned Holders of at least 66 2/3% of the Aggregate Outstanding Amount of the Subordinated Notes hereby direct the Issuer to effect an Optional Redemption of all Secured Notes and Subordinated Notes in full on [\_\_\_ \_\_], 2021.

*[Signature pages follow]*

Very truly yours,

**HIGHLAND CLO FUNDING, LTD.** (f/k/a
Acis Loan Funding, Ltd.)

By:_____
Name:
Title:


By:_____
Name:
Title:

# HMIT Exhibit No. 77

009245

# UNITED STATES BANKRUPTCY COURT

<u>Northern</u> DISTRICT OF <u>Texas</u>

Case number 19-34054 sgj11

In re: Highland Capital Management, LP

§
§
§
§

Case No. 19-34054

Debtor(s)

☐ Jointly Administered

## Post-confirmation Report

Chapter 11

Quarter Ending Date: 03/31/2023

Petition Date: 10/16/2019

Plan Confirmed Date: 02/22/2021

Plan Effective Date: 08/11/2021

This Post-confirmation Report relates to: ◉ Reorganized Debtor

○ Other Authorized Party or Entity: _____

Name of Authorized Party or Entity

/s/ Zachery Z. Annable

Signature of Responsible Party

04/21/2023

Date

Zachery Z. Annable, Hayward PLLC

Printed Name of Responsible Party

10501 N. Central Expressway, Suite 106
Dallas TX 75231

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

009246

Debtor's Name Highland Capital Management, LP       Case No. 19-34054

## Part 1: Summary of Post-confirmation Transfers

| | Current Quarter | Total Since Effective Date |
|---|---|---|
| a. Total cash disbursements | $15,817,995 | $115,423,961 |
| b. Non-cash securities transferred | $0 | $0 |
| c. Other non-cash property transferred | $573,888 | $5,194,652 |
| d. Total transferred (a+b+c) | $16,391,883 | $120,618,613 |

## Part 2: Preconfirmation Professional Fees and Expenses

| | | | Approved Current Quarter | Approved Cumulative | Paid Current Quarter | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Professional fees & expenses (bankruptcy) incurred by or on behalf of the debtor     *Aggregate Total* | | $0 | $33,005,136 | $0 | $33,005,136 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Pachulski Stang Ziehl & Jones | Lead Counsel | $0 | $24,312,860 | $0 | $24,312,860 |
| ii | Development Specialists, Inc. | Financial Professional | $0 | $5,765,448 | $0 | $5,765,448 |
| iii | Kurtzman Carson Consultants | Other | $0 | $2,054,716 | $0 | $2,054,716 |
| iv | Hayward & Associates PLLC | Local Counsel | $0 | $872,112 | $0 | $872,112 |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |
| xv | | | | | | |
| xvi | | | | | | |
| xvii | | | | | | |
| xviii | | | | | | |
| xix | | | | | | |
| xx | | | | | | |
| xxi | | | | | | |
| xxii | | | | | | |
| xxiii | | | | | | |
| xxiv | | | | | | |
| xxv | | | | | | |
| xxvi | | | | | | |
| xxvii | | | | | | |
| xxviii | | | | | | |
| xxix | | | | | | |

009247

Debtor's Name Highland Capital Management, LP                                    Case No. 19-34054

| | | | | | |
|------|--|--|--|--|--|
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |

UST Form 11-PCR (12/01/2021)                    3

009248

Debtor's Name Highland Capital Management, LP

Case No. 19-34054

| | | | | | | |
|---|---|---|---|---|---|---|
| lxxii | | | | | | |
| lxxiii | | | | | | |
| lxxiv | | | | | | |
| lxxv | | | | | | |
| lxxvi | | | | | | |
| lxxvii | | | | | | |
| lxxviii | | | | | | |
| lxxix | | | | | | |
| lxxx | | | | | | |
| lxxxi | | | | | | |
| lxxxii | | | | | | |
| lxxxiii | | | | | | |
| lxxxiv | | | | | | |
| lxxxv | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxix | | | | | | |
| xc | | | | | | |
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |
| xcix | | | | | | |
| c | | | | | | |
| ci | | | | | | |

| | | | Approved Current Quarter | Approved Cumulative | Paid Current Quarter | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Professional fees & expenses (nonbankruptcy) incurred by or on behalf of the debtor *Aggregate Total* | | $0 | $7,604,472 | $0 | $7,604,472 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Hunton Andrews Kurth LLP | Other | $0 | $1,149,807 | $0 | $1,149,807 |
| ii | Foley Gardere, Foley & Lardne | Other | $0 | $629,088 | $0 | $629,088 |
| iii | Deloitte | Financial Professional | $0 | $553,413 | $0 | $553,413 |
| iv | Mercer (US) Inc. | Other | $0 | $204,767 | $0 | $204,767 |
| v | Teneo Capital, LLC | Financial Professional | $0 | $1,364,823 | $0 | $1,364,823 |
| vi | Wilmer Cutler Pickering Hale | Other | $0 | $2,650,937 | $0 | $2,650,937 |

Debtor's Name Highland Capital Management, LP                                                 Case No.  19-34054

| | | | | | | |
|---|---|---|---|---|---|---|
| vii | Carey Olsen | Other | $0 | $280,264 | $0 | $280,264 |
| viii | ASW Law | Other | $0 | $4,976 | $0 | $4,976 |
| ix | Houlihan Lokey Financial Advi | Other | $0 | $766,397 | $0 | $766,397 |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |
| xv | | | | | | |
| xvi | | | | | | |
| xvii | | | | | | |
| xviii | | | | | | |
| xix | | | | | | |
| xx | | | | | | |
| xxi | | | | | | |
| xxii | | | | | | |
| xxiii | | | | | | |
| xxiv | | | | | | |
| xxv | | | | | | |
| xxvi | | | | | | |
| xxvii | | | | | | |
| xxviii | | | | | | |
| xxix | | | | | | |
| xxx | | | | | | |
| xxxi | | | | | | |
| xxxii | | | | | | |
| xxxiii | | | | | | |
| xxxiv | | | | | | |
| xxxv | | | | | | |
| xxxvi | | | | | | |
| xxxvii | | | | | | |
| xxxvii | | | | | | |
| xxxix | | | | | | |
| xl | | | | | | |
| xli | | | | | | |
| xlii | | | | | | |
| xliii | | | | | | |
| xliv | | | | | | |
| xlv | | | | | | |
| xlvi | | | | | | |
| xlvii | | | | | | |
| xlviii | | | | | | |

UST Form 11-PCR (12/01/2021)                                    5

009250

Debtor's Name Highland Capital Management, LP                                    Case No.  19-34054

| | | | | | |
|---|---|---|---|---|---|
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxviii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |

009251

Debtor's Name Highland Capital Management, LP      Case No. 19-34054

| | | | | | |
|---|---|---|---|---|---|
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |
| xcix | | | | | |
| c | | | | | |
| ci | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | $0 | $60,171,929 | $0 | $60,171,929 |

## Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan

| | Total Anticipated Payments Under Plan | Paid Current Quarter | Paid Cumulative | Allowed Claims | % Paid of Allowed Claims |
|---|---|---|---|---|---|
| a. Administrative claims | $0 | $0 | $15,750 | $15,750 | 100% |
| b. Secured claims | $5,843,261 | $0 | $5,274,477 | $5,274,477 | 100% |
| c. Priority claims | $16,498 | $0 | $1,213,832 | $1,213,832 | 100% |
| d. General unsecured claims | $205,144,544 | $15,044,364 | $270,205,592 | $397,485,568 | 68% |
| e. Equity interests | $0 | $0 | $0 | | |

## Part 4: Questionnaire

a. Is this a final report?      Yes ◯   No ⦿

     If yes, give date Final Decree was entered: _____

     If no, give date when the application for Final Decree is anticipated: _____

b. Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930?      Yes ⦿   No ◯

009252

Debtor's Name Highland Capital Management, LP                                                    Case No.  19-34054

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information and provision of this information is mandatory.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6) and to otherwise evaluate whether a reorganized chapter 11 debtor is performing as anticipated under a confirmed plan. Disclosure of this information may be to a bankruptcy trustee when the information is needed to perform the trustee's duties, or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes.  For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/ rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case, or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Post-confirmation Report and its attachments, if any, are true and correct and that I have been authorized to sign this report.</u>**

/s/ James Seery                                                    James Seery
Signature of Responsible Party                                     Printed Name of Responsible Party

CEO                                                                04/21/2023
Title                                                              Date

009253

Debtor's Name Highland Capital Management, LP                                    Case No.  19-34054



Page 1

Other Page 1

Page 2 Minus Tables

Bankruptcy Table 1-50

009254

Debtor's Name Highland Capital Management, LP                                         Case No.  19-34054



Bankruptcy Table 51-100

Non-Bankruptcy Table 1-50

Non-Bankruptcy Table 51-100

Part 3, Part 4, Last Page

009255

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) |  |

### <u>GLOBAL NOTES TO POST CONFIRMATION REPORT</u>

The Reorganized Debtor has filed the attached post-confirmation report (the "<u>PCR</u>") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "<u>Court</u>"), on behalf of debtor Highland Capital Management, L.P., Case No. 19-34054 (SGJ) (the "<u>Bankruptcy Case</u>"). The Reorganized Debtor prepared the PCR with the assistance of the Reorganized Debtor's employees, advisors, and professionals. The PCR was prepared solely for the purpose of complying with the post-confirmation quarterly reporting requirements established by the United States Trustee Program (*see* https://www.justice.gov/ust/chapter-11-operating-reports). The PCR should not be relied upon by any persons for any information in connection with current or future financial conditions or events relating to the Reorganized Debtor or its estate.

The financial information contained in the PCR is preliminary, unaudited, limited in scope, and is not prepared in accordance with accounting principles generally accepted in the United States of America nor in accordance with other applicable non-bankruptcy law. In preparing the PCR, the Reorganized Debtor relied on financial data from the books and records available to it at the time of such preparation, as well as certain filings on the docket in the Bankruptcy Case. Although the Reorganized Debtor made commercially reasonable efforts to ensure the accuracy and completeness of the PCR, inadvertent errors or omissions may exist. The Reorganized Debtor reserves the right to amend and supplement the PCR as may be necessary or appropriate.

**Part 2: Preconfirmation Professional Fees and Expenses**

In Section A of the PCR, the Reorganized Debtor listed the bankruptcy related professionals employed in connection with the Bankruptcy Case.

In Section B of the PCR, the Reorganized Debtor listed non-bankruptcy professionals, those that would have been retained absent the Bankruptcy Case, and the ordinary course professionals ("<u>OCP</u>"). Hunton Andrews Kurth LLP ("<u>Hunton</u>") and Wilmer Cutler Pickering Hale and Dorr

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

LLP ("<u>Wilmer Hale</u>") were originally ordinary course professionals but were later employed professionals. The amounts listed for Hunton and Wilmer Hale include the OCP payments and employed professional payments.

In Section C of the PCR, the Reorganized Debtor totals all payments included in Sections A and B, along with payments made to professional employed by the official committee of unsecured creditors (the "<u>Committee</u>").

The approved current quarter, approved cumulative, and paid cumulative will have the same amount listed due to approval and payment of final fee applications.

**Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan**

The payments made to holders of General Unsecured Claims were disbursed from the Claimant Trust, but for presentation purposes, have been included in Part 3 of the post-confirmation report for the Reorganized Debtor.

The presentation contained in this PCR does not reflect the material and necessary reserves that will be taken in accordance with Reorganized Debtor's governing documents and the Plan.

The Debtor reserves all right to object to any claim in accordance with the terms of the Plan.

**Addendum to Global Notes for March 31, 2023 Quarterly Operating Report
Summary of Highland Claimant Trust ("Claimant Trust") & Highland Capital Management, L.P.
("HCMLP"), Effectuation of Plan as of March 31, 2023**

**Item 1: Quarter-ending cash, Disputed Claims Reserve, and Indemnity Trust summary (in $ millions)**

| Quarter End Date | Quarter End Cash and Equivalents balances [1][2] | Cumulative Funding – Disputed Claims Reserve | Cumulative Funding – Indemnity Trust [2] |
|---|---|---|---|
| 3/31/2021 | $27.9 | n/a | n/a |
| 6/30/2021 | $17.9 | n/a | n/a |
| 9/30/2021 | $33.6 | n/a | $2.5 |
| 12/31/2021 | $19.8 | n/a | $2.5 |
| 3/31/2022 | $21.1 | n/a | $2.5 |
| 6/30/2022 | $85.2 | n/a | $2.5 |
| 9/30/2022 | $31.8 | $11.0 | $20.0 |
| 12/31/2022 | $36.6 | $11.0 | $20.0 |
| 3/31/2023 | $25.0 | $11.6 | $32.0 |

[1] Bank cash for Claimant Trust, HCMLP (debtor up to August 11, 2021; re-organized from August 11, 2021), Highland Litigation Trust Sub-Trust ("Litigation Trust"), HCMLP GP LLC and including cash at brokerage account(s), cash equivalents as well as cash or equivalent reserves for earned operating obligations, if applicable. All amounts herein EXCLUDE the Highland Indemnity Trust ("Indemnity Trust") and the cash held within the Disputed Claims Reserve, which are described separately, as well as any other segregated agency or shareholder representative account(s) for which cash is held solely for the benefit of others.

[2] Based upon the baseless filed motion seeking to litigate against indemnified parties and threats from vexatious parties, the Claimant Trustee expects to fund significant additional amounts into the Indemnity Trust.

**Item 2: Class 8 / Class 9 Summary (in $ millions)**

Note that payments described within Part 3 of the quarterly operating report include payments to classes 6, 7, 8, and 9, whereas payments below only include payments to classes 8 and 9, as applicable.

| Class 8 / 9 Summary (in $ millions) | Cash Payments through March 31, 2023 | Disputed Claims Reserve | Remaining [3] |
|---|---|---|---|
| Class 8 | $263.4 | $11.6 | $28.7 |
| Class 9 | $0.0 | $0.0 | $98.8 |
| Classes 8 + 9 | $263.4 | $11.6 | $127.4 |

[3] Face amount of allowed class 8/9 claims PLUS face amount of pending class 8/9 claims LESS cumulative payments to classes 8/9 LESS cumulative reserves for classes 8/9. Amounts EXCLUDE accrued interest on claim balances as well as amounts of pending admin priority claims, and unliquidated pending class 8/9 claims. Any future distributions to classes 8 and 9 are subject to satisfaction of Claimant Trust senior obligations.

009258

## Item 3: Remaining disputed/expunged or pending claims (in $ millions)

Amounts reserved within the Disputed Claims Reserve are in no way indicative of the value or validity of the claim, but rather are simply established based on the face amount of the claim and the proportionate calculation of amounts already distributed to actual allowed claimholders.

| Party | Claim number(s) | Face amount | Reserved in Disputed Claims Reserve | Unreserved |
|---|---|---|---|---|
| Highland CLO Management, Ltd. | Scheduled/Disputed | $10.1 | ($9.2) | $1.0 |
| Patrick Daugherty [4] | 205 | $2.7 | ($2.4) | $0.3 |
| CLO Holdco, Ltd. [5] | 254 | Unliquidated | $0.0 | See note |
| HCRE Partners, LLC [6] | 146 | Unliquidated | $0.0 | See note |
| Hunter Covitz [7] | 186 | Unliquidated | $0.0 | See note |
| Highland Capital Management Fund Advisors, LP and NexPoint Advisors, LP [8] | 239 | $6.7 | $0.0 | $6.7 |
| Total | | $19.5 | ($11.6) | $7.9 |

[4] Proof of claim has been partially settled, with the exception of the Reserved Claim as described in the settlement agreement with Mr. Daugherty [Docket No. 3298]. Claimant may assert additional amounts may be owed.

[5] CLO Holdco, Ltd., initially filed proof of claim 133 and subsequently amended that claim to $0.00 in open court and then by filing proof of claim 198. HCMLP relied on that agreement and amendment. Subsequently, CLO Holdco, Ltd., sought to amend claim 198 to an estimated amount of $3.8 million by filing proof of claim 254. The Litigation Trust objected to the attempted amended claim, and CLO Holdco, Ltd.'s claim was adjudicated at $0.00. CLO HoldCo, Ltd., has appealed.

[6] HCRE Partners, LLC filed a motion to withdraw proof of claim 146. HCMLP contested that the withdrawal of the claim. The matter is sub judice.

[7] Proof of claim 186 was expunged, but alleged transferee of expunged claim has appealed; appeal pending.

[8] Proof of claim 239, which is an administrative priority claim, was expunged and judgment was granted against alleged creditor, but alleged creditor has appealed.

## Item 4: Interest-bearing debt outstanding as of March 31, 2023 (in $ millions)

No interest-bearing debt outstanding. Exit Facility retired in 2022. [9]

[9] Encompasses Claimant Trust, HCMLP (re-organized), Litigation Trust, HCMLP GP LLC, but does not look-through to their respective subsidiaries and/or private funds or companies held by private funds.

009259

**Item 5: Remaining investments, notes, and other assets [10]**

| Asset (alphabetic sorting, except "Other misc.") | Description |
|---|---|
| Breach of contract judgment | Direct asset. Bonded judgment against Highland Capital Management Fund Advisors, LP and NexPoint Advisors, LP, pending appeal. |
| Contempt civil penalty | Direct asset. Civil penalty owed by Mr. Dondero from the first of two contempt orders against him (his second contempt civil penalty was already received from subsidiary of DAF). |
| Contingent rights, post-sale | Residual contingent rights tied to milestones from a company that was sold Pre-Petition – direct and indirect interests through managed fund(s). |
| Highland CLO Funding, Ltd. ("HCLOF") | Majority-owned by HCMLP or Claimant Trust (directly or indirectly) but controlled by two independent Guernsey-based directors – investments of this entity are predominantly subordinated notes of Acis-managed CLOs, whose remaining value is predominantly cash. Remaining distributions are held up due to litigation against Acis-related entities and HCLOF by Mr. Dondero's entities. |
| NHT.U (TSXV exchange) | Direct asset. Hospitality REIT managed by a subsidiary of NexPoint Advisors, LP. |
| NHT Holdco LLC | Hospitality REIT managed by a subsidiary of NexPoint Advisors, LP. Indirect interests held through a Delaware LLC created for the sole purpose of holding shares of the hospitality REIT. Mr. Dondero is the manager of the entity. HCMLP has demanded shares as provided in the LLC agreement but has yet to receive delivery of the shares. |
| Note from Hunter Mountain Investment Trust | Direct asset. Defaulted note. Subject to Litigation Trustee collecting. |
| Note from The Dugaboy Investment Trust ("Dugaboy") | Direct asset. Term note. Last receipt in December 2022. Next scheduled receipt in December 2023. |
| Notes from Mr. Dondero + his affiliates (except Dugaboy) | Direct asset. Demand notes and accelerated term notes, plus costs of collection. Subject to Claimant Trust collection litigation. |
| Post-sale escrows | Residual escrow(s) remaining related to the monetizations of two private companies. Direct and indirect interests through managed fund(s). |
| Private companies | Direct and indirect interests in two privately held companies. |
| Private equity fund interests | Direct or indirect interests in two private funds that make Oil & Gas and Healthcare-related investments, respectively. |
| SE Multifamily Holdings LLC | Direct asset. Membership interests. Subject to Claimant Trust litigation. |
| Other misc. | Future revenue streams; receivables; misc. investments; cash (unrestricted and reserved); litigation claims of the Litigation Trust; indemnification claims. |

[10] Listing is not comprehensive, but rather is intended to capture potentially significant asset categories that have yet to be fully monetized. Listing includes assets of the Claimant Trust, HCMLP (re-organized), Litigation Trust, and HCMLP GP LLC. Descriptions herein indicate whether the asset is directly owned by one or more of these entities and/or whether the asset is indirectly beneficially owned.

# HMIT Exhibit No. 78

009261

Page 1

```
 1

 2           IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
 3                     DALLAS DIVISION

 4    In re:                        )
                                    ) Chapter 11
 5    HIGHLAND CAPITAL MANAGEMENT, L.P.) Case No.
                                    ) 19-34054-sqj11
 6                Debtor.           )
      ------------------------------- )
 7                                  )
      HIGHLAND CAPITAL MANAGEMENT, L.P.)
 8                                  )
                     Plaintiff,     )
 9                                  )
            -vs-                    ) Adversary
10                                  ) Proceeding No.
      NEXPOINT ADVISORS, L.P., JAMES ) 21-03005-sgj
11    DONDERO, NANCY DONDERO, AND THE )
      DUGABOY INVESTMENT TRUST,      )
12                                  )
                     Defendants.    )
13    -------------------------------

14

15

16        VIDEO DEPOSITION OF JAMES P. SEERY, JR.

17                New York, New York

18             Thursday, October 21, 2021

19

20

21

22

23

24    Reported by:
      MARIANNE WITKOWSKI-SMITH
25    JOB NO. 201192
```

Page 2

```
 1
 2
 3
 4                  October 21, 2021
 5                  2:02 p.m.
 6
 7
 8       Video Deposition of JAMES P. SEERY, JR.,
 9   individually and on behalf of HIGHLAND CAPITAL
10   MANAGEMENT LP, held at the offices of Pachulski
11   Stang Ziehl & Jones LLP, 780 Third Avenue, New
12   York, New York, before Marianne Witkowski-Smith,
13   a Shorthand Reporter and Notary Public of the
14   State of New York.
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2   A P P E A R A N C E S:
 3
 4
 5   PACHULSKI STANG ZIEHL & JONES
 6   Attorneys for Highland Capital Management LP
     and the Witness
 7
         780 Third Avenue
 8
         New York, New York 10017
 9
10   BY:  JOHN MORRIS, ESQ.
11       GREGORY DEMO, ESQ.
12       HAYLEY WINOGRAD, ESQ.
13
14   MUNSCH HARDT KOPF & HARR
15   Attorneys for NexPoint Advisors LP
16
         500 North Akard Street
17
         Dallas, Texas 75201
18
19   BY:  DAVOR RUKAVINA, ESQ.
20       THOMAS BERGHMAN, ESQ.
21
22
23
24
25           (Continued on Next Page)
```

Page 4

```
 1
 2   A P P E A R A N C E S (Cont'd):
 3
 4
 5   STINSON
 6   Attorneys for James Dondero, Nancy Dondero,
     HCRE, HCMS
 7
         3102 Oak Lawn Avenue
 8
         Dallas, Texas 75219
 9
10   BY:  DEBORAH DEITSCH-PEREZ, ESQ.
11       MICHAEL AIGEN, ESQ.
12
13
     HELLER, DRAPER, HAYDEN, PATRICK, & HORN
14
     Attorneys for The Dugaboy Investment Trust
15
         650 Poydras Street
16
         New Orleans, Louisiana 70130
17
     BY:  WARREN HORN, ESQ.
18
19
20
21   ALSO PRESENT:
22       MANUEL GARCIA, Legal Video Specialist
23       THANHAN NGUYEN, ESQ. (Via Zoom)
24       AARON LAWRENCE, ESQ. (Via Zoom)
25       LA ASIA CANTY (Via Zoom)
```

Page 5

```
 1              J. Seery
 2       VIDEO TECHNICIAN:  This is the
 3   start of Media Label No. 1 in the
 4   video-recorded deposition of James P.
 5   Seery Jr., in the matter of Highland
 6   Capital Management LP vs. NexPoint
 7   Advisors LP, et al., on October the
 8   21st, 2021, at approximately 2:02 p.m.
 9       My name is Manuel Garcia.  I'm the
10   certified legal videographer from TSG
11   Reporting Inc.  The court reporter is
12   Marianne Smith, in association with TSG
13   Reporting.
14       Counsel, please introduce
15   yourselves.
16       MR. RUKAVINA:  My name is Davor
17   Rukavina.  I represent NexPoint
18   Advisors LP.
19       MR. MORRIS:  My name is John
20   Morris from Pachulski Stang Ziehl &
21   Jones, on behalf of Capital -- Highland
22   Capital Management LP, and I'm
23   representing the witness, James P.
24   Seery, Jr., today.
25       MS. DEITSCH-PEREZ:  Hi.  This is
```

Page 166

J. Seery

2    Q.    And -- and not even in a general
3  way, other than zero to 25 million?
4    A.    That's a pretty good range.
5    Q.    Okay.  Do you have an understanding
6  of what the typical compensation is -- for a
7  financial advisory CEO is for a company that
8  has a billion or more under management?
9    A.    It depends on the type of assets
10  that are under management, it tends -- it
11  depends on the performance of the assets and
12  it depends on the cost structure of the
13  business.
14    Q.    And taking those things into
15  account, can you describe for us what the
16  compensation for a CEO of a financial advisor
17  firm is, where there are assets under
18  management of a billion or more?
19    A.    When you [mean] a financial
20  advisor, do you mean an FA type firm or do
21  you -- financial advisor, or do you mean
22  somebody who advises investors?
23    Q.    I -- I'm talking about a company
24  similar to Highland.
25    A.    So high -- Highland is a -- is a

Page 167

J. Seery

2  combination of types of businesses.  It's
3  basically, in the last five years, at best a
4  melting ice cube.  It receives certain
5  management fees and then it gives away
6  services at below cost.
7    So Highland was run at a loss.
8  Typically people who run businesses that
9  operate at an operating loss don't get paid a
10  lot of money.
11    Q.    Let me -- let me ask you, you're
12  now -- you've been the CEO of Highland for a
13  while, right?
14    A.    That's correct.
15    Q.    And you're going to remain the CEO
16  for a while longer?
17    A.    Perhaps.
18    Q.    And do you have an expectation of
19  how many years in total you'll likely be the
20  CEO of Highland?
21    A.    The less the better.
22    Q.    But aside from that, do you have an
23  expectation of how many years you will likely
24  be the CEO of Highland?
25    A.    I don't.  I hope we complete the

Page 168

J. Seery

2  monetization by 2022.  Whether I'm the CEO or
3  not that will depend on the oversight board
4  and whether I want to continue to do it.
5    Q.    Okay.  And if you are as -- as
6  successful as you hope to be, whatever that
7  is, how much do you expect to make as the CEO
8  of Highland on average for each year that you
9  will have been the CEO of Highland?
10    MR. MORRIS:  Objection to the
11  form of the question.
12    A.    I -- I don't have a particular
13  expectation right now.  I have to negotiate
14  that, but I would expect to make a few
15  million dollars a year.
16    Q.    Have you not negotiated your
17  potential contingent compensation yet?
18    A.    I have not.
19    Q.    What -- what do you intend to ask
20  for?
21    MR. MORRIS:  Objection to the
22  form of the question.
23    A.    I'd like to get a significant
24  amount of money, as much as I can get and
25  treat my team fairly, but it has to be fair

Page 169

J. Seery

2  based on the returns that we get for the
3  investors.
4    Q.    So based on, if you were as -- as
5  successful as you hope to be, what do you
6  think that number would be on an annual
7  basis?
8    (Simultaneous speaking and
9  reporter interjection.)
10    MR. MORRIS:  Objection to the
11  form of the question.
12    A.    I would expect it to be at least a
13  few million dollars a year.  If I was as
14  successful as I think we will be, it should
15  be significantly more than that.
16    Q.    Okay.  And so what does -- what
17  is -- because I don't know you very well,
18  Mr. Seery.
19    To you, what is significantly more
20  than a few million a year?
21    A.    Just to be clear, you don't know me
22  at all.  We've never met, so we'll -- we'll
23  make sure that that's clear so we don't --
24  there's no implication that there's some
25  prior relationship or that we've ever worked

Page 186

J. Seery

```
 1              J. Seery
 2          MR. MORRIS:  And, and -- and I --
 3    and I object, you asked him if -- I
 4    just -- I, I --
 5          MS. DEITSCH-PEREZ:  Well, John --
 6          MR. MORRIS:  -- it's not -- the
 7    judge will rule.
 8          Go ahead.
 9  BY MS. DEITSCH-PEREZ:
10    Q.   You've heard of -- Highland has
11  interests in Cornerstone, Trussway and MGM,
12  that's correct?
13          MR. MORRIS:  Objection to the
14    form of the question.
15    A.   You should be precise.  Highland
16  owns certain equity interests in Cornerstone,
17  approximately 4 percent.  Highland owns,
18  indirectly, all of the interests -- almost
19  all of the interests in Trussway.  Highland
20  owns a small piece of MGM.
21    Q.   Okay.  And have you made any
22  inquiry into whether employees at Highland
23  referred to these colloquially as portfolio
24  companies?
25    A.   I --
```

Page 187

J. Seery

```
 1              J. Seery
 2          MR. MORRIS:  Object --
 3    A.   I -- I know that cornerstone is
 4  sometimes referred to as a portfolio company.
 5  I know that Trussway is referred to as a
 6  portfolio company.
 7          It would be -- I've never heard
 8  anyone refer to as -- MGM as a portfolio
 9  company.
10    Q.   Have you ever made an inquiry as to
11  whether sometimes it was colloquially called
12  a portfolio company?
13    A.   I -- I haven't made an inquiry as
14  to it, no.  I've been around the business for
15  a year-and-a-half, nineteen months.
16    Q.   Have you ever heard Mr. Dondero
17  refer to MGM as one of the portfolio
18  companies?
19    A.   No, I haven't.  It would be very
20  odd if he would.
21    Q.   When you -- in the early days, when
22  you communicated with Mr. Dondero about the
23  prospects for the assets at Highland, did he
24  appear to have high hopes for the
25  monetization and increase in value of
```

Page 188

J. Seery

```
 1              J. Seery
 2  Cornerstone, Trussway and MGM?
 3          MR. MORRIS:  Objection to the
 4    form of the question.
 5    A.   I don't recall him ever talking to
 6  me very much about Cornerstone and potential
 7  upside or Trussway.
 8          He did have high hopes, or
 9  expressed high hopes, of upside value in MGM.
10  But at the same time, he sold 1.7 million
11  shares after the filing for 7250.  So that
12  sort of belied that optimism, but he
13  expressed some optimism that MGM would have
14  upside.  And of course he sat on the board,
15  so he'd have some insight into it.
16    Q.   And it looks like, hopefully, he
17  was right to -- in that optimism?
18          MR. MORRIS:  Objection to the
19    form of the question.
20    Q.   Is that right?
21    A.   We'll find out.
22    Q.   So far it appears that his optimism
23  may be justified, is that right?
24    A.   There's -- there's a transaction.
25  It's subject to approval and closure.
```

Page 189

J. Seery

```
 1              J. Seery
 2    Q.   Okay.
 3    A.   Certainly hope so.
 4    Q.   If in fact all three of those
 5  companies, MGM -- or Highland's interest in
 6  those three companies are successfully
 7  monetized, will the assets of Highland exceed
 8  its liabilities?
 9          MR. MORRIS:  Objection to the
10    form of the question.
11    A.   Extremely unlikely.
12    Q.   Possible though?
13          MR. MORRIS:  Objection to the
14    form of the question.
15    Q.   In your educated opinion --
16          (Simultaneous speaking.)
17    A.   Can I -- can I answer your
18  question --
19    Q.   Yes.
20    A.   -- unless "possible though" is just
21  a quip, because then I won't answer it.
22    Q.   No --
23    A.   Is that a question?
24    Q.   -- it's not a quip --
25    A.   Oh, okay.
```

Page 190

J. Seery

2    Q.    -- it is a question.

3    A.    It's -- we know what the -- at

4  least now what the potential upside is to

5  MGM.  We don't know what the upside is for

6  Cornerstone or Trussway, but we understand

7  the performance of the companies and the

8  framework with which somebody would value

9  them.

