**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| **Hunter Mountain Investment Trust** | | |
| Appellant | § | |
| vs. | § | |
| **Highland Capital Management, L.P, et al** | § | **3:23-CV-2071-E** |
| Appellee | § | |

 **[3904] Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders" Denying Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding. Entered on 8/25/2023.**

# Volume 43

# APPELLANT RECORD

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Reorganized Debtor. | § | *INDEX* |

## APPELLANT HUNTER MOUNTAIN INVESTMENT TRUST'S
## SECOND SUPPLEMENTAL STATEMENT OF THE ISSUES AND
## DESIGNATION OF ITEMS FOR INCLUSION IN THE APPELLATE RECORD

COMES NOW Appellant/Movant Hunter Mountain Investment Trust, both in its

individual capacity and derivatively on behalf of the Reorganized Debtor, Highland Capital

Management, L.P., and the Highland Claimant Trust,[1] (collectively, "Appellant" or "HMIT"), and

files this Second Supplemental[2] Statement of the Issues and Designation of Items for Inclusion in

the Appellate Record pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1):

## I.
## STATEMENT OF THE ISSUES

A. Did the bankruptcy court err in determining that the "colorable" claim analysis allowed the
court to consider evidence and other non-pleading materials including, but not limited to,
the court's reasoning that:

1. the colorability analysis is stricter than a non-evidentiary, Rule 12(b)(6)-type
analysis;

2. the colorability analysis is "akin to the standards applied under the ... *Barton*
doctrine";

3. the colorability analysis requires a "hybrid" of the *Barton* doctrine and "what courts
have applied when considering motions to file suit when a vexatious litigant bar
order is in place"; and/or,

---

[1] And in all capacities and alternative derivative capacities asserted in HMIT's Emergency Motion for Leave to File
Verified Adversary Proceeding [Dkt. Nos. 3699, 3815, and 3816] ("Emergency Motion"), the supplement to the
Emergency Motion [Dkt. No. 3760], and the draft Complaint attached to the same [Dkt. No. 3760-1].

[2] Appellant files this Second Supplement pursuant to the Clerk's request at Docket #3949 and correspondence on
10/23/2023.

4. "[t]here may be mixed questions of fact and law implicated by the Motion for Leave"?

[*See* Dkt. Nos. 3781, 3790, 3903-04].

B.   Did the bankruptcy court err in determining that Appellant lacked constitutional or prudential standing to bring its claims in its individual and derivative capacities?

[*See* Dkt. Nos. 3903-04].

C.   Did the bankruptcy court err in alternatively determining that, even under a non-evidentiary, Rule 12(b)(6)-type analysis, Appellant did not assert colorable claims including, but not limited to, determining that:

1. Appellant's allegations are conclusory, speculative, or constitute "legal conclusions";

2. Appellant's claims or allegations are not "plausible";

3. Appellant's allegations pertaining to a *quid pro quo* are "pure speculation";

4. Proposed Defendant James P. Seery ("Seery") owed no duty to Appellant in any capacity as a matter of law;

5. Appellant failed "to allege facts in the Proposed Complaint that would support a reasonable inference that Seery breached his fiduciary duty to HMIT and the estate as a result of bad faith, self-interest, or other intentional misconduct rising to the level of a breach of the duty of loyalty";

6. Appellant's allegations pertaining to its aiding and abetting and conspiracy claims are speculative and not plausible;

7. The remedies of equitable disallowance and equitable subordination are not remedies "available" to Appellant as a matter of law;

8. Appellant's unjust enrichment claim is invalid as a matter of law because "Seery's compensation is governed by express agreements";

9. Appellant is not entitled to declaratory relief because it has no colorable claims; and/or

10. Appellant cannot recover punitive damages for its breach of fiduciary duty claim?

[*See* Dkt. Nos. 3903-04].

D.  Alternatively, even if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the court violate Appellant's due process rights by denying Appellant its requested discovery?

[*See* Dkt. Nos. 3800, 3853, 3903-04, June 8, 2023 Hearing].

E.  Alternatively, did the bankruptcy court err by denying Appellant's requested discovery including, but not limited to:

1.  ordering that Appellant could not request or obtain any discovery other than a deposition of Seery and James D. Dondero; and/or

2.  determining that state court "Rule 202" proceedings supported the denial of discovery?

[*See* Dkt. Nos. 3800 & June 8, 2023 Hearing; *see also* Dkt. Nos. 3903-04].

F.  Alternatively, did the bankruptcy court err by denying Appellant's alternative request for a continuance to obtain the requested discovery?

G.  Alternatively, did the bankruptcy court err by excluding Appellant's evidence, or admitting the same for only limited purposes, offered at the June 8, 2023 Hearing?

H.  Alternatively, did the bankruptcy court err by overruling Appellant's objections to Appellees' evidence offered at the June 8, 2023 Hearing?

I.  Alternatively, did the bankruptcy court err by excluding Appellant's experts' testimony?

[*See* Dkt. No. 3853; *see also* Dkt. Nos. 3903-04].

J.  Alternatively, did the bankruptcy court err by striking Appellant's proffer of its excluded experts' testimony from the record?

[*See* Dkt. No. 3869].

K.  Alternatively, if the bankruptcy court correctly determined that its "hybrid" *Barton* analysis controls, did the bankruptcy court err in determining that Appellant had not asserted colorable claims under that "hybrid" analysis including, but not limited to, its findings that:

1.  there is no evidence to support that Seery shared material non-public information with the Claims Purchasers;

2.  there is no evidence to support the alleged quid pro quo;

3.  the material shared was *public* information; and/or

4.  the Claims Purchasers had sufficient and lawful reasons to pay the amounts paid

---

for the purchased claims.

[*See* Dkt. Nos. 3903-04].

L.   Did the bankruptcy court err in finding that Appellant is controlled by Dondero, and, as such, Appellant "cannot show that it is pursuing the Proposed Claims for a proper purpose"?

M.   Alternatively, does sufficient evidence support the bankruptcy court's evidentiary findings made pursuant to its "hybrid" *Barton* analysis?

N.   Did the bankruptcy court err in denying an expedited hearing on Appellant's Motion for Leave?  [*See* Dkt. 3713].

O.   Does the bankruptcy court's use of a new "colorability" standard to determine if claims by non-debtors against other non-debtors may proceed violate *Stern v. Marshall* and its progeny?

P.   Did the bankruptcy court err in denying Appellant's Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or Alternatively, for New Trial under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 including, but not limited to by:

1.   declining to consider disclosures that demonstrated that Appellant is "in the money"—an issue pertinent to the court's erroneous standing decisions; and

2.   concluding that the disclosures failed to reinforce Appellant's standing to pursue the claims presented?

[Dkt. 3936].

## II.
## DESIGNATION OF ITEMS FOR INCLUSION
## IN THE APPELLATE RECORD

*vol. 1*

1.   **Notice of Appeal**

*000001*   a.   Notice of Appeal **[Dkt. 3906]**;

*000276*   b.   Amended Notice of Appeal **[Dkt. 3908]**; and

*000551*   c.   Second Amended Notice of Appeal **[Dkt. 3945]**

2.   **The judgment, order, or decree appealed from:**

a.   Memorandum Opinion and Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders": Denying Hunter Mountain Investment

Trust's Emergency Motion for Leave to File Adversary Proceedings **[Dkts. 3903 & 3904]**; and

    **b.** Order Denying Motion of Hunter Mountain Investment Trust Seeking Relief Pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 **[Dkt. 3936]**.

**3. Docket sheet.**

    a. Bankruptcy Case No. 19-34054

**4. Other Items to be included:**

    **a.** HMIT hereby designates the following items in the record on appeal from Cause No. 19-34054-sgj11:

| FILE DATE | DOCKET NO. (INCLUDING ALL ATTACHMENTS AND APPENDICES) | DESCRIPTION |
|---|---|---|
| 01/22/2021 | 1808 | Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) |
| 02/22/2021 | 1943 | Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief |
| 09/09/2022 | 3503 | Motion to Conform Plan filed by Highland Capital Management, L.P. |
| 02/27/203 | 3671 | Memorandum Opinion and Order on Reorganized Debtor's Motion to Conform Plan |
| 03/28/2023 | 3699 (3699-1 — 3699-5) | HMIT Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| 03/28/2023 | 3700 (3700-1) | HMIT Motion for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/30/2023 | 3704 | Farallon, Stonehill, Jessup and Muck Objection to Motion for Expedited Hearing |
| 03/30/2023 | 3705 | HMIT Amended Certificate of Conference |

*Vol. 5*
*002251*
*002254*
*002262*
*002346*
*002355*
*002358*
*002391*
*002398*
*002400*
*Vol. 6*
*Thru Vol. 7*
*002826*
*Thru Vol. 9*
*Vol. 9*
*003257*
*003260*
*003270*
*003278*

| Date | Doc No. | Description |
|---|---|---|
| 03/30/2023 | 3706 | HMIT Amended Certificate of Conference |
| 03/30/2023 | 3707 | Highland's Response in Opposition to Emergency Motion for Leave |
| 03/30/2023 | 3708 (3708-1 — 3708-8) | Declaration of John Morris in Support of the Highland Parties' Objection to Hunter Mountain Investment Trust's Opposed Application for Expedited Hearing on Emergency Motion for Leave to File Verified Adversary Proceeding |
| 03/31/2023 | 3712 | HMIT Reply in Support of Application for Expedited Hearing |
| 03/31/2023 | 3713 | Order Denying Motion for Expedited Hearing |
| 04/04/2023 | 3718 (3718-1 — 3718-4) | HMIT Motion for Leave to File Appeal |
| 04/04/2023 | 3719 (3719-1) | HMIT Motion for Expedited Hearing on Motion for Leave to File Appeal |
| 04/05/2023 | 3720 | Order Denying HMIT's Opposed Motion for Expedited Hearing |
| 04/05/2023 | 3721 (3721-1 — 3721-2) | HMIT Notice of Appeal |
| 04/06/2023 | 3726 (3726-1) | Certificate of Mailing regarding HMIT Notice of Appeal |
| 04/07/2023 | 3731 | Notice of Docketing Transmittal of Notice of Appeal |
| 04/13/2023 | 3738 (3738-1) | Highland's Opposed Emergency Motion to Modify and Fix a Briefing Schedule and Set a Hearing Date with Respect to HMIT's Emergency Motion for Leave |
| 04/13/2023 | 3739 | Highland's Motion for Expedited Hearing |
| 04/13/2023 | 3740 | Joinder to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date With Respect to Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon |

| | | | |
|---|---|---|---|
| | | | Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
| *Vol. 10*<br>*003281* | 04/13/2023 | 3741 | Notice of Hearing for 04/24/2023 at 1:30 PM |
| *003286* | 04/13/2023 | 3742 | Amended Notice of Hearing for 04/24/2023 at 1:30 PM |
| *003291* | 04/13/2023 | 3745 | Notice of Appearance and Request for Notice by Omar Jesus Alaniz filed by James P. Seery Jr. |
| *003294* | 04/15/2023 | 3747 | Joinder by James P. Seery Jr. to Highland's Emergency Motion to Modify and Fix Briefing Schedule and Set Hearing Date with Respect to Hunter Mountain Investment Trusts Emergency Motion for Leave to File Verified Adversary Proceeding |
| *003296* | 04/17/2023 | 3748 | HMIT's Response and Reservation of Rights |
| *003299* | 04/19/2023 | 3751 | Notice of Status Conference |
| *003302* | 04/21/2023 | 3758 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability" |
| *003311* | 04/21/2023 | 3759 | HMIT's Notice of Rescheduling Hearing |
| *003314* | 04/21/2023 | 3761 | HMIT's Objection Regarding Evidentiary Hearing and Brief Concerning Gatekeeper Proceedings Relating to "Colorability"[3] |
| *003323* | 04/23/2023 | 3760 (3760-1) | HMIT's Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding and Attached Verified Adversary Complaint |
| *003368* | 04/25/2023 | 3765 | Transcript of Hearing held on 04/24/2023 |
| *003430* | 05/11/2023 | 3780 | Objection to Hunter Mountain Investment Trust's (i) Emergency Motion for Leave to File Verified Adversary Proceeding; and (ii) Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck |

---

[3] A duplicate of Doc 3758.

