CASE NO. 3:23-cv-02071-E

---

IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

IN RE: HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Debtor*

---

HUNTER MOUNTAIN INVESTMENT TRUST,
Appellant,

v.

HIGHLAND CAPITAL MANAGEMENT, L.P., et al

---

On Appeal from the United States Bankruptcy Court for the Northern
District of Texas, Case No. 19-34054-slg11
The Honorable Judge Jernigan, Presiding

---

APPELLANT BRIEF FILED BY
HUNTER MOUNTAIN INVESTMENT TRUST

---

Sawnie A. McEntire
State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary

State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800 Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347
*Attorneys for Petitioner*

## I.     <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. Bankr. P. 8012, Appellant Hunter Mountain Investment Trust ("HMIT") is a trust organized under the laws of Delaware, not a corporation, and does not need to make a corporate disclosure. HMIT also files this brief derivatively, on behalf of the Highland Claimant Trust ("Claimant Trust"), which is a trust organized under the laws of Delaware pursuant to a Claimant Trust Agreement ("CTA"), and does not need to make a corporate disclosure. HMIT also files this brief on behalf of the Reorganized Debtor, Highland Capital Management, L.P. ("HCM"), of which there are no publicly-held corporations that own 10% or more, and which is not a corporation. In the alternative only, HMIT files derivatively on behalf of the Litigation Sub-Trust, a Delaware trust, which does not need to make a corporate disclosure.

## II.     <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This appeal involves a voluminous record from a one-day evidentiary hearing that also involved several other pre-hearing and post-hearing orders. The bankruptcy court's 105-page Memorandum Opinion and Order ("Order Denying Leave") creates an improper standard for determining the "colorability" of claims during the initial pleading stages of a case, compounded by a series of other harmful legal and factual errors. HMIT respectfully submits that oral argument would aid the Court's decisional process. *See* FED. R. BANKR. P. 8019.

## III.   <u>LOCAL RULE 8012.1 CERTIFICATE OF INTERESTED PERSONS</u>

HMIT certifies to the best of its knowledge that the following list is a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, and/or other legal entities who or which are financially interested in the outcome of this appeal. HMIT was seeking to bring this action on behalf of HCM and the Claimant Trust and objected to their separate representation.

### 1) Debtor: Highland Capital Management, L.P. ("HCM")

Attorneys:
Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
Ira D. Kharasch
ikharasch@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
facsímile: (310) 201-0760

-and-

Melissa S. Hayward
Mhayward@HaywardFirm.com
Zachery Z. Annable
Zannable@HaywardFirm.com
HAYWARD PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231

Tel: (972) 755-7100
Fax: (972) 755-7110

## 2) <u>Highland Claimant Trust</u>

Attorneys:
Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
Ira D. Kharasch
ikharasch@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

-and-

Melissa S. Hayward
Mhayward@HaywardFirm.com
Zachery Z. Annable
Zannable@HaywardFirm.com
HAYWARD PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

## 3) <u>James P. Seery, Jr.</u>

Attorneys:
Mark T Stancil
Joshua S Levy
Willkie Farr & Gallagher LLP
1875 K Street NW

Washington, DC 20006
202-303-1133
202-303-1000
Fax: 202-303-2133
Email: mstancil@willkie.com
Email: jlevy@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

-and-

Lindsey Lee Robin
Omar J Alaniz
Reed Smith
2850 N. Harwood St.
Suite 1500
Dallas, TX 75201
469-680-4222
469-680-4292
Fax: 469-680-4299
Email: lrobin@reedsmith.com
Email: oalaniz@reedsmith.com
*ATTORNEY TO BE NOTICED*

## 4) **Stonehill Capital Management, LLC**

Attorneys:
Brent R. McIlwain, TSB 24013140
brent.mcilwain@hklaw.com
David C. Schulte TSB 24037456
ivavid.schulte@hklaw.com
Christopher Bailey TSB 24104598
chris.bailey@hklaw.com
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
Tel. : (214) 964-9500
Fax : (214) 964-9501

**5) <u>Farallon Capital Management, LLC</u>**

Attorneys:
Brent R. McIlwain, TSB 24013140
brent.mcilwain@hklaw.com
David C. Schulte TSB 24037456
vavid.schulte@hklaw.com
Christopher Bailey TSB 24104598
chris.bailey@hklaw.com
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
Tel.: (214) 964-9500
Fax: (214) 964-9501

**6) <u>Muck Holdings, LLC.</u>**

Attorneys:
Brent R. McIlwain, TSB 24013140
brent.mcilwain@hklaw.com
David C. Schulte TSB 24037456
vavid.schulte@hklaw.com
Christopher Bailey TSB 24104598
chris.bailey@hklaw.com
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
Tel.: (214) 964-9500
Fax: (214) 964-9501

**7) <u>Jessup Holdings, LLC.</u>**

Attorneys:
Brent R. McIlwain, TSB 24013140
brent.mcilwain@hklaw.com
David C. Schulte TSB 24037456
vavid.schulte@hklaw.com
Christopher Bailey TSB 24104598
chris.bailey@hklaw.com
Holland & Knight LLP

1722 Routh Street, Suite 1500
Dallas, TX 75201
Tel.: (214) 964-9500
Fax: (214) 964-9501

## 8) <u>Appellant: Hunter Mountain Investment Trust</u>

Attorneys:
Sawnie A. McEntire
State Bar No. 13590100
smcentire@pmmlaw.com
Allison Jacobsen
State Bar No. 00783549
ajacobsen@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

## IV.   <u>TABLE OF CONTENTS</u>

I.     CORPORATE DISCLOSURE STATEMENT.................................................i

II.    STATEMENT REGARDING ORAL ARGUMENT .....................................i

III.   LOCAL RULE 8012.1 CERTIFICATE OF INTERESTED
       PERSONS.................................................................................................. ii

IV.    TABLE OF CONTENTS ......................................................................... vii

V.     TABLE OF AUTHORITIES.......................................................................x

VI.    JURISDICTIONAL STATEMENT ............................................................1

VII.   STATEMENT OF ISSUES PRESENTED AND APPLICABLE
       STANDARD OF REVIEW.........................................................................1

VIII.  INTRODUCTION .....................................................................................4

IX.    STATEMENT OF THE CASE ...................................................................7

       A.    HCM Files for Bankruptcy.............................................................7

       B.    The Purchase of the Largest Unsecured Claims was Tainted...............7

       C.    The Outside Purchasers' Had Prior Relationships with Seery...........10

       D.    Material Non-Public Information....................................................11

       E.    The Plan's Gatekeeper Provision .................................................13

       F.    Beneficiaries Under the Claimant Trust...........................................13

       G.    HMIT Filed Its Emergency Motion for Leave....................................14

       H.    The Bankruptcy Court Rejected a Rule 12(b)(6)-Type Analysis. ......15

       I.    The June 8 Hearing and Exclusion of HMIT's Expert
             Testimony and Strike of Proffer...........................................17

       J.    The Bankruptcy Court's Orders Excluding Experts ..........................19

       K.    The Bankruptcy Court Entered Its Order Denying HMTI's
             Motion for Leave and its Order Denying HMIT's Motion to
             Alter ...............................................................................20

X.     SUMMARY OF ARGUMENT....................................................................21

XI.    ARGUMENT & AUTHORITIES................................................................23

       A.    HMIT has Constitutional and Prudential Standing to Bring Its

Claims in Its Individual and Derivative Capacities ...........................23

B.   The Bankruptcy Court's Application of a Heightened "Hybrid" Barton Analysis was Erroneous .........................................................40

   1.   The Gatekeeping Provision Does Not Support a Heightened *Barton* Standard.............................................................40

   2.   The Bankruptcy Court's Impermissible Extension of the *Barton* Doctrine.........................................................................41

   3.   A "Colorable" Claim Need Only Have "Some Possible Validity"..................................................................................43

C.   HMIT Pled "Colorable" and Plausible Claims Under the Proper, Non-Evidentiary Standard .......................................................44

   1.   HMIT's Factual Averments are Well-Plead and are "Colorable" and Plausible..........................................................45

D.   Alternatively, if the Bankruptcy Court Correctly Determined that Its "Hybrid" Barton Analysis Controls, the Bankruptcy Court Abused Its Discretion When It Denied HMIT's Requested Discovery and Continuance................................................49

E.   Alternatively, HMIT's Claims are "Colorable" Under the Heightened Standard Applied by the Bankruptcy Court ....................50

F.   The Bankruptcy Court Erred When it Imposed a New "Colorability" Standard on Claims Asserted by a Non-Debtor Against Non-Debtors Under Stern v. Marshall, and is progeny. .........52

G.   Alternatively, if the Bankruptcy Court Correctly Determined that Its "Hybrid" Barton Analysis Controls, the Bankruptcy Court Erroneously Excluded Appellant's Expert Testimony And Struck Appellant's Proffer.............................................................53

   1.   HMIT's Experts were designated timely. .................................53

   2.   Insufficient Record to Exclude Experts ....................................54

   3.   The Bankruptcy Court Abused its Discretion by Determining Testimony "Not Helpful" .....................................55

H.   The Bankruptcy Court Erroneously Determined Appellant "Cannot Show It is Pursuing the Proposed Claims for a Proper Purpose" ...........................................................................................57

XII.   CONCLUSION AND RELIEF SOUGHT....................................................59

XIII.  CERTIFICATE OF COMPLIANCE ............................................................60

# V.    TABLE OF AUTHORITIES

**Cases**

*Pepper v. Litton,* 308 U.S. 295, 304-11 (1939) ......................................................37

*In re Mobile Steel Co., Inc.,* 563 F.2d 692 (5th Cir. 1977)............................... 37, 38

*Allstate Insurance Co. v. Employers Liability Assurance Corp.,* 445 F.2d 1278, 1280 (5th Cir.1971) ..........................................................................................36

*Angstadt v. Red Clay Consol. Sch. Dist.*, 4 A.3d 382, 390 (Del. 2010) .................31

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..................................................... 44, 45

*Atl. NWI, LLC v. Carlyle Group Inc.*, No. 2021-0944-SG, 2022 WL 15800272, at *6 (Del. Ch. Oct. 28, 2022) ...................................................................................46

*Barton v. Barbour,* 104 U.S. 126 (1881) .................................................................42

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 447 (N.D. Tex. 2015).....................................................................................................................23

*Becker v. Noe*, No. CV ELH-18-00931, 2019 WL 1415483, at *18 (D. Md. Mar. 27, 2019) ..............................................................................................................44

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007) ...........................45

*Box v. Dallas Mexican Consulate Gen.*, 487 Fed. Appx. 880, 884–85 (5th Cir. 2012) ......................................................................................................................50

*Brooks v. United Dev. Funding III, L.P.*, 2020 WL 6132230, at *30 (N.D. Tex. Apr. 15, 2020)......................................................................................................46

*In re Carroll*, 850 F. 3d 811 (5th Cir. 2017)...........................................................42

*Cheng v. K & S Diversified Investments (In re Cheng)*, 308 B.R. 448, 45⁵ (9th Cir. BAP 2004),'*aff'd*, 160 Fed.Appx. 64⁴ (9th Cir.2005).........................................47

*Chua v. Ekonomou*, 1 F.4th 948, 954 (11th Cir. 2021)............................................43

*City of Shreveport v. Shreve Town Corp.*, 314 F.3d 229, 234–35 (5th Cir. 2002)....4

*Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011) ................................................................................................................................3

*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 ⁽10th Cir. 2003) ................................55

*Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) .............35

*Edwards v. Gillis*, 146 Cal.Rptr.3d 256, 263 (Cal. Ct. App. 4 Dist., 2012)...........36

*Estate of Cornell v. Johnson*, 367 P.3d 173, 178 (Idaho 2016)........................ 29, 35

*Estate of Necastro*, No. C.A. 10,538, 1991 WL 29958, at *1 (Del. Ch. Feb. 28, 1991) ...................................................................................................................32

*Estate of Tigani*, No. CV 7339-ML, 2016 WL 593169, at *14 (Del. Ch. Feb. 12, 2016)...................................................................................................................32

*Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) .........................3

*Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296 (Del. Ch. 2022).............39

*Giagnorio v. Emmett C. Torkelson Tr.*, 292 Ill. App. 3d 318, 686 N.E.2d 42 (1997) .................................................................................................................29

*Gilbert v El Paso Co.*, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988) ............47

*Giuiricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) ...................................32

*Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 64[3] (7th Cir.1995) ......................57

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011) 23, 24

*Hose v. Chicago Nw. Transp.*, 70 F.3d 968, 973 n.[3] (8th Cir.1995) ........................57

*In re Adelphia Commun. Corp.*, 365 B.R. 24, 71-72 (Bankr. S.D.N.Y. 2007), *'ff'd in part sub nom. Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 64 (S.D.N.Y. 2008), *adhered to on reconsideration,* 05 CIV. 9050 (LMM), 2008 WL 1959542 (S.D.N.Y. May 5, 2008)...................................................................38

*In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984)........................................42

*In re Coral Petroleum, Inc.*, 50 B.R. 830, 835-36 (Bk. S.D. Tex. 1985)...............36

*In re Deepwater Horizon*, 732 F.3d 326, 340 (5th Cir. 2013 ..................................43

*In re Johnson*, 433 B.R. 626 (S.D. Tex. 2010) ........................................................47

