**No. 3:23-cv-02071-E**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Debtor.*

HUNTER MOUNTAIN INVESTMENT TRUST,

*Appellant,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P., ET AL.,

*Appellees.*

**BRIEF OF CLAIM PURCHASER APPELLEES**

**Appeal from the United States Bankruptcy Court
for the Northern District of Texas, Case No. 19-34054-slg11,
Hon. Stacey G.C. Jernigan, Presiding**

Brent R. McIlwain
Texas Bar No. 24013140
Brent.McIlwain@hklaw.com
David C. Schulte
Texas Bar No. 24037456
David.Schulte@hklaw.com
Richard B. Phillips, Jr.
Texas Bar No. 24032833
Rich.Phillips@hklaw.com
Christopher A. Bailey
Texas Bar No. 24104598
Chris.Bailey@hklaw.com
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214-964-9500
Fax: 214-964-9501

**COUNSEL FOR CLAIM PURCHASER APPELLEES**

# TABLE OF CONTENTS

Page

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   (1)  The Highland Bankruptcy . . . . . . . . . . . . . . . . . . . . . 3

   (2)  The Claims HMIT References in this
        Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   (3)  The Reorganization Plan . . . . . . . . . . . . . . . . . . . . . 7

   (4)  Dondero's and HMIT's State-Court Discovery
        Attempts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   (5)  HMIT's Motion for Leave to File Adversary
        Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   (6)  The Bankruptcy Court's Orders . . . . . . . . . . . . . . . . . 14

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . 17

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

   1.  HMIT lacks standing to assert the claims in the
      proposed adversary proceeding. . . . . . . . . . . . . . . . . . 22

      A.  HMIT has not alleged a particularized, concrete
          injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Page

    B.  HMIT cannot establish traceability. . . . . . . . . . . . . .  27

    C.  HMIT's alleged injury is not redressable by its
       proposed adversary proceeding. . . . . . . . . . . . . . . . . 31

2.  The Bankruptcy Court correctly denied HMIT's
    premature attempts to take discovery. . . . . . . . . . . . . . . 36

3.  The Bankruptcy Court correctly concluded that the
    proposed complaint does not assert any colorable
    claims against the Claim Purchasers. . . . . . . . . . . . . . . 38

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . 47

## Index of Authorities

Page

### Cases

*Abdullah v. Paxton*,
65 F.4th 204 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Allen v. Wright*,
468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Barton v. Barbour*,
104 U.S. 126 (1881) . . . . . . . . . . . . . . . . . . . . . 10, 20, 40, 41

*Dondero v. Alvarez & Marsal CRF Mgmt., LLC (In re Highland
Cap. Mgmt., L.P.)*,
Adv. No. 21-03051, 2022 WL 38310 (Bankr. N.D. Tex. Jan.
4, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Adelphia Commc'ns Corp.*,
365 B.R. 24 (Bankr. S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . 33, 34

*In re Christensen*,
598 B.R. 658 (Bankr. D. Utah 2019) . . . . . . . . . . . . . . . . . . 40

*In re Exec. Off. Ctrs., Inc.*,
96 B.R. 642 (Bankr. E.D. La. 1988) . . . . . . . . . . . . . . . . . . . 28

*In re Holloway*,
955 F.2d 1008 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . 29

*In re Lorraine Castle Apartments Bldg. Corp.*,
149 F.2d 55 (7th Cir. 1945) . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Mobile Steel Co.*,
563 F.2d 692 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . 32, 33

*In re Olmos Equip., Inc.*,
601 B.R. 412 (Bankr. W.D. Tex. 2019) . . . . . . . . . . . . . . . . . 30

Page

*In re Perry*,
425 B.R. 323 (Bankr. S.D. Tex. 2010) . . . . . . . . . . . . . . . . . . 34

*In re VistaCare Grp., LLC*,
678 F.3d 218 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 37

*In re Winstar Commc'ns, Inc.*,
554 F.3d 382 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . 34

*King v. Baylor Univ.*,
46 F.4th 344 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . 36

*Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . 22, 27

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
48 F.4th 419 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . *passim*

*Pepper v. Litton*,
308 U.S. 295 (1939) . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) . . . . . . . . . . . . . . . . . . . . . . . 23

*Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*,
346 B.R. 798 (BAP 8th Cir. 2006) . . . . . . . . . . . . . . . . . 29

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . 31

*Taylor v. Trevino*,
569 F. Supp. 3d 414 (N.D. Tex. 2021) . . . . . . . . . . . . . . . 35

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) . . . . . . . . . . . . . . . . . . . . . . 22

Page

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
549 U.S. 443 (2007) . . . . . . . . . . . . . . . . . . . . . 32

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill.
at Lakeridge, LLC*,
583 U.S. 387 (2018) (Sotomayor, J., concurring) . . . . . . . . . . . 29

*Yowell v. Granite Operating Co.*,
630 S.W.3d 566 (Tex. App.—Amarillo 2021, pet. denied) . . . . . . . 36

## Statutes

11 U.S.C. § 502(b) . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

11 U.S.C. § 502(j) . . . . . . . . . . . . . . . . . . . . . . . . . 35

11 U.S.C. § 510(c) . . . . . . . . . . . . . . . . . . . . . . . . . 34

## Rules

Fed. R. Bankr. P. 3001 . . . . . . . . . . . . . . . . . . . . . 5, 6

Fed. R. Bankr. P. 9024 . . . . . . . . . . . . . . . . . . . . . 35

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . 20, 39, 40, 41

Tex. R. Civ. P. 202 . . . . . . . . . . . . . . . . . . . . . . 11, 12

## Introduction

Farallon Capital Management, L.L.C. ("Farallon"), Stonehill Capital Management LLC ("Stonehill"), Muck Holdings, LLC ("Muck"), and Jessup Holdings LLC ("Jessup") (collectively, the "Claim Purchasers") file this brief in response to HMIT's brief seeking reversal of the Bankruptcy Court's orders denying HMIT's motion for leave to file an adversary complaint and motion for expedited discovery from the Claim Purchasers. This brief addresses the issues specific to the Claim Purchasers: HMIT's lack of standing to assert claims against the Claim Purchasers, the failure of the proposed complaint to assert colorable claims against the Claim Purchasers, and the Bankruptcy Court's proper denial of HMIT's premature discovery requests to the Claim Purchasers. The Claim Purchasers defer to the brief filed by Highland Capital Management, L.P., the Highland Claimant Trust, and James Seery (collectively, the "Highland Parties") on other issues and adopt the arguments in that brief to the extent they address proposed claims against the Claim Purchasers.

The Bankruptcy Court correctly determined that due to the nature of claims trading in bankruptcy cases, the Claim Purchasers' acquisition of the claims at issue cannot give rise to any causes of action that HMIT would have

standing to bring. Even if HMIT could upend the transfers, or even if it could succeed in equitably subordinating the validly transferred claims, HMIT would be in the same position it is today: an equity holder with a speculative contingent interest in whatever might someday be left after all of the Claimant Trust's liabilities are exhausted.