10        So it would be extremely unlikely,

11  not impossible but extremely unlikely, for

12  those two companies - with MGM capped - to

13  have a performance that exceeded the total

14  amount of claims.

15    Q.    How close a matter is it?

16        MR. MORRIS:  Objection --

17        (Simultaneous speaking and

18        reporter interjection.)

19    Q.    How -- how close -- how close --

20  let me -- let me strike that and start again.

21        What would MGM, Trussway and

22  Cornerstone need to be monetized for in order

23  for the overall assets of Highland to exceed

24  its liabilities?

25        MR. MORRIS:  Objection to the

Page 191

J. Seery

2    form of the question.

3    A.    I'm not in a position to answer

4  that, but all of the assets minus the

5  expenses to get there would need to exceed

6  $400 million.

7    Q.    And right now, what do you think

8  the assets are worth?

9        MR. MORRIS:  Objection to the

10        form of the question.

11    A.    Again, I don't -- I know what MGM

12  is potentially worth, but it's hard to -- I

13  can't count that until it's done.

14    Q.    I know but --

15        (Simultaneous speaking.)

16        MR. MORRIS:  Let him finish,

17        please let him finish.

18    A.    You don't -- can't count that until

19  it's done.  And then the other -- the other

20  businesses we have to put through a process,

21  to see what they're worth.  And they're,

22  they're, they're -- they've got potential

23  upside but they have challenges as well.

24    Q.    Okay.  Assuming you are as

25  successful as you hope to be, and crediting

Page 192

J. Seery

2  for the moment the potential value of the MGM

3  transaction, what do you think the assets of

4  Highland are likely to be worth?

5        MR. MORRIS:  Objection to the

6        form of the question.

7    A.    I -- I don't know.  Part of it

8  depends on -- again, it's the costs.  It's

9  collection of $63 million notes in these

10  litigations, and then it's the ultimate value

11  of those assets.

12        But I would hope that we would be

13  very successful in the asset monetization,

14  where we would be able to get at lease

15  $300 million with those -- those assets and

16  others.

17    Q.    Do you think that if you're as

18  successful as you hope to be, that the assets

19  will be worth more than 400 million net of

20  the collection costs?

21    A.    I --

22        MR. MORRIS:  Objection to the

23        form of the question.

24    A.    I believe I already said I believe

25  that's unlikely, but I'm an optimistic

Page 193

J. Seery

2  fellow.

3    Q.    So then you hope it is likely?

4    A.    I certainly hope so.

5        And, again, that -- that hope

6  counts on $63 million of note collections

7  that I do expect to collect.

8        MR. MORRIS:  Deborah?

9        MS. DEITSCH-PEREZ:  Yes.

10        MR. MORRIS:  I apologize for

11  interrupting, but sometime between now

12  and 6:00 I'm going to have to take

13  about a ten or a twelve-minute break.

14  I have no idea how much you have.

15        If you're going to finish in twenty

16  minutes, then let's do that.  If you're

17  going to take more than an hour, I

18  just -- just please stop at some point

19  by, you know, 5:30, 5:35, so I can take

20  that break.

21        I just have to attend to something

22  that -- it won't take too long, but I

23  just wanted to let you know that so you

24  weren't surprised.

25        MS. DEITSCH-PEREZ:  Okay.  If

Page 258

```
 1            J. Seery
 2        THE WITNESS:  I said I didn't.
 3        MR. MORRIS:  He said he didn't.
 4        THE WITNESS:  I said I didn't.
 5  BY MS. DEITSCH-PEREZ:
 6     Q.    Well, do you know if anybody did?
 7     A.    I don't know, but certainly that's
 8  something that accounting would see rather
 9  easily.
10  RQ*        MS. DEITSCH-PEREZ:  Okay.  So I
11        would like confirmation that that was
12        looked for, and -- and the same as I
13        requested previously, the Word versions
14        of -- of the notes.
15        MR. MORRIS:  Okay.
16        THE WITNESS:  I, I -- I think
17        that the materials that Mr. Morris
18        described has all that with bank
19        statements.
20        MR. MORRIS:  It's okay, thank
21        you.
22        Are we done?
23        MS. DEITSCH-PEREZ:  Thank you.
24        MR. MORRIS:  Yep.
25        MS. DEITSCH-PEREZ:  Yes.
```

Page 259

```
 1            J. Seery
 2        VIDEO TECHNICIAN:  The time is
 3        6:49.  This concludes today's
 4        deposition, Thursday, October 21, 2021.
 5
 6
 7
 8
 9
10  I,            , do hereby certify under
11  penalty of perjury that I have read the foregoing
12  transcript of my deposition taken on         ;
13  that I have made such corrections as appear noted
14  herein in ink, initialed by me; that my testimony as
15  contained herein, as corrected, is true and correct.
16
17  DATED this ____ day of _____, 20  ,
18  at _____,        .
19
20
21
22
23        _____
23            JAMES P. SEERY, JR.
24
25
```

Page 260

```
 1
 2        C E R T I F I C A T E
 3
 4  STATE OF NEW YORK       )
 5                          )ss.:
 6  COUNTY OF NEW YORK      )
 7
 8        I, MARIANNE WITKOWSKI-SMITH, a Notary
 9  Public within and for the State of New York,
10  do hereby certify:
11        That JAMES P. SEERY, JR., the witness
12  whose deposition is hereinbefore set forth,
13  was duly sworn by me and that such deposition
14  is a true record of the testimony given by
15  the witness.
16        I further certify that I am not
17  related to any of the parties to this action
18  by blood or marriage, and that I am in no
19  way interested in the outcome of this
20  matter.
21        IN WITNESS WHEREOF, I have hereunto
22  set my hand this 22nd day of October, 2021.
23
24        _____
25            MARIANNE WITKOWSKI-SMITH
```

Page 261

```
 1
 2  ----------------I N D E X--------------------
 3  WITNESS         EXAMINATION BY        PAGE
 4  JAMES P.        MR. RUKAVINA        6, 249
    SEERY, JR.
 5                  MS. DEITSCH-PEREZ   160, 252
 6
 7  Directions:  197
 8  Motions:  172, 185, 205, 233, 244
 9
10  ------------ PRODUCTION REQUESTS ------------
11  PAGE:  250  Native Exhibit 7 and metadata.
12        258  Transfer documents notations and
                Word versions of notes.
13
14
15  --------------------EXHIBITS------------------
16  EXHIBIT                     PAGE LINE
17  Exhibit 1
    Notice of Deposition
18  Seery                        8   20
19  Exhibit 2
    Notice of Deposition
20  30(b)(6)                     9   20
21  Exhibit 3
    Email Chain
22  Re: HCMLP Roles             23   20
23  Exhibit 4
    Seery Declaration in Support of
24  Motion for TRO              43    9
25        (Continued on Next Page)
```

| | | Page 262 |
|---|---|---|
| 1 | | |
| 2 | ----------------EXHIBITS(Cont'd)---------------- | |
| 3 | EXHIBIT | PAGE LINE |
| 4 | Exhibit 5 | |
| | Promissory Note | |
| 5 | Dated May 31, 2017 | 55   12 |
| 6 | Exhibit 6 | |
| | Correspondence | |
| 7 | Dated January 7, 2021 | 69   16 |
| 8 | Exhibit 7 | |
| | Loan Document | |
| 9 | D-NNL-029141 | 99   12 |
| 10 | Exhibit 8 | |
| | Correspondence | |
| 11 | Dated January 15, 2021 | 107   4 |
| 12 | Exhibit 9 | |
| | Amended and Restated | |
| 13 | Shared Services Agreement | 112   22 |
| 14 | Exhibit 10 | |
| | Email Chain | |
| 15 | D-NNL-007578 - D-NNL-007579 | 148   11 |
| 16 | Exhibit 11 | |
| | Email Chain | |
| 17 | D-NNL-028514 - D-NNL-028515 | 150   3 |
| 18 | * * * | |
| 19 | PREMARKED | |
| | EXHIBITS | PAGE LINE |
| 20 | (Not Provided to Reporter) | |
| 21 | Exhibit 109 | 245   16 |
| 22 | Exhibit 110 | 206   23 |
| 23 | Exhibit 111 | 196   8 |
| 24 | Exhibit 112 | 213   23 |
| 25 | | |

| | Page 263 |
|---|---|
| 1 | ERRATA SHEET |
| 2 | Case Name: |
| 3 | Deposition Date: |
| 4 | Deponent: |
| 5 | Pg.  No. Now Reads      Should Read  Reason |
| 6 | ___  ___ _____    _____  _____ |
| 7 | ___  ___ _____    _____  _____ |
| 8 | ___  ___ _____    _____  _____ |
| 9 | ___  ___ _____    _____  _____ |
| 10 | ___  ___ _____    _____  _____ |
| 11 | ___  ___ _____    _____  _____ |
| 12 | ___  ___ _____    _____  _____ |
| 13 | ___  ___ _____    _____  _____ |
| 14 | ___  ___ _____    _____  _____ |
| 15 | ___  ___ _____    _____  _____ |
| 16 | ___  ___ _____    _____  _____ |
| 17 | ___  ___ _____    _____  _____ |
| 18 | ___  ___ _____    _____  _____ |
| 19 | ___  ___ _____    _____  _____ |
| 20 | |
| 21 | _____<br>Signature of Deponent |
| 22 | SUBSCRIBED AND SWORN BEFORE ME |
| 23 | THIS _____ DAY OF _____, 2021. |
| 24 | _____ |
| 25 | (Notary Public)  MY COMMISSION EXPIRES:_____ |

# HMIT Exhibit No. 79

009269

# Case Study – Large Loan Origination

**Debt origination for an affiliate of Simon Property Group Inc. and <mark>Farallon Capital Management</mark>**



| | |
|---|---|
| Date | June 2007 |
| Asset Class | Retail |
| Asset Size | 1,808,506 Sq. Ft. |
| Sponsor | Simon Property Group Inc. / Farallon Capital Management |
| Transaction Type | Refinance |
| Total Debt Amount | Lehman Brothers: $121 million |
| | JP Morgan: $200 million |



### Transaction Overview

- In June 2007, Lehman Brothers co-originated a loan in the aggregate amount of $321 million (Lehman portion: $121 million) with JP Morgan to a special purpose affiliate of a joint venture between <mark>Simon Property Group Inc ("Simon") and Farallon Capital Management ("Farallon")</mark> secured by the shopping center known as Gurnee Mills Mall (the "Property") located in Gurnee, IL .

- The Property consists of a one-story, 200 store discount mega-mall comprised of 1,808,506 square feet anchored by Burlington Coat Factory, Marshalls, Bed Bath & Beyond and Kohls among other national retailers. Built in 1991, the Property underwent a $5 million interior renovation in addition to a $71 million redevelopment between 2004 and 2005. As of March 2007, the Property had a in-line occupancy of 99.5%.

### Lehman Brothers Role

- Simon and Farallon comprised the sponsorship which eventually merged with The Mills Corporation in early 2007 for $25.25 per common share in cash. <mark>The total value of the transaction was approximately $1.64 billion for all of the outstanding common stock, and approximately $7.9 billion including assumed debt and preferred equity.</mark>

- <mark>Lehman and JP Morgan subsequently co-originated a $321 million loan at 79.2% LTV based on an appraisal completed in March by Cushman & Wakefield.</mark> The Loan was used to refinance the indebtedness secured by the Property.

### Sponsorship Overview

- The Mills Corporation, based in Chevy Chase MD is a developer owner and manager of a diversified portfolio of retail destinations including regional shopping malls and entertainment centers. They currently own 38 properties in the United States totaling 47 million square feet.

**LEHMAN BROTHERS**                                          32

# HMIT Exhibit No. 80

009271

James P. Seery, Jr.
John G. Hutchinson
John J. Lavelle
Martin B. Jackson
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300 (tel)
(212) 839-5599 (fax)

*Attorneys for the Steering Group*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- X
                                      :
In re:                                :   Chapter 11
                                      :
BLOCKBUSTER INC., et al.,             :   Case No. 10-14997 (BRL)
                                      :
              Debtors.                :   (Jointly Administered)
                                      :
-------------------------------------------------- X
```

### THE BACKSTOP LENDERS' OBJECTION TO THE MOTION OF LYME REGIS TO ABANDON CERTAIN CAUSES OF ACTION OR, IN THE ALTERNATIVE, TO GRANT STANDING TO LYME REGIS TO PURSUE CLAIMS ON BEHALF OF THE ESTATE

1.        The Steering Group of Senior Secured Noteholders who are Backstop Lenders --

Icahn Capital LP, Monarch Alternative Capital LP, Owl Creek Asset Management, L.P.,

Stonehill Capital Management LLC, and Värde Partners, Inc. (collectively, the "Backstop

Lenders") -- hereby file this objection (the "Objection") to the Motion of Lyme Regis Partners,

LLC ("Lyme Regis") to Abandon Certain Causes of Action or, in the Alternative, to Grant

Standing to Lyme Regis to Pursue Claims on Behalf of the Estate (the "Motion") [Docket No.

593].

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris *(*admitted *pro hac vice)*
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

REED SMITH LLP
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292

*Counsel for Highland Capital Management, L.P., and the Highland Claimant Trust*

*Counsel for James P. Seery, Jr.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) |  |

## HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND JAMES P. SEERY, JR.'S JOINT MOTION TO EXCLUDE TESTIMONY AND DOCUMENTS OF SCOTT VAN METER AND STEVE PULLY

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. I

PRELIMINARY STATEMENT ...................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 2

ARGUMENT ................................................................................................................... 6

I.     THIS COURT SHOULD REJECT HMIT'S ELEVENTH-HOUR ATTEMPT TO INTRODUCE EXPERT TESTIMONY AND DOCUMENTS......................................... 6

     A.     Expert Testimony And Documents Are Inconsistent With This Court's Orders Regarding The Hearing........................................................................ 6

     B.     HMIT Is Trying To Conduct An Impermissible "Trial By Ambush." ................. 7

II.     THE PURPORTED EXPERTS SHOULD BE EXCLUDED UNDER RULE 702 AND *DAUBERT*. ......................................................................................................... 8

CONCLUSION .............................................................................................................. 11

CERTIFICATE OF CONFERENCE ............................................................................ 13

009274

## TABLE OF AUTHORITIES

**Cases**                                                                    *Page(s)*

*Ahlberg v. Chrysler Corp.*,
    481 F.3d 630 (8th Cir. 2007) ............................................10

*Anderson v. Techtronic Indus. N. Am., Inc.*,
    2015 WL 12843836 (M.D. Fla. Apr. 14, 2015).................................11

*In re Blankenship*,
    2013 WL 3712428 (Bankr. N.D. Miss. July 12, 2013).........................11

*Burst v. Shell Oil Co.*,
    650 F. App'x 170 (5th Cir. 2016) .........................................10

*Buttross Props. v. Underwriters at Lloyds London*,
    2017 WL 9362700 (W.D. Tex. Sept. 12, 2017)................................8

*In re Cathey*,
    2021 WL 2492851 (Bankr. N.D. Miss. June 17, 2021).........................7

*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993): (1)..........................................2, 8, 9, 10

*In re Dernick*,
    2019 WL 5078632 (Bankr. S.D. Tex. Sept. 10, 2019) ........................6

*Guillory v. Domtar Indus., Inc.*,
    95 F.3d 1320 (5th Cir. 1996) .............................................10

*Hernandez v. Results Staffing, Inc.*,
    907 F.3d 354 (5th Cir. 2018) .............................................7

*LeBlanc ex rel. Estate of LeBlanc v. Chevron USA, Inc.*,
    396 F. App'x 94 (5th Cir. 2010) ..........................................9

*Loy v. Rehab Synergies, LLC*,
    558 F. Supp. 3d 402 (S.D. Tex. 2021) ....................................10

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) .............................................8

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
    2017 WL 1319553 (E.D. Tex. Apr. 10, 2017)................................11

*In re USA Promlite Tech. Inc.*,
    2022 WL 12025687 (Bankr. S.D. Tex. Oct. 20, 2022).....................8, 9, 10

**Other Authorities**

8A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2029
(3d ed. 2023) ................................................................................................7

Fed R. Bankr. P. 7026 .........................................................................................7

Fed. R. Bankr. P. 9014(b) ...................................................................................7

Fed. R. Bankr. P. 9014(c) ...................................................................................6

Fed. R. Civ. P. 26(b)(4)(A) .................................................................................7

Fed. R. Evid. 702(a) ..........................................................................................10

Fed. R. Evid. 702(c) ............................................................................................9

Federal Rule of Evidence 702 .............................................................................9

Wright & Miller, Federal Practice and Procedure § 6265.2 .............................11

29 Wright & Miller, Federal Practice and Procedure § 6264.2 ..........................9

009276

Highland Capital Management, L.P. ("HCMLP" or "Debtor"), the reorganized debtor in the above-referenced action, the Highland Claimant Trust (the "Trust"; together with HCMLP, "Highland"), and James P. Seery, Jr., HCMLP's Chief Executive Officer and the Claimant Trustee of the Trust ("Seery"; together with Highland, the "Highland Parties"), by and through their undersigned counsel, hereby file this joint motion to exclude the testimony and documents of Scott Van Meter ("Van Meter") and Steve Pully ("Pully"; together with Van Meter, the "Purported Experts") from the June 8, 2023 hearing (the "Hearing") regarding Hunter Mountain Investment Trust's ("HMIT") Emergency Motion for Leave to File Verified Adversary Petition ("Motion for Leave"; Dkt. No. 3699).  In support of their Joint Motion, the Highland Parties state as follows:

## PRELIMINARY STATEMENT

1.       HMIT filed its Motion for Leave on an emergency basis on March 28, 2023.  During more than two months of litigation on this Motion, which included five briefs and two Court conferences, HMIT repeatedly sought to limit this Court's analysis to the "four corners" of HMIT's proposed complaint, and no party made any mention of expert witnesses.  On June 5, 2023, at 10:12 PM, less than 60 hours before the Hearing, HMIT disclosed for the first time Van Meter and Pully as expert witnesses with 14 accompanying documents.  This Court should not permit HMIT to engage in such obvious gamesmanship and conduct a "trial by ambush."

2.       ***First,*** HMIT's attempt to introduce expert testimony flies in the face of this Court's May 22 and 26, 2023 Orders regarding the Hearing and the scope of discovery.  HMIT has been trying to have it both ways.  HMIT submitted more than 300 pages of exhibits with its Motion for Leave, including a declaration from James Dondero ("Dondero"), but has sought to prevent any discovery or cross-examination of Dondero, claiming this Court can review only the "four corners" of the document.  To ensure a fair Hearing while addressing HMIT's concern, this Court held that it would hold an evidentiary hearing, including testimony from declarants, and permitted

-1-

009277

depositions of Dondero and Seery, but no other discovery. HMIT's attempt to vastly expand the scope of testimony with two Purported Expert directly contradicts its own positions and is contrary to the Hearing contemplated by this Court's Orders.

3. **Second,** HMIT's eleventh-hour disclosure of two Purported Experts and 14 accompanying documents is an attempt to conduct a "trial by ambush." HMIT never mentioned any experts in five briefs or two Court conferences. By strategically waiting until three days before the Hearing to disclose these Purported Experts, HMIT has insulated its Purported Experts from any discovery and deprived the Highland Parties of the opportunity to retain their own experts.

4. **Finally,** the Purported Experts are inadmissible because they do not satisfy the requirements of Federal Rule of Evidence 702 and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993): (1) Van Meter is not qualified to opine about compensation or claims trading; (2) HMIT failed to carry its burden to show that the Purported Expert's opinions are based on a reliable methodology; (3) the Purported Experts' analysis is unreliable; (4) the Purported Experts' opinions are not proper expert testimony because they parrot the allegations of HMIT's proposed complaint and their analysis consists of arithmetic; and (5) the Purported Experts offer improper legal conclusions.

5. Accordingly, this Court should exclude the Purported Experts and HMIT's Exhibits 39 to 52 from the Hearing.

## RELEVANT BACKGROUND

6. On March 28, 2023, HMIT filed its Motion for Leave, which totaled 387 pages with exhibits, including sworn declarations from Dondero. HMIT expressly relied on Dondero's declarations and other exhibits throughout its Motion for Leave. (*See, e. g.*, Motion for Leave ¶¶ 32, 44, 46.) HMIT argued that this "objective evidence" and "HMIT's proposed Verified Adversary Proceeding" complaint supported its Motion. (*Id.* ¶ 1 & n.2.)

009278

7.      On April 21, 2023, HMIT filed Objections Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceeding Relating to "Colorability." (Dkt. No. 3758.)  HMIT objected to "any evidentiary hearing" regarding its Motion for Leave, including "the related attached declarations."  (*Id.* ¶ 1.)  HMIT argued that, to decide its Motion, this Court should consider only HMIT's proposed complaint the Proposed Complaint and "documents attached to or referred to" therein.  (*Id.* ¶ 7.)

8.      On April 23, 2023, HMIT filed a Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding (Dkt. No. 3760), which appended a revised proposed adversary complaint ("Proposed Complaint" or "Compl."; Dkt. No. 3760-1).

9.      On April 24, 2023, this Court held a conference regarding HMIT's Motion for Leave.  During the conference, counsel for HMIT argued that this Court does not "need to consider the Dondero affidavits" or "any of the documents that are actually associated with [HMIT's] motion," and this Court is "relegated to the four corners of the actual complaint itself."  (Ex. A (Apr. 24, 2023 Conf. Tr.) at 20:3–19.)[2]  When this Court asked whether HMIT was seeking to withdraw the Dondero declarations and other supporting evidence, HMIT's counsel responded that "[i]f the Court is suggesting that if [HMIT] leave[s] the affidavits attached to the motion that the Court is going to allow this to become, effectively, a trial on the merits . . . then the answer is we would not want to withdraw them but we will."  (*Id.* at 21:11–20.)  HMIT did not withdraw any exhibits or re-file its Motion.

10.     On May 11, 2023, the Highland Parties filed their joint response to HMIT's Motion for Leave, which appended additional documents to respond to the allegations in the Proposed Complaint and HMIT's exhibits.  (Dkt. No. 3783.)  On May 18, 2023, HMIT filed its Reply in

---

[2] All references to "Ex." refer to the accompanying declaration of Joshua S. Levy.

support of its Motion for Leave.  ( "<u>Reply</u>"; <mark>Dkt. No. 3785</mark>.) HMIT purported to "provide[] notice

that it withdraws all affidavits and other evidence attached to its Motion for Leave," but this was

"subject to a reservation of rights that, in the event the Court concludes it will conduct an

evidentiary hearing, HMIT may offer the same evidence at the hearing," and also "reserve[d] all

rights "to conduct merits-based discovery before the hearing."  (Reply ¶ 17.)  HMIT's Reply did

not reference any expert testimony or discovery.

      11.     On May 22, 2023, this Court issued an Order ("<u>May 22 Order</u>"; <mark>Dkt. No. 3787</mark>)

holding that "there may be mixed questions of fact and law implicated by the Motion for Leave,"

so "the parties will be permitted to present evidence (including witness testimony) at the June 8,

2023 hearing if they so choose.  This may include examining any witness for whom a Declaration

or Affidavit has already been filed."  (May 22 Order at 1-2.)

      12.     On May 24, 2023, HMIT filed an Emergency Motion for Expedited Discovery or,

Alternatively, for Continuance of the June 8, 2023 Hearing ("<u>Discovery Motion</u>"; <mark>Dkt. No. 3788</mark>).

HMIT stated that it "continues to object that any evidentiary hearing relating to the Motion for

Leave is inappropriate," but requested that this Court permit HMIT to obtain extensive document

discovery from and take depositions of the Claims Purchasers[3] and the Highland Parties.

(Discovery Motion ¶ 8.)

      13.     On May 26, 2023, this Court held a conference on HMIT's Discovery Motion.

During the conference, this Court noted that HMIT had not actually withdrawn the Dondero

declarations or other evidence and explained, "[i]f you want to refile the motion, merely redacting

those sentences that refer to the Dondero affidavit and not filing the Dondero affidavit, I'll let

you."  (Ex. B (May 26, 2023 Conf. Tr.) at 48:17–22, 59:9–17.)  This Court also asked HMIT's

---

[3] The "Claims Purchasers" refers to, collectively, Muck Holdings, LLC, Jessup Holdings, LLC, Farallon Capital
Management, LLC ("<u>Farallon</u>"), and Stonehill Capital Management, LLC ("<u>Stonehill</u>").

009280

counsel multiple times how HMIT would prefer this Court conduct the Hearing. (*Id.* at 9:20–10:1 ("Tell me what is your first choice of what you want here, okay?  I'm just trying to understand."); *id.* at 12:7-13 ("I'm trying to get at how we do what you want the Court to do."); *id.* at 13:6–12 ("I'm asking what . . . you want, okay?  Quit saying if that's what the Court wants. . . . Tell me what you want, okay?").)  HMIT's counsel responded that HMIT "believes the [Hearing] should be conducted on the pleading only and no extraneous evidence offered, including Mr. Dondero's affidavit.  That is what we want.").

14.     After the conference, this Court issued an Order (the "May 26 Order"; Dkt No. 3798) holding that "Mr. Seery and Mr. Dondero shall be made available for depositions," "no discovery or depositions of any other party or witness will be permitted prior to the June 8 hearing," and "[n]one of the parties shall be entitled to any other discovery, including the production of documents from Mr. Seery or Mr. Dondero, or any other party or witness . . . prior to the conduct of the Depositions or to the court's ruling on the Motion for Leave following the June 8, 2023 hearing." (May 26 Order at 2.)

15.     On June 5, 2023, HMIT filed a revised version of its Motion for Leave redacting certain citations to the Dondero declarations and other exhibits, but not redacting the factual assertions based on those exhibits. (Dkt. No. 3815.)  After Mr. Seery's counsel informed HMIT's counsel of this deficiency (Ex. C),  HMIT filed another revised version of its Motion to Leave with additional redactions  (Dkt. No. 3816.)  However, HMIT refused to redact the factual assertions based on the Dondero declarations it purported to withdraw.  (Ex. C.)

16.     On June 5, 2023, at 10:12 PM Central Time, HMIT filed its witness and exhibit list for the Hearing ("HMIT List"; Dkt. No. 3818) disclosing Van Meter, Pully, and 14 accompanying

009281

documents.  This is the first time HMIT disclosed it intended to use expert testimony and documents at the Hearing.

## ARGUMENT

**I.    This Court Should Reject HMIT's Eleventh-Hour Attempt To Introduce Expert Testimony And Documents.**

    **A.    Expert Testimony And Documents Are Inconsistent With This Court's Orders Regarding The Hearing.**

17.    It is settled law that this Court has "broad discretion" to determine the scope of discovery for a contested matter, because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery."  *In re Dernick*, 2019 WL 5078632, at *4 (Bankr. S.D. Tex. Sept. 10, 2019) (cleaned up); *see also* Fed. R. Bankr. P. 9014(c) (providing rules governing discovery in contested matters "unless the court directs otherwise").  "Based on the court's review of all the parties' pleadings and briefing," this Court permitted the parties "to present evidence (including witness testimony) at the June 8, 2023 hearing," which "may include examining any witness for whom a Declaration or Affidavit has already been filed."  (May 22 Order at 1–2.)  At HMIT's request, this Court limited the scope of discovery to depositions of Seery and Dondero, holding that "[n]one of the parties shall be entitled to any other discovery." (May 26 Order at 2.)  Thus, this Court did not contemplate any expert discovery, testimony, or documents in connection with the Hearing.

18.    This is unsurprising because no party ever mentioned that it planned to use any experts at the Hearing.  To the contrary, HMIT repeatedly represented to this Court that it should limit its analysis to the "four corners" of the proposed complaint.  (*See supra* ¶¶ 6–16.)  HMIT now seeks to vastly expand the scope of the Hearing by introducing testimony and 14 exhibits from two Purported Experts.  HMIT "hid[] the ball" regarding its Purported Experts, secured an Order limiting the scope of discovery, and now seeks to sandbag the Highland Parties with

Purported Experts from whom the Highland Parties had no opportunity to take discovery.
*Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 363 (5th Cir. 2018) (cleaned up).  This Court
should reject HMIT's "gamesmanship and deception" by excluding the Purported Experts and
related documents from the Hearing.  *Id.* ("Our system of discovery was designed to increase the
likelihood that justice will be served in each case, not to promote principles of gamesmanship and
deception in which the person who hides the ball most effectively wins the case.") (cleaned up).

### B.   HMIT Is Trying To Conduct An Impermissible "Trial By Ambush."

19.   Under Fifth Circuit precedent, "each party is entitled to know what is being tried,
or at least to the means to find out.  Notice remains a first-reader element of procedural due process,
and trial by ambush is no more favored here than elsewhere."  *In re Cathey*, 2021 WL 2492851,
at *2 (Bankr. N.D. Miss. June 17, 2021) (quoting *Jimenez v. Tuna Vessel Granada*, 652 F.2d 415,
420 (5th Cir. 1981)).  HMIT "ambushed" the Highland Parties with expert materials it never
mentioned in five briefs or two Court conferences.  *Id.*  Had HMIT timely disclosed the Purported
Experts, the Highland Parties would have had the opportunity to depose them and to retain their
own experts.  *See* Fed. R. Civ. P. 26(b)(4)(A) ("A party may depose any person who has been
identified as an expert whose opinions may be presented at trial."); Fed. R. Bankr. P. 9014(b)
(applying Rule 26(b)(4)(A) to contested matters); Fed R. Bankr. P. 7026.  Indeed, the purpose of
these Rules is "to make depositions of testifying experts routinely available."  8A Charles A.
Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2029 (3d ed. 2023).  But HMIT
strategically waited to disclose the Purported Experts until after 10 PM three days before the
Hearing, making it effectively impossible for the Highland Parties to depose them or to retain their
own experts.

20.   Worse, as discussed above, HMIT obtained an Order from this Court limiting
discovery to the depositions of Seery and Dondero and precluding any document discovery.

009283

(May 26 Order at 2.) Thus, HMIT ensured that it could insulate its Purported Experts from any discovery and ambush the Highland Parties at the Hearing. This Court should not reward HMIT's gamesmanship by admitting expert material or permitting further delay on HMIT's Motion for Leave. This Court should exclude HMIT's Purported Experts and accompanying documents and conduct the Hearing on June 8, 2023 consistent with its May 22 and 26 Orders.

## II. The Purported Experts Should Be Excluded Under Rule 702 And *Daubert*.

21. Federal Rule of Evidence 702 "assign[s] to the trial judge" the "gatekeeping role" of ensuring that only reliable expert testimony is admitted. *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "[T]rial courts [] act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 592–93). "Qualification of an expert is a central part of the court's determination." *Buttross Props. v. Underwriters at Lloyds London*, 2017 WL 9362700, at *1 (W.D. Tex. Sept. 12, 2017) (collecting cases). "[T]he party putting forth the expert testimony has the burden of showing that the testimony is reliable" pursuant to *Daubert*. *In re USA Promlite Tech. Inc.*, 2022 WL 12025687, at *5 (Bankr. S.D. Tex. Oct. 20, 2022). HMIT fails to satisfy its burden for the Purported Experts.

22. ***First***, Van Meter is not qualified to opine about "Seery's compensation and claims trading." (HMIT List at 2.) Van Meter has never worked as a compensation consultant, has never conducted any compensation "market study," and has never before opined about "incentive-based compensation." (*Id.* at 2–3; *see* HMIT Ex. 39 (Van Meter CV).) Van Meter likewise has neither traded any bankruptcy claims nor analyzed any claims trading. (*Id.*) Van Meter thus lacks the "knowledge, skill, experience, training, or education" to opine about these issues. Fed. R. Evid. 702. Van Meter is an accountant and lawyer who bills himself "as an independent expert on

matters of economic damages/quantum, accounting and auditing standards, corporate governance and forensic accounting." (HMIT Ex. 39 (Van Meter CV) at 1.) Van Meter's limited bankruptcy experience consists of serving as a "[s]olvency and damages expert," "financial advisor," or "counsel," not analyzing compensation or claims trading. (*Id.* at 5–7.) "[Q]ualification to testify as an expert [] requires that the area of the witness's competence **matches** the subject matter of the witness's testimony," and "courts will prevent a witness from testifying as an expert where the witness has specialized knowledge on one subject but offers to testify on a different subject." 29 Wright & Miller, Federal Practice and Procedure § 6264.2 (emphasis added) (collecting cases).

23.      **Second**, HMIT does not even try to satisfy its burden to show that the Purported Experts' opinions are "the product of reliable principles and methods." Fed. R. Evid. 702(c). "To establish reliability under *Daubert*, an expert must provide objective, independent support for his methodology." *USA Promlite*, 2022 WL 12025687, at *7 (collecting cases). Neither of the Purported Experts provide any methodology at all. Van Meter claims to have "identified red flags" without explaining what they are, why they are "red flags," or how he determined they were "red flags." (HMIT List at 3.) Nor does Van Meter provide any basis for his assertion that Seery's compensation "was not reasonable and is excessive." (*Id.*) Pully speculates about "economic returns [Farallon and Stonehill] would normally hope to realize," the "likelihood that inappropriate information was provided to the[m]," and their "investment requirements," but never explains how he arrived at these opinions. (*Id.* at 4.) "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a [bankruptcy] court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *LeBlanc ex rel. Estate of LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 100 (5th Cir. 2010) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "Because no methodology for the conclusion was provided, the Court cannot determine whether

that methodology was reasonable, and thus, the conclusion itself is not admissible under Rule 702

and *Daubert*." *USA Promlite*, 2022 WL 12025687, at \*7; *see also Ahlberg v. Chrysler Corp.*, 481

F.3d 630, 635 (8th Cir. 2007) ("The proffer of [expert]'s testimony was properly rejected because

[expert] employed no methodology whatsoever—reliable or otherwise.").

24.     ***Third***, the Purported Experts' opinions are unreliable.  "[T]he expert's testimony

must be reliable at each and every step or else it is inadmissible," and "cherry-picked data"

"belie[s] the reliability of [an expert's] methodology." *Burst v. Shell Oil Co.*, 650 F. App'x 170,

174 (5th Cir. 2016) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354–55 (5th Cir.

2007)).  Pully's "Analysis of Farallon and Stonehill Claims Purchase" do not use actual data but

instead rely on HMIT's complaint appended as "Exhibit 1-A to Emergency Motion filed on

4/23/23."  (HMIT Exs. 49–50.)  And HMIT admits that the Purported Experts have not "review[ed]

Mr. Seery's deposition testimony" (HMIT List at 3–4)—the only testimony proffered in

connection with the Motion for Leave—which suggests they were hired ***after*** the deposition to

blindside the Highland Parties at the Hearing.  "[W]hen," as here, "an expert's testimony is 'not

based upon the facts in the record but on altered facts and speculation designed to bolster [a party's]

position,' it should be excluded." *Loy v. Rehab Synergies, LLC*, 558 F. Supp. 3d 402, 415 (S.D.

Tex. 2021) (quoting *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996))

(excluding as unreliable expert analysis based "on the spreadsheet created by Plaintiffs' counsel").

25.     ***Fourth***, the Proposed Experts' opinions simply repeat the allegations in HMIT's

proposed complaint and their analysis (*see* HMIT Exs. 41–45, 48–52) consist entirely of

arithmetic, which is not proper expert testimony.  *See* Fed. R. Evid. 702(a) (requiring expert

testimony to "help the trier of fact to understand the evidence or to determine a fact in issue").

"An expert who parrots an out-of-court statement is not giving expert testimony; he is a

ventriloquist's dummy." *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) (quoting *United States v. Brownlee*, 741 F.3d 479, 482 (7th Cir. 2014) (Posner, J.)). And "simple calculations can be easily accomplished by the trier of fact, and therefore, even if they are reliable, they are not helpful." *Anderson v. Techtronic Indus. N. Am., Inc.*, 2015 WL 12843836, at *4 (M.D. Fla. Apr. 14, 2015) (excluding expert's opinion regarding economic feasibility); *see also* Wright & Miller, Federal Practice and Procedure § 6265.2 ("[E]xpert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic."). Indeed, HMIT included some of these same calculations in its Proposed Complaint. (*See, e.g.*, Compl. ¶ 42.)

26. **Finally**, the Purported Experts seek to offer improper legal opinions about the ultimate issues in HMIT's Motion for Leave. "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *In re Blankenship*, 2013 WL 3712428, at *2 (Bankr. N.D. Miss. July 12, 2013) (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983)). Both Purported Experts opine about whether HMIT has "plausibly" alleged that Farallon and Stonehill purchased claims with "inappropriate information" (HMIT List at 3–4), which is precisely what HMIT seeks to show in its Motion (*see, e.g.*, Motion for Leave ¶ 42 ("[T]his Court's gatekeeping inquiry is properly limited to whether HMIT has stated a plausible claim on the face of the proposed pleadings involving 'bad faith,' 'willful misconduct,' or 'fraud.'")).

## CONCLUSION

27. For the foregoing reasons, the Highland Parties respectfully request that this Court exclude from the Hearing the Purported Experts' testimony and HMIT's Exhibits 39 to 52.

009287

Dated: June 7, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ John A. Morris*
_____
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:      jpomerantz@pszjlaw.com
               jmorris@pszjlaw.com
               gdemo@pszjlaw.com
               hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.,*
*and the Highland Claimant Trust*

**WILLKIE FARR & GALLAGHER LLP**

*/s/ Mark T. Stancil*
_____
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com


-and-


**REED SMITH LLP**
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292


*Counsel for James P. Seery, Jr.*

009288

## CERTIFICATE OF CONFERENCE

On June 6, 2023, counsel for Seery emailed counsel for HMIT objecting to HMIT's intention to call expert witnesses and introduce expert materials at the Hearing and requesting that HMIT's counsel inform the Highland Parties whether HMIT would consent to remove these witnesses and materials from HMIT's witness and exhibit lists.  On June 7, 2023, counsel for HMIT responded that, without waiving its prior objections concerning the evidentiary format of the Hearing, HMIT did not agree to withdraw its experts or the expert materials identified on its witness and exhibit list.

*/s/ Joshua S. Levy*

Joshua S. Levy

009289

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris *(*admitted *pro hac vice)*
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

REED SMITH LLP
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292

*Counsel for Highland Capital Management, L.P.,
and the Highland Claimant Trust*

*Counsel for James P. Seery, Jr.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Reorganized Debtor. | ) |
| | ) |

## DECLARATION OF JOSHUA S. LEVY IN SUPPORT OF HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND JAMES P. SEERY, JR.'S JOINT MOTION TO EXCLUDE TESTIMONY AND DOCUMENTS OF SCOTT VAN METER AND STEVE PULLY

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

I, Joshua S. Levy, pursuant to 28 U.S.C. § 1746, under penalty of perjury, declare as follows:

1.   I am counsel at the law firm of Willkie Farr & Gallagher LLP, counsel to James P. Seery Jr., the Chief Executive Officer of Highland Capital Management, L.P ("HCMLP") the Claimant Trustee of the Trust in the above-referenced bankruptcy case.   I submit this declaration (the "Declaration") in support of *Highland Capital Management, L.P., Highland Claimant Trust* (the "Trust" and together with HCMLP, "Highland")*, and James P. Seery Jr.'s Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully* being filed simultaneously with this Declaration by Highland and Mr. Seery.   This Declaration is based on my personal knowledge and review of the documents listed below.

2.   Attached as **Exhibit A** is a true and correct copy of the transcript of the hearing held in this matter on April 24, 2023.

3.   Attached as **Exhibit B** is a true and correct copy of the transcript of the hearing held in this matter on May 26, 2023.

4.   Attached as **Exhibit C** is a true and correct copy of an email exchange between Mark T. Stancil, Sawnie A. McEntire, and Roger L. McLeary, dated from June 1, 2023 to June 5, 2023.


Dated: June 7, 2023.

*/s/ Joshua S. Levy*
Joshua S. Levy

009291

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) | **Case No. 19-34054-sgj-11** |
|  | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL | ) | Dallas, Texas |
| MANAGEMENT, L.P., | ) | April 24, 2023 |
|  | ) | 1:30 p.m. Docket |
| Reorganized Debtor. | ) |  |
|  | ) | - DUGABOY INVESTMENT TRUST AND |
|  | ) | HUNTER MOUNTAIN INVESTMENT |
|  | ) | TRUST'S MOTION FOR LEAVE TO |
|  | ) | FILE PROCEEDING (3662) |
|  | ) | - STATUS CONFERENCE RE: MOTION |
|  | ) | FOR LEAVE TO FILE VERIFIED |
|  | ) | ADVERSARY PROCEEDING FILED |
|  | ) | BY CREDITOR HUNTER MOUNTAIN |
|  | ) | INVESTMENT TRUST (3699) |
|  | ) |  |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

WEBEX APPEARANCES:

For the Reorganized          John A. Morris
Debtor:                      PACHULSKI STANG ZIEHL & JONES, LLP
                             780 Third Avenue, 34th Floor
                             New York, NY  10017-2024
                             (212) 561-7700

For The Dugaboy              Deborah Rose Deitsch-Perez
Investment Trust, et al.:    STINSON, LLP
                             2200 Ross Avenue, Suite 2900
                             Dallas, TX  75201
                             (214) 560-2201

For Hunter Mountain          Sawnie A. McEntire
Investment Trust:            PARSONS MCENTIRE MCCLEARY, PLLC
                             1700 Pacific Avenue, Suite 4400
                             Dallas, TX  75201

For Hunter Mountain          Roger L. McCleary
Investment Trust:            PARSONS MCENTIRE MCCLEARY, PLLC
                             One Riverway, Suite 1800
                             Houston, TX  77056
                             (713) 960-7305

009293

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 38-9A Filed 12/07/23   Page 101 of 232   PageID 8983

2