---

| | | | |
|---|---|---|---|
| *Vol. 10* | | | Holdings LLC, Stonehill Capital Management LLC |
| *003458* | 05/11/2023 | 3781 | Order Fixing Briefing Scheduling and Hearing Date with Respect to HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding as Supplemented |
| *003463* *Vol. 11* | 05/11/2023 | 3783 | Highland and Seery's Joint Response to HMIT's Emergency Motion for Leave |
| *003537* *Thru Vol. 16* | 05/11/2023 | 3784 (3784-1 — 3784-46) | Declaration of John Morris in Support of Highland Parties' Joint Response |
| *Vol. 17* *004465* | 05/18/2023 | 3785 | HMIT's Reply in Support of Emergency Motion for Leave to File Adversary Proceeding |
| *004712* | 05/22/2023 | 3787 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004714* | 05/24/2023 | 3788 (3788-1 — 3788-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *004808* | 05/24/2023 | 3789 | HMIT's Application for Expedited Hearing |
| *004813* | 05/24/2023 | 3790 | Order Pertaining to the Hearing on Hunter Mountain Investment Trust's Motion for Leave to File Adversary Proceeding [DE##3699 & 3760] |
| *004836* | 05/25/2023 | 3791 (3791-1 — 3791-5) | HMIT's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing |
| *Vol. 18* *004930* | 05/25/2023 | 3792 | Order Setting Expedited Hearing |
| *004931* | 05/25/2023 | 3795 | Objection to Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of June 8, 2023 Hearing filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

*Vol. 18*
*004939.*

*004959*

*004961*

*004984*

*005049*

*005114*
*Vol. 26*
*006608*
*Vol. 39*
*009273*

*009290*

*0094/6*

*009424*

| Date | Doc No. | Description |
|---|---|---|
| 05/25/2023 | 3798 (3798-1) | Highland Parties' Joint Response in Opposition to HMIT's Emergency Motion for Expedited Discovery |
| 05/26/2023 | 3800 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| 05/28/2023 | 3801 | Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing |
| 06/05/2023 | 3815 (3815-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| 06/05/2023 | 3816 (3816-1) | Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding |
| 06/05/2023 | 3817 (3817-1 — 3817-5) *Thru Vol. 25* | Highland Parties' Witness and Exhibit List with Respect to Evidentiary Hearing on June 8, 2023 |
| 06/05/2023 | 3818 (3818-1 — 3818-9) *Thru Vol. 39* | HMIT's Witness and Exhibit List in Connection with its Emergency Motion for Leave to File Verified Adversary Proceeding, and Supplement |
| 06/07/2023 | 3820 | Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/07/2023 | 3821 (3821-1 — 3821-3) | Declaration in Support of Highland Parties' Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/07/2023 | 3822 (3822-1) | HMIT's Unopposed Motion to File Exhibit Under Seal [WITHDRAWN] |
| 06/07/2023 | 3823 | Joinder to Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |

*Vol. 40*
*00 9426*

| 06/07/2023 | 3824 | HMIT's Objections to the Highland Parties' Exhibit and Witness List |
|---|---|---|
| 06/08/2023 | 3828 | HMIT's Response to Highland Claimant Trust and James P. Seery, Jr.'s Joint Motion to Exclude Testimony and Documents of Experts Scott Van Meter and Steve Pully |
| 06/09/2023 | 3837 | Request for transcript regarding hearing held on 06/08/2023 |
| 06/12/2023 | 3838 | Court admitted exhibits on hearing June 8, 2023 (*See* Docket Entry Nos. 3817 & 3818) |
| 06/12/2023 | 3841 | Highland Parties' Reply in Further Support of their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully |
| 06/12/2023 | 3842 (3842-1) | Claim Purchasers' Joinder to Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery Jr.'s Reply in Further Support of Their Joint Motion to Exclude Testimony and Documents of Scott Van Meter and Steve Pully filed by Farallon Capital Management, LLC, Jessup Holdings LLC, Muck Holdings LLC, Stonehill Capital Management LLC |
| 06/13/2023 | 3843 | Transcript regarding Hearing Held 06/08/2023 |
| 06/13/2023 | 3844 | Transcript regarding Hearing Held 05/26/2023 |
| 06/13/2023 | 3845 | HMIT's Request for Oral Hearing or, Alternatively, a Schedule for Evidentiary Proffer |
| 06/13/2023 | 3846 | Response in Opposition to Hunter Mountain Investment Trust's Request for Oral Argument or, Alternatively, a Schedule for Evidentiary Proffer filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Creditor James P. Seery Jr. |
| 06/13/2023 | 3847 | HMIT's Reply to the Highland Parties' Response to Request for Oral Hearing |
| 06/16/2023 | 3853 | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |

*00 9436*
*00 9444*
*00 9445*
*00 9446*
*00 9456*
*00 9458* *Vol. 42* *Thru Vol. 41*
*00 9847*
*00 9901*
*00 9905*
*00 9908*
*00 9912*

*Vol. 42*

*009928*

| 06/16/2023 | 3854 | Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence |
|---|---|---|
| 06/19/2023 | 3858<br>(3858-1 — 3858-2) | Hunter Mountain Investment Trust's Evidentiary Proffer Pursuant to Rule 103(a)(2)[4] |
| 06/23/2023 | 3860 | The Highland Parties' Objections to and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 06/23/2023 | 3861 | Claim Purchasers' Joinder to the Highland Parties' Objections and Motion to Strike Hunter Mountain Investment Trust's Purported Proffer |
| 07/05/2023 | 3869 | Order Striking HMIT's Evidentiary Proffer Pursuant to Rule 103(a)(2) and Limiting Briefing |
| 07/06/2023 | 3872 | Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust filed by Debtor Highland Capital Management, L.P. and the Highland Claimant Trust |
| 07/21/2023 | 3888 | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by Highland Capital Management, L.P. |
| 07/21/2023 | 3889 | Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 filed by the Highland Claimant Trust |
| 08/17/2023 | 3901 | Withdrawal of HMIT's Unopposed Motion to File Exhibit Under Seal filed by Creditor Hunter Mountain Investment Trust |
| 09/08/2023 | 3905<br>(3905-1 — 3905-6) | Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or, Alternatively, for New Trial Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 and Incorporated Relief Filed by Creditor Hunter Mountain Investment Trust |

*009944*

*010013*

*010023*

*010025*

*010029*

*010035*

*010047*

*010059*

*Vol. 43*

*010062*

[4] HMIT understands that the Court struck this proffer in docket entry 3869.  Because the proffer appears to remain on the record and to avoid any argument that HMIT has failed its burden to designate the record, HMIT designates this docket entry out of an abundance of caution.

Vol. 43

010135

010136

| 09/11/2023 | 3907 | Clerk's Correspondence regarding HMIT's Notice of Appeal |
| 09/22/2023 | 3928 | Notice Regarding Appeal and Pending Post-Judgment Motion filed by HMIT |

B.    **Exhibits.**

Further, the Parties submitted hearing exhibits. HMIT designates for inclusion in the record for appeal all the hearing exhibits submitted to the Court, which were all electronically filed and are in the Court's record and are a part of this Appellate Record. (Docs. 3817 and 3818). The following exhibits are submitted and included in the Court's record:

| **HMIT Exhibits**<br>**(Dkts. 3818, 3818-1, 3818-2, 3818-3, 3818-4, 3818-5. 3818-6, 3818-7, 3818-8, and 3818-9)** |
| HMIT Exhibits 1-4, 6-80 |
| **HCM Exhibits**<br>**(Dkts. 3817, 3817-1, 3817-2, 3817-3, 3817-4, 3817-5)** |
| HCM Exhibits 2-15, 25-34, 36, 38-42, 45-46, 51, 59-60, 100 |

Dated:  October 23, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By: */s/ Sawnie. A. McEntire*
    Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served via ECF notification on October 23, 2023, on all parties receiving electronic notification.

/s/ *Sawnie A. McEntire*
Sawnie A. McEntire

Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

### HUNTER MOUNTAIN INVESTMENT TRUST'S MOTION TO
### ALTER OR AMEND ORDER, TO AMEND OR MAKE ADDITIONAL FINDINGS, FOR
### RELIEF FROM ORDER, OR, ALTERNATIVELY, FOR NEW TRIAL UNDER
### FEDERAL RULES OF BANKRUPTCY PROCEDURE 7052, 9023, AND 9024 AND
### INCORPORATED BRIEF

Hunter Mountain Investment Trust ("HMIT"), both in its individual capacity and

derivatively on behalf of the Reorganized Debtor, Highland Capital Management, L.P. ("HCM"

or "Debtor") and the Highland Claimant Trust,[1] files this Motion to Alter or Amend Order, to

---

[1] And, in all capacities and alternative derivative capacities asserted in the Emergency Motion (as defined herein) [Bankr. Dkt. Nos. 3699, 3815, and 3816], and the supplement to the Emergency Motion [Bankr. Dkt. No. 3760] and the draft Complaint attached to the same [Bankr. Dkt. No. 3760-1].

Amend or Make Additional Findings, for Relief from Order,[2] or, Alternatively, for New Trial

Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 and Incorporated Brief (the

"Motion"), and respectfully states as follows:

1.      HMIT filed an Emergency Motion for Leave to File Verified Adversary Proceeding

("Emergency Motion") [Bankr. Dkt. Nos. 3699, 3815, and 3816], which was supplemented on

April 23, 2023 [Bankr. Dkt. No. 3760]. By way of its Emergency Motion, HMIT sought leave to

file an Adversary Proceeding pursuant to the Court's gatekeeping order and the injunction and

exculpation provisions in the Fifth Amended Plan of Reorganization of Highland Capital

Management, L.P. [Bankr. Dkt. 1943], as modified (the "Plan").

2.      A hearing on the Emergency Motion was held on June 8, 2023. On August 25,

2023, the Court issued its Memorandum Opinion and Order Pursuant to Plan "Gatekeeper

Provision" and Pre-Confirmation "Gatekeeper Orders": Denying Hunter Mountain Investment

Trust's Emergency Motion for Leave to File Verified Adversary Proceeding (the "Order")

[Bankr. Dkt. Nos. 3903 and 3904]. In the Order, among other things, the Court concluded that

HMIT lacked standing to bring the proposed claims and therefore denied the Emergency Motion.

Specifically, the Court found that "HMIT's allegations of injury are, without a doubt, 'merely

conjectural or hypothetical' and are only speculative of possible future injury if its Contingent

Claimant Trust Interest ever vests." [Bankr. Dkt. No. 3903 at 72].

3.      This Motion seeks alteration of, or a new trial to re-consider, these and associated

findings and conclusions relating to standing, because post-hearing financial disclosure filings in

---

[2] The "Order" refers to this Court's Order Denying HMIT's Emergency Motion for Leave to File Adversary Proceeding. [Bankr. Dkt. Nos. 3903, 3904].

010063

the bankruptcy matter further evidence that the Court's standing determinations are incorrect and should be corrected.[3]

4.    On July 6, 2023, while the Emergency Motion was pending, the Debtor and the Highland Claimant Trust filed a Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust, showing the "general categories of assets and liabilities of the Highland Claimant Trust, subject to the accompanying notes." [Bankr. Dkt. No. 3872; a copy of which is attached as Exhibit 1 to this Motion]. And on July 21, 2023, the Debtor filed its Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 [Bankr. Dkt. No. 3888; a copy of which is attached as Exhibit 2 to this Motion] and the Highland Claimant Trust filed its Post-Confirmation Report for Highland Capital Management, LP for the Quarter Ending June 30, 2023 [Bankr. Dkt. No. 3889; a copy of which is attached as Exhibit 3 to this Motion].

5.    As explained below, these financial documents further demonstrate that HMIT's alleged injuries are not "conjectural or hypothetical," and, instead, demonstrate that its Contingent Claimant Trust Interest will vest, or put colloquially, it is "in the money."  Stated otherwise, the financial documents further establish HMIT's standing and alleged non-speculative injury.

6.    In support of this request, HMIT points the Court to the financial disclosures, which further demonstrates that HMIT is now "in the money."

---

[3] HMIT contests and disagrees with other adverse rulings in the Court's order, including but not limited to (1) the Court's determination that the "colorability" question presents "mixed questions of law and fact" and its associated decision to hold an evidentiary hearing; (2) the Court's holding an evidentiary hearing without allowing HMIT to obtain discovery and/or admit expert testimony, and (3) the Court's determination that HMIT's claims are not "colorable" for reasons other than standing. HMIT intends to raise these and other issues on appeal and HMIT reserves its rights accordingly. [*See, e.g.*, Bankr. Dkt. Nos. 3790, 3853, 3903-04].

010064

**Highland Claimant Trust**
**Summarized Consolidated Balance Sheet [1]**
**As of May 31, 2023**
**The accompanying notes are integral to understanding this balance sheet**
**(Estimated and unaudited, $ in millions)**

| | Balance per books | | adjustments (see notes) | | Adjusted balance | |
|---|---|---|---|---|---|---|
| **Assets** | | | | | | |
| Cash and equivalents | $ | 13 | $ | - | $ | 13 |
| Disputed claims reserve [2] | | 12 | | - | | 12 |
| Other restricted cash | | 12 | | - | | 12 |
| Investments [3] | | 118 | | (12) [6] | | 106 |
| Notes receivable, net [4] | | 86 | | (83) [4] | | 3 |
| Other assets | | 6 | | - | | 6 |
| **Total assets** | $ | 247 | $ | (95) | $ | 152 |
| | | | | | | |
| **Liabilities** | | | | | | |
| Secured and other debt | $ | - | $ | - | $ | - |
| Distribution payable [2] | | 12 | | - | | 12 |
| Additional indemnification reserves | | - | | 90 [5] | | 90 |
| Other liabilities | | 15 | | 13 [5] | | 28 |
| **Total liabilities** [6] | $ | 27 | $ | 103 | $ | 130 |
| | | | | | | |
| Book/adjusted book equity (see accompanying notes) [5] | | 220 | | (198) | | 22 |
| | | | | | | |
| **Total liabilities and book/adjusted book equity** | $ | 247 | $ | (95) | $ | 152 |
| | | | | | | |
| **Supplemental Info:** [7] | | | | | | |
| Sum of remaining allowed Class 8 Trust Beneficiaries, excluding interest | $ | 27 | | | | |
| Sum of remaining allowed Class 9 Trust Beneficiaries, excluding interest | | 99 | | | | |
| Sum of face amount of pending Class 8/9 potential Trust Beneficiaries, excluding interest | | 13 | | | | |
| Sub-total | $ | 139 | | | | |

[*See* Exhibit 1, Bankr. Dkt. 3872, at Ex. A].