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)..........................2

*In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998) ......................................................42

*In re National Collegiate Student Loan Trusts Litigation*, 251 A.3d 116, 185-86 (Del. Ch. 2020) ....................................................................................... 35, 36

*In re Provider Meds, LP*, 514 B.R. 473, 475 (Bankr. N.D. Tex. 2014) ........... 41, 42

*In re Tr. Under Will of Flint for the Benefit of Shadek*, 118 A.3d 182, 195 (Del. Ch. 2015);.....................................................................................................31

*In re Vistacare Group, LLC*, 678 F.3d 218, 234 (3d Cir. 2012).............................42

*In re World Mktg. Chi., LLC*, 584 B.R. 737, 743 (Bankr. N.D. Ill. 2018) .............42

*In re Xtreme Power Inc.*, 563 B.R. 614, 632-33 (Bankr. W.D. Tex. 2016) ..... 33, 47

*In re Yormak*, 640 B.R. 491, 508 (M.D. Fla. 2022), *appeal dismissed*, No. 22-11636-BB, 2022 WL 3270056 (11th Cir. July 27, 2022) .....................................59

*In re: Mobilactive Media, LLC*, 2013 WL297950 at 24 (Dec. Ch. Jan. 25, 2013) .39

*isenberg v. Chicago Milwaukee Corp.,* Del.Ch., 537 A.2d 1051, 1062 (1987) ......47

*Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004)..................................27

*Joseph C. Bamford & Young Min Ban v. Penfold, L.P.*, 2020 WL 967942, at *8 (Del. Ch. Feb. 28, 2020).......................................................................................46

*King v. Baylor Univ.*, 46 F.4th 344, 36[7] (5th Cir. 2022) ..........................................39

*Kobach Tool Co. v. Corbett-Wallace Corporation*, 160 S.W. 2d 509 (Tex. 1942) 39

*League of United Latin Am. Citizens v. Abbott*, 604 F. Supp 463, 496-97 (W.D. Tex. 2022)............................................................................................................27

*Leighton Holdings, Ltd. v. Belofsky* (In re Kids Creek Partners, L.P.), 2000 WL 1761020, at *2 (N.D. Ill. Nov. 30, 2000) ............................................................42

*Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245-46 (5th Cir. 1988) ..................................................................................... 33, 47

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)...............................................................................23

*Mangano v. Pericor Therapeutics*, No. CIV.A. 3777-VCN, 2009 WL 4345149, at *5 (Del. Ch. Dec. 1, 2009)........................................................31

*Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002) ............................. 55, 56

*Matter of Highland Capital Management, L.P.*, 74 F.4th 361, 370 (5th Cir. 2023) ...............................................................................................22

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) ...............................................................................................23

*Mayfield v. Peek*, 446 S.W.3d 253 (Tex. App.—El Paso 2017, no pet.)................29

*McAllister v. FDIC*, 87 F.3d 762, 76[6] (5th Cir. 1996) ......................................49

*Metro Storage International, LLC v. Herron*, 275 A.3d 810 (Del. Ch. 2022) ........39

*Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017)..................................................1

*Moore*, 853 F.3d at 248..................................................................................2

*Morales v. Garland*, 27 F.4th 370, 371–72 (5th Cir. 2022) ....................................2, 3

*Niehoff v. Maynard,* 299  F.3d 41 (1st Cirt. 2002). .......................................40

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002)............................3, 4

*Prospect Street Energy v. Bhargava*, 2016 WL 446202 at *8 (Del. S. Ct.  January 27, 2016) ...............................................................................................39

*Rende v. Rende*, No. 2021-0734-SEM, 2023 WL 2180572, at *11 (Del. Ch. Feb. 23, 2023) ........................................................................... 33, 34, 47

*Richardson v. United States*, 468 U.S. 317 (1984) ............................................. 43, 44

*Rodriguez v. Riddell Sports, Inc.*, 242 S.W.3d 567, 581-8[2] (5th Cir. 2001)............54

*Scanlon v. Eisenberg*, 2012 WL 169765 (7th Cir. Jan. 20, 2012)................... 29, 34

*Siefert v. Leonhardt*, 975 S.W.2d 489, 492–93 (Mo. Ct. App. 1998) ....................29

*Silver v. City of San Antonio*, No. SA-19-MC-1490-JKP, 2020 WL 3803922, at *6 (W.D. Tex. July 7, 2020). ..........................................................41

*Silver v. Perez*, No. SA-20-MC-0655-JKP, 2020 WL 3790489, at *4 (W.D. Tex. July 7, 2020) ...............................................................................................41

*Smith v. Bank of Am., NA*, 615 F.App'x 830, 833 (5th Cir. 2015) ..........................44

*Smith v. Bank of Clearwater*, 479 So. 2d 755 (Fla. Dist. Ct. App. 1985) ..............29

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ......................................23

*Tigani v. Tigani*, No. CV 2017-0786-KSJM, 2021 WL 1197576, at *14 (Del. Ch. Mar. 30, 2021), *aff'd*, 271 A.3d 741 (Del. 2022) .........................................31

*Trippodo v. SP Plus Corp.*, No. 4:20-CV-04063, 2021 WL 2446204, at *3 (S.D. Tex. May 21, 2021), report and recommendation adopted, No. 4:20-CV-04063, 2021 WL 2446191 (S.D. Tex. June 15, 2021) ...............................................44

*U.S. v. Contorinas*, 672 F.3d 136 (2nd Cir. 2012) ............................................ 12, 13

*United Fire & Cas. Co. v. Whirlpool Corp.,* 704 F.3d 1338, 1341–42 (11th Cir.2013) .......................................................................................................57

*United States v. Schiff*, 538 F. Supp. 2d 818, 844 fn. 26 (D.N.J. 2008),'*aff'd*, 602 F.3d 152 (3d Cir. 2010) ...........................................................................57

*US Bank Assoc. v. Verizon Commun., Inc.*, 817 F.Supp. 934, 944 (N.D. Tex. 2011) ...............................................................................................................40

*Wilmington Trust Co. v. Barry*, 338 A.2d 575, 578 (Del Super. Ct. 1975), *aff'd*, 359 A.2d 664 (Del. 1976)) .................................................................32

*Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 n.3[5] (5th Cir. 2004)........49

*Yellowhouse Machinery Co. v. Mack (In re Hughes)*, 704 F.2d 820, 82[2] (5th Cir.1983) ...........................................................................................47

## Statutes

Bankruptcy Code § 510 ....................................................................................37

Del. Code Ann. Tit. 12, § 3809 ......................................................................34

Del. Code. Ann. Tit. 12, § 3801 .....................................................................31

Del. Code. Ann. Tit. 12, § 3806) ....................................................................35

Del. Code. Ann. tit. 12, § 3816 ...............................................................29, 30

Section 3327 of the Delaware Code.................................................................32

## Other Authorities

§ 22:28. *Beneficial ownership and convertible securities* .....................................36

1F Going Public Corp. § 22:28 .......................................................................36

28 U.S.C. § 158(a) .............................................................................................1

7 Collier on Bankruptcy, para. 1109.08...........................................................22

Black's Law Dictionary ..........................................................................31, 32

Restatement (Second) of Trusts ................................................................34

Restatement (Second) of Trusts Sec. 199 .................................................29

Restatement (Third) of Trusts ............................................................31, 32

## Rules

Bankruptcy Rule of Procedure 9014................................................................54

Fed. R. Bankr. P. 8002 ...................................................................................1

Fed. R. Bankr. P. 8012 .................................................................................. i

Fed. R. Bankr. P. 8019 ................................................................................. i

Fed. R. Bankr. P. 9017 .................................................................................20

Fed. R. Civ. P. Rule 17 ................................................................................23

Fed. R. Evid. 103(c).......................................................................................55

Fed. R. Evid. 401 ...........................................................................................56

Federal Rule of Civil Procedure 12(b)(6) .................................................6, 44

Rule 103(a)(2) ................................................................................................20

Rule 26(a)(2)(b) .............................................................................................54

## VI.    JURISDICTIONAL STATEMENT

HMIT appeals from an order of the bankruptcy court denying HMIT's motion for leave to file an adversary proceeding raising breach of fiduciary duty and other tort claims (the "**Order Denying Leave**") (ROA.000835), associated rulings and an order denying HMIT's motion for reconsideration and other relief ("Motion to Alter") pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023 and 9024 (the "**Order Denying Post-Judgment Relief**"). ROA.001045.

The Order Denying Leave and the Order Denying Post-Judgment Relief are final and appealable. Accordingly, this Court has jurisdiction over this appeal. 28 U.S.C. § 158(a). HMIT timely appealed on September 8, 2023, and timely filed an amended notice of appeal following the Order Denying Post-Judgment Relief. ROA.000001, 000551; FED. R. BANKR. P. 8002.

## VII.   STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF REVIEW

1. Whether the bankruptcy court erred in determining that HMIT lacked constitutional and prudential standing to bring its claims in its individual and derivative capacities. ROA.000894-917.

   **Standard of Review:** Dismissal for lack of standing is reviewed *de novo*. *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017).

2. Whether the bankruptcy court erred in denying HMIT's Motion to Alter, which further confirmed HMIT's constitutional and prudential standing.

1

ROA.001045-001048.

**Standard of Review:** Dismissal for lack of standing is reviewed *de novo*. *Moore*, 853 F.3d at 248.

3. Whether the bankruptcy court erred when it crafted a new standard described as "***an additional level of review***," requiring HMIT to prove a ***prima facie*** case that HMIT's proposed claims are "***not without foundation***, are ***not without merit***, and are ***not being pursued for any improper purpose such as harassment***" (ROA.000925) to assess whether HMIT has asserted colorable claims under the Gatekeeper Provision in the Fifth Amended Plan of Reorganization, as modified (the "Plan").

**Standard of Review:** Whether a court applied an incorrect legal standard is a question of law reviewed *de novo*. *Morales v. Garland*, 27 F.4th 370, 371–72 (5th Cir. 2022).

4. Whether the bankruptcy court erred when it held that HMIT did not assert plausible or colorable claims under the Gatekeeper Provision assuming a correct Rule 12(b)(6)-type analysis.

**Standard of Review:** A dismissal for failure to state a claim is reviewed *de novo*. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007).

5. If the bankruptcy court correctly applied its "additional level of review," which included an evidentiary hearing, whether the bankruptcy court erred in

determining HMIT had not asserted colorable claims under the Gatekeeper Provision?

**Standard of Review:** A court's factual findings are reviewed for "clear error." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002);

6. Whether the bankruptcy erred when it imposed a new hybrid standard on claims asserted by a non-debtor against non-debtors under *Stern v. Marshall* and its progeny.

**Standard of Review:** Whether a matter is a core or non-core matter under *Stern v. Marshall* is subject to *de novo* review. *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

7. If the bankruptcy court correctly applied its "additional level of review," which included an evidentiary hearing, whether the bankruptcy court violated HMIT's due process rights by denying HMIT's requested discovery and/or continuance.

**Standard of Review:** Whether a court applied an incorrect legal standard is a question of law reviewed *de novo*. *Morales*, 27 F.4th at 371-372. Discovery rulings are reviewed for abuse of discretion. *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011).

8. If the bankruptcy court correctly applied its "additional level of review," which included an evidentiary hearing, whether the bankruptcy court erred by

excluding HMIT's experts' testimony without a *Daubert* hearing, and then striking from the record HMIT's proffer of expert testimony.

**Standard of Review:** A court's determination of admissibility of expert evidence is reviewed for abuse of discretion. *Pipitone*, 288 F.3d at 243 (5th Cir. 2002).

9. Whether the bankruptcy court committed clear error when it applied an "additional level of review," and judged the credibility of HMIT's claims, based upon unsupported findings that James Dondero ("Dondero") controls HMIT and is "Dondero by another name" and, as such, HMIT "cannot show that it is pursuing the Proposed Claims for a proper purpose" under its "additional level of review" standard.

**Standard of Review:** A court's factual findings are reviewed for "clear error." *Id.*

10. Whether the bankruptcy court erred when it rejected the punitive damage claim in the proposed pleadings.

**Standard of Review:** The application of state law is reviewed *de novo*. *City of Shreveport v. Shreve Town Corp.*, 314 F.3d 229, 234–35 (5th Cir. 2002)

## VIII.  <u>INTRODUCTION</u>

HMIT was the owner of a 99.5% limited partner interest in Highland Capital Management, LLC ("HCM" or "Debtor") when HCM filed for voluntary bankruptcy

in 2019. Following the Plan's Effective Date, HMIT's equity interest was exchanged for a Class 10 beneficial interest under the Highland Claimant Trust ("Claimant Trust"), which owned the Debtor's assets following the Effective Date.

By its Motion for Leave, HMIT sought to bring an adversary proceeding subject to the Plan's Gatekeeper Provision. (ROA 001660).[1] That provision required HMIT to allege "colorable" claims against the proposed defendants and obtain leave to sue. More specifically, HMIT was seeking permission to file an adversary proceeding against HCM's Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO"), James Seery ("Seery"), who conspired with non-creditors to use material non-public information ("MNPI") in connection with their purchases of large unsecured claims in HCM's bankruptcy. HMIT alleged that Seery provided friendly business allies with MNPI allowing them to make enormous profits, and then placed these allies on an oversight board with authority to approve Seery's excessive compensation. The proposed pleadings included claims for breaches of fiduciary duty, aiding and abetting, conspiracy, unjust enrichment, constructive trust, equitable disallowance, and declaratory relief.