To avoid this truth, HMIT posits a farfetched chain of events that James Dondero has unsuccessfully pitched to other courts and administrative agencies. HMIT first asserts, without any plausible factual basis, that Seery received material nonpublic information from Dondero about a potential acquisition of MGM by Amazon (even though sharing nonpublic information would have breached Dondero's duties as a member of MGM's board). HMIT next posits (again without any plausible factual basis) that Seery shared that information with the Claim Purchasers. HMIT alleges that in exchange for nonpublic information, the Claim Purchasers agreed to approve "excessive compensation" for Seery. Finally, HMIT argues this "excessive" compensation reduced the value of HMIT's Class 10 contingent claims. As the Highland Parties note in their brief, Dondero's recitation of these alleged facts has shifted materially over the many times he has sworn to them. The Bankruptcy Court correctly held that HMIT does not have standing to assert

the proposed claims. It also correctly denied HMIT's requested discovery from the Claim Purchasers and concluded that the proposed complaint does not assert plausible claims. The Court should affirm the Bankruptcy Court's orders.

## Statement of the Case

### (1)  The Highland Bankruptcy

As the Bankruptcy Court observed, the procedural history of this bankruptcy case is tortured. ROA.838–40. The Bankruptcy Court noted that as of July 14, 2023, there were at least 30 pending and active matters involving Dondero: six proceedings in the Bankruptcy Court, six actions or appeals pending in this Court, seven appeals pending in the Fifth Circuit, two petitions for writ of certiorari pending in the Supreme Court, and nine other proceedings pending in various state, federal, and foreign jurisdictions. ROA.839–40. This Statement of the Case will focus on the aspects of the procedural and factual history that are relevant to this appeal.

In October 2019, Highland Capital Management, L.P. ("HCMLP" or the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the Bankruptcy Court for the District of Delaware, instituting a voluntary chapter 11 bankruptcy case, *In re Highland Capital*

*Management, L.P.*, Case No. 19-12239 (Bankr. D. Del.). The United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors (the "Committee"). On the Committee's motion, the case was transferred to the United States Bankruptcy Court for the Northern District of Texas: *In re Highland Capital Management, L.P.*, Case No. 19-34054 (Bankr. N.D. Tex.).

In December 2019, the Debtor filed the Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operation in the Ordinary Course seeking Bankruptcy Court approval of a compromise with the Committee which contemplated, *inter alia*, the (i) creation of an independent board of directors (the "Independent Board") to govern the Debtor during the bankruptcy proceedings; and (ii) removal of Dondero as a director, officer, or managing member of the Debtor. ROA.947. Among others, Seery was selected to participate on the Independent Board and was later made the Debtor's chief restructuring officer. ROA.948–49.

The Bankruptcy Court entered an order approving that compromise. ROA.947. Under that order, Dondero remained an unpaid employee of the Debtor, subject to the authority of the Independent Board, which, at its discretion, had the authority to require Dondero's immediate resignation.

ROA.949. By Fall 2020, the Independent Board demanded, and obtained, Dondero's resignation. ROA.949–50.

**(2)  The Claims HMIT References in this Appeal**

The Debtor had many large creditors whose claims against the Debtor were adjudicated in the bankruptcy process. As set forth in the chart below, the creditor claims HMIT references in this dispute (the "Claims") were filed, settled by negotiation between each creditor and the Debtor, and ultimately allowed by the Bankruptcy Court—all before the Claim Purchasers purchased them from the Class 8 and Class 9 creditors (the "Claim Sellers"). At almost every turn, Dondero or his affiliated entities objected to the settlements negotiated by the Debtor; the Bankruptcy Court overruled those objections. The Claim Purchasers acquired the Claims through private arm's-length transactions, and, in each case, claim transfer notices under Federal Rule of Bankruptcy Procedure 3001 were filed as reflected in the chart below. No objection was filed to the transfer notices.

Muck is a single-purpose entity managed by Farallon that acquired Claims. Jessup is a single-purpose entity managed by Stonehill that acquired Claims. ROA.837. The following chart (which is in the Bankruptcy Court's order (ROA.862–63)) summarizes the acquisitions:

| Claimant(s) | Date Filed/ Claim No. | Asserted Amount | Allowed Amount | Rule 3001 Notice Filed |
|---|---|---|---|---|
| Acis Capital Management LP and Acis Capital Management, GP LLC | 12/31/2019<br><br>Claim No. 23 | Not less than $75,000,000 | $23,000,000[1] | ROA.7465 (Muck) |
| Redeemer Committee Highland Crusader Fund | 4/3/2020<br><br>Claim No. 72 | $190,824,557 | $137,696,610 | ROA.7474 (Jessup) |
| HarbourVest 2017 Global Fund, LP, HarbourVest 2017 Global AIF, LP, HarbourVest Partners LP, HarbourVest Dover Street IX Investment LP, HV International VIII Secondary LP, | April 8, 2020<br><br>Claim Nos. 143, 147, 149, 150, 153, 154 | Unliquidated | $80,000,000 in aggregate ($45,000,000 General Unsecured Claim, and $35,000,000 subordinated claim)[2] | ROA.7487 (Muck) |

---

[1]   The Debtor's settlement with Acis was approved over the objection of Dondero. ROA.862.

[2] The Debtor's settlement with the HarbourVest Parties was approved over the objections of Dondero and The Dugaboy Investment Trust and Get Good Trust. ROA.862.

| HarbourVest Skew Base AIF LP | | | | |
|---|---|---|---|---|
| UBS Securities LLC, UBS AG, London Branch | June 26, 2020<br><br>Claim Nos. 190, 191 | $1,039,957,799.40 | $125,000,000 in aggregate ($65,000,000 General Unsecured Claim and $60,000,000 subordinated claim)[3] | ROA.7496 (Muck) and ROA.7492 (Jessup) |

### (3) The Reorganization Plan

In August 2020, the Debtor filed its Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as amended, supplemented or modified, the "Plan") and accompanying disclosure statement. *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 426 (5th Cir. 2022). On February 22, 2021, the Bankruptcy Court entered the Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief (the "Confirmation Order").

---

[3] The Debtor's settlement with the UBS Parties was approved over the objections of Dondero and the Dugaboy Investment Trust and Get Good Trust. ROA.863.

ROA.1660. The Plan went effective on August 11, 2021. *In re Highland Cap. Mgmt.*, 48 F.4th at 428.

The priority and value of the Claims are established by the Plan. All the claim purchases were consummated ***after*** the Confirmation Order was entered. With respect to the Claims, the Plan provides, among other things, that "[o]n or as soon as reasonably practicable after the Effective Date, each holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim" will receive Class 8 interests in the Claimant Trust.[4] ROA.1778. Further, the Plan provides:

> Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, ***except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court***.

*Id.* (emphasis added).[5] Thus, only the Debtor, the reorganized debtor, and the Claimant Trust have the right to seek to reclassify or subordinate claims.

---

[4] The Plan includes substantially similar language with respect to Class 9 Subordinated Claims. ROA.1779.

[5] The Plan includes substantially similar language with respect to Class 9 Subordinated Claims. ROA.1778–79.

The Plan created four new entities: (1) the reorganized debtor, (2) a new general partner for the reorganized debtor (called HCMLP, GP LLC), (3) the Claimant Trust (administered by Seery and overseen by the Claimant Trust Oversight Board ("CTOB")), and (4) a Litigation Sub-Trust. ROA.1780–81, 1783. The Claimant Trust owns the equity interests in the other three entities. ROA.1761; ROA.1767. The Claimant Trust is to monetize the reorganized debtor's assets and make distributions to Class 8 and Class 9 creditors. ROA.1783. The Plan cancelled the limited partnership interests that HMIT held in Highland in exchange for a contingent Class 10 interest in the Claimant Trust. ROA.1780. Under the Plan, the Class 10 claims will vest and become eligible for payment only after payment in full with interest of all of the other classes of creditors. ROA.1763.