```
 1   WEBEX APPEARANCES, cont'd.:

 2   For Muck Holdings, et al.:   Brent Ryan McIlwain
                                  HOLLAND & KNIGHT, LLP
 3                                300 Crescent Court, Suite 1100
                                  Dallas, TX  75201
 4                                (214) 964-9481

 5   For James P. Seery, Jr.:     Mark Stancil
                                  Joshua Seth Levy
 6                                WILLKIE FARR & GALLAGHER, LLP
                                  1875 K Street, NW
 7                                Washington, DC  20006
                                  (202) 303-1133
 8
     For James P. Seery, Jr.:     Omar Jesus Alaniz
 9                                REED SMITH
                                  2850 N. Harwood Street, Suite 1500
10                                Dallas, TX  75201
                                  (469) 680-4292
11
     Recorded by:                 Michael F. Edmond, Sr.
12                                UNITED STATES BANKRUPTCY COURT
                                  1100 Commerce Street, 12th Floor
13                                Dallas, TX  75242
                                  (214) 753-2062
14
     Transcribed by:              Kathy Rehling
15                                311 Paradise Cove
                                  Shady Shores, TX  76208
16                                (972) 786-3063

17

18

19

20

21

22

23

24
              Proceedings recorded by electronic sound recording;
25               transcript produced by transcription service.
```

009294

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-89A   Filed 12/07/23   Page 102 of 232   PageID 8984

3

1            DALLAS, TEXAS - APRIL 24, 2023 - 1:39 P.M.

2            THE COURT:  I will now turn to our Highland matters.

3    We have two of them.  The first one we had scheduled I think

4    may have been worked out, but it is the Dugaboy and Hunter

5    Mountain adversary proceeding -- or, well, not adversary

6    proceeding, a motion for leave to file an adversary proceeding

7    regarding valuation.  This is Case No. 19-34054.

8        Who do we have appearing for the Movant this afternoon?

9            MS. DEITSCH-PEREZ:  Good morning, Your Honor.  This

10   is Deborah Deitsch-Perez from Stinson for the Movants.

11           THE COURT: All right.  Thank you.  Do we have you

12   representing both Movants, Ms. Deitsch-Perez?

13           MS. DEITSCH-PEREZ:  That's correct.

14           THE COURT:  All right.  Mr. Morris, I see you have

15   your video turned on.  You're representing the Debtor today,

16   or Reorganized Debtor; is that correct?

17           MR. MORRIS:  Yes, Your Honor.  Good afternoon.

18           THE COURT:  Good afternoon.

19       Do we have any other appearances on this matter?

20       All right.  Well, am I correct you've worked out something

21   procedurally on this?

22           MS. DEITSCH-PEREZ:  Yeah, let me report.  We have

23   been negotiating over several weeks about information to be

24   provided to the Movants, and additional information was indeed

25   provided on Friday.  I don't know if you've noticed, but the

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 25-89A   Filed 2507/23   Page 103 of 232   PageID 8985

4

 1   reports have an additional section with some additional

 2   information.

 3       We're going through it.  We think there are probably still

 4   some -- some additional information that we need, and so we

 5   will first reach out to Mr. Morris and attempt to negotiate

 6   over that information.  And if we are successful, wonderful.

 7   If we are unsuccessful, because the Debtor has agreed that a

 8   gatekeeper motion is not necessary since the adversary would

 9   just be seeking a valuation and not monetary or other relief,

10   we will then proceed to -- if we cannot work things out with

11   the Debtor, we'll proceed to file an adversary, which will be

12   slightly different than the one that was attached to the

13   gatekeeper motion because we will explain what additional

14   information is needed and why the information we have is not

15   sufficient.  So it should narrow the scope of the adversary.

16           THE COURT:  All right.  Thank you.  Mr. Morris,

17   anything you want to add??

18           MR. MORRIS:  Yes, just briefly, Your Honor.  The

19   Reorganized Debtor does not believe Hunter Mountain or Dugaboy

20   is entitled to any information whatsoever.  They certainly

21   have no legal right to the information.  It's why they have to

22   pursue equitable -- an equitable claim.  Not an equitable

23   right, but an equitable claim.

24       Counsel is certainly correct that we negotiated in good

25   faith to try to provide the information that the Reorganized

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 31-39A Filed 12/07/23   Page 104 of 232   PageID 8986

5

1   Debtors believed was -- might be useful to the extent that

2   someone was really interested in settling the case.  We were

3   unable to come to an agreement.  So, under Mr. Seery's

4   leadership, we acted unilaterally.  We produced a wealth of

5   information on Friday night, including claims data, cash, cash

6   in reserve, cash in the Claimant Trust, assets, general

7   descriptions of assets that remain.

8        If they want to pursue a lawsuit, we'll accept service,

9   with the proviso that we set forth in our opposition to the

10  original motion, and that is everybody will be held

11  accountable for unsupported and unsubstantiated allegations.

12       But the ball is in their court.  We have produced what

13  we're prepared to produce.  If they want to continue with

14  litigation, I guess that's what we'll do.

15           MS. DEITSCH-PEREZ:  Well, we hope that the Debtor

16  will continue to negotiate and will hear why we explain --

17  when we explain why the information isn't enough.  So, ever

18  the optimist, I hold out some hope that we will be able to do

19  this, if not through this proceeding, through the motion for a

20  greater stay and for mediation that's also before Your Honor.

21       So, one way or the other, we do hope to resolve this.  If

22  we can't, we will bring the adversary.  And I thank you, Mr.

23  Morris, for agreeing to accept service.

24           THE COURT:  All right.  Just a procedural question.

25  Ms. Deitsch-Perez, will you be actually withdrawing this

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-39A Filed 07/07/23   Page 105 of 232   PageID 8987

6

1 | motion for leave, or are you all doing some sort of order

2 | setting forth what you've all agreed to and announced?  Just

3 | let me know, so I know what to be expecting.

4 | MS. DEITSCH-PEREZ:  I think we will try to have an

5 | agreed order to enforce what we're doing.  If we fail in that,

6 | I don't suppose it matters very much.  We can withdraw the

7 | application and just proceed to file the adversary.  I'd

8 | rather get an agreed order up, though, setting forth that the

9 | Debtor has agreed that a gatekeeper is not necessary and that,

10 | as a result, we'll be filing the adversary.  So, that's what I

11 | hope, Your Honor, we'll get.

12 | THE COURT:  All right.  Well, just for the record, it

13 | doesn't really matter to me whether you withdraw it or I have

14 | an agreed order.  I'm just trying to simplify life.  I know

15 | sometimes the Clerk's Office personnel will reach out -- we

16 | need an order, we need an order, we need an order -- if

17 | there's a motion pending that doesn't have an order to match

18 | to it, and I'm just trying to avoid headaches in that regard.

19 | MS. DEITSCH-PEREZ:  That's why we'll make it clear

20 | what we do one way or the other.

21 | THE COURT:  Very good.

22 | MR. MORRIS:  Your Honor, just for the Court's

23 | convenience, I apologize that I don't have the docket numbers,

24 | but the information that we posted and we intended to and did

25 | post it on the docket so that it was available to everybody

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-39A Filed 12/07/23   Page 106 of 232   PageID 8988

7

1   equally, it's at the back of the two quarterly operating

2   reports.  There's one filed on behalf of the Reorganized

3   Debtor and then there's one filed on behalf of the Claimant

4   Trust.  But I believe the information in the back of each of

5   those reports is the same.

6       So, just in case the Court has any curiosity about what

7   we've disclosed, I just wanted to make sure Your Honor knew

8   where to find it.

9           THE COURT:  Okay.  I've got the docket right in front

10  of me, and I see on Friday Docket No. 3756 was filed by the

11  Reorganized Debtor, Post-Confirmation Report, and then Docket

12  3757 was filed by the Claimant Trust.  So, thank you.  I've

13  noted those if we want to go back and look.

14      All right.  Well, that concludes this Dugaboy/Hunter Trust

15  motion for leave.

16      Let's now turn to the other Hunter Mountain motion for

17  leave.  We have a status conference -- I think it's a hearing

18  on what kind of hearing we're going to have -- on Docket Entry

19  No. 3699.  So we probably have a larger appearance list on

20  this one, so I'll do roll call.

21      Appearing for Hunter Mountain, who do we have?

22          MR. MCENTIRE:  Good afternoon, Your Honor.  This is

23  Sawnie McEntire and my partner Roger McCleary with Parsons

24  McEntire McCleary representing Hunter Mountain.

25          THE COURT:  Okay.  Now I'm going to just do a roll

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-89   Exhibit A   Page 207 of 253   Page 107 of 232   PageID 8989

8

 1  call.  For the Reorganized Debtor, Mr. Morris, will you be

 2  taking the lead on that?

 3          MR. MORRIS:  Yes, I will, Your Honor.  Good

 4  afternoon.

 5          THE COURT:  Good afternoon.

 6      All right.  We have four, potentially, named Claims

 7  Purchasers.  So I'll ask, who do we have representing Muck

 8  Holdings?

 9          MR. MCILWAIN:  Your Honor, Brent McIlwain here from

10  Holland & Knight.  I represent Farallon Capital Management,

11  Stonehill Capital Management, Muck Holdings, and Jessup

12  Holdings, LLC.

13          THE COURT:  Okay.  So you represent all four of the

14  Claims Purchasers?

15          MR. MCILWAIN:  That's correct, Your Honor.

16          THE COURT:  All right.  James Seery is a potential

17  Defendant identified.  Who do we have representing Mr. Seery?

18          MR. STANCIL:  Good afternoon, Your Honor.  This is

19  Mark Stancil from Willkie Farr & Gallagher.  I'm joined by my

20  colleague Josh Levy and our co-counsel from Reed Smith, Omar

21  Alaniz.

22          THE COURT:  All right.  Thank you.

23      Do we have any other lawyers appearing in this?

24          MR. STANCIL:  I think that's it, Your Honor.

25          THE COURT:  All right.  Well, so, again, I think

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 11/07/23    Page 108 of 232    PageID 8990

9

1    we're having a hearing on what kind of hearing we're going to

2    have on your motion for leave, Mr. McEntire.  What did you

3    want to say?

4            MR. MCENTIRE:  Well, that's correct, Your Honor.

5    Good afternoon again.

6        I think there are several issues before the Court during

7    this status conference.  One is the date of the hearing.  I

8    think we certainly preliminarily had agreed over the last 10

9    days that May 18 was the logical date in light of the motion

10   practice.

11       The length of the hearing, Mr. Morris has suggested over

12   four hours or approximately four hours.  I've suggested one

13   and a half hours.

14       And then there is an issue about whether or not evidence

15   should be allowed.

16       There is a fourth issue that I just want to make sure that

17   the Court is aware.  I don't want to be accused of waiting

18   this issue as the proceedings progress.  And that is we have

19   raised an issue about Mr. Morris's representation and whether

20   he has a conflict of interest.  We did this in writing in our

21   reply brief several weeks ago.  As a consequence, Mr. Seery

22   now has new counsel, Mr. Morris of course to represent the

23   Highland parties, the Reorganized Debtor and the Claimant --

24   the Highland Claimant Trust.  We are concerned that he has a

25   conflict of interest.  It is unclear from whom he is taking

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 11/07/23   Page 109 of 232   PageID 8991

10

1   his direction or from whom he is deriving his authority.

2       And equally important if not more important, he is taking

3   positions that are inconsistent with the best interests of the

4   Reorganized Debtor and the Claimant Trust.

5       I don't think this is the type of issue that could be

6   resolved today.  However, I want to make sure it's on the

7   record so I'm not accused of waiting as we proceed.  But

8   otherwise, it's the date of the hearing, the length of the

9   hearing, and whether or not evidence is allowed.

10      I'm prepared to address the merits of our thoughts on each

11  of those last three -- the date, the length, and the evidence

12  issues -- if the Court wishes, or I could wait until after

13  other counsel have made their comments.  But I'm prepared to

14  move forward as the Court wishes.

15          THE COURT:  All right.  Well, I am not going to

16  address a conflicts of interest issue today.  I think I heard

17  you saying you don't anticipate the Court would.  But I don't

18  have any sort of pleading in front of me on that, so we'll

19  just make that clear from the get-go.

20      One of the reasons I'm making that clear from the get-go

21  is I have not read the brief you filed I don't know what time

22  on Friday, Docket No. 3758, Mr. McEntire.  And then I see an

23  objection you filed Friday, Docket No. 3761.  And then last

24  night at 9:30 a supplemental support document.  I take it none

25  of --

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 11/27/23   Page 110 of 232   PageID 8992

11

1          MR. MCENTIRE:  Right.

2          THE COURT:  -- these issues raised the conflict of

3     interest issue.

4          MR. MCENTIRE:  We addressed the conflicts of issues

5     in -- certainly in our filing last night.  But the brief on

6     Friday and the objection on Friday is addressing the Court's

7     email and Mr. Morris's request to hold an evidentiary hearing.

8     And we oppose that.  We object to the conduct of an

9     evidentiary hearing.  And the brief that we filed -- the

10    objection we filed was supported by case law.  I've seen

11    nothing from Mr. Morris or any of the other counsel in the

12    case responding to our objection or the cases we've cited.

13       But Your Honor, if you wish, I could just move forward

14    right now and address the evidentiary issue, if you wish.

15         THE COURT:  All right.  Well, I'm backing up.  This

16    shows 9:10 a.m. this morning, the 3761.  Am I on the wrong

17    thing?

18         MR. MCENTIRE:  I think you're -- what we did this

19    morning at Mr. Morris's request is we sent in a redline

20    version of the revised complaint to the Court's attention.

21    The actual revised complaint was filed last night, and all

22    that was done this morning was, at Mr. Morris's request, to

23    facilitate his review of the new complaint, was to redline it.

24         THE COURT:  All right.  Well, and then, okay, the

25    brief you filed was at 4:55 p.m. Friday.

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 11/07/23    Page 111 of 232    PageID 8993

12

1          MR. MCENTIRE:  Yes, ma'am.

2          THE COURT:  I can assure you, we were still all

3    working then, but unless you notify my courtroom deputy that

4    you have filed something sort of on the eve of a hearing,

5    we're not necessarily in chambers going to go back and scroll

6    the docket.  We had court on other matters this morning, so we

7    were focused on that.  I've not seen your brief.  But anyway,

8    you can argue obviously what you want to argue.

9        Okay.  So let's talk about -- I think you wanted to talk

10   about evidence first.

11         MR. MCENTIRE:  Yes, ma'am.

12         THE COURT:  So I'm happy to hear about that topic

13   first.  Because, obviously, the other issues -- length of

14   hearing, date of hearing -- hinge on that.  So what do you --

15         MR. MCENTIRE:  I agree.

16         THE COURT:  What do you say about this?

17         MR. MCENTIRE:  All right.  Well, earlier, I think,

18   last week, or perhaps it was the end of the previous week, Mr.

19   Morris had issued an email requesting a four-hour hearing

20   because he wanted to cross-examine Mr. Dondero and otherwise

21   have a full-blown evidentiary hearing.  Opening statements,

22   final argument, and witness examinations.

23       We responded immediately by email objecting to the

24   evidentiary format.  There was a series of exchanges between

25   my office, Mr. Morris's office, and your chambers, Your Honor,

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 11/07/23   Page 112 of 232   PageID 8994

13

1   where Ms. Ellison indicated that you were initially inclined

2   to grant an evidentiary hearing.

3       That was followed by an email on April 19th of last week

4   where you suggested in your email that the issue of

5   colorability, which is really the gatekeeper function that the

6   Court's serving, as the Court is aware, that the standard for

7   colorability was somehow greater than the standard for

8   plausibility under a 12(b)(6) motion.

9       In the email, Ms. Ellison suggested that it was perhaps

10  the Court's initial thinking that there was a higher hurdle

11  associated with the gatekeeping function than a traditional

12  12(b)(6) inquiry.

13      We have done substantial research following that email

14  exchange, and I will also point out to the Court we actually

15  briefed the 12(b)(6) standard in our original emergency motion

16  for leave.  So this is not new to us.  We had actually briefed

17  it originally in our original motion that was filed back in

18  late March.  March 28th, I believe.

19      But in light of the Court's communication, we did further

20  research.  We have found no cases that suggest that the

21  inquiry for colorability is greater than the plausibility

22  standard under *Twombly*.  In fact, we found cases that suggest

23  just the opposite.  The *Gonzalez* case which was cited is a

24  Northern District of Texas case.  It was a gatekeeper case.

25  Not a bankruptcy case.  But it was a gatekeeper case on an

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-89    Filed 12/07/23    Page 113 of 232    PageID 8995

14

1    ERISA claim that simply said that the plaintiff simply had to

2    be able to establish an arguable claim.

3        The *Deepwater Horizon* case, which is a Fifth Circuit case,

4    also states that the case -- the claim must only have some

5    possible validity.

6        So the threshold inquiry is very, very low.  Evidence is

7    not allowed.

8        The *Gonzalez* case also suggested that the Court, similar

9    to a 12(b)(6) inquiry, is limited to the four corners of the

10   principal pleading -- in this case, the complaint, or now the

11   revised complaint.

12       So we don't believe that --

13           THE COURT:  So, Mr. McEntire, --

14           MR. MCENTIRE:  Yes, Your Honor.

15           THE COURT:  -- let me -- help me with this.  I'm

16   walking through -- because obviously the question we're

17   drilling down on is what is the appropriate legal standard for

18   the Court to apply --

19           MR. MCENTIRE:  Yes.

20           THE COURT:  -- in performing the gatekeeping

21   function.  So I started the same place I guess you and

22   everyone else started, and that is with the plan, the

23   gatekeeping provision in the plan.  And it starts on the

24   bottom of Page 50 and goes over to 51.

25       And you probably discovered, the same as I discovered,

009306

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-9 A   Filed 11/07/23   Page 114 of 232   PageID 8996

15

1  that it doesn't give the appropriate legal standard.  It just

2  says that the Bankruptcy Court -- that no enjoined party may

3  commence or pursue a claim or cause of action of any kind

4  against any protected party without the Bankruptcy Court --

5  turn over to Page 51 -- first determining, after notice and a

6  hearing, that such claim or cause of action represents a

7  colorable claim of any kind.  And then the last sentence of

8  that paragraph:  "The Bankruptcy Court will have sole and

9  exclusive jurisdiction to determine whether a claim or cause

10  of action is colorable."

11      Okay?  So all that really tells us is that there has to be

12  notice and a hearing.  That doesn't say what kind of hearing,

13  evidentiary or otherwise, and doesn't elaborate on colorable.

14      So, beyond that, here was my legal thinking.  And maybe

15  this is all fully explored in your brief.  I just don't know.

16  I thought, well, what legal standard do Bankruptcy Courts

17  apply in the *Barton Doctrine* context when someone is seeking

18  leave to sue a bankruptcy trustee?  And then I thought, what

19  legal standard do Bankruptcy Courts apply in a *Louisiana World*

20  *Exposition*-type context if an unsecured creditors' committee

21  or other party brings a *Louisiana World Exposition* motion,

22  saying, we'd like leave to sue a party because the debtor-in-

23  possession is conflicted or whatever reason.

24      And so before we get to *Deepwater Horizon* and the other

25  cases, did you find any legal authority in the *Barton Doctrine*

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-9   Filed 12/07/23   Page 115 of 232   PageID 8997

16

1   context that you think sheds light?  Because that seems to me

2   the most analogous context, right?

3          MR. MCENTIRE:  Specifically to answer -- to respond

4   to your question directly, the answer is no.  What we did find

5   specifically, though, was the case, as I'd indicated, the

6   Fifth Circuit directs that a 12(b)(6) standard be applied to

7   the issue of colorability.  And that's the *Trippodo* case.

8          THE COURT:  The what case?

9          MR. MCENTIRE:  And that's also cited -- the *Trippodo*.

10  T-R-I-P-P-E-D-O [sic].  That is a Southern District of Texas

11  case that cites a Fifth Circuit precedent that directs that a

12  12(b)(6) standard be used as a template, if you will, for

13  determining colorability.  And we've also cited that in our

14  brief.

15         THE COURT:  And that, was that the one that was in an

16  ERISA context?

17         MR. MCENTIRE:  No, ma'am.  That was *Gonzalez*.  And

18  that's cited on Page 7 of our brief.

19         THE COURT:  And so --

20         MR. MCENTIRE:  That was a gatekeeper -- a gatekeeper

21  issue.  Before you -- you have to satisfy certain criteria

22  before the Court will allow the ERISA to even be filed, the

23  ERISA claim to even be filed.  And so it was akin to a

24  gatekeeper function.  And they applied specifically a

25  colorability or 12(b)(6) standard.

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 11/07/23   Page 116 of 232   PageID 8998

17

1          THE COURT:  I'm sorry.  What was the context?  What

2  was -- who was seeking to sue whom over what in the *Trippodo*

3  case?

4          MR. MCENTIRE:  The -- it was an ERISA claim.  It was

5  in the -- I believe it's the Northern --

6          THE COURT:  Oh, I thought you said is not an ERISA

7  claim.

8          MR. MCENTIRE:  Well, no, I apologize.  I may have

9  sorted my words.  It was an ERISA claim.  It was in the

10  Northern District of Texas, I believe.  I have it right here.

11  One second.  Yes, it's Northern District of Texas.  It's a

12  2002 case.  It was dealing with the amendment of pleadings to

13  bring forth an ERISA claim.  And the issue there is whether or

14  not there's a colorable claim or whether it was frivolous or

15  futile.  And the court determined that a -- that before you

16  even get to the 12(b)(6) level -- this case can actually stand

17  for the proposition that it's -- that it's even less than a

18  12(b)(6) standard.  But before you even get there, you have to

19  address it from a futility or frivolity or is there any

20  evidence.  The actual words that are used are, one second,

21  "any arguable claim."

22          THE COURT:  Okay.

23          MR. MCENTIRE:  Not plausibility.  Not on the merits.

24  But any arguable claim.  It's the lowest of possible

25  thresholds.

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-9    Filed 12/07/23    Page 117 of 232    PageID 8999

18

```
 1              THE COURT:  All right.  Well, --

 2              MR. MCENTIRE:  And that's --

 3              THE COURT:  -- so, but just to be clear, you didn't

 4    find anything in the Barton Doctrine context out there?