7.      As this balance sheet demonstrates, even without pursuing the *Kirschner* Adversary, the Claimant Trust has $247 million in assets and $139 million in Class 8 and 9 claims. Moreover, the Claimant Trust's balance sheet assets do not include a fully cash-funded $35 million indemnity account that presumably may be used to pay creditors in the event it is not consumed by the indemnity-related expenses. [*See* Exhibit 1, Bankr. Dkt. 3872 at Ex. A, n. 1]. While the balance sheet includes "non-book" adjustments, they do not change HMIT's "in the money" status. One adjustment gives zero asset value to the notes payable by affiliates of Jim Dondero. [*See id.* at Ex. A]. However, $70 million of those notes are (or shortly will be) fully bonded by cash deposited in the registry of the district court. *See* N.D. Tex. Case No. 3:31-cv-00881-X, Dkt. Nos. 149, 151, and 152. Another "adjustment" creates a $90 million "additional indemnification reserve," on top of the $35 million cash indemnity reserve. [*See* Exhibit 1, Bankr.

010065

Dkt. 3872 at Ex. A]. It is unlikely, however, that these extensive indemnity reserves will ever be expended or necessary for indemnity.[4] Additionally, as the Post-Confirmation reports reveal, all of the administrative claims, secured claims, and priority claims have been paid in full. [Exhibit 2, Bankr. Dkt. No. 3888, and Exhibit 3, Bankr. Dkt. No. 3889].

8.      For all these reasons, HMIT is "in the money" under Claimant Trust's recently disclosed balance sheet and disclosures.[5] Moreover, as this Court noted in a prior unrelated matter, HMIT must only show "significant indicia of solvency" to have standing. *See In re ADPT DFW Holdings, LLC*, Bankr. N.D. Tex. Case No. 17-31432, Dkt. No. 303 at Hrg. Trans. 131:22 – 132:6.  HMIT has made the showing and, this showing is further evidenced by the Claimant Trust's own unadjusted balance sheet.

9.      HMIT, along with the other Contingent Trust Interest holders are, as discussed above, "in the money."  In other words, HMIT has both constitutional and prudential standing to bring its asserted claims.

10.     For the foregoing reasons, HMIT has standing and a cognizable injury to support the claims in its Emergency Motion. Thus, pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024, HMIT requests that the Court alter or amend its findings and judgment that HMIT lacks standing or a cognizable alleged injury. Alternatively, HMIT requests that the

---

[4] Per the Plan, any indemnity is limited to fees and expenses, as no indemnity right would lie for a judgment entered on a claim for which a plaintiff could assert or recover under the gatekeeper order and applicable law. Nor is it likely that the Claimant Trust will incur even close to the reserved amounts for fees and expenses. For the bankruptcy case as a whole, for example, the debtor's bankruptcy and non-bankruptcy professional fees and expenses totaled only approximately $40 million, pre-confirmation.  [Exhibits 2, 3; Bankr. Dkt. Nos. 3888, 3889]. Also, as is clear from the Motion and Order authorizing the creation of the Indemnity Trust Agreement, the projected indemnity reserve was contemplated to be $25 Million, so the cash amount apparently set aside for indemnification amounts to $100 Million more than contemplated. [Bankr. Dkt. Nos. 2491, 2599, attached as Exhibits 4-5].
[5] [*See* Exhibits 1 – 3, Bankr. Dkt. Nos. 3888, 3889].

010066

Court grant a new trial or hearing pursuant to Federal Rule of Bankruptcy Procedure 9023 due to

the impact of the financial documents on HMIT's standing and ability to assert the claims.

**PRAYER**

HMIT respectfully requests that the Court grant this Motion and alter or amend its findings

or Order to rule that HMIT has constitutional and prudential standing and a cognizable injury or,

alternatively, order a new trial/hearing.

Dated: September 8, 2023                           Respectfully Submitted,


                                                   PARSONS MCENTIRE MCCLEARY PLLC

                                                   By: */s/ Sawnie A. McEntire*_____
                                                        Sawnie A. McEntire
                                                        Texas State Bar No. 13590100
                                                        smcentire@pmmlaw.com
                                                        1700 Pacific Avenue, Suite 4400
                                                        Dallas, Texas 75201
                                                        Telephone: (214) 237-4300
                                                        Facsimile: (214) 237-4340

                                                        Roger L. McCleary
                                                        Texas State Bar No. 13393700
                                                        rmcleary@pmmlaw.com
                                                        One Riverway, Suite 1800
                                                        Houston, Texas 77056
                                                        Telephone: (713) 960-7315
                                                        Facsimile: (713) 960-7347

                                                        ***Attorneys for Hunter Mountain Investment
                                                        Trust***

010067

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the undersigned conferred with John Morris, counsel for Debtor and the Highland Claimant Trust, and that, while Mr. Morris' clients oppose the relief requested in this motion, Mr. Morris and his clients have no objection to the making of this motion (*i.e.*, Mr. Morris and his clients agreed that this motion is not precluded by the stay in place or other order of the Court).

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

The undersigned hereby certifies that the undersigned conferred with Mr. Brent McIlwain, counsel for Respondents Muck Holdings, LLC ("Muck"), Jessup Holdings LLC ("Jessup"), Farallon Capital Management, L.L.C. ("Farallon"), and Stonehill Capital Management LLC ("Stonehill," and collectively, with Muck, Jessup, and Farallon, the "Claims Purchasers"), and Mr. Mark T. Stancil, counsel for Respondent James P. Seery, Jr., and that, while Mr. McIlwain and Mr. Stancil's clients oppose the relief requested in this motion, Mr. McIlwain and Mr. Stancil and their respective clients have no objection to the making of this motion (*i.e.*, they also agree that this motion it is not precluded by the stay in place or other order of the Court).

*/s/ Roger L. McCleary*
Roger L. McCleary

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2023, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

010068

# Exhibit 1

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for the Reorganized Debtor and the Highland Claimant Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

## NOTICE OF FILING OF
## THE CURRENT BALANCE SHEET OF THE HIGHLAND CLAIMANT TRUST

**PLEASE TAKE NOTICE** that, pursuant to the Court's *Order (A) Continuing Hearing on*

*Motion to Stay and to Compel Mediation [Dkt. 3752] and (B) Directing Certain Actions in Advance*

*of Continued Hearing* [Docket No. 3870], Highland Capital Management, L.P., the reorganized

debtor in the above-captioned bankruptcy case, and the Highland Claimant Trust hereby file the

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 8357. The headquarters and
service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

current balance sheet attached hereto as **Exhibit A** showing the general categories of assets and

liabilities of the Highland Claimant Trust, subject to the accompanying notes.

[*Remainder of Page Intentionally Left Blank*]

010071

Dated:  July 6, 2023         **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
      jmorris@pszjlaw.com
      gdemo@pszjlaw.com
      hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Reorganized Debtor and
the Highland Claimant Trust*

010072

# EXHIBIT A

010073

**Highland Claimant Trust**
**Summarized Consolidated Balance Sheet** [1]
**As of May 31, 2023**
**The accompanying notes are integral to understanding this balance sheet**
**(Estimated and unaudited, $ in millions)**

|  | Balance per books | | adjustments (see notes) | | Adjusted balance | |
|---|---|---|---|---|---|---|
| **Assets** | | | | | | |
| Cash and equivalents | $ | 13 | $ | - | $ | 13 |
| Disputed claims reserve [2] | | 12 | | - | | 12 |
| Other restricted cash | | 12 | | - | | 12 |
| Investments [3] | | 118 | | (12) [6] | | 106 |
| Notes receivable, net [4] | | 86 | | (83) [4] | | 3 |
| Other assets | | 6 | | - | | 6 |
| **Total assets** | $ | 247 | $ | (95) | $ | 152 |
| | | | | | | |
| **Liabilities** | | | | | | |
| Secured and other debt | $ | - | $ | - | $ | - |
| Distribution payable [2] | | 12 | | - | | 12 |
| Additional indemnification reserves | | - | | 90 [5] | | 90 |
| Other liabilities | | 15 | | 13 [5] | | 28 |
| **Total liabilities** [5] | $ | 27 | $ | 103 | $ | 130 |
| | | | | | | |
| **Book/adjusted book equity (see accompanying notes)** [5] | | 220 | | (198) | | 22 |
| | | | | | | |
| **Total liabilities and book/adjusted book equity** | $ | 247 | $ | (95) | $ | 152 |

| **Supplemental Info:** [7] | | |
|---|---|---|
| Sum of remaining allowed Class 8 Trust Beneficiaries, excluding interest | $ | 27 |
| Sum of remaining allowed Class 9 Trust Beneficiaries, excluding interest | | 99 |
| Sum of face amount of pending Class 8/9 potential Trust Beneficiaries, excluding interest | | 13 |
| Sub-total | $ | 139 |

*{SEE ACCOMPANYING NOTES ON THE FOLLOWING PAGE}*

The information contained in this summarized consolidated balance sheet (the "Summary") is based on estimates, and therefore should not be relied upon, as actual results may differ materially from the estimates contained herein.

This Summary is neither an offer nor a solicitation of an offer to buy or sell securities.

Information contained herein is not indicative of, nor does it guarantee, future results. The information contained in this Summary is based on matters as they exist as of the date of preparation and not as of any future date. Valuations do not reflect performance in different economic or market cycles and there can be no assurances that valuations will be achieved. Trust Beneficiaries may experience materially different results and outcomes.

010074

**Highland Claimant Trust**
**Summarized Consolidated Balance Sheet** [1]
**As of May 31, 2023**

**Notes:**

(1) This presentation is not in accordance with US GAAP and is unaudited, but has nevertheless been prepared in good faith and with the intention of providing the reader with a comprehensive understanding of the remaining assets and liabilities of the Highland Claimant Trust, Highland Capital Management, LP, HCMLP GP LLC, and Highland Litigation Trust (the "Consolidated Entities"). These entities have each been aggregated on a stand-alone basis, with intercompany amounts eliminated. Funds and entities that may otherwise be consolidated by one or more of the Consolidated Entities under US GAAP are not fully consolidated and rather are included solely at their equity value. For example, if Highland Capital Management, LP is a 20% investor in a managed fund with assets of $100 million and liabilities of zero that would normally require consolidation under US GAAP, the presentation contained herein reflects an investment of $20 million as opposed to fully consolidating the $100 million fund and reflecting minority interest of $80 million. The value of the Highland Indemnity Trust is not included herein. As of May 31, 2023, $35 million has been funded to the Highland Indemnity Trust. Highland Indemnity Trust beneficiaries are Claimant Trust Indemnified Parties. Any unused assets remaining after satisfying indemnification obligations will be transferred to the Highland Claimant Trust or otherwise be distributed to the Claimant Trust Beneficiaries in accordance with the Indemnity Trust Agreement. For presentation purposes, it is assumed that outstanding indemnification obligations will consume the entirety of the Highland Indemnity Trust. Further, no current recovery amount has been ascribed to the "Kirschner Adversary" as all such value is considered to be contingent, nor have any liabilities been reserved for various success fees payable to professionals associated with the Kirschner Adversary or any other litigations. Such liabilities are also contingent in nature.

(2) Amounts already authorized for distribution, but reserved in the Disputed Claims Reserve related to resolution of pending disputed claims.

(3) Value reflected herein consists primarily of ownership in private funds and subsidiaries, valued using NAV as the practical expedient, public & private investments (including residual sale recoveries), valued at fair value, and SE Multifamily Holdings, LLC, valued using book equity value as of the most recent financials received. See note 6 for further information. There is substantial risk and uncertainty with respect to the timing and ultimate cash value to be received from monetizations of these investments and such value could ultimately be materially impacted by actual monetizations.

(4) Book amounts reflect principal amounts outstanding on various notes, without discount, adjustment, or estimates of future costs of collection, with two exceptions. The first exception is to the note receivable from Hunter Mountain Investment Trust for which over $90 million of principal and interest is currently due, payable, and in default. These notes are a component of the "Kirschner Adversary" which is currently stayed. These principal and interest amounts are fully reserved based on the assumption that Hunter Mountain Investment Trust has no other assets other than a contingent, unvested interest in the Highland Claimant Trust. That assumption is subject to change. The second exception relates to the note receivable from Highland Select Equity Master Fund, LP. This amount is fully reserved based on the pendency of the Ch. 7 proceeding for Highland Select Equity Master Fund, LP and the minimal remaining value of Highland Select Equity Master Fund, LP's assets, which is expected to be further consumed (at least in part) by trustee and professional fees. Aside from these exceptions, approximately $65 million of these principal amounts (further described below) are subject to ongoing litigation with various note counterparties who are contesting the validity of their obligations. These disputed amounts are contained within the "Balance per books" column herein without discount or adjustment. While the makers have asserted defenses, Highland believes they are meritless and is confident that judgments will ultimately be entered in Highland's favor. However, based on Mr. Dondero's history of failing to satisfy judgments entered against his affiliates by others (e.g., UBS, the Redeemer Committee, Joshua Terry, and Patrick Daugherty), the effect of complete non-payment of principal is reflected in the "adjustments" column, which also assumes non-payment of the currently performing $18 million note receivable from The Dugaboy Investment Trust. Ultimate recoveries from these notes could differ materially from the current principal outstanding depending on the outcome of the pending litigation and no recovery can be assured. Accrued interest is captured in the "Other assets" line item, subject to the exceptions discussed within this footnote. While there is currently a report & recommendation from the bankruptcy court for summary judgment, plus costs of collection, no costs of collection are reflected as assets on this balance sheet, so would be incremental. The estimated amount of such costs of collections are over $3 million.