Viewed through an objective lens, the proceedings in the bankruptcy court were stripped of due process. The bankruptcy court disregarded binding precedent

---

[1] The Order Denying Leave refers to the Plan "Gatekeeping Provision" and other similar orders which preceded the Plan. References to "Gatekeeping Provision" herein refers to all such orders.

and fabricated an erroneous standard of review, which the bankruptcy court described as a "***hybrid***" or "***additional level of review***" for "***this bankruptcy case.***" By doing so, the bankruptcy court singled-out HMIT and imposed a uniquely heightened burden for "colorability" that neither the Plan nor any governing authority contemplates.

The bankruptcy court's application of this "hybrid" standard, as well as conducting an inappropriate evidentiary hearing, constitutes reversible error. Under the *correct* legal standard—analogous to Federal Rule of Civil Procedure 12(b)(6)—HMIT asserted plausible and colorable claims, and the bankruptcy court erred in concluding otherwise, and further erred when it determined there were "mixed issues of law and fact."

At an initial pleading stage, the bankruptcy court refused to accept HMIT's well-pleaded factual allegations as true. Instead, the bankruptcy court required HMIT to *prove* its claims at an improper evidentiary hearing under the "hybrid" standard—without basic discovery or expert opinions. The bankruptcy court also relied on "background and context" that had *nothing* to do with HMIT to impugn HMIT's claims and motivations. By doing so, the bankruptcy court denied HMIT a basic right – the right to pursue colorable claims for itself and derivatively on behalf of the Reorganized Debtor and the Highland Claimant Trust (the "Claimant Trust").

HMIT had and continues to have standing as a real party interest and as an

6

aggrieved party to assure that properly held claims are paid timely and fairly. The proposed claims are colorable, HMIT has direct and derivative standing to pursue these claims, and the bankruptcy court erred by shutting the courthouse doors. This Court should reverse.

## IX.   STATEMENT OF THE CASE

### A.   HCM Files for Bankruptcy

On October 16, 2019, HCM filed a voluntary petition under chapter 11 of the Bankruptcy Code.[2] Seery was later appointed as HCM's CEO, in place of Mr. James Dondero ("Dondero"), as well as the Debtor's CRO.[3]

### B.   The Purchase of the Largest Unsecured Claims was Tainted

As the Debtor's new CEO and CRO, Seery obtained bankruptcy court approval for settlements with the largest unsecured creditors who also served on the Unsecured Creditors Committee ("UCC"). This included the Redeemer Committee, Acis, UBS, and HarbourVest (collectively, the "Settling Parties"), as follows:[4]

| Creditor | Class 8 | Class 9 |
|----------|---------|---------|
| Redeemer | $137 mm | $0 mm |
| Acis | $23 mm | $0 mm |
| HarbourVest | $45 mm | $35 mm |
| UBS | $65 mm | $60 mm |
| **(TOTALS)** | **$270** | **$95** |

---

[2] ROA.003345; ROA.001897.

[3] ROA.003346; ROA.001897

[4] *See* Order Confirming the Plan. ROA.001660

7

As reflected in these settlements, HarbourVest and UBS owned unsecured claims that would become Class 9 claims and Class 8 Claims following the Effective Date.[5] Class 9 Claims were subordinated to Class 8 Claims in the distribution waterfall.[6] As a holder of Class 10 Claims, HMIT is entitled to distributions from the Claimant Trust after Class 8 and Class 9 Claims are paid in full with interest.[7]

Each of the Settling Parties subsequently sold their claims to third parties who were Seery's professional acquaintances, but who were strangers to HCM's bankruptcy otherwise. The claims were acquired by Muck Holdings, LLC ("Muck") and Jessup Holdings, LLC ("Jessup"), which were shell entities created by two large hedge funds, Farallon Capital Management, L.L.C. ("Farallon") and Stonehill Capital Management LLC ("Stonehill") (collectively Muck, Jessup, Farallon, and Stonehill, the "**Outside Purchasers**").[8] Muck and Jessup were organized on the eve of taking title to the claims at issue (the "**Disputed Claims**"). By virtue of these purchases, the Outside Purchasers ascended to powerful positions on the Claimant Trust's Oversight Board following the Plan's Effective Date.[9] Each of the Disputed Claims were purchased, however, prior to the Effective Date.[10]

---

[5] ROA.003346-47; ROA.001864-65.

[6] ROA.003347. ROA.001685-1687.

[7] ROA.003339; ROA.007392-93.

[8] ROA.003340; ROA.003344; ROA.001861; ROA.009706; ROA.008578-81; ROA.007465-7499.

[9] ROA.003354; ROA.007446.

[10] ROA.003348; ROA.001855, ROA.1864-65, ROA.007465-7499.

HMIT alleges, and the Outside Purchasers have **never** denied, that the Outside Purchasers invested over $160 million to acquire the Disputed Claims,[11] and they did so without conducting due diligence.[12] Seery (the Debtor's CEO) testified at the June 8 Hearing that the Debtor had no due diligence data room.[13]

When the Outside Purchasers made their investments, the **only** public information relating to the Debtor's financial condition was pessimistic—including projections that Class 8 Claims would receive only partial payments while subordinated Class 9 claims would receive nothing.[14] The Debtor's Disclosure Statement publicly projected payment of only 71.32% for Class 8 claims, and 0% for claims in Classes 9-11.[15]

As well-pled in HMIT's proposed pleadings, despite these pessimistic public projections, Farallon rejected selling its claims for a significant premium above what it initially paid **just weeks before**, because Seery improperly provided Farallon with MNPI which included Seery's assurances that the Disputed Claims were *even more valuable*.[16] This factual allegation was further evidenced by hand-written notes

---

[11] ROA.003348; ROA.001864-65.

[12] ROA.003348-54; ROA.003357-63. The bankruptcy court incorrectly stated that there were no allegations that Stonehill failed to conduct due diligence. But, the proposed pleadings alleges otherwise. ROA.003334, 003348, 003352.

[13] ROA.009696.

[14] ROA.003348-49; ROA.001864-65, ROA.009563-9564.

[15] ROA.003348-49; ROA.001866.

[16] ROA.003349-50; ROA.009594-95; ROA.006693-96.

prepared by Dondero, which the Outside Purchasers never controverted.[17]

The relevant math is compelling. The Outside Purchasers invested an estimated $160 million to acquire unsecured claims when the Debtor's public disclosures indicated a $0 return for Class 9 Claims and substantially less than par value on Class 8 Claims.[18] On this basis alone, the Outside Purchasers could never justify the risks of their investments to their own investors.[19]

## C.     The Outside Purchasers' Had Prior Relationships with Seery

HMIT's proposed pleadings make clear that the Outside Purchasers enjoyed prior business relationships with Seery.[20] Seery admitted to scheduling and travelling to private "meet and greets" with Farallon and exchanging email communications with Farallon regarding HCM's bankruptcy.[21] Likewise, Seery had a longstanding relationship with Stonehill's founder; Seery represented Stonehill in prior bankruptcy proceedings; Seery served as a co-chair for a charitable event for Stonehill in New York; and (similar to Farallon) Stonehill contacted Seery seeking to become involved in HCM's bankruptcy even though Stonehill was not a

---

[17] ROA.006693-95; ROA.009590-96.

[18] ROA.003348-49; ROA.001866.

[19] ROA.003334; ROA.009944-010012.

[20] ROA.003350-54.

[21] ROA.009681-86.

creature.[22]

## D.   Material Non-Public Information

On December 17, 2020, Seery received an email containing MNPI from Dondero concerning interest in acquiring MGM.[23] Dondero, who was HCM's original founder and former CEO, also served on MGM's Board of Directors due to HCM's stake in MGM.[24] Dondero's email to Seery (the "Dondero Email") stated:[25]

> **From:** Jim Dondero <JDondero@highlandcapital.com>
> **To:** Thomas Surgent <TSurgent@HighlandCapital.com>, Jim Seery <jpseeryjr@gmail.com>, Scott Ellington <SEllington@HighlandCapital.com>, "Joe Sowin" <JSowin@HighlandCapital.com>, Jason Post <JPost@NexpointAdvisors.com>
> **Cc:** "D. Lynn (\"Judge Lynn\")" <michael.lynn@bondsellis.com>, Bryan Assink <bryan.assink@bondsellis.com>
> **Subject:** Trading restriction re MGM - material non public information
> **Date:** Thu, 17 Dec 2020 14:14:39 -0600
> **Importance:** Normal
>
> _____
>
> Just got off a pre board call, board call at 3:00. Update is as follows: Amazon and Apple actively diligencing in Data Room. Both continue to express material interest. Probably first quarter event, will update as facts change. Note also any sales are subject to a shareholder agreement.

Although media rumors had been swirling around a potential MGM sale for years, the information Seery received from Dondero, an active member of MGM's Board, was qualitatively different[26] – the Dondero Email described an MGM sale in

---

[22] ROA.009686-96.

[23] ROA.003350; ROA.006692.

[24] ROA.003350; ROA.9574-9584.

[25] ROA.006691 (Emphasis added).

[26] ROA.009583-84. *Compare* ROA.008890 *with* ROA.004326 *with* ROA.004282.

11

terms of "*probability*" within a certain time frame. The materiality of this information is reinforced because it came from an active member of MGM's Board.[27]

Upon receipt of this MNPI, Seery should have halted all transactions involving MGM stock. Yet, just six days later, Seery filed a motion and obtained bankruptcy court approval of HCM's settlement with HarbourVest – resulting in a transfer to the HCM's Estate of HarbourVest's interest in Highland CLO Funding, Ltd. ("HCLOF"), which held substantial MGM debt and equity.[28] Then, on April 7, 2021, HCM *removed* MGM from HCM's "Restricted List," suggesting that HCM did not possess MNPI regarding MGM—which was untrue.[29]

Importantly, HMIT's proposed pleadings made clear that the Outside Purchasers also acted on *additional* MNPI.[30] HMIT's proposed pleadings assert well-pleaded factual allegations that Seery communicated insider knowledge that the publicly disclosed projections were *too* low, and that the Disputed Claims were worth substantially more.[31] In particular, the pleadings make non-conclusory factual

---

[27] *See U.S. v. Contorinas*, 672 F.3d 136 (2nd Cir. 2012) for a discussion concerning distinctions between media reports and MNPI data. The Order Denying Leave distorts this distinction.

[28] ROA.003350-51; ROA.009753. ROA.009750; ROA.009751; ROA.009751-52.

[29] ROA.003350, ROA.003352-54; ROA.009575-76; ROA.009582-83.

[30] ROA.003338; ROA.003347-3356.

[31] ROA.003347-3356.

allegations that Farallon refused to sell at a substantial premium because Seery said the claims were worth more.[32] These assurances constitute MNPI.[33]

## E.     The Plan's Gatekeeper Provision

The confirmed Plan created the Reorganized Debtor and provided for the Highland Claimant Trust ("Claimant Trust"), which was created to hold both monetized and non-monetized assets previously held by the Debtor. Following the Effective Date, Seery became the Trustee of the Claimant Trust.[34]

The Plan provided that each of the "Released Parties" (including Seery) was released and discharged by the Debtor and the estate (including the Claimant Trust) from any and all causes of action, including derivative claims *except* "any Causes of Action arising from the willful misconduct, criminal misconduct, actual fraud or gross negligence."[35] The Plan also included the Gatekeeping Provision which precluded claims against a "Protected Party" unless the bankruptcy court granted leave to file the claim.

## F.     Beneficiaries Under the Claimant Trust

HMIT is an allowed Class 10 Class B/C Limited Partnership Interest and

---

[32] ROA.003349-50; ROA.009594-96.

[33] ROA.006693-95; ROA.009592-96. *See U.S. v. Contorinas*, 672 F.3d 136 (2nd Cir. 2012)

[34] ROA.001693;  ROA.003346.

[35] ROA.001708, 1733-34, 001760-1761. *See generally*, ROA.001660; ROA.001724.

Contingent Trust Interest holder under the Claimant Trust.[36] HMIT's rights in the waterfall are subordinated to the other allowed unsecured creditors in Class 8 and Class 9.[37] However, the vast majority of these "superior" claims consist of the Disputed Claims acquired by the Outsider Purchasers through their wrongful conduct.[38]

### G.   HMIT Filed Its Emergency Motion for Leave

On March 28, 2023, HMIT filed its Motion for Leave in both its individual and derivative capacities seeking leave under the Gatekeeper Provision to file an adversary proceeding against the Outside Purchasers and Seery (collectively, the "Proposed Defendants").[39] HMIT's Motion for Leave attached a draft complaint,[40] asserting claims based upon factual averments identifying the *who, when and what* facts to satisfy relevant pleading requirements. These claims included allegations of willful and knowing breaches of fiduciary duty, participation (or aiding and abetting) in breaches of fiduciary duty, and conspiracy concerning the Disputed Trades.[41]  In addition to seeking declarations of HMIT's rights as a "vested" beneficiary under

---

[36] ROA.003339; ROA.007393.

[37] ROA.003339; ROA.001685-1687.

[38] *See* ROA.003346-47; ROA.007464-7499; ROA.006952.

[39] ROA.001849.