The Plan includes a Gatekeeper Provision that restricts certain individuals and entities from filing any "claim or cause of action of any kind" against certain identified Protected Parties without the Bankruptcy Court's permission. ROA.1806. As HMIT acknowledges, it is one of the parties that must seek permission before filing a claim or cause of action. ROA.1858. HMIT also acknowledges that Seery is one of the Protected Parties and that Muck and Jessup "may" be Protected Parties. ROA.1858. The Gatekeeper

Provision requires HMIT to seek an order from the Bankruptcy Court "determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind" and "specifically authorizing [HMIT] to bring such claim or cause of action." ROA.1806.

Dondero and certain entities under his control appealed the confirmation of the Plan, and (among other complaints) they argued that the Gatekeeper Provision was improper. The Fifth Circuit rejected those arguments and found that the Gatekeeper Provision was "sound." *In re Highland Cap. Mgmt.*, 48 F.4th at 435, 439. The Fifth Circuit confirmed that the *Barton* doctrine supports the power of a bankruptcy court to require a party to obtain leave before filing certain actions. *Id.* at 439 (citing *Barton v. Barbour*, 104 U.S. 126 (1881)).

The Plan also addresses the compensation of the Claimant Trustees: "the salient terms of [the Claimant Trustees'] employment, including such Trustees' duties and compensation shall be set forth in the Claimant Trust Agreement .... The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases." ROA.1785. The Claimant Trust Agreement provides that "the Claimant Trustee shall receive compensation,

including any severance, as agreed to by the Claimant Trustee and the Committee, if agreed upon prior to the Effective Date, or the Oversight Board if agreed upon on or after the Effective Date." ROA.6118. Before the Plan was confirmed, the Bankruptcy Court approved a specific compensation structure for Seery. ROA.904–05.

### (4)   Dondero's and HMIT's State-Court Discovery Attempts

In July 2021 (before the Plan's approval), Dondero filed a pre-suit discovery request in Texas state court, targeting Farallon and Alvarez & Marsal ("A&M"), under Texas Rule of Civil Procedure 202. The case was styled *In Re: James Dondero*, Cause No. DC-21-09534, in the 95th Judicial District Court of Dallas County, Texas (the "First 202"). ROA.5351. Farallon and A&M removed that case to the Bankruptcy Court. After briefing and a hearing, due to misalignment of Rule 202 proceedings and bankruptcy cases, the Bankruptcy Court remanded the First 202 to the Texas state court "with grave misgivings." *Dondero v. Alvarez & Marsal CRF Mgmt., LLC (In re Highland Cap. Mgmt., L.P.)*, Adv. No. 21-03051, 2022 WL 38310, at *9 (Bankr. N.D. Tex. Jan. 4, 2022). Farallon and A&M opposed Dondero's petition as nothing more than an unfounded fishing expedition. The state court denied relief and dismissed the First 202 on June 1, 2022. ROA.5575.

Six months later, Dondero filed a new Rule 202 petition through his affiliate HMIT, raising the same issues related to claims trading as in the First 202, but now in a different Texas state court: *In re: Hunter Mountain Investment Trust*, Cause No. DC-23-01004, in the 191st Judicial District of Dallas County, Texas ("Second 202"). ROA.5577. The targets of the Second 202 were Farallon (again) and Stonehill. HMIT, undeterred by the Texas court's dismissal of the First 202, sought to convince a second state court judge that HMIT had a valid basis to "investigate" third parties' private purchases of approved bankruptcy claims. *Id.* The Claim Purchasers again opposed the unfounded fishing expedition. After briefing and a hearing, the Second 202 met the same fate as the first: it was denied and dismissed. ROA.5602.

### (5)  HMIT's Motion for Leave to File Adversary Proceeding

After the denial and dismissal of the Second 202, HMIT filed a motion for leave ("Motion for Leave"), seeking the Bankruptcy Court's permission under the Gatekeeper Provision to file an adversary proceeding against Seery and the Claim Purchasers. ROA.1849. The proposed complaint attached to the Motion for Leave repeated the same baseless allegations that Dondero and

his lawyers have made for more than two years. ROA.1916.[6] As the Highland Parties explain in their brief, Dondero's sworn statements have varied in material respects with each repetition.

HMIT sought to have the Motion for Leave heard on an expedited basis, which the Bankruptcy Court denied. ROA.2236; ROA.2355. HMIT appealed the denial of the motion to expedite, and the district court affirmed. *Hunter Mountain Inv. Trust v. Muck Holdings LLC* et al. *(In re Highland Cap. Mgmt., L.P.)*, Case No. 3:23-cv-00737-N (N.D. Tex. Apr. 11, 2023). HMIT then sought a writ of mandamus from the Fifth Circuit compelling the Bankruptcy Court to hear the Motion for Leave on an emergency basis, which was denied. *In re Hunter Mountain Inv. Trust*, Case No. 23-10376 (5th Cir. Apr. 12, 2023). On April 23, 2023, HMIT filed a supplement to its Motion for Leave, which included a revised proposed adversary complaint. ROA.3323.

HMIT sought leave to assert claims against the Claim Purchasers for (i) knowing participation in breaches of fiduciary duties; (ii) conspiracy; (iii) equitable disallowance; (iv) unjust enrichment and constructive trust; (v)

---

[6] Dondero has also shopped his conspiracy theories alleging unprofessional and even criminal conduct by the Claim Purchasers to the Texas State Securities Board and the Office of the United States Trustee. ROA.859; ROA861. ROA. Both agencies declined to pursue them. ROA.859–61.

declaratory relief; and (vi) punitive damages. ROA.3358–62. These allegations all rely on HMIT's implausible and purely speculative theory that (a) Seery received material non-public information from Dondero about the potential acquisition of MGM by Amazon; (b) Seery communicated that information to the Claim Purchasers in breach of his fiduciary duties to the Debtor; (c) based solely on alleged statements made by Seery about the future value of the Claims, the Claim Purchasers decided to purchase the Claims; and (d) in exchange for the alleged nonpublic information, the Claim Purchasers agreed to rubberstamp Seery's "excessive compensation." ROA.3350–54.

### (6)   The Bankruptcy Court's Orders

The Bankruptcy Court entered an order setting a hearing on the Motion for Leave for June 8, 2023, and setting a briefing schedule. ROA.3458. The Bankruptcy Court also indicated that, after it had an opportunity to review any responses and replies filed in connection with the Motion for Leave, it would notify the litigants as to whether the June 8 Hearing would be evidentiary. *Id.*

The Claim Purchasers filed an objection to HMIT's Motion for Leave. ROA.3430. The Highland Parties also filed a joint opposition to the Motion for Leave. ROA.3463.

After the Bankruptcy Court entered an order that the June 8 Hearing would be evidentiary, ROA.4712, HMIT filed a motion seeking wide-ranging discovery from the Claim Purchasers and the Highland Parties. ROA.4714. The Claim Purchasers and the Highland Parties objected to that motion. ROA.4931; ROA.4939. The Claim Purchasers argued that no discovery was necessary because the Court could rule on the Motion for Leave based solely on the papers filed with the Bankruptcy Court. The Claim Purchasers' position was that an evidentiary hearing was not necessary with respect to the proposed claims against the Claim Purchasers. ROA.4934. Accordingly, the Claim Purchasers stated they did not intend to put on any evidence at the Hearing, including any witness testimony or documentary evidence. *Id.* After a hearing, the Bankruptcy Court allowed the depositions of Seery and Dondero but prohibited other depositions or document production. ROA.4951.