 5              MR. MCENTIRE:  I did not.

 6              THE COURT:  And what about --

 7              MR. MCENTIRE:  Now, to be honest --

 8              THE COURT:  Say again?

 9              MR. MCENTIRE:  To be clear, I did not -- I did not --

10    I apologize.  We did not specifically look at Barton.  I'll be

11    glad to do that and supplement as necessary.

12              THE COURT:  Okay.  And Louisiana World, you didn't

13    find anything that would shed light in that line of cases?

14              MR. MCENTIRE:  I think we did.  I believe Louisiana

15    World supports our position here.

16              THE COURT:  It says what legal standard applies?

17              MR. MCENTIRE:  One second.  One second, Your Honor,

18    please.

19         (Counsel confer.)

20              MR. MCENTIRE:  One moment, please, Your Honor.

21         (Counsel confer.)

22              MR. MCENTIRE:  Can I -- I might have to supplement

23    that.  I have someone looking for it right this second.

24         (Counsel confer.)

25              MR. MCENTIRE:  It was a conflict issue.
```

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 12/07/23    Page 118 of 232    PageID 9000

19

1          (Counsel confer.)

2          MR. MCENTIRE:  The *Louisiana World* case, it was a

3    little bit off topic.  It had to do with a conflict of

4    interest where the creditors' committee had a conflict on

5    (inaudible) and the Court determined that the case should go

6    forward.  And --

7          THE COURT:  I know it was a different context.  I'm

8    just trying to find something analogous to this gatekeeper

9    motion.  And the most analogous things I could think of was

10   motions for leave that have been filed in a Bankruptcy Court

11   pursuant to the *Barton Doctrine*, wanting to sue a bankruptcy

12   trustee, where the Bankruptcy Court acts as a gatekeeper, and

13   then a *Louisiana World*-type situation where a creditors'

14   committee files a motion seeking leave to sue somebody,

15   arguing the debtor is not doing it, for either conflicts or

16   some other reason.

17        All right.  So, assuming your case authority is the

18   guiding authority here and it's a Rule 12(b)(6)-type context,

19   you're saying I should look at the four corners of the

20   documents, or anything else the Fifth Circuit has said I can

21   look at, take judicial notice of, in a 12(b)(6) context and

22   not hear evidence?

23        But part of the reason we're having this dispute, right,

24   is because you've put forward some evidence?  Do I understand

25   that correctly?  And I have not dove into weeds on this yet,

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-19    Filed 12/07/23    Page 119 of 232    PageID 9001

20

1   but I understand there were affidavits submitted by you.

2   Correct?

3           MR. MCENTIRE:  In order to make this determination,

4   you do not need to consider the Dondero affidavits that Mr.

5   Morris has raised.  You do not need to consider any of the

6   documents that are actually associated with our motion.

7       We recognize that the application under the 12(b)(6)

8   standard, you'd be relegated to the four corners of the actual

9   complaint itself -- in this case, the revised complaint.

10      The 12(b)(6) standard is a guide.  We take that to mean

11  that it's a low standard.  It's, at most, a plausibility

12  standard, but we believe actually less.

13      We've provided the Dondero declaration -- declarations,

14  plural; there were two -- together with some documents to give

15  -- provide additional background for the Court.  But Mr.

16  Morris has raised an objection.  And under the circumstances,

17  assuming the Court follows the guideline of the *Trippodo* case,

18  then we would understand the Court would not consider the

19  actual Dondero declarations.

20          THE COURT:  Does that mean you're withdrawing the

21  affidavits?

22          MR. MORRIS:  I object to that, Your Honor.  I really

23  -- I'll let counsel finish.  This is just not right.

24          THE COURT:  Okay.

25          MR. MCENTIRE:  Well, I'm not sure what --

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 12/07/23   Page 120 of 232   PageID 9002

21

1            THE COURT:  Your response to that?

2            MR. MCENTIRE:  I think what we're doing is the

3    correct legal statement and articulation of what the law is.

4    Whether Mr. Morris likes it or not, I suppose, you know, with

5    all due deference to Mr. Morris, it's not a question of

6    whether I'm doing something that he likes.  It's what I think

7    is legally correct.  And I think that I've presented that as

8    best as I can to the Court.

9            THE COURT:  Okay.  Well, you never --

10           MR. MCENTIRE:  By the way, --

11           THE COURT:  Assuming I would allow withdrawal of the

12   affidavits, is that what you're seeking to do?

13           MR. MCENTIRE:  Yes.  If the Court is suggesting that

14   if I leave the affidavits attached to the motion that the

15   Court is going to allow this to become, effectively, a trial

16   on the merits -- when it shouldn't be, because that's not what

17   this is about, this is not a test of witness credibility, this

18   is not a test of the ultimate merits of the claim -- if that

19   is the situation that I'm being placed, then the answer is we

20   would not want to withdraw them but we will.

21           THE COURT:  Okay.  Well, you don't want to but you

22   will?  I mean, I --

23           MR. MCENTIRE:  Yes, correct.  We do.

24           THE COURT:  I feel like that means I need to explore

25   this a little, because I don't want -- well, any time

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-19    Filed 12/07/23    Page 121 of 232    PageID 9003

22

 1  affidavits are put forward in this Court, or I think any other

 2  court I know of, parties are always given the chance to cross-

 3  examine an affiant or a declarant.  Okay?  We always allow

 4  that if there's an objection to the underlying motion.  So, --

 5          MR. MCENTIRE:  Well, here, --

 6          THE COURT:  -- I just want to make sure you're clear,

 7  you put it in and then the other side said, well, we want a

 8  chance to cross-examine the affiant.  I allow that --

 9          MR. MCENTIRE:  Then --

10          THE COURT:  -- always, a hundred percent, as does

11  every other judge I know.  If there's an affidavit, if someone

12  wants to cross-examine them, obviously, there might be two

13  sides of the story.  So I just want to be clear on what your

14  desired outcome is --

15          MR. MCENTIRE:  Fair enough.  I understand.

16          THE COURT:  -- and request is.

17          MR. MCENTIRE:  I understand the Court's statement.

18  We withdraw the Dondero affidavits for purposes of this

19  exercise and your consideration.

20          THE COURT:  Okay.

21          MR. MORRIS:  Can I be heard, Your Honor?

22          THE COURT:  Yes.  I'm going to let you be heard on

23  that.  But any other argument you want to make, Mr. McEntire?

24          MR. MCENTIRE:  Yes.  One last thing.  We did find the

25  reference to *Louisiana World*, and it was determined that no

009314

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-89   Filed 12/07/23   Page 122 of 232   PageID 9004

23

1  evidence was appropriate and that the court should limit its

2  inquiry based upon the allegations in the pleading, and in

3  that case, to determine whether it was a colorable claim,

4  which would, if pursued successfully, could have increased the

5  value of the estate.  So, the *Louisiana World* case does

6  suggest that there's not an evidentiary component to this

7  inquiry.

8         THE COURT:  Okay.  Let me be clear.  You first said

9  it held no evidence was appropriate, and then you said

10  suggest.  So, did the court actually tackle what is the legal

11  standard and is evidence appropriate?  Did it actually tackle

12  those specific issues?  That's all I really care about.

13  Because I've read the case.

14         MR. MCENTIRE:  Yes.  The citation in our brief is

15  that the Court need not be satisfied that there's an

16  evidentiary basis on the merits of the claim to be asserted.

17  And we have cited the *Louisiana World* case at Pages 252 and

18  253.  Allegations were sufficient and no evidentiary hearing

19  was necessary to determine -- in this case it was a breach of

20  fiduciary duty claim -- whether it had -- whether it was

21  appropriately colorable to move forward.

22         THE COURT:  Okay.  Courtney, you can be drilling down

23  on that.

24     All right.  Anything else?

25         MR. MCENTIRE:  On the evidence issue, no, Your Honor.

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 12/07/23   Page 123 of 232   PageID 9005

24

1   We would, again, if the Court has time, we would encourage the

2   Court to read our brief.  We believe we've laid out the law

3   fairly succinctly and clearly, and we stand by our brief --

4           THE COURT:  All right.

5           MR. MCENTIRE:  -- and our objection.

6           THE COURT:  Well, of course I have time and I will

7   read it, but I just, given when it was filed and that I wasn't

8   alerted to it being there, I'm just explaining why I have not

9   read it yet.

10      All right.  Mr. Morris, your argument?

11          MR. MORRIS:  Good afternoon, Your Honor.  John Morris

12  for the Claimant Trust and for the Reorganized Debtor.

13      Your Honor, we understood this to be a status conference.

14  We didn't understand this to be a day for rulings by the

15  Court.  We didn't understand there was an issue for the Court

16  to determine today.  Hunter Mountain has now filed two briefs

17  on the topic of the standard of colorability, and they've made

18  an exhaustive argument, doing all of this before we -- before

19  any of the objecting parties have had an opportunity to be

20  heard.

21      Our brief is due on May 4th, and we respectfully request

22  that the Court, subject to other comments that I have this

23  afternoon, withhold judgment on anything that's happened here

24  today.

25      Mr. McEntire has completely misstated the law.  He has no

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-9   Filed 12/07/23   Page 124 of 232   PageID 9006

25

1   understanding, apparently, of what a gatekeeper is and how it

2   functions under *Barton*.  And there's been no reference at all

3   to the purpose of the gatekeeper, which is set forth

4   explicitly, clearly, and in great detail in the Court's

5   confirmation order.  Okay?

6       12(b)(6), I don't want to -- I don't want to get too far

7   ahead of myself, but 12(b)(6) has nothing to do with this

8   case.  Of course this has turned into a bit of a circus, Your

9   Honor, as it always does in Highland.  This was a very simple

10  matter.  Hunter Mountain filed a motion for leave to file a

11  complaint under the gatekeeper provision of Highland's plan.

12  They attached a copy of their proposed complaint.  And

13  Paragraph 1 of their motion says, The motion is separately

14  supported by the declarations of James Dondero dated May 22nd

15  -- May 2022 and February 2023.

16      And these aren't just two declarations, Your Honor.

17  There's almost 400 pages of attachments to these declarations.

18  And now, 10 days before our opposition is due, because Mr.

19  Dondero fears being cross-examined, Hunter Mountain just

20  willy-nilly thinks they can withdraw those affidavit and

21  declarations?  That is greatly prejudicial, and I just can't

22  believe what I just heard.

23      They don't want to do it, they don't want to subject their

24  client to some cross-examination, when they put their

25  declarations into evidence, when they said that their motion

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-89    Filed 12/07/23    Page 125 of 232    PageID 9007

26

1    was based on these declarations.

2        We should have that opportunity, Your Honor.  Forget about

3    the standard.  As Your Honor rightly pointed, the rule is very

4    clear.  You offer declarations; we get to cross-examine.

5        On Friday night, we got Hunter Mountain's objection.

6    Their, really, their second attempt to deal with colorability.

7    Last night, they filed what they characterize as support or a

8    supplemental document, which Hunter Mountain insists is not an

9    amendment of their pleading.

10        Your Honor, I've had Hunter Mountain provide the Court

11    with a blackline.  I would respectfully request that the Court

12    instruct Hunter Mountain to file it on the docket so that it

13    becomes part of the official record in this case.  If Your

14    Honor reviews the blackline version, which is not on the

15    docket but was emailed earlier today at my request, the Court

16    will see just how extensive the changes are to this pleading.

17    So here they are, without leave of Court, without filing a

18    motion to amend, without anything, they simply dump a brand

19    new complaint on us 10 days before our opposition is due, and

20    today tell us they're not going to include the Dondero

21    declarations.

22        This is all terribly wrong, Your Honor.  This is not the

23    way the process is supposed to work.  I've seen a lot in this

24    case, but this is a new standard for chaos.

25        The changes are extensive.  And I just want to point out a

009318

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 12/07/23   Page 126 of 232   PageID 9008

27

1    couple of them.  They now claim that Mr. Seery exercised

2    "despotic control" over the Debtor.  I believe I have the

3    right to inquire as to the factual basis for that ridiculous

4    allegation.

5         They allege in Paragraph 2 of the newly-amended complaint

6    that Seery "failed to cause the Debtor to make financial

7    disclosures, as required."

8         Your Honor has been in this case since December of 2019.

9    As this Court is aware, the single only financial disclosure

10   that was not filed with the Court was pursuant to Rule 2015.3.

11   Mr. Dondero commissioned his investigation.  As his

12   declarations say, he caused Mr. Rukavina and Mr. Draper to

13   complain to the U.S. Trustee's Office.  Nothing.

14        They objected to confirmation.  They made a motion.  They

15   went to the District Court.  They went to the Fifth Circuit.

16   That one single document is not a basis to say that Mr. Seery

17   failed to cause the Debtor to make financial disclosures.

18        We have the right, Your Honor, under the -- under the

19   gatekeeper, under this Court's confirmed plan -- which, by the

20   way, is worth nothing that in their newly-amended proposed

21   complaint they specifically say they do not challenge the

22   confirmation order.  And I would encourage the Court to look

23   at Paragraphs 77 through 80.  They don't challenge that order.

24   And that order tells us that we have the ability to inquire as

25   to the good faith nature of these allegations.  It has nothing

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-39    Filed 12/07/23    Page 127 of 232    PageID 9009

28

1    to do with 12(b)(6).

2        Because these changes are so extensive, Your Honor, we

3    think we need a further change to the schedule.  We believe

4    the law says that this is an amendment that requires a

5    resetting of the clock.  But we don't need that much time,

6    Your Honor.  We need just a brief adjustment to the schedule.

7    And we specifically propose that the objection deadline be

8    extended by one week, from May 4th to May 11th.  The reply

9    deadline should be extended by one week, from May 11th to May

10   18th.  And the hearing date should be extended by one week,

11   from May 18th to May 25th, or any day the following week after

12   Memorial Day.

13       The objecting parties should not be prejudiced by Hunter

14   Mountain's continued evolution of their claims.  This is --

15   and this approach is completely fair and reasonable.

16       And we want to touch just for a moment on this concept of

17   derivative standing.  Again, Your Honor, we plan on addressing

18   this in detail in our submission.  We shouldn't be required to

19   set forth all of our arguments before they're fully

20   formulated, pursuant to the Court's scheduling order.  But I

21   do want to make a couple of points.

22       Another attorney representing Hunter Mountain filed what

23   it called the valuation motion.  The first iteration, Your

24   Honor will recall, was actually filed by Doug Draper on behalf

25   of Dugaboy last summer.  Then Louis Phillips represented

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-9   Filed 10/07/23   Page 128 of 232   PageID 9010

29

1    Hunter Mountain.  When that motion was denied, the Stinson

2    firm came in and represented Hunter Mountain.  They filed a

3    new valuation motion.

4        Here's the irony, Your Honor.  Mr. Dondero and Hunter

5    Mountain and Dugaboy keep telling the Court assets exceed

6    liabilities.  Assets exceed liabilities.  And you know our

7    position on that, Your Honor.  They may; they may not.  It's

8    also irrelevant at the end of the day because of the

9    indemnification claims.  And we'll talk about that more in a

10   moment.

11       But the important thing is that, if assets exceed

12   liabilities, how could anybody other than, according to Hunter

13   Mountain, Hunter Mountain have been harmed by anything?

14   Creditors, according to Mr. Dondero, are getting paid in full.

15   How could any of these allegations have harmed any beneficial

16   holder of an interest in the Claimant Trust today?  According

17   to Mr. Dondero, they're going to get paid a hundred cents on

18   the dollar.  Where's the damages?

19       There's no derivative claim here.  This is a -- this is an

20   action by and for Hunter Mountain and nobody else.  And it's

21   frivolous.  And we will prove that.

22       Make no mistake.  The Trust and the Reorganized Debtor has

23   a substantial outcome in this motion, and that's why I'm here.

24   I'm here because the Trust has substantial indemnification

25   obligations.  Mr. Dondero seems to forget that.  But those

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 07/07/23   Page 129 of 232   PageID 9011

30

1    indemnification obligations are real, and the Trust and the

2    Reorganized Debtor have an affirmative duty on behalf of the

3    Claimant Trust beneficiaries to make sure that baseless

4    litigation is nipped in the bud.  And that's why I'm here.

5        There is no rule of law that says you let the fox into the

6    henhouse simply because the fox fabricates a story that the

7    henhouse is on fire.  The henhouse is not on fire, and an

8    evidentiary hearing will prove that.

9        As for the subject at hand, it's important to remember

10   that the underlying motion is not a defendant's motion to

11   dismiss, but rather it's Hunter Mountain's motion for leave to

12   file a complaint under the gatekeeper.  The burden has

13   shifted.  They have the burden, not the putative defendants,

14   but Hunter Mountain.

15       The gatekeeper provision was contained in Highland's plan,

16   it was confirmed by this Court, and it was confirmed -- it was

17   affirmed by the Fifth Circuit Court of Appeals.

18       We appreciate the Court's preliminary view that an

19   evidentiary hearing is appropriate here, and we understand why

20   there's two reasons for that:  Because they put declarations

21   into the record; and more importantly, because the gatekeeper

22   provision requires it.

23       Hunter Mountain's objection to an evidentiary hearing is

24   disingenuous.  Mr. Patrick, Mr. Dondero, Hunter Mountain, they

25   all know the gatekeeper analysis is not a 12(b)(6) analysis,

009322

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 12/07/23    Page 130 of 232    PageID 9012

31

1    for at least the following reasons.  Mr. Dondero and his

2    affiliates have been fighting the gatekeeper provision since

3    the moment it was proposed.  They fought it at confirmation,

4    they appealed it to the Fifth Circuit, they objected when this

5    Court entered an order approving the gatekeeper without

6    modification, in conformity with the Fifth Circuit's decision,

7    and then going back to the Fifth Circuit to challenge the

8    gatekeeper.

9        Why would you do all of that?  Why would you spend that

10   money?  Why would you exhaust every potential avenue?  If you

11   thought it meant nothing, if you thought it was a less

12   standard than 12(b)(6), who would do that?  I think their

13   conduct proves that they know the standard is substantially

14   higher.  And if they only read the Court's confirmation order,

15   they would know that for certain.

16       Hunter Mountain's own pleadings prove that they know this

17   is not a 12(b)(6) standard.  If they thought it was a 12(b)(6)

18   standard, they wouldn't have specifically and expressly asked

19   the Court to look beyond the four corners of the complaint.

20   Right?  That's what they did in Paragraph 1 of their motion,

21   the very first document filed here, Docket No. 3699, Paragraph

22   1:  The motion is supported by the declarations of Jim

23   Dondero.

24       Why would you do that if you thought all the Court had to

25   do was look at the four corners?  They'll never be able to

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-39   Filed 09/07/23   Page 131 of 232   PageID 9013

32

1    rationally explain that.  They're attempting to, and I hope

2    the Court won't let them, they're attempting to withdraw the

3    declarations today because they found out afterwards that when

4    you put declarations into the record people are allowed to

5    cross-examine.

6        The Court should not allow Hunter Mountain to play these

7    games.

8        There's more.  They know they don't have the goods here.

9    How do you know they don't have the goods here?  Because the

10   facts are based on Mr. Dondero and Mr. Dondero alone.  This

11   email that he sent to Mr. Seery in December 2017, as well as

12   this phone call or phone calls that he allegedly had with one

13   or two representatives of Farallon.  This is all Mr. Dondero.

14   He had all of this information in the spring of 2021.  Did he

15   bring anything to this Court's attention?  No.  You know what

16   he did?  He sought discovery.  And he filed a 202 petition in

17   Texas state court.

18       If you have the goods, if you have the evidence, bring

19   your claim.  He didn't do that because he knew he didn't have

20   the evidence.  He knew he didn't have the goods.  So they went

21   fishing.  They went fishing to state -- Texas state court, and

22   they came up with nothing.  Right?  It was removed to this

23   Court.

24       Your Honor will recall that in early 2022 Your Honor had a

25   hearing and remanded it back to state court.  Mr. Dondero

Case 19-34054-sgj11 Doc 3821-1 Filed 06/07/23 Entered 06/07/23 16:13:46 Desc
Case 3:23-cv-02071-E Document 28-9A Filed 09/07/23 Page 132 of 232 PageID 9014

33

1  filed another declaration with another version of his phone

2  call with Farallon. And Texas state court dismissed the

3  petition.

4      Hunter Mountain waits seven months. I don't know why they

5  wait seven months, but they wait seven months. They have the

6  same evidence. They don't file a complaint. Instead, Hunter

7  Mountain files another 202 petition, searching for evidence.

8  They went fishing again, and again went home empty, with Mr.

9  Dondero's third recitation of his conversation with Farallon,

10 but a second and different Texas state court said, no dice, no

11 discovery.

12     That's why they're here now, because they swung and they

13 missed twice. They have no better evidence today than they

14 did in the spring of 2001 [sic] when a decision was made that

15 they didn't have enough to bring an action. They know

16 12(b)(6) is not the standard here, Your Honor.

17     Mr. Stancil is here today on behalf of Mr. Seery. I

18 understand Mr. Stancil wants to introduce himself to the Court

19 and provide some very preliminary views on the gatekeeper

20 standard and related matters. Highland -- Holland & Knight is

21 here on behalf of the Claim Purchasers, and I'm sure they'll

22 want to weigh in.

23     In the end, Your Honor, this was supposed to be a status

24 conference. There's nothing for the Court to decide. A

25 scheduling order was in place, and we'd respectfully request

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 03/07/23    Page 133 of 232    PageID 9015

34

1  that it be adjusted in light of, you know, these amended

2  pleadings.  I don't know why they -- you know, their amended

3  pleadings.  Just look at the blackline.

4      We should have the allotted time to respond to these

5  issues, and we will do so.  And I'm very confident that at the

6  completion of briefing the Court will find it not only

7  appropriate but necessary to hear evidence on this motion.

8      That's all I have, Your Honor.

9          THE COURT:  All right.  Let me be clear.  The

10  redline, should I have it somehow?  It was not filed on the

11  docket.  You're wanting --

12          MR. MORRIS:  It was not, Your Honor, --

13          THE COURT:  Okay.

14          MR. MORRIS:  -- just to be clear.  I think -- I

15  brought to Mr. McEntire's attention this morning that the

16  Court's prior instruction in this case was that when you were

17  going to file amended documents, when you were going to use

18  amended documents, that blacklines should be filed with the

19  Court.  And a blackline was sent I believe to Ms. Ellison and

20  to all counsel of record, but it wasn't filed on the docket.

21  And I respectfully request that it be put on the docket,

22  because I think that needs to be part of the record of this

23  case.

24          THE COURT:  Okay.  I just -- I got from Traci the

25  redline.

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 33-9   Exhibit A   Filed 12/07/23   Page 134 of 232   PageID 9016

35

 1              MR. MORRIS:  Yeah.  Just open it up.  You'll see.

 2              THE COURT:  It was not sent to her until 12:00 noon,

 3  and then she sent it to me at 1:00-something.  So I've got it

 4  now.  All right.  There it is.  It's 43 pages.

 5              MR. MCENTIRE:  Your Honor?  May I respond very

 6  quickly to the --

 7              MR. MORRIS:  No.  Your Honor?  Your Honor?

 8              THE COURT:  I'll let you have rebuttal argument at

 9  the end, --

10              MR. MCENTIRE:  Fair enough.

11              THE COURT:  -- after I've heard from all of the other

12  parties in interest.

13        So, who wants to go next?  Mr. McIlwain or counsel for Mr.

14  Seery, Mr. Stancil?  Who wants to go next?

15              MR. STANCIL:  Your Honor, I think it's -- well, this

16  is Mark Stancil for Mr. Seery.  I think it's my turn.

17              THE COURT:  Okay.

18              MR. STANCIL:  And I'll try to be brief, Your Honor.

19  I think it'd be helpful mostly to explain just in a little bit

20  of detail why we agree completely with Mr. Morris's statement

21  that Your Honor should await full briefing on this issue.

22  Just in response to certain of the comments made earlier by

23  the Plaintiffs, I'd like to just sort of maybe level-set a

24  little bit.

25        For starters, I was confused that Mr. McEntire said he did

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 07/07/23    Page 135 of 232    PageID 9017

36

1    not look for cases under *Barton*, because Your Honor

2    specifically cited *Barton* in the confirmation order in

3    approving the gatekeeper provision, which I believe it's in

4    Paragraph 80 in the confirmation order on Page 58.  That's

5    Docket No. 1943.  And Your Honor specifically cites the

6    Supreme Court's *Barton Doctrine*.

7        Moreover, that followed recitation of the extensive

8    factual findings that supported the requirement of a rigorous

9    gatekeeping requirement, including Paragraph 77, which the

10   Court found as fact that Mr. Dondero and the Dondero-related

11   entities have harassed the Debtor, which has resulted in

12   further substantial, costly, and time-consuming litigation for

13   the Debtor.

14       And as particularly relevant here, the Court further found

15   that this harassment had been specifically directed at Mr.

16   Seery, among others.

17       The Court further found in Paragraph 78 that Mr. Dondero's

18   abuse of litigation "was consistent with his comments as set

19   forth in Mr. Seery's credible testimony that if Mr. Dondero's

20   plan proposal was not accepted he would 'burn down the

21   place.'"

22       So, accordingly, Your Honor, the reference to *Barton* is

23   very much a robust gatekeeping entity -- requirement.  And

24   we're exactly today where the Court had predicted in entering

25   this order, that the costs and distraction of this litigation

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 09/07/23    Page 136 of 232    PageID 9018

37

1    are substantial.  And if all we're doing is replicating a

2    12(b)(6) hearing on a motion for leave, we're actually not

3    doing anything to reduce, as the Court made clear, the

4    burdens, distractions, of litigation.

5        The Fifth Circuit likewise cited *Barton* in its order

6    affirming the confirmation order.  Specifically, it also

7    explained that the provisions, these gatekeeper provisions

8    requiring advance approval were meant to "screen and prevent

9    bad-faith litigation."  Well, that -- if that means only what

10   the Plaintiffs say it does, then it really doesn't do anything

11   at all to screen.  There's no gatekeeping because their

12   version of what that means is always policed under 12(b)(6)

13   standards.

14       Moreover, the essence of bad faith is saying things in a

15   complaint that are not true and are easily proved to be false.

16   You know, the irony of their position is if you lard a

17   complaint up with absolute falsehoods and lies, well, those

18   have to be taken as true, and so, you know, they'll survive

19   the motion to dismiss, and so therefore we can file it.  That

20   would turn the bad faith essence of the gatekeeping provisions

21   here on their head.

22       So we think this is all about *Barton* and its progeny.  But

23   I would also provide Your Honor with maybe a 30-second preview

24   of why we think *Barton* does have clear support for evidentiary

25   hearings.

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-9   Filed 09/07/23   Page 137 of 232   PageID 9019

38

1    We -- I will refer Your Honor to a recent decision of the

2    Fifth Circuit in a case *In re Foster*, 2023 WL 20872.  And that

3    was from January of this year, in which the Fifth Circuit

4    affirmed a determination that a post-effective-date litigation

5    could not be brought against the trustee.  It's got a little

6    bit of a complicated history, but I would -- I'll summarize to

7    say the suit was filed in the state court, removed to federal

8    court, and then there was a bankruptcy hearing, evidentiary

9    hearing, and ultimately the Bankruptcy Court's decision was

10   affirmed.

11   And we know there's an evidentiary hearing because if we

12   look at the District Court's appeal opinion in that case, 2022

13   WL 160240 at *3, it specifically notes an evidentiary hearing

14   because they had put a factual question before the Court.

15   But as a further preview to a brief that you'll be

16   receiving from us, I think our count is up to nine circuits

17   that apply an abuse of discretion standard to reviews of

18   determinations under *Barton*.  And of course, an abuse of

19   discretion standard on appeal makes no sense if one is

20   applying a mere 12(b)(6) standard, which, of course, is *de*

21   *novo*.

22   One brief word on *Louisiana World*, Your Honor, because I

23   believe the analogy they were drawing there is akin to a

24   creditors' committee standing analysis.  We're not at all

25   agreeing that that level of analysis is appropriate here, but

009330

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 04/07/23   Page 138 of 232   PageID 9020

39

1    I would add just a couple of things about that case.

2        First of all, that's a pre-effective-date question of a

3    committee's standing to bring a cause of action.  This, we're

4    talking about repeated findings of abuse of process, giving

5    rise to a gatekeeper action that applies beyond the effective

6    date.

7        But that aside for the moment, even in the creditors'

8    committee context, those creditors also have to show that the

9    underlying action is both colorable and also that the party

10   that didn't bring it was unjustified.  So the Court looks

11   beyond the mere 12(b)(6) standard in that context.

12       And I would just flatly disagree with Mr. McEntire's

13   characterization of that decision as saying that evidence is

14   not required.  If Your Honor looks at Footnote 15 in that

15   decision, which is at Page 248, so we're at 858 F.2d 233 at

16   248, the court explained why "an evidentiary hearing was

17   unnecessary under the circumstances."  And the circumstances

18   the court goes on to note are that the officers and directors

19   "did not object at any time to the committee's application"

20   and further found that the committee had demonstrated the

21   existence of a potential cause of action, and the officers and

22   directors neither refuted any of the committee's claims nor

23   objected to them.  "Under the circumstances, we are at a loss

24   to understand just what could have been gained from an

25   evidentiary hearing on an application which drew no

Case 19-34054-sgj11 Doc 3821-1 Filed 06/07/23 Entered 06/07/23 16:13:46 Desc
Case 3:23-cv-02071-E Document 28-39 Filed 10/07/23 Page 139 of 232 PageID 9021

40

1  objections."

2      So, respectfully, Your Honor, I don't think that case

3  could possibly stand for a blanket rule that evidence is not

4  appropriate in support of this, this -- even that analysis.

5      I think, Your Honor, the most important thing I'd like to

6  ask for is the opportunity, as Mr. Morris mentioned, to write

7  all this down for you instead of reading case snippets for

8  you.  We're in the middle of writing our brief.  And it has

9  changed quite a bit.  We think the brief will be very helpful.

10     I would add, moreover, that there's no harm to be had by

11  having an evidentiary hearing.  If after full briefing Your

12  Honor were to decide, you know what, this is a 12(b)(6)

13  standard -- we don't think you will; we think it's actually a