Detail of note principal amounts subject to report & recommendations of the bankruptcy court, currently pending in district court (excludes accrued interest):

| Note Maker | Principal O/S | Comments |
|---|---|---|
| NexPoint Advisors, LP | $ 25 | Consists of a single note |
| NexPoint Real Estate Partners, LLC | 12 | fka HCRE Partners, LLC; five underlying notes comprise balance |
| NexPoint Asset Management, LP | 11 | fka Highland Capital Management Fund Advisors, LP; four underlying notes comprise balance |
| James Dondero | 10 | Three underlying notes comprise balance |
| Highland Capital Management Services, Inc. | 7 | Five underlying notes comprise balance |
| Sub-total | $ 65 | |

(5) The book equity amount reflects a multitude of estimates including, but not limited to the value of investments and collectability of notes receivable. For book purposes, no contingent liabilities or indemnification reserves have been recorded as liabilities that would reduce book equity, notwithstanding that it is currently expected that there will be a) a need to maintain further highly material indemnification reserves; and b) further incurrance of springing contingent liabilities if distribution milestones are achieved. The amount of further incremental indemnification reserves are currently expected to exceed $90 million, and may ultimately be greater, which will be required to be funded (at least in part) prior to any further material distributions to Trust Beneficiaries. In the absence of a global settlement that, among other things, fully and finally releases all Claimant Trust Indemnified Parties, Highland believes the additional indemnification reserves are required because, among other reasons, (a) based on the so-called "Dondero exclusion," insurance is likely to remain cost-prohibitive and/or unsatisfactory, leaving the Claimant Trust and Indemnity Trust assets as the sole sources of funding for indemnity obligations, (b) approximately twenty (20) matters are being actively litigated in at least 9 different forums; and (c) based on history, new litigation can be expected. Any unused assets remaining after satisfaction of indemnity obligations will be distributed as required by the Indemnity Trust Agreement. The amount of incremental springing contingent liabilities are expected to range from $5 million to $15 million, which are exclusive of various success fees associated with recoveries under the "Kirschner Adversary" and others. No reserves have been accrued for any current, pending, or threatened litigation brought by any Dondero-related parties. Lastly, it is expected that the trust and its subsidiaries will operate at an operating loss prospectively. The corresponding information in the "adjustments" column above is an estimate of the effects of these incremental indemnification reserves and contingent liabilities, but does not assume any expected future operating cash burn, which is expected to be significant.

6) The value of SE Multifamily Holdings LLC maintained on this balance sheet is $15.7 million, which is a component of the "Investments" line item and is based on a several years stale book-basis balance sheet. Notwithstanding Dondero-entities' previous disclosures of this interest at values of $20 million and $12 million, Highland also received interest from Dondero to acquire the interest for $3.8 million, among other assets. The purpose of this adjustment is to assume that the holding could be monetized at the lower $3.8 million level, which would result in a $11.9 million decrease to Highland's book equity if it were hypothetically transacted at that level. Highland has initiated proceedings in Delaware to receive books and records relating to SE Multifamily Holdings LLC, for which it has the contractual right and has been seeking for approximately a year, but for which Dondero-controlled entities have not provided to date.

7) Amounts described herein represent the face amounts of outstanding allowed and pending claims. The pending claim amounts do not include amounts that are the subject of various appeals or that are unliquidated. The allowed and pending claims (along with accrued interest) could ultimately be satisfied in part or in full using 1) the assets of the disputed claims reserve, 2) the residual amount of cash in the indemnity trust after satisfying all indemnification obligations, and 3) the residual amount of cash remaining after monetizing all other non-cash assets and paying liabilities and future expenses.

The information contained in this summarized consolidated balance sheet (the "Summary") is based on estimates, and therefore should not be relied upon, as actual results may differ materially from the estimates contained herein.

This Summary is neither an offer nor a solicitation of an offer to buy or sell securities.

Information contained herein is not indicative of, nor does it guarantee, future results. The information contained in this Summary is based on matters as they exist as of the date of preparation and not as of any future date. Valuations do not reflect performance in different economic or market cycles and there can be no assurances that valuations will be achieved. Trust Beneficiaries may experience materially different results and outcomes.

010075

# Exhibit 2

# UNITED STATES BANKRUPTCY COURT

Northern DISTRICT OF Texas

Case number 19-34054 sgj11

In re: Highland Capital Management, LP

§
§
§
§

Debtor(s)

Case No. 19-34054

☐ Jointly Administered

# Post-confirmation Report

Chapter 11

Quarter Ending Date: 06/30/2023

Petition Date: 10/16/2019

Plan Confirmed Date: 02/22/2021

Plan Effective Date: 08/11/2021

This Post-confirmation Report relates to: ⦿ Reorganized Debtor

○ Other Authorized Party or Entity: _____

Name of Authorized Party or Entity

/s/ Zachery Z. Annable
Signature of Responsible Party

07/21/2023
Date

Zachery Z. Annable, Hayward PLLC
Printed Name of Responsible Party

10501 N. Central Expressway, Suite 106
Dallas TX 75231
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-PCR (12/01/2021)                    1

010077

Debtor's Name Highland Capital Management, LP                                                    Case No.   19-34054

## Part 1: Summary of Post-confirmation Transfers

|  | Current Quarter | Total Since Effective Date |
|---|---|---|
| a. Total cash disbursements | $6,894,640 | $122,318,601 |
| b. Non-cash securities transferred | $0 | $0 |
| c. Other non-cash property transferred | $0 | $5,194,652 |
| d. Total transferred (a+b+c) | $6,894,640 | $127,513,253 |

## Part 2: Preconfirmation Professional Fees and Expenses

| | | | Approved Current Quarter | Approved Cumulative | Paid Current Quarter | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Professional fees & expenses (bankruptcy) incurred by or on behalf of the debtor | *Aggregate Total* | $0 | $33,005,136 | $0 | $33,005,136 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Pachulski Stang Ziehl & Jones | Lead Counsel | $0 | $24,312,860 | $0 | $24,312,860 |
| ii | Development Specialists, Inc. | Financial Professional | $0 | $5,765,448 | $0 | $5,765,448 |
| iii | Kurtzman Carson Consultants | Other | $0 | $2,054,716 | $0 | $2,054,716 |
| iv | Hayward & Associates PLLC | Local Counsel | $0 | $872,112 | $0 | $872,112 |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |
| xv | | | | | | |
| xvi | | | | | | |
| xvii | | | | | | |
| xviii | | | | | | |
| xix | | | | | | |
| xx | | | | | | |
| xxi | | | | | | |
| xxii | | | | | | |
| xxiii | | | | | | |
| xxiv | | | | | | |
| xxv | | | | | | |
| xxvi | | | | | | |
| xxvii | | | | | | |
| xxviii | | | | | | |
| xxix | | | | | | |

010078

Debtor's Name Highland Capital Management, LP                                      Case No.  19-34054

| | | | | | |
|---|---|---|---|---|---|
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |

010079

Debtor's Name Highland Capital Management, LP                      Case No.  19-34054

| | | | | | |
|---|---|---|---|---|---|
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxviii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |
| xcix | | | | | |
| c | | | | | |
| ci | | | | | |

| | | | Approved Current Quarter | Approved Cumulative | Paid Current Quarter | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Professional fees & expenses (nonbankruptcy) incurred by or on behalf of the debtor *Aggregate Total* | | $0 | $7,604,472 | $0 | $7,604,472 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Hunton Andrews Kurth LLP | Other | $0 | $1,149,807 | $0 | $1,149,807 |
| ii | Foley Gardere, Foley & Lardner | Other | $0 | $629,088 | $0 | $629,088 |
| iii | Deloitte | Financial Professional | $0 | $553,413 | $0 | $553,413 |
| iv | Mercer (US) Inc. | Other | $0 | $204,767 | $0 | $204,767 |
| v | Teneo Capital, LLC | Financial Professional | $0 | $1,364,823 | $0 | $1,364,823 |
| vi | Wilmer Cutler Pickering Hale | Other | $0 | $2,650,937 | $0 | $2,650,937 |

010080

Debtor's Name Highland Capital Management, LP                    Case No. 19-34054

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| vii | Carey Olsen | Other | | $0 | $280,264 | $0 | $280,264 |
| viii | ASW Law | Other | | $0 | $4,976 | $0 | $4,976 |
| ix | Houlihan Lokey Financial Advi | Other | | $0 | $766,397 | $0 | $766,397 |
| x | | | | | | | |
| xi | | | | | | | |
| xii | | | | | | | |
| xiii | | | | | | | |
| xiv | | | | | | | |
| xv | | | | | | | |
| xvi | | | | | | | |
| xvii | | | | | | | |
| xviii | | | | | | | |
| xix | | | | | | | |
| xx | | | | | | | |
| xxi | | | | | | | |
| xxii | | | | | | | |
| xxiii | | | | | | | |
| xxiv | | | | | | | |
| xxv | | | | | | | |
| xxvi | | | | | | | |
| xxvii | | | | | | | |
| xxviii | | | | | | | |
| xxix | | | | | | | |
| xxx | | | | | | | |
| xxxi | | | | | | | |
| xxxii | | | | | | | |
| xxxiii | | | | | | | |
| xxxiv | | | | | | | |
| xxxv | | | | | | | |
| xxxvi | | | | | | | |
| xxxvii | | | | | | | |
| xxxvii | | | | | | | |
| xxxix | | | | | | | |
| xl | | | | | | | |
| xli | | | | | | | |
| xlii | | | | | | | |
| xliii | | | | | | | |
| xliv | | | | | | | |
| xlv | | | | | | | |
| xlvi | | | | | | | |
| xlvii | | | | | | | |
| xlviii | | | | | | | |

UST Form 11-PCR (12/01/2021)                    5

010081

Debtor's Name Highland Capital Management, LP                                                Case No.  19-34054

| | | | | | |
|---|---|---|---|---|---|
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxviii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |

010082

Debtor's Name Highland Capital Management, LP                    Case No.  19-34054

| | | | | | | |
|---|---|---|---|---|---|---|
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |
| xcix | | | | | | |
| c | | | | | | |
| ci | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | $0 | $60,171,929 | $0 | $60,171,929 |

## Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan

| | Total Anticipated Payments Under Plan | Paid Current Quarter | Paid Cumulative | Allowed Claims | % Paid of Allowed Claims |
|---|---|---|---|---|---|
| a. Administrative claims | $0 | $0 | $15,750 | $15,750 | 100% |
| b. Secured claims | $5,843,261 | $0 | $5,274,477 | $5,274,477 | 100% |
| c. Priority claims | $16,498 | $0 | $1,213,832 | $1,213,832 | 100% |
| d. General unsecured claims | $205,144,544 | $0 | $270,205,592 | $397,485,568 | 68% |
| e. Equity interests | $0 | $0 | $0 | | |

## Part 4: Questionnaire

a. Is this a final report?                                        Yes ○   No ●

    If yes, give date Final Decree was entered: _____

    If no, give date when the application for Final Decree is anticipated: _____

b. Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930?     Yes ●   No ○

010083

Debtor's Name Highland Capital Management, LP                                          Case No.  19-34054

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information and provision of this information is mandatory.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6) and to otherwise evaluate whether a reorganized chapter 11 debtor is performing as anticipated under a confirmed plan. Disclosure of this information may be to a bankruptcy trustee when the information is needed to perform the trustee's duties, or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes.  For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/ rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case, or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Post-confirmation Report and its attachments, if any, are true and correct and that I have been authorized to sign this report.**

/s/ James Seery                                              James Seery
Signature of Responsible Party                               Printed Name of Responsible Party

CEO                                                          07/21/2023
Title                                                        Date

010084

Debtor's Name Highland Capital Management, LP                                  Case No.   19-34054


Page 1

Other Page 1

Page 2 Minus Tables

Bankruptcy Table 1-50

010085

Debtor's Name Highland Capital Management, LP                    Case No.   19-34054



Bankruptcy Table 51-100

Non-Bankruptcy Table 1-50

Non-Bankruptcy Table 51-100

Part 3, Part 4, Last Page

010086

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | ) ) ) ) ) ) ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | | |

## GLOBAL NOTES TO POST CONFIRMATION REPORT

The Reorganized Debtor has filed the attached post-confirmation report (the "PCR") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"), on behalf of debtor Highland Capital Management, L.P., Case No. 19-34054 (SGJ) (the "Bankruptcy Case"). The Reorganized Debtor prepared the PCR with the assistance of the Reorganized Debtor's employees, advisors, and professionals. The PCR was prepared solely for the purpose of complying with the post-confirmation quarterly reporting requirements established by the United States Trustee Program (*see* https://www.justice.gov/ust/chapter-11-operating-reports). The PCR should not be relied upon by any persons for any information in connection with current or future financial conditions or events relating to the Reorganized Debtor or its estate.

The financial information contained in the PCR is preliminary, unaudited, limited in scope, and is not prepared in accordance with accounting principles generally accepted in the United States of America nor in accordance with other applicable non-bankruptcy law. In preparing the PCR, the Reorganized Debtor relied on financial data from the books and records available to it at the time of such preparation, as well as certain filings on the docket in the Bankruptcy Case. Although the Reorganized Debtor made commercially reasonable efforts to ensure the accuracy and completeness of the PCR, inadvertent errors or omissions may exist. The Reorganized Debtor reserves the right to amend and supplement the PCR as may be necessary or appropriate.