[40] The Motion for Leave was supplemented and attached a revised complaint. ROA.003323.

[41]    ROA.003349-54   ("who");   ROA.003348-50   ("when");   ROA.003349-54   ("what"). ROA.003354; ROA.003349-49; ROA.010062-10134.

the Claimant Trust, the proposed adversary proceeding also seeks other redress, including actual damages, punitive damages, disgorgement, imposition of a constructive trust, equitable disallowance or, alternatively, equitable subordination.[42]

## H.    The Bankruptcy Court Rejected a Rule 12(b)(6)-Type Analysis.

Following communications from the bankruptcy court suggesting an evidentiary format for the hearing, HMIT filed a written objection making clear that any determination concerning "colorability" was based upon a standard that *does not require evidence*. An evidentiary hearing would improperly shift the gatekeeping analysis from "whether the underlying proposed complaint presents colorable claims to whether HMIT will ultimately be successful in its prosecution of the asserted claims."[43] HMIT restated its objections on April 24, 2023, during a court-ordered status conference.[44] HMIT should not have been required to participate in *a trial on the merits to determine whether HMIT could proceed to a trial on the merits*.[45]

---

[42] ROA.003357-3367.

[43] ROA.003309.

[44] ROA.003379-81; ROA.003421-22.

[45] At page 20 of the Order Denying Leave (ROA.000854), the bankruptcy court attempted to justify an evidentiary hearing because the original Motion for Leave attached affidavits. There is no case law suggesting that a motion seeking leave cannot be supported by affidavits, and this does not trigger an evidentiary hearing. Regardless, HMIT supplemented its Motion for Leave withdrawing these affidavits. *See generally*, ROA.003223, ROA.004984. The Court also criticized HMIT for failing to "redact allegations in the proposed complaint" that were supported by the withdrawn affidavits. *See* Order Denying Relief at 84. But, there is no procedural requirement to do so.

15

On May 22, 2023, the Court entered an order holding that "there may be mixed questions of fact and law" whether HMIT's claims are colorable, and ordering that "the parties will be permitted to present evidence (including witness testimony) at the June 8, 2023 hearing."[46] Importantly, this order did not limit or exclude *who* could be called to testify.[47]

HMIT subsequently filed an emergency motion for expedited discovery or a continuance, specifically seeking expedited depositions of Seery and the corporate representatives of the Outside Purchasers – along with relevant documents related to the factual background of HMIT's claims.[48] The document requests focused on, *inter alia*, relevant communications between the Outside Purchasers and Seery in connection with the Disputed Claims, use of MNPI regarding the acquisition of the Disputed Claims, and valuation of the Disputed Claims.[49]

On May 26, 2023, the bankruptcy court denied HMIT's motion for continuance, ordered that the parties were limited to ***two*** depositions ***only*** – Seery and/or Dondero – and that "[n]one of the other parties shall be entitled to any other discovery, including the production of documents from Mr. Seery or Dondero."[50]

---

[46] ROA.004712.

[47] ROA.004712-13.

[48] ROA.004836.

[49] *See* ROA.004845-4914.

[50] ROA.004959.

On June 2, 2023, HMIT took Serry's deposition via videoconference, *but was forced to do so without any document discovery from any party,* even though HMIT had requested document discovery.[51]   HMIT was *prevented from taking the depositions of the Outside Purchasers.*[52]

## I.   The June 8 Hearing and Exclusion of HMIT's Expert Testimony and Strike of Proffer

On June 5, 2023, HMIT timely filed its Witness and Exhibit List related to June 8 Hearing, which included potential witnesses Seery, Dondero, Mark Patrick,[53] and two expert witnesses, Scott Van Meter and Steve Pully ("HMIT's Experts").[54] HMIT's Experts, who were experienced in claims trading and bankruptcy reorganization, were timely disclosed in compliance with the relevant briefing schedule and Bankruptcy Rule 9014. Even though not required, HMIT's witness disclosures attached the experts' CV's and provided an outline of the expert's opinions concerning, *inter alia,* the economic risks associated with the Disputed

---

[51] *See* ROA.004845-4914.

[52] ROA.004959-60. At Page 26 (ROA.000860), The Order Denying Leave references HMIT's prior Rule 202 Petition in Texas state court, which was denied *without prejudice* —presumably based upon arguments of the Outside Purchasers that the bankruptcy court was a more efficient forum to address discovery. *See* ROA.002191-92 When HMIT requested discovery in the bankruptcy court, the Opposing Purchasers still opposed it, and it was denied. ROA.004959. *See* ROA.009884.

[53] Mark Patrick was the Administrator of HMIT. ROA.009764.

[54] ROA.006608-6621.

Trades, Seery's excessive compensation, and the probable use of MNPI.[55] In response, on June 7, 2023, HCM and Seery filed a motion to exclude the testimony of HMIT's Experts.[56]

At the outset of the June 8 Hearing, and over HMIT's objections, the bankruptcy court denied a continuance, proceeded with an evidentiary hearing without a *Daubert* inquiry, refused to permit HMIT's Experts to testify, and took the Motion to Exclude under advisement.[57]

At the June 8 hearing, Dondero provided testimony as a live witness, which included:

- Dondero was a Board Member of MGM, and had a duty to disclose material information he received concerning HCM related to the imminent sale of MGM, which was not publicly available;[58]

- In a telephone call in the Spring 2021, Farallon effectively admitted it had not conducted due diligence and relied on Seery's assurances regarding the value of the Disputed Claims; Farallon also rejected a premium to sell the Disputed Claims because Seery represented that the Disputed Claims were far more valuable;[59]

- Farallon stated that it was "optimistic" about MGM;[60]

---

[55] ROA.006608-6621; ROA.007500-7539.

[56] ROA.9273.

[57] ROA.009912.

[58] ROA.009573-75; ROA.009583-84.

[59] ROA.009589-96.

[60] ROA.009595-96.

A copy of Dondero's handwritten notes reflecting his conversation with Farallon is set forth below:



The Outside Purchasers did not present any evidence controverting Dondero or his notes.

## J.   The Bankruptcy Court's Orders Excluding Experts

On June 16, 2023, the bankruptcy court entered an order excluding HMIT's Experts and characterized HMIT's discovery requests and expert tender as a "sideshow,"[61] even though the requested discovery and expert witness were necessitated by the decision to hold a one-of-a-kind evidentiary hearing.

On June 19, 2023, HMIT filed its Evidentiary Proffer Pursuant to Rule

---

[61] ROA.009914.

103(a)(2), offering declarations from HMIT's Experts.[62] *See also* FED. R. BANKR. P. 9017. But the bankruptcy court struck this proffer stating that the "substance of the excluded evidence was quite apparent from the context"—despite the Court having never heard their opinions.[63]

## K.    The Bankruptcy Court Entered Its Order Denying HMTI's Motion for Leave and its Order Denying HMIT's Motion to Alter

On August 25, 2023, the bankruptcy court issued its Order Denying Leave [Bankr. Dkt. Nos. 3903 and 3904].[64] Among other erroneous holdings, the Court concluded that HMIT lacked standing to bring the proposed claims, and the proposed claims were not "colorable" under a newly crafted standard for "***an additional level of review***," that required HMIT to prove a ***prima facie*** *case* that its proposed claims are "***not without foundation***, are ***not without merit***, and are ***not being pursued for any improper purpose such as harassment***."[65]

On September 8, 2023, HMIT filed it Motion to Alter,[66] seeking modification of the Order Denying Leave. This post-hearing motion was predicated upon new financial data disclosed in July 2023, which corroborated HMIT's "*in the money*"

---

[62] ROA.009944.

[63] *See* ROA.009474-75, ROA.009477 ("[P]lease note our objection."), ROA.009481 ("No experts today").

[64] ROA.000835.

[65] ROA.000925.

[66] ROA.010062.

status and as a real party in interest.[67] These financial disclosures[68] showed that the Claimant Trust had $247 million in assets and $139 million in remaining, unpaid Class 8 and 9 Claims.[69] Thus, these disclosures reinforced HMIT's standing because all Class 8 and Class 9 creditors could be paid in full with interest with surplus assets.

On October 4, 2023, the bankruptcy court denied HMIT's Motion to Alter, holding that the post-hearing financial disclosures were "not materially different than information that was already on file in the bankruptcy case," and the disclosures did not evidence that HMIT was "*in the money*."[70] The bankruptcy court ostensibly made this latter determination based upon unspecified future expenses despite, on the face of the disclosures, the Claimant Trust had $247 million in assets to pay only $139 million in Class 8 and 9 claims.[71]

## X.    SUMMARY OF ARGUMENT

The bankruptcy court committed reversible error as a matter of law and abused its discretion in multiple respects:

- when holding that HMIT lacked constitutional standing (both in its individual and derivative capacities) even though HMIT pled injuries that are fairly traceable to the Proposed Defendants' wrongful conduct, are redressable and are, actual, concrete, and

---

[67] ROA.010064-66; ROA.010070-010083.

[68] ROA.010029-30, ROA.010062.

[69] ROA.010033-34.

[70] ROA.001046-48.

[71] ROA.010064-66; ROA.001047.

imminent.[72] As such, HMIT also has appellate standing as an aggrieved party.[73]

- when holding that HMIT lacked prudential standing (both in its individual and derivative capacities), even though HMIT holds a beneficial interest under relevant Delaware trust law and, accordingly, is a real-party-in-interest, and has held this interest *continuously* since the date of the transactions at issue through the filing of this appeal.

- when it denied HMIT's Motion to Alter which demonstrated that HMIT was "in the money" corroborating HMIT's constitutional and prudential standing.

- when it applied its "hybrid" evidentiary standard for "this" case to evaluate whether HMIT's claims were "colorable."

- when it conducted an evidentiary hearing, over HMIT's objections, and then rejected HMIT's request to conduct relevant discovery or present relevant expert opinions.

- when it ignored well-pleaded factual allegations[74] that established the "colorability" of HMIT's individual and derivative claims.

- when it made sweeping, unsupported generalizations concerning a purported, but disputed relationship between Dondero and HMIT to support the Order Denying Relief.

In sum, the bankruptcy court's holdings and actions leading up to, during and following the June 8 Hearing rendered the entire proceedings an exercise in

---

[72] *See* ROA.003335; ROA.003341; *see also,* ROA.003357-67. ROA.001854-55, ROA.001880-82.

[73] *Id. See also*, *Matter of Highland Capital Management, L.P.*, 74 F.4th 361, 370 (5th Cir. 2023) (a party qualifies as a "person aggrieved" if the decision in question adversely affects the party's pecuniary interest.") (*citing* 7 Collier on Bankruptcy, para. 1109.08 (16th ed. 2022).

[74] ROA.003349-54; ROA.003348-50; ROA.003349-54.

procedural irregularities. The bankruptcy court allowed the Proposed Defendants to cherry-pick their evidence without being subject to meaningful discovery or cross-examination, while forcing HMIT new "additional level of review." From start to finish, the deck was unfairly stacked against HMIT.

## XI.   ARGUMENT & AUTHORITIES

### A.   HMIT has Constitutional and Prudential Standing to Bring Its Claims in Its Individual and Derivative Capacities

To have constitutional standing, a plaintiff "must allege an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable ruling. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011), *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Constitutional standing at the pleading stage is based on the pleadings, and not the merits. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element" of standing) (citation omitted); *see Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (similar). On the other hand, prudential standing focuses on capacity and requires that a party be a "real party in interest."[75]

### (i)   HMIT Has Constitutional Standing

---

[75] *See BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 447 (N.D. Tex. 2015), FED. R. CIV. P. RULE 17.

HMIT has constitutional standing because it has alleged, both directly and derivatively, an injury in fact —that is, an actual, real, imminent, concrete harm "fairly traceable to the defendant's conduct and likely to be redressed by a favorable ruling."[76] The bankruptcy court's finding that the claimed injury is speculative, conjectural or hypothetical ignores the record and mischaracterized HMIT's claims.[77]

By holding that HMIT's stated injury is "a devaluation of its **unvested** Contingent Claimant Trust Interest,"[78] the bankruptcy court ignored the actual harm which the estate, Claimant Trust and HMIT suffered, and also ignored Delaware statutory law and caselaw and HMIT's request for declaration that it was "vested." HMIT suffered actual harm by a diminution of value of HMIT's interest in the Claimant Trust.[79] This was and is caused by allowing Seery, as Trustee, to receive excessive compensation.[80]

Because HMIT is "*in the money*," every dollar paid to Seery in excessive compensation is one dollar that will never flow (but should flow) to HMIT. No conjecture or speculation is required. No hypothetical scenario is presented. Rather,

---

[76] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011),

[77] ROA.003357-003363.

[78] ROA.000904 (Emphasis added).

[79] ROA.003362-67.

[80] ROA.003335; ROA.003354; ROA.003358-59; ROA.001855.

HMIT suffered and continues to suffer actual, real and imminent harm as a result of the conspiracy at issue—the Outside Purchasers received a windfall by exploiting MNPI, and Seery is handsomely rewarded to the detriment of HMIT and the Claimant Trust.[81] The same is true for the Claimant Trust.