Three days before the hearing on HMIT's Motion for Leave, HMIT filed a new version of its proposed complaint which removed statements attributable to Dondero and did not attach affidavits from Dondero that were previously included, but which left allegations in the proposed complaint that depended on statements made by Dondero. ROA.4984. That same day,

HMIT also filed a witness and exhibit list that, for the first time, disclosed HMIT's intent to call two expert witnesses. ROA.6608. The Highland Parties filed a motion to exclude these expert witnesses. ROA.9273.

On June 8, 2023, the Bankruptcy Court held a full-day hearing on the Motion for Leave, which included testimony from Dondero, Seery, and Mark Patrick (HMIT's controller). ROA.9458.[7] The Bankruptcy Court did not allow expert testimony but indicated it would take the motion to exclude under advisement and, if it determined that expert testimony was necessary or advisable, it would hold a second hearing for such testimony. ROA.9481–82.

About a week after the hearing, the Bankruptcy Court entered an order granting the Highland Parties' motion to exclude, concluding that the proposed testimony of HMIT's two purported experts would not help the Bankruptcy Court understand the evidence or determine a fact in issue. ROA.9912; ROA.9925.

Then on August 25, 2023, the Bankruptcy Court entered its opinion and order on the Motion for Leave. ROA.835. In a thorough and detailed opinion,

---

[7] The Claim Purchasers contend that the colorability of the claims against them can be determined as a matter of law without any evidence. ROA.4934. Thus, they did not offer evidence at the hearing or participate in the cross-examination of Dondero. *See generally* ROA.9458.

the Bankruptcy Court concluded that HMIT did not have constitutional or prudential standing to bring its proposed causes of action. ROA.901–08. It also found that HMIT had not shown it has a colorable claim against the Claim Purchasers or Seery. ROA.925–38. Accordingly, the Bankruptcy Court denied the Motion for Leave. ROA.938–39.

HMIT filed a motion to alter or amend the Bankruptcy Court's ruling ("Motion to Alter"), arguing that "new" evidence about the value of the Highland Claimant Trust's assets compels a different outcome. ROA.10062. The Bankruptcy Court denied the Motion to Alter (ROA.1045).

## Summary of the Argument

The Bankruptcy Court correctly denied HMIT's Motion for Leave. The Bankruptcy Court correctly concluded that HMIT lacks constitutional standing to assert the proposed claims against the Claim Purchasers. Constitutional standing requires (1) injury; (2) traceability; and (3) redressability. None of those elements is present here.

To support standing, the alleged injury must be particularized and concrete. To be concrete, the injury must actually exist; it cannot be conjectural or hypothetical. A merely possible future injury is not sufficient to support standing. As an initial matter, the only parties who could possibly

claim to be injured by the acquisition of the Claims for less than their fair value would be the Claim Sellers (not HMIT, which never had any interest in the Claims). And the Claim Sellers have not raised any complaint about the transaction. In an attempt to manufacture an injury, HMIT posits that Seery shared material nonpublic information about the Claims with the Claim Purchasers in exchange for an agreement to approve "excessive" compensation for Seery, and that the "excessive" compensation to Seery makes HMIT's Class 10 claims less valuable. But the Class 10 claims are unvested and contingent. Any claim that Seery's compensation affected the likelihood that the Class 10 claims will vest is pure speculation. Thus, HMIT does not have a concrete injury. The Bankruptcy Court also correctly rejected HMIT's reliance on supposedly "new" evidence in HMIT's Motion to Alter because that evidence does not make it any more likely that the Class 10 claims will ever recover any money.

HMIT's proposed claims against the Claim Purchasers also lack traceability. Because the injury is hypothetical, there can be no traceability. Moreover, the Claim Purchasers did not owe any duties the bankruptcy estate, any creditors, or equity holders at the time of the claim transfers. Nor were

they non-statutory insiders. Additionally, any assertions about Seery's compensation are nothing but speculation that cannot support traceability.

HMIT's proposed claims also fail redressability. The remedies that HMIT seeks against the Claim Purchasers are unavailable as a matter of law. The Plan reserves to the debtor, the reorganized debtor, and the Claimant Trustee the right to seek to reclassify or subordinate claims. HMIT does not have that right. Additionally, the Claims are no longer subject to disallowance or subordination because when the Plan went effective, the Claims were exchanged for interests in the Claimant Trust. In any event, the Fifth Circuit has held that courts do not have power to grant equitable disallowance of claims. And equitable subordination is precluded by the Bankruptcy Code. The Bankruptcy Court also concluded that the time has expired for any attempt to reconsider the Claims. In the absence of a recharacterization of the Claims (which can no longer happen as a matter of law), there is no basis for disgorgement or a constructive trust.

The Bankruptcy Court also properly denied HMIT's request for discovery from the Claim Purchasers. The purpose of the Gatekeeper Provision is to require HMIT to show that its claims are colorable *before* it is entitled to discovery. The Claim Purchasers consistently argued that the

Motion for Leave could be determined without discovery or evidence. And they did not put on any evidence at the hearing on the Motion for Leave. The Bankruptcy Court's denial of discovery from the Claim Purchasers is consistent with the purpose of the Gatekeeper Provision and the Claim Purchasers' response to the Motion for Leave.

When the Bankruptcy Court considered whether HMIT's proposed claims are "colorable," it applied the proper standard and correctly concluded that the proposed complaint does not assert colorable claims against the Claim Purchasers. Contrary to HMIT's argument, "colorability" for purposes of the Gatekeeper Provision requires more than satisfying Rule 12(b)(6). If that were the case, the Gatekeeper Provision would not provide the intended additional layer of protection against vexatious claims. The proper test for colorability derives from the *Barton* doctrine. HMIT must show that its claims are plausible and "not without foundation." The proposed claims against the Claim Purchasers do not satisfy that test (or the Rule 12(b)(6) standard, either.)

The allegations in the proposed complaint against the Claim Purchasers suffer from three main flaws. First, the proposed complaint lacks any factual assertions (much less plausible factual assertions) about *how* the Claim

Purchasers affected Seery's compensation. Second, the proposed complaint fails to include any plausible allegations to support HMIT's assertion that Dondero's email to Seery contained material nonpublic information. In fact, the Bankruptcy Court noted that Dondero admitted that his email did not include the information Dondero considered to be nonpublic. Third, there are no plausible allegations to support Dondero's assertion—which he admitted was his own speculation—that Seery shared the information in Dondero's email with the Claim Purchasers.

HMIT's reliance on purported circumstantial evidence of its unfounded *quid pro quo* scheme is unavailing. There are no factual allegations to support HMIT's unfounded assumptions about the reasons for the Claim Purchasers' decisions to acquire the Claims. And HMIT's implausible theory cannot account for the acquisition of the UBS claims *after* the information about the MGM sale became public. Thus, the proposed complaint against the Claim Purchasers does not assert plausible claims and cannot satisfy the requirements of the Gatekeeper Provision.