14  slam dunk to the contrary -- but the Court can, like in many

15  bench trials, decline to rely on evidence and just say, hey,

16  I'm not going to look at that, and here's -- here's where we

17  go.  But at least then the hearing will be -- we'll have it,

18  and we'll have the record.

19     More importantly, we actually think there's enormous value

20  in getting this right, as the Court of Appeals has told us

21  getting it right under *Barton* and applying the correct

22  scrutiny is required.

23     So, unless the Court has questions, I can turn it back to

24  Mr. Morris or to Mr. McIlwain.

25          THE COURT:  All right.  I don't think I have

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-9    Filed 12/07/23    Page 140 of 232    PageID 9022

41

1   questions at the moment of you, but I'll turn to Mr. McIlwain

2   and see if I have any questions for the collective group at

3   that point.  And of course, I'll go back to Mr. McEntire as

4   well.

5        All right.  Mr. McIlwain, go ahead.

6            MR. MCILWAIN:  Thank you, Your Honor.  Brent McIlwain

7   here, again, from Holland & Knight for the Claim Purchasers.

8   Your Honor, I'll be brief and just echo what Mr. Stancil and

9   Mr. Morris said.

10       I guess, from a practical standpoint, though, what I'm

11  most concerned about here is the procedure by which we've

12  gotten to where we've gotten.  It started with a motion for

13  leave to file this complaint on what was supposed to be three

14  days' notice.  The Court denied that, rightly.  That was

15  appealed, and then there was a *mandamus* to the Fifth Circuit,

16  all -- all of which were denied.

17       Here we are on the eve of this status conference,

18  objections are filed, new pleadings are filed.  I think what's

19  being demonstrated is precisely why this Court has a

20  gatekeeper order in place.  Mr. Dondero and his counsel are

21  vexatious litigators, and they're looking for any opportunity

22  to get a leg up on us.  On anybody in their path, frankly.

23  And the Court should give us a reasonable opportunity to brief

24  this, should give us a reasonable opportunity to present our

25  case, and we should know what we're fighting against.  Are we

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 12/07/23   Page 141 of 232   PageID 9023

42

1   fighting against a motion for leave that's supported by

2   affidavit or not?  And if we're not, they need to file a new

3   motion or strike the affidavits on the record.

4        We can't have this ever-evolving pushing against a rope to

5   determine what exactly we're fighting against.  And the Court,

6   the Court and the parties who are the subject, frankly, of

7   what are fantastical make-believe theories from Mr. Dondero

8   are entitled to know what the story is.  And we're entitled to

9   know what the pleading is.  And if the pleading is -- as soon

10  as the pleading is set, then we can respond.

11       So we're here to ask the Court, if we want to set a

12  hearing, let's close the pleadings as it relates to Hunter

13  Mountain.  They shouldn't be even filing any further.  Because

14  if they're going to file something further, we need more time.

15  And I'm okay with the schedule that Mr. Morris has outlined,

16  but, frankly, it's generous to Hunter Mountain.

17       Anyway, Your Honor, I don't have anything substantively to

18  add, but we will include a comprehensive response in our

19  responsive brief whenever that filing, whenever we can

20  determine exactly what we're responding to.

21       Thank you, ma'am.

22            THE COURT:  All right.  Mr. McEntire, you're the

23  Movant, you have the last word.

24            MR. MCENTIRE:  Yes, ma'am.  Thank you.  I'll try to

25  be brief here.

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 12/07/23   Page 142 of 232   PageID 9024

43

1    Mr. Morris says -- I wrote down his words -- if you have

2    the evidence, bring the claim.  The revised --

3         THE COURT:  I'm sorry, I did not -- I didn't hear

4    what you said.  Could you repeat what you just said?

5         MR. MCENTIRE:  Yes, ma'am.  Mr. Morris just told the

6    Court that if they have the evidence, bring the claim.  We

7    have the evidence.  And all you need to do is to look at the

8    four corners of the revised claim that is before you.  And you

9    do not need to look at the Dondero declarations.

10        THE COURT:  Let me --

11        MR. MCENTIRE:  And we withdraw the Dondero --

12        THE COURT:  Let me -- can I stop you right there?  I

13   mean, --

14        MR. MCENTIRE:  Yes.

15        THE COURT:  -- the point was made by I forget which

16   lawyer now that your original motion for leave attached

17   something like 387 pages of not just Dondero affidavits, but

18   other evidentiary support.  So I'd just like you to respond to

19   that.

20        MR. MCENTIRE:  Sure.

21        THE COURT:  Why did you initially out of the gate

22   think the Court needed to consider 387 pages of attachments?

23   And --

24        MR. MCENTIRE:  We never saw this, Your Honor, we

25   never saw this as an evidentiary inquiry.

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-9A    Filed 12/07/23    Page 143 of 232    PageID 9025

44

1          THE COURT:  But --

2          MR. MCENTIRE:  That was simply background for the

3    Court.  The allegations themselves can --

4          THE COURT:  But stop.  Why would you -- call it

5    background, evidence, whatever you want to call it -- why

6    would you submit all of that if you think I just need to look

7    at the four corners and apply a 12(b)(6) standard?

8          MR. MCENTIRE:  I would suggest -- fair enough.  I

9    would suggest that probably 80 to 90 percent if not more of

10   those documents are from the Court's docket.  They are simply

11   docket references in the Court's docket.  Very little is

12   outside the four corners of the proceedings that you've been

13   administering, Your Honor.

14       They're also referenced in the four corners of our

15   pleading.  The allegations are set forth in the four corners

16   of our pleading.  You don't need to go to the docket -- you

17   may, if you wish -- but you don't need to go to the docket to

18   look at those documents, because the allegations speak for

19   themselves.

20       And the revised complaint that is before you or that was

21   with our motion -- and by the way, responding to one of other

22   counsel's statements, I don't have to seek leave to amend a

23   complaint that has not been filed yet.  What we're seeking to

24   do is we're seeking to bring forth to the Court a complaint

25   for your consideration as to whether we state a colorable

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 12/07/23   Page 144 of 232   PageID 9026

45

 1    claim.  And we don't need Mr. Dondero's declarations, and we

 2    don't -- you don't need to go look at all those documents.

 3    You can look at the four corners of our complaint and make

 4    that decision.

 5        And to -- so we -- Mr. Morris's invitation is we have the

 6    evidence, bring the claim.  That's exactly what we're doing.

 7    Because if you review the claim, much of which is financial in

 8    nature -- and by the way, the -- with all due deference to Mr.

 9    Morris, I've heard the name Mr. Dondero probably 50 times

10    during this hearing.  And we don't need Mr. Dondero to support

11    the four corners of this complaint.  And if you look at the

12    complaint itself, there's no reference to Mr. Dondero -- or if

13    there is, it's very few -- in the complaint itself.  And this

14    is -- Mr. Dondero is not bringing this particular motion.

15    This is a motion by Hunter Mountain.  Mr. Dondero is not

16    directing the filing of this motion.  This is a motion filed

17    on behalf of Dondero and -- excuse me, on behalf of Hunter

18    Mountain, and hopefully on behalf of the Reorganized Debtor

19    and the Claimant Trust.

20        And so when we hear Mr. Dondero, it's an attempt to

21    distract the Court.  And what we need to do is just take a

22    step back, not have distractions, look at the complaint, and

23    under a 12(b)(6) standard, which is the appropriate standard

24    at most, I think the Court will find that we have stated far

25    more than a colorable claim.

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 12/07/23    Page 145 of 232    PageID 9027

46

1    I will also point out that Mr. Morris has not identified

2    one single case suggesting or supporting his position.  Not

3    one single case.  And counsel for Mr. Seery has really not

4    addressed the *Louisiana* case that we've identified in an

5    effective way.

6            THE COURT:  He said -- he said --

7            MR. MCENTIRE:  If he wants additional --

8            THE COURT:  He said that was in a pre-confirmation

9    context, and he pointed out the recent *Foster* case.  What is

10   your response to the recent *Foster* case?

11           MR. MCENTIRE:  The issue here is colorability.  And I

12   don't have the recent *Foster* case before me.  The issue is

13   colorability.  There's nothing in the Court's gatekeeping

14   protocols in the plan that changes the standard.  The standard

15   is the same as the Fifth Circuit has articulated, and that is

16   to -- that it's not a fruitless claim, --

17           THE COURT:  But the question is, --

18           MR. MCENTIRE:  -- that there's some evidence.

19           THE COURT:  The question is whether the hearing that

20   is required by the plan -- which said the Bankruptcy Court,

21   after notice and a hearing, will determine whether an action

22   should go forward -- whether the hearing contemplates

23   evidence.  Does the Court need to hear evidence?  And to me,

24   that partly turns on what my legal standard is.

25       In *Foster Mortgage*, --

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-9    Filed 1/07/23    Page 146 of 232    PageID 9028

47

1           MR. MCENTIRE:  Yes.

2           THE COURT:  -- the court heard evidence.  And it was

3    a *Barton* motion, which, as I identified, I think is a pretty

4    darn analogous situation.

5       And I'll just let you know, my law clerk found a case from

6    the Third Circuit, *Barton Creek*, where they considered

7    evidence.  *Vistacare Group*, ==678 F.3d 218== (3rd Cir. 2012).

8       So, again, I am just here to figure out what kind of

9    hearing we set.  And maybe --

10          MR. MCENTIRE:  That --

11          THE COURT:  Maybe it's just -- maybe it's premature.

12   Maybe I can't make that decision today because I have

13   apparently very different views on whether evidence is

14   appropriate and what my legal standard is.  Maybe we need to

15   just hear the briefing --

16          MR. MCENTIRE:  We will take a look at the *Foster*

17   case, Your Honor.  And, as appropriate, I will -- we'll

18   provide counsel our views on that.  He's raised the issue, and

19   we would like to be able to respond.

20      With regard to the schedule, I would suggest to the Court

21   that the schedule as it exists is appropriate and sufficient

22   because there's more than 24 or 25 days to respond to this

23   pleading.  And -- number one.  Number two, regardless of how

24   Mr. Morris liked to characterize the redline or the blackline

25   or whatever-line, the bottom line is the pleading has actually

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-9   Filed 12/07/23   Page 147 of 232   PageID 9029

48

1        been streamlined.  We've actually dropped a claim.  We dropped

2        one of the causes of action.  And what has been included --

3                 THE COURT:  Which one was dropped?

4                 MR. MCENTIRE:  -- is the fraud that --

5                 THE COURT:  Which one was dropped?

6                 MR. MCENTIRE:  Fraud.  We dropped fraud.  We

7        reorganized the pleading with a very large introductory

8        section.  And so what appears to be a lot of redline is a lot

9        of just procedural reorientation of the pleading.

10            And the other thing I would point out, we have asserted a

11       fraudulent concealment discovery rule allegation, and we have

12       enhanced our conflict allegations against Mr. Seery.

13            We have also taken advantage of the financial data that

14       just came out last week and incorporated some of that.

15            So a lot of this has occurred and a lot of our changes to

16       the pleading have occurred or additions have occurred since

17       the filing of the original motion.  And so we don't believe

18       there's -- the substantive nature of our allegations have not

19       changed.  We have added one or two additional declaratory

20       judgment actions, and that's it.

21            And so setting aside attempts to mischaracterize

22       expediently what may or may not be, I simply ask the Court to

23       look at what's before it and to try to kind of pierce through

24       the argument and perhaps a misdirection.  Because, very

25       clearly, the case has actually been lessened and is more

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 07/07/23    Page 148 of 232    PageID 9030

49

1    streamlined than anything.

2        With that, Your Honor, I would simply go back and say

3    this.  I don't believe we need to extend the briefing deadline

4    any further.  Mr. Dondero is not necessary for this Court's

5    inquiry to determine what the appropriate standard is and

6    whether evidence is required.  We believe we are correct.  We

7    will brief the *Foster* case and take a look at it since counsel

8    has raised it.

9        And I would, again, underscore the fact that Mr. Morris

10   came in here today, talked for 30 minutes, and didn't offer

11   the Court one single case citation.

12       Thank you.

13           THE COURT:  All right.  Well, he did start out by

14   saying he didn't think we were going to discuss legal

15   authority today.

16           MR. STANCIL:  Your Honor, I don't want to reopen the

17   wound, but if Your Honor wants cases, I've got -- I think I'm

18   -- I have nine I could cite at the moment for the standard of

19   review under *Barton*.  It is not a 12(b)(6) standard.  I assume

20   Your Honor will ask if she wants those today or just wants to

21   get those in our brief.

22           THE COURT:  I want to --

23           MR. STANCIL:  But I would hate for the record --

24           THE COURT:  I want to get briefs.  And in thinking

25   through what kind of mini-scheduling order we're going to

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 09/07/23    Page 149 of 232    PageID 9031

50

 1    have, I'm going to think out loud a bit.    I will just tell

 2    you, I feel like this is -- deciding what is a colorable

 3    claim, I just strongly am inclined to think it's a mixed

 4    question of fact and law.  Okay?  And I am strongly inclined

 5    to think the Court's best guidance is from the *Barton Doctrine*

 6    cases.

 7        And, again, I remember that *Foster* case from January.

 8    It's been three months since I've read it and I can't remember

 9    if they talked about legal standard or what kind of hearing

10    you have to any great extent.  But I do know the Court in Fort

11    Worth heard evidence on that.

12        And, again, this Third Circuit case, *Vistacare* -- hang on.

13    The court, just in Footnote 12, the Third Circuit points out

14    evidence was presented and considered.

15        So I tend to think those are the most analogous cases, the

16    *Barton Doctrine* cases.  So I am going to allow briefing on (a)

17    is it appropriate for the Court to hear evidence, and (b) any

18    authority you can find regarding what is the appropriate legal

19    standard.  Colorable.  I mean, those are actually closely

20    overlapping issues, right?  I guess they're one and the same,

21    right?  Because plausible, Rule 12(b)(6), you usually stick

22    within the four corners of the documents, although you can

23    take judicial notice of pleadings and the record in the case.

24    But it looks like most of these *Barton Doctrine* cases have

25    allowed evidence, suggesting it's at least a different

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 07/03/23   Page 150 of 232   PageID 9032

51

1  standard than 12(b)(6).

2      So I'm going to allow briefing on that, and we're going to

3  talk about dates.  But I'm just, I'm trying to decide -- and

4  maybe I should get your comments on this, actually -- should

5  we have legal briefing on other issues besides just what does

6  the colorability standard entail.

7      Because here are a couple of things that just kind of make

8  me wonder, do we need an evidentiary hearing or not?  Do we

9  have a legal question here about is all of this -- is this

10  complaint, the claims in the complaint, would these be

11  administrative expense claims that should have been asserted a

12  long time ago?  Does anyone want to talk about that?  I mean,

13  maybe I'm getting way ahead of myself.  But the whole idea of

14  Hunter Mountain is bringing these derivatively on behalf of

15  the Reorganized Debtor.  Well, maybe that negates my theory.

16  I don't know.  But I just think is this something -- maybe I'm

17  all off.  Maybe you all have thought about this a little more.

18          MR. MORRIS:  Your Honor, yeah, if I may.

19          THE COURT:  Okay.

20          MR. MORRIS:  Number one, I hope whatever schedule the

21  Court decides upon, that we stick to the schedule and that we

22  don't have random briefs getting filed.

23      At this point, Your Honor, whether it's May 4th or May

24  11th, I think the objecting parties are going to address the

25  two issues that you've identified, whether or not this should

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-89    Filed 12/07/23    Page 151 of 232    PageID 9033

52

 1    be an evidentiary hearing and the standard of colorability.

 2    I'm also quite confident that other legal issues will be

 3    addressed, including whether or not Hunter Mountain has a

 4    legal right to even assert a derivative claim, whether or not

 5    duties are owed that would support some of these causes of

 6    action.

 7         So there are other legal issues that we plan to address.

 8    But I would respectfully request that, whether it's May 4th or

 9    May 11th, you allow the objecting parties to file their

10    papers, and then whether it's May 11th or May 18th, Hunter

11    Mountain gets one and only one chance to respond in their

12    reply.  That's what the scheduling order is intended to do.

13         And I heard Mr. McEntire refer to yet another so-called

14    supplement, and I don't want to chase a new brief every two

15    days.  That's not the way the process --

16              THE COURT:  Well, --

17              MR. MORRIS:  -- is intended to work.

18              THE COURT:  -- absolutely.  We're going to have --

19              MR. MORRIS:  And -- and --

20              THE COURT:  -- a firm scheduling order.  But what I

21    was thinking out loud about was would I hear or consider,

22    entertain briefing on any subject besides the legal standard

23    and do we have evidence.  Because there are a couple legal

24    issues out there swirling around.  I don't know if my

25    administrative expense argument/concern even makes sense,

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 07/07/23   Page 152 of 232   PageID 9034

53

1    because I'm not sure who's saying who was harmed here.  But

2    maybe it just doesn't make sense.

3         But another thing swirling around is do we have

4    essentially complaints about claims trading?  Claims trading?

5    And I don't know if we want to get into that or not, but

6    claims trading in bankruptcy is a pretty unregulated -- it's

7    just kind of between the claims trader and the transferee.

8    And so as far as do we have a colorable claims here, I'm

9    wondering if there's some legal briefing with regard to the

10   nature of the claims.

11        Thoughts?

12             MR. MORRIS:  Well, --

13             THE COURT:  Do we want to keep this solely legal

14   standard and evidence, or allow briefing of a broader nature?

15   I'm trying to be clear up front because I don't want one party

16   giving me a huge brief going into 14 issues if that's not what

17   --

18             MR. MORRIS:  Yeah.  And I would only say, Your Honor,

19   that this motion is, in certain respects, no different than

20   any other motion.  A party files a motion, people are allowed

21   to object, there's a reply, and there's a hearing.  And we

22   don't want that process to change one bit.

23        We think that there's a legal issue.  If any objecting

24   party believes that there's a legal issue that they feel like

25   bringing to the Court's attention, it'll be contained in the

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-39    Filed 09/07/23    Page 153 of 232    PageID 9035

54

1   opposition brief.  If Hunter Mountain wants to reply to that,

2   they may.  If they don't, they don't.

3       We have a schedule.  You know, we'll just ask you for a

4   one-week adjustment to take into account the latest pleadings

5   that have been filed.  But otherwise, this is a motion,

6   there's an opposition, there's a reply, and there's a hearing.

7   And we really would prefer to just keep it that way.

8       MR. MCENTIRE:  Well, I agree with Mr. Morris, Judge,

9   at least on the issue of the sequencing of the objection and

10  the reply.

11      We still believe that May 4th is an appropriate date and

12  we ought to keep the original schedule as they requested

13  because of the nature of the pleadings that are before the

14  Court, as I mentioned.

15      THE COURT:  All right.  Well, I've been scrolling

16  through the redline.  I see a lot of red.  I know you say some

17  of it's just rearranged, but I see a lot of red.  So I think

18  their request for a little more time is appropriate.

19      So, May 11th for objections and any briefs in support of

20  objections.  May 18th for a reply of Hunter Mountain and any

21  briefing in support of the reply.  And then a hearing May 25th

22  or thereafter.  Speak up, anyone who disagrees with this

23  scheduling.

24      MR. MCENTIRE:  Our statement, I just note it for the

25  record, Your Honor.

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-39    Filed 09/07/23    Page 154 of 232    PageID 9036

55

1          So, with regard to the evidentiary issue, obviously, if

2     the Court determines that it's going to be an evidentiary

3     hearing, which we object to and oppose, I would reserve the

4     opportunity to revisit the issue of withdrawing Mr. Dondero's

5     declarations.

6          I will tell the Court, we're prepared to do so if this is

7     not an evidentiary hearing, and we do not believe it should be

8     an evidentiary hearing.

9               THE COURT:  All right.

10              MR. MCENTIRE:  I believe -- I think my position --

11              THE COURT:  Wait.  I'm hearing argument again.  Right

12     now, I'm just talking about dates.

13              MR. MCENTIRE:  Understood.

14              THE COURT:  And May 25th or as soon thereafter as you

15     can be heard.  Any opposition to that?  I mean, basically, I'm

16     just asking you to speak up, Mr. Morris's suggestion of these

17     new dates:  Anything you want to say about that?

18              MR. MCENTIRE:  I do believe that my corporate

19     representative is going to be unavailable on May 25th, and so

20     we would ask that we keep the original schedule.

21              MR. MORRIS:  Your Honor, I would propose, as an

22     alternative to the 25th, since the 26th is the Friday before

23     Memorial Day weekend, either the 30th, the 31st, or June 1st,

24     with the 31st and the 1st being ideal, so we don't have to

25     travel on the holiday weekend.  I don't know what other folks'

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 12/07/23   Page 155 of 232   PageID 9037

56

1    schedules look like, but --

2              THE COURT:  Okay.

3              MR. MORRIS:  -- that seems to make sense to me.

4              THE COURT:  What about May 31st or June 1st?  And

5    Traci, please let me know if I'm offering something I can't.

6              THE CLERK:  Judge Jernigan, will you be giving a full

7    day for the hearing?  If so, neither one of those dates work.

8    You could do the day after Memorial Day, May 30th.  Or Friday

9    of that week, May 2nd.  I'm sorry, June 2nd.

10             MR. MORRIS:  I'd prefer May 30th.

11             THE COURT:  All right.

12             MR. MCENTIRE:  My corporate representative -- my

13   corporate representative is not available on May 30th.  He's

14   returning on the 31st from a vacation.  And so, under the

15   circumstances, we would request June 2nd.

16             THE COURT:  Anyone have a problem with June 2nd?

17             MR. MORRIS:  Can we go -- can we go with May 24th?

18             MR. MCENTIRE:  My corporate representative is out the

19   week from May 21st to May 31st.

20             THE COURT:  Okay.  Say again.

21             MR. MCENTIRE:  I just received an --

22             MR. MORRIS:  June 2nd.

23             THE COURT:  Wait.  Wait, wait, wait, wait.  May 21st

24   through May 31st?

25             MR. MCENTIRE:  Yes, ma'am.

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39   Filed 09/07/23   Page 156 of 232   PageID 9038

57

1          THE COURT:  Okay.  I'm just --

2          MR. MCENTIRE:  So, under the circumstances, we would

3    request --

4          THE COURT:  I'm just letting you know, I am going to

5    set aside a whole day.  Okay?  I don't know positively is it

6    going to be evidentiary.  What I'll do is, after the reply

7    briefs, shortly after May 18th, I'll notify people you're

8    going to be allowed to put on evidence or not.

9       But for your planning purposes, based on what I've looked

10   at right now, again, the *Barton Doctrine* cases by analogy, it

11   looks like the Court has discretion to hear evidence.  Okay?

12   So if people want to put on evidence, they're entitled to put

13   on evidence.  Okay?  You don't have to.  Nobody has to.  But I

14   think the Court in its discretion is going to hear it.

15      So I may read the briefs and do research, and if I change

16   my mind, I'll let you all know May 19th or 20th.

17      All right.  So, that being the case, it's difficult,

18   because we're trying to find a whole day just in case we need

19   the whole day.  You just said your client representative,

20   which is -- who is your client representative?

21         MR. MCENTIRE:  Mr. Patrick.

22         THE COURT:  He's gone May 21st through 31st?

23         MR. MCENTIRE:  Yes, Your Honor.

24         THE COURT:  All right.  Did I hear June 2nd did not

25   work for somebody else?

58

1          MR. MORRIS:  Correct.  Yeah, Your Honor.  I'll be --

2     I'll be out of the country beginning the evening of the 2nd,

3     returning the following Tuesday, so whatever date that is.  I

4     think the 6th.  So I'd be prepared to go on the 8th or the 9th

5     of June.

6          THE COURT:  Okay.  So, I'm sorry, you're out the 2nd

7     through 9th?  Is that what I heard?

8          MR. MORRIS:  The 2nd -- the 2nd through the 6th, but

9     I wouldn't want to do it on the 7th.

10          THE COURT:  Okay.  Well, --

11          MR. MORRIS:  Or Thursday or Friday, June 8 or 9.

12          THE COURT:  Okay.  Anyone have a problem with June 8

13     or 9?

14          MR. MCENTIRE:  Your Honor, the 8th is vastly

15     superior, but I will confess the 9th is a college friend who

16     will be staying at my house with my wife and kids, and my wife

17     shouldn't be subjected to having to host him, but -- so if the

18     8th is available, I will beg for the Court's indulgence.  But

19     I'll be here on the 9th if that's requested.

20          THE COURT:  Okay.  Everyone good, --

21          MR. MCENTIRE:  I might need a note.

22          THE COURT:  -- June 8th?  Everybody good with that?

23     Okay.  I'm hearing no objection.  Traci, am I available?

24          THE CLERK:  Yes.  You have a Chapter 13 docket that

25     afternoon, but I am sure we can work something out with Mr.

009350

Case 19-34054-sgj11   Doc 3821-1   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-39   Filed 06/07/23   Page 158 of 232   PageID 9040

59

1    Powers.

2             THE COURT:  Okay.  So --

3             MR. MCENTIRE:  Your Honor?  Your Honor, this is

4    Sawnie McEntire.  For the record, I do need to lodge my

5    objection, but I understand the conflicts.  And so, subject to

6    my objection, we agree to that date.

7             THE COURT:  All right.  So we'll start 9:30 in the

8    morning, June 8th.  And so I'm going to look for a scheduling

9    order that uses these revised dates that I think I've heard

10   you all will live with.  May 11th for objections to the motion

11   for leave, and that will include any briefs in support of the

12   objections.  And then May 18th for Hunter Mountain's reply and

13   any briefing in the reply that responds to the objections.

14   And shortly after that my courtroom deputy will let lawyers

15   know, yes, she's going to hear evidence, or no, she's not

16   going to have evidence.  And the hearing will be June 8th at

17   9:30 in the morning.

18        Any other housekeeping matters while we are here?  I mean,

19   these are the only pleadings that are going to be allowed.

20   How about that, among other things, as a housekeeping matter?

21   Just these pleadings, except, obviously, if we have live

22   witnesses and evidence on the 8th, you'll be bound by the

23   Local Rule that says witness and exhibit lists are due three

24   days before.  Anything else that you all can think of?

25             MR. MORRIS:  Your Honor, if I may, I greatly

Case 19-34054-sgj11    Doc 3821-1    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-39    Filed 06/07/23    Page 159 of 232    PageID 9041

60

1    appreciate your patience today.  But I did want to just

2    inquire as to the status of the decisions on the SE

3    Multifamily HCRE matter as well as the motion to dismiss that

4    was argued back in January.  Not because I intentionally or

5    unintentionally seek to pressure the Court, but I do think

6    that those decisions will be helpful one way or the other

7    resolving, you know, or getting some clarity in this case.

8            THE COURT:  All right.  Well, the next of those two

9    items that comes out will be the SE Multihousing matter.  My

10   law clerk that's working on that is right over here to my

11   right.  And we think before the end of the week, but we are

12   juggling lots of things, as you might imagine.  So that one is

13   next, and I'm hesitating to give you a time estimate on the

14   other one, but it'll be next in the queue.  We've had lots of

15   different adversary proceedings in other cases that we've had

16   to --

17           MR. MORRIS:  Yeah.

18           THE COURT:  -- work on.  But I think, again, SE is

19   probably towards the end of this week.

20           MR. MORRIS:  All right.  We appreciate the guidance,

21   Your Honor.

22           THE COURT:  Okay.  She's giving me a thumbs up like

23   I'm not overpromising.  You can't see her from the video.

24       All right.  So, everyone clear?  I want to say in the

25   strongest terms that I don't want an avalanche of pleadings.

Case 19-34054-sgj11 Doc 3821-1 Filed 06/07/23 Entered 06/07/23 16:13:46 Desc
Case 3:23-cv-02071-E Document 28-39 Filed 12/07/23 Page 160 of 232 PageID 9042

61

1   Is everyone a hundred percent clear that we get the objections

2   with supportive briefing May 11th, reply with supportive

3   briefing on the 18th, and that's it?  That's it.  Other than

4   witness and exhibit lists, --

5           MR. MORRIS:  Yes, Your Honor.

6           THE COURT:  -- if we have evidence.  Everybody clear?

7   Any questions?

8           MR. MCENTIRE:  No, ma'am.  Thank you.  Thank you for

9   your time.

10          THE COURT:  Okay.  Thank you.  We are adjourned.

11          THE CLERK:  All rise.

12      (Proceedings concluded at 3:12 p.m.)

13                      --oOo--

14

15

16

17

18

19

20                      CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the
22  above-entitled matter.

23   **/s/ Kathy Rehling**                          **04/25/2023**

24  _____          _____

25  Kathy Rehling, CETD-444                          Date
    Certified Electronic Court Transcriber

009353

62

INDEX

PROCEEDINGS                                                          3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS

Dugaboy Investment Trust and Hunter Mountain Investment      7
Trust's Motion for Leave to File Proceeding (3662)

Status Conference re: Motion for Leave to File Verified      49
Adversary Proceeding filed by Creditor Hunter Mountain
Investment Trust (3699)

END OF PROCEEDINGS                                           61

INDEX                                                       62

# EXHIBIT B

009355

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| In Re: | ) **Case No. 19-34054-sgj-11** |
|  | ) Chapter 11 |
|  | ) |
| HIGHLAND CAPITAL | ) Dallas, Texas |
| MANAGEMENT, L.P., | ) May 26, 2023 |
|  | ) 9:30 a.m. Docket |
| Reorganized Debtor. | ) |
|  | ) - MOTION FOR EXPEDITED HEARING |
|  | ) FILED BY HUNTER MOUNTAIN |
|  | ) TRUST [3789] |
|  | ) - MOTION TO CONTINUE HEARING |
|  | ) FILED BY HUNTER MOUNTAIN |
|  | ) TRUST [3791] |
|  | ) - MOTION FOR EXPEDITED |
|  | ) DISCOVERY FILED BY HUNTER |
|  | ) MOUNTAIN TRUST [3788] |
|  | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

For the Reorganized          John A. Morris
Debtor:                      PACHULSKI STANG ZIEHL & JONES, LLP
                             780 Third Avenue, 34th Floor
                             New York, NY  10017-2024
                             (212) 561-7700

For Hunter Mountain          Sawnie A. McEntire
Investment Trust:            Timothy J. Miller
                             PARSONS MCENTIRE MCCLEARY, PLLC
                             1700 Pacific Avenue, Suite 4400
                             Dallas, TX  75201
                             (214) 237-4303

For Hunter Mountain          Roger L. McCleary
Investment Trust:            PARSONS MCENTIRE MCCLEARY, PLLC
                             One Riverway, Suite 1800
                             Houston, TX  77056
                             (713) 960-7305

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-39B Filed 08/07/23   Page 164 of 232   PageID 9046

2