**Part 2: Preconfirmation Professional Fees and Expenses**

In Section A of the PCR, the Reorganized Debtor listed the bankruptcy related professionals employed in connection with the Bankruptcy Case.

In Section B of the PCR, the Reorganized Debtor listed non-bankruptcy professionals, those that would have been retained absent the Bankruptcy Case, and the ordinary course professionals ("OCP"). Hunton Andrews Kurth LLP ("Hunton") and Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer Hale") were originally ordinary course professionals but were later employed

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

professionals. The amounts listed for Hunton and Wilmer Hale include the OCP payments and employed professional payments.

In Section C of the PCR, the Reorganized Debtor totals all payments included in Sections A and B, along with payments made to professional employed by the official committee of unsecured creditors (the "Committee").

The approved current quarter, approved cumulative, and paid cumulative will have the same amount listed due to approval and payment of final fee applications.

**Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan**

The payments made to holders of General Unsecured Claims were disbursed from the Claimant Trust, but for presentation purposes, have been included in Part 3 of the post-confirmation report for the Reorganized Debtor.

The presentation contained in this PCR does not reflect the material and necessary reserves that will be taken in accordance with Reorganized Debtor's governing documents and the Plan.

The Debtor reserves all right to object to any claim in accordance with the terms of the Plan.

# Exhibit 3

010089

## UNITED STATES BANKRUPTCY COURT

Northern DISTRICT OF Texas

Case number 19-34054 sgj11

| | |
|---|---|
| In re: Highland Capital Management, LP | Case No. 19-34054 |
| § § § § | |
| Debtor(s) | ☐ Jointly Administered |

# Post-confirmation Report

Chapter 11

Quarter Ending Date: 06/30/2023

Petition Date: 10/16/2019

Plan Confirmed Date: 02/22/2021

Plan Effective Date: 08/11/2021

This Post-confirmation Report relates to: ◯ Reorganized Debtor

◉ Other Authorized Party or Entity: Highland Claimant Trust

Name of Authorized Party or Entity

/s/ Zachery Z. Annable

Signature of Responsible Party

07/21/2023

Date

Zachery Z. Annable, Hayward PLLC

Printed Name of Responsible Party

10501 N. Central Expressway, Suite 106
Dallas TX 75231

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

010090

Debtor's Name Highland Capital Management, LP | Case No. 19-34054

| Part 1: Summary of Post-confirmation Transfers | | |
|---|---|---|

| | Current Quarter | Total Since Effective Date |
|---|---|---|
| a. Total cash disbursements | $6,969,608 | $325,793,422 |
| b. Non-cash securities transferred | $0 | $0 |
| c. Other non-cash property transferred | $0 | $0 |
| d. Total transferred (a+b+c) | $6,969,608 | $325,793,422 |

| Part 2: Preconfirmation Professional Fees and Expenses | | | | | | |
|---|---|---|---|---|---|---|

| | | | | Approved Current Quarter | Approved Cumulative | Paid Current Quarter | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| a. | Professional fees & expenses (bankruptcy) incurred by or on behalf of the debtor | | *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | Firm Name | Role | | | | | |
| i | | | | | | | |
| ii | | | | | | | |
| iii | | | | | | | |
| iv | | | | | | | |
| v | | | | | | | |
| vi | | | | | | | |
| vii | | | | | | | |
| viii | | | | | | | |
| ix | | | | | | | |
| x | | | | | | | |
| xi | | | | | | | |
| xii | | | | | | | |
| xiii | | | | | | | |
| xiv | | | | | | | |
| xv | | | | | | | |
| xvi | | | | | | | |
| xvii | | | | | | | |
| xviii | | | | | | | |
| xix | | | | | | | |
| xx | | | | | | | |
| xxi | | | | | | | |
| xxii | | | | | | | |
| xxiii | | | | | | | |
| xxiv | | | | | | | |
| xxv | | | | | | | |
| xxvi | | | | | | | |
| xxvii | | | | | | | |
| xxviii | | | | | | | |
| xxix | | | | | | | |

UST Form 11-PCR (12/01/2021)

2

010091

Debtor's Name Highland Capital Management, LP                                    Case No.  19-34054

| | | | | | |
|---|---|---|---|---|---|
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |

UST Form 11-PCR (12/01/2021)                    3

010092

Debtor's Name Highland Capital Management, LP                                    Case No.  19-34054

| | | | | | |
|---|---|---|---|---|---|
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxviii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |
| xcix | | | | | |
| c | | | | | |
| ci | | | | | |

| | | | Approved Current Quarter | Approved Cumulative | Paid Current Quarter | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Professional fees & expenses (nonbankruptcy) incurred by or on behalf of the debtor    *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |
| | iii | | | | | |
| | iv | | | | | |
| | v | | | | | |
| | vi | | | | | |

010093

Debtor's Name Highland Capital Management, LP                                        Case No.  19-34054

| | | | | | | |
|---|---|---|---|---|---|---|
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |
| xv | | | | | | |
| xvi | | | | | | |
| xvii | | | | | | |
| xviii | | | | | | |
| xix | | | | | | |
| xx | | | | | | |
| xxi | | | | | | |
| xxii | | | | | | |
| xxiii | | | | | | |
| xxiv | | | | | | |
| xxv | | | | | | |
| xxvi | | | | | | |
| xxvii | | | | | | |
| xxviii | | | | | | |
| xxix | | | | | | |
| xxx | | | | | | |
| xxxi | | | | | | |
| xxxii | | | | | | |
| xxxiii | | | | | | |
| xxxiv | | | | | | |
| xxxv | | | | | | |
| xxxvi | | | | | | |
| xxxvii | | | | | | |
| xxxvii | | | | | | |
| xxxix | | | | | | |
| xl | | | | | | |
| xli | | | | | | |
| xlii | | | | | | |
| xliii | | | | | | |
| xliv | | | | | | |
| xlv | | | | | | |
| xlvi | | | | | | |
| xlvii | | | | | | |
| xlviii | | | | | | |

010094

Debtor's Name Highland Capital Management, LP                                    Case No. 19-34054

| | | | | | |
|---|---|---|---|---|---|
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxviii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |

010095

Debtor's Name Highland Capital Management, LP                                    Case No.  19-34054

| | | | | | | |
|---|---|---|---|---|---|---|
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |
| xcix | | | | | | |
| c | | | | | | |
| ci | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan

| | Total Anticipated Payments Under Plan | Paid Current Quarter | Paid Cumulative | Allowed Claims | % Paid of Allowed Claims |
|---|---|---|---|---|---|
| a. Administrative claims | $0 | $0 | $15,750 | $15,750 | 100% |
| b. Secured claims | $5,843,261 | $0 | $5,274,477 | $5,274,477 | 100% |
| c. Priority claims | $16,498 | $0 | $1,213,832 | $1,213,832 | 100% |
| d. General unsecured claims | $205,144,544 | $0 | $270,205,592 | $397,485,568 | 68% |
| e. Equity interests | $0 | $0 | $0 | | |

## Part 4: Questionnaire

a. Is this a final report?                                                          Yes ◯   No ◉

    If yes, give date Final Decree was entered: _____

    If no, give date when the application for Final Decree is anticipated: _____

b. Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930?      Yes ◉   No ◯

010096

| Debtor's Name Highland Capital Management, LP | Case No. 19-34054 |
|---|---|

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information and provision of this information is mandatory.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6) and to otherwise evaluate whether a reorganized chapter 11 debtor is performing as anticipated under a confirmed plan.  Disclosure of this information may be to a bankruptcy trustee when the information is needed to perform the trustee's duties, or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes.  For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/ rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case, or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Post-confirmation Report and its attachments, if any, are true and correct and that I have been authorized to sign this report.</u>**

/s/ James Seery

---
Signature of Responsible Party

James Seery

---
Printed Name of Responsible Party

Claimant Trustee

---
Title

07/21/2023

---
Date

010097

Debtor's Name Highland Capital Management, LP                    Case No.  19-34054



Page 1

Other Page 1

Page 2 Minus Tables

Bankruptcy Table 1-50

010098

Debtor's Name Highland Capital Management, LP                                    Case No.   19-34054



Bankruptcy Table 51-100

Non-Bankruptcy Table 1-50

Non-Bankruptcy Table 51-100

Part 3, Part 4, Last Page

010099

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Reorganized Debtor. | ) |
| | ) |

## GLOBAL NOTES TO POST CONFIRMATION REPORT

The Highland Claimant Trust has filed the attached post-confirmation report (the "PCR") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"), with respect to the case of Reorganized Debtor Highland Capital Management, L.P., Case No. 19-34054 (SGJ) (the "Bankruptcy Case"). The Highland Claimant Trust prepared the PCR with the assistance of the Reorganized Debtor's employees, advisors, and professionals. The PCR was prepared solely for the purpose of complying with the post-confirmation quarterly reporting requirements established by the United States Trustee Program (*see* https://www.justice.gov/ust/chapter-11-operating-reports). The PCR should not be relied upon by any persons for any information in connection with current or future financial conditions or events relating to the Highland Claimant Trust, the Reorganized Debtor or its estate.

The financial information contained in the PCR is preliminary, unaudited, limited in scope, and is not prepared in accordance with accounting principles generally accepted in the United States of America nor in accordance with other applicable non-bankruptcy law. In preparing the PCR, the Highland Claimant Trust relied on financial data from the books and records available to it at the time of such preparation, as well as certain filings on the docket in the Bankruptcy Case. Although the Highland Claimant Trust made commercially reasonable efforts to ensure the accuracy and completeness of the PCR, inadvertent errors or omissions may exist. The Highland Claimant Trust reserves the right to amend and supplement the PCR as may be necessary or appropriate.

**Part 2: Preconfirmation Professional Fees and Expenses**

The Highland Claimant Trust did not make any payment of professional fees prior to Confirmation of the Plan.

---

[1]  The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan**

For presentation purposes, the chart showing claims anticipated under the plan, paid claims and allowed claims are reflected in both the Reorganized Debtor and Claimant Trust post-confirmation report under Part 3: Recoveries of the Holders of Claims and Interests under the Confirmed Plan.

The presentation contained in this PCR does not reflect the material and necessary reserves that will be taken in accordance with the Claimant Trust's governing documents and the Plan.

# Exhibit 4

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054 |
| | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE (A) CREATION OF AN INDEMNITY SUBTRUST AND (B) ENTRY INTO AN INDEMNITY TRUST AGREEMENT AND (II) GRANTING RELATED RELIEF

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

US-DOCS\124804147.1

010103

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby moves (the "Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the (a) creation of an indemnity subtrust (the "Indemnity Subtrust"), and (b) entry into an indemnity trust agreement (the "Trust Agreement"), and (ii) granting related relief.

## INTRODUCTION[2]

1.      Pursuant to this Motion, the Debtor requests authority to create the Indemnity Subtrust and enter into a Trust Agreement that is substantially consistent with terms set forth in the Term Sheet attached to this Motion as **Exhibit B** (collectively the "Indemnity Trust Documents"). As discussed below, the Indemnity Trust Documents will secure the indemnity obligations of the Claimant Trust, Litigation Trust and the Reorganized Debtor pursuant to the terms of the Claimant Trust Agreement, the Litigation Trust Agreement, the Reorganized Limited Partnership Agreement and the Plan (collectively the "Indemnity Obligations").

2.      The Debtor intends for the Indemnity Subtrust to be in lieu of directors' and officers' insurance ("D&O Insurance"), which the Debtor contemplated obtaining as a condition to the Effective Date for the benefit of the beneficiaries of the Indemnity Obligations. The Debtor and the Committee thoroughly explored the market for obtaining D&O Insurance. Based on such due diligence, the Debtor, in consultation with the Committee, determined that based, upon the prohibitive cost of D&O Insurance, securing the Indemnity Obligations through an Indemnity Subtrust is preferable and in the best interests of the Debtor's estate and its creditors. Moreover, as discussed below, establishing the Indemnity Subtrust will facilitate the Effective

---

[2] Capitalized terms used but not defined in this introduction have the meanings given to them below.

US-DOCS\124804147.1

010104

Date of the Plan which the Debtor anticipates will occur on or about August 1, 2021, if the Court approves the Motion.

## JURISDICTION

3.      The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      The bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code.

## STATEMENT OF FACTS

A.      **The Debtor's Bankruptcy Case**

5.      On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Bankruptcy Court").

6.      On October 29, 2019, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. Trustee in the Delaware Bankruptcy Court.   On December 4, 2019, the Delaware Bankruptcy Court entered an order transferring venue of the Debtor's chapter 11 case to this Court [Docket No. 186].[3]

7.      The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

---

[3] All docket numbers refer to the docket maintained by this Court.

US-DOCS\124804147.1

B.     **The Court's Confirmation of the Plan and Denial of Motions for a Stay Pending
       Appeal.**

8.      On February 22, 2021, after a two-day hearing, the Bankruptcy Court entered the

*Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting

Related Relief* [Docket No. 1943] (the "Confirmation Order") with respect to the Debtor's *Fifth

Amended Plan of Reorganization of Highland Capital* Management*, L.P.*, as modified (the

"Plan").[4]

9.      James Dondero and certain of his related entities (collectively, the "Dondero

Entities") appealed the Confirmation Order [Docket Nos. 1957, 1966, 1970, 1972] and filed

motions in this Court seeking a stay of the Confirmation Order pending appeal [Docket Nos.