To avoid the impact of this nexus (*i.e.* the traceability of harm to wrongful conduct), the Order Denying Leave devotes significant energy (and twelve pages) to a discussion of the claims trading process as being beyond the purview of the bankruptcy court, and that there are "no rules of the road."[82] Therefore, according to the bankruptcy court, there can be no traceable harm.[83]

But this analysis is irrelevant because it does not account for the allegations of the collusive *quid-pro-quo* between Seery and the Outside Purchasers in awarding excessive compensation to Seery. The latter constitutes real, actual, and imminent damage to the Claimant Trust and to HMIT. Whether claims trading is or is not within the purview of the bankruptcy court is not the issue.

The bankruptcy court also seeks to justify its holding concerning

---

[81] ROA.003335; ROA.003354; ROA.003358-59; ROA.001890-91, ROA.1908-1909; ROA.009708-09.

[82] ROA.000885.

[83] The Order Denying Leave states at page 101, that if HMIT wanted "reconsideration" of the allowed claims it was required to do so within one year But, HMIT is not challenging the underlying settlement of the claims as approved by the bankruptcy court. Rather, HMIT seeks redress because of a collusive bargain between the Outside Purchasers and Seery unrelated to the approvals.

constitutional standing by arguing that Seery's excessive compensation "stems from a court-sanctioned and creditor approved process for approving compensation."[84] But this "finding" confounds HMIT's allegations—the proposed claims do not attack the Court's earlier process or approvals; rather, the proposed claims arise out of a tortious *abuse* of that process—an abuse that occurred outside of the bankruptcy court.[85]

Lastly, the Order Denying Leave seeks to minimize HMIT's claims concerning Seery's excessive compensation by characterizing the allegations as speculative. But HMIT's proposed pleadings set forth well-pleaded factual allegations, which, contrary to the Bankruptcy Court's statement, were not "threadbare" recitals,[86] but included the "who, what and when" of the claims.[87] Evidence at the June 8 Hearing also supported actual harm regarding Seery's compensation, including:

- Seery admitted he had done no market study to support the reasonableness of his Post-Effective Date compensation as Trustee;[88]

- Seery testified he was unaware whether the Outside Purchasers (who controlled the Oversight Board and his financial package) had undertaken any market studies to support his compensation

---

[84] ROA.000905.

[85] *See* ROA.003335; ROA.009708-09.

[86] ROA.000926.

[87] ROA.003349-54 ("who"); ROA.003348-50 ("when"); ROA.003349-54 ("what").

[88] ROA.009711.

as Trustee;[89]

- Seery's compensation as Trustee was supposed to be reduced in 2022, but then never happened.[90]

- There is no evidence to justify Seery's ongoing compensation as Trustee despite, admittedly, the Trustee's tasks are diminishing.[91]

Moreover, although HMIT's Experts were prepared to offer opinions that Seery's compensation was excessive, the bankruptcy court struck their opinions as "unhelpful," and then struck a proffer of their opinions.[92] So, on the one hand, the bankruptcy court ignored appropriate pleading standards of review, opting instead to consider evidence, and then severely limited or struck HMIT's evidence. To be clear, HMIT plausibly alleged a collusive *quid quo pro* by which Seery was assured undeserved compensation, which includes annual Base Compensation of $1.8 million and bonuses up to $8 million.[93] HMIT's pleadings were more than sufficient to support constitutional standing at this stage of the case.  So was the evidence.

(ii)  ***Constitutional Standing and Prudential Standing are Supported by***

---

[89] ROA.009711

[90] ROA.009708-9709.

[91] The bankruptcy court held Seery's compensation could not be excessive because "HMIT testified…it had no personal knowledge" of Seery actual compensation when HMIT filed its Motion for Leave. ROA.000904. But this misstates the appropriate burden at a pleading stage. HMIT is entitled to plead on "information and belief," which is the proper in the Fifth Circuit. *See League of United Latin Am. Citizens v. Abbott*, 604 F. Supp 463, 496-97 (W.D. Tex. 2022) (citing *Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004).

[92] ROA.006609-11, ROA.009944-010012.

[93] ROA.003354; ROA.007551-56, ROA.009709.

### HMIT's "in the money" Status

HMIT's constitutional and prudential standing is also confirmed by recent financial disclosures described in HMIT's Motion to Alter.[94] As shown in that motion, HMIT is "*in the money*." As such, there is no reasonable argument that HMIT's claims are speculative, conjectural or hypothetical. Rather, by being "*in the money*," every dollar lost due to Seery's collusion is a dollar lost to the Claimant Trust and HMIT.

Despite recognizing that these financial disclosures were "not materially different" to disclosures when HMIT filed its Motion for Leave[95] (thus HMIT was "*in the money*" much earlier), the bankruptcy court disregarded simple mathematical truisms and stretched to support its holding by discussing "supplemental notes" which included undisclosed, indefinite "administrative expenses and legal fees" – most of which are being incurred by the Litigation Trustee in a lawsuit against HMIT, among others. However, there is *no evidence* quantifying the amount of these *potential* and *speculative* fees, nor is there any evidence these fees cannot be paid before the Class 8 and Class 9 beneficiaries are fully paid.

Seery's duties under the CTA also have not been fulfilled, and these breaches further support standing. Seery is obligated to: (a) pay the remaining Class 8 and 9

---

[94] ROA.010062-010128.

[95] ROA.001046-47.

claims in full, (b) file the beneficiary certification, (c) vest the Class 10 and 11 Equity Interests, [96] and (d) "not unduly prolong the duration of the Claimant Trust."[97] Thus, not only has HMIT demonstrated that it is "*in the money*," even accepting the Court's reasoning that there is *potentially* other, non-specific, undisclosed financial information, HMIT has standing to pursue its current claims and is also entitled to seek declaratory relief concerning the "vesting" of its interests under the CTA.

(iii)  ***Prudential Standing Exists Under Delaware Law***

Here, HMIT is a "real party in interest," and enjoys prudential standing to bring its claims (both individually and derivatively) because it is a "beneficial owner" in the Claimant Trust. DEL. CODE. ANN. tit. 12, § 3816. Here, HMIT was and remains a beneficial owner because it is a contingent beneficiary under Delaware law and also should be deemed "vested.".[98] HMIT also had prudential standing to bring the proposed claims derivatively under Delaware law.[99]

---

[96] *See* ROA.7369-70, ROA.007392-95.

[97] *See* ROA.007377-81.

[98] ROA.007393. *See Estate of Cornell v. Johnson*, 367 P.3d 173, 178 (Idaho 2016) ("[V]esting cannot be postponed by unreasonable delay in distributing an estate and [] when there is such delay, contingent interests vest at the time distribution ***should*** have been made." (emphasis added)).

[99] *See* RESTATEMENT (SECOND) OF TRUSTS Sec. 199; *Scanlon v. Eisenberg*, 2012 WL 169765 (7th Cir. Jan. 20, 2012); *Mayfield v. Peek*, 446 S.W.3d 253 (Tex. App.—El Paso 2017, no pet.); *Siefert v. Leonhardt*, 975 S.W.2d 489, 492–93 (Mo. Ct. App. 1998) (holders of contingent interest in trust have standing to bring suit against trustee); *Smith v. Bank of Clearwater*, 479 So. 2d 755 (Fla. Dist. Ct. App. 1985) (contingent beneficiary was entitled to bring suit against trustee for alleged mismanagement of trust); *Giagnorio v. Emmett C. Torkelson Tr.*, 292 Ill. App. 3d 318, 686 N.E.2d 42 (1997) (contingent beneficiary had standing to bring action for breach of fiduciary duty).

Under Delaware law, even if HMIT's interest in the Claimant Trust is deemed "contingent," HMIT is an intended beneficiary of the Claimant Trust, and HMIT enjoyed this status when it filed its Motion for Leave, and enjoys this status today. HMIT also has separate standing to bring derivative claims because it is a beneficial owner of the Claimant Trust. DEL. CODE ANN. Tit. 12, § 3816.

The bankruptcy court's holding that HMIT failed to satisfy a "continuous ownership requirement" is likewise misplaced. [100] HMIT held a continuous ownership interest at the time of all relevant transactions. HMIT had an ownership interest *before and after* the Effective Date; the type of interest merely changed.[101] Prior to the Effective Date, HMIT held a limited partnership interest; after the Effective Date, that interest was exchanged for a beneficial ownership interest under the CTA. *Id.*. The bankruptcy court cited no authority holding that a plaintiff fails the "continuous ownership requirement" when, in fact, it remains a continuous interest owner, as here. Regardless, HMIT also is suing for "transactions" that occurred post-Effective Date—*i.e.*, Seery's revised and excessive compensation awards—during which HMIT's post-Effective Date beneficial interest existed from start to finish.

Under Delaware law, a "beneficial owner" means "***any*** owner of a beneficial

---

[100] ROA.000910.

[101] ROA.000870-72. *See* ROA.003339, ROA003342.

interest in a statutory trust . . . ." DEL. CODE. ANN. Tit. 12, § 3801 (emphasis added).

A "beneficial interest" is the "profit, benefit, or advantage resulting from a contract."

*Mangano v. Pericor Therapeutics*, No. CIV.A. 3777-VCN, 2009 WL 4345149, at

\*5 (Del. Ch. Dec. 1, 2009). In evaluating beneficial interests relating to derivative

standing, Delaware courts recognize that the statute "use[s] … the general term

beneficiary, without any language restricting the class of beneficiary to whom it

refers…" *Est. of Tigani*, No. CV 7339-ML, 2016 WL 593169, at \*14 (Del. Ch. Feb.

12, 2016).

    Although the Delaware Code does not define "beneficiary," Delaware courts

follow the RESTATEMENT (THIRD) OF TRUSTS,[102] which defines beneficiaries as both

"vested and contingent beneficiaries."[103] Moreover, when interpreting undefined

statutory terms, Delaware law requires that such terms be given "reasonable and

sensible meaning in light of their intent and purpose." *Angstadt v. Red Clay Consol.

Sch. Dist.*, 4 A.3d 382, 390 (Del. 2010). When doing so, Delaware courts

traditionally rely on dictionaries. *See id.*

    Here, Black's Law Dictionary defines "beneficiary" to include, "[s]omeone

who is designated to receive the advantages from an action or change  . . . or to

---

[102] *See, e.g.*, *In re Tr. Under Will of Flint for the Benefit of Shadek*, 118 A.3d 182, 195 (Del. Ch. 2015); *Tigani v. Tigani*, No. CV 2017-0786-KSJM, 2021 WL 1197576, at \*14 (Del. Ch. Mar. 30, 2021), *aff'd*, 271 A.3d 741 (Del. 2022).

[103] RESTATEMENT (THIRD) OF TRUSTS, § 48 cmt. a (2003) (emphasis added).

receive something as a result of a legal arrangement or instrument" and  includes both "contingent benficiar[ies]" and "direct benficiar[ies]."[104] By contrast, Black's Law Dictionary distinguishes "incidental beneficiary" as a "third-party beneficiary, who, though benefiting indirectly, is not intended to benefit from a contract and thus does not acquire rights under the contract."[105] Here, there should be no doubt HMIT is an intended beneficiary due to its place in the distribution waterfall.

In light of the RESTATEMENT and Black's Law Dictionary, the only reasonable interpretation of the word "beneficiary," as used in Section 3327 of the Delaware Code, includes contingent beneficiaries. As the Delaware Supreme Court explained, a court "may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature." *Giuiricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) (citing *Wilmington Trust Co. v. Barry*, 338 A.2d 575, 578 (Del Super. Ct. 1975), *aff'd*, 359 A.2d 664 (Del. 1976)). But, the bankruptcy court erred when it did just that. *See Estate of Tigani*, No. CV 7339-ML, 2016 WL 593169, at *14 (Del. Ch. Feb. 12, 2016); *Estate of Necastro*, No. C.A. 10,538, 1991 WL 29958, at *1 (Del. Ch. Feb. 28, 1991) (rejecting a "restrictive reading" of "beneficiary" under 12 DEL. CODE. § 2302(d) and instead holding that "contingent beneficiaries" have standing.)

HMIT's proposed claims include willful misconduct that occurred while

---

[104] *Black's Law Dictionary* (11th ed. 2019).

[105] *Id.*

Seery owed fiduciary duties to the Debtor, and continued to owe duties as Trustee of the Claimant Trust.[106] Pursuant to the Plan, the estate's causes of action against Seery were assigned to the Claimant Trust.[107] Therefore, the Plan does not impede HMIT's standing to bring its derivative claims but specifically allows such claims on behalf of the Claimant Trust. To the extent these claims accrued post-Effective Date, then the Claimant Trust owns those claims and HMIT is a beneficial owner under the Claimant Trust. Thus, HMIT has both derivative and prudential standing.[108]

(iv)   ***HMIT Also Has a Direct Claim***

The bankruptcy court incorrectly held that HMIT had no prudential standing to assert a direct claim because HMIT's alleged harm "comes about only because the harm to the Debtor," so the alleged "injury is derivative." But, HMIT does have viable claims.

The bankruptcy court relied on authority addressing a creditor or shareholder's right to bring direct and derivative claims against third

---

[106] *See Rende v. Rende*, No. 2021-0734-SEM, 2023 WL 2180572, at *11 (Del. Ch. Feb. 23, 2023) (Delaware trustee owes fiduciary duties); *See In re Xtreme Power Inc.*, 563 B.R. 614, 632-33 (Bankr. W.D. Tex. 2016) (fiduciary duties owed by corporate officers and directors under Delaware law); *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245-46 (5th Cir. 1988) (duties owed by debtors-in-possession) ("*LWE*").