## ARGUMENT

### 1. HMIT lacks standing to assert the claims in the proposed adversary proceeding.

The Bankruptcy Court correctly concluded that HMIT lacks standing to assert its proposed causes of action. ROA.908. A plaintiff seeking to invoke a federal court's jurisdiction has the burden to establish that it has standing to bring its claims. *E.g.*, *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The Supreme Court has held that the "irreducible constitutional minimum of standing" encompasses three elements: injury, traceability, and redressability. *Lujan*, 504 U.S. at 560–61. First, the injury element requires that the plaintiff have suffered a concrete and particularized injury that must be actual or imminent and cannot be conjectural or hypothetical. *Id.* at 560. Second, traceability requires a causal connection between plaintiff's injury and the complained-of conduct. *Id.* Third, redressability requires that it be likely that the injury will be redressed by a favorable decision. *Id.* at 561. The lack of any of these elements forecloses standing. *Id.* The Bankruptcy Court correctly concluded that HMIT fails on all three of these elements of standing. ROA.903–04.[8]

---

[8] The Bankruptcy Court also noted that in arguing it has standing, HMIT confused constitutional standing with the "person aggrieved" test for prudential standing only in the context of bankruptcy appellate matters. ROA.900–01. In its brief in this

### A.  HMIT has not alleged a particularized, concrete injury.

An injury must be particularized and concrete. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Particularization means the injury must "affect the plaintiff in a personal and individual way." *Id.* Concreteness "is quite different from particularization," and it requires that the injury "actually exist"—it must be "real" and not merely "abstract." *Id.* at 340. The alleged injury must be "actual or imminent." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). Allegations of a "merely conjectural or hypothetical" injury, or of "only a 'possible' future injury" do not suffice to confer standing. *Id.*; *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023).

As noted above, the crux of HMIT's proposed adversary proceeding is the allegation that Seery gave the Claim Purchasers nonpublic information about the potential acquisition of MGM by Amazon. ROA.3350–52. HMIT asserts that the Claim Purchasers used that information to acquire the Claims for less than their fair value. *Id.* But the only possible victims of this alleged scheme are the entities from which the Claim Purchasers acquired the Claims.

---

Court, HMIT continues to assert that it has standing as a "person aggrieved." (HMIT Br. at 6–7.) The Claim Purchasers disagree that HMIT is a "person aggrieved." But as the Bankruptcy Court held, standing as a "person aggrieved" is not sufficient if the party does not have constitutional standing. ROA.900–01.

None of the Claim Sellers (who are sophisticated parties represented by skilled bankruptcy and transactional counsel) has ever suggested that the Claims transfers damaged them or were in any way not valid, appropriately informed, arm's-length transactions. The record shows that the Claim Sellers were well familiar with the circumstances of the Highland bankruptcy, having litigated for many years with Highland and Dondero. The Claim Sellers sold their claims and put their involvement behind them.

To avoid this weakness, HMIT posits an implausible, unfounded, and speculative chain of events that it argues creates a cognizable injury. HMIT alleges that, in exchange for the alleged nonpublic information, the Claim Purchasers agreed that Muck and Jessup, once they joined the CTOB, would use their position to approve "excessive" compensation for Seery. ROA.3354. HMIT further posits that the purportedly "excessive" compensation reduces the value of the Class 10 claims. (HMIT Br. at 24.) As the Bankruptcy Court summarized, HMIT's theory is that "Seery's alleged over-compensation depletes the assets in the Claimant Trust available for distribution to creditors under the Plan, such that there is less likely a chance that HMIT ultimately receives any distributions on account of its Class 10 Contingent Claimant Trust Interest." ROA.904.

There are at least two problems with this theory of injury. First, it is not a concrete injury. The allegation that Seery was "overcompensated" is based on nothing but HMIT's pure speculation. The Proposed Complaint includes no factual assertions about the magnitude of the excess compensation Seery has received or will receive. ROA.3357. And as the Bankruptcy Court noted, HMIT admitted at the hearing on HMIT's Motion for Leave that it has no personal knowledge of what Seery's actual compensation was at the time HMIT filed its Motion for Leave. ROA.904. Thus, any allegation that Seery was "overcompensated" is merely speculation.

Second, even if Seery received excess compensation and even if such compensation were returned, HMIT has not alleged how, as a matter of law, that remedy would result in the vesting of HMIT's unvested, contingent Class 10 claims. Under the Plan, HMIT will not receive anything on those claims until all the Class 8 and Class 9 claims are paid in full and with interest and all other liabilities of the reorganized debtor are paid. ROA.1780; ROA.1763. If the Class 10 claims do not vest, then HMIT will not (and cannot) be harmed by any alleged overcompensation of Seery. Thus, any theory of injury that is based on harm to Class 10 claims is necessarily contingent and hypothetical.

In this Court, HMIT argues that new evidence it presented in its Motion to Alter shows there will be enough money to pay all of the Class 8 and Class 9 claims in full with interest, such that the Class 10 claims will be "in the money." (HMIT Br. at 20–21.) The Bankruptcy Court denied the Motion to Alter. ROA.1045. First, it determined that the allegedly "new" evidence was not, in fact, new. ROA.1046–47. Thus, the Bankruptcy Court concluded there was no basis to reopen the record on the Motion for Leave. ROA.1047–48.

HMIT asserts that if the evidence is not "new," then the Bankruptcy Court erred in determining that HMIT lacks standing. (HMIT Br. at 28.) This argument is based on HMIT's assertion that this evidence shows that it is "in the money." But that argument misses the mark. The Bankruptcy Court held that HMIT could have and should have presented this evidence in its briefing or at the hearing. ROA.1047. Because HMIT did not do so, it has no basis to reopen the record after the Bankruptcy Court already ruled.

The Bankruptcy Court also noted that HMIT ignored the "voluminous supplemental notes" that are "integral to understanding the numbers." ROA.1047. As the Bankruptcy Court points out, those notes make clear that it is still speculative whether the Class 10 claims will be "in the money." One note explains that there are significant continuing administrative and legal fees

that continue to deplete the assets of the reorganized debtor. *Id.* That same note provides that the post-confirmation trust and its subsidiaries will operate at a loss prospectively. *Id.* HMIT does not (and cannot) account for those additional contingent expenses in its argument that it is "in the money." Moreover, an additional note explains that because of a lack of "full and complete information," some of the valuations may not be accurate. *Id.* Again, HMIT does not (and cannot) account for inaccuracies in valuation in its assertion that it is "in the money." In short, even looking at the so-called "new" evidence, any assertion that HMIT will be "in the money" is pure speculation.[9]

## B.   HMIT cannot establish traceability.

As discussed, traceability requires a causal connection between plaintiff's alleged injury and the complained-of conduct. *Lujan*, 504 U.S. at 560; *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). As the Bankruptcy Court properly held, there is no traceability because "there is nothing but a hypothetical theory of

---

[9] HMIT's brief in this Court also appears to argue that it has been injured because the Claim Purchasers allegedly "received a windfall." (HMIT Br. at 25.) Of course, an alleged windfall to the Claim Purchasers does not equate to an injury to HMIT. The Claimant Trust will make the same amount of payments on the Class 8 and Class 9 claims regardless of who holds them. As a matter of law, HMIT cannot improve the position of its Class 10 interests by attacking the Claim Purchasers.

an alleged injury." ROA.906. Because the purported injury is purely hypothetical, it cannot be traced to the conduct about which HMIT complains.