```
 1   APPEARANCES, cont'd.:

 2   For Muck Holdings, et al.:   Brent Ryan McIlwain
                                  Chris Bailey
 3                                David C. Schulte
                                  HOLLAND & KNIGHT, LLP
 4                                300 Crescent Court, Suite 1100
                                  Dallas, TX  75201
 5                                (214) 964-9481

 6   For James P. Seery, Jr.:     Joshua Seth Levy
                                  Mark Stancil
 7                                WILLKIE FARR & GALLAGHER, LLP
                                  1875 K Street, NW
 8                                Washington, DC  20006
                                  (202) 303-1133
 9
     For James P. Seery, Jr.:     John L. Brennan
10                                WILLKIE FARR & GALLAGHER, LLP
                                  787 Seventh Avenue
11                                New York, NY  10019-6099
                                  (212) 728-8187
12
     Recorded by:                 Michael F. Edmond, Sr.
13                                UNITED STATES BANKRUPTCY COURT
                                  1100 Commerce Street, 12th Floor
14                                Dallas, TX  75242
                                  (214) 753-2062
15
     Transcribed by:              Kathy Rehling
16                                311 Paradise Cove
                                  Shady Shores, TX  76208
17                                (972) 786-3063

18

19

20

21

22

23

24

25          Proceedings recorded by electronic sound recording;
              transcript produced by transcription service.
```

009357

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-89   Filed 12/07/23   Page 165 of 232   PageID 9047

3

1            DALLAS, TEXAS - MAY 26, 2023 - 9:37 A.M.

2            THE COURT:  All right.  We're here for an emergency

3    hearing in Highland, Case No. 19-34054.  We have motions to

4    take expedited discovery, and alternatively, a motion to

5    continue the June 8th hearing, filed by Hunter Mountain Trust.

6    So I will start by getting lawyer appearances.  Who do we have

7    appearing for Hunter Mountain?

8            MR. MCENTIRE:  Good morning, Your Honor.  This is

9    Sawnie McEntire on behalf of Hunter Mountain Investment Trust,

10   along with my partner, Roger McCleary, and an associate in our

11   firm, Tim Miller.

12       And Your Honor, the audio is very low.  I have mine

13   cranked all the way up.  I could barely hear you, with all due

14   deference to the Court.

15           THE COURT:  All right.  Well, I'll try to talk

16   louder.  I don't know if it's a problem everyone's having, or

17   just on your end.

18       All right.  Who do we have appearing for Highland?

19           MR. MORRIS:  Good morning, Your Honor.  It's John

20   Morris from Pachulski Stang Ziehl & Jones for the Reorganized

21   Debtor and the Claimant Trust.  And I do apologize for not

22   having a necktie this morning, Your Honor.  I'm out of town in

23   the middle of nowhere and just don't have one with me.  I do

24   apologize.

25           THE COURT:  Okay.  Understood.  This was an emergency

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 38-3B   Filed 2/30/23   Page 166 of 232   PageID 9048
Exhibit 2307/25

4

1  setting right before a holiday.

2      All right.  Who do we have appearing for Mr. Seery today?

3          MR. LEVY:  This is Josh Levy from Willkie Farr &

4  Gallagher on behalf of Mr. Seery.  I'm joined today by my

5  colleagues, Mark Stancil and John Brennan.

6          THE COURT:  Okay.  Thank you.

7      Who do we have appearing for what I'll call the Claims

8  Purchasers?

9          MR. MCILWAIN:  Good morning, Your Honor.  Brent

10  McIlwain from Holland & Knight here for Farallon Capital,

11  Stonehill Capital, Muck, and Jessup.  David Schulte and Chris

12  Bailey are also on, but I anticipate handling the hearing.

13          THE COURT:  Okay.  Thank you.

14      I presume that's all of our appearances.  Is there anyone

15  I have missed?

16      All right.  Well, Mr. McEntire, this is all about you.

17  This is all about your motion.  Tell me what you'd like to

18  present today.

19          MR. MCENTIRE:  Thank you, Your Honor.  Your Honor,

20  it's difficult for me to see right here.  Do we have a court

21  reporter?

22          THE COURT:  Of course we do.

23          MR. MCENTIRE:  Thank you.  Just the visual on my

24  computer is not very good.  Thank you.

25      Your Honor, we're before the Court today on a motion for

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-39    Filed 12/07/23    Page 167 of 232    PageID 9049
Exhibit B    Page 167 of 255

5

1   expedited discovery.  Our motion, as well as the discovery we

2   have propounded, it's certainly subject to and without waiving

3   our prior objections to the evidentiary format that the Court

4   has indicated it intends to conduct in connection with the

5   June -- upcoming June 8 hearing.

6       As the Court knows, we have objected to the evidentiary

7   format of that hearing.  But in light of the Court's recent

8   ruling on --

9           THE COURT:  Okay.  Can I just stop you there, because

10  --

11          MR. MCENTIRE:  Sure.

12          THE COURT:  -- your motion, it made me think that you

13  think I've ordered evidence.  Okay?  I thought I made clear in

14  my order, you can use your time however you want on June 8th,

15  argument, evidence, but the issue here is that you chose to

16  put on evidence, the Dondero affidavit, and as we discussed at

17  the hearing on what kind of hearing we're going to have, if

18  you put on a declaration or an affidavit, every court in the

19  country is going to say that witness has to be made available

20  for cross-examination.

21      So you decided to start this with putting on evidence, so

22  I was simply saying, okay, well, if you're going to put on

23  evidence, then other people are entitled to cross-examine your

24  witness.  And I went further to say I think this is maybe a

25  mixed question of fact and law, so therefore people are

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-30B   Filed 02/07/23   Page 168 of 232   PageID 9050

6

1    entitled to put on evidence in that regard.  Okay?

2        So I feel like we went through this all at the last

3    hearing on what kind of hearing we're going to have.  So, I

4    mean, you may continue, but I just, I took issue just now with

5    you saying basically I ordered there was going to be evidence,

6    okay?  I would have been perfectly --

7            MR. MCENTIRE:  Okay, Your Honor.

8            THE COURT:  -- fine if you wanted to just put on

9    argument, but I feel like you kind of started the ball rolling

10   by putting in evidence.

11           MR. MCENTIRE:  Well, Your Honor, to respond to your

12   comments at the beginning of this hearing, as I indicated

13   during the course of the status conference, we have withdrawn

14   Mr. Dondero's affidavits and all the supporting evidence in

15   connection with our motion and provided --

16           THE COURT:  Well, I mean, you haven't actually

17   withdrawn it.  You said you might want to withdraw it.

18           MR. MCENTIRE:  Well, we're -- well, actually, Your

19   Honor, my recollection is that we are -- we're not only

20   prepared but we have withdrawn it, subject only to our

21   reservation of rights to use that evidence should the Court

22   allow Mr. Seery, the Highland parties, or any other party to

23   offer evidence.

24       We strenuously objected to the evidentiary format, and our

25   offer and tender in that regard was made in the context of our

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 21-39   Filed 08/07/23   Page 169 of 232   PageID 9051

7

1   position that the Court can make a ruling on the pleadings,

2   which I understand now the Claims Purchasers actually agree

3   with us.

4       So it's Mr. Seery and the Highland parties who have

5   provided substantial briefing to the Court on why they are

6   entitled to an evidentiary hearing.  And we responded with

7   substantial briefing to the Court on why we did not think

8   evidentiary hearing was appropriate under the various legal

9   standards.

10      And then we received the Court's order, which perhaps --

11  certainly allows the Highland parties and certainly allows Mr.

12  Seery to put on evidence.  It doesn't prevent them from

13  putting on evidence.  If they're entitled to put on evidence,

14  then we should be entitled to conduct discovery.  And if

15  they're entitled to put on evidence, then we should be

16  entitled to offer the material that was attached to our

17  original motion.  That is our position.  And that is what

18  prompted our initiation of the discovery requests that are now

19  before the Court.

20      I'll make a further point that we do believe that the

21  Court can conduct this hearing on colorability based upon the

22  four corners of the document and the document references that

23  are in the four corners of that document because that is a --

24  that is an appropriate inquiry.  That is an appropriate

25  judicial inquiry in connection with the type of proceeding

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 21-89B Filed 09/07/23   Page 170 of 232   PageID 9052

8

1   that's currently before the Court on June 8th.

2      Mr. Morris's attempt and Mr. Seery's lawyers' attempt to

3   inject evidence into the proceeding we think is improper.

4   However, if the Court is going to allow them to do so, then

5   we're entitled to conduct discovery to protect our due process

6   rights, which are very substantial.

7      What we have now is a very schizophrenic situation,

8   because the Claims Purchasers are objecting to participate in

9   any discovery.  They're taking the position that they are not

10  going to offer any evidence.  But nevertheless, they're going

11  to seek to benefit, undoubtedly, from any evidence that Mr.

12  Morris develops or that Mr. Seery's counsel develops.  So it's

13  a bit of a whipsaw situation.

14     They opened the Pandora's box here, Judge.  We tried to

15  keep it closed.  We said that in our briefing when we filed

16  our last brief on May 18.  They have opened a Pandora's box.

17  And if they want to put on any evidence at all, then we're

18  entitled to do discovery.

19     That's my response to your initial comments.  I'm prepared

20  to discuss more detailed arguments that have been presented in

21  the responses, if the Court wishes, and I'd like to proceed on

22  -- as well.

23          THE COURT:  Okay.  Let me stop.  Can I --

24          MR. MCENTIRE:  Your Honor, --

25          THE COURT:  Let me stop.  You said you would address

009363

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-33    Filed 11/07/23    Page 171 of 232    PageID 9053

9

1    the responses.  Have responses to your emergency motions that

2    were filed Wednesday night and Thursday morning been filed and

3    I just haven't seen them?

4          MR. MCENTIRE:  Yes.  There are two responses.  They

5    were both filed yesterday.  The Claims Purchasers filed a

6    response, I believe, midafternoon, and then I believe Mr.

7    Morris and Mr. Seery's counsel filed a response yesterday

8    evening.  And I am prepared to respond to those, because I

9    think we have some very serious issues that need to be

10   presented to the Court for the Court to fully assess the

11   situation.

12       Your Honor, --

13          THE COURT:  Just a moment while --

14          MR. MCENTIRE:  -- the joint opposition --

15          THE COURT:  Just a moment.  I'm pulling up the

16   responses.  Okay.

17          MR. MCENTIRE:  Yes, ma'am.

18          THE COURT:  They were filed at 7:25 p.m. last night.

19   Okay.  Or a response.

20       Let me stop you right now.  Tell me what is your first

21   choice of what you want here, okay?  I'm just trying to

22   understand.  As you said, we have a lot going on here.  You

23   filed the motion.  You filed an affidavit of Dondero

24   supporting many of your factual allegations in your motion.

25   What do you want?  If we could go backwards in time, what

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 11/07/23   Page 172 of 232   PageID 9054

10

1  would you want the Court to do here?

2          MR. MCENTIRE:  I think it's proper for the Court to

3  conduct its inquiry based upon the four corners of the Exhibit

4  1-A which is attached to our supplemental motion.  We believe

5  the Court can make its decision on colorability based on the

6  four corners of that document.  We do believe that the Court,

7  if it wishes to do so -- it does not need to do so -- but if

8  it's going to consider anything extraneous to the four corners

9  of that document, it would be limited to the documents that

10  are referred to in that petition -- in the complaint, rather

11  -- Exhibit 1-A to our supplemental motion.

12      We do not believe any additional discovery would take

13  place, and we believe Mr. --

14          THE COURT:  Okay.  Remind me, because there were 300

15  pages plus of material, remind me of what Document 1-A was.

16          MR. MCENTIRE:  Exhibit 1-A is the complaint that is

17  attached to our supplemental motion.

18          THE COURT:  Okay.  Right.  Okay.  So that's what you

19  were referring to.  I thought you were referring to --

20          MR. MCENTIRE:  Yes, ma'am.

21          THE COURT:  -- an Exhibit A perhaps to that exhibit.

22  All right.

23          MR. MCENTIRE:  Exhibit 1 --

24          THE COURT:  So you want me to scrap --

25          MR. MCENTIRE:  Exhibit 1-A.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-93   Filed 12/07/23   Page 173 of 232   PageID 9055

11

1          THE COURT:  I mean, here's the problem.  You've got a

2    motion for leave that gives factual reasons why, in exercising

3    the gatekeeper provision, I should allow that complaint to be

4    filed, and it has an affidavit of Dondero.  I don't know how

5    to put that genie back in the bottle here.  Tell me what you

6    --

7          MR. MCENTIRE:  I think it's very easy.

8          THE COURT:  -- would have me to do, now that that's

9    on the record and I've seen it.

10         MR. MCENTIRE:  The Court can conduct a hearing on the

11   four corners of the pleading, just like the Claims Purchasers

12   also agree.  So you have five parties in this case right now

13   --

14         THE COURT:  Okay.

15         MR. MCENTIRE:  -- who all agree --

16         THE COURT:  But what do I do about that motion that's

17   on file and that affidavit?

18         MR. MCENTIRE:  You could ignore the exhibits that are

19   attached to it.

20         THE COURT:  Except the complaint.

21         MR. MCENTIRE:  Except the complaint.  Exhibit 1-A

22   attached to the supplemental motion.  Yes, Your Honor.

23         THE COURT:  So if you got what you want here, what

24   are you saying, that you would, I don't know, agree to

25   redaction of every sentence in your motion that refers to the

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 12/07/23   Page 174 of 232   PageID 9056

12

1   Dondero affidavit and also striking the Dondero affidavit?  Is

2   that what -- I'm just, I'm trying to give meaning to this.

3           MR. MCENTIRE:  If that would help the Court, we can

4   redact any reference to Mr. Dondero's affidavit.

5           THE COURT:  I'm not saying --

6           MR. MCENTIRE:  Now, we have allegations --

7           THE COURT:  I'm trying to get at how we do what you

8   want the Court to do -- that is, not consider evidence.  And

9   I'm trying to think of procedurally how we put the genie back

10  in the bottle.  So is that your answer, there would be

11  redaction of every sentence in the motion for leave that is

12  supported by the Dondero affidavit and then a striking of the

13  Dondero affidavit?

14          MR. MCENTIRE:  I would withdraw the Dondero affidavit

15  and I would be prepared to redact those portions of our motion

16  that refer to the Dondero affidavit.  Yes, Your Honor.

17          THE COURT:  All right.  And so that would be your

18  desired way to go forward on your motion, and then you just

19  show up on the 8th and each make legal arguments?

20          MR. MCENTIRE:  We would show up on the 8th and make

21  legal arguments, assuming that Mr. Morris and Mr. Seery's

22  counsel do not attempt to put on evidence.  If they attempt to

23  put on evidence, pursuant to the Court's most recent order,

24  then we should be entitled to put on evidence as well, as well

25  as the Dondero affidavit.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-33   Filed 11/07/23   Page 175 of 232   PageID 9057

13

```
 1              THE COURT:  With Mr. Dondero in court subject to

 2   cross-examination?

 3              MR. MCENTIRE:  If that's -- if the Court allows Mr.

 4   Morris to examine Mr. Dondero in court, then he'll be subject

 5   to --

 6              THE COURT:  I'm asking what --

 7              MR. MCENTIRE: -- cross-examination on the affidavit

 8   as well.

 9              THE COURT:  -- you want, okay?  Quit saying if that's

10   what the Court wants.  I wish I wasn't here on Friday morning

11   before a three-day weekend, okay?  Tell me what you want,

12   okay?  Do you --

13              MR. MCENTIRE:  Yes, ma'am.

14              THE COURT:  You've just said --

15              MR. MCENTIRE:  I believe --

16              THE COURT:  -- you want only oral argument.  That's

17   what you want?

18              MR. MCENTIRE:  Hunter Mountain Investment Trust

19   believes that the hearing on June 8th should be conducted on

20   the pleading only and no extraneous evidence offered,

21   including Mr. Dondero's affidavit.  That is what we want.