1955, 1967, 1971, 1973] (the "Stay Motions").  This Court denied the Stay Motions [Docket

Nos. 2084, 2095].

10.     Certain of the Dondero Entities subsequently filed motions for stay pending

appeal in the District Court for the Northern District of Texas, Dallas Division (the "District

Court"), in April 2021 (the "District Court Stay Motions").

11.     In May 2021, following the grant of an expedited appeal by the Fifth Circuit

Court of Appeals, certain of the Dondero Entities filed motions for stay pending appeal in the

Fifth Circuit in May 2021 (the "Appellate Stay Briefs") despite not having a ruling on the

District Court Stay Motions.  On June 21, 2021, the Fifth Circuit denied the Appellate Stay

Briefs.

12.     On June 23, 2021, the District Court denied the District Court Stay Motions.

---

[4] Unless otherwise noted, capitalized terms used herein have the meanings given to them in the Plan.  The confirmed
Plan included certain amendments filed on February 1, 2021.  *See Debtor's Notice of Filing of Plan Supplement to
the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Ex. B [Docket No.
1875].

US-DOCS\124804147.1

010106

C.       **Conditions to the Effective Date of the Plan.**

13.       Article VIII of the Plan contains the conditions to the Effective Date of the Plan. The two conditions that have delayed the occurrence of the Effective Date are (i) the Confirmation Order becoming a Final Order and (ii) the Debtor obtaining D&O Insurance acceptable to the Debtor, the Committee, the Claimant Trust Oversight Committee, and the Litigation Trustee.

14.       In addition, the Debtor determined, in the weeks following confirmation, that it would require exit financing in order to maintain sufficient liquidity for post-Effective Date operations and to comply with its obligations under the Plan.  The facts and circumstances leading to the Debtor's decision to obtain exit financing are set forth in the *Motion for Entry of an Order (i) Authorizing the Debtor to (a) Enter into Exit Financing Agreement in Aid of Confirmed Chapter 11 Plan and (b) Incur and Pay Related Fees and Expenses, and (ii) Granting Related Relief* [Docket No. 2229] (the "Exit Financing Motion").  The Court approved the Exit Financing at a hearing on June 25, 2021.

15.       As discussed at the confirmation hearing, the Debtor encountered difficulty in obtaining D&O Insurance because of the litigiousness of the case and the threat that litigation would continue well beyond confirmation of the Plan.  Nevertheless, after confirmation, the Debtor, working closely with the Committee, continued to pursue D&O Insurance.  Ultimately, however, the Debtor, the Committee, and the Independent Board, including Mr. Seery, who will be the Claimant Trustee and manage the Reorganized Debtor, determined that the insurance that was available was both insufficient and too costly in light of the coverage being provided.

16.       The Debtor, working closely with the Committee, subsequently investigated alternatives to traditional D&O Insurance that could provide the beneficiaries of the Indemnity

010107

Obligations protection after the Effective Date. The most attractive alternative was to create the Indemnity Subtrust, the approval of which is being sought through this Motion. If the Court approves this Motion, the Debtor will waive the condition to the Effective Date requiring the Confirmation Order to become a Final Order and thereby paving the way for the Plan to become effective.

D. **Post-Effective Date Governance and Management**

17. The Plan provides for the creation of the Claimant Trust, the Litigation Trust, and the Reorganized Debtor on the Effective Date to facilitate the monetization of the Debtor's assets and the pursuit of Estate Claims for the benefit of the Debtor's creditors and stakeholders. As currently contemplated, the Claimant Trust will be overseen by James P. Seery, Jr., as the Claimant Trustee, and an Oversight Board, made up of the Debtor's largest creditors. The Claimant Trust is governed by the terms of the Claimant Trust Agreement.[5] The Litigation Sub-Trust is governed by the terms of the Litigation Trust Agreement.[6] And the Reorganized Debtor will be governed by the Reorganized Limited Partnership Agreement.[7] It is anticipated that Mr. Seery will be the Claimant Trustee and the chief executive officer of the Reorganized Debtor.

E. **Post-Effective Date Indemnification**

18. The terms of the Claimant Trust Agreement, the Litigation Trust Agreement, and the Reorganized Limited Partnership Agreement each provide for a broad indemnification of the parties tasked with managing the implementation of the Plan (collectively, the "Indemnified

---

[5] The final Claimant Trust Agreement was filed as Exhibit R to *Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications)* [Docket No. 1811] on January 22, 2021 (the "January Supplement").

[6] The final Litigation Trust Agreement was filed as Exhibit T to the January Supplement.

[7] The final Reorganized Limited Partnership Agreement was filed as Exhibit Z to the January Supplement.

010108

Parties").[8] The costs of indemnifying the Indemnified Parties (the "Indemnification Costs") were provided for in the Plan and the Plan Documents. The Indemnification Costs would be treated as expenses and be paid before, and be senior to, distributions to the Debtor's pre-petition creditors, *i.e.*, the Claimant Trust Beneficiaries. The relevant documents also authorized the reservation of assets sufficient to fund the Indemnification Costs.

## A.     The Indemnity Subtrust and Trust Agreement

19.    As discussed above, the Debtor has determined that it is in the best interests of the Debtor's estate and its stakeholders to create the Indemnity Subtrust pursuant to the terms of the Trust Agreement. The Indemnity Subtrust will be administered by a third-party corporate trustee. The Indemnity Trust will, as discussed below, be funded on the Effective Date with $2.5 million in cash and a note (the "Indemnification Note") in the principal amount of $22.5 million with such amounts to be held in reserve and used solely to pay Indemnification Costs that are not otherwise paid or payable by the Claimant Trust, Litigation Trust, or Reorganized Debtor, as applicable.

20.    As contemplated by the Plan and consistent with the Claimant Trust Agreement, the Litigation Trust Agreement, and the Reorganized Limited Partnership Agreement, the Indemnification Costs have priority to other claims. The Indemnity Subtrust is the vehicle which ensures that adequate provision for such Indemnification Costs is made, notwithstanding the

---

[8] The Indemnified Parties of (a) the Claimant Trust are (i) the Claimant Trustee (including each former Claimant Trustee), (ii) Delaware Trustee, (iii) the Oversight Board, and (iv) all past and present Members of the Oversight Board, and the employees, agents, and professionals of each of the foregoing; (b) the Litigation Trust are (i) the Litigation Trustee (including each former Litigation Trustee), (ii) the Oversight Board, and (iii) all past and present Members of the Oversight Board, and the employees, agents, and professionals of each of the foregoing; and (c) the Reorganized Debtor are (i) New GP LLC (as the Reorganized Debtor's general partner) and each member, partner, director, officer, and agent thereof, (ii) each person who is or becomes an officer of the Reorganized Debtor, and (iii) each person who is or becomes an employee or agent of the Reorganized Debtor if New GP LLC determines in its sole discretion that such employee or agent should be indemnified. *See* Claimant Trust Agreement, § 8.2; Litigation Trust Agreement, § 8.2.; Reorganized Limited Partnership Agreement, §§ 10(b)-(c).

US-DOCS\124804147.1

timing pursuant to which assets are monetized and distributions would otherwise be made to such beneficiaries of the Claimant Trust.

21.     Certain material terms of the Trust Agreement and the Indemnity Subtrust are as follows:[9]

| | |
|---|---|
| **Beneficiaries:** | The Indemnified Parties |
| **Indemnity Trustee** | A corporate trustee with appropriate trust powers under applicable state and/or federal law. |
| **Indemnity Trust Administrator** | Mr. Seery, initially in his capacity as the Claimant Trustee or in his individual capacity if no longer serving as the Claimant Trustee. |
| **Indemnity Trust Corpus** | At the inception of the Indemnity Trust, the trust corpus shall consist of the following, to be irrevocably contributed by the Grantor: |

1.  Cash of $2.5 million; and
2.  the Indemnification Funding Note, in the principal amount of $22.5 million.

| | |
|---|---|
| | The foregoing contributions are intended to create and maintain a balance of liquid assets in the Indemnity Trust Account of not less than $25 million (the "Indemnity Trust Account Minimum Balance"). |
| **Indemnification Funding Note** | The Indemnification Funding Note will represent and document the Claimant Trustee's obligation to make additional cash deposits into the Indemnity Trust Account to satisfy the obligations of the Claimant Trust, the Litigation Sub-Trust, and the Reorganized Debtor, each of which will be jointly and severally liable under the Indemnification Funding Note. |
| | After the initial funding of principal under the Indemnification Funding Note, the principal balance thereof will at all times equal the amount representing the difference between (i) the Indemnity Trust Account Minimum Balance and (ii) the balance of liquid assets held in the Indemnity Trust Account, as reported on the most recent quarterly statement issued by the Indemnity Trustee. |
| **Withdrawal of Trust Assets** | Consistent with the Indemnity Trust's purpose as a collateral mechanism, withdrawals from the Indemnity Trust Account are contemplated only following a tender of for indemnity pursuant to Section 8.2 of the Claimant Trust Agreement and the failure of such Beneficiary to receive payment in full of such indemnity claim from the Claimant Trust within [30] days. |
| **Duration of the Indemnity Trust** | The Indemnity Trust will exist and remain in full force and effect until the *earlier of* (i) the expiry of all indemnification rights under Section 8.2 of the Claimant Trust Agreement, due to expiration of all applicable statutes of limitations (as determined by the Indemnity Trust Administrator, in his sole and absolute discretion), and (ii) the mutual agreement to terminate the Indemnity Trust by the Grantor and the Indemnity Trust Administrator. |
| **Liquidation and Final Distribution of Trust Assets** | Upon dissolution and liquidation of the Indemnity Trust, any assets remaining in the Indemnity Trust Account will be transferred to the Claimant Trust; provided, however, if the Claimant Trust is no longer in existence, then such distribution of the Indemnity Trust assets will be made according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust |

---

[9]  The following is by way of summary only.  Parties are encouraged to read the entirety of the Term Sheet.  In the event that the description set forth herein is in conflict with the Term Sheet, the Term Sheet will control.  All terms are subject to change.

US-DOCS\124804147.1

010110

<table>
<tr><td><strong>Governance of the Indemnity Trust</strong></td><td>Agreement (or the successor to such numbered section) on the effective date of the termination of the Claimant Trust.</td></tr>
</table>

**Governance of the Indemnity Trust**

Consistent with the Indemnity Trust's purpose as a collateral mechanism, it is not contemplated that the Indemnity Trust will need any comprehensive governance system. For any action contemplated or required in connection with the operation of the Indemnity Trust, and for any guidance or instruction to be provided to the Indemnity Trustee, such function, rights and responsibility shall be vested in the Indemnity Trust Administrator, and the Indemnity Trustee will take written directions from the Indemnity Trust Administrator, in such form specified in the Indemnity Trust Agreement and otherwise satisfactory to the Indemnity Trustee.

Beneficiaries will not be involved in or have any rights with respect to the administration of the Indemnity Trust or have any right to direct the actions of the Indemnity Trustee with respect to the Indemnity Trust or the assets held in the Indemnity Trust Account, other than the Indemnity Trust Administrator in such capacity."

22.     The Debtor believes that it has the support of the Committee with respect to the implementation of the Indemnity Subtrust.  However, the Debtor and the Committee are still discussing the terms of the Trust Agreement and the foregoing terms may change.  If the terms change, the Debtor will file an updated Term Sheet as necessary.

**B.      Entry into the Trust Agreement Is an Exercise of the Debtor's Sound Business Judgment and Should Be Approved**

23.     The Bankruptcy Code authorizes a debtor, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).  It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business if there is a good business reason for doing so.  *See, e.g., Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 435 (5th Cir. 2016) (sale of debtors' assets under section 363(b) of the Bankruptcy Code must "'be supported by an articulated business justification, good business judgment, or sound business reasons.'" (quoting *Cadle Co. v. Mims (In re Moore),* 608 F.3d 253, 263 (5th Cir. 2010)); *Petfinders LLC v. Sherman (In re Ondova Ltd)*, 620 F. App'x 290, 291 (5th Cir. 2015) (sale of debtors' assets under section 363(b) of the Bankruptcy Code is exercise of the trustee's sound business judgment"); *In re ASARCO, LLC,* 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010) (outside of the ordinary course of

010111

business, "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property") (quoting *In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986)), *aff'd,* 650 F.3d 593 (5th Cir. 2011).

24.     To determine whether the business-judgment test is satisfied, courts require "a showing that the proposed course of action will be advantageous to the estate." *In re Pisces Energy*, *LLC*, 2009 Bankr. LEXIS 4709, at *18 (Bankr. S.D. Tex. Dec. 21, 2009).  In the absence of a showing of bad faith or an abuse of business discretion, a debtor's business judgment will not be altered.  *See, e.g.*, *NLRB v. Bildisco & Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984); *Lubrizol Enter. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985).  "Great judicial deference is given" to the "exercise of business judgment."  *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp.*), 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

25.     Entry into and performance under the Trust Agreement and the creation of the Indemnity Subtrust is in the best interests of the Debtor's estate and represents a sound exercise of the Debtor's business judgment.  The Effective Date of the Plan cannot occur unless it is certain that there will be sufficient resources to pay the Indemnification Costs. As the Court is unfortunately aware, the Dondero Entities' strategy is to sue the Debtor's current management and post-Effective Date management whenever possible.  Mr. Dondero admitted as much during the hearing held on June 8, 2021.  The Debtor is therefore under no illusions.  There will be Indemnification Costs and, unfortunately, they probably will be significant.