[107] ROA.007369, 001708, 001733-34, 001760-1761. *See generally*, ROA.001660.

[108] The bankruptcy court's statements, at ROA.000916, regarding purported "checks and balances" under the CTA are inapposite because of massive conflicts; it ignores that the Proposed Claims are against the Outside Purchasers, who control the Oversight Board under the CTA, and the Litigation Sub-Trustee continues to pursue litigation against HMIT.

parties.[109]   But here, HMIT—who holds a beneficial interest—is asserting claims against the trustee of a trust for harms the trustee inflicted specifically upon HMIT. Under established law, a beneficial interest owner has standing and a right to assert individual claims against a trustee for misconduct and mismanagement, as HMIT pleaded.  RESTATEMENT (SECOND) OF TRUSTS SEC. 199; *see, e.g.*, *Scanlan v. Eisenberg*, 669 F.3d 838, 843 (7th Cir. 2012).

The bankruptcy court also held that HMIT would not have standing under *Louisiana World* ("LWE").[110] But HMIT relied on LWE for the colorability standard and the duties owed to HMIT. Regardless, LWE supports that standing or capacity to sue is derived from state law, and HMIT has demonstrated its standing to bring the proposed action individually and derivatively under Delaware law.

### (v)   *Seery's Duties under Delaware Law*

The trustee of a Delaware statutory trust has duties of loyalty, good faith, and due care. *See* DEL. CODE ANN. Tit. 12, § 3809; *Rende v. Rende*, No. 2021-0734-SEM, 2023 WL 2180572, at *11 (Del. Ch. Feb. 23, 2023). Delaware law also prohibits any disclaimer of the duty of good faith and fair dealing. *See In re National Collegiate Student Loan Trusts Litigation*, 251 A.3d 116, 185-86 (Del. Ch. 2020) (" . . . the DSTA forbids parties from eliminating the "implied contractual covenant of

---

[109] ROA.000927.

[110] ROA.000908-09.

good faith and fair dealing.") (*citing* DEL. CODE. ANN. Tit. 12, § 3806).

Here, Seery's duties of good faith and fair dealing are relevant because the Proposed Defendants argue that HMIT's status as a "beneficiary" under the CTA is conditional upon Seery's affirmative act of filing a certification declaring HMIT "vested." Although this makes Seery the proverbial "*fox guarding the hen house*," Delaware law is clear: "[s]tated in its most general terms, the implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotations omitted).

Seery's refusal to perform a simple ministerial task to "vest" Class 10 warrants treating HMIT as fully vested, and this is precisely what HMIT's request for declaratory relief sought.[111] "[V]esting cannot be postponed by unreasonable delay in distributing an estate and [] when there is such delay, contingent interests vest at the time distribution ***should*** have been made." *Estate of Cornell v. Johnson*, 367 P.3d 173, 178 (Idaho 2016) (emphasis added) (discussed in RESTATEMENT (SECOND) OF TRUSTS § 198 (1959)); *see also Edwards v. Gillis*, 146 Cal.Rptr.3d 256, 263 (Cal. Ct. App. 4 Dist., 2012). But the bankruptcy court mischaracterized the declaratory judgment action and committed reversible error when it did so. HMIT seeks

---

[111] ROA.003362.

declaratory relief concerning, *inter alia*, its rights as a "vested" beneficiary under the Claimant Trust. This was one of many claims for declaratory relief which the bankruptcy court ignored.[112]

The Claimant Trust has had sufficient assets to pay unsecured creditors in Classes 8 and 9 in full with interest.[113] Indeed, according to the bankruptcy court, these resources existed even earlier and at least when HMIT filed its Motion for Leave.[114] And, the CTA required Seery, as Trustee, to "make timely distributions and not unduly prolong the duration of the Claimant Trust."[115]

The bankruptcy court's reliance on *In re Nat'l Coll. Student Loan Tr. Litig.*,[116] is misplaced,[117] because that case did not involve *contingent* beneficial interests. Instead, it involved creditors seeking to assert a security interest against collateral owned by the trust - but that is not the same as having a contingent beneficial interest. Therefore, the bankruptcy court's statement that it is "pure and simple" HMIT does

---

[112] Declaratory judgment relief is proper when there is an actual controversy that has arisen and exists relating to the rights and duties of the parties. *In re Coral Petroleum, Inc.*, 50 B.R. 830, 835-36 (Bk. S.D. Tex. 1985) (*citing Allstate Insurance Co. v. Employers Liability Assurance Corp.,* 445 F.2d 1278, 1280 (5th Cir.1971).

[113] ROA.010064-66, *see* ROA.010029, ROA.010035.

[114] ROA.001046-47.

[115] CTA, Dkt. 3521-5 at § 3.2(a). ROA.007377.

[116] 251 A.3d 116, 191 (Del. Ch. 2020).

[117] Courts reject "the argument that an investor cannot be considered a beneficial owner of an equity security when the investor's right to acquire the security is contingent upon a future event." § 22:28. *Beneficial ownership and convertible securitie*s, 1F Going Public Corp. § 22:28 (collecting cases).

not have an interest under the CTA is wrong.

(vi)  ***HMIT Has Legally Redressable Remedies Which Supports Standing***

Contrary to the Order Denying Leave, constitutional standing is also supported by the redressable nature of the harm that HMIT and the Claimant Trust have suffered. HMIT's proposed pleading asserts entitlement to equitable remedies, such as disgorgement and constructive trust, which are available to deter and rectify the type of willful misconduct alleged in HMIT's Motion for Leave. The requested remedies also include equitable disallowance.[118] All of these remedies provide viable redress.

*In the Matter of Mobile Steel Co,*[119] which is cited in the Order Denying Leave, the Fifth Circuit generally limited the court's equitable powers to subordination rather than equitable disallowance but ***did not foreclose*** the viability of equitable disallowance in some circumstances. *See* 563 F.2d 692, 699 n. 10 (5th Cir. 1977). Furthermore, the U.S. Supreme Court's decision in *Pepper v. Litton* empowers bankruptcy courts to fashion disallowance remedies. 308 U.S. 295, 304-11 (1939). Bankruptcy Code § 510 is "intended to codify case law, such as Pepper v. Litton . . . and is not intended to limit the court's power in any way…. Nor does [it] preclude a bankruptcy court from completely disallowing a claim in appropriate

---

[118] ROA.003360-61.

[119] 563 F.2d 692 (5th Cir. 1977).

circumstances." *In re Adelphia Commun. Corp.*, 365 B.R. 24, 71-72 (Bankr. S.D.N.Y. 2007), *aff'd in part sub nom. Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 64 (S.D.N.Y. 2008), *adhered to on reconsideration,* 05 CIV. 9050 (LMM), 2008 WL 1959542 (S.D.N.Y. May 5, 2008) (emphasis and omissions in original).

The Fifth Circuit's decision in *Mobile Steel* was premised on the notion that equitable disallowance was not necessary because creditors typically "are fully protected by subordination" and "[i]f the misconduct directed against the bankrupt is so extreme that disallowance might appear to be warranted, then *surely* the claim is either invalid or the bankrupt possesses a clear defense against it." *Mobile Steel*, 563 F.2d at 699 n. 10 (emphasis added). However, the facts in *Mobile Steel* are not present here.

The Outside Purchasers effectively occupy more than 94% of Class 8 claims.[120] Thus, subordination makes no sense because it would effectively require the Outside Purchasers to subordinate to themselves, and this would never effectively address their wrongful conduct. They would still profit from their wrongdoing.

In addition to equitable disallowance, HMIT also alleges disgorgement and seeks a constructive trust, both of which are viable forms of redress.[121] The

---

[120] ROA.003356.

[121] *Infra* at Section XI.A.iv.

bankruptcy court erred when holding that unjust enrichment is not an independent cause of action under Texas law,[122] and in doing so directly disregarded established Fifth Circuit authority. *See*, *e.g.*, *King v. Baylor Univ.*, 46 F.4th 344, 367 (5th Cir. 2022). The same is true under Delaware law. *See Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296 (Del. Ch. 2022). Also, contrary to the bankruptcy court's statements,[123] Seery's compensation is fixed by his allies on the Oversight Board and the amount, *i.e.*, the excessiveness of Seery's compensation, is not limited by an express contract, precluding unjust enrichment as a viable remedy. Simply put, there is no express contract at issue here. The same is true under Delaware law.[124]

Here, disgorgement is an appropriate remedy for breach of fiduciary duty under both Texas law[125] and Delaware law.[126] Disgorgement is also an appropriate remedy for unjust enrichment under Texas law and under Delaware law.[127] Lastly, disgorgement is an appropriate remedy for aiding and abetting a breach of fiduciary

---

[122] ROA.000936.

[123] ROA.000936.

[124] *See Prospect Street Energy v. Bhargava*, 2016 WL 446202 at *8 (Del. S. Ct.  January 27, 2016) (undisclosed kickback agreement was not claim subject to separate contract between parties).
[125] *See Kobach Tool Co. v. Corbett-Wallace Corporation*, 160 S.W. 2d 509 (Tex. 1942).

[126] *See Metro Storage International, LLC v. Herron*, 275 A.3d 810 (Del. Ch. 2022); *see also In re: Mobilactive Media, LLC*, 2013 WL297950 at 24 (Dec. Ch. Jan. 25, 2013), *Prospect Street Energy v. Bhargava*, 2016 WL 446202 at *8 (Del. S. Ct.  January 27, 2016) (disgorgement, constructive trust and unjust enrichment available under Delaware law); .
[127] *Hunter v. Shell Oil Co.*, 198 F.2d 485 (5th Cir. 1952).

duty, which is precisely what has been asserted against the Outsider Purchasers.[128]

Lastly, HMIT properly alleged punitive damages which, contrary to the Order Denying Leave,[129] are recoverable as alleged in this case under Delaware law. *See Niehoff v. Maynard,* 299 F.3d 41 (1st Cirt. 2002).

## B.   *The Bankruptcy Court's Application of a Heightened "Hybrid" Barton Analysis was Erroneous*

The bankruptcy court applied an erroneous standard for defining a "colorable" claim. In effect, the bankruptcy court fashioned an incorrect standard for "***this bankruptcy case***" that forced HMIT to present *prima facie* evidence on the merits of its claims – while concurrently depriving HMIT of basic discovery that due process required under the evidentiary scenario ordered by the bankruptcy court.

### 1.   The Gatekeeping Provision Does Not Support a Heightened *Barton* Standard

The bankruptcy court committed reversible error when it fabricated a one-off standard to determine "colorability"—which it described as "***an additional level of review***," for "***this bankruptcy case***" requiring HMIT to prove *prima facie* that its proposed claims are "***not without foundation***, are ***not without merit***, and are ***not being pursued for any improper purpose such as harassment***."[130] The bankruptcy

---

[128] *See US Bank Assoc. v. Verizon Commun., Inc.*, 817 F.Supp. 934, 944 (N.D. Tex. 2011) (applying Delaware law). *See also*, ROA.003357-3367.

[129] Order Denying Leave at 103.

[130] ROA.000925.

court incorporated as part of this new standard the *prima facie* proof standard under the *Barton* doctrine.[131] But, *Barton* only applies when there is a claim in a non-appointing court that "requires a party to obtain leave from the appointing court before bringing suit against a court-appointed receiver." *See In re Provider Meds, LP*, 514 B.R. 473, 475 (Bankr. N.D. Tex. 2014).[132]

To justify this newly-fabricated standard, the bankruptcy court relied on *Silver v. City of San Antonio*.[133] However, this reliance is misplaced because, unlike the plaintiff in *Silver*, HMIT *is not and has never been deemed a vexatious litigant;* HMIT fully complied with the bankruptcy court's Gatekeeping Provision; HMIT has not filed the same claims over and over.[134] Thus, the bankruptcy court's creation of an *heightened* standard was wholly inappropriate at this initial pleading stage.

## 2.    The Bankruptcy Court's Impermissible Extension of the *Barton* Doctrine

---

[131] ROA.000925.

[132] Here, the drafters also opted to use the "colorable" standard, not a *Barton* standard, and this choice must be construed as having a consequence. *In re Phoenix Petroleum Co.*, 278 B.R. 385 (Bankr. E.D. Pa. 2001); *In re Deepwater Horizon*, 732 F.3d 326, 34[2] (5th Cir. 2013).

[133] *Silver v. City of San Antonio*, No. SA-19-MC-1490-JKP, 2020 WL 3803922, at *6 (W.D. Tex. July 7, 2020). *See* Order Denying Leave. ROA.000924.

[134] The standard in the *Silver* matters are inapposite because the plaintiff was *in forma pauperis* ("IFP"), which the court stated is statutorily broader. *Silver v. Perez*, No. SA-20-MC-0655-JKP, 2020 WL 3790489, at *4 (W.D. Tex. July 7, 2020)

The *Barton* Doctrine is limited to protect court-appointed trustees.[135] Neither the *Carroll* case nor any other Fifth Circuit case has applied the *Barton* doctrine to cloak corporate officers with judicial immunity and exculpate them from entire categories of claims if filed within the appointing court, *i.e.,* the bankruptcy court.[136] *In re Provider Meds, LP*, 514 B.R. 473, 476 (N.D. Tex. 2014) (parties do not need leave of court to assert claims against trustees in bankruptcy court that appointed them)

The Fifth Circuit also noted that the *Barton* doctrine is rooted in the "concern that if debtors could sue the trustee in a foreign jurisdiction, the foreign 'court would have the practical power to turn bankruptcy losers into bankruptcy winners.'" *Carroll*, 788 F.3d at 506 (*quoting In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998)). Here, however, HMIT sought leave to file the proposed claims in the *same* bankruptcy court that appointed the trustee—a circumstance in which this Court has held a *Barton* inquiry to be inappropriate. *See In re Provider Meds, LP*, 514 B.R. 473, 476 (N.D. Tex. 2014).