HMIT's traceability arguments fail for two additional reasons. First, there can be no causal connection because the Claim Purchasers did not owe any duties (fiduciary or otherwise) to the bankruptcy estate, any creditors, or equity holders at the time of the claim transfers. *See, e.g.*, *In re Exec. Off. Ctrs., Inc.*, 96 B.R. 642, 651 (Bankr. E.D. La. 1988) (finding that an acquirer of a claim had no fiduciary duty to third parties, and the claim's effect on the bankruptcy estate before or after the claim's acquisition was the same, and "[t]herefore, there are no grounds for this Court to invoke its equitable powers to disallow or limit the claim of [the claim acquirer] in this bankruptcy case"); *In re Lorraine Castle Apartments Bldg. Corp.*, 149 F.2d 55, 57, 59 (7th Cir. 1945) (affirming a finding that claim purchasers had no fiduciary duties to the estate or its beneficiaries). Because there was no duty owed by the Claim Purchasers as a matter of law, there could be no breach and thus no causation.

HMIT alleges in the proposed complaint that the Claim Purchasers were non-statutory insiders at the time of the Claim transfers. ROA.3339. That assertion falls flat. In determining whether a party is a non-statutory insider,

the court considers two factors: "(1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length." *In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992). Because these factors are conjunctive, a finding that the transaction was arm's length "defeats a finding of non-statutory insider status, regardless of how close a person's relationship with the debtor is or whether he is otherwise comparable to a statutorily enumerated insider." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 402 (2018) (Sotomayor, J., concurring).

HMIT's proposed complaint fails both prongs of the test. First, there is no allegation of a transaction between the Claim Purchasers and the ***Debtor***. Rather, the Claims-trading transactions are bilateral agreements between the Claim Purchasers and the Claim Sellers. ROA.3347. Thus, the proposed complaint fails to satisfy the first prong. Second, the allegations about the relationship between the Claim Purchasers and the Debtor are based on HMIT's allegations of past business dealings between Seery, on the one hand, and Farallon and Stonehill, on the other. ROA.3351–52. Even if HMIT's allegations were true, such relationships would be insufficient. *Stalnaker v.*

*Gratton (In re Rosen Auto Leasing, Inc.)*, 346 B.R. 798, 801 (BAP 8th Cir. 2006) (holding that a social relationship turned business relationship between a debtor's chairman and a third party was insufficient for such third party to be deemed a non-statutory insider of the debtor). Nor is it sufficient, if as HMIT alleges, Seery allegedly represented Farallon in a prior, unrelated case. *In re Olmos Equip., Inc.*, 601 B.R. 412, 426 (Bankr. W.D. Tex. 2019) (finding that a prior attorney-client relationship was insufficient to deem a third party a non-statutory insider).

In any event, the proposed complaint does not plead sufficient facts to show that the Claim Purchasers' acquisitions of the Claims were not at arm's-length. Aside from conclusory statements, the proposed complaint fails to set forth facts about any transactions between the Claim Purchasers, Seery, or the Debtor regarding Seery's compensation that can give rise to a reasonable inference that compensation decisions were not negotiated and agreed at arm's-length. ROA.3351. Thus, the Bankruptcy Court correctly rejected the imposition of non-statutory insider status on the Claim Purchasers.

Finally, there is no traceability because the proposed complaint has no colorable factual assertions about how the Claim Purchasers allegedly affected Seery's compensation. ROA.904–05; ROA.3351. Any assertion that Seery's

compensation is higher because of the Claim Purchasers' involvement on the CTOB is thus nothing but rank speculation, and it cannot support traceability.

### C.  HMIT's alleged injury is not redressable by its proposed adversary proceeding.

HMIT also fails under the third prong of the standing test: redressability. To find redressability, there must be "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). HMIT seeks (i) equitable disallowance of the Claim Purchasers' claims; (ii) equitable subordination of the Claim Purchasers' interests; (iii) disgorgement of funds distributed to the Claim Purchasers; (iv) disgorgement of compensation paid to Seery; and (v) imposition of a constructive trust. But, as the Bankruptcy Court correctly found, none of the remedies that HMIT seeks in its proposed complaint is available to HMIT.

As an initial matter, the Claim Purchasers' claims are not subject to being subordinated or disallowed. The confirmed Plan (which was affirmed by the Fifth Circuit) reserved to the debtor, the reorganized debtor, and the Claimant Trustee the right to seek to reclassify or subordinate claims. ROA.1781. And since the relevant claims were all settled and allowed by the Bankruptcy Court, any rights or defenses that the debtor's estate had with respect to those claims were expressly disclaimed and extinguished under the Plan. ROA.1778–79.

Thus, under the Plan, HMIT has no right to seek to reclassify or subordinate claims.

Additionally, the Claims were all settled and allowed before the Plan's effective date, and before the Claim Purchasers bought them. ROA.584–85. Under the Plan, the Claims were exchanged for interests in the Claimant Trust. Thus, the Claims no longer exist. ROA.1778–79. The Fifth Circuit largely affirmed the Plan (and did not disturb the portions of the Plan related to the Claims). *In re Highland Cap. Mgmt.*, 48 F.4th at 432. And in this Court, HMIT admits it is not challenging the underlying settlement of the Claims as approved by the Bankruptcy Court. (HMIT Br. at 25 n.83.) Thus, due to the operation of the Plan, HMIT cannot state a claim as a matter of law seeking disallowance or subordination of the Claim Purchasers' Class 8 and Class 9 interests.

Moreover, equitable disallowance is not a viable remedy. The Fifth Circuit has recognized that "equitable considerations can justify only the subordination of claims, not their disallowance." *In re Mobile Steel Co.*, 563 F.2d 692, 699 (5th Cir. 1977). The Supreme Court has also held that disallowance of claims is permissible only on the grounds enumerated in Bankruptcy Code section 502(b). *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas*

*& Elec. Co.*, 549 U.S. 443, 449 (2007) ("But even where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)."). Inequitable conduct, as alleged by HMIT, is not one of the enumerated grounds for disallowance under section 502(b). *See* 11 U.S.C. § 502(b).

In this Court, HMIT asserts that the Fifth Circuit in *Mobile Steel* did "not foreclose the possibility of equitable disallowance in some circumstances." (HMIT Br. at 37.) But HMIT cannot avoid the Fifth Circuit's plain statement:

> The prerogative to relegate claims to inferior status on equitable grounds, though broad, is not unlimited. It confronts two principal bounds. First equitable considerations can justify only the subordination of claims, not their disallowance.

563 F.2d at 699 (internal citations omitted). Nothing in the opinion suggests that equitable disallowance could ever be available. To the contrary, the Fifth Circuit was unequivocal in its statement that equitable considerations can never justify disallowance of claims.

And the other cases HMIT cites for the propriety of disallowance all address claims that belonged to estate fiduciaries. *See Pepper v. Litton*, 308 U.S. 295, 311 (1939) (analyzing the ability to disallow claims of a fiduciary); *In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 71 (Bankr. S.D.N.Y. 2007) (same). Here, the Claims were filed and settled by non-fiduciaries, and were allowed

while the Claims were still held by non-fiduciaries. Further, the Claims were acquired by the Claim Purchasers well before they became members of the CTOB, and thus before they were estate fiduciaries. *Id.* Thus, the considerations discussed in *Pepper* and *Adelphia* do not apply here.