22              THE COURT:  So you would say, Here is our proposed

23   complaint and here's why we think it presents colorable

24   claims?  And you would make --

25              MR. MCENTIRE:  Yes.
```

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-13    Filed 12/07/23    Page 176 of 232    PageID 9058

14

1          THE COURT:  -- legal arguments of why colorable

2     claims are articulated?

3          MR. MCENTIRE:  Yes, Your Honor.  And the Court may

4     consider the documents that are referred to in the complaint,

5     but Mr. Dondero's affidavit is not referred to in the

6     complaint.

7          THE COURT:  Okay.  And remind me of what documents

8     are referred to in the complaint.

9          MR. MCENTIRE:  All of the documents are of public

10    record, I believe.  Various documents from the Court's docket,

11    disclosure statements, the plan, the Claimant Trust Agreement,

12    the notices of claims trading that occurred in the spring of

13    2021.  I believe they're all traceable back to the Court's

14    docket or otherwise accessible in your records.

15         THE COURT:  And why would I need to look at those?

16         MR. MCENTIRE:  That's a traditional -- if the Court

17    wishes to do so, that's a traditional process of a 12(b)(6)

18    motion, that courts may make an inquiry into documents that

19    are referred to and incorporated into a complaint or a

20    petition.

21         THE COURT:  Well, I know Fifth Circuit authority

22    permits the Court to do that, but I'm just wondering how

23    looking at these items support the argument that your

24    complaint presents colorable claims.

25         MR. MCENTIRE:  Well, I think there -- it does so in a

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 12/07/23   Page 177 of 232   PageID 9059

15

1  variety of ways.  The disclosure statements that are referred

2  to, the projections on distributions that are referred to, are

3  very supportive of the notion that the Claims Purchasers had

4  access to information that no one else had access to.  They

5  invested $163 million or more in claims involving -- where

6  they conducted no due diligence.  And that's an allegation in

7  the complaint.

8      They've invested over $163 million in purchasing these

9  claims, when the disclosures were -- suggested that they would

10  only get 71 percent on Plan -- on Tier 8 and zero percent on

11  Tier 9.  They invested a substantial sum of money in Tier --

12  related to Tier 9 when they were projected to get zero value.

13      I think that all supports the notion that sophisticated

14  buyers who have their own fiduciary duties to their own

15  investors would actually invest $163 million in purchasing

16  claims in the absence of due diligence when the disclosure

17  suggested a very pessimistic return.  Those are the types of

18  inferences that are properly and reasonably drawn, and

19  accepting all of the allegations in my complaint as true and

20  plausible.

21      Now, the Court certainly can determine if it wishes that

22  my clients are not plausible, but we think that that's -- what

23  I've just described is -- creates a robust circumstantial

24  plausibility.

25          THE COURT:  Okay.  Well, I'm going to ask you one

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-8    Filed 11/07/23    Page 178 of 232    PageID 9060

16

1    more question, and then of course I'm going to let the others

2    weigh in.  And you used the term plausible, and we've talked

3    about is plausible the same thing as colorable, and you think

4    it is and others think it's not.  But here is my last question

5    for you.  And I want to phrase this in as helpful a way as

6    possible as I can.  If all I hear is legal argument, and if

7    the standard is plausibility, or if plausibility is the same

8    thing as colorability, to me, the legal question that I have

9    to decide, okay -- again, and I'm viewing the world through

10   the lens you're viewing it, okay, that colorability is

11   plausibility, and really all you need to do is look at the

12   complaint and consider legal argument -- if that is the

13   correct lens the Court is supposed to look through here, I'm

14   telling you I think it will boil down to this question:  When

15   or under what circumstances can claims trading during a

16   Chapter 11 case -- and it's a stretch here to say during a

17   Chapter 11 case, right?  It was post-confirmation, pre-

18   effective date.  But when can claims trading in connection

19   with a Chapter 11 case give rise to a cause of action that

20   either the bankruptcy estate or a shareholder of the debtor

21   have standing to bring?  Is that not the legal question that

22   the Court would have to consider on June 8th if it's a

23   plausibility standard and if it's just a legal argument, not

24   evidence type of hearing?

25        Because I am, I'm just going to tell you right now, I'm

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-13    Filed 12/07/23    Page 179 of 232    PageID 9061

17

1    trying to be helpful in telling you what I think, I really

2    struggle with how in the heck does the bankruptcy estate or a

3    shareholder of the bankruptcy estate have a cause of action

4    relating to claims trading.  Okay?  Claims trading is a robust

5    industry in the world of Chapter 11, and it has been for

6    decades.  People who are as old as me remember when the

7    bankruptcy rules changed in 1991, Rule 3001(e), to make claims

8    trading simply a matter between buyer and seller, where the

9    court doesn't even have to issue any order.

10       So I am trying to understand the theory of the proposed

11   adversary proceeding.  And because I cannot figure out a legal

12   theory, that's why, in my view, I have gone overboard to be

13   generous here and said, I'll consider evidence, maybe somebody

14   is going to say something in evidence that helps me understand

15   the legal theory.  And, in fact, you put in an affidavit.

16       So, again, I'm being what I think is super-generous by

17   saying, okay, you put on evidence, you want to put on

18   evidence, fine, you put on evidence, but other people can put

19   on evidence.  And now you're saying, oh, never mind, I don't

20   want to put on evidence.  Okay.  But tell me -- I guess, not

21   to get ahead of things, but I'm trying to understand what the

22   theory is here if all I'm supposed to do is look at the four

23   corners of the complaint and view it under a 12(b)(6)

24   plausibility standard.  How is there a cause of action here?

25            MR. MCENTIRE:  Okay.  Your Honor, responding

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-33   Filed 11/07/23   Page 180 of 232   PageID 9062

18

1   specifically to your question, this has been thoroughly

2   briefed in our reply brief that we submitted on May 18.  It

3   addresses your question on all corners.

4        This is more than just a claims-trading case.  The estate

5   was actually impacted.  The estate is impacted because of what

6   we are alleging to be a quid pro quo.  Mr. Seery is placing

7   individuals or companies or entities into positions to approve

8   his compensation scheme, which we believe to be excessive.

9   Even the compensation agreement that was recently produced by

10  the Highland parties and Mr. Morris we believe reflects, in

11  essence, an excessive agreement.

12       And the situation here is that the estate has been

13  directly impacted, as well as innocent creditors and

14  stakeholders, because money has been drained away from the

15  estate.  This is not a simple, pure claims-trading issue.

16  It's not a situation between seller and buyer.  This impacts

17  the estate.

18       From all we know, because we've never seen the discovery,

19  the sellers have already released all their claims.  The

20  estate would be the only one in the "Big Boy" agreements that

21  are typical of these claims-trading arrangements.  So the

22  estate is the only truly aggrieved party, as well as Hunter

23  Mountain, who would have standing to bring these claims.  And

24  these claims would not be released under the gatekeeping

25  provisions because they would involve willful conduct.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 12/07/23   Page 181 of 232   PageID 9063

19

1      Our allegation is a conspiracy to breach Mr. Seery's

2    fiduciary duties, to line his pockets with extra money in a

3    quid pro quo exchange for providing people he knows or

4    companies he knows into positions where they can greatly

5    profit from inside information.

6            THE COURT:  Okay.  So, --

7            MR. MCENTIRE:  It's not limited to MGM.

8            THE COURT:  So the whole --

9            MR. MCENTIRE:  Yes?

10           THE COURT:  -- theory of your case is Seery is being

11   paid too much money for his role as Liquidating Trustee or

12   Claims Trustee?  That's what it's all going to boil down to?

13           MR. MCENTIRE:  No, ma'am.  That's just one aspect of

14   our claim.  I was responding to your question of why this

15   isn't just a pure claims-trading case.  We derive our standing

16   to sue from other areas as well.  As aiders and abettors in a

17   breach of these fiduciary duties, --

18           THE COURT:  What are the different --

19           MR. MCENTIRE:  -- the Claims Purchasers are subject

20   --

21           THE COURT:  -- breaches of fiduciary duties?  The

22   claims that were sold were already allowed claims, which,

23   while there was massive litigation involving these claimants,

24   there was mediation during the case and there was a settlement

25   of these claims and there were 9019 motions approved by orders

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-13    Filed 12/07/23    Page 182 of 232    PageID 9064

20

1    of the Court.

2        So, again, I'm trying to understand the theory of your

3    case.  The claims amounts were set.  Whoever held them, the

4    sellers, the purchasers, or someone else out there -- Carl

5    Icahn, pick your Claims Purchaser -- the claims amounts were

6    set.

7        So I'm trying to understand how you think the estate and

8    the shareholder have a cause of action for the estate being

9    harmed, when the claims amounts were going to be the same,

10   okay, because they had already been mediated and settled and

11   approved by final order, and the only thing I'm hearing is,

12   because the Claims Purchasers are purportedly friendly with

13   Mr. Seery, they approved exorbitant compensation for him that

14   maybe some other claims purchaser would have resisted, and

15   therefore the claim, the estate, and the shareholder have been

16   harmed by whatever extra compensation is allowed.  Is that

17   what it all boils down to?

18            MR. MCENTIRE:  I think, again, Your Honor, that's --

19   it's much more than that.

20            THE COURT:  What is the much more?

21            MR. MCENTIRE:  Your first question is --

22            THE COURT:  What is the much more?  And this isn't

23   the hearing, this isn't the June 8th hearing, but I'm trying

24   to understand, should I order people to sit for depositions

25   over a holiday weekend, okay?  That's what this is about.  Or

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-13    Filed 12/07/23    Page 183 of 232    PageID 9065

21

1    should I continue the June 8th hearing because you think you

2    need depositions, okay?  I'm trying to understand the theory

3    of the case before we can figure out, do we go down that

4    trail?

5            MR. MCENTIRE:  I'll try to be succinct, Your Honor,

6    in responding to your last question.

7        Your first question was -- well, actually, there's

8    several.  Your first question was what fiduciary duties were

9    breached?  There is a fiduciary duty not to engage in self-

10   dealing, not to engage in conflicts of interest, and duties of

11   disclosure.  We believe that Mr. Seery engaged with the Claims

12   Purchasers to participate in a *quid pro quo* where he could be

13   assured of significant compensation post-effective-date by

14   placing two companies with whom he is very close and familiar

15   on the Oversight Board, controlling the decisions of the

16   Oversight Board.  We believe that actual compensation

17   agreement that has now been produced reflects excessive

18   compensation.  That hurts the estate.  If it hurts the estate,

19   it hurts the innocent stakeholders, including other innocent

20   creditors and my client as former equity.  That's number one.

21       Number two.  What other evidence do we have within the

22   four corners?  First, they're allegations, but we believe that

23   they're well-pled allegations under a 12(b)(6) standard.

24       If the only publicly-available disclosure that is

25   available in February of 2021 is that Tier 9 will get zero

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 33-93   Filed 12/07/23   Page 184 of 232   PageID 9066

22

1    return, yet the Claims Purchasers spent $45 million or more on

2    Tier 9 claims, and that Tier 8 is only going to get 71 percent

3    return, and they nevertheless spent a total of $163 million,

4    we believe those are clear, colorable, plausible allegations

5    supporting a participation and receiving inside information.

6        Now, it is clear that Mr. Seery was aware of MGM.  He

7    disclosed it.  We know he disclosed it because we have the

8    allegations in the pleading.  Not referring to Mr. Dondero.

9    We also know that the Claims Purchasers rejected any

10   suggestion that they would sell their participation in those

11   claims for even a 40 percent premium.

12       Well, when they're projected to get zero return or 71

13   percent return, it's difficult to understand -- in fact, I

14   don't think it's possible to understand -- why they would be

15   unwilling to sell even at a 40 percent premium.  That is the

16   allegation.

17       This is not a summary judgment proceeding.  This is an

18   initial threshold pleading stage.  And the Court is asking

19   good questions.  Hopefully I'm providing some good answers

20   that can put our claim into context.  This is not just a pure

21   claims-trading issue.

22       Now, the claim sellers, when they -- the Claims

23   Purchasers, when they participate in this agreement, this

24   collusion, as we allege, or this conspiracy, as we clearly

25   allege, they become aiders and abettors under relevant law.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 26-13   Filed 12/07/23   Page 185 of 232   PageID 9067

23

1   And as aiders and abettors, they're subject to disgorgement.

2   That would be a claim that the estate would have for aiding

3   and abetting the breach of fiduciary duties of a CEO and a

4   Trustee.

5           THE COURT:  All right.  Well, I'm going to hear from

6   others, but --

7           MR. MCENTIRE:  Your Honor, I will tell you that I do

8   have -- if the Court does want us to address the discovery

9   issues before the Court, I have a lot to talk about, but I

10  understand you may want to first hear from other counsel on

11  this issue.

12          THE COURT:  Okay.  I do.  But I want you to know I'm

13  struggling mightily with your legal theories, okay?  And I'm

14  letting you know, if all I do is consider legal argument, I

15  don't know how in the world you're going to get there.  You

16  are complaining in essence about claims purchasing.  Okay?

17  You say you're not, but it all is at the heart of your

18  theories, that these claims which were sold, which were

19  mediated -- which were litigated heavily, were mediated, were

20  the subject of settlement agreements and 9019 motions, and

21  then the original claims holders, like many people in every

22  bankruptcy -- not every; in lots of bankruptcies around the

23  country -- choose to monetize their claims.  And it happens

24  all the time.  It happens all the time.

25          And in 1991, the rules-making committee decided, you know

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-13    Filed 12/07/23    Page 186 of 232    PageID 9068

24

1    what, the bankruptcy judges don't even need to be in the

2    middle of this.  You just file a notice in the docket, and if

3    the original seller, holder of the claim, wants to file an

4    objection and say, I didn't sell my claim, they can file an

5    objection and the court will hold a hearing.  But absent that

6    dispute between seller and purchaser, the bankruptcy judge,

7    frankly, shouldn't care.

8        Now, we've had some extreme situations in certain cases.

9    The old *Japonica* case from I think the 1990s where someone

10    said the claims purchaser, their votes on the plan shouldn't

11    count because they purchased their claims and were acting in

12    bad faith.  I mean, that is the only thing I can think of here

13    where you say a person who purchases a claim during the case,

14    then acts in bad faith, don't allow their claim for voting

15    purposes.  Or we've had a few weird cases out there where the

16    claim is only allowed at the purchase amount for voting and

17    distribution purposes.

18        But I have never, in 34 years, seen anything like this.

19    And claims trading is a robust industry.  People have made

20    their livelihoods -- I mentioned Carl Icahn.  I'm getting very

21    philosophical.  But this happens all the time.  And you have

22    set forth a proposed lawsuit that is arguing there was a

23    breach of fiduciary duty by Mr. Seery by encouraging people

24    friendly to him to purchase claims that had already been

25    allowed.  And, by the way, it happened post-confirmation, pre-

009379

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 12/07/23   Page 187 of 232   PageID 9069

25

1   effective date.  And there was a conspiracy here that the

2   Claims Purchasers participated in.

3        If all we have is legal argument on this, I think you're

4   going to lose.  Okay?  So, again, in my view, I am keeping an

5   open mind and letting you put on evidence if there's some sort

6   of evidence that you think is going to get me over the legal

7   hump here, okay?  So that's why we're here.  Okay?

8               MR. MCENTIRE:  Okay.

9               THE COURT:  Okay.  So, Mr. Morris, I'll let you go

10  next.

11              MR. MORRIS:  Thank you, Your Honor.  I'd like to just

12  defer, if I may, to Mr. Stancil first, Mr. Seery's counsel,

13  and then I'll follow him.

14              THE COURT:  Okay.  Mr. Stancil?

15              MR. STANCIL:  Good morning, Your Honor.  This is Mark

16  Stancil from -- thank you -- from Willkie Farr for Mr. Seery.

17       I think I just want to make three brief points, and Mr.

18  Morris may wish to add before -- and I do want to invite my

19  colleague, Mr. Levy, to address discovery issues if we turn to

20  the scope of discovery.

21       First and foremost, and I think consistent with what I

22  heard Your Honor say, I did not hear Mr. McEntire identify a

23  single injury, hypothetical or otherwise, to the estate that

24  does not derive exclusively from purportedly excessive

25  compensation to Mr. Seery.  So, every aiding and abetting or

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-13    Filed 12/07/23    Page 188 of 232    PageID 9070

26

1    breach theory that he articulated, the only way any of those

2    could conceivably have harmed the estate under their theory is

3    that Mr. Seery was somehow able to obtain outside

4    compensation.  And that is what this case boils down to.  So

5    none of the other -- whether -- how many causes of action he

6    splits it into makes no difference.

7        I would add, moreover, that we completely dispute his

8    characterization of Mr. Seery's compensation as excessive, and

9    as I'd like to explain in just a moment, we believe we're

10   entitled to show that.

11       But I would be remiss not to add that they filed this

12   complaint alleging that Mr. Seery's compensation was excessive

13   without knowing what Mr. Seery's compensation even was.  So

14   were he to rely truly on the four corners of his complaint, he

15   has nothing, literally nothing to base this theory of

16   excessive compensation on, besides absolute supposition.

17       Second, and I realize, Your Honor, this was supposed to be

18   the topic for June 8th, as to what the proper standard is, and

19   we've -- both sides have briefed that.  Mr. McEntire has

20   veered pretty heavily into that argument, so I just wanted to

21   respond very briefly to a couple of his points.

22       It would make a mockery of the gatekeeping order were a

23   party bound by it or subject to it entitled to simply make up

24   assertions and say, well, I'll rely on these assertions, and

25   the more false they are, the better, because that'll get me

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 23-33    Filed 12/07/23    Page 189 of 232    PageID 9071

27

1    past the gatekeeping and I can then file it.

2        So, for that reason, we believe it is clear under *Barton*

3    and vexatious litigant doctrines, upon which this Court's

4    gatekeeping order was expressly based when it was ordered,

5    that we believe that even if they choose to rely solely on the

6    four corners of their complaint, we are entitled to submit, if

7    we so choose, evidence that directly rebuts and renders any

8    allegation facially implausible.  And we think that that's

9    exactly what Your Honor will see here.  The documents -- and

10   perhaps Mr. Morris would care to address these in more detail;

11   I'll defer to him -- but the documents and evidence we would

12   present and will present at the hearing, most of which is

13   already just attached to our motion, will blow this out of the

14   water.  It's an absurd allegation.  And the idea that we have

15   to allow this to be filed because they choose to make what

16   are, candidly, bald-faced lies in a complaint and just say,

17   well, we're now going to ignore our attempt to support it with

18   any evidence, but you can't contradict any of our assertions

19   in our complaint, we think that would be completely --

20   completely improper.

21       And we think, to the extent the complaint on its four

22   corners would rely on the say-so of a party in interest such

23   as Mr. Dondero, we would be entitled to cross-examine him.

24       You know, there are complaints that have objective,

25   verifiable, or at least testable evidence that is independent

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-13    Filed 12/07/23    Page 190 of 232    PageID 9072

28

1    of someone's personal recollection, that he must have had some

2    phone call or claims, as is the case here, that essentially

3    third parties confessed in an unrelated phone call to some

4    criminal scheme to him.

5        The last point I'll make before I turn it over to Mr.

6    Morris is we think it's very important, whatever the Court's

7    decision today with respect to discovery, that we keep the

8    June 8 date.  This is hanging over the estate.  As all of us

9    know, the longer something runs, the more expensive it is, no

10    matter what.  We believe every lick of discovery that's

11    appropriate, if that's what the Court orders, can be done.

12    Everybody can be deposed.  It'll all get done by June 8th.

13    And those of us who are in the bankruptcy trenches know that

14    people have moved far greater mountains than these in shorter

15    periods of time.

16        So, with that, we think it's really important to hold that

17    hearing date and get past this.

18            THE COURT:  Okay.  Thank you.

19        Let me ask you what you think of the idea I put out there

20    of, assuming we can kind of put the genie back in the bottle

21    here, if Mr. McEntire withdrew the Dondero affidavit and we

22    had redaction of every sentence in the motion for leave that

23    mentioned the Dondero affidavit, is your client opposed to

24    that and then just going forward with legal argument on June

25    8th?  I'm not clear on that.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-33   Filed 07/07/23   Page 191 of 232   PageID 9073

29

1    MR. STANCIL:  Yes, Your Honor.  Yes, Your Honor.  On

2    behalf of Mr. Seery, he is opposed to that for two reasons.

3        Your Honor will recall that the complaint basically

4    alleges that Mr. Seery took what they call nonpublic

5    information and gave it to somebody, in violation of his

6    obligations.  That is just an absolute fabrication that we're

7    entitled, on a gatekeeping standard, to rebut.  If they choose

8    to limit themselves to the four corners, that's fine.  But

9    it's a contested matter.  It's not an adversary proceeding

10   yet.  They're trying to get there.  It's a contested matter,

11   and we're entitled to put on evidence to show that they cannot

12   meet the colorability gatekeeping standard as expressed in

13   this Court's order.

14       So if they choose to limit themselves to their say-so even

15   in a complaint, I do believe, Your Honor, that we would be

16   entitled to show contrary evidence.  And whether it persuades

17   Your Honor that it's not colorable after we've shown it to

18   you, that's up to Your Honor.

19       For example, if the complaint were to allege that the sun

20   sets in the east and rises in the west, well, we should be

21   able to put on a photograph that says no, here it is in the

22   west, here it is in the east.  And it would be perverse to say

23   that they can file a complaint that's subject to a gatekeeping

24   order just based on their say-so.  I mean, ironically, the

25   more absurd and disprovable the allegation, the easier it is

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 07/07/23   Page 192 of 232   PageID 9074

30

1    to get past, in theory, get past some sort of gatekeeping

2    order, and it should be just the opposite.  We believe we're

3    entitled to that under the Rules, Your Honor.

4            THE COURT:  All right.  So you want to put on Seery,

5    Mr. Seery, at the June 8th hearing?

6            MR. MCENTIRE:  Let me just check, Your Honor, one

7    phone.  Yes.

8            THE COURT:  Okay.  All right.

9        Well, I guess I'll go to -- well, Mr. Morris, did you want

10    to speak next?

11            MR. MORRIS:  I do, Your Honor.

12            THE COURT:  Okay.  Go ahead.

13            MR. MORRIS:  I do.  And I'll join in Mr. Stancil's

14    presentation, with one modification.  I think he may have

15    misspoke in suggesting that Hunter Mountain alleged that Mr.

16    Seery's compensation was, quote, excessive.  They did not make

17    that allegation.  They're making that allegation now because

18    they've actually seen Mr. Seery's compensation package.  They

19    had no knowledge of Mr. Seery's compensation package until we

20    voluntarily disclosed it as one of our exhibits in opposition

21    to the motion.

22        The allegation in the complaint is not that Mr. Seery's

23    compensation is excessive, it's that it was rubberstamped by

24    his age-old friends at Farallon and Stonehill in exchange for

25    the delivery of this so-called material nonpublic information.

Case 19-34054-sgj11 Doc 3821-2 Filed 06/07/23 Entered 06/07/23 16:13:46 Desc
Case 3:23-cv-02071-E Document 26-33 Filed 12/07/23 Page 193 of 232 PageID 9075

31

1      So I otherwise agree with Mr. Stancil.  But let's -- it's

2    very important for the Court to hold Hunter Mountain to the

3    allegations in their complaint, because this is what we have

4    seen for three years, the shifting tides of allegations.  It's

5    the same game of Whack-a-Mole that we did for two years in

6    connection with the notes litigation.

7      I am very sensitive to these things, Your Honor.  The

8    allegation in the complaint is *quid pro quo*.  It's not, oh,

9    I've now seen Mr. Seery's compensation package and it's

10   excessive.  For somebody who is asking the Court and swore to

11   the Court that $70 million of notes would be forgiven because

12   Jim Seery as the Highland representative sold MGM assets, for

13   him to suggest that this is excessive is unbelievable.

14     Let me take a step back, Your Honor.  The Court can

15   certainly take judicial notice of the fact that it is the

16   sixth body to consider these insider trading allegations.  Mr.

17   Dondero filed a 202 seeking discovery based on it.  And yet

18   how can he have a colorable claim today when he couldn't state

19   a colorable basis simply to get discovery?  Boom.  They shut

20   the door on him in Texas state court.

21     Doug Draper wrote an enormous letter to the United States

22   Trustee's Office, put forth an enormous amount of paper, made

23   the allegations of insider trading.  They can't state a

24   colorable claim today because they couldn't state a colorable

25   basis to get the United States Trustee to commence an

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-33   Filed 09/07/23   Page 194 of 232   PageID 9076

32

1   investigation.

2       Mr. Rukavina did the same thing.  No investigation.

3       Hunter Mountain.  They filed a 202 petition.  They

4   couldn't state a colorable basis to get discovery.

5       And then my favorite is the Texas State Securities Board.

6   I've now learned that indeed they did commence an

7   investigation on the basis of Mr. Dondero's complaint.  It

8   wasn't just a review.  It was actually a heightened inquiry.

9   And after considering everything, the Texas State Securities

10  Board said, we are taking no action.

11      You are the sixth body to consider.  I think, when

12  deciding whether or not there is a colorable claim, we're

13  done, frankly.  0-for-6.

14      Next, I think the Court can certainly take judicial notice

15  of newspaper articles.  And the fact that Mr. Dondero had

16  absolutely no duty whatsoever to send that email on December

17  17th.  Look at the context in which it was sent.  It's laid

18  out very clearly in our opposition.  And four days later, the

19  *Wall Street Journal* -- not, you know, an obscure publication

20  -- publishes an article that says MGM has retained investment

21  bankers.  They identify the investment bankers.  They say

22  there is a formal process going on to sell the company.  They

23  quote the chairman of the board that says we're actively

24  selling the company.  We have four interested parties, and two

25  of them are Apple and Amazon, the very two people that four

1    days earlier Jim Dondero, for no reason at all other than to

2    gum up the wheels, tells Jim Seery about.  The Court can

3    certainly take judicial notice of these things.

4        And then, finally, I don't know how Hunter Mountain can

5    tell the Court that they should accept the allegations in the

6    complaint as true when we got four months of negotiations over

7    Mr. Seery's compensation.  The allegation in the complaint is

8    that it was rubberstamped.  We will put in documentary

9    evidence -- you don't have to accept that if there's no

10    credibility determination on this point, but this is really --

11    this is yet another reason why there's no -- there can never

12    be, as a matter of fact, a colorable claim here.  I appreciate

13    the legal points that Your Honor made earlier, but as a matter

14    of fact, there is -- it is inconceivable that there could be a

15    colorable claim, because the claim is *quid pro quo*.

16    Rubberstamped.  That's their word.  The Court already has in

17    the record evidence showing that that is a lie.  They had no

18    basis.  They have no knowledge.  They had no inquiry as to how

19    his compensation, but they said it was rubberstamped as part

20    of a *quid pro quo*.  Just look at the exhibits that Your Honor

21    has already.

22        The Court is supposed to say, "I accept the allegations as

23    true," when it has documentary evidence that shows the

24    allegations are false?  In what world would that be just?

25        I don't want to get directly involved in the discovery

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 07/07/23   Page 196 of 232   PageID 9078

34

1  disputes.  I'll leave that to Mr. Seery's counsel.  But

2  whether it's on a legal basis or a factual basis, the fact of

3  the matter is that they sought discovery not once but twice.

4  They got nothing.  And yet here they are, pressing the same

5  allegations.

6      I only ask the Court to hold them to their allegations.

7  Do not let them use what they get in discovery to say, Aha, we

8  have a new claim.  That's not the way this process works.  The

9  question is whether they have stated a colorable claim.  And

10  we have already proven, frankly, as a matter of fact and as a

11  matter of law, that there is not only no basis to these

12  claims, these claims are not made in good faith.

13      Thank you, Your Honor.

14          THE COURT:  All right.  You said you'd defer to Mr.

15  Seery's counsel on the discovery questions.  I just want to --

16  I'll ask you the same question.

17          MR. MORRIS:  Yeah.

18          THE COURT:  If you had your way, what would the

19  hearing on June 8th look like?  And I guess you're on the same

20  page as Mr. Stancil, that Mr. Seery should be allowed to

21  testify?

22          MR. MORRIS:  I believe that's right, Your Honor.

23  Only Mr. Seery can say what Mr. Seery did, instead of drawing

24  just absurd inferences based on absolutely nothing.  And I

25  think, I think the record will be clear.  I think he should

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-33    Filed 12/07/23    Page 197 of 232    PageID 9079

35

1  authenticate, for example, the documents relating to the

2  negotiation of his compensation package.  I think he should be

3  able to tell the Court that he never disclosed anything about

4  MGM or this other -- there's no *quid pro quo*.  He barely knew

5  these people, if he knew them at all.  This is just, you know,

6  this is just more of the same, Your Honor.  It's more of what

7  we've been doing for three years.

8      And I'll just repeat, you are the sixth body to pass on

9  these so-called insider trading allegations.  And you're

10 actually being asked to do substantially more than the five

11 prior bodies declined to do.

12            THE COURT:  Okay.  Two --

13            MR. MORRIS:  Right.  They declined to get discovery.

14 They declined -- yeah.

15            THE COURT:  Two Texas state court judges in a Rule

16 202, --

17            MR. MORRIS:  Right.

18            THE COURT:  -- we want pre-lawsuit discovery; the

19 Texas Securities Board; and the U.S. Trustee?  Now, who's the

20 other one?

21            MR. MORRIS:  The U.S. Trustee twice.

22            THE COURT:  Oh, twice?

23            MR. MORRIS:  The U.S. Trustee twice, because there

24 were two different letters, --

25            THE COURT:  Okay.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 07/07/23   Page 198 of 232   PageID 9080
Exhibit 13   Page 307 of 255

36

1          MR. MORRIS:  -- each of which addressed the so-called

2     insider trading allegations.  And that's how I get to five.

3          THE COURT:  Okay.

4          MR. MORRIS:  And I just think that that just is

5     really illustrative of, you know, the lack of credibility, the

6     lack of bona fides, the lack of truthfulness in the

7     allegations that are being pressed here.

8          THE COURT:  All right.  Mr. McIlwain, anything you

9     want to add to this discussion?

10          MR. MCILWAIN:  Yes, Your Honor.  And I'll be brief.

11     And if I may, because I suspect you're going to ask me the

12     same question, I might start with my answer regarding the

13     hearing.

14          From our perspective, from the Claims Purchasers

15     respective, and I think we're uniquely situated, we're

16     different in most regards, if not all regards, than Mr. Seery

17     in that we are just Claims Purchasers.  Now, my clients are on

18     the Oversight Committee, and I think we're protected by the

19     gatekeeper as a result of that.

20          But based on the allegations set forth in the four corners

21     of the complaint, and our response was narrowly tailored,

22     directed to issues that did not have anything to do with the

23     facts, they were legal bases for denial of the motion for

24     leave.  And in that regard, Your Honor, I would be fine and my

25     clients would be fine if this hearing were conducted on a

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-33   Filed 08/07/23   Page 199 of 232   PageID 9081

37

1   purely -- purely based on the pleadings, on legal arguments

2   and with no evidence.

3        That being said, I understand Mr. Stancil's position and

4   Mr. Seery's position that there is some need, from their

5   perspective, to clean up the record, when, you know, frankly,

6   the bona fides and reputation is being attacked.  I understand

7   that.  But from my perspective and from my client's

8   perspective, I think we're prepared to move forward on the 8th

9   purely on a legal basis.

10       In all of our response -- in each one of our responses,

11  the items that we responded to, Your Honor, we did so very

12  carefully not to raise evidentiary issues, affirmative

13  evidentiary issues from our perspective.  They either referred

14  to purely legal questions, and in which case we think we win,

15  or refer to, you know, documents that were on file with the

16  Court.

17       Moreover, Your Honor, we do not -- you know, I understand

18  the Court may not have had an opportunity to review our

19  response that we filed late yesterday, but the Claims

20  Purchasers have no intention of presenting any evidence at the

21  June 8th hearing.  We don't intend to put on any witnesses.

22  We don't intend to submit any exhibits.

23       And frankly, Your Honor, and I know we've covered a lot of

24  ground today, but as it relates to the motion that's on file

25  today, Hunter Mountain Investment Trust's request to take

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 09/07/23   Page 200 of 232   PageID 9082

38

1    expedited discovery, which is being heard, as the Court noted,

2    the Friday before Memorial Day, right, we would submit that

3    that's completely inappropriate for our clients to be

4    subjected to any discovery at this point.  As Mr. Morris

5    pointed out, two state courts have already denied these

6    requests.

7         And if the Court were to allow Hunter Mountain to take

8    discovery in the face of us stating on the record and in

9    pleadings that we have no intention of putting on any

10   witnesses or submitting any evidence at the hearing, I mean,

11   it essentially turns the gatekeeper order on its head, or

12   provision on its head.  Because what that would mean is that

13   they can file a complaint, or a motion for leave to file a

14   complaint, they can make any allegations they want, and if you

15   respond to that motion to leave, you're now subjected to

16   discovery, and so they can go out and search and try to find

17   some other claim.

18        Ordinarily, Your Honor, it wouldn't -- discovery, from my

19   perspective, doing this for 25 years, I wouldn't have an issue

20   with discovery.  This is different.  This is different because

21   Hunter Mountain and Mr. Dondero have taken every opportunity

22   to harass various parties in the case.  And, you know, someone

23   would ask, why would -- why do claims sellers sell their

24   claims?  My Lord, why wouldn't you want to get out of this

25   case?  I mean, I can't imagine being subjected to this

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-13    Filed 12/07/23    Page 201 of 232    PageID 9083

39

1    litigation, as Mr. Seery has been subjected, year after year