26.     For that reason, among others, without the ability to guarantee payment of the Indemnification Costs, the Debtor would not be able to engage competent management to

oversee the implementation of the Plan, including the monetization of the Debtor's assets, prosecution of Estate Claims, and, ultimately, distributions to the Claimant Trust Beneficiaries. As discussed above, execution of the Trust Agreement is in lieu of obtaining D&O Insurance which, because of Mr. Dondero's history of litigiousness and his notoriety in the insurance industry could not be obtained in a cost-effective manner.

27. The Indemnity Subtrust (when coupled with the Exit Facility) will allow the Plan to become effective and permit the Reorganized Debtor to monetize its assets and pay allowed claims, as contemplated under the Plan, while the Reorganized Debtor or Litigation Trustee, as applicable, simultaneously pursues Estate Claims and otherwise attempts to recover value for creditors.

28. For these reasons, the Debtor submits that entering into the Trust Agreement and the creation of the Indemnity Subtrust will be an exercise of its sound business judgment, in the best interests of the Debtor's estate, and should be approved.

**C.**     <u>**Waiver of the Stay Period Pursuant to Bankruptcy Rule 6004(h) Is Proper**</u>

29. The Indemnity Subtrust is required to promptly implement the Effective Date. Consequently, the Debtor requests that the Court enter an order providing that the Debtor has established cause to exclude the relief requested herein from the fourteen-day stay period provided under Bankruptcy Rule 6004(h). Accordingly, the Debtor requests that the Order authorizing the Debtor to enter into the Trust Agreement be effective immediately upon entry such that the Debtor may proceed to complete the necessary related work to enable the prompt occurrence of the Effective Date.

<u>**Notice**</u>

30. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Office of the United

US-DOCS\124804147.1

010113

States Attorney for the Northern District of Texas; (c) the Debtor's principal secured parties; (d) counsel to the Committee; and (e) parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Blank]*

010114

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: June 25, 2021        **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

US-DOCS\124804147.1

010115

**<u>EXHIBIT A</u>**

**Proposed Order**

010116

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | **Case No. 19-34054** |
| **L.P.,** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | **Re: Docket No. _____** |
| | § | |

**ORDER APPROVING DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I)
AUTHORIZING THE (A) CREATION OF AN INDEMNITY SUBTRUST AND (B)
ENTRY INTO AN INDEMNITY TRUST AGREEMENT AND (II) GRANTING
RELATED RELIEF**

Upon the *Debtor's Motion for Entry of an Order (i) Authorizing the (A) Creation of an*

*Indemnity Subtrust and (b) Entry into an Indemnity Trust Agreement and (ii) Granting Related*

*Relief* (the "Motion"),[1] and the Court finding that: (i) this Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper pursuant to 28 U.S.C. §§ 1408 and

---

[1]  All terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.

1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iv) due and sufficient notice of the Motion has been given; (v) entry into the Agreement was an exercise of the Debtor's sound business judgment; and (vi) it appearing that the relief requested in the Motion is necessary and in the best interests of the Debtor's estate and creditors; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that:

1.    The Motion is granted as set forth herein.

2.    The Debtor is authorized to enter into and perform under the Trust Agreement and consummate the transactions contemplated thereby, including the creation of the Indemnity Subtrust.

3.    The Debtor is authorized to negotiate, prepare, execute, and deliver all documents and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform its obligations as and when they are incurred and come due under the Trust Agreement.

4.    The terms and provisions of this Order shall be binding in all respects upon all parties in this chapter 11 case, the Debtor, its estate, and all successors and assigns thereof.

5.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or otherwise, the terms and conditions this Order shall be immediately effective and enforceable upon its entry.

6.    The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

2

010118

7.      This Court retains exclusive jurisdiction with respect to all matters arising

from or related to the implementation, interpretation, and enforcement of this Order.

### # # # END OF ORDER # # #

010119

# EXHIBIT B

010120

# TERM SHEET FOR INDEMNITY TRUST AGREEMENT

This Term Sheet sets forth the basic terms of a proposed trust (the "Indemnity Trust") to provide collateral security supporting the indemnification obligations specified in (i) Section 8.2 of that certain Claimant Trust Agreement, effective as of [●], 2021 (the "Claimant Trust Agreement"), establishing that certain claimant trust (the "Claimant Trust") pursuant to the *Fifth Amended Plan of Reorganization of Highland Capital Management L.P (as Modified)* (the "Plan"), (ii) Section 8.2 of the Litigation Sub-Trust Agreement, establishing the Litigation Sub-Trust pursuant to the Plan, and (iii) Section 10 of the Reorganized Limited Partnership Agreement (as defined in the Plan), establishing the Reorganized Debtor (as defined in the Plan) pursuant to the Plan. The Indemnity Trust is based on the fundamental premise, as set forth under the Plan and consistent with the Claimant Trust Agreement and related documents, that the indemnification rights under the Claimant Trust are senior priority obligations of the Claimant Trust, relative to the classes of beneficiaries thereunder, and that adequate provision for such indemnification needs to be funded, notwithstanding the timing pursuant to which assets are realized by the Claimant Trust and distributions would otherwise be made to such beneficiaries of the Claimant Trust. The Indemnity Trust is not intended to address any qualifications, requirements or standards for indemnification; such matters are to be addressed solely under and pursuant to the standards set forth in Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub-Trust Agreement, and Section 10 of the Reorganized Limited Partnership Agreement. This Term Sheet assumes that the Indemnity Trust is intended solely as a collateral mechanism, to fund indemnification claims that were tendered to but not paid by the Claimant Trust, Litigation Sub-Trust or the Reorganized Debtor within a reasonable period of time (thirty (30) days) following such claim being made. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement.

| Grantor | Claimant Trust, pursuant to the authority granted under Section 6.1(a) of the Claimant Trust Agreement. |
|---|---|
| Beneficiaries | The Beneficiaries of the Indemnity Trust shall be the following:<br><br>1. Indemnified Parties under Section 8.2 of the Claimant Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision;<br><br>2. "Indemnified Parties" under Section 8.2 of the Litigation Sub-Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision; and<br><br>3. "Covered Persons" under Section 10 of the Reorganized Limited Partnership Agreement. |
| Indemnity Trustee | A corporate trustee with appropriate trust powers under applicable state and/or federal law. |
| Indemnity Trust Administrator | James P. Seery, Jr., initially in his capacity as the Claimant Trustee or in his individual capacity if no longer serving as |

| | the Claimant Trustee. If James P. Seery, Jr. voluntarily resigns or is unable to serve as Indemnity Trust Administrator, his legal successors or assigns. |
| --- | --- |
| | If Cause (as defined in the Claimant Trust Agreement) to remove James P. Seery Jr. or the then current Indemnity Trust Administrator is shown by final order of a court of competent jurisdiction, a successor chosen by the Claimant Trustee. |
| | Governance of the Indemnity Trust shall be effected by and through the Indemnity Trust Administrator (see "Governance"). |
| **Indemnity Trust Corpus** | At the inception of the Indemnity Trust, the trust corpus shall consist of the following, to be irrevocably contributed by the Grantor: |
| | 1. Cash of $2.5 million; and |
| | 2. the Indemnification Funding Note, in the principal amount of $22.5 million. |
| | The foregoing contributions are intended to create and maintain a balance of liquid assets in the Indemnity Trust Account of not less than $25 million (the "Indemnity Trust Account Minimum Balance"). |
| **Indemnification Funding Note** | The Indemnification Funding Note will represent and document the Claimant Trustee's obligation to make additional cash deposits into the Indemnity Trust Account to satisfy the obligations of the Claimant Trust, the Litigation Sub-Trust, and the Reorganized Debtor, each of which will be jointly and severally liable under the Indemnification Funding Note; such deposits are intended to ensure proper allocation of the respective assets of the Claimant Trust, the Litigation Sub-Trust and the Reorganized Debtor to the Indemnity Trust upon material monetizations by the Claimant Trust, reflective of the Claimant Trustee's power to reserve for senior indemnity claims under Section 6.1(a) of the Claimant Trust Agreement. Payments under the Indemnification Funding Note will be senior in priority to any distributions to the Claimant Trust beneficiaries. |
| | The initial principal amount of the Indemnification Funding Note will be $22.5 million, representing the extent of the additional collateral to be allocated to the Indemnity Trust, such that the Indemnity Trust Account |

010122

will maintain the Indemnity Trust Account Minimum Balance.

The initial principal amount of the Indemnification Funding Note will be paid in full or in part on the earlier of (a) demand for payment from the Indemnity Trust Administrator or (b) the date at which the net asset value (asset value net of liabilities and expense reserves) is less than 200% of the principal amount of the Indemnification Funding Note. Subject to the foregoing, the Claimant Trustee will have sole and absolute discretion to determine the timing and amount of the payments of the initial principal amount of the Indemnification Funding Note consistent with his view of liquidity needs of the Claimant Trust and related entities and the requirements of any financing agreement binding on the Claimant Trust. Upon the Claimant Trustee's determination that such a payment should be made, the amount of the payment shall be due within five (5) days of such a determination.

After the initial funding of principal under the Indemnification Funding Note, the principal balance thereof will at all times equal the amount representing the difference between (i) the Indemnity Trust Account Minimum Balance and (ii) the balance of liquid assets held in the Indemnity Trust Account, as reported on the most recent quarterly statement issued by the Indemnity Trustee. Such principal balance of the Indemnification Funding Note will be documented by the Indemnity Trust Administrator and will be paid in full, in a manner determined by the Claimant Trustee consistent with the procedures set forth in the immediately preceding paragraph hereof.

For the avoidance of doubt, the foregoing payments under the Indemnification Funding Note will be senior to any distribution to beneficiaries under the Claimant Trust. In the event that the liquid assets of the Claimant Trust are insufficient to satisfy the foregoing payments, the Claimant Trustee must take all reasonable action to satisfy such obligations under the Indemnification Funding Note, including accessing any available credit lines or third-party leverage, and no current payments to Claimant Trust beneficiaries will be made until all current amounts due under the Indemnification Funding Note have been made. Consistent with the foregoing, upon written request of the Indemnity Trust Administrator, the Claimant Trustee shall provide collateral to secure any amounts due or which may become due under the Indemnification Funding Note, including the posting of a bank letter of

3

010123

| | |
|---|---|
| | credit, under terms acceptable to the Indemnity Trust Administrator. |
| | The Indemnification Funding Note will not bear interest, other than that which must be imputed under applicable law. All amounts due under the Indemnification Funding Note shall be absolute, regardless of their characterization. |
| **Indemnity Trust Account** | A custodial account to be maintained/held by the Indemnity Trustee. The trust corpus and other assets of the Indemnity Trust shall be held in such Indemnity Trust Account maintained by the Indemnity Trustee, for the benefit of the Beneficiaries. Any investment income (see "Investment of Trust Assets") shall be retained in the Indemnity Trust Account and will be included in the balance of Indemnity Trust Corpus. Any investment income, investment loss and Withdrawals of Trust Assets will be included in the determination of whether the Indemnity Trust Account Minimum Balance has been achieved (see "Indemnification Funding Note"). |
| **Reports and Account Statements** | The Indemnity Trustee will provide comprehensive Indemnity Trust Account statements to the Beneficiaries and the Indemnity Trust Administrator on a quarterly basis, beginning at inception. Such statements will include the balance of the assets held in the Indemnity Trust Account as of the subject reporting date, plus a full accounting of all deposits (including amounts collected under the Indemnification Funding Note and any investment income) and any withdrawals/distributions made during the subject period and the effect of any investment losses. Such statements may be redacted for any sensitive information, as determined by the Indemnity Trust Administrator, in his sole and absolute discretion. |
| **Withdrawal of Trust Assets** | Consistent with the Indemnity Trust's purpose as a collateral mechanism, withdrawals from the Indemnity Trust Account are contemplated only following a tender of for indemnity pursuant to Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub Trust Agreement, or the Reorganized Limited Partnership Agreement and the failure of such Beneficiary to receive payment in full of such indemnity claim from the Claimant Trust within 30 days. It is expressly contemplated that in the ordinary course of their respective businesses, the Claimant Trust, the Litigation Sub-Trust, and the Reorganized Debtor will pay the costs and expenses of |

4

010124

<table>
<tr>
<td></td>
<td>defending indemnified claims as well as the amount of any such claims if successful.  The Indemnity Trust will serve as a source of indemnification for such claims as provided herein in the event that any of the Claimant Trust, the Litigation Sub-Trust, or the Reorganized Debtor, as the case may be, does not pay such claims.

A request for withdrawal of assets from the Indemnity Trust Account must be presented to the Indemnity Trustee, with a copy to the Indemnity Trust Administrator, and must be accompanied by an written certification of the following:

1. A claim for indemnification was made under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub Trust Agreement, or the Reorganized Limited Partnership Agreement, accompanied by a copy of such claim and all underlying documentation.

2. The Beneficiary did not receive full payment with respect to such indemnification claim with 30 days.

Following the receipt of the above information, the Indemnity Trust Administrator will issue a withdrawal/distribution order to the Indemnity Trustee, with a copy to the claiming Beneficiary.  Upon receipt of such order, the Indemnity Trustee will pay the full amount of the requested distribution to the subject Beneficiary; such payment will be made within 3 business days of receipt.