---

[135] *See In re Vistacare Group, LLC*, 678 F.3d 218, 234 (3d Cir. 2012) (citing *In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998); *In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984).

[136] The cases relied upon by the bankruptcy court were in the distinct context of protecting a bankruptcy trustee in an action *outside* the bankruptcy court--facts which do not exist here, Even then, not all of those courts found that an evidentiary hearing was necessary. *Vistacare*, 678 F.3d at 233. *Accord In re World Mktg. Chi., LLC*, 584 B.R. 737, 743 (Bankr. N.D. Ill. 2018) *Leighton Holdings, Ltd. v. Belofsky* (In re Kids Creek Partners, L.P.), 2000 WL 1761020, at *2 (N.D. Ill. Nov. 30, 2000) (same).

Other policy arguments for expanding *Barton* are unavailing. The bankruptcy court's articulated concern that none of the Independent Directors would have taken the role without a gatekeeper provision[137] does not justify a *Barton* standard. "[T]he Barton doctrine is grounded in the exclusive nature of *in rem* jurisdiction. The need to attract qualified individuals to serve as receivers and bankruptcy trustees might be a legitimate policy concern, but it has nothing to do with subject-matter jurisdiction." *Chua v. Ekonomou*, 1 F.4th 948, 954 (11th Cir. 2021).

### 3.      A "Colorable" Claim Need Only Have "Some Possible Validity"

By imposing an elevated standard, the bankruptcy court ignored binding Fifth Circuit authority. Citing *Richardson v. United States*, 468 U.S. 317 (1984), the Fifth Circuit held that a "colorable" claim is one with "*some possible validity.*" *In re Deepwater Horizon*, 732 F.3d 326, 340 (5th Cir. 2013) (quoting *Richardson*, 468 U.S. at 326 n. 6). In *Deepwater Horizon*, the Fifth Circuit made clear that whether a claim is colorable is based on *allegations* and not merits-based proof: "A plaintiff's claim is colorable if he can *allege* standing and the elements necessary to state a claim on which relief can be granted—whether or not his claim is ultimately meritorious" *Id*. At 341 (emphasis in original).

---

[137] ROA.000843.

Other courts also apply the "colorable" standard in the same manner as in *Deepwater Horizon* in a variety of contexts – without requiring an evidentiary hearing and instead relying on the four-corners of a proposed claim. *See, e.g., Richardson v. United States*, 468 U.S. 317 (1984); *Becker v. Noe*, No. CV ELH-18-00931, 2019 WL 1415483, at \*18 (D. Md. Mar. 27, 2019); *Trippodo v. SP Plus Corp.*, No. 4:20-CV-04063, 2021 WL 2446204, at \*3 (S.D. Tex. May 21, 2021), report and recommendation adopted, No. 4:20-CV-04063, 2021 WL 2446191 (S.D. Tex. June 15, 2021). Here, the bankruptcy court should not have required an evidentiary hearing to judge the "merits" or credibility of HMIT's claims. *See Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 252-53 and n. 15 (5th Cir. 1988) (no evidentiary hearing was necessary to determine "colorability").

## C.    HMIT Pled "Colorable" and Plausible Claims Under the Proper, Non-Evidentiary Standard

HMIT alleged "colorable" claims with "some possible validity," [138] and otherwise satisfied the plausibility standards under FED. R. CIV. P. 12(b)(6). *See Smith v. Bank of Am., NA*, 615 F.App'x 830, 833 (5th Cir. 2015). A Rule 12(b)(6) motion is appropriate if the plaintiff has not provided fair notice of its claim or factual allegations that — when accepted as true — are plausible and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

---

[138] *See In re Deepwater Horizon*, 732 F.3d 326, 340 (5th Cir. 2013).

44

*Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). A claim has facial plausibility when the plaintiff pleads sufficient factual content that, when accepted as true, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949.[139]

### 1. HMIT's Factual Averments are Well-Plead and are "Colorable" and Plausible.

Although the bankruptcy court alternatively criticized HMIT's factual allegations as "threadbare," "conclusory," "speculative," "devoid of merit," or include "unsubstantiated inferences,"[140] it is clear upon any fair review that the factual averments reveal substantial detail concerning that exchange of MNPI , the lack of due diligence, the collusive nature of the bargain to award Seery excessive compensation, and more. The factual averments supporting HMIT's claims for breach of fiduciary duty against Seery are both plausible and "colorable." The factual averments supporting the claims against the Outside Purchasers are equally plausible and "colorable." The proposed pleadings provide fair notice of HMIT's claims and, when accepted as true, rise far beyond mere speculation allowing the bankruptcy court the ability to infer liability.

---

[139] All of the claims set forth in the proposed pleading: in Count I (breach of fiduciary duty), Count II (knowing participation in breach of fiduciary duties), Count III (conspiracy), Count IV (equitable disallowance), Count V (unjust enrichment and constructive trust), and Count VI (declaratory relief) are founded upon well pleaded allegations, which state plausible and colorable claims, which the bankruptcy court denied and committed reversible error when it did so.

[140] ROA.00925-26.

Under Count 1 of the proposed pleading, HMIT alleged breach of fiduciary duty against Seery. Under Count 2, HMIT alleged that the Outside Purchasers knowingly participated in (or aided and abetted) Seery's breaches. HMIT also alleged conspiracy, unjust enrichment, constructive trust, disgorgement, and sought declaratory relief.[141] The proposed pleading accurately states the elements of each claim and each claim is factually supported.[142]

To bring a claim for fiduciary duty, Delaware law requires "a plaintiff must allege '(1) that a fiduciary duty existed and (2) that the defendant breached that duty.'"[143] To bring a claim for aiding and abetting a breach of fiduciary duty, Delaware law provides "the plaintiff must plead that: (1) a fiduciary relationship existed, (2) the fiduciary breached its duty, (3) the non-fiduciary defendant knowingly participated in that breach, and (4) damages to the plaintiff resulted from the concerted actions of the defendant and the fiduciary."[144]

Here, HMIT pled that Seery, as CEO and CRO of a debtor-in-possession, owed fiduciary duties to the Debtor, the Debtor's Estate and HMIT, as equity.[145]

---

[141] ROA.003357-3367.

[142] ROA.003357-67.

[143] *Brooks v. United Dev. Funding III, L.P.*, 2020 WL 6132230, at *30 (N.D. Tex. Apr. 15, 2020) (quoting *Joseph C. Bamford & Young Min Ban v. Penfold, L.P.*, 2020 WL 967942, at *8 (Del. Ch. Feb. 28, 2020)).

[144] *Atl. NWI, LLC v. Carlyle Group Inc.*, No. 2021-0944-SG, 2022 WL 15800272, at *6 (Del. Ch. Oct. 28, 2022).

[145] ROA.003338-41, 3357. The bankruptcy court quoted *Gilbert v El Paso Co.*, 1988 WL 124325,

These duties included, without limitation, the duty of loyalty and the duty to avoid conflicts of interests.[146] Seery also owed fiduciary duties to act in the best interest of Debtor's estate, and HMIT, to maximize the value of the Debtor's Estate. *See In re Johnson*, 433 B.R. 626 (S.D. Tex. 2010) *Cheng v. K & S Diversified Investments (In re Cheng)*, 308 B.R. 448, 45[5] (9th Cir. BAP 2004),'*aff'd*, 160 Fed.Appx. 64[4] (9th Cir.2005); *Yellowhouse Machinery Co. v. Mack (In re Hughes)*, 704 F.2d 820, 82[2] (5th Cir.1983). Following the Effective Date, Seery also owed fiduciary duties as the Trustee under Delaware law and under the terms of the CTA.[147]

HMIT's proposed pleadings set forth plausible factual allegations that Seery breached his fiduciary duties, including by: (a) falsely representing the value of the Debtor's estate to be less than it actually was,[148] (b) disclosing MNPI to third-parties with the intent to place "allies" on the Oversight Board,[149] (c) accepting excessive compensation from his business allies (the Outside Purchasers) on the Oversight

---

at *9 (Del. Ch. Nov. 21, 1988) to hold Seery did not owe fiduciary duties but the bankruptcy court neglected to include other significant language from that case *See Gilbert* at *9. HMIT was not some ordinary stakeholder, HMIT was, ostensibly, *the* 99.5% stakeholder in the Debtor. *See also, Eisenberg v. Chicago Milwaukee Corp.,* Del.Ch.–537 A.2d 1051, 1062 (1987).

[146] *See In re Xtreme Power Inc.*, 563 B.R. 614, 632-33 (Bankr. W.D. Tex. 2016); *LWE*, 858 F.2d 233, 245-46 (5th Cir. 1988). The bankruptcy court's assertion that "[u]pon confirmation of the Plan, the bankruptcy estate of Highland ceased to exist" is inapposite. ROA.00909. The duties still existed when they were breached, and those claims survive confirmation.

[147] *See Rende v. Rende*, No. 2021-0734-SEM, 2023 WL 2180572, at *11 (Del. Ch. Feb. 23, 2023); *see also*, *In re Xtreme Power Inc.*, 563 B.R. 614, 632-33 (Bankr. W.D. Tex. 2016); *LWE*, 858 F.2d 233, 245-46 (5th Cir. 1988).

[148] ROA.003354; ROA.003348-54; ROA.010062-10134.

[149] ROA.003354; ROA.003348-54; ROA.010062-10134.

Board,[150] and (d) de-valuing the estate and the Claimant Trust due to his financial self-interest and excessive compensation.[151]

The proposed pleading also sets forth plausible factual allegations that the Outside Purchasers knowingly participated in the breaches of Seery's fiduciary duties and knowingly traded on MNPI. The Outside Purchasers were sophisticated hedge funds who held fiduciary positions vis-vis their own investors and they were no strangers to fiduciary relationships.[152] And, at least circumstantially, the Outside Purchasers' multimillion-dollar investments made no rational economic sense unless MNPI was improperly exploited.

The proposed pleadings also set forth factual averments, which taken as true, plausibly reflect Farallon's admissions that it relied upon Seery, did no due diligence, and expected huge profits when publicly available information suggested otherwise.[153] Lastly, the proposed pleading sets forth plausible factual allegations that the Outside Purchasers and Seery undertook their collusive conduct in secret. Indeed, shell entities were created to acquire the Disputed Claims to conceal Farallon and Stonehill's involvement. This is a red flag characteristic of a conspiracy.

These allegations satisfy a 12(b)(6) standard because they were more than

---

[150]  ROA.003354; ROA.003348-54; ROA.010062-10134.

[151] ROA.003357.

[152] ROA.003334.

[153] ROA.003347-54

"speculation" and provided concrete averments from which liability can be reasonably inferred. The evidence presented at the June 8 Hearing supported these pleadings.

**D.    Alternatively, if the Bankruptcy Court Correctly Determined that Its "Hybrid" *Barton* Analysis Controls, the Bankruptcy Court Abused Its Discretion When It Denied HMIT's Requested Discovery and Continuance**

The bankruptcy court's errors were compounded when it denied HMIT's requested discovery or a continuance to conduct proper discovery. Forcing a party to present evidence on the merits of a case, while depriving that party from undertaking discovery to present evidence on the merits, violates due process. Indeed, in any proceedings where a court is making factual determinations, the court must give the plaintiff *an opportunity* for discovery. *See McAllister v. FDIC*, 87 F.3d 762, 76[6] (5th Cir. 1996). A "blanket denial of discovery is an abuse of discretion if discovery is 'indispensable to a fair, rounded, development of the material facts.'" *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 n.3[5] (5th Cir. 2004) (citation omitted).

Although courts have certain discretion regarding what discovery will be allowed, this discretion is not unlimited. *Id*. The Fifth Circuit has held that in early-pleading proceedings it "is "reversible error" and "an abuse of discretion" to deny a plaintiff discovery related to issues before the court or a continuance to obtain that discovery. *See*, e.g., *McAllister v. FDIC*, 87 F.3d 762, 76[6] (5th Cir. 1996). Here, the

bankruptcy court's discretion did not permit a denial of discovery when discovery could "verify allegations of specific facts." *Box v. Dallas Mexican Consulate Gen.*, 487 Fed. Appx. 880, 884–85 (5th Cir. 2012).

Here, the bankruptcy court prevented HMIT from conducting relevant document discovery of any kind.[154] Instead, the bankruptcy court allowed Seery to "cherry pick" information that might help him, and then withhold and redact information that would not. Moreover, the bankruptcy court prevented HMIT from obtaining *any* discovery from Farallon and Stonehill.[155] These rulings amount to reversible error.