HMIT's alternative claim for equitable subordination similarly fails. ROA.3360. Bankruptcy Code section 510(c) precludes this relief: "under principles of equitable subordination, [the court may] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c). This language means that a court may not subordinate a claim to an equity interest. *See, e.g.*, *In re Perry*, 425 B.R. 323, 380 (Bankr. S.D. Tex. 2010) ("Under the express language of 11 U.S.C. § 510(c), the Court may not subordinate a claim to an equity interest; it may only subordinate one claim to another claim and one equity interest to another equity interest."); *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 414 (3d Cir. 2009) ("Finally, Lucent contends that the Bankruptcy Court's equitable subordination holding was inconsistent with the Bankruptcy Code because § 510(c) does not permit the subordination of debt to equity. We agree."). Because HMIT's contingent, unvested Class 10 interests are based on its

*previous* equity interest in Debtor, the Class 8 and Class 9 interests held by the Claim Purchasers cannot be subordinated to HMIT's Class 10 interest.

The Bankruptcy Court noted that because the Claims were adjudicated and allowed, the only way to reconsider them is through Bankruptcy Code section 502(j), which provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause … according to the equities of the case." 11 U.S.C. § 502(j). But any attempt now to seek reconsideration of the claims is too late under Bankruptcy Rule 9024. Thus, equitable subordination is unavailable to HMIT, cannot put the Class 10 interests "in the money," and cannot support redressability.

In this Court, HMIT asserts that its claims for disgorgement or constructive trust are viable. (HMIT Br. at 38–39.) But HMIT cites no authority for these arguments. And HMIT ignores that without equitable disallowance or equitable subordination of the Class 8 and Class 9 interests, there will be nothing to disgorge from the Claim Purchasers, and nothing over which a constructive trust can be imposed. Invoking "disgorgement" and "constructive trust" as magic words by themselves cannot conjure a viable theory of redressability. Nor can HMIT's unjust enrichment claim, which is not an independent claim under Texas law. ROA.936 (citing *Taylor v. Trevino*,

569 F. Supp. 3d 414, 435 (N.D. Tex. 2021) and *Yowell v. Granite Operating Co.*, 630 S.W.3d 566, 578 (Tex. App.—Amarillo 2021, pet. denied)). HMIT's reliance on the Fifth Circuit's decision in *King v. Baylor Univ.*, 46 F.4th 344, 367 (5th Cir. 2022), is misplaced. In that case, the Fifth Circuit confirmed that unjust enrichment is a limited *remedy* available only in narrow circumstances that are not present here. *Id.* at 367–68.

None of the remedies HMIT seeks is viable. Thus, the Bankruptcy Court correctly held that HMIT cannot satisfy the redressability requirement.

## 2. The Bankruptcy Court correctly denied HMIT's premature attempts to take discovery.

HMIT complains that the Bankruptcy Court denied its motion for expedited discovery from the Claim Purchasers. (HMIT Br. at 50.) The Bankruptcy Court's order correctly restricted the prehearing discovery to depositions of Seery and Dondero. ROA.4960.

The Gatekeeper Provision was incorporated into the Plan specifically to prevent Dondero, and entities associated with Dondero (like HMIT), from filing abusive litigation and imposing significant costs and burdens on certain parties, including the Claim Purchasers. ROA.838. HMIT's motion seeking expedited discovery was an attempt to circumvent the Gatekeeper Provision by imposing those same costs and burdens on the Claim Purchasers before a

ruling on the Motion for Leave. HMIT should not have been able to pursue wide-ranging discovery in an attempt to find support for its allegations unless and until the Bankruptcy Court determined HMIT's alleged claims were colorable and "not without foundation." *In re VistaCare Grp., LLC*, 678 F.3d 218, 232-33 (3d Cir. 2012).

Indeed, HMIT chose to advance the Motion for Leave, and repeatedly advanced the argument that *no evidence* was necessary to proceed. ROA.3305. HMIT insisted that "the colorable nature of the claims asserted in HMIT's proposed adversary proceeding is evident on the face of HMIT's proposed complaint." ROA.4837. Accordingly, HMIT's own position was that the requested discovery was unnecessary to show the colorability of its claims.

In the Bankruptcy Court, the Claim Purchasers were steadfast in their view that the proposed claims against them fail as a matter of law, with the consequence that no amount of discovery was needed to resolve those claims. The Claim Purchasers therefore opposed HMIT's motion for discovery, and they did not seek to conduct any discovery. ROA.4934. The Claim Purchasers did not attach any evidence to their objection to HMIT's Motion for Leave. *See generally* ROA.3430. Similarly, the Claim Purchasers did not file a witness or exhibit list in advance of the June 8 hearing, and they did not present any

evidence at the hearing and did not participate in the examination of any witnesses. *See generally* ROA.9458. The Claim Purchasers' counsel made a brief closing argument at the end of the hearing. ROA.9811. To the extent that there were any facts in dispute at the June 8 hearing, such dispute was solely between HMIT on the one hand, and the Highland Parties, on the other. As to the proposed claims against them, the Claim Purchasers took the position that the Motion for Leave could be decided based on the allegations of the proposed complaint. ROA.4934. And in denying the motion for discovery, the Bankruptcy Court properly agreed with that approach as it relates to HMIT's proposed claims against the Claim Purchasers.

**3.    The Bankruptcy Court correctly concluded that the proposed complaint does not assert any colorable claims against the Claim Purchasers.**

In considering the Motion for Leave, the Bankruptcy Court correctly held that the complaint does not assert colorable claims against the Claim Purchasers. On its face, the proposed complaint does not demonstrate that the claims are "not without foundation" and fails to assert plausible claims. The Court should therefore affirm the Bankruptcy Court's denial of the Motion for Leave.

As noted above, the Fifth Circuit has affirmed the propriety of the Gatekeeper Provision in the Plan. *In re Highland Cap. Mgmt.*, 48 F.4th at 435, 439. The Gatekeeper Provision requires HMIT to establish that its proposed claims are "colorable." HMIT argues that it can satisfy the Gatekeeper Provision merely by pleading claims that meet the standard under Federal Rule of Civil Procedure 12(b)(6). (HMIT Br. at 44.). But if that were true, then the Gatekeeper Provision would be rendered meaningless, because it would add noting beyond the procedural baseline applicable to all litigants. That is, if Rule 12(b)(6) is the only limitation on HMIT's ability to file a claim, then the Gatekeeper Provision provides no additional benefit to those it is intended to protect. To pass through the Gatekeeper Provision, a prospective plaintiff would need only to make the same showing that any other plaintiff would need to make to survive a motion to dismiss. It would be nonsensical to adopt a meaning of "colorable" that makes the Gatekeeper Provision meaningless.

As the Bankruptcy Court recognized, at a minimum,[10] the proper test for whether the claims are "colorable" under the Gatekeeper Provision is found

---

[10] The Claim Purchasers also join in and adopt the arguments of the Highland Parties about the proper standard for determining whether a claim is colorable for purposes of the Gatekeeper Provision. As the Highland Parties argue, under the

in the *Barton* doctrine. ROA.1027. In *Barton v. Barbour*, the Supreme Court

recognized the propriety of requiring court permission before allowing claims

against court-appointed receivers. 104 U.S. 126, 134–35 (1881). The doctrine

has since been expanded to protect court-appointed bankruptcy trustees and

others. *See In re Christensen*, 598 B.R. 658, 664 (Bankr. D. Utah 2019) (stating

that the *Barton* doctrine "precludes suit against a bankruptcy trustee for

claims based on alleged misconduct in the discharge of a trustee's official

duties absent approval from the appointing bankruptcy court."). This is the

doctrine on which the Fifth Circuit relied to affirm the propriety of the

Gatekeeper Provision. *In re Highland Cap. Mgmt.*, 48 F.4th at 439.

Under the *Barton* doctrine, a court must determine if the party seeking to

sue made "a prima facie case showing that [its claims are] not without

foundation." *In re Christensen*, 598 B.R. at 667. Failure to establish a prima

facie case results in denial of leave to sue. *Id.* Although similar to the standard

for a motion to dismiss for failure to state a claim under Rule 12(b)(6), the

"not without foundation" standard is more flexible, and the proposed plaintiff

must allege facts sufficient to state a claim to relief that is "plausible on its

---

circumstances here, a higher evidentiary standard should apply. But even under the
lower *Barton* standard, the proposed complaint does not assert "colorable" claims.

face." *Id*. Thus, under the *Barton* doctrine, showing that a claim is "colorable" requires more than just meeting the 12(b)(6) standard.[11]

For the reasons discussed in Section 1 above and in the Highland Parties' brief, HMIT's proposed complaint does not plead a plausible theory of recovery against the Claim Purchasers. It does not plead a plausible injury, a plausible theory of how a plausible injury was caused by the Claim Purchasers, or any cognizable theory of relief. In addition, the proposed complaint fails to plead plausible facts to support other key portions of the proposed claims against the Claim Purchasers.

One key to HMIT's proposed complaint against the Claim Purchasers is its assertion that there was a *quid pro quo* agreement between the Claim Purchasers and Seery related to Seery's compensation. ROA.3351. But, as discussed above, the proposed complaint is devoid of any factual assertions about *how* the Claim Purchasers affected Seery's compensation. *Id*. For this reason alone, the Proposed Complaint fails to assert a colorable claim against the Claim Purchasers for "knowing participation in Breach of Fiduciary Duties" (Count II) or "Conspiracy" (Count III), as each relies on the Claim

---

[11] Even if the correct standard is the 12(b)(6) test, the allegations fail to meet that test either.

Purchasers providing *quid pro quo* in exchange for allegedly receiving material non-public information. ROA.3351.

Additionally, the proposed complaint fails to include plausible allegations to support the conclusory assertion that Dondero's email to Seery contained material nonpublic information. The Bankruptcy Court correctly concluded that the proposed complaint did not plausibly assert that the information in the email about the potential sale of MGM was material nonpublic information. ROA.955–56. To the contrary, Dondero admitted at the hearing that he did not actually share the supposedly "nonpublic" information with Seery. ROA.957. The implausibility of the allegation is bolstered by the fact that when he sent the email to Seery, Dondero no longer owed any duties to Highland. ROA.5606; ROA.5609. But as a member of the MGM board, he *did* owe duties to MGM. ROA.849. HMIT's theory of the case is therefore that Dondero shared material nonpublic information with Seery in violation of his duties to MGM, even though he did not owe any duties to Highland. That is simply implausible.

The Bankruptcy Court also correctly concluded that there is no plausible allegation that Seery shared the information in Dondero's email with the Claim Purchasers. ROA.959. Instead, the proposed complaint relies on

unfounded inferences and purported circumstantial evidence. The Bankruptcy Court correctly rejected Dondero's self-serving testimony about phone calls he allegedly had with two Farallon representatives months after Dondero's email to Seery, and after the Claim Purchasers already acquired the claims at issue. ROA.959–63. The Bankruptcy Court also observed that the purported contemporaneous notes from the alleged calls with Farallon representatives do not mention MGM, any sharing of the alleged nonpublic information by Seery, the purported *quid pro quo*, or Seery's compensation. ROA.959–63. Finally, the Bankruptcy Court relied on Dondero's admission that no one at Farallon ever told him that Seery communicated the alleged material nonpublic information; rather, Dondero merely *assumed* Seery must have done so. ROA.962. Thus, there is no plausible allegation that Seery shared the alleged nonpublic information with the Claim Purchasers.

In this Court, HMIT asserts that there is circumstantial evidence of its unfounded *quid pro quo* scheme. (HMIT Br. at 48.) In support of that assertion, HMIT relies on the conclusory allegation in the proposed complaint that the Claim Purchasers would not have bought the claims without using for their benefit the alleged nonpublic information. (*Id.*) HMIT's allegation is based on its assertion that the Claim Purchasers would not have made a

sufficiently "significant" profit. ROA.3352. Of course, that is pure speculation and requires an implausible leap to arrive at unfounded conclusions.[12] HMIT's view of the adequacy of the projected profit cannot support an inference that the Claim Purchasers had material nonpublic information. ROA.864.

HMIT's theory suffers from an additional flaw as it relates to the UBS claims—the timing of the acquisition. It is undisputed that the UBS claims were acquired approximately two and half months *after* the public announcement of the MGM sale. ROA.3349; ROA.864. Therefore, even under HMIT's proposed theory, there can be no inference that the decision to acquire the UBS claims was driven by the alleged material nonpublic information. That information was public by the time the Claim Purchasers

---

[12] Plaintiff's proposed complaint hypothesizes:

> It made no sense for the Defendant Purchasers to invest millions of dollars for assets that—per the publicly available information—did not offer a sufficient potential profit to justify the publicly disclosed risk. *The counter-intuitive nature of the purchases at issue compels the conclusion that the Defendant Purchasers acted on inside information and Seery's secret assurance of great profits.*

(*Id.* (emphasis added).) Unsubstantiated claims of "counter-intuitive," "secret," unprofessional actions by the respected professional this Court appointed are not plausible.

acquired the UBS claims. For this additional reason, HMIT's theory lacks plausibility on its face.

## Conclusion

The Bankruptcy Court correctly denied leave for HMIT to file its proposed complaint. HMIT lacks standing to assert its proposed claims because its convoluted liability theories fail to establish a concrete injury traceable to the Claim Purchasers' acquisition of the Claims that would be redressable by the proposed suit. Moreover, the proposed complaint does not assert "colorable claims" as required by the Gatekeeper Provision. For these reasons, those stated in the Bankruptcy Court's order, and those in the Highland Parties' brief, the Bankruptcy Court's order denying the Motion for Leave should be affirmed. The Claim Purchasers further request general relief.

Dated: March 6, 2024

Respectfully submitted,

Holland & Knight LLP

By: */s/ Richard B. Phillips, Jr.*
    Brent R. McIlwain
    Texas Bar No. 24013140
    Brent.McIlwaing@hklaw.com

    David C. Schulte
    Texas Bar No. 24037456
    David.Schulte@hklaw.com

    Richard B. Phillips, Jr.
    Texas Bar No. 24032833
    Rich.Phillips@hklaw.com

    Christopher A. Bailey
    Texas Bar No. 24104598
    Chris.Bailey@hklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: 214-964-9500
Fax: 214-964-9501

**Counsel for Appellees Muck Holdings, LLC; Jessup Holdings LLC; Farallon Capital Management, L.L.C.; and Stonehill Capital Management, LLC**

## Certificate of Compliance

This brief complies with the word limit in Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(g), this brief contains 9,295 words.

This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this brief has been prepared in Microsoft Word in 14-point Equity font.

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.