2    after year.  And successfully.  Mr. Seery has been successful

3    in every regard.

4        So, Your Honor, we -- in summary, I think the Court hit it

5    right on the head.  This is -- these are -- at the heart, this

6    complaint is about claims trading.  We complied with Rule

7    3001.  The Court has no role in respect to the claims trading.

8    The fantastical allegations that they've made as it relates to

9    these claims trade don't -- have no impact, frankly, on the

10   fact that the claims were allowed, they were litigated, they

11   were mediated, and they're only entitled -- the Claims

12   Purchasers are only entitled to get whatever the claims are,

13   right?  These claims don't get enlarged.  They're not equity.

14   They're claims.  They're claims that were converted, by the

15   way, into trust interests.  So, you know, as we point out in

16   our response, we think many of the points and relief that

17   Hunter Mountain is requesting just can't even be granted by

18   the Court.  In fact, we can address those on June 8th.

19       At the end of the day, we're here on a discovery motion

20   that has been filed on an emergency basis to seek discovery.

21   And from my clients they're seeking four depositions.  Four --

22   so 16 hours of depositions.  Over 30 topics, with 19 different

23   document requests.  Your Honor, if we're not going to present

24   any evidence and we're not going to put any witnesses on, I

25   would submit that that's totally inappropriate and it flies in

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-33    Filed 04/07/25    Page 202 of 232    PageID 9084

40

1    the face of the whole point of the gatekeeper.  And that's why

2    we would ask that, at least as it relates to the Claims

3    Purchasers, that Hunter Mountain's motion for expedited

4    discovery be denied.

5         THE COURT:  All right.  Mr. McEntire, I'm going to

6    give you the last word.  And let me tell you what I'm inclined

7    to do based on everything I've heard.

8         If someone wants to put on Mr. Seery -- Highland or Mr.

9    Seery's counsel -- I'm going to hear evidence from Mr. Seery

10   on June 8th.  And if you want to withdraw the Dondero

11   affidavit and the Court will redact or have you file a

12   redacted version of your motion for leave that strikes every

13   sentence that refers to the Dondero affidavit, no other

14   changes, just that, you can do that.  Or if you don't do that,

15   then Mr. Dondero, you can put him on if you want, or he has to

16   be available for cross-examination.  Okay?

17        But that would be it.  No Claims Purchaser witnesses.  And

18   I'm not continuing the hearing beyond June 8th.  You can get

19   depos done, if you both want to do depos or one of you wants

20   to do depos, between now and June 8th.  Not on the holidays,

21   by the way.  I'm not going to order anyone to appear sooner

22   than, say, Wednesday of next week.

23        But that's what I'm inclined to do.  And one thing that's

24   rolling around in my brain is I do remember the 202 suits in

25   Texas state court as, starting two years ago, opportunities to

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 23-13   Filed 12/07/23   Page 203 of 232   PageID 9085

41

1   take discovery.  So I don't know why at this late stage I

2   would allow discovery of the Claims Purchasers, especially

3   when this really looks like it's more about Mr. Seery and Mr.

4   Dondero than them.  And again, the whole policy that the Court

5   really isn't supposed to get in the middle of claims trading.

6        So that is what I'm inclined to do.  Tell me what

7   different view of the world you want me to consider.

8           MR. MCENTIRE:  Well, with all due respect, Your

9   Honor, my view of the world is substantially different.  We

10  would, of course, object if that's your ultimate ruling, for

11  the following reasons.

12       The 202 petitions having nothing to do with colorability.

13  The court, to address the Hunter Mountain 202 pleading or

14  petition, did not specify a reason.  But I would advise the

15  Court, and we -- actually, you could take notice of the record

16  of the proceedings.  They earnestly argued that you, Your

17  Honor, were in the best position to address these issues.  So

18  I think it's highly likely that the judge who addressed the

19  202 petition that Hunter Mountain had filed did so in

20  deference to you.  Not to suggest --

21          THE COURT:  Did it --

22          MR. MCENTIRE:  -- to you how to rule.

23          THE COURT:  Did it happen twice?  Same judge twice,

24  or two different judges?

25          MR. MCENTIRE:  Oh, I'm sorry.  There were two

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-13    Filed 12/07/23    Page 204 of 232    PageID 9086

42

 1    different judges, but Hunter Mountain was not involved in the

 2    first inquiry at all.  And they argued standing in that issue.

 3    And that's a totally different proceeding, totally different

 4    issues, totally different evidence got put on before the

 5    Court.  And totally -- and Farallon's counsel, who's actually

 6    on this website today, earnestly argued that you were in the

 7    best position to address these discovery issues.  That's in

 8    his briefing and his oral argument.  That's number one.

 9         Number two, the Texas State --

10              THE COURT:  Did you ever bring --

11              MR. MCENTIRE:   -- Securities Board --

12              THE COURT:   -- a 2004 exam asking me to?  Because

13    the reason I remember this is because the Claims Purchasers

14    actually removed from state court to this Court the first 202

15    state court action, if that's what you call it, an action,

16    pre-action discovery.  And I remanded it --

17              MR. MCENTIRE:  Pre-suit discovery.  Yes, Your Honor.

18              THE COURT:   I remanded it back, with some angst,

19    because I'm like, okay, well, there's a tool, 2004, and I

20    don't know why we're doing this in state court, but if that's

21    what whoever it was at the time, Hunter Mountain Trust or

22    whoever it was, if that's what they want to do, they can do

23    it.  Okay?

24              MR. MCENTIRE:  Sure.

25              THE COURT:  So when they were unsuccessful --

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 24/07/255   Page 205 of 232   PageID 9087

43

1              MR. MCENTIRE:  So, Hunter Mountain --

2              THE COURT:    -- I don't know why they didn't -- well,

3      anyway, I'm just baffled.

4              MR. MCENTIRE:  Hunter Mountain Investment -- yes, if

5      I could finish my comments, Your Honor.  Hunter Mountain

6      Investment Trust was not involved in that.  Hunter Mountain

7      Investment Trust filed its 202 petition because of timing

8      issues because we were concerned we were going to meet with

9      the same obstructive tactics that we're seeing today in this

10     court, --

11             THE COURT:  Who was involved?

12             MR. MCENTIRE:   -- trying to oppose this.

13             THE COURT:  If it wasn't Hunter Mountain, who was it?

14             MR. MCENTIRE:  It was Jim Dondero.

15             THE COURT:  Okay.

16             MR. MCENTIRE:  Hunter Mountain was only involved in

17     one proceeding, and it was in February and March of this year.

18     And immediately after that resolved, we proceeded to move in

19     this court.  We were concerned about limitations issues with

20     regard to one of the individual claims and one of the causes

21     of action, so we proceeded to file our motion for leave of the

22     gatekeeping order.

23         Our history is very simple.  It's very clear.  It has not

24     been harassing.  And it's very clearly identified as we've

25     only been in two courts on this issue, the 202 petition and

009398

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 06/07/23   Page 206 of 232   PageID 9088

44

1    your court, and that's it.  To suggest that we're harassing is

2    just a distortion.

3         There are some other distortions.  Mr. Morris is

4    absolutely wrong.  We have specific allegations as to

5    excessive compensation in the complaint.  And it's interesting

6    how counsel can make a characterization but omit facts or

7    allegations that are inconsistent with the truth.

8         And so I find it amazing that Paragraph 71 stands out like

9    a sore thumb, where we specifically allege excessive

10   compensation that Mr. Seery garnered from his deal.  That's

11   the second thing.

12        We have a situation where the Claims Purchasers have never

13   clearly denied access to material nonpublic information.  They

14   have never clearly denied that they did no due diligence, yet

15   they obstructed discovery in the 202 petition and now they

16   obstruct discovery here.

17        A Pandora's box has been opened.  To allow Mr. Seery to

18   take the stand and to explain that he didn't do this or didn't

19   do that and allow the other part of the conspirator group, Mr.

20   McIlwain's clients, escape and avoid being tested and

21   challenged in cross-examination is the epitome of a

22   deprivation of due process.  We will be deprived of our due

23   process rights if you singularly let Mr. Seery take the stand

24   and prevent our right to take discovery from the Claims

25   Purchasers.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 04/07/25   Page 207 of 232   PageID 9089

45

1          They do not want to be challenged.  They do not want to

2     open the door as to what happened here.  And they've been

3     trying to prevent that from day one.

4          We don't think that evidence of any type is appropriate.

5     But if you're going to let any evidence in, you cannot let --

6     you can't let part of the toothpaste out without letting it

7     all out.  And so we're entitled to a full-blown discovery and

8     a full-blown evidentiary hearing if in fact you allow any

9     evidence in.

10         We agree with the Claims Purchasers' lawyer that it

11    shouldn't come in generally, and that includes Mr. Seery, and

12    that includes Mr. Dondero, and that includes everything else,

13    except the four corners of our pleading.  And we're prepared

14    to stand on that, subject to the pertinent rules that deal

15    with 12(b)(6) inquiries.

16         Your Honor, what we've done today is we've talked about

17    the merits of our claim before the June 8th hearing.  The only

18    issue before the Court today was a discovery issue, which

19    we've never really addressed, because Mr. Morris and Mr.

20    Seery's counsel are trying to slide over the fact that they

21    have objected to some of our discovery, refusing to produce

22    documents that go to the very core of our claim.  They are

23    seeking to prevent access and Mr. Seery's deposition on

24    communications with the Claims Purchasers dealing with the

25    asset values and projections, distributions from the estate.

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-33    Filed 04/07/25    Page 208 of 232    PageID 9090

46

1   Well, that's the guts of material nonpublic information.

2       And we -- this case is not limited to MGM as much as Mr.

3   Morris would like to do so.  A fair reading of our complaint

4   in Paragraphs 3, 13, 17, 47, 50, and 51 make it very clear

5   that this is a lot larger than just MGM.

6       And Your Honor, to allow them to put Mr. Seery on the

7   stand without our right to depose him and have documents

8   relating to his communications --

9           THE COURT:  Wait, wait, wait.

10          MR. MCENTIRE:   -- with the Claims Purchasers --

11          THE COURT:  Wait, wait, wait.  Maybe I was not clear.

12  You all can depose -- if Seery is going to testify, you can

13  depose him before June 8th, just not over the holiday weekend.

14  Okay?  And --

15          MR. MCENTIRE:  Yes, I understood that.

16          THE COURT:  And -- and -- and --

17          MR. MCENTIRE:  But they're trying to prevent --

18          THE COURT:  And -- and -- and -- and if you're not

19  going to withdraw the Dondero affidavit and redact the

20  sentences in the motion for leave that mention the Dondero

21  affidavit, okay, so if you're going to rely on Dondero's

22  affidavit or call him at the June 8th hearing, they can depose

23  him.  Again, not over the holiday weekend.

24      But I'm just saying that's as far as I'm going to let the

25  evidence go.  I'm not going to allow depositions of Claims

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-3   Filed 12/07/23   Page 209 of 232   PageID 9091
Exhibit B   Page 47 of 255

47

1    Purchasers unless you somehow show me you've got a colorable

2    claim or claims in your proposed complaint.  Then, if I say

3    yes, then normal discovery rules will apply.  We have very

4    much a cart-before-the-horse situation here.

5         MR. MCENTIRE:  We do.  I agree with that.

6    Completely.  And in fact, what was happening here, Your Honor,

7    with all due respect, is you're just addressing the

8    colorability of my client's claims to determine whether I can

9    conduct discovery, but they want to put discovery on to

10   challenge the colorability of my claims.  Somewhat circular,

11   Your Honor, with all due respect.  And so we're truly being

12   deprived --

13        THE COURT:  Well, again, --

14        MR. MCENTIRE:  -- of our rights.

15        THE COURT:  -- again, I go back to where it all

16   starts, and it starts with your motion attaching a Dondero

17   affidavit.  That's where it all starts.  You could have just

18   filed a motion making legal argument.  And if you just wanted

19   to make your legal argument at the hearing on this, then that

20   would have been fine to the Court.  But once you filed that

21   affidavit, all I can say is everything changed.  I used the

22   genie-in-the-bottle analogy.

23      So I'm giving you every opportunity here to present your

24   colorable claim.  And I have told you that, if it all comes

25   down to legal argument, I'm not sure how you're ever going to

Case 19-34054-sgj11    Doc 3821-2    Filed 06/07/23    Entered 06/07/23 16:13:46    Desc
Case 3:23-cv-02071-E    Document 28-33    Filed 12/07/23    Page 210 of 232    PageID 9092

48

1    convince me.  I'm saying you can --

2            MR. MCENTIRE:  Well, I --

3            THE COURT:  I'm saying you can take back the Dondero

4    affidavit if you want.  I'm saying you can go forward with it

5    if you want, but they can cross-examine him if you do.  But

6    now that the genie is out of the bottle, I can understand the

7    Defendants wanting to put on their own countervailing

8    evidence, because the genie is out of the bottle.  I've

9    already read your motion and I've read the Dondero affidavit.

10   I can't unsee it.  So if --

11           MR. MCENTIRE:  The genie is not out of the -- with

12   all due respect, Your Honor, the genie is not out of the

13   bottle because we have a right to amend or supplement, and

14   that's effectively what we've done here.  And so you do not --

15           THE COURT:  And I want you --

16           MR. MCENTIRE:  -- need to consider the Dondero --

17           THE COURT:  -- to be clear about what I am saying.

18   If you want to take it back, you can.  If you want to refile

19   the motion, merely redacting those sentences that refer to the

20   Dondero affidavit and not filing the Dondero affidavit, I'll

21   let you.  But I'm not going to stop the other side from

22   putting on Mr. Seery out of concern --

23           MR. MCENTIRE:  Right.

24           THE COURT:   -- that I've already read that stuff.

25   Okay?

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 07/07/23   Page 211 of 232   PageID 9093

49

1          MR. MCENTIRE:  All right.

2          THE COURT:  And I don't think they like that, --

3          MR. MCENTIRE:  I understand your ruling.

4          THE COURT:   -- especially.  I don't think they like

5   it, especially.  I think they'd now like probably to cross-

6   examine Mr. Dondero.  But I'm giving --

7          MR. MORRIS:  If I may, Your Honor, just really --

8          THE COURT:  Go ahead.

9          MR. MORRIS:  I'm sorry.  I was just --

10          MR. MCENTIRE:  Your Honor, if I can finish --

11          MR. MORRIS:  (overspoken)

12          MR. MCENTIRE:   -- my presentation.

13          MR. MORRIS:   We have relied --

14          MR. MCENTIRE:  I understand your ruling.

15          MR. MORRIS:  We have relied on the Dondero

16   affidavits.  They were analyzed and reviewed extensively in

17   the opposition.  I think it would be very prejudicial if they

18   were allowed to withdraw them.  But, you know, the Court has

19   to do what the Court thinks is right.

20      But I do want to point out that Mr. McEntire made the

21   point at the status conference that he was considering

22   withdrawing the affidavits.  He didn't do so.  We did an

23   extensive analysis of those affidavits.  We relied on them.

24   And only in reply did they say, oh, we're withdrawing them.  I

25   just don't think that's proper.

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 07/07/23   Page 212 of 232   PageID 9094

50

1          THE COURT:  Okay.

2          MR. MCENTIRE:  Your Honor, I have a few more comments

3   to clarify your ruling, please.

4          THE COURT:  Okay.  Go ahead.

5          MR. MCENTIRE:  Number one, we have withdrawn the

6   affidavit, number one.

7          THE COURT:  You -- it is still --

8          MR. MCENTIRE:  We reserve the right, if you --

9          THE COURT:  When did you withdraw it?  Because I just

10  looked at the docket.  It's not withdrawn.

11          MR. MCENTIRE:  I did it at the status conference.

12  And if there's any ambiguity or concern or confusion about

13  that, --

14          THE COURT:  It is on the docket.

15          MR. MCENTIRE:  -- I clearly did it --

16          THE COURT:  It has been publicly available for weeks

17  now.

18          MR. MCENTIRE:  It was formally done in our reply on

19  May 18, and so there can be no ambiguity.  If you'd like for

20  me to withdraw it from the public record, I'll be glad to do

21  so.

22          THE COURT:  Okay.

23          MR. MCENTIRE:  I didn't know that was an additional

24  issue.

25          THE COURT:  I mean, here -- I gave you this emergency

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-13   Filed 12/07/23   Page 213 of 232   PageID 9095

51

1    hearing.  You asked for 45 minutes.  I actually have a

2    conference call at 11:00 o'clock.

3        Here's what I'm going to do.  We'll have yet another order

4    regarding what kind of hearing we're going to have on June

5    8th, and it will clarify that Mr. Seery can testify and Mr.

6    Dondero can testify, and both of them shall be made available

7    for depositions before June 8th but not sooner than next

8    Wednesday.  And that is the evidence that the Court will

9    consider.  No other deposi...

10            MR. MCENTIRE:  Your Honor, we --

11            THE COURT:  No other -- I'm still talking.  No other

12   depositions will happen between now and June 8th.  You can

13   make your legal arguments, you can put on your witnesses, and

14   the Court is going to rule.  Okay?

15            MR. MCENTIRE:  I understand your ruling.  There's one

16   additional clarification, Your Honor.

17            THE COURT:  Okay.

18            MR. MCENTIRE:  We would like for the documents to be

19   produced that we've requested from Mr. Seery.  They're

20   important to allow us to conduct his deposition.  And we

21   specifically would like the objections to the production of

22   documents to be overruled.

23       If the Court wants to take that under advisement because

24   of the shortness of this hearing today, that's fine, but it's

25   very important that we have access to information relating to

Case 19-34054-sgj11   Doc 3821-2   Filed 06/07/23   Entered 06/07/23 16:13:46   Desc
Case 3:23-cv-02071-E   Document 28-33   Filed 09/29/23   Page 214 of 232   PageID 9096

52

1   the value of the estate, communications with the Claims

2   Purchasers about the value of the estate, projected

3   distributions.  And specifically, I'll provide the reference,

4   we have allegations in Paragraphs 24, 59, and 99 that relate

5   to this, as well as all the communications regarding insider

6   trading that would be -- that would support the relevance.

7   It's Request for Production Number 1-H through J.

8           THE COURT:  Okay.  Let me stop you.

9           MR. MCENTIRE:  And it's Request for Production --

10          THE COURT:  I'm denying that request.  Okay.  And I'm

11  going to go back to the cart-before-the-horse analogy.  You

12  know something, you have something that makes you think you

13  have colorable claims.  Okay?  You can put on your witness and

14  try to convince me.  You can cross-examine Mr. Seery and try

15  to convince me.  Okay?  But if you convince me, then there'll

16  be a normal lawsuit and discovery.  But at this point, I think

17  it's a very improper request.  Okay?  So that's the --

18          MR. MCENTIRE:  Please note for the record, Your

19  Honor, that we're being denied the opportunity to depose Mr.

20  Seery fully and completely without the production of these

21  documents.  We understand your ruling, however.  Please note

22  our objection.

23          THE COURT:  All right.  I will see you on June 8th.

24  We're adjourned.

25          MR. MCENTIRE:  Thank you, Your Honor.

53

1                    THE CLERK:  All rise.

2           (Proceedings concluded at 10:55 a.m.)

3                            --oOo--

20                          CERTIFICATE

21      I certify that the foregoing is a correct transcript from
   the electronic sound recording of the proceedings in the
22 above-entitled matter.

23    /s/ Kathy Rehling                        05/27/2023

24 _____     _____

25 Kathy Rehling, CETD-444                        Date
   Certified Electronic Court Transcriber

54

INDEX

PROCEEDINGS                                                          3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS                                                            50

     Motion for Expedited Hearing filed by Interested Party
     Hunter Mountain Trust (3789)

     Motion to Continue Hearing filed by Interested Party
     Hunter Mountain Trust (3791)

     Motion to Shorten Time - Expedited Discovery filed by
     Interested Party Hunter Mountain Trust (3788)

END OF PROCEEDINGS                                                 53

INDEX                                                              54

009409

# EXHIBIT C

| | |
|---|---|
| **From:** | Stancil, Mark |
| **Sent:** | Monday, June 5, 2023 5:39 PM |
| **To:** | Roger L. McCleary; Sawnie A. McEntire |
| **Cc:** | John A. Morris; Levy, Joshua S.; Brennan, John L.; Hayley R. Winograd; Jeff Pomerantz; Gregory V. Demo |
| **Subject:** | RE: [EXTERNAL] HMIT |

Roger & Sawnie,

We are in receipt of your additional redactions. For reasons stated in my prior email, among others, we do not agree that these redactions are sufficient. But I believe we have fully elucidated each other's positions on this issue, and we can let the Court decide the issue if needed.

Mark

–

**Mark T. Stancil**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1133 | Fax: +1 202 303 2000
mstancil@willkie.com | vCard | www.willkie.com bio

On June 5, 2023 at 3:08:28 PM EDT, Roger L. McCleary <rmccleary@pmmlaw.com> wrote:

<mark>*** **EXTERNAL EMAIL** ***</mark>

Mark,

We disagree. However, in the interest of attempting to address some of your concerns, we are filing another copy of HMIT's redacted Motion for Leave with addition redactions.

Regards, Roger.

Roger L. McCleary
**Parsons McEntire McCleary PLLC**
One Riverway, Suite 1800
Houston, TX 77056
Tel: (713) 960-7305
Fax: (832) 742-7387
www.pmmlaw.com

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

009411

**From:** Stancil, Mark <MStancil@willkie.com>
**Sent:** Monday, June 5, 2023 12:26 PM
**To:** Sawnie A. McEntire <smcentire@pmmlaw.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Levy, Joshua S. <JLevy@willkie.com>; Roger L. McCleary <rmccleary@pmmlaw.com>; Brennan, John L. <JBrennan@willkie.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: [EXTERNAL] HMIT

Sawnie,

HMIT's redactions are inadequate. Numerous paragraphs continue to refer explicitly to "sworn declarations," "evidence," the "record," and similar terms based on the purportedly withdrawn evidentiary materials. See, e.g., ¶¶ 14, 15, 23, 28, 36, 42. In numerous other instances, the motion merely "withdraws" a reference to the declarations/exhibits, but leaves intact the same factual allegations originally based on the purportedly withdrawn materials and/or includes references to documents originally attached via purportedly withdrawn declarations. See, e.g., ¶¶ 23, 24, 25, 28, 32, 36, 44, 46. Attached you will find a copy of the redacted filing with additional highlighted text identifying these defects. We have endeavored to take a narrow view of proposed additional redactions (including, for example, leaving in allegations based upon public court proceedings).

We reserve all rights to contest the nature and scope of HMIT's submission and support therefore, including but not limited to the propriety of further evidentiary proceedings and the adequacy of and/or lack of support for the remainder of HMIT's submission.

Please file any additional redactions no later than 4:30 P.M. CT today, so that the parties can adjust their witness/exhibit lists accordingly.

Mark T. Stancil
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1133 | Fax: +1 202 303 2000
mstancil@willkie.com | vCard | www.willkie.com bio

**From:** Sawnie A. McEntire <smcentire@pmmlaw.com>
**Sent:** Monday, June 5, 2023 10:57 AM
**To:** Stancil, Mark <MStancil@willkie.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Levy, Joshua S. <JLevy@willkie.com>; Roger L. McCleary <rmccleary@pmmlaw.com>
**Subject:** RE: [EXTERNAL] HMIT

**\*\*\* EXTERNAL EMAIL \*\*\***

009412

The operative proposed Complaint is attached to the Supplement. We do not think the Supplement requires any redaction.

Subject to our stated objections relating to the evidentiary format adopted by the Court, as well the Court's denial of our requested discovery, we reserve the right to call Mr. Dondero live at the hearing and the right to examine him in full if you decide call him as a witness.

**From:** Stancil, Mark <MStancil@willkie.com>
**Sent:** Monday, June 5, 2023 9:51 AM
**To:** Sawnie A. McEntire <smcentire@pmmlaw.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Levy, Joshua S. <JLevy@willkie.com>; Roger L. McCleary <rmccleary@pmmlaw.com>
**Subject:** RE: [EXTERNAL] HMIT

We received the notice and are reviewing. Will you be filing a redacted version of HMIT's Supplement (Dkt. 3760) and Reply (Dkt. 3785)? Relatedly, it appears your redacted filing today attached the original complaint. Is that the operative proposed complaint, or is it the amended version attached to the Supplement?

**Mark T. Stancil**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1133 | Fax: +1 202 303 2000
mstancil@willkie.com | vCard | www.willkie.com bio

**From:** Sawnie A. McEntire <smcentire@pmmlaw.com>
**Sent:** Monday, June 5, 2023 10:47 AM
**To:** Stancil, Mark <MStancil@willkie.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Levy, Joshua S. <JLevy@willkie.com>; Roger L. McCleary <rmccleary@pmmlaw.com>
**Subject:** RE: [EXTERNAL] HMIT

**\*\*\* EXTERNAL EMAIL \*\*\***

You should have received notice of our filing of the Motion without the Dondero declarations.

**Sawnie A. McEntire**
**Director and Shareholder**
**Parsons McEntire McCleary PLLC**
**1700 Pacific Avenue, Suite 4400**
**Dallas, Texas 75201**

**214-237-4303 (Direct)**
**214-543-8089 (Mobile)**

009413

*smcentire@pmmlaw.com*

Let me know if you have any questions.

---

**From:** Stancil, Mark <MStancil@willkie.com>
**Sent:** Thursday, June 1, 2023 1:52 PM
**To:** Sawnie A. McEntire <smcentire@pmmlaw.com>; Roger L. McCleary <rmccleary@pmmlaw.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Levy, Joshua S. <JLevy@willkie.com>; Brennan, John L. <JBrennan@willkie.com>; brent.mcilwain@hklaw.com; david.schulte@hklaw.com; Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** [EXTERNAL] HMIT


Sawnie and Roger—

At last week's status conference, Judge Jernigan stated that the materials attached to your motion for leave had not been withdrawn because they still appear on the docket and the motion for leave continues to rely upon them. Specifically, the Court stated: "If you want to refile the motion, merely redacting those sentences that refer to the Dondero affidavit and not filing the Dondero affidavit, I'll let you." (Conf. Tr. at 48:17-22, 59:9-17.) HMIT has not refiled a redacted version of its motion.

There should be no doubt about whether or not HMIT has withdrawn the materials. If HMIT wishes to do so, it should refile the motion (without exhibits) in redacted form, as instructed by Judge Jernigan. That should occur no later than Monday, June 5, 2023 at 10:00 AM Central Time to allow defendants sufficient time to adjust their witness and exhibit lists for the upcoming hearing accordingly. If HMIT has not complied with Judge Jernigan's instructions by that time, we will proceed on the understanding that the materials remain attached to and relied upon by the motion.

We otherwise reserve all rights.

---

**Mark T. Stancil**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1133 | Fax: +1 202 303 2000
mstancil@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

009415

Sawnie A. McEntire

Texas State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

Texas State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S UNOPPOSED
<u>MOTION TO FILE EXHIBIT UNDER SEAL</u>**

Hunter Mountain Investment Trust ("<u>HMIT</u>"), files this Unopposed Motion to File

Exhibit Under Seal ("Motion"), and respectfully states as follows: [1]

---

[1] This Motion is filed subject to and without waiving HMIT's substantive and procedural rights including, but not limited to, HMIT's objections to the evidentiary format of the Motion for Leave Hearing, including as ordered by the Court's May 22, 2023, Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE ## 3699 & 3760] (Doc. 3787) ("May 22 Order"). HMIT's prior objections to an evidentiary hearing on "colorability," and applying an evidentiary burden of proof to HMIT's Motion for Leave, were asserted by HMIT during the April 24, 2023, Status Conference,

[1]

009416

<u>R</u><small>ELEVANT</small> <u>B</u><small>ACKGROUND</small>

1.      HMIT's *Emergency Motion for Leave to File Verified Adversary Proceeding* [Dkt.

3699] and *Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding*

[Dkt. 3760] (together the "Motion for Leave") is set for June 8, 2023 at 9:30 a.m. (Central

Time) (the "Motion for Leave Hearing").

2.      On June 5, 2023, HMIT filed its Witness and Exhibit List in Connection with

its Emergency Motion for Leave to File Verified Adversary Proceeding, and Supplement

[Dkt. 3818] ("Exhibit List").

3.      Included in HMIT's Exhibit List is Exhibit 5 ("Exhibit 5"), which is a

compliance log which was maintained pursuant to the Shared Services Agreement and

Sub-Advisory Agreement between NexPoint Advisors, L.P. and Highland Capital

Management, L.P. ("HCM"). HMIT does not believe Exhibit 5 contains confidential

information at this time, however, out of an abundance of caution, HMIT designated

---

and were further set forth in HMIT'S Reply Brief in Support of its Motion for Leave (Doc. 3785) and during
the May 26, 2023, hearing regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited
Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing (Doc 3788), all of which objections
are incorporated herein for all purposes ("HMIT's Evidentiary Hearing Objections").

Subject to and without waiving HMIT's Evidentiary Hearing Objections, and based on the Court's rulings
relating to the evidentiary format for the Motion for Leave Hearing, HMIT also files this instrument subject
to and without waiving HMIT's procedural and substantive rights relating to HMIT's efforts to take
discovery in advance of the Motion for Leave Hearing including, but not limited to, the discovery HMIT
requested in Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or,
Alternatively, for Continuance of June 8, 2023 Hearing (Doc. 3791) to the extent it was denied in the Court's
May 26, 2023, Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited
Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing [Dkt. Nos. 3788 and 3791]
(Doc.3800).

Exhibit 5 as "Confidential" in accordance with the *Agreed Protective Order* [Docket No. 382]. Exhibit 5 was served on all parties to the Motion for Leave Hearing proceeding, however, it was not electronically filed with the Court.

4.      Pursuant to §§ 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Bankruptcy Rule 9077-1, and the *Agreed Protective Order* [Docket No. 382], HMIT seeks the entry of an order authorizing the HMIT to file the following under seal: Exhibit No. 5 on HMIT's Witness and Exhibit List in Connection with its Emergency Motion for Leave to File Verified Adversary Proceeding, and Supplement [Doc. 3818] ("Exhibit List").

B<span style="font-size:smaller">ASIS FOR</span> R<span style="font-size:smaller">ELIEF</span> R<span style="font-size:smaller">EQUESTED</span>

5.      Confidential information may be sealed by a bankruptcy court from the public record pursuant to § 107(b) of the Bankruptcy Code, which provides in relevant part that:

> On request of a party in interest, the bankruptcy court shall, and on bankruptcy court's own motion, the bankruptcy court may – (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

6.      Section 107(b) is implemented through Bankruptcy Rule 9018. In pertinent part, that rule reads:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity

in respect of a trade secret or other confidential research, development, or commercial information.

7.     On January 22, 2020, this Court entered the Agreed Protective Order,[2] which "governs any document, information, or other thing that has been or will be produced or received by a Party in the action *In re Highland Capital Management, L.P.*, Case No. 19-34054 (SGJ)," pending before this Court (the "Discovery Materials").

8.     Pursuant to the terms of the Agreed Protective Order, Discovery Materials designated as "Confidential" may be disclosed to any other Party and the United States Bankruptcy Court for the Northern District of Texas and its personnel. (Agreed Protective Order ¶ 2.).

9.     Exhibit 5 has been designated as confidential out of an abundance of caution because it was maintained pursuant to the Shared Services Agreement and Sub-Advisory Agreement between NexPoint Advisors, L.P. and the Debtor, Highland Capital Management, L.P. ("HCM").

10.     Counsel for HMIT conferred with counsel for all counsel related to the Motion for Leave Proceedings, including counsel for Highland Capital Management, L.P., and the Highland Claimant Trust, who indicated it was unopposed to this Motion.

**WHEREFORE**, HMIT requests that the Court grant the relief requested in this Motion and grant HMIT such other or further relief as the Court deems proper.

---

[2] Dkt. 382.

[4]

009419

DATED: June 7, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  */s/ Sawnie A. McEntire*
    Sawnie A. McEntire
    Texas State Bar No. 13590100
    smcentire@pmmlaw.com
    1700 Pacific Avenue, Suite 4400
    Dallas, Texas 75201
    Telephone: (214) 237-4300
    Facsimile: (214) 237-4340

    Roger L. McCleary
    Texas State Bar No. 13393700
    rmccleary@pmmlaw.com
    One Riverway, Suite 1800
    Houston, Texas 77056
    Telephone: (713) 960-7315
    Facsimile: (713) 960-7347

    *Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF SERVICE

I certify that on the 7th day of June 2023, a true and correct copy of the foregoing Motion was served on all counsel of record or, as appropriate, on the Respondents directly.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

[5]

009420

## <u>CERTIFICATE OF CONFERENCE</u>

On June 6, 2023, counsel for HMIT conferred with counsel for all Respondents related to these proceedings, regarding the substance of this Motion. Counsel for all Respondents, Highland Capital Management, L.P., Highland Claimant Trust, James P. Seery, Jr., Farallon Capital Management, L.L.C., Stonehill Capital Management LLC, Jessup Holdings LLC, and Muck Holdings, LLC indicated they are unopposed to the relief sough in this motion.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

009421

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**ORDER GRANTING MOTION TO FILE EXHIBIT UNDER SEAL**

Upon the Unopposed Motion to File Exhibit Under Seal ("Motion"), filed by Hunter

Mountain Investment Trust ("HMIT"), in relation to the hearing concerning HMIT's

*Emergency Motion for Leave to File Verified Adversary Proceeding* [Dkt. 3699] and *Supplement*

*to Emergency Motion for Leave to File Verified Adversary Proceeding* [Dkt. 3760] (together the

"Motion for Leave"), which is set for June 8, 2023 at 9:30 a.m. (Central Time) (the "Motion

009422

for Leave Hearing"). The Court is of the opinion that HMIT's Motion ought to be

GRANTED and is hereby orders that:

1. The Motion is GRANTED.

2. HMIT is authorized to file Exhibit 5.

### End of Order ###

Submitted by:
PARSONS MCENTIRE MCCLEARY PLLC

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Counsel for Hunter Mountain Investment Trust*

009423

Brent R. McIlwain, TSB 24013140
David C. Schulte    TSB 24037456
Christopher Bailey TSB 24104598
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
Tel.:    (214) 964-9500
Fax:    (214) 964-9501
brent.mcilwain@hklaw.com
david.schulte@hklaw.com
chris.bailey@hklaw.com

COUNSEL TO MUCK HOLDINGS, LLC,
JESSUP HOLDINGS LLC,
FARALLON CAPITAL MANAGEMENT, L.L.C., AND
STONEHILL CAPITAL MANAGEMENT LLC

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Case No. 19-34054 (SGJ) |
| Highland Capital Management, L.P.[1] | Chapter 11 |
| Debtor. | (Jointly Administered) |

### CLAIM PURCHASERS' JOINDER TO HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND JAMES P. SEERY, JR.'S JOINT MOTION TO EXCLUDE TESTIMONY AND DOCUMENTS OF SCOTT VAN METER AND STEVE PULLY

Muck Holdings, LLC ("Muck"), Jessup Holdings LLC ("Jessup"), Farallon Capital

Management, L.L.C. ("Farallon"), and Stonehill Capital Management LLC ("Stonehill", and

collectively, with Muck, Jessup, and Farallon, the "Claims Purchasers") join and adopt Highland

Capital Management, L.P., Highland Claimant Trust, and James P. Seery Jr.'s *Joint Motion to*

---

[1]    The last four digits of Debtor's taxpayer identification number are (6725). The headquarters and service address for Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

*Exclude Testimony and Documents of Scott Van Meter and Steve Pully* [Dkt. No. 3820] (the

"Motion to Exclude").  For the reasons set forth in the Motion to Exclude, the Claim Purchasers

respectfully request the Court grant the relief requested therein.

WHEREFORE, the Claims Purchasers respectfully request that the Court grant the Motion

to Exclude and grant the Claims Purchasers such other and further relief as is just and proper.


Dated:  June 7, 2023                HOLLAND & KNIGHT LLP

By: */s/ Christopher Bailey*
Brent R. McIlwain, TSB 24013140
David C. Schulte, TSB 24037456
Christopher Bailey, TSB 24104598
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX  75201
Tel.:    (214) 964-9500
Fax      (214) 964-9501
brent.mcilwain@hklaw.com
david.schulte@hklaw.com
chris.bailey@hklaw.com

COUNSEL TO MUCK HOLDINGS, LLC,
JESSUP HOLDINGS LLC, FARALLON
CAPITAL MANAGEMENT, L.L.C., AND
STONEHILL CAPITAL MANAGEMENT LLC


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk

of Court using the CM/ECF system, and served upon all parties receiving notice pursuant to the

CM/ECF system on this the 7th day of June, 2023.


*/s/ Christopher Bailey*
Christopher Bailey

009425