In the event that a claiming Beneficiary receives payment with respect to the subject indemnity claim from the Claimant Trust or any other source, such Beneficiary must promptly notify the Indemnity Trustee and the Indemnity Trust Administrator, and the subject request for payment from the Indemnity Trust will be revised accordingly; to the extent that any such amounts were already received from the Indemnity Trust, such amounts must be repaid to the Indemnity Trust Account, without interest.</td>
</tr>
<tr>
<td>**Duration of the Indemnity Trust**</td>
<td>The Indemnity Trust will exist and remain in full force and effect until the *earlier of* (i) the expiry of all indemnification rights under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub Trust Agreement, and the Reorganized Limited Partnership Agreement due to expiration of all applicable statutes of limitations (as determined by the Indemnity Trust Administrator, in his sole and absolute discretion), and (ii)</td>
</tr>
</table>

010125

| | |
|---|---|
| | the mutual agreement to terminate the Indemnity Trust by the Grantor and the Indemnity Trust Administrator. |
| | For the avoidance of doubt, neither the liquidation or termination of the Claimant Trust nor the legal existence of the Grantor or any other party thereto will have any effect on the legal existence of the Indemnity Trust. |
| **Wind-down** | Upon the determination of the Indemnity Trust Administrator that the Claimant Trust has substantially completed its efforts to monetize and distribute its assets or such earlier date that the Indemnity Trust Administrator shall determine, the Indemnity Trust Administrator and the Claimant Trust Oversight Committee shall work in good faith to replace the Indemnity Funding Note with a suitable third-party insurance policy. |
| **Liquidation and Final Distribution of Trust Assets** | Upon dissolution and liquidation of the Indemnity Trust, any assets remaining in the Indemnity Trust Account will be transferred to the Claimant Trust; provided, however, if the Claimant Trust is no longer in existence, then such distribution of the Indemnity Trust assets will be made according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust Agreement (or the successor to such numbered section) on the effective date of the termination of the Claimant Trust. |
| **Limitations on Transferability** | A beneficial interest in the Indemnity Trust may not be transferred, assigned or hypothecated without the consent of the Indemnity Trust Administrator in his sole and absolute discretion, provided that such transfer, assignment or hypothecation does not confer upon such assignee status as a Beneficiary under the Indemnity Trust. The Indemnity Trust Administrator may impose such conditions and other terms upon any transfer, assignment or hypothecation as he considers appropriate, in his sole and absolute discretion. |
| | In the event of an assignment, the foregoing limitations on transferability will continue to apply in all respects to such beneficial interest and will be binding on the assignee of such beneficial interest. |
| **Governance of the Indemnity Trust** | Consistent with the Indemnity Trust's purpose as a collateral mechanism, it is not contemplated that the Indemnity Trust will need any comprehensive governance system. For any action contemplated or required in connection with the operation of the Indemnity Trust, and for any guidance or instruction to be provided to the Indemnity Trustee, such function, rights and responsibility shall be vested in the Indemnity Trust Administrator, and the Indemnity Trustee will take written directions from the |

6

010126

| | Indemnity Trust Administrator, in such form specified in the Indemnity Trust Agreement and otherwise satisfactory to the Indemnity Trustee. |
|---|---|
| | Consistent with the foregoing, the Indemnity Trust Administrator shall have the power to take any actions the Indemnity Trust Administrator, in his sole and absolute discretion, deems desirable or necessary in connection with the operation of the Indemnity Trust. |
| | The Indemnity Trust Administrator will have the power and authority to retain such experts and other advisors, including financial consultants and legal counsel, as he considers appropriate to address any matter relating to the Indemnity Trust. Without limiting the generality of the foregoing, to the extent the Indemnity Trust Administrator identifies any conflict of interest in his roles as the Claimant Trustee, on the one hand, and the Indemnity Trust Administrator, on the other, or otherwise relating to the Indemnity Trust, the Indemnity Trust Administrator may retain such experts, including legal counsel, as he, in his sole and absolute discretion, considers appropriate to evaluate and resolve any such conflict of interest. The cost of any such advisors/experts/counsel will be paid by the Claimant Trust, and if not paid in a timely fashion, can represent a claim for indemnity under the Indemnity Trust Agreement (see "Withdrawal of Trust Assets"). Beneficiaries will not be involved in or have any rights with respect to the administration of the Indemnity Trust or have any right to direct the actions of the Indemnity Trustee with respect to the Indemnity Trust or the assets held in the Indemnity Trust Account, other than the Indemnity Trust Administrator in such capacity." |
| **Indemnification of Indemnity Trustee** | The Indemnity Trustee and the Indemnity Trust Administrator will be provided customary indemnification rights typical for a collateral trust of this type. |
| **Nature and Evidence of Beneficial Interest** | A beneficial interest in the Indemnity Trust will not entitle a Beneficiary to any direct right, title or interest in or to the specific assets held in the Indemnity Trust Account, and no Beneficiary will have any right to call for a partition or division of such assets. |
| | A beneficial interest in the Indemnity Trust will not be evidenced by any certificate, security, receipt or any other instrument. The Indemnity Trust Administrator will maintain a record of the Beneficiaries and their respective beneficial interests in the Indemnity Trust. |

010127

| | Notwithstanding the foregoing, the Indemnity Trustee or the Indemnity Trust Administrator will be authorized to provide evidence of beneficiary status upon request by a Beneficiary. |
|---|---|
| **Investment of Trust Assets** | The cash or other liquid assets in the Indemnity Trust Account will be invested in a manner consistent with that set forth in Section 3.4 of the Claimant Trust Agreement; provided, however, the approval of the Oversight Board will not be needed. Such investment function will be overseen by the Indemnity Trust Administrator and effected by the Indemnity Trustee. |
| **Governing Law** | The Indemnity Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware. |
| **Venue** | Each of the parties consents and submits to the exclusive jurisdiction of the Bankruptcy Court of the Northern District of Texas for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Indemnity Trust Agreement or any act or omission of the Indemnity Trustee (acting in his capacity as the Indemnity Trustee or in any other capacity contemplated by this Indemnity Trust Agreement); provided, however, that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas |

010128

# Exhibit 5



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed July 21, 2021**

_____
**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054** |
| | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | **Re: Docket No. 2491** |
| | § | |

**ORDER APPROVING DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE (A) CREATION OF AN INDEMNITY SUBTRUST AND (B) ENTRY INTO AN INDEMNITY TRUST AGREEMENT AND (II) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for Entry of an Order (i) Authorizing the (A) Creation of an Indemnity Subtrust and (b) Entry into an Indemnity Trust Agreement and (ii) Granting Related Relief* (the "Motion"),[1] and the Court finding that:  (i) this Court has jurisdiction over this matter

---

[1] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.

010130

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iv) due and sufficient notice of the Motion has been given; (v) entry into the Trust Agreement and the consummation of the transactions contemplated thereby is an exercise of the Debtor's sound business judgment; and (vi) it appearing that the relief requested in the Motion is necessary and in the best interests of the Debtor's estate and creditors; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that:

1.      The Motion is **GRANTED** as set forth herein and as modified on the record to provide that the Indemnification Note will be unsecured.

2.      Pursuant to 11 U.S.C. §§ 363(b) and 105(a), the Debtor is authorized (i) to enter into and perform under the Trust Agreement and consummate the transactions contemplated thereby, including the creation of the Indemnity Subtrust., and (ii) to negotiate, prepare, execute, and deliver all documents and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform its obligations as and when they are incurred and come due under the Trust Agreement.

3.      The terms and provisions of this Order shall be binding in all respects upon all parties in this chapter 11 case, the Debtor, its estate, and all successors and assigns thereof.

4.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.      The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

010131

6.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

### # # # END OF ORDER # # #

010132

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

**ORDER GRANTING HUNTER MOUNTAIN INVESTMENT TRUST'S MOTION TO
ALTER OR AMEND ORDER, TO AMEND OR MAKE ADDITIONAL FINDINGS, FOR
RELIEF FROM ORDER, OR, ALTERNATIVELY, FOR NEW TRIAL UNDER
<u>FEDERAL RULES OF BANKRUPTC Y PROCEDURE 7052, 9023, AND 9024</u>**

The Court, having considered Hunter Mountain Investment Trust's Motion to Alter or

Amend Order, to Amend or Make Additional Findings, for Relief from Order, or, Alternatively,

for New Trial Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 and

Incorporated Brief ("Motion to Alter and for Other Relief"), filed by Hunter Mountain Investment

Trust, both in its individual capacity and derivatively on behalf of the Reorganized Debtor,

[1]

010133

Highland Capital Management, L.P., and the Highland Claimant Trust,[1] finds that the Motion to

Alter and for Other Relief should be GRANTED. It is, therefore:

**ORDERED** that the Motion to Alter and for Other Relief is **GRANTED**, and the Court

will issue further rulings and reasons in connection herewith.

### ### End of Order ###


Submitted by:

PARSONS MCENTIRE MCCLEARY PLLC

*/s/ Sawnie A. McEntire*_____
Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

***Counsel for Hunter Mountain Investment Trust***


3130619.1

---

[1] And, in all capacities and alternative derivative capacities asserted in HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding [Bankr. Dkt. Nos. 3699, 3815, and 3816] ("Emergency Motion"), and the supplement to the Emergency Motion [Bankr. Dkt. No. 3760] and the draft Complaint attached to the same [Bankr. Dkt. No. 3760-1].

010134

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

In Re:  §
Highland Capital Management, L.P.  §  Case No.:  19−34054−sgj11
  §  Chapter No.:  11
Debtor(s)  §

Dear Sawnie McEntire:

The above referenced case has been reviewed as part of the Clerk's Office continuing effort to identify cases that are deficient for specific documents. Our review indicates that this case requires:

- ☐ Interim Report

- ☐ Trustee's Final Account

- ☐ Trustee's Final Report

- ☐ 341 Meeting Minute Sheet and Exempt Property Report

- ☐ Report of Trustee in No−Asset Case and Application for Closing

- ☐ Motion to Dismiss debtor's Failure to Attend 341 Meeting

- ☑ Other: Please amend the notice of appeal to state the Appellee(s) and attorney contact information, if applicable.

Please electronically file the requested documents, provide a specific date for which this information will be provided to the Court, or provide information as to why this case should remain open. Failure to respond within 48 hours from the date of this letter may result in the Court setting a status conference to determine why the document(s) has not been filed or the matter may be denied for want of prosecution.

DATED: 9/11/23

FOR THE COURT:
Robert P. Colwell, Clerk of Court

by: /s/Sheniqua Whitaker, Deputy Clerk
sheniqua_whitaker@txnb.uscourts.gov

010135

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Reorganized Debtor. | § | |

**NOTICE REGARDING APPEAL AND PENDING POST-JUDGMENT MOTION**

Appellant/Movant Hunter Mountain Investment Trust ("Appellant") files this *Notice Regarding Appeal and Pending Post-Judgment Motion*, to provide notice regarding associated deadlines. On September 8, 2023, Appellant filed a Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or, Alternatively, for New Trial Under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024. Dkt. No. 3905 (the "Post-Judgment Motion"). Also on September 8, 2023, after filing its Post Judgment Motion, Appellant filed a notice of appeal from this Court's August 25, 2023 Memorandum Opinion and Order ("Final Order") and "all associated interlocutory orders or decisions that merged into or preceded the Final Order." Dkt. No. 3906.[1]

Pursuant to Federal Rule of Bankruptcy Procedure 8009, an appellant "must file with the bankruptcy clerk and serve on the appellate a designation of the items to be included in the record on appeal and a statement of the issues to be presented … within 14 days after … the appellant's notice of appeal as of right *becomes effective under Rule 8002*." Fed. R. Bankr. P. 8009(a)(1)(B)(i) (emphasis added). Rule 8002 provides that a notice of appeal does not become "effective" until

---

[1] Pursuant to the clerk's correspondence, Dkt. No. 3907, Appellant filed its Amended Notice of Appeal on September 12, 2023, Dkt. No. 3908.

the bankruptcy court disposes of a post-judgment motion timely filed under Rules 7052, 9023, or 9024. Fed. R. Bankr. P. 8002(b)(1)-(2).

Here, Appellant timely filed its Post-Judgment Motion pursuant to Rules 7052, 9023, and 9024, and Appellant's notice of appeal is thus not yet "effective" for purposes of Rule 8009 and its corresponding deadlines and obligations. Dkt. 3905.

Accordingly, Appellant hereby provides notice that, pursuant to Rules 8002 and 8009, Appellant will file its statement of the issues and record designations within fourteen days after the Court disposes of Appellant's pending Post-Judgment Motion. *See* Fed. R. Bankr. P. 8002(b)(1)-(2), 8009(a)(1)(B)(i).

Dated:  September 22, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  */s/ Sawnie A. McEntire*
      Sawnie A. McEntire
      Texas State Bar No. 13590100
      smcentire@pmmlaw.com
      1700 Pacific Avenue, Suite 4400
      Dallas, Texas 75201
      Telephone: (214) 237-4300
      Facsimile: (214) 237-4340

      Roger L. McCleary
      Texas State Bar No. 13393700
      rmccleary@pmmlaw.com
      One Riverway, Suite 1800
      Houston, Texas 77056
      Telephone: (713) 960-7315
      Facsimile: (713) 960-7347

      ***Attorneys for Hunter Mountain Investment Trust***

010137

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing document was served via ECF notification on September 22, 2023, on all parties receiving electronic notification.

*/s/ Sawnie A. McEntire*

Sawnie A. McEntire