## E.   Alternatively, HMIT's Claims are "Colorable" Under the Heightened Standard Applied by the Bankruptcy Court

The bankruptcy court conducted an evidentiary hearing over HMIT's objections, but the details of the bankruptcy court's ultimate standard of review were never articulated before the Order Denying Leave. This failure kept HMIT in the dark depriving HMIT of due process.

Even then, HMIT's evidence at the June 8 hearing was substantial and demonstrated, without limitation, the following:

- ▪ Farallon rejected a significant premium over its multimillion-dollar investment because Seery assured Farallon that the

---

[154] By way of example, HMIT requested discovery concerning communications between Seery and the Outside Purchasers, documents relating to due diligence, claim evaluations, etc. ROA.4836-4914.

[155] *See generally*, ROA.004836; ROA.004959; ROA.009912.

Disputed Claims had more value;[156]

- Farallon conducted no due diligence and Seery admitted in testimony that there was no due diligence data room;[157]

- Farallon was "optimistic" about MGM;[158]

- The Debtor's disclosures that were publicly available to the Outside Purchasers did not economically justify the magnitude of their investment;

- The Debtor's financial disclosures suggested that the claim purchasers would receive less than par value; Stonehill rejected an opportunity to provide DIP financing at an even higher rate of return, strongly suggesting that Stonehill had expectations of large windfall from the Disputed Claims purchase;[159]

- Muck and Jessup were shell entities created immediately before the acquisition of the Disputed Claims; further evidencing Farallon and Stonehill's motivation to conceal their involvement;[160]

- Seery admitted he had done no market study to support the reasonableness of his compensation as Trustee;[161]

- Seery testified he had no knowledge whether the Outside Purchasers (who controlled the Oversight Board and his financial package) had undertaken any studies to support his Trustee compensation;[162]

---

[156] ROA. 006693-95; ROA.009589-96.

[157] ROA.009696-97.

[158] ROA.009596.

[159] ROA.009698-99.

[160] ROA.008578-81; ROA.009591.

[161] ROA.009711.

[162] ROA.009711

▪ Seery's compensation as Trustee was supposed to be reduced in 2022, but that never happened.[163]

Even under the *Barton* Doctrine, this evidence presents more than a *prima facie* case that the Proposed Defendants are liable for their wrongdoing. Their evidence also supports the factual averments in the proposed pleading that Seery breached his fiduciary duties, and that the Outside Purchasers knowingly participated in this breach and otherwise engaged in a conspiracy that harmed the Claimant Trust and other innocent stakeholders, including HMIT.

## F. The Bankruptcy Court Erred When it Imposed a New "Colorability" Standard on Claims Asserted by a Non-Debtor Against Non-Debtors Under *Stern v. Marshall,* and is progeny.

Bankruptcy courts are courts of limited jurisdiction. *In re Paso Del Norte Oil Co.*, 755 F.2d 421, 423–24 (5th Cir. 1985). In *Stern v. Marshall*, the Supreme Court held that Article III of the Constitution prevents bankruptcy courts from entering final judgment on claims that derive from state law and do not invoke substantive rights provided by title 11. *Stern v. Marshall*, 564 U.S. 462 (2011). HMIT's claims for breach of fiduciary duty, aiding and abetting, conspiracy, and unjust enrichment are such claims. *See In re Allied Sys. Holdings, Inc.*, 524 B.R. 598 (Bankr. D. Del. 2015). That a case may result in augmenting the estate's resources does not convert it to a core proceeding that the bankruptcy court may finally resolve. *In re BP RE,*

---

[163] ROA.009708-9709.

*L.P.*, 735 F.3d 279, 291 (5th Cir. 2013). Rather, bankruptcy courts lack constitutional authority to enter final orders or judgments in non-core claims as well as in a subclass of statutorily core claims, which have come to be known as "*Stern* claims." *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 31 (2014).

Subsequent to *Stern*, the Supreme Court determined that a bankruptcy court may decide a "*Stern* claim" only if all parties consent to entry of a final judgment. *Wellness Int'l. Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015), which has not occurred here. Here, the bankruptcy court's unfounded interpretation of the Gatekeeping Provision—*i.e.* the newly crafted standard for "an additional level of review"— converts what should be an issue of law, subject to *de novo* review, into a trial exercise. This impermissibly transforms the bankruptcy court into the trier of fact in contravention of *Stern*.

**G.    Alternatively, if the Bankruptcy Court Correctly Determined that Its "Hybrid" *Barton* Analysis Controls, the Bankruptcy Court Erroneously Excluded Appellant's Expert Testimony And Struck Appellant's Proffer**

The bankruptcy court abused its discretion by excluding timely designated expert testimony. When HMIT tried to make a record for appeal, the bankruptcy court denied that as well. In the event this Court determines that the bankruptcy court's elevated standard was appropriate, then this exclusion was an abuse of discretion and reversible error.

**1.    HMIT's Experts were designated timely.**

The disclosure of HMIT's experts exceeded procedural requirements.[164] Bankruptcy Rule of Procedure 9014 governs this contested matter, and specifically excludes Rule 26(a)(2)(b) requirements regarding expert witness disclosures and reports. *See* BANK. R. PROC. 9014.

Here, the bankruptcy court limited pre-hearing discovery before the June 8, 2023 Hearing—not the evidence that could be submitted. Nothing in the bankruptcy court's pre-hearing orders limited any party's right to call other witnesses, including expert witnesses.[165] Thus, HMIT's designation of expert witnesses was timely pursuant to the Bankruptcy Rules – three days before the hearing as part of the exchange of witness lists.[166] Although the bankruptcy court's order striking HMIT's expert evidence states that HMIT's expert evidence was not "appropriately and timely disclosed" and was "too late," the bankruptcy court does not cite any rule or order with which HMIT did not comply.[167]

## 2. Insufficient Record to Exclude Experts

Under Fifth Circuit precedent, the bankruptcy court was required to perform a *Daubert* inquiry and "articulate its basis" for excluding expert testimony. *Rodriguez v. Riddell Sports, Inc.*, 242 S.W.3d 567, 581-8[2] (5th Cir. 2001). A failure

---

[164] *See* ROA.006608; ROA.009437-9440.

[165] ROA.009898.

[166] ROA.009437-9442.

[167] ROA.009923-24.

54

to conduct a proper *Daubert* inquiry, and "articulate" the basis for a ruling based on a sufficiently developed record, is error. *See id.*; *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003).

HMIT also was entitled to make an offer of proof on what its experts would opine for purposes of appellate review—a requirement for error preservation that the *Daubert* hearing ordinarily would fulfill. FED. R. EVID. 103(c). Thus, HMIT's evidentiary proffer under Rule 103(a)(2) was appropriate because the evidence clearly supported the "colorability" of HMIT's claims and was procedurally required because the bankruptcy court refused to conduct a *Daubert* proceeding. Hence, the bankruptcy court's subsequent determination to *strike* HMIT's proffer because the "substance" of the expert testimony was purportedly "apparent from the context'" was clear error and an abuse of discretion.

### 3. The Bankruptcy Court Abused its Discretion by Determining Testimony "Not Helpful"

Ultimately, the bankruptcy court abused its discretion when determining HMIT's expert testimony was inadmissible because the experts would not "help the trier of fact to understand the evidence or to determine a fact in issue."[168] "The requirement that the testimony 'assist the trier of fact' means the evidence must be relevant,"[169] and "Rule 401 defines relevant evidence as that which has 'any

---

[168] ROA.009925.

[169] *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002).

tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"[170] The proposed testimony was clearly "relevant."

The unfairness of the bankruptcy court's holding is readily shown by just a few examples:

- Shockingly, the bankruptcy court stated it was not "surprised" that the Outside Purchasers did no due diligence.[171] HMIT's Experts, however, would have testified that due diligence was necessary, and the absence of due diligence was a "*red flag*" that MNPI was wrongfully used.[172]

- The Order Denying Leave stated that HMIT's claims concerning Seery's compensation was speculative because Mark Patrick and Dondero did not have personal knowledge.[173] Yet again, the bankruptcy court excluded HMIT's Experts who would have expressed relevant opinions that Seery's compensation was excessive.[174]

- On Pages 28 through 30 of its Order Denying Leave, the bankruptcy provided a chart that omitted the UBS investment thereby skewing the expected returns. The Bankruptcy Court seeks to justify this omission because the UBS claims were purchased after the announcement of the MGM sale. But this exclusion is misleading because the Outside Purchasers had *other* MNPI concerning the estate's assets.[175] Moreover, HMIT's Experts were prepared to testify that the expected returns based on public information were minimal and far below the desired rates of return

---

[170] *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002) (*quoting* FED. R. EVID. 401).
[171] ROA.000891.

[172] ROA.006610.

[173] ROA.000904.

[174] ROA.006609-11.

[175] *See* ROA.003350, ROA.003352, ROA.003354.

for hedge funds like Farallon and Stonehill.[176]

Because the bankruptcy court never conducted an inquiry, it was impossible for that court to know if these opinions would be "helpful." To determine an expert's admissibility, a hearing should have been held. *See, e.g.*, *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 643 (7th Cir.1995); *see also Hose v. Chicago Nw. Transp.*, 70 F.3d 968, 973 n.3 (8th Cir.1995); *United Fire & Cas. Co. v. Whirlpool Corp.,* 704 F.3d 1338, 1341–42 (11th Cir.2013); *United States v. Schiff*, 538 F. Supp. 2d 818, 844 fn. 26 (D.N.J. 2008),*'aff'd*, 602 F.3d 152 (3d Cir. 2010) ("expert testimony may 'assist the trier of fact to understand the facts already in the record, even if all it does is put those facts in context.'").

## H.   The Bankruptcy Court Erroneously Determined Appellant "Cannot Show It is Pursuing the Proposed Claims for a Proper Purpose"

Finally, the bankruptcy court erred in its sweeping, unsupported "findings" that HMIT's proposed claims were "brought for the improper purpose of continuing Dondero's vexatious, harassing, bad-faith litigation." [177] This determination was unsupported by the record, and it was wholly improper at this early stage in the proceedings, *i.e.* before claims are even filed.

It is undisputed that Dondero has no legal control of HMIT, and whatever

---

[176] ROA.006609-11.

[177] ROA.000937.

"control" the bankruptcy court found is legally irrelevant and factually unsupported. This error is based upon the bankruptcy court's claims of background "knowledge" about Dondero, but was inconsistent with the actual evidence offered at the hearing. It also has no place in a plausibility inquiry. Indeed, it is a primary basis why the bankruptcy court invoked a heightened standard of review to determine that HMIT—a separate, non-litigious entity who has never been labeled "vexatious"—should be burdened with the court's "opinions" about Dondero and thus precluded HMIT from bringing its claims. Still worse, it purportedly is based on a "totality of the evidence in this proceeding"—despite that "colorability" is non-evidentiary, and no evidence supports the bankruptcy court's finding that HMIT is "*Dondero by Another Name*."

To be clear, HMIT has never been found to be a vexatious litigant; HMIT is not "controlled" by Dondero;[178] the only evidence in the case is that Dondero does not control HMIT;[179] there was no evidence of alter ego; and no evidence that HMIT and Dondero were one and the same.[180] Rather, the bankruptcy court's "fact findings" were based on irrelevant matters outside the record and, thus, an improper basis for judicial notice, particularly because the purported relationship is hotly

---

[178] ROA.9570-71.

[179] ROA.9570-71.

[180] *See* ROA.009570-71.

disputed and the alleged "context" did not involve HMIT.

It was also an abuse of discretion for the bankruptcy court—*before* HMIT has filed its claims or conducted any discovery on those claims—to weigh the credibility and testimony of witnesses. Even when courts have weighed credibility at later stages of litigation, such as summary judgment proceedings, courts have held that was inappropriate before *trial*. *See, In re Yormak*, 640 B.R. 491, 508 (M.D. Fla. 2022), *appeal dismissed*, No. 22-11636-BB, 2022 WL 3270056 (11th Cir. July 27, 2022).

Here, the bankruptcy court determined that Dondero's testimony was not credible, despite being unrebutted, and supported by contemporaneous notes.[181] The bankruptcy court's blanket determination that Dondero was "not credible" was plainly wrong.[182] The bankruptcy court committed a reversible wrong when it attributed this purported "lack of credibility" to HMIT.

## XII.   CONCLUSION AND RELIEF SOUGHT

The bankruptcy court erred in the creation and application of its "hybrid" standard to determine the colorability of HMIT's claims because HMIT has plead colorable and plausible claims; the bankruptcy court violated HMIT's due process rights in denying basic discovery and striking relevant evidence; the bankruptcy

---

[181] ROA.009564.

[182] ROA.009564.

court abused its discretion at this pre-filing stage by ignoring the facts in the record and determining that HMIT—a separate, non-litigious entity that has never been labeled "vexatious"—is burdened with the bankruptcy court's "opinions" about Dondero. For all of the reasons stated in this brief, this Court should reverse the Order Denying Leave, reverse the Order Denying Further Relief, and render a decision granting HMIT leave to bring its claims individually and derivatively.

## XIII.  <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of FED. R. BANKR. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by FED. R. BANKR. P. 8015(g), this document contains 12,992 words; and

This document complies with the typeface requirements of FED. R. BANKR. P. 8015(a)(5) and the type-style requirements of FED. R. BANKR. P. 8015(a)(6) because: this document has been prepared in a proportionally spaced typeface Microsoft Word in size 14 font, Times New Roman.